# AFFIDAVIT OF SEID HASSAN DAIOLESLAM

Seid Hassan Daioleslam states as follows under penalty of perjury:

1. I am an analyst and investigative journalist. I am Iranian and have focused my work on Iran and Iran –United States relations. I publish articles on my website, as well as many other web-based media. I have also appeared on Voice of America and several television shows as an analyst on issues related.

2. During the 1990's, I lived in Europe and my activities were focused on the Human Rights and advocating on behalf of the political prisoners in Iran.

3. In 2001, I moved to the United States and focused on Iran's political analysis and research. The outcome of this work has been largely published by major Farsi websites as well as English media.

4. I have researched and written extensively on the subject of Trita Parsi, the National Iranian American Council (NIAC) and the group Iranians for International Cooperation (IIC), which Trita Parsi founded before the inception of NIAC.

5. In 2002, the IIC became inactive and some of its founders founded NIAC. Based on my research, including review of other media and scholarly works, it is my sincere belief that NIAC and Parsi act as an what I term "an Iranian lobby," meaning that they act to attempt to influence U.S. policy and legislation regarding Iran in a way that is in accordance with the wishes, interest and needs of the Iranian regime. I do not believe that their stance is issue neutral, but rather takes a stance that is line with the interests of the Iranian regime.

6. I base my beliefs regarding the connection between Parsi and the Iranian government, and by extension NIAC, on, among other things, the following sources and research:

    (a) After my first English article was published in April 2007 on the subject of NIAC, Trita Parsi and their lobbying role, a coordinated campaign was launched by several Iranian pro-government press in support of Parsi and NIAC. The articles are attached as Exhibits 5-7, and exhibit 15 to the motion. One of them, referred to NIAC as the Iranian lobby.

    (b) In an interview with Trita Parsi published in the major pro-government-newspaper Aftab published on December 28, 2006, an article in which it underscored Parsi's efforts on the behalf of the Iranian regime. The interview was decorated with Parsi's picture and was titled "Iranian Lobby Becomes Active?" (See *Ex.* 7).

H.D

1

(c) Parsi's connection with Siamak Namazi, as demonstrated in part by their collaboration and joint presentation of a paper on the bridge between two nations, which appears as Exhibit 14 to the motion. As demonstrated by the documents in Exhibit 17, Namazi, through the companies of which he is a managing director (and owner along with other family members) and their affiliates, has ties to the governmental Qeshm Authority, as well as numerous other governmental and quasi governmental entities with in roads into the Iranian government.

(d) The admission by Parsi that he was the point man for Bob Ney to manage the "Grand Bargain". (Steve Clemons, Feb. 17, 2007: http://www.huffingtonpost.com/steve-clemons/what-did-rove-do-with-200_b_41472.html)

(e) The admission by Parsi that he was trusted by the high level officials of the Iranian government once more with a fresh copy of the secret proposal "grand-bargain" document in 2006, as reported by Gareth Porter in 2006. The article is attached as Exhibit 18.

I have no reason to doubt these sources, nor, given my analysis of the overall works of NIAC and Parsi, do I believe them to be fabricated or improbable. This is not an exhaustive list of my research in this area.

7. I base my belief that Parsi, and by extension NIAC are taking positions favorable to the Iranian regime, rather than being issue neutral. Furthermore, they have promoted an agenda, identical to the interest and wishes of the Iranian regime, under the disguise of being anti-war and anti-sanctions. I base my opinion partly on the following examples:

(a) The close cooperation between Parsi and NIAC with individuals who are part of or very close to the Iranian regime (such as what was mentioned in 6 (c,d,e,f) is a strong indication of aligned agendas.

(b) In an interview with Trita Parsi published in the major pro-government-newspaper Aftab on December 28, 2006, Parsi's efforts on the behalf of the Iranian regime were underscored. The interview was decorated with Parsi's picture and was titled "Iranian Lobby Becomes Active?" (See *Ex.* 7). This article implied that NIAC, is a "resource" for the government and compared NIAC's actives to that of "unofficial diplomacy":

> (Translation): "The conflict between Iran and the West on Iran's nuclear file has entered a critical state. The government must now utilize all the possible resources to defend the national interest. In this, we have not paid enough attention to the potentially significant influence of the Iranian American society in moderating the extremist policies of the White House. In comparison of this untouched potential to the influence of the Jewish lobby in directing the policies of Washington in supporting Israel, we see

the difference between what is and what could be. The role of unofficial diplomacy has been correctly underlined by experts."

(c) Ambassador Faramarze Fathnejad, in a September 19, 2006 meeting with the organization in Theran called "The Association of Iranophile" praised Trita Parsi and urged that the group be more supportive of Parsi. The Ambassador also emphasized "the importance of relation with Iranian organizations in the U.S. and specially pointed to NIAC and his young leader who is a consultant to CNN and has been very successful in his efforts" *See Exhibit 15.*

(d) Parsi advocates that "Sooner or later, Iran and the U.S. must learn how to share the region." [The Huffington Post, April 22, 2008 http://www.huffingtonpost.com/trita-parsi/can-the-us-and-iran-share_b_97670.html].

I have no reason to doubt these sources, nor, given my analysis of the overall works of NIAC and Parsi, do I believe them to be fabricated or improbable. This is not an exhaustive list of my research in this area.

8. I base my belief that Defendant Parsi, and by extension NIAC engage in lobbying activities, that is that they advocate a specific position, attempt to influence legislative action on specific issues and track legislation relating to Iran on the following sources and information:

(a) the NIAC website has a section called the "Political Engagement Center" which encourages members to contact their representatives with specific messages[1] It also offers a News and Alerts section, stating that by using this service, members can "[g]et an alert when your involvement can make a critical difference."

(b) The *Washington Post* reported on June 25, 2006:
"The NIAC helped persuade a dozen conservative House members to sign a letter to President Bush earlier this month calling for unconditional negotiations with Iran's regime." Iran on the Potomac." *Washington Post* http://www.washingtonpost.com/wp-dyn/content/article/2006/06/23/AR2006062301345_pf.html(June 25, 2006).

(c) NIAC has held numerous lobbying training workshops for its members including some by professional lobbyists. The following from an e-mail broadcast by Trita Parsi in October 2002, in the beginning of NIAC's activity: "

---

[1] For example: Congress: "Tell your representative to say "no" to Iran war resolution Smart Alert: .Ask your Senators to support diplomacy with Iran" http://capwiz.com/niacouncil/issues/ and "Rebuke Clinton for threatening to "totally obliterate" Iran Contact her campaign headquarters today!"

H.D                                                3

TOP LOBBYISTS TO GIVE PRESENTATION ON LOBBYING AT NIAC POWER DINNER IN WASHINGTON" http://web.payk.net/mailingLists/iran-news/html/2002/msg00572.html. See Exhibit 20.

9. I have never stated that NIAC and Parsi are funded by the Iranian regime. Neither have I stated that they are an illegal organization, or that they should have registered as lobbyists. Instead, I have indicated that they lobby, that is that they advocate a specific position and attempt to influence legislative action on specific issues, and at the same time they told their members and the population at large that they do not take position on issues and their only motive was to empower the Iranian-Americans. I believe that it is the responsibility of an investigative reporter to point this discrepancy.

I have no reason to doubt these I believe them to be fabricated or improbable. This is not an exhaustive list of my research in this area.

10. I base my belief that Parsi and NIAC act disingenuously or in a disguised fashion on the fact that the pro-regime stances adopted by Parsi and NIAC are not neutral as they claim. I believe that while Parsi and NIAC claim not to be pro-Iranian regime, the positions that they take on U.S. policy and specific legislation are supportive of that regime. I base that belief on the sources already cited.

11. I base my belief that Iranian government official called on Parsi to be involved in the so called Grand Bargain in both 2003 and 2006 based, in part, on articles by Gareth Porter appearing on May 24, 2003 and May 25, 2006 in InterPress Service News Agency website and Antiwar.com respectively. I have no reason to doubt these sources, nor, given my analysis of the overall works of NIAC and Parsi, do I believe them to be fabricated or improbable. This is not an exhaustive list of my research in this area.

12. I base my belief that NIAC has now formally implemented a paid trainee program and is actively in search for Iranian American youth on NIAC's own website publication, located at ____ http://www.niacouncil.org/index.php?option=com_content&task=view&id=356&Itemid=29
This describes the paid trainee program targeted at Iranian American youth. This is included as Exhibit 16.

13. Additionally, I never made any of the statements listed in the Plaintiffs' complaint knowing that they were false. I based the statements on research and believed, and still do believe, them to be true. I made such statements in an attempt to, based on my knowledge and research, lend my commentary to the debate regarding U.S. policy towards Iran, which I think is of vital public concern. That

4

commentary includes my analysis, based on by knowledge and research, of ways actors in the debate as it exists are either wrong and/or have spun their position.

I do solemnly declare and affirm under the penalties of perjury that the contents of the foregoing are true and correct.

_____     7.7.2008
Seid Hassan Daioleslam                Date