UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TRITA PARSI, Ph.D.

and

NATIONAL IRANIAN AMERICAN COUNCIL ("NIAC")

Plaintiffs,

v.

DAIOLESLAM SEID HASSAN,

Defendant.

Civ. No.: **08 CV 00705 (JDB)**

## MEMORANDUM OF LAW IN OPPOSITION татO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT OR IN THE ALTERNATIVE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The Plaintiffs, Trita Parsi and the National Iranian American Council ("NIAC"), have been repeatedly and persistently defamed by the Defendant, Seid Hassan Daioleslam. The Defendant has engaged in a campaign to convince the public that the Plaintiffs are agents of the Islamic Republic of Iran, engaged in elicit activities on behalf of that regime. The Defendant has made statements, presented as fact, explicitly claiming such a relationship exists between the Plaintiffs and the government of Iran. These statements are entirely false and have caused irreparable harm to the Plaintiffs in the Iranian-American community, which overwhelmingly disapproves of the Iranian regime. The Defendant knew that his statements were false; or in the alternative he published them with reckless disregarded to the truth.

### BACKGROUND AND SUMMARY

1. Founded in early 2002, the National Iranian-American Council is a non-partisan, non-political, non-sectarian, and non-profit organization dedicated to promoting Iranian-American

participation in American civic life. Dr. Trita Parsi is the President of this organization. *See* Exhibit F.[1] Defendant has recklessly accused NIAC and Dr. Trita Parsi of being agents of the Islamic Republic of Iran. Iran is designated by the United States as a sponsor of terrorism. *See* Exhibit E. Nothing could be as defamatory to NIAC as being accused of being an actual (not metaphorical) **agent** of the Islamic Republic of Iran. Not only would such action be criminal (see pg. 8, *infra*), but it would be tremendously scandalous and unpopular in the Iranian-American Community. This Community is NIAC's constituency, its grass routs, its source of memberships and revenue. This Community is NIAC's best source of donations. It would be absurdly illogical for NIAC or Dr. Parsi to be agents of the Islamic Republic.

2. Defendant's agenda-driven motivation is to destroy the reputation of NIAC and Dr. Parsi. This is self-evident from the organizations and publications he is associated with, e.g. the MKO (An Organization designated in the past as a Terrorist Organization by the D.O.S.) *See* also Parsi Affidavit. Therefore, *inter alia*, Defendant has the motivation to falsify allegation against me as well as disguise his pure agenda-driven allegations as "opinion." The fact that Defendant attempts to disguise and conceal his action and even his identity is *consciousness of* his *guilty* state of mind. Furthermore, the fact that he has disregarded basic procedures of (for a *self-*professed "journalist") simple fact finding even in the *lay* sense, indicates that Defendant has absolutely no regard for the truth, but that he is simply on a mission wherein the agenda is to destroy the reputation of anyone who is against his end-goal (no diplomatic solution to the conflict with Iran). Coupled together, his (i) motive and (ii) his singular failure to follow even the most basic fact-finding procedures are more than sufficient to lead a reasonable juror to conclude that this amounts to "reckless disregard for the truth."

---

[1] Personally, Dr. Parsi is not Muslim; rather, he is a member of a small, ancient monotheistic, religious minority (Zoroastrianism) which pre-dates the 3 major mono-theistic religions of the world.

3. To make Defendant's malice even more obvious, Defendant was placed on actual notice of his falsity, *inter alia*, when Plaintiff served him with a detailed *cease and desist* letter well in advance of taking legal action. *See* Exhibit D.   He knew or should have known what he was publishing was false; he had absolute notice and actual knowledge of this falsity; certainly after he was served with *legal notice* by plaintiff.  Despite this heightened duty to be more scrupulous and to check his facts and allegations with more scrutiny, the Defendant instead published more defamation with more intensity, with even more brazenly reckless disregard for the truth.

### I. The Plaintiffs alleged sufficient material facts to show genuine issues thereby overcoming the Defendant's Motion to Dismiss

4. In order to survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), the Plaintiffs need only allege a "plausible entitlement to relief by setting forth any set of facts consistent with the allegations." Di Lella v. Univ. of Dist. of Columbia, --- F. Supp. 2d ----, 2008 WL 2966260 at *3 (D.D.C. 2008). The Plaintiffs need not "plead all elements of [their] *prima facie* case in the complaint." Id.   In addition, the Court must construe the complaint liberally in favor of the Plaintiffs and "assume all the allegations in the complaint are true (even if doubtful in fact)," giving the Plaintiffs "the benefit of all reasonable inferences derived from the facts alleged." Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans Inc., 525 F.3d 8, 17 (D.C. Cir. 2008).

5. The Plaintiffs have alleged a sufficient factual basis for recovery under a theory of defamation, so the above-captioned matter should not be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). A plaintiff must allege four elements to establish a cause of action for defamation:

> [First,] that the defendant made a false and defamatory statement concerning the plaintiff; [second,] that the defendant published the statement without privilege to a third party; [third,] that the defendant's fault in publishing the statement amounted to at least negligence; and [fourth,] either that the

> statement was actionable as a matter of law irrespective or special harm or that its publication caused the plaintiff special harm.

Blodgett v. University Club, 930 A.2d 210, 222 (D.C. 2007) (quoting Oparaugo v. Watts, 884 A.2d 63 (D.C. 2005)). The following facts were, *inter alia*, alleged in the Complaint. The Defendant made false and defamatory statements about the Plaintiffs—specific examples of such statements were provided. (Compl. ¶¶ 13-15, 17, 20, 34-38.) The statements were published to a third party—to the public, in fact. (Compl. ¶¶ 16, 39.) The Defendant's degree of fault rises at least to that of negligence. (Compl. ¶¶ 21-22.) Finally, the statements were either actionable as a matter of law or caused special harm to the Plaintiffs. (Compl. ¶¶ 23-24, 41-43.)

## II.  The Defendant's Motion for Summary Judgment should be denied since material questions of fact are in dispute, or in the alternative because material questions of fact cannot be resolved before discovery

### A. Legal Standard for Summary Judgment

6. Summary judgment is appropriate only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2008); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). A court must "view[] the evidence in the light most favorable to the nonmoving party." Byers v. Burleson, 713 F.2d 856, 859 (D.C. Cir. 1983) (vacating grant of summary judgment when, after drawing all reasonable inferences in favor of the nonmoving party, there existed a genuine dispute of material fact to be resolved at trial); see Popham, Haik, Schnobrich, Kaufman & Doty, Ltd. v. Newcomb Securities Co., 751 F.2d 1262, 1263 (D.C. Cir. 1985) (noting that "[a]ny doubt is to be resolved against the moving party"). If the nonmoving party "shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition," the court may deny the motion, order a continuance for, *inter*

4

*alia*, further discovery, or "issue any other just order." Fed. R. Civ. P. 56(f); see Celotex Corp. v. Catrett, 477 U.S. at 326 (stating that "[a]ny potential problem with . . . premature motions can be adequately dealt with under Rule 56(f), which allows a summary judgment motion to be denied, or the hearing on the motion to be continued, if the nonmoving party has not had an opportunity to make full discovery" (footnote omitted)).

7. As stated in the accompanying Affidavit of A.P. Pishevar Regarding Need for Discovery, discovery has not yet commenced in the above-captioned action. (Aff. of A.P. Pishevar Regarding Need for Disc. ¶ 4.) While some material facts that are in dispute—such as the falsity of the Defendant's statements—can be attested to in an affidavit by Plaintiff Parsi, other material facts cannot be effectively ascertained prior to the commencement of discovery, and this Court should allow discovery to be completed before these facts are ruled upon. (Id.) See Khan v. Parsons Global Services, Ltd., 428 F.3d 1079, 1087-88 (D.C. Cir. 2005) (reversing grant of summary judgment and remanding to allow parties to conduct discovery before ruling on motion for summary judgment when the defendant filed the motion before filing an answer and the plaintiffs had not been given an opportunity to conduct any discovery).

### B. Legal Test for Defamation

As more fully developed *supra*, Part I, the test for defamation is:

> [First,] that the defendant made a false and defamatory statement concerning the plaintiff; [second,] that the defendant published the statement without privilege to a third party; [third,] that the defendant's fault in publishing the statement amounted to at least negligence; and [fourth,] either that the statement was actionable as a matter of law irrespective or special harm or that its publication caused the plaintiff special harm.

Blodgett v. University Club, 930 A.2d 210, 222 (D.C. 2007).

### C. There are material facts still in dispute

#### 1. The falsity of the Defendant's statements is a disputed material fact

5

8. In a defamation action, if there is a factual dispute regarding the falsity of the statements, then a court should not find, as a matter of law, that the statements are substantially true unless "no reasonable juror could find them to be false." Moldea v. New York Times Co., 15 F.3d 1137, 1143, 1148 (D.C. Cir. 1994) (remanding and vacating a District Court grant of summary judgment where the substantial truth of the allegedly defamatory statements was at issue). Particularly where "the truth or falsity of multiple statements" are at issue, "it is the jury's province to determine whether the publication should be sufficiently false" to be considered defamatory. Id. at 1150.

9. The Defendant has written many false statements about the Plaintiffs, calling the Plaintiffs, *inter alia*, "the Mullahs'[2] lobby," "the Ayatollahs' Lobby," "key players in the lobby enterprise of Tehran's ayatollahs in the United States," and "an active and disguised Washington-based lobbying enterprise for the Iranian theocratic regime." (Pls.' Exs. A, B; Aff. of Trita Parsi ¶ 21.) As is apparent from even a quick perusal of the Defendant's website,[3] these statements are made repeatedly and professed as though they are statements of fact—not opinions, as the Defendant contends. (Mem. in Support of Def.'s Mot. to Dismiss Compl. or in the Alternative Def.'s Mot. for Sum. J., at 15–19). The Defendant contends that these statements are true. (Aff. of Seid Hassan Daioleslam, ¶ 13 ("I . . . still do believe [the statements regarding the Plaintiffs] to be true.").) The Plaintiffs contend they are false. (Aff. of Trita Parsi, ¶ 21.)

**2.    There is a dispute regarding the facts establishing the Defendant's requisite degree of fault, or in the alternative these facts cannot be properly ascertained prior to the commencement of discovery**

10. While the Defendant has asserted his belief in the truth of his statements, he "cannot . . . automatically insure a favorable verdict by testifying that he published with a belief that the

---

[2] The terms "Mullah" and "Ayatollah" refer to the theocratic rulers of the Islamic Republic of Iran.
[3] http://english.iranianlobby.com

6

statements were true." St. Amant v. Thompson, 88 S. Ct. 1323, 1326 (1968). The good faith of the Defendant is a question of fact to be determined based on the circumstances surrounding the publication, including but not limited to whether the story is "fabricated by the defendant, is the product of his imagination," or where there are "obvious reasons to doubt the veracity of" the basis for the story. Id.

11. As detailed in the accompanying Affidavit of Trita Parsi, the Defendant's allegations are based upon statements that were "cherry picked" with complete disregard for the countless criticisms Plaintiff Parsi has leveled against the oppressive Iranian regime—both in his individual capacity and as president of NIAC. (See Aff. of Trita Parsi ¶ 15 (listing and extensively quoting criticisms the Plaintiffs have leveled against the Islamic Republic of Iran for, *inter alia*, human rights abuses).) Not only has the Defendant failed to provide any basis for his inflammatory statements about the Plaintiffs' alleged ties to that oppressive regime, the Defendant has altogether ignored their existence and explicitly stated that the Plaintiffs have not made such criticisms. (See, e.g., Ayatollah's Lobby in Washington, Pls.' Ex. A (stating that "Parsi paints a rosy picture of the human rights situation in Iran" and that Plaintiff Parsi "refrain[s] from condemnation of the torture, mass executions, rapes of women in prison, and stoning").) In fact, Plaintiffs' criticisms of the regime were made in the very same sources to which the Defendant quotes for his support. (Aff. of Trita Parsi ¶ 15.a.) This selective memory about the Plaintiff and willful blindness of the truth is powerful evidence of *actual malice*.

12. As a self-fancied "investigative journalist," it would be irresponsible to the point of beyond recklessness for the Defendant not to at least discuss the evidence opposing the thesis of his articles, when that evidence was known to the Defendant. Whether the Defendant was aware of these statements is a fact that will become apparent through the discovery process, but many

7

of these statements were made in the same publications—and even the same articles—as statements used by the Defendant as a basis for his "analysis." (Aff. of Afshin Pishevar Regarding Need for Disc. ¶¶ 6-7.) The extent to which the Plaintiffs have been openly critical of the Iranian regime should have given the Defendant "obvious reasons to doubt the veracity" of the basis for his statements, one of the factors to consider. See St. Amant v. Thompson, 88 S. Ct. at 1326.

### III. The Defendant's statements are defamatory

#### D. Defamation *per se*

13. "One who publishes a slander that imputes to another conduct constituting a criminal offense is subject to liability to the other without proof of special harm if the offense imputed is of a type which, if committed . . . would be . . . punishable by imprisonment in a state or federal institution . . . or regarded by public opinion as involving moral turpitude." Restatement (Second) of Torts § 571. Cf. Roper v. Great Atlantic & Pacific Tea Co., 164 A.2d 478 (D.C. App. 1960) (finding that statements by a store manager that a minor had stuffed her pockets with candy constituted slander *per se*). If a U.S. person—whether an individual or another legal entity—wishes to act as an "agent of a foreign principal" and engage in "political activities," the person must register with the Attorney General as such, or face fines of up to $10,000 and up to five years imprisonment. Foreign Agents Registration Act, 22 U.S.C. §§ 611–619. "Foreign principal" encompasses foreign governments, foreign political parties, and any non-U.S. organization or person. Id. § 611(b). The term "agent of a foreign principal" is defined as:

> . . . any person who acts as an agent, representative, employee, or servant, or any person who acts in any other capacity at the order, request, or under the direction or control, of a foreign principal or of a person any of whose activities are directly or indirectly supervised, directed, controlled, financed, or

8

> subsidized in whole or in major part by a foreign principal, and who directly or through any other person--
> (i) engages within the United States in political activities for or in the interests of such foreign principal;
> (ii) acts within the United States as a public relations counsel, publicity agent, information-service employee or political consultant for or in the interests of such foreign principal;
> (iii) within the United States solicits, collects, disburses, or dispenses contributions, loans, money, or other things of value for or in the interest of such foreign principal; or
> (iv) within the United States represents the interests of such foreign principal before any agency or official of the Government of the United States[.]

Id. § 611(c). "Political activities" means

> any activity that the person engaging in believes will, or that the person intends to, in any way influence any agency or official of the Government of the United States or any section of the public within the United States with reference to formulating, adopting, or changing the domestic or foreign policies of the United States or with reference to the political or public interests, policies, or relations of a government of a foreign country or a foreign political party[.]

Id. § 611(o).

14. The Defendant has repeatedly asserted that the Plaintiffs are engaged in political activities for the Iranian regime—or at the very least with persons within Iran whose interests are aligned with that regime. (E.g., Aff. of Seid Hassan Daioleslam ¶ 11; Pls.' Ex. B.) This would place the Plaintiffs' activities squarely and firmly within the Foreign Agents Registration Act definition of an "agent of a foreign principal engaged in political activities." Since this offense is punishable by up to five years imprisonment, 22 U.S.C. § 618(a), the Defendant has accused the Plaintiffs of an offense which would qualify those statements as defamation *per se*, precluding the need for a showing of special damages. Washburn v. Lavoie, 357 F. Supp. 2d 210, 214 (D.D.C. 2004).

9

### E. Defamatory statements other than *per se*

15. "A statement is defamatory if it tends to injure the plaintiff in his trade, profession, or community standing." Washburn, 357 F. Supp. 2d at 215. "Courts are charged with the responsibility of determining whether a challenged statement is capable of conveying a defamatory meaning." White, 909 F.2d at 518. However, a court "may only rule as a matter of law when the publication is not reasonably capable of any defamatory meaning and cannot be reasonably understood in any defamatory sense." Washburn, 357 F. Supp. 2d at 215 (quoting White, 909 F.2d at 518).

16. The Defendant's statements have caused numerous injuries to the Plaintiffs, particularly hampering the ability of the Plaintiffs to carry out their work as advocates for the Iranian-American community. (Aff. of Trita Parsi ¶¶ 8–14.) The statements have also hurt the Plaintiffs' credibility with U.S. government officials, and undermined the ability of Plaintiff NIAC to fundraise in the Iranian-American community. (Id.) These statements are certainly capable of defamatory meaning—both facially and as evidenced by the effect they have had upon the Plaintiffs' reputation, trade, profession, and community standing.

### IV. The defamatory statements were published by the Defendant as statements of fact not opinions, as he now contends

17. Whether a statement is an "assertion of fact" or consists of an "expression of opinion" is to be determined as a matter of law. White v. Fraternal Order of Police, 707 F. Supp. 579, 591 (D.D.C. 1989) (citing Ollman v. Evans, 750 F.2d 920 (D.C. Cir. 1984). The test for whether a statement consists of an opinion is a "totality of the circumstances" test, though there is a four-part analysis to aid courts in making that determination. Id. First, the Court should look to the "common usage or meaning of the specific language" in the statement. Id. Next, the court should address whether the statement is objectively verifiable—i.e., "capable of being

10

objectively characterized as true or false." Id. Third, the statement should be viewed in its "full context" since other content surrounding the statement may "influence the average reader's readiness to infer that a particular statement has factual content." Id. at 591–92. Finally, the court should look to the "broader context or setting in which the statement appears." Id. at 592.

18. In order to assist in the discussion of this test, the following is a representative, but far from exhaustive, list of defamatory statements made by the Defendant which would qualify as "assertions of fact" under the Ollman test.

- "[NIAC is] an active and disguised Washington-based *lobbying* enterprise for the *Iranian theocratic regime*. NIAC is an effective node of Tehran's comprehensive lobbying web." (Iran's Oil Mafia, Pls.' Ex. B.) (emphasis added)

- "Trita Parsi and NIAC . . . have worked hard to improve the image of Tehran's rulers and pale Tehran unfriendly actions by the West." (Ayatollah's Lobby in Washington, Pls.' Ex. A.)

- "NIAC and Trita Parsi[] are key players in the lobby enterprise of Tehran's ayatollahs in the United States." (Id.)

19. First, the common usage and meaning of each of these statements indicates its factual nature. The Defendant consistently uses forms of the verb "to be" to describe the Plaintiffs. The verb "to be" is defined as meaning "[t]o have existence, truth, or actuality." Webster Comprehensive Dictionary, Encyclopedic Edition vol. 1, 122 (1984). Thus, the ordinary and plain meaning of these statements, relying on the verb "to be," is that their substance has truth.

20. Second, each of these statements are objectively verifiable. Namely, the Plaintiffs have denied the factual nature of these statements and have supplied evidence to support their position. (See Aff. of Trita Parsi.) For example, the Defendant states that the Plaintiffs have attempted to "improve the image" if the Iranian regime. (Ayatollah's Lobby in Washington, Pls.' Ex. A.) However, Plaintiff Parsi has, on numerous occasions, both personally and on behalf of NIAC, indicated his *condemnation* of the Iranian regime. (See, e.g., Aff. of Trita Parsi ¶ 15(c).)

11

21. Third, the content surrounding the statements would suggest to a reader that the statements in question are statements of fact, rather than opinion. The Defendant claims to be a member of the mass media, and presents his articles as works of investigatory journalism. (Aff. of Seid Hassan Daioleslam ¶ 1.) This style of writing suggests that he is supplying his readers with facts uncovered during investigation.

22. Finally, the broader context of the statements demonstrates that they are factual in nature. The Defendant holds himself out as an expert in Iranian issues, indicating a special knowledge of facts relating thereto. (Did NIAC Defraud the National Endowment for Democracy, sidebar, Pls.' Ex. C; Aff. of Seid Hassan Daioleslam ¶¶ 1-4.) The totality of circumstances surrounding the publication of the Defendant's defamatory statements indicates that they are statements of fact, rather than statements of opinion. The totality of circumstances surrounding the publication of the Defendant's defamatory statements indicate that they are Defamatory Statement of the worst kind of all – statements made with actual *Malice*, statements uttered to destroy a fine non-profit organization and a good man's reputation simply because of the defendant's hidden, politically driven agenda.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion to Dismiss the Complaint or in the Alternative Defendant's Motion for Summary Judgment should be Denied.

> Respectfully submitted,
> PISHEVAR & ASSOCIATES, P.C.
> /S/
> _____
> Afshin Pishevar, Esq. - Bar No. 451015
> ap@pishevarlegal.com
> 600 East Jefferson Street
> Jefferson Plaza, Suite 316
> Rockville, Maryland 20852
> 301-279-8773