UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TRITA PARSI

and

NATIONAL IRANIAN AMERICAN COUNCIL

Plaintiffs,

v.

DAIOLESLAM SEID HASSAN,

Defendant.

Civ. No.: **08 CV 00705 (JDB)**

## AFFIDAVIT OF TRITA PARSI

I, Dr. Trita Parsi, an adult competent to testify to the facts contained herein, upon personal knowledge and belief, swear according to law and under penalty of perjury and say:

1. The statements herein are made both as an individual and in my capacity as President of the National Iranian American Council (NIAC).

2. Neither NIAC nor I are agents of the Iranian regime—nor do we lobby on behalf of the Iranian government or for its interests.

3. NIAC receives its funds from private Iranian-American donors as well as prominent US foundations such as the National Endowment for Democracy, the Rockefeller Brothers Fund, the Ploughshares Fund, the Open Society Institute, and is in no way funded by the Iranian government or any of its proxies or surrogates.

4. Neither NIAC nor I "work with" the Iranian government, or its proxies or surrogates—our purpose is to advocate on behalf of the Iranian-American community in the U.S.

5. The interview to which the Defendant refers on page 11 of his Motion to Dismiss, titled "Iranian Lobby Becomes Active?" was *not* an interview I gave to Iranian newspaper, *Aftab*—the interview was given to the U.S. government-funded Radio Free Europe (see http://www.rferl.org/content/Article/1073703.html) and reprinted without permission by *Aftab*. Likewise, the quoted "introduction" was added by the editors of *Aftab*, was not included as part of the original interview given to RFE, and does not reflect my or NIAC's opinions, beliefs, or goals.

6. Neither NIAC nor I have any control over erroneous statements made in Persian-language news publications like *Aftab*.

7. Iranians for International Cooperation (IIC) was a distinct organization, with a different focus than that of NIAC, and it is therefore irrelevant to the discussion of this case. Nevertheless, the Defendant distorts that organization's purpose as well. The quote used by the Defendant is incorrectly quoted and taken out of context, and was in fact using the term "Iran" to mean "the Iranian people," as is evident from reading the entirety of Exhibit 13 provided by the Defendant. The correct quote should contain "Iranian's [sic] interests" rather than "Iran's interests." As stated the same exhibit, IIC was formed "in order to protect the socio-economic and political aspirations of the Iranian people on one hand, and to promote the historical and contemporary cultural and scientific contributions of people of Iranian heritage worldwide." It was not formed to promote the interests of the Iranian *regime*.

8. The Defendant's false allegations that I work on behalf of the oppressive Iranian regime have hurt my reputation in the Iranian-American community—a community which overwhelmingly disapproves of the government of the Islamic Republic of Iran.

9. The Defendant's false allegations that I work on behalf of the Iranian regime have also caused me personal anguish and caused some of my personal and professional relationships with Iranian Americans to become strained.

10. The Defendant's false allegations that I work on behalf of the Iranian regime has hurt my relations with colleagues in Washington's academic and policy circles.

11. It should be noted that my own family has been victimized by the Iranian regime, including my father who was imprisoned by the Islamic Republic.

12. The Defendant's false allegations that NIAC is a lobby for the oppressive Iranian regime have hurt NIAC's reputation in the Iranian-American community—a reputation that is vital if the organization is to carry out its goals of advocating the interests of Iranian Americans.

13. The Defendant's false allegations that NIAC is a lobby for the oppressive Iranian regime have hurt NIAC's credibility on Capitol Hill and among U.S. decision-makers.

14. The Defendant's false allegations that NIAC is a lobby for the oppressive Iranian regime have directly hurt NIAC's financial standing by undermining the organization's ability to raise funds in the Iranian-American community.

15. The Defendant has recklessly or intentionally avoided discovering the falsity of his accusations, and has instead cherry-picked some of my statements and taken them out of context to support his conspiracy. He has ignored statements or articles – or segments of articles – that contradicts his conspiracy. For instance, the Defendant has among other things:

    a. Willfully ignored a segment of the interview I gave to Radio Free Europe, which he otherwise refers to, in which I criticize the Iranian government for provoking

the U.S.: "Diplomacy is falling victim to an endless cycle of provocations right now and those provocations obviously come from both sides. I think from the Iranian side it's been extremely provocative to [hold] this conference regarding the Holocaust in Tehran."

b. Willfully ignored an op-ed I wrote for the Philadelphia Inquirer on February 27, 2008 in which I urged the U.S. to "put the deteriorating human rights situation in Iran on the table in its discussions with Tehran."

c. Willfully ignored an analysis I wrote for the Inter Press Services on May 23, 2007, where I condemn the Iranian authorities for their human rights violations:

> "In recent weeks, the Iranian intelligence services have imprisoned Dr. Haleh Esfandiari, a 67-year-old grandmother visiting her ailing 93-year-old mother in Iran. Denying her access to her lawyer -- Nobel laureate Shirin Ebadi -- or visits by her family, these forces seems to calculate that the inhumane treatment of Esfandiari will cause a backlash in the U.S. against Iran and derail any diplomatic opening. As the head of the Middle East Programme at the Woodrow Wilson International Centre for Scholars in Washington, her arrest was poised to receive significant media attention.
>
> These elements in Iran have also arrested Dr. Kian Tajbakhsh, a consultant for the Open Society Institute's programmes in Iran. A prominent social scientist, Tajbakhsh and the Open Society Institute's work in Iran was fully transparent and approved by the Iranian authorities.
>
> His subsequent arrest -- only three days after Dr. Esfandiari was sent to the notorious Evin prison -- under the pretext of having worked to foment a "velvet revolution" in Iran carries no credibility. Tajbakhsh's activities centred around health and urban policy issues, most recently on AIDS prevention and drug addiction in Iran. Much like Esfandiari, his work helped open up Iran to the outside world -- an activity that clearly threatens the Iranian status quo forces.
>
> Furthermore, in another effort apparently aimed at poisoning the political atmosphere right before historic talks take place between the U.S. and Iran, hardliners in Iran have cracked down on "inappropriately dressed" women and men breaching the country's strict Islamic dress code, arresting hundreds and warning thousands more. Some youth have reportedly been

      beaten up on the streets, in what has been described as a flashback to the early days of the revolution when religious zeal was at its height.

d. Willfully ignored an interview I gave to the Associated Press on Oct 20, 2007

    criticizing the Iranian government's clamp down on civil society:

> Mounting tensions between the U.S. and Iran over nuclear weapons programs and the Iraq war likely led to targeting Iranian-Americans to shift the attention of Iranians away from international criticism, scholars said. "The Iranian government is using that as a pretext," said Trita Parsi, president of the National Iranian American Council. "Whenever the tensions between Iran and the U.S. increase, that gives the government an opportunity to clamp down."

e. Willfully ignored an op-ed I wrote in the Financial Times on Jan 2, 2005

    criticizing the EU for sacrificing the human rights situation in Iran:

> While the world has focused on discussions over Tehran's nuclear capability, human rights in Iran have suffered severe setbacks. By, in effect, "de-linking" advances in this area from the economic incentives aimed at ensuring Tehran suspends uranium enrichment, the European Union has sacrificed the Iranian people's rights in order to secure a nuclear deal. This moral failure makes it even more important for Washington to join the talks and put human rights at the top of the agenda. US involvement in the talks will provide the international community with the security guarantees it needs, while ensuring no deal is struck that would be detrimental to Iran's faltering democratisation.

f. Willfully ignored an article I wrote for OpenDemocracy on October 28, 2005,

    condemning Iranian President Ahmadinejad's comments on Israel:

> Ahmadinejad's comments are irresponsible and repulsive, but there is little to suggest that they reflect a deliberate policy shift. Rather, the historic pattern of the Israeli-Iranian rivalry indicates that the former Tehran mayor committed yet another *faux pas* in the international arena. Again, the ineptitude of Tehran has proven to be the primary source of Iran's many problems.

g. Willfully ignored an article I wrote for Inter Press services on June 4, 2008

    blaming Tehran for lack of parliamentary dialogue with the U.S:

> Tehran bears overwhelming responsibility for the failure to initiate a parliamentarian dialogue between the two countries [U.S].

    h. Willfully ignored a conference NIAC organized on Capitol Hill on July 26, 2007, sponsored by Amnesty International, on the plight of human rights in Iran.

    i. Willfully ignored numerous statements and quotes by myself and NIAC condemning the Iranian government for its human rights violations.

16. NIAC was not founded by Congressman Bob Ney, Roy Coffee and David DeStefano for the purpose of normalizing US-Iran relations, as the defendant has falsely alleged.

17. NIAC is a nonprofit corporation, taxed under 501(c)(3) of the Internal Revenue Code.

18. I am not registered with the U.S. Attorney General as an agent of a foreign principal pursuant to 22 U.S.C. § 611 et seq.

19. NIAC is not registered with the U.S. Attorney General as an agent of a foreign principal pursuant to 22 U.S.C. § 611 et seq.

20. The Defendant is currently or has previously been associated with organizations and publications such as the Mujahedin-E Khalq Organization ("MKO")—a designated terrorist organization—whose shared goal is to encourage war with Iran, promote sanctions, and prevent diplomatic negotiation with Iran. Because I advocate the increased use of diplomacy with Iran—a position opposite to that of the MKO and the Defendant—the Defendant's goal is to destroy the reputations and credibility of NIAC and myself and remove us as impediments to achieving his foreign policy goals.

21. The following statements, *inter alia*, made by the Defendant in the sources indicated, are false:

(1) "NIAC and Trita Parsi[] are key players in the lobby enterprise of Tehran's ayatollahs in the United States." (Ayatollah's Lobby in Washington, Ex. A. to Pls.' Opp'n to Def.'s Mot. to Dismiss)

(2) "Trita Parsi and NIAC . . . have worked hard to improve the image of Tehran's rulers and pale Tehran unfriendly actions by the West." (Id.)

(3) "[NIAC is] an active and disguised Washington-based lobbying enterprise for the Iranian theocratic regime." (Iran's Oil Mafia, Ex. B. to Pls.' Opp'n to Def.'s Mot. to Dismiss)

(4) "NIAC is an effective node of Tehran's comprehensive US lobbying web." (Id.)

(5) "NIAC and its major figures, such as . . . Trita Parsi, are effective nodes of Tehran's efforts to manipulate US policy toward self-serving ends." (Id.)

(6) "NIAC . . . has three distinct but related goals: [] to block resources to NGOs not controlled by the [Iranian] government, [] to provide resources to their showcase NGOs, [] and to funnel the American taxpayers' money to the Iranian lobby in the US to benefit Tehran's goals." (Did NIAC Defraud the National Endowment for Democracy, Ex. C. to Pls.' Opp'n to Def.'s Mot. to Dismiss)

I do solemnly declare and affirm under the penalties of perjury that the contents of the foregoing are true and correct.

_____
Dr. Trita Parsi

August 8, 2008
Date