# PISHEVAR & ASSOCIATES, P.C.

ATTORNEYS

600 EAST JEFFERSON STREET
JEFFERSON PLAZA • SUITE 316
ROCKVILLE, MARYLAND 20852
TELEPHONE (301) 279-8773 – FACSIMILE (301) 279-7347
WWW.PISHEVARLEGAL.COM

PLAINTIFF'S EXHIBIT D

VIA FACSIMILE/ 202-203-4960

Mr. Danforth Austin, Voice of American Director
Ms. Marie Skiba Lennon, Chief of Staff
Mr. William A. Marsh, Senior Advisor
Voice of America
Office of Public Affairs
330 Independence Avenue, S.W.
Washington, D.C. 20237

June 19, 2007

      Re:    Roundtable on June 10, 2007
               Cease and Desist

Dear  Mr. Danforth Austin
        Ms. Marie Skiba Lennon
        Mr. William A. Marsh

     It has come to my attention that, my client, The National Iranian American Council (NIAC), has been the target of several erroneous, maliciously defamatory opinion pieces by Kenneth Timmerman and Hassan Daioleslam. On June 10, 2007 Mr. Daioleslam was permitted by VOA to disseminate and broadcast his false and defamatory accusations to the world. Mr. Daioleslam was a guest on the Roundtable with Voice of America (VOA) host Mr. Bijan Farhoodi on June 10, 2007. On air, VOA host Bijan Farhoodi told its viewers that VOA had contacted Dr. Trita Parsi but had not received any response from him. This is utterly false. VOA made no effort to contact Dr. Parsi directly, even though it had access to Dr. Parsi's contact information. Instead of limiting the discussion to the parties that were partaking in the roundtable, the host insisted that Mr. Daioleslam speak for other organizations he levels accusations against, even though they were neither there to respond to the accusations or to be informed of the program.

     The Roundtable on June 10 was, *inter alia*, a violation of VOA's own published journalistic code and legal obligations. VOA is no ordinary news outlet. VOA is government funded and has to, according to its own Journalistic Code, verify sources and have double sources for its reports. Furthermore, VOA's code confirms that it has, "a legal obligation to present a comprehensive description of events, reporting an issue in a reliable unbiased way."

The code further states that in all of its reporting, including call-in shows, "views of a single party must be challenged by the interviewer if alternative opinions are unrepresented." On the contrary, Mr. Farhoodi made significant efforts to present his own understanding of the view of the missing party in the discussion, even though he had access to NIAC's detailed rebuttal of Mr. Daioleslam's false accusations to rely on. Although he briefly mentioned the rebuttal during the program, Mr. Farhoodi did not challenge a single accusation made by Mr. Daioleslam, even though the latter did not present a single piece of evidence to support his spurious claims. Despite the blatant lack of evidence presented, the host permitted him to continue his character assassination without impunity. The host made a mockery of VOA's principle that its "news and programming must be rigorously sourced and verified."

The unprofessional conduct demonstrated on the June 10 program is further exacerbated by the nature of Mr. Daioleslam's accusations; accusing Dr. Parsi on air of engagement in criminal activity, that is, that NIAC and Dr. Parsi are spending money given to them by arms smugglers and neo-Nazis. This is not only outrageous, but also glaring evidence of knowledge and malice. In addition, VOA showed significant bias in the interview by asking questions that served to verify the veracity of Mr. Daioleslam's accusations and the credibility of his persona. Furthermore, the host asked questions that elevated Mr. Daioleslam to the level of an authoritative expert on this area, in spite of his lack of credentials. For instance, VOA host asked Mr. Daioleslam, "To what extent has the Iran lobby been successful?" even though the very existence of such an "Iran Lobby" has never been established by Mr. Daioleslam or by VOA. Further evidence of apparent complicity is the text that was run at the bottom of the screen, which no doubt was prepared well in advance of the program's air date. The details cited, supra, are but a few examples.

In sum, Voice of America gave a political activist parading as an investigative journalist a platform to pursue his character agenda and witch-hunt, all at the expense of the US tax payers. Anyone with even minimal perception and insight would have been able to see from a mile away that Mr. Daioleslam had an "axe to grind." Certainly, VOA Persian is not giving the Iranian public a fair image of American journalism or American values. And certainly, this is not the type of journalism Congress had in mind when they allocated funds to VOA's Persian programming.

We would like to resolve this matter amicably by scheduling a time to meet before the next scheduled Roundtable. However, in the absence of a favorable, timely response, we are prepared to take all steps necessary to preserve and protect the rights of Dr. Parsi and NIAC without further notice to you. Please forward this to your legal department and provide us with the appropriate Federal Tort Claims or other forms to complete and submit.

Cease & Desist
June 18, 2007
Page 3 of 3

The statement of facts set forth in this letter is not intended to be, nor shall it be deemed to be, a full and complete statement of the facts in this matter. This letter is not intended to be a complete statement of our rights, and shall not be construed as a waiver of any legal or equitable rights or remedies, all of which are expressly reserved.

Sincerely,

Afshin Pishevar, Esq.

ap/na

Cc:    Client;
       Kenneth Timmerman; FrontPage;
       Hassan Daioleslam
       Broadcasting Board of Directors (BBG):
       Janice H. Brambilla, Carol Booker,
       Janet Stormes, Susan Andross