UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TRITA PARSI and NATIONAL
IRANIAN AMERICAN COUNCIL,

    Plaintiffs,

        v.                              Civil Action No.  08-705 (JDB)

SEID HASSAN DAIOLESLAM,[1]

    Defendant.

**MEMORANDUM OPINION**

This is a defamation case filed by Trita Parsi and the National Iranian American Council (collectively, "plaintiffs").  Plaintiffs allege that Seid Hassan Daioleslam ("defendant") published numerous false and defamatory statements that characterize plaintiffs as agents of the Iranian government.  Now before the Court is defendant's motion for summary judgment.[2]  For the reasons discussed below, further discovery is needed to develop certain aspects of plaintiffs' claim.  Hence, defendant's summary judgment motion is denied.

**BACKGROUND**

Dr. Parsi, a resident of Washington, D.C., is the president of the National Iranian American Council ("NIAC"), a Washington, D.C.-based non-profit group.  Compl. ¶¶ 9-10.  The

---

[1] Plaintiffs' complaint names "Daioleslam Seid Hassan" as the defendant in this case. Defendant's memorandum in support of his motion clarifies that defendant's proper name is Seid Hassan Daioleslam.

[2] Defendant styles his motion as a motion to dismiss, or in the alternative, for summary judgment.  Because the Court has considered the materials the parties have appended to their pleadings, "the motion must be treated as one for summary judgment under Rule 56."  See Fed. R. Civ. P. 12(d).

NIAC portrays itself as "dedicated to promoting Iranian American involvement in American civic life and relying on the public for financial and human resource support." Id. ¶ 10.  Plaintiffs filed a three-count complaint against defendant, an Arizona resident, on April 25, 2008, seeking damages and injunctive relief for common law defamation and portrayal in a false light.  Id. ¶ 11. The thrust of plaintiffs' complaint is that defendant "has published false and defamatory statements indicating that [plaintiffs are] member[s] of a subversive and illegal Iranian lobby colluding with the Islamic Republic of Iran . . . ."  Id. ¶ 13.  Plaintiffs highlight a series of defendant's allegedly defamatory statements in their complaint.  See id. ¶¶ 17-18, 36.  For example, plaintiffs take issue with defendant's statement that "NIAC is one of the Iranian regime's Lobby arms in the US."  Id. ¶ 36(B).  In another statement, defendant wrote that "Trita Parsi was the regime's trusted man within the new network."  Id. ¶ 17(D).  Plaintiffs also append six articles authored by the defendant, all of which allegedly contain defamatory statements. Plaintiffs argue that these statements injured their reputations in the community, thereby hampering NIAC's effectiveness as an advocacy group and damaging its ability to raise funds. Id. ¶¶ 23, 42-43.

     Defendant filed this summary judgment motion on July 8, 2008.  He claims that his statements are protected by the First Amendment because plaintiffs are public figures and because he did not publish the statements with actual malice.  Defendant also argues that the First Amendment protects his statements because they are reasonably read as expressions of opinion, not declarations of facts.  Finally, he argues that plaintiffs' claim must fail as a matter of law because the challenged statements are neither false nor defamatory.

**STANDARD**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings . . . and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party opposing a motion for summary judgment, however, "may not rely merely on allegations or denials in its own pleading; rather, its response must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The nonmoving party must do more than simply "show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Any factual assertions in the movant's affidavits will be accepted as being true unless the opposing party submits his own affidavits or other documentary evidence contradicting the assertion. Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992).

**ANALYSIS**

Defamation cases that, like this one, involve public figures fall at the intersection of common law and the First Amendment. The district court, sitting in diversity, must apply the state common law of defamation to the facts before it. Those laws seek to protect the individual's interest in his reputation. Waldbaum v. Fairchild Publ'ns, Inc., 627 F.2d 1287, 1291 (D.C. Cir. 1980) ("From its earliest days, the law of defamation made the individual's interest in his reputation supreme."). But at the same time, the Court must determine whether otherwise

defamatory speech is protected by the First Amendment. The First Amendment reflects the "national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open . . . ." New York Times Co. v. Sullivan, 376 U.S. 254, 270 (1964). The Supreme Court has reconciled these interests by concluding that the First Amendment requires some "breathing space" when public figures are involved. Id. at 272; see also Gertz v. Robert Welch, Inc., 418 U.S. 323, 342 (1974) (extending New York Times from public officials to public figures). To create that space, the Supreme Court has decreed that a public figure can only prevail in a defamation case upon a showing, by clear and convincing evidence, that an otherwise defamatory statement was made with "actual malice" -- that is, with "knowledge that it was false or with reckless disregard of whether it was false or not." Masson v. New York, 501 U.S. 496, 509 (1991).

Here, the Court, sitting in diversity in the District of Columbia, applies the District's defamation law.

> To state a cause of action for defamation, a plaintiff must allege four elements: (1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm.

Blodgett v. University Club, 930 A.2d 210, 222 (D.C. 2007) (quoting Oparaugo v. Watts, 884 A.2d 63, 76 (D.C.2005)). However, defendant argues that plaintiffs are public figures. If the Court agrees -- and, as discussed below, it does -- then the First Amendment requires a greater showing of fault than is normally required by the third element listed above. Mere negligence will not suffice. Instead, plaintiffs must demonstrate that defendant published the statement with


"actual malice."  Masson, 501 U.S. at 509; Gertz, 418 U.S. at 342.

## I.  Public Figure

"Public figures" fall into one of two categories.  "General public figures" are household names and well-known celebrities.  See Waldbaum, 627 F.2d at 1294.  Neither Dr. Parsi nor the NIAC has the kind of "general fame or notoriety" to be labeled a general public figure.  See id. The closer question in this case is whether plaintiffs qualify for the second category of "limited public figures."  Defendant, of course, argues that they do.  See Memorandum in Support of Defendant's Motion ("Def. Mem.") at 5-7.  And plaintiffs appear to take no issue with the application of that label to them -- their opposition memorandum makes no effort to rebut defendant's "public figure" argument.  Based on the facts now in the record, the Court agrees that plaintiffs are limited public figures.

A three-part inquiry guides courts in determining whether a plaintiff is a limited public figure.  The court should first identify a "public controversy."  Waldbaum, 627 F.2d at 1297-98. Next, the court should examine the plaintiffs' role in that controversy.  Id. at 1297.  Finally, the court should determine whether the "alleged defamation [was] germane to the plaintiff's participation in the controversy."  Id. at 1298.

Courts must carefully identify the public controversy.  "[A] public controversy is a dispute that in fact has received public attention because its ramifications will be felt by persons who are not direct participants."  Id. at 1296.  But a "general concern or interest will not suffice." Id. at 1297.  Nor is newsworthiness alone enough, because courts must ensure that they do not become "censors of 'what information is relevant to self-government.'"  Id. (quoting Gertz, 418 U.S. at 346).  Here, however, a public controversy is readily identified.  The relationship between

the United States and Iran has been debated at length and for years. Indeed, the controversy was a significant area of contention between then-Senator Obama and Senator McCain in the 2008 presidential election campaign. The controversy is specific enough that it is not a general concern, but it is not so specific as to affect only the direct participants. Indeed, the controversy is similar in scope to those found adequate in other cases. See, e.g., Tavoulareas v. Piro, 817 F.2d 762, 773 (D.C. Cir. 1987) (identifying the relevant public controversy as "whether the management and structure of the United States' private oil industry was in need of alteration or reform . . . [based on] the oil shortages of the 1970's"); OAO Alfa Bank v. Ctr. for Public Integrity, 387 F. Supp. 2d 20, 43 (D.D.C. 2005) (identifying the relevant public controversy as "[t]he rise of the oligarchs and the decline of the Russian economy into . . . a 'criminal-syndicalist state'").

Plaintiffs' role in the public controversy can be determined by reference to the NIAC website, portions of which are attached as exhibits to defendant's brief. NIAC "advances the interests of the Iranian American Community on civic, cultural and political issues."[3] See Def. Mem. Ex. 1. The website also lists Dr. Parsi's involvement in the controversy. He has authored a book on the subject of U.S.-Iran relations, as well as articles that have been published in the Financial Times, Jane's Intelligence Review, and other reputable publications. Id. Ex. 3. He is "a frequent commentator on US-Iranian relations and Middle Eastern affairs, and has appeared on BBC World News, PBS NewsHour with Jim Lehrer, CNN, Al Jazeera, C-Span, NPR, ABC, and MSNBC." Id. Hence, plaintiffs have clearly assumed "special prominence" in this controversy.

---

[3] The "public figure" analysis is not limited to natural persons. See OAO Alfa Bank, 387 F. Supp. 2d at 47-48. Therefore, the actual malice standard may apply to both NIAC and Mr. Parsi.

Waldbaum, 627 F.2d at 1297.

Finally, the alleged defamation was "germane" to plaintiffs' participation in the controversy. Id. at 1298. The statements complained of concern plaintiffs' relationship with the government of Iran. See Compl. ¶¶ 17-18. Because the relationship between the United States and Iran is the relevant public controversy, the statements are germane to plaintiffs' participation in that controversy.

The Court, then, is satisfied that plaintiffs qualify as limited public figures, thereby triggering the actual malice standard. In short, defendant's unchallenged assertion that plaintiffs are public figures is fully supported by the Court's independent inquiry.

## II. Actual Malice

Having determined that plaintiffs are limited public figures, the next question is whether plaintiffs are incapable of proving actual malice -- by clear and convincing evidence -- as a matter of law. "The standard of actual malice is a daunting one." McFarlane v. Esquire Magazine, 74 F.3d 1296, 1308 (D.C. Cir. 1996). Plaintiffs must show that "the defendant in fact entertained serious doubts as to the truth of his publication." St. Amant v. Thompson, 390 U.S. 727, 731 (1968). Purposeful avoidance of truth can constitute actual malice, see Harte-Hanks Commc'ns v. Connaughton, 491 U.S. 657, 692 (1989), but failure to investigate cannot, see St. Amant, 390 U.S. at 731. To make matters even more difficult for plaintiffs, the "clear and convincing evidence" requirement is "significantly more onerous than the usual preponderance of the evidence standard." Tavoulareas, 817 F.2d at 776. Unsurprisingly, "[f]ew public figures have been able clearly and convincingly to prove that the scurrilous things said about them were published by someone with 'serious doubts as to the truth of [the] publication.'" McFarlane v.

Sheridan Square Press, Inc., 91 F.3d 1501, 1515 (D.C. Cir. 1996) (quoting St. Amant, 390 U.S. at 731).

Whether a defendant published a statement with actual malice is normally a question of fact for the jury. Liberty Lobby, Inc. v. Rees, 852 F.2d 595, 598 (D.C. Cir. 1988). A defendant cannot "automatically insure a favorable verdict by testifying that he published with a belief that the statements were true." St. Amant, 390 U.S. at 732. But if the plaintiff has not made a showing that a defendant could have published a defamatory statement with actual malice, then the defendant may prevail as a matter of law. Rees, 852 F.2d at 598.

Defendant argues that he could not have made the challenged statements with actual malice because of the so-called "wire services defense." Although this circuit has not squarely recognized this defense, defendant urges the Court to adopt it here and to find that he faithfully quoted or re-published articles in authoring the allegedly defamatory statements. Def. Mem. at 19-27. Under defendant's proposed defense, if "an allegedly defamatory statement was taken without substantial change from a reputable news-gathering agency," then the defendant cannot be held liable for defamation unless he "actually knew that the wire service report was false or there is something unusual in the wire service report that should have put the publisher on notice that the report was probably false." Id. at 24.[4]

Even if the Court were to recognize defendant's proposed "wire services defense," two problems would defeat its application here. As a legal matter, the second prong of defendant's test begs the question of whether he acted with actual malice. If defendant did have actual

---

[4] Citing Brown v. Courier Herald Publ'g Co., 700 F. Supp. 534 (S.D. Ga. 1988); Nelson v. Associated Press, Inc., 667 F. Supp. 1468 (S.D. Fla. 1987); Howe v. Detroit Free Press, Inc., 555 N.W.2d 738 (Mich. Ct. App. 1996).

knowledge of falsity, then his proposed wire services defense fails and he has acted with actual malice. That is because the second prong of defendant's proposed test is basically the same as the test for actual malice. Compare Def. Mem. at 24 (defendant not liable unless he "actually knew that the wire service report was false or there is something unusual in the wire service report that should have put the publisher on notice that the report was probably false"), with Sheridan Square Press, 91 F.3d at 1508 ("A publisher acts with 'actual malice' if it either knows that what it is about to publish is false or it publishes the information with 'reckless disregard' for its truth or falsity.").

Defendant's argument fails as a factual matter as well. Defendant points to ten sources he cited in one of his allegedly defamatory articles to demonstrate that the sources were quoted without substantial change. Def. Mem. at 25. But seven of those ten articles are in Arabic, provided without translation,[5] and hence are unhelpful. Without knowing what they say, the Court cannot determine if "defendant in fact entertained serious doubts as to the truth of his publication." St. Amant, 390 U.S. at 731. None of the remaining three exhibits -- the "frequently asked questions" website page from an organization that Dr. Parsi previously directed (Ex. 13), a paper co-authored by Dr. Parsi entitled "Iran-Americans: The bridge between two nations" (Ex. 14), and a page from the NIAC website describing the organization's efforts to involve Iranian-American youths in politics (Ex. 16) -- describe an official relationship between plaintiffs and the Iranian government. Therefore, if any of the cited articles do report on facts that would establish an agency relationship between plaintiffs and the Iranian government, then it

---

[5] Defendant's affidavit provides brief descriptions of some of these articles. See Affidavit of Seid Hassan Daioleslam ¶¶ 6-7. But these brief descriptions are not adequate substitutes for verbatim translations of those articles.

must be those articles that defendant has provided in Arabic without translation.  Hence, at this stage the Court cannot conclude that defendant drew from other news sources "without substantial change" in authoring the offending statements.

Plaintiffs, on the other hand, have pointed out that the record could support a finding of actual malice.  See Plaintiffs' Memorandum in Opposition to Defendant's Motion ("Pls.' Opp.") at 7.  For example, in an article entitled "Ayatollah's Lobby in Washington Offering Human Rights as a Negotiating Item," defendant wrote that when "Ahmadinejad [the president of Iran] held the Holocaust conference and declared that 'Israel should be wiped off the map,' Trita Parsi and his cohorts did not only not condemn this anti-Iranian and anti-humanity act, but launched a campaign . . . to blame the fault on the 'neocon' media . . . ."  See id. Ex. A.  But, as plaintiffs point out, Dr. Parsi has frequently criticized the Iranian government's stance on human rights in general and on the Holocaust in particular.  See Affidavit of Trita Parsi ¶ 15.  At this stage of the proceedings, the Court cannot determine the source of, much less resolve, this discrepancy.[6]  A failure to investigate adequately could not alone amount to actual malice, see St. Amant, 390 U.S. at 731, but purposeful avoidance of the truth could, see Harte-Hanks, 491 U.S. at 692. Discovery is needed, then, to determine what defendant knew at the time he made the contested statements.[7]

---

[6] The Court offers no opinion on whether defendant in fact mischaracterized plaintiffs' stance on human rights, and instead finds only that based on the current record, defendant may have mischaracterized plaintiffs' stance.  Of course, if discovery reveals that defendant's characterization was accurate, then this statement is not actionable.

[7] The parties should bear in mind that the Court's resolution of this motion does not mean that a trial is necessary to determine whether defendant published his statements with actual malice.  Discovery may provide a clear answer.  Each party will have an opportunity to file a summary judgment motion, based on a complete record, explaining why the actual malice

### III. False and Defamatory Statement

*A. False Statements*

"[T]ruth is a complete defense to defamation." Moldea v. New York Times Co., 15 F.3d 1137, 1142 (D.C. Cir. 1994). A statement that is not completely error-free can still be "true" for purposes of defamation law. See Liberty Lobby, Inc. v. Dow Jones & Co., 838 F.2d 1287, 1296 (D.C. Cir. 1988) (holding that a "substantially true" statement does not give rise to a defamation action); see also Restatement (Second) of Torts § 581A, comment f (1977) ("It is not necessary to establish the literal truth of the precise statement made. Slight inaccuracies of expression are immaterial provided that the defamatory charge is true in substance."). The D.C. Circuit has employed a rough test to determine whether a defendant's defense of truth will dispatch a plaintiff's defamation suit: is the "sting of the charge" "substantially true"? See Dow Jones & Co., 838 F.2d at 1296; Moldea, 15 F.3d at 1150. If so, then a defamation suit must fail.

Here, defendant argues that his allegedly defamatory statements are indeed substantially true. He claims that plaintiffs are "lobbyists" under the plain meaning of the term. Def. Mem. at 9-10. Defendant also argues that plaintiffs' goals align with the Iranian government's goals, and that some Iranian government-owned publications and Iranian officials have suggested support of plaintiffs. Id. at 10-12. Finally, defendant points out that Dr. Parsi previously was the president of an organization known as Iranians for International Cooperation ("IIC"), which "<u>identified itself</u> as 'an Iranian lobby' and indicated that its 'main objective [was] to safeguard Iran and Iran's interests.'" Id. at 12 (brackets and emphasis in original) (quoting Def. Mem. Ex. 13).

But defendant parses his statements too finely. The "sting of the charge" is not, as

---

standard is (or is not) satisfied by clear and convincing evidence.

defendant would have it, that plaintiffs are lobbyists.  Nor does the assertion that plaintiffs' goals align with the Iranian government's goals carry real bite.  Truthful or not, those statements do not form the core of plaintiffs' defamation claim.  Rather, the sting of the charge is that plaintiffs are agents of the Iranian government.  Plaintiffs take issue with statements like:  "Officially founded in 2002, NIAC is one of the Iranian regime's Lobby arms in the US."  Compl. ¶ 36(B).  In another article, defendant wrote: "Trita Parsi was the regime's trusted man within the new network." Id. ¶ 17(D).

To be sure, defendant points to Dr. Parsi's tenure as president of the IIC as proof that he was, in fact, the head of a self-described "Iranian lobby."  But examination of the IIC website, see Def. Mem. Ex. 13, reveals that the "Iranian lobby" label is not as straightforward as defendant would have it.  The Court has reviewed Exhibit 13 -- the sole page from the IIC website that is now part of the record in this case -- and cannot find a single mention of support by the Iranian government.  Unless "a trial court can find as a matter of law that a challenged publication is substantially true . . . it is the jury's province to determine whether the publication was sufficiently false so as to have defamed the plaintiff." Moldea, 15 F.3d at 1150.  Based on the record now before the Court, reasonable jurors could differ in their conclusions as to whether defendant's statements were substantially true.  Hence, defendant's defense of truth, at this stage of the proceedings, must fail.

B.  *Defamatory Statements*

Defendant also contends that his statements were not defamatory.  See Def. Mem. at 13-15. Courts must determine whether a statement is "capable of conveying a defamatory meaning" as a matter of law.  S. Air Transp. v. Am. Broad. Cos., Inc., 877 F.2d 1010, 1013-14 (D.C. Cir.

1989). For this inquiry, the Court, sitting in diversity, applies the District's defamation law. "'It is only when the court can say that the publication is not reasonably capable of any defamatory meaning and cannot be reasonably understood in any defamatory sense that it can rule as a matter of law, that it was not libelous.'" White v. Fraternal Order of Police, 909 F.2d 512, 518 (D.C. Cir. 1990) (quoting Levy v. Am. Mutual Ins. Co., 196 A.2d 475, 476 (D.C. 1964)). A statement can be understood in a defamatory sense if it "tends to lower plaintiff in the estimation of a substantial, respectable group, though they are a minority of the total community or plaintiff's associates." Afro-American Publ'g Co. v. Jaffe, 366 F.2d 649, 664 n.10 (D.C. Cir. 1966).

The Court concludes that defendant's statements are capable of conveying a defamatory meaning. Plaintiffs point out that the Iranian-American community "overwhelmingly disapproves of the government of the Islamic Republic of Iran." Parsi Aff. ¶ 8; see also id. ¶¶ 9-14 (describing how defendant's statements have allegedly damaged plaintiffs' reputation). If, based on defendant's statements, the Iranian-American community believes that plaintiffs are employed by the Iranian government, then defendant's statements may have "lower[ed] plaintiff[s] in the estimation of a substantial, respectable group." See Afro-American Publ'g Co., 366 F.2d at 664 n.10. Hence, the Court cannot find that defendant's statements are incapable of conveying a defamatory meaning as a matter of law.

## IV. Fact-Opinion Distinction

Defendant also characterizes his statements as opinions, not facts. See Def. Mem. at 15-19. The First Amendment protects statements of opinions -- "[h]owever pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." Gertz, 418 U.S. at 340. To assist courts in distinguishing between

facts and opinions, this circuit has set out a four-factor test: (1) the common usage or meaning of the specific language used in the statement; (2) the statement's verifiability; (3) the full context of the statement; and (4) the broader context in which the statement appears.  See Ollman v. Evans, 750 F.2d 970, 979 (D.C. Cir. 1984).

The thrust of plaintiffs' claim addresses statements of fact, not statements of opinion. Defendant insists that certain words in his challenged statements suggest the opposite conclusion. Words like "unwary" and "smokescreen," defendant maintains, demonstrate that he was expressing his point of view and nothing else.  But the full context of the challenged statements, not isolated words, determines whether statements are ones of fact or opinion.  See id.  And, as discussed above, the "sting of the charge" is that plaintiffs are agents of the Iranian government. This is a statement of fact.  It can be verified -- plaintiffs either are or are not agents of the Iranian government.  See id.  Moreover, defendant's statements are not intangible or imprecise words with widely divergent definitions.  See id. at 980-81 (explaining that political terms like "fascist" lack a "correct" definition and that terms like "sloppy and irresponsible" are too imprecise to support a defamation action).  Take, for example, defendant's statement that "Trita Parsi was the regime's trusted man within the new network."  Compl. ¶ 17(D).  Even shorn of adjectives, the statement contains a statement of fact:  that Dr. Parsi is an agent of the Iranian government.  Therefore, again based on the current record, the Court rejects defendant's argument that his challenged statements are opinions, not facts, warranting dismissal of plaintiffs' defamation action.

## V.  Paragraph 18(C) of Complaint

Finally, defendant requests that the Court strike paragraph 18(C) from the complaint.

Paragraph 18 lists a number of allegedly defamatory statements made by defendant, including the following statement set out at paragraph 18(C) (brackets in original):

> Obviously, the Swiss ambassador [Parsi] did not intend to put at risk such a historical event by turning to Bob Ney's group. He was surely instructed by his Iranian contacts to do so.

Defendant made that statement in an article entitled "Iran's 2003 Grand Bargain Offer: Secrets, Lies, and Manipulation." See Compl. Ex. 2. But, as defendant points out, his article never referred to Dr. Parsi as the Swiss ambassador, but instead clearly identifies Tom Guldimann as the Swiss ambassador. See Def. Mem. at 28-29. To be sure, plaintiffs may have accidentally misplaced the bracketed portion or made some other typographical error. Yet plaintiffs are silent on defendant's request that the Court strike paragraph 18(C). Because, as written, paragraph 18(C) misconstrues defendant's actual statement, the Court will strike paragraph 18(C) from the complaint.

## CONCLUSION

For these reasons, defendant's summary judgment motion is denied. A separate order has been issued today.

**SO ORDERED.**

/s/
JOHN D. BATES
United States District Judge

Dated:   February 4, 2009