# ATTACHMENT A

# National Iranian American Council (NIAC)
# Annual Board of Directors Meeting / October 26, 2007 / Washington DC
## Minutes

**Directors present:** Trita Parsi (President), Djamshid Foroughi (Secretary), Alex Patico (Treasurer), Mohammad Navab (returning), Parissa Behnia (returning – by phone), Dokhi Fassihian (returning), Kaveh Maleknia (new), Sean Jazayeri (new), Reza Firouzbakht (new), Kami Molavi (new), Marsha Eshraghi (new – by phone).  Absent: Hossein Hosseini (no proxy determined), Sean Murphy (no proxy determined), Elahe Ensani (no proxy determined), Marjan Ehsassi (Emeritus Board Member).

Trita Parsi, NIAC President called the meeting into session at 10:10 AM.

After determining that a quorum was in effect, pre-agenda discussions took place revolving around membership recruitment, organizational procedural issues (and clarification), need to re-brand NIAC, board versus membership input, local organizational structure, prioritization plan in view of resource constraints, budget and sources of funding, lobbying activity vis-à-vis 501c3 status (legal framework discussion), $75MM fund concerns, and the availability of 2006 board meeting minutes.

It was agreed that each item would be discussed in tandem with the meeting agenda, which was in turn unanimously approved with a further recommendation to discuss item six (6) ahead of item five (5).

Parissa Behnia asked for clarification regarding items to be discussed during the board meeting, to which Trita responded:  clarification of political issues, clear review of mission and branding (long overdue), need to be "on the same page", target fundraising at a local level and incent board membership expansion with participation from other geographic areas.

### 1st order of business:  Fundraising Event Recap

Trita referred to last night's gathering at Citi as a "great event", with somewhere between $42k and $45k raised at a cost of between $4k and $5k.  The pyramid approach was viewed as a success, with recommendations made and agreed by all to duplicate in Chicago and Los Angeles.  Trita mentioned the benefit to having a fundraiser with a backdrop of an emotionally driven cause combined with a good lawmaker to "pump up" the attendees.  Alex Patico felt Rep Jim Moran was impressive, had done his homework, and spoke from the heart thereby "firing people up".  Kaveh Maleknia urged NIAC staff to quickly follow-up and collect funding commitments.  Notable by his silence during the pyramid event was Abdi Parvizian.  Kami Molavi recommended we provide a range of funding options to contributors.

### 2nd order of business:  Election of Officers

Trita introduced the process by stating his view that all three officers should be based in the Washington metropolitan area and all members present concurred.  Kaveh wondered whether the Secretary/Treasurer could be designated as a "dual role" but agreed with the majority view regarding the need to maintain three distinct officer positions.

> - President / Trita Parsi was unanimously nominated and elected to a 4th consecutive term.

> - Treasurer / Djamshid Foroughi offered to stand with a view toward presenting a more logical considering his banking background and expertise, and the perceived notion that the Treasurer role was minimally time consuming and required close cooperation with NIAC's accountant.  Again, the nomination and election was both unanimous and unopposed.

> ➢ Secretary / Djamshid Foroughi nominated Alex Patico (role reversal) who then declined, citing his intention to resign from the board in the very near future. A discussion ensued, with Alex clarifying his reasons (personal/family, need to focus on both CASMII activity + new book on US-Iran relations, and a new professional opportunity) while stating his continued commitment to the NIAC cause. Dokhi Fassihian received the board's unanimous nomination and was duly elected (having requested clarification of the role and amount of time commitment required).

The board did not discuss the VP position(s). Alex Patico agreed to serve in an "advisory" board capacity.

### 3rd order of business: Review of Financials & Membership Report

Trita initiated the review by summarizing NIAC's year in comparative terms, reflecting on 2005 - 2007 (YTD) revenues and the rising trend from $242K (2005) to $411K (2006) and (YTD 2007) $374K leading to a run-rate projection of nearly $500K.

Trita cited the increase in IA membership donations (15% annualized) and the key factor of increased grants, due almost exclusively to NIAC having adopted an approach to pursue foreign policy and war related issues in January 2006. The US-Iran media initiative has also provided a boost.

Parissa or Marsha asked about creating a "pie chart" to reflect sources of funding and it was agreed to provide graphs and charts in order to better reflect the trends and data.

Trita summarized NIAC's traditional tendency to focus on civic participation, but that those efforts must now be self-funded since US foundations have stopped funding these activities. Trita mentioned the parallel relationship between attacks on NIAC and increased funding. Djamshid cited the need to focus on underserved populations within the NIAC fold in order to access funding from Citi Foundation. Reza Firouzbakht wondered if NIAC would then need to expand it's base. Alex spoke of the "different world" we now operate in, with a "disaster in the works" and the need to maintain our collaborative effort with organizations such as UPJ and the 1,400 or so others in tune with our position, as well as embracing the moveon.org umbrella of 4M members.

Trita expanded on the virtues of NIAC as a "grass roots" organization and the increased legitimacy inherent. The average NIAC donation stands between $112 and $150 per year with 74.9% coming from the IA community. This poses an effective counter argument to those questioning our legitimacy and independence. Sean Jazayeri questioned the budget format and noted inconsistencies in terms of line item placement (i.e. restricted donations) and wondered whether NIAC had only raised $35K YTD. Kaveh referenced the Atlanta fundraiser earlier this year, which brought in approximately $35K. Trita responded that this amount has been allocated under the "membership" line stating that contributions are tagged as memberships, with excess amounts above and beyond the various tiered level noted as tax-exempt donations versus the membership fees. Sean asked about payroll taxes, Kaveh wondered where the balance sheets were (will be provided by accountant) and asked where the $250K current account funds were housed. Citibank (of course!) was the response from Trita and Djamshid. Kaveh stated the need to reflect financials on a "cash basis" and Trita clarified the fact that the balance sheet will not reflect the 1st $50K deposit of the Eurasia Foundation $200K grant, which is being returned.

Trita reviewed the membership trends: 1,034 (2005) increased to 1,307 in 2006 and 1,680 as of today – citing these figures as "absolutely unacceptable". Sean asked whether or not NIAC's email list had also expanded to which Trita replied in the affirmative (Debra Cagan campaign reflected an estimated 25,000 recipient list with 4,000 "open"). Different system options were discussed (Topic etc) while Marsha recommended board members and others supply potential member email addresses to (Trita recommended Shami, a NIAC staff person).

Sean wondered about the "abandonment rate" of members, and the how and why's thereto for with Trita citing the "fringe folks" and the often experienced delays in "renewals" citing that some board members even renew late. Sean mentioned additional, alternative platforms to email, while Trita discussed "triple memberships" with more foundation funds being leveraged in this manner. Trita stated that emails do not equate to membership, Parissa referenced the "stingy element" in Chicago, Sean stressed the need to differentiate between paying and non-paying members and urged NIAC not to ignore the value of non-paying members (effectively, the board agreed to investigate the creation of a new, non-paying member category). Alex felt it would not be deceitful to mention NIAC as being comprised of 25,000+ members when dealing with the media and other inquiries. Members, donors, supporting members – all are in NIAC's realm.

Sean recommended the adoption of a new model, one where memberships are viewed as complicit, acquiescent and implicit. Kaveh raised the need to provide the option of "matching grants" to increase leverage capabilities.

Trita stated that a $40 NIAC membership effectively acts as a "loss leader" as a result of the time and overhead involved in recruiting to that "basic membership" level and mentioned the option of restricting access to web information and key updates only to paying members, as an incentive for this group to upgrade membership. Sean disagreed citing the need for the entire membership to benefit from critical and time sensitive information. Reza mentioned non-paying members would be turned off when realizing their limited access, Marsha pointed everyone to the direction of expanding into the "blogosphere" and additional new tools such as pod casting, blogging etc. and entering the realm of "hyper communication" enabling NIAC to interact in real time with the membership base increasing their loyalty factor. Trita cited the need to protect strategic decisions from all and sundry and the need to reduce membership information as a result of moves. Kami recommended that strategy discussions and issues of tactics be postponed.

Trita requested that the formation of standing committees can help address many of these issues (expanding membership etc) and would be discussed later.

### 4th Order of Business: Review of Political Developments and Strategies

Trita began the discussion by citing the improved climate for listening to IA's (thanks to the Iraq mess) and referenced the 86+ meetings staffers at NIAC have held with the media since April 2007. The meetings and approach have been much more collaborative and bi-partisan in nature. Djamshid asked about NIAC interacting with Jewish Voice for Peace, and Trita responded affirmatively and mentioned the Robin Wright piece in the Washington Post as having been written and published because of references made to the American Conservative Defense Union.

NIAC is not endorsing candidates - Houshang Amir-Ahmadi's group (IAC) has plumped for Dennis Kucinich, Djamshid mentioned the chameleon nature of IA's voting for Republicans. Kami stressed the need to broaden our coalition and asked about the number of organizations NIAC currently engages. Trita mentioned that there were about fifty partnerships with 12 or so being active and pointed to Emily and Babak as the key movers behind these efforts. Per Trita, NIAC is centrist, and approaches to trade unions and the Center for Arms Control do not deflect from this position. Dokhi asked about how well NIAC has established itself on the Hill and Trita cited regular contacts with between 12 and 20 congressional offices (Emily) adding that NIAC cannot compete with the AIPAC budget of $25M and we need more full time staff to aid Emily.

Trita: increase number of friends while reducing the number of enemies. In the Senate, Jim Webb is a key ally and his staffer Jennifer Park (Korean-American) has been excellent. Webb's lack of oratory

charisma was noted by several board members. Dokhi asked about NIAC's interaction with the Jewish community and Trita replied that we have been in communication with many, including United Jews for Peace and AIPAC. Djamshid wondered why NIAC would not consider debating AIPAC. Trita clarified the fact that AIPAC does not debate – they are all-action and only move forward with their clear agenda. Alex raised the fact that AIPAC is successful in some measure because they operate "under the radar" and employ the axiom "don't do it publicly". "A lobby is a night flower" quote was mentioned by Trita as another example of how to lobby effectively.

Sean raised the specter of the $75MM fund and how NIAC may be outmaneuvered into being portrayed as "anti democracy" by virtue of our stance against the renewed funding for "regime change". Trita explained the NIAC strategy of countering rumors and spinning into the media, and mentioned NIAC's stance on re-allocation of the $75M away from regime change and into the other two "pots" of VOA and Cultural Exchanges.

Trita discussed at length the attacks on NIAC by Michael Rubin, Kenneth Timmerman and the funding (behind the scenes) of David Horowitz and the parallels to the pre-Iraq war days and support of these neo-con's for Ahmad Chalabi type puppets (Akbar Abdi, Hassan Daieoleslam etc). Reza moved we discuss item #6 on the agenda ahead of item #5 – seconded by Djamshid.

Trita mentioned a weekend spent discussing the $75MM funding with the New American Foundation (Steve Clemence) and how the attacks on NIAC will never be reduced but instead how NIAC should focus instead on getting our message out. Trita stated that there is a clear connection between Human Rights and "stop war" effort and that the interconnections are magnified by the geopolitical climate between the US and Iran and how "regime change" counters the "reduction of war drums" and the absence of diplomacy hinders the negotiation option. Iranian civil society and NGO's are being sabotaged by the $75MMM approach and Trita emphasized how we cannot compartmentalize issues. The "democracy fund" is hurting the human rights movement in Iran (Mohammad Mansouri and the 150 NGO's in Iran were referenced).

Dokhi pointed out that the United Nations high commissioner of Human Rights can be brought into the equation to stop the $75MM. Alex agreed with Trita that the "continuum" cannot be "plucked apart" and Kami cited overt budget discussions directed at regime change and the promotion of democracy in Iran. Alex felt the importance of these issues were symbolic in nature and portrayed for the Iranians a picture of the US as not just "crazy Bush" and shows how one can do harm with all the best of intentions.

Dr. Mohammad Navab felt these efforts were counterproductive and destructive and mentioned the example of the Iranian Cardiologist Society and the Association of Professors and Lecturers of Iranian Studies and their broken ties to Sharif University faculty (distrust etc).

Trita referenced how NIAC polled its members and that we are now deep into this debate and cannot back down or get out of it and that we must beat back the US administration. Condemning human rights violations in Iran and filling the void left by Akbar Ganji and Shirin Ebadi and others who will not go to Congress with their concerns is a NIAC duty and we can focus on taking small steps, such as getting the US administration to lift sanctions on American NGO's. NIAC must help switch the debate within the media and force the focus to be squarely on solutions. Trita provided the example of Shahri Estakhry's organization and their impasse with respect to OFAC licenses (OSI example and search for common ground).

Kami expressed his view that NIAC must pick where it needs to go while Reza again pointed out his discomfort with the unclear mission – is NIAC here to prevent war, and if so, what is the plan? The entire board agreed that stopping war is the singular and key priority. Alex emphasized the need to remain multi-dimensional, while Trita expressed the importance of declaring victory on just one issue

and taking it from there – the Webb amendment which would force Congress into exploring diplomacy before taking any action serves as a legitimate target for success. Dokhi discussed the lack of a "centrist" approach (Webb amendment) to the debate on Iran with the extremes prevailing and even Hillary being on the "right" of the spectrum. Trita agreed and cited the Hamas example where it is illegal to even speak with the Hamas organization, and wants to see the push for diplomacy take center stage and force the reactionaries into a defensive posture.

Alex and Trita agreed that the push for diplomacy will not be effective unless Bush is pressured and NIAC's best recourse may be to "buy time' until this administration exits the political stage. Alex raised the parallel of the Carter-Reagan election where the Hostage Crisis framed the issues and allowed Reagan to win in a landslide. Reza asked about strategic options, and Trita mentioned the imperative that we must all be on the same page, so he will instruct the NIAC staff to produce a report on our strategy to combat the $75MM re-appropriation.

At 1:45 PM the board recessed for lunch.

### 6th Item of Discussion: New Board Communication Plan

It was agreed to arrange for conference call meetings on the 1st Tuesday of every other month – with December 4th as the kickoff date, in order to improve intra-board communication. The calls will be initiated at 9:00 PM EST and are expected to last one hour. The call-in number will be provided by either Djamshid via Citi or another board member (TBD). Emergency meetings may be called by any board member, as necessary (same call-in number) and by unanimous vote, it was agreed to twice annual board meetings in person, rotating locations from one region to another, and combining to ensure a fundraising event is "attached" to the board gathering and having a MOC present to ensure the chances of a successful effort. It was acknowledged that the DC region offers the benefit of a critical mass (especially in view of Congressional presence). Sean recommended that we postpone the decision to have board members update their respective, local membership base.

### 7th Item of Discussion: Adoption of New Mission Statement and Core Values

Parissa and Marsha presented (via telephone and handouts) a SWOT analysis, and discussed their thoughts and ideas regarding core values and a mission statement. After extensive review and discussion, it was agreed to codify the values and mission statement and present actionable items. Parissa and Marsha will follow-up and present the board with final recommendations.

### 8th Item of Discussion: Formation of Standing Committees

Marsha initiated and led the discussion. Four committees are proposed – after considerable discussion involving all board members present, it was agreed to move forward with (a) Fundraising (b) Membership and Recruitment (c) Advocacy & Legislative issues (d) Community Outreach and Public Relations, and add a fifth (Governance) at the suggestion of Kami. Each committee will appoint a "Board Sponsor" in tandem with a NIAC staffer (to be recommended by Trita). Channels of communication will be formalized and a calendar component will be included. Each committee will include a leadership component and have a clearly stated objective.

Kami also recommended the formation of a Finance Committee, with Kaveh expressing the need to improve our financials (balance sheets, P&L, better formatting, etc). A brief discussion ensued and was quickly determined to have a Treasurer's Report" in lieu of a Finance Committee, to be presented "periodically". Kami suggested that the Governance Committee take on the dual responsibility of keeping tabs on all the committees and manage board recruitment activity. Parissa mentioned the

difficulty engaging the IA community in Chicago due to the image she projects as a daughter versus NIAC activist.

The following committee assignments were made (and unanimously endorsed) with volunteers acknowledged and NIAC staffers appointed (by Trita):

- Fundraising – Kaveh (Board Sponsor) + Sara Shokravi (NIAC Staff) + Reza, Trita, Kami, Hossein
- Membership & Recruitment – Sean (Board Sponsor) + Shami Sahandi (NIAC Staff) + Reza, Parissa
- Advocacy & Legislative Issues – Trita (Board Sponsor) + Emily (NIAC Staff) + Dokhi, Reza
- Community Outreach & Public Relations – Hossein (Board Sponsor) + Babak Talebi (NIAC Staff) + Marsha, Dr Navab, Parissa
- Governance – Kami (Board Sponsor) + Shabnam (NIAC Staff) + Djamshid

Babak Talebi was identified as key to the CO/PR committee as he has extensive experience working with other organizations and Shami Sahandi, as NIAC's office manager, has access to websites and can update information and manage a board calendar (governance).

The issue of lobbying was raised with Trita providing clarification related to NIAC's standing: currently, only 2% of our budget is decked against lobbying activity, but Trita would like to see this figure raised to 20% in view of our key objective goal, which would equate to $48K being spent every 6 months. There is no admittance of lobbying and the board is consulted on all lobbying decisions. It is vital that the NIAC Board remains in step with the staff and membership. Trita emphasized the community bridge-building element and mentioned the need to understand that "education goes both ways".

Parissa Behnia left the conference call at 4:40 PM.

### 9th Item of Discussion: Defamation Issue

Trita provided an update on the defamation issue and indicated how the Pishevar Associates "cease and desist" action had been effective and now a decision was required to press forward against Daieoleslam and his blogging (and incur potentially greater expenses if the neo-cons and/or MKO decided to support his cause and pay legal fees on his behalf), or consider the action as having been successful. The same applies to the VOA situation. In both cases, NIAC has sent out a clear message that we will fight back if attacked. The ensuing board discussion revolved around focusing not on Daieoleslam so much as raising the stakes against the VOA and moving forward to demand and win a "retraction" with a lawsuit entirely possible – the broadcasting board of governors must be alerted and become involved and such as Houshang Amir-Ahmadi's vain and failed attempt at presenting the IA viewpoint and position when appearing on Hannity & Coombs shows just how critically important it is to be competent and that "we need to shape our own image" and "define ourselves". Sean stated that we must acknowledge and promote the fact that our identity cannot be viewed through any one, single lens. Trita stated that we cannot be too far ahead of the community as we work to "promote our image".

The board discussion increasingly moved toward pursuing legal action on the VOA front and Reza moved to have NIAC set aside $5K in funding to proceed with action against the VOA. Djamshid seconded the motion, which then passed unanimously.

### 10th Item of Discussion: Eurasia Fund (EF)

Trita provided the background information leading up to the EF issue expressing his disappointment and said that the EF had effectively "lied to their grantees" with grants being provided from the $75MM fund. This has the potential to discredit and stain NIAC and other recipients. Alex clarified the options available to NIAC: (1) Let the issue die a quiet death and hope no one ever hears about it (2) be proactive and spin the issue truthfully and aggressively (3) Wait and play it straight if and when the information is leaked (Dr Navab's preference).

It was decided that no decision will be made until we first meet with EF and we see the reaction to our op-ed regarding the return of the NED funds.

Trita polled the board members with respect to possibly partnering with noted lobbyist and former AIPAC head Tom Dine who is being paid $60K (at $10K per month) by the Pluralism Fund and has been tasked with advising NIAC on "how to become influential". Reza insists that we focus Tom Dine's consultative energy and expertise on "stopping the war" and the board agreed – in principal – to take advantage of the offer and opportunity, as Trita confirmed NIAC would not be paying out any consulting fees to Tom Dine.

Goli Ameri initiative and the creation of PAAIA with Hassan Nemazee and others. Received $3MM in contributions, fully one-half of which came from Houshang Ansary. PAAIA wants to be 501c3 and 501x4 and PAC – everything to everyone. Trita mentioned key Silicon Valley IA's as having contributed (Kamran Elahian at $25K level, for example) and expressed admiration for Goli Ameri's fundraising abilities while lamenting the fact that NIAC has not been able to fill the wealthy IA tech leadership "space". Kami wondered whether we could ask PAAIA to join us in the "stop the war" cause. Trita mentioned that IAPAC (Hassan Nemazee) was likely to fold in the wake of PAAIA's advent.

### 11th Item of Discussion: Staff Review

Trita discussed the current staffing situation, provided information regarding Babak Talebi's condition and possible issues, and requested a $5K raise citing a 16 month period of successful leadership without a merit increase. Trita left the room so that the board could discuss and vote on his request: everyone agreed Trita had done a great job and Kaveh Maleknia proposed a salary increase to $90K while Sean and Djamshid thought a 10% increase (to $88K) was in order. A debate regarding the applicability of an annual bonus ensued with everyone agreeing on the merits especially in view of continued progress with respect to the numbers (membership, revenues, fundraising, etc). Trita was invited back into conference and presented with a summary of the board discussion and positions, and rejected the offers made settling for a $5K raise (which the board insisted should be retroactive to August 1, 2007 and the one year anniversary of Trita's hiring) citing the need to set the right example for his staff and ensuring that they are not treated any differently when the time comes for their respective raises.

The issue of Alex and Dr. Navab's compensation for the one month of work elated to the EF project was then raised, discussed and voted upon, with all but Alex (against) and Dr. Navab (abstaining) in favor of providing compensation.

The NIAC budget was extensively analyzed and Trita implored the board to follow Goli Ameri's example and actively pursue fundraising efforts along the same lines. Djamshid asked whether we would find ourselves competing with election dollars and also recommended a letter be drafted and sent to the key PAAIA donors and contributors (Houshang Ansary excepted) asking them to consider supporting the only effective IA organization in this time of urgent need and crisis. Sean spoke of the "junket versus high roller" approach his company had promoted as a consultant in Las Vegas. Djamshid reminded Trita that Citibank had also been a key contributor to NIAC in 2007 and wondered why the approximately $20K in contributions and sponsorships had not been reflected. Trita acknowledged the omission and promised to update and correct the budget.

At 5:35 PM Reza left the meeting and joined by teleconference 10 minutes later.

Reza raised the option of creating an endowment and initiating a capital campaign. The board discussed the need for a capital committee to be formed if this approach was adopted.

Trita then discussed the status of new brochures, business cards and annual report, stating his preference for a 5 year annual report approach. Dokhi disagreed and stated the need for at the very least a bi-annual publication, with most of the board members concurring. Trita floated the idea of sub-contracting the annual report to Alex as the last, successful attempt (2003) had taken entirely too much time and was eventually compiled just a couple of months prior to the end of the year. Sean and Djamshid felt this would be a good option.

Kaveh Maleknia offered to send Djamshid a more appropriate format for accounting and budget reporting purposes. Trita expressed his view that NIAC needs to adopt some of MoveOn.org's tactics and stay in touch with our membership and making sure we are always doing what our members want. Polling the membership was discussed with different ideas being offered, but no determination or decision was reached and it was agreed this and other items would be discussed at the December 4th conference call. Sean asked about board elections and it was agreed that the Governance Committee would look into the issue and make recommendations. Trita and Sean both favor a more democratic approach.

Trita also referenced being approached by Homeland Security with respect to possible steps and measures that might be required should war break out and any contingency plans that may need to be drafted. The board chose not to dwell on such possibilities.

Finally, Djamshid raised the re-branding issue and Trita stated the need to completely re-tool and re-brand the NIAC image, logo and mission statement all of which are outdated.

There being no further discussion, the meeting adjourned at 6:20 PM.

# ATTACHMENT B

IRVIN B. NATHAN
GENERAL COUNSEL

KERRY W. KIRCHER
DEPUTY GENERAL COUNSEL

CHRISTINE DAVENPORT
ASSISTANT COUNSEL

U.S. HOUSE OF REPRESENTATIVES
OFFICE OF THE GENERAL COUNSEL
219 CANNON HOUSE OFFICE BUILDING
WASHINGTON, DC 20515-6532
(202) 225-9700
FAX: (202) 226-1360

JOHN D. FILAMOR
ASSISTANT COUNSEL

RICHARD A. KAPLAN
ASSISTANT COUNSEL

KATHERINE E. McCARRON
ASSISTANT COUNSEL

May 7, 2009

**BY ELECTRONIC MAIL ONLY**

A.P. Pishevar, Esq.
Pishevar & Associates, Inc.
600 E. Jefferson Street, Suite 316
Rockville, MD  20852

Re:   *Parsi v. Daioleslam*, No. 08-cv-00705 (D.D.C.) (JDB)

Dear Mr. Pishevar:

I write to confirm that we have undertaken a Speech or Debate Clause privilege review of the documents provided to us on behalf of our clients. As you know, we represent former U.S. Representative Robert Ney of Ohio and all other Members of Congress and staffers identified in the congressional documents at issue in the above-referenced litigation.

The documents we have received from you, your client (plaintiff Trita Parsi), and the National Iranian American Council (NIAC), an organization affiliated with Mr. Parsi, fall into four categories:  (1) electronic NIAC documents that relate to the organization's contacts with Congressman Ney, provided to us on April 16, 2009; (2) electronic documents that primarily relate to Congressman Ney, provided to us by Mr. Parsi on April 17 and 23, 2009; (3) hard copies of NIAC documents that reflect communications between that organization and Members of Congress, provided to us by NIAC on May 4, 2009; and (4) electronic NIAC documents (five CD's) that reflect communications between that organization and Members of Congress, also provided to us by NIAC on May 4, 2009.

We have completed our privilege review of categories (1)-(3). At this time, our clients decline to assert the Speech or Debate Clause privilege with respect to any of the documents in those three categories, although they affirmatively do not waive their right to assert the privilege at a future time.

With respect to category (4), we have just begun our review. (We had previously understood, incorrectly, that the files contained on the five CD's were electronic copies of the category (3) hard copy documents.) We will complete this review as expeditiously as possible, although you should recognize that it is time consuming for us to contact the individual Members and staffers whose communications are reflected in those files. Once we have completed our review, we will be in touch with our objections, if any, to the release of the remaining documents.

A.P. Pishevar, Esq.
May 7, 2009
Page 2

Thank you for your consideration.

Sincerely,

Christine Davenport
Assistant Counsel