## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TRITA PARSI** )<br>)<br>**and** )<br>)<br>**NATIONAL IRANIAN AMERICAN COUNCIL** )<br>       **Plaintiffs,** )<br>)<br>       **v.** )<br>)<br>**DAIOLESLAM SEID HASSAN,** )<br>)<br>)<br>       **Defendant.** )<br>) | **Civil No. 08 CV 00705 (JDB)** |

### DEFENDANT'S MEMORANDUM REGARDING PLAINTIFFS' FAILURE TO PRODUCE LOBBYING CALENDAR AND TIME RECORDS AND EMAILS

The Parties come before the Court to seek assistance in resolving disputes over three discovery matters: (1) Plaintiffs' failure to produce calendar and time records regarding their lobbying activities; (2) Plaintiffs' failure to explain why calendar records were altered; and (3) Plaintiff's failure to produce emails for two NIAC principals.

### I.    PLAINTIFFS FAILED TO PRODUCE CALENDAR AND TIME RECORDS REGARDING THEIR LOBBYING ACTIVITIES.

The extent and substance of NIAC's lobbing activities is a central issue in this case, and acquiring records documenting those activities is an important part of Defendant's ability to mount a defense. In February 2009, Defendant sent thirteen specific document requests under FRCP 34. (Ex. A). One of those requests was for: "All documents referring to NIAC's activities as lobbying, exercising political influence, taking positions on United States policies, or persuading United States political officials." The definition of "documents" included:

"agendas, calendars, diaries, and appointment books."  Defense counsel repeatedly asked

Plaintiffs' counsel if there were any records of lobbying meetings in Outlook calendars (as NIAC

used Outlook for email) and time records, only to be informed:  "Everything has been produced."

At the October 5, 2009 deposition of David Elliott, who was tendered to describe NIAC's

document collection procedure, Defendant was surprised to learn that lobbying time records had

been kept since the beginning of 2009.  Shortly thereafter, Defense counsel requested that the

documents be produced as soon as possible and, at a minimum, prior to the deposition of Emily

Blout, NIAC's Legislative Director through March 2009.  Blout's deposition took place on

December 8 without any time records being produced.[1]  At the deposition, Defense counsel

again requested that the lobbying time records be produced as soon as possible.

Throughout the deposition, Blout denied that she engaged in any lobbying.   She did

admit, however, that NIAC's Outlook calendar records reflected meetings with Congressmen

and staffers but they were not produced because she did not interpret Defendant's requests to

include calendars.  Plaintiffs' counsel also informed Defendant during Blout's deposition that

NIAC had amended its 2008 tax return to admit that it was engaged in lobbying.  Why none of

these lobbying time records, Outlook calendar records, and the amended tax return (which is

dated June 1, 2009) were produced until nearly a year after their original request and not until

*after* Blout's deposition is one of the issues presented here.

## II.      PLAINTIFFS FAILED TO EXPLAIN WHY CALENDAR RECORDS
##          WERE ALTERED.

The second issue presented here is even more troubling.  The 2009 Outlook calendar

entries Plaintiffs finally produced on December 28 indicate that about 1/3 of them were altered

on December 25-27 (a national holiday and the Saturday and Sunday thereafter, when NIAC's

---

[1] Blout's deposition was cancelled twice just a day before it was scheduled, resulting in Defendant incurring
cancellation fees by the court reporters which Plaintiffs have refused to pay.

offices were closed).  On December 28, Plaintiffs also produced the lobbying time records for all of 2009 and a 2008 tax return amended June 1, 2009 admitting that NIAC was lobbying.   On December 31, Defendant emailed Plaintiffs' counsel and asked why only 2009 calendar entries were produced, that NIAC instruct its employees not to make further alterations to Outlook records, and for a forensic image of the Outlook files to determine what was altered and by whom.  (Ex. B)  Plaintiffs responded on January 13, and rather than providing an explanation for the Christmas-weekend alterations, Plaintiffs claimed that the request was mere harassment. (Ex. B)

On January 19, Defendant wrote NIAC again requesting the pre-2009 lobbying Outlook records, an explanation for the calendar alterations, and for Plaintiffs to pay for the expenses of redeposing Blout on the late-produced amended tax return and Outlook calendar lobbying records.  (Ex. C)  On February 4, Plaintiffs replied again that somehow the alterations were the result of Defendant's request and that the pre-2009 Calendar records would be produced "in about a week."[2]  (Ex. D)  Amazingly, Plaintiffs also blamed Defendant for the late-produced records:  "You had plenty of time beforehand to make specific requests in preparation for her deposition . . . .  [I]t is your responsibility to at least remind us to provide it to you *before* you decide to depose someone."  According to Plaintiffs, Defendant's repeated requests for these lobbying records is, simultaneously, insufficient and harassing.  On February 12, Defendant again requested an explanation for the alterations and the costs of redeposing Blout on the late-produced lobbying records and for yet another reason — Blout made several substantive changes to her deposition.  (See, Ex. E)  Most relevant to the discussion here, she changed her testimony

_____

[2] As of March 3, the remaining Outlook calendar records have not been produced.  On February 24, when Defendant asked about the status of these, NIAC's counsel asked Defendant to agree to a broad-based confidentiality order before it would produce those records.  The Court has rebuffed Plaintiffs' prior requests for such broad-based confidentiality orders.  The parties, however, have agreed to two narrow confidentiality agreements for certain information.

to now reflect that she was aware of a litigation hold NIAC had put in place, although she was not aware of it when asked about it twice at her deposition.  Ultimately, it appears that the use of staff, rather than counsel of record, to interpret and comply with discovery requests (and at least one who was not even aware of the litigation hold) is the source of these compliance lapses. The most troublesome of these, again, is the alteration of Outlook calendar files and NIAC's inability to explain these.  (See, Ex. F attached)  How is it that approximately 1/3 of these were altered on December 25-27?  Why would Blout, who last worked at NIAC in March 2009, have her calendar entries modified by someone else eight months later?  A forensic image of these files can easily answer these questions and determine if there is an innocent explanation for the revisions.

### III.    PLAINTIFFS FAILED TO PRODUCE EMAILS FOR TWO NIAC PRINCIPALS.

The third issue relates to the emails of two major NIAC principals:  Babak Talebi, a NIAC founder and Community Outreach Director, and Mohammad Mansouri, a former NIAC employee who ran the NGO projected funded by the National Endowment for Democracy (NED) and about which Defendant has written accusing NIAC of defrauding the NED.  (Ex. G) Mr. Talebi has traveled around the country giving seminars on how to influence Congress. NIAC's counsel refused to produce these two individuals and required Defendant to locate and subpoena both men, claiming it did not represent them, only to jump in and represent them when Defendant did subpoena them at great expense.  Then, both men gave a similar story — they threw out their computers, on which their NIAC emails were stored, when the machines "broke." And, according to Plaintiffs, neither man saved any of the data on the machines.  Mansouri's story is particularly troubling, given that he teaches in the Department of Artificial Intelligence at

NJIT and that his laptop (which was purchased with NED-grant money) was discarded a full year after this suit was filed and while these document requests were pending.

Fortunately, emails do not reside solely on the sender's laptop.  Rather, emails are stored on centralized servers.  NIAC employees all used email addresses with the extension "@niac.org," indicating that all emails were sent through and stored on the email server of its internet service provider (ISP).  NIAC, however, has assiduously avoided having the ISP server searched for the emails of any NIAC employees, in particular Mansouri and Talebi.  The fact that these two men discarded their computers is regrettable but not entirely detrimental to Defendant's ability to mount a defense, as their emails are still available on the ISP server and should be recoverable.  As Mr. Elliott testified, there was no need to notify the ISP of the litigation hold when the suit was filed in April 2008 because no emails were being deleted by the ISP.  If the ISP has not preserved emails, then there is a possible spoliation issue in light of Mr. Elliott's testimony.  If, however, the ISP has been preserving presuit emails, as Mr. Elliott testified, then NIAC's refusal to search the email server for Mansouri's and Talebi's emails is inexplicable.

In conclusion, in light of NIAC's failure to produce important lobbying records more than a year after FRCP 34 requests and the inadequate explanations for these failures, Defendant requests that Plaintiffs be ordered to: (1) submit to a forensic imaging of its Outlook calendar records; (2) reproduce Ms. Blout for a deposition regarding the late-produced documents and testimony changes at their expense; and (3) search and produce all responsive emails from the ISP email server.

Respectfully submitted,


_____/s/_____
Timothy E. Kapshandy (Illinois Bar No. 6180926,
admitted *pro hac vice*)
Bradford A. Berenson (D.C. Bar No. 441981)
HL Rogers (D.C. Bar No. 974462)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Dated: March 4, 2010                       Washington, D.C.  20005
(202) 736-8000
hrogers@sidley.com

Attorneys for Defendant
Seid Hassan Daioleslam

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **TRITA PARSI** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **NATIONAL IRANIAN AMERICAN COUNCIL** | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil No. 08 CV 00705 (JDB)** |
| | ) | |
| **DAIOLESLAM SEID HASSAN,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## CERTIFICATE OF SERVICE

I certify that on March 4, 2010, I served Defendant's Memorandum Regarding NIAC's Failure to Produce Lobbying Calendar and Time Records and Emails via email and that I have also sent a copy to the following via first-class mail:

Afshin Pishevar
Adrian Nelson
Patrick Parsa
600 East Jefferson Street
Suite 316
Rockville, Maryland 20852
(301) 279-8773
ap@pishevarlegal.com

Pursuant to D.D.C. L.R. 5.2(a), I will retain the original in my possession.

_____  /s/  _____
Timothy E. Kapshandy (Illinois Bar No. 6180926,
admitted *pro hac vice*)
Bradford A. Berenson (D.C. Bar No. 441981)
HL Rogers (D.C. Bar No. 974462)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C.  20005
(202) 736-8000
hrogers@sidley.com

Attorneys for Defendant
Seid Hassan Daioleslam

Dated: March 4, 2010