

SIDLEY AUSTIN LLP
ONE SOUTH DEARBORN STREET
CHICAGO, IL 60603
(312) 853 7000
(312) 853 7036 FAX

tkapshandy@sidley.com
(312) 853 7643

BEIJING
BRUSSELS
CHICAGO
DALLAS
FRANKFURT
GENEVA
HONG KONG
LONDON
LOS ANGELES

NEW YORK
PALO ALTO
SAN FRANCISCO
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
WASHINGTON, D.C

FOUNDED 1866

January 19, 2010

Patrick Parsa
600 East Jefferson Street
Suite 316
Rockville, Maryland 20852

  Re: <u>NIAC Discovery Responses</u>

Dear Patrick:

  This is in response to your email of January 13.

<u>Lobbying Time Records</u>:

  You state that the times sheets produced December 28 (showing only one time entry per week) together with the calendars you produced on the same day are all the time sheets you have used. However, this is contrary to Mr. Elliott's testimony (page 35). He clearly distinguished the calendar entries from the "timesheets" people began keeping in August. The time sheets you produced go back to January 2009 so cannot be the ones Mr. Elliott described as he testified those were only begun in August 2009. Again, we reiterate our request for the detailed timesheets begun in August 2009.

<u>Calendar Entries</u>:

  There are a number of problems with this production beginning with the fact that you withheld these for nearly 9 months while repeatedly representing that "everything has been produced." I frequently asked you about such calendar entries and you always said, "everything has been produced." It was not until December 8 at the deposition of Ms. Blout when we learned that there were Outlook calendar entries of lobbying meetings. Then, when we finally received these on December 28 the chart that you produced with these indicated that about 1/3 of them were "modified" on December 25-27. As those days were a national holiday and the Saturday and Sunday thereafter when NIAC's offices were closed, this seemed odd, especially since Ms. Blout left NIAC in May 2009. Why would there be a need to "modify" her March 2009 calendar entries on December 26? Rather than provide an answer, you blamed us: "The charge that we somehow spoiled the evidence is baseless since we were only complying with your request."

Sidley Austin LLP is a limited liability partnership practicing in affiliation with other Sidley Austin partnerships

**EXHIBIT C**



Patrick Parsa
January 19, 2010
Page 2

How we are to blame is not clear from this as we never instructed you to modify some of the entries.

There are a number of other problems with the calendar production. First, you have only produced them for 2009 and self-limited them to meetings with government and foreign officials. As we recently learned that NIAC has amended its 2008 tax returns to admit that it was lobbying by then, we should have been provided calendar entries for all years, not just 2009. Moreover, we did not limit the request to just meetings with government officials or "relevant" information. The standard under Rule 26 is "discoverable" information. Thus, you should have included lobbying preparation meetings and meetings with other groups such as CNAPI and CASMI. Rather than correct these deficiencies, you accused us of "turning this into harassment" and state that you have been "producing discovery material to you on a regular basis and in good faith." Again, the lobbying records in the Outlook calendar entries were requested nine months ago and requested repeatedly; the existence of such were not acknowledged by NIAC until Ms. Blout revealed their existence at her December 8 deposition. Our requests for the pre-2009 lobbying entries and the explanation for the December 25-28 alterations are not harassment or bad faith. Please agree to a forensic imaging of NIAC's Outlook calendar entries so it can be determined what was altered and by whom.

2008 Amended Tax Return:

Once you disclosed the existence of an amended 2008 tax return filed June 1 and which reflected $14,771 in lobbying expenses (but not produced until December 28), we asked for the underlying data and substantiation supporting this figure. You stated that "once we have completed the calculations we will produce them to you." It simply cannot be possible that the calculations were not done BEFORE the return was filed. As you know, we have subpoenaed NIAC's accountant who filed the return. We again ask that you produce the data upon which this total was based immediately.

What is most troubling, as I stated in my December 31 email to you, is that you sat on this amended tax return filed June 1 until AFTER the deposition of NIAC's Legislative Director in December where she repeatedly denied that she was doing lobbying (*see*, e.g., pp. 96, 105). As I stated, we will now likely need to reconvene her deposition once we have these lobbying data from 2008 (as well as the pre-2009 calendar entries) and request that you pay the additional expense caused by your failure to produce these before her deposition.

Mr. Talebi's Emails:

As you recall, when we initially asked for the emails of Mr. Talebi (one of NIAC's founders and Community Relations Director for many years), you told us he was no longer with

SIDLEY AUSTIN LLP
**SIDLEY**

Patrick Parsa
January 19, 2010
Page 3

NIAC and we needed to subpoena him, which we did.  After his ignoring our requests for a number of months the court finally entered a rule to show cause and an order to compel against him.  He eventually did show up at our office with his computer; but as he claimed his old computer used for NIAC work had broken and he had thrown it out (with no effort to save data from the hard drive), his new computer contained no information relating to NIAC.  We then began discussions with him about a protocol for reviewing what he claimed were tens of thousands of emails in his gmail account, when you volunteered to represent him and took over the review of his gmail account.  You eventually produced about 120 emails.  When we pointed out that we possessed a January 2008 email from Talebi's NIAC email account that was not produced (which we had produced to you) and questioned the completeness of his email productions, you again claimed that this is "turning into harassment."

There is a systemic problem here and with the productions of Dr. Mansouri's emails, discussed *infra*, which became apparent at Mr. Elliott's deposition.  That problem is that NIAC has not searched its shared server or email server, but rather only individual computers.  With Mr. Talebi's and Dr. Mansouri's computers having been thrown out with no effort to save data from the hard drives, all of their emails were missed unless sent to or copied to another NIAC employee.  NIAC's discovery compliance is further called into question given Ms. Blout's testimony that she was not even aware of the litigation hold in place since filing of the suit in April 2008 (p. 17 ) and Mr. Elliott's testimony that he never instructed NIAC's email provider to change any of its procedures to comply with the litigation hold (p. 169).  It is for this reason that we request a forensic copy of NIAC's shared server and emails on its email server.  We also request the same of Mr. Talebi's gmail account as he was about to permit when your firm interjected.

Dr. Mansouri's Emails:

We experienced a similar tactic with Dr. Mansouri, who ran NIAC's NGO project in Iran for several years with the use of grants from the National Endowment for Democracy.  You told us you did not know where he was and we would have to locate and subpoena him (although you knew somehow that his computer paid for with NED funds had been thrown out).  When we eventually located and spoke to him on December 30, he informed us that he did not use his gmail account for NIAC work but we were free to look at it.  On January 6 you instructed us not to speak with Dr. Mansouri further as you represented him and on January 13 stated that our requests for his emails are "starting to turn into a form a of harassment."  As with Mr. Talebi, the problems with Dr. Mansouri's emails are that NIAC has systematically avoided looking on its shared and email servers for his emails.  As you know, we have subpoenaed him and ask that you accept service as you now represent him and provide us dates for his deposition.



SIDLEY AUSTIN LLP

Patrick Parsa
January 19, 2010
Page 4


Disney Memo To Parsi About Lobbying:

As you will recall, Emily Blout (pp. 64-66) testified about being copied on a memo from Disney to Parsi regarding violation of the Lobbying Disclosure Act in July 2008 but that the memo that was marked at her deposition as Exhibit 7 was not it. You stated that NIAC has "no recollection of such." We are not sure how an entity can or cannot have a "recollection" but we understand that you will look again for such. Please include NIAC's shared server and email server in the search and let us know the search method employed. And, to be clear, we request that any communications Parsi or Disney had about compliance with the LDA be produced. Blout testified that Disney contacted others for advice and Dr. Parsi has publicly stated that NIAC received advice that it is in compliance with all lobbying laws. This would suggest that the Disney 7/23/2008 memo is not the only communication NIAC's employees have had about lobbying laws.

Your complaints about Daioleslam's discovery response will be addressed in a separate letter. Please call me to discuss these issues. If we are still at an impasse on any issues, we will make arrangements for a conference call with the court. Thank you.


Very truly yours,

Timothy E. Kapshandy


TEK:sgo


cc:    Afshin Pishevar
       HL Rogers
       Bradford Berenson

CHI 5156504v.1