# PISHEVAR & ASSOCIATES, P.C.
### ATTORNEYS

600 EAST JEFFERSON STREET
JEFFERSON PLAZA • SUITE 316
ROCKVILLE, MARYLAND 20852
TELEPHONE (301) 279-8773 – FACSIMILE (301) 279-7347
WWW.PISHEVARLEGAL.COM

February 4, 2010

Timothy E. Kapshandy
One South Dearborn
Chicago, Illinois 60603

    Re: *NIAC's Discovery Responses*

This letter is in response to your correspondence of January 19, 2010, regarding NIAC's Discovery responses.

As you know, discovery has been an ongoing process that has taken our clients an immense number of hours to comply with. We have had an understanding that because of the volume of items and requests and the time it takes a large organization to do this, we would be producing in rolling stages as items are located and designated. We are not one person like the defendant. We have gone over and above the call in good faith.

Lobbying Time Records

I addressed this issue in my e-mail of January 13, 2010. I stated therein that:

*[T]hese are the time records used to track lobbying time. These are voluntary tools used to make our client's work easier. They are not a requirement. The "less formal" ones are our calendars. Also, the records we gave you are the timesheets we have used, but we are about to go over to a new system for 2010 that is more detailed.*

Moreover, since *September*, (not August) 2009, NIAC has started keeping time sheets that counted the hours of lobbying done versus the hours worked. Those are the time sheets that have been already produced, *aka* the "detailed time sheets" as you refer to them in your letter.

Calendar Entries

In your e-mail of December 9, 2009, you had requested that NIAC produce calendar entries evidencing meetings with "government and foreign officials." We did not "self-

**EXHIBIT D**

limit" our production as you allege, but instead were simply complying with *your* request.

To comply with your wishes, NIAC's staff has had to dedicate an incredible number of hours and come to work on the holidays, when the office would be normally closed. Indeed, I made that fact abundantly clear to you in an earlier e-mail when I stated that:

*"I must remind that the production of the attached documents was extremely time consuming and was conducted during the Christmas holiday break (when many people are out of town) - in good faith in order to satisfy your deadline."*

So I'm not sure why NIAC employees working on the holidays (to fulfill *your requests*), struck you as "odd," since we clearly spelled it out for you.

And, contrary to your assertion, the calendars have not been modified, rather the calendar "pst" files have been produced per your specific request to list meetings with government officials. This was what was responsive and appropriate.

We are also still collecting the calendar information that you have requested and will be turning them over in about a week. As such, "forensic imaging" is inappropriate.

And, to repeat, NIAC did not keep track of lobbying activities before 2009, so there is nothing for us to produce concerning your request for the "pre-2009 lobbying record."

<u>2008 Amended Tax Return</u>

Regarding your charge that the 2008 amended tax return should have been turned over sooner, I will take your attention to several examples [the links of which are below] of articles that the Defendant has published that weren't promptly handed over.

**See:**

<u>http://www.iranian-americans.com/2009/12/1649.html</u>
<u>http://www.iranian-americans.com/2009/12/1663.html</u>
<u>http://www.iranian-americans.com/2008/11/351.html</u>

Moreover, the 2008 amended tax return was based only on an estimation of NIAC's lobbying activities at the time. And since you have already subpoenaed Mr. Issaco, there is no need for us to discuss this issue further.

There is also nothing suspicious or troubling about our production of the amended tax return and/or calendars. In fact, your demand and requests have been unduly burdensome and over-broad.

PISHEVAR & ASSOCIATES, P.C.
────────────────────────
A T T O R N E Y S

Indeed, the day *after* Blout's deposition is when you emailed me requesting the calendar data for meetings with government officials. How can I comply with a request before the deposition when it was given afterwards?

And, to be sure, we made every attempt in good faith to provide you with the information you had requested before her deposition. For example, I refer you back to the surveys that I sent you, material that was produced after an exhaustive search in order to meet your deadline.

Moreover, before her deposition, you mentioned a need to possibly reconvene it if we failed to bring you her "time records". I take your attention to your e-mail of December 7, 2009, (the day before her deposition) wherein you stated that:

*"Please be sure to bring her time records. I'd hate to have to reconvene her dep just for those."*

As a result, we did a thorough search and came to the conclusion that there were no time records at the time she was employed at NIAC – in our effort to make sure you had everything you needed *before* her deposition.

We did what we had to and will continue to give you what we have located after our search that is in our possession. We have and will do this as fast as humanly possible. You are apparently trying to mischaracterize this to contrive a basis for a frivolous discovery complaint. This is not in good faith.

It was your choice to schedule and proceed with Blout's deposition with the information you had. Your side had plenty of time beforehand to make specific requests in preparation for her deposition.

If, in the vast amount of information we have supplied you in your fishing expedition something was lacking, then it is your responsibility to at least remind us to provide it to you *before* you decide to depose someone. Consequently, we will not agree to pay for the costs to reconvene Ms. Bout's deposition.

I also must remind that we have been constantly been complying with your requests for the production of documents -- even to the detriment of our own discovery needs. Your side has failed to meet even a minimal level of compliance with its discovery obligations. For instance, your client produced files that were garbled and unreadable, and thus of no use. That is truly outrageous and suspect. These are all issues that we reserve to take up with the court should they not be resolved promptly.

If that weren't enough, your client deleted all articles from his website prior to April 2008 when the lawsuit was filed – in violation of the litigation hold that was in place. I remind you that once the lawsuit commenced, your client was prohibited from deleting information even if it dated from before the lawsuit. Consequently, please produce these missing articles by February 12, or inform us by that date we can expect to receive them.

PISHEVAR & ASSOCIATES, P.C.
ATTORNEYS

Mr. Talebi's Emails

Again, we have addressed this issue ad nauseum and will be forced to take up the matter with the court should it continue.

To restate, Babak Talebi did not use his personal gmail account for work purposes. That's why we found 122 emails that matched the search terms and were pertinent Moreover, the one email you provided us as somehow being evidence that we withheld information is plainly not a valid example. I refer you back to my earlier email of January 13, 2010, for the reasons why:

*"Talebi Email - The email you gave us is dated from January 2008, several months before the current lawsuit began - hence it was from a time when there wasn't a litigation hold in place. Moreover, the email is from Talebi's niacouncil.org account, and for that reason alone would not have shown up in the search of his gmail account. I do not know if there is a miscommunication between you and your associates, but these facts should have been very clear. And your constant questioning of us about them is turning into harassment that we do not appreciate, as it is both time consuming and fruitless."*

I was quite clear back then only a few days ago, so I do not understand why the same questions are being asked over and over again. Again, we will be forced to seek the court's intervention should this constant harassment continue.

As a result, we will not agree to a forensic imaging of Mr. Talebi's gmail account. NIAC has performed its discovery obligations in good faith; it does not have an email server, and the shared (document) server was searched for any pertinent material, contrary to your allegations that "NIAC has systematically avoided looking into its shared and email server."

Our clients also specifically informed their employees about the litigation hold in place. In fact, Ms. Blout's attorney, David Wilson, just informed us that she was confused by your question about the litigation hold. That is, she did not know what the phrase "litigation hold" even meant. Once its meaning was explained to her, she remembered being told by NIAC not to delete anything pertinent to the litigation. Although she does not recall the exact phrase "litigation hold" being used - its meaning was nonetheless clearly conveyed to her. Consequently, Ms. Blout is in the process of changing her deposition transcript to reflect as such.

For the foregoing reasons, your concerns about NIAC's discovery obligations are unfounded, to say the least.

Dr. Mansouri's Emails

PISHEVAR & ASSOCIATES, P.C.
ATTORNEYS

We have made our position on Dr. Mansouri's emails quite clear already. As I explained to you in my email of January 13, 2010:

*"Mansouri- Again, we reiterate that all of his emails were kept on his laptop which was subsequently thrown away by him since the hard-drive crashed. NIAC does not store emails on any central server. All of an individual's emails were on their own computers. This is starting to turn into a form of harassment as we have mentioned these facts over and over again".*

Our frustration with the same questions being repeated is quite evident in that email. So you can imagine how we feel now after being confronted again with the same queries that fail to respond to our earlier replies. Please stop asking about this issue or we'll be forced to take the matter up with the Court.

Finally, Dr. Mansouri informed both of us (before we started representing him) that his computer was thrown out (per his email to your associate, HL Rogers, on September 15, 2009). Its pertinent part reads:

"Mr. Rogers,

*I terminated my professional relationship with NIAC in September of 2007. The laptop I used back then stopped working several months ago and it is not in my possession anymore. Moreover, I have never used my gmail account for professional purposes."*

There is no "tactic" here by the Plaintiffs as you charge in your letter. These are plain truths that were confirmed to you by Dr. Mansouri independently months ago (before we started representing him), truths that we now repeat to you once more - with the hopes that they do not (once again) fall on deaf ears.

It is clear you are on a fishing expedition and unfortunately your expedition has turned into nothing more than a form of continuous harassment, something we will take up with the Court if necessary.

<u>Disney Memo to Parsi About Lobbying</u>

As we explained earlier, our clients do not recall such a memo. And after conducting another search of the computers, and shared document server (since NIAC does not have a shared e-mail server) nothing matching your request was found.

This result is consistent with Ms. Blout's deposition testimony. During her deposition she noted that she did not fully view the document you allege is missing (as she was only cc'd on it), and that she didn't recall any other document between Mr. Parsi and Mr. Disney on the subject. [see transcript pages: 64, 66 & 68] Thus it seems certain that Exhibit 7 is the document you are looking for.

PISHEVAR & ASSOCIATES, P.C.
ATTORNEYS

If you have any questions or concerns, please contact our office, including Mr. Adrian V. Nelson, II, Esquire, who is now *Of Counsel* at Pishevar & Associates. Thank you.

Sincerely,

Patrick Parsa

cc:  Afshin Pishevar
     Adrian V. Nelson

PISHEVAR & ASSOCIATES, P.C.
ATTORNEYS