## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TRITA PARSI, | ) |
| | ) |
| and | ) |
| | ) |
| NATIONAL IRANIAN AMERICAN COUNCIL | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 08 CV 00705 (JDB) |
| | ) |
| SEID HASSAN DAIOLESLAM | ) |
| | ) |
| Defendant. | ) |

### PLAINTIFFS' BRIEF REGARDING DISCOVERY DISPUTES.

COMES NOW the Plaintiffs, Dr. Trita Parsi and the National Iranian American Council ("NIAC") (collectively "Plaintiffs"), by and through their counsel, Afshin Pishevar and Pishevar & Associates, P.C., and submits this Brief relating to the parties' current discovery disputes, and states as follows:

**I.      INTRODUCTION**

NIAC has made a good-faith effort to produce every document responsive to Defendant's overly broad discovery demands.  Notwithstanding its good-faith efforts, NIAC is amenable to an amicable resolution of the parties' current discovery disputes.[1]

**II.      PLAINTIFFS' DISCOVERY DISPUTES**

---

[1]NIAC strenuously objects to Defendant's inclusion of seven (7) exhibits in support of his Brief regarding discovery disputes.  It was NIAC's understanding, per the Judge's Order, that the parties' briefs were to be simply limited to a 5-page statement about their discovery disputes, not a *de facto* memorandum of points and authorities.  Further, NIAC moves to strike Exhibit "G" to Defendant's Brief.  If Defendant is permitted to submit exhibits, NIAC requests the opportunity to do the same.

NIAC's discovery disputes with Defendant relate to NIAC's desire to obtain assurances from Defendant that his supplemental production will resolve a number of production deficiencies NIAC has been attempting to resolve without involving the Court. Specifically, NIAC is concerned regarding whether Defendant's supplemental production will cure the following production deficiencies, including:

1. Defendant's failure to produce e-mails that contain search terms agreed upon by the parties, which is necessary because the number of responsive e-mails produced by Defendant seems unusually low[2];

2. Defendant's failure to produce e-mails in a readable format;

3. Defendant's failure to produce his Yahoo e-mails in eml format;

4. Defendant's failure to produce Farsi files/e-mails in native format; and

5. Defendant's failure to produce a 5-part interview of Daioleslam by Keyvan Kaboli and/or other infomercial(s) that, upon information and belief, are responsive to NIAC's document requests.

## II.   DEFENDANT'S ANTICIPATED DISCOVERY DISPUTES

Clearly, Defendant is trying to paint a picture that NIAC has intentionally withheld, modified, and/or destroyed information in an attempt to avoid producing responsive documents. In each instance, these very serious allegations are without merit.

---

[2]For instance, approximately eighty percent (80%) of the e-mails produced by Defendant relate to the 12-month period immediately prior to Defendant's initial production period. However, since the initial production Defendant has produced very few e-mails, which calls into question whether Defendant has curtailed his e-mail activity to prevent discovery of additional relevant information.

NIAC Outlook Calendars

Defendant continues to complain about the form in which NIAC produced Outlook calendar information. NIAC produced the Outlook calendar information in response to Defendant's complaint that his Requests for Production of Documents entitled Defendant to receive copies of documents relating to any NIAC lobbying and lobbying-related activities, including "calendars."[3]

NIAC did not have, nor does it have at present, any objection to providing Outlook calendar information during the relevant time period.  Nonetheless, NIAC was at the time they produced Outlook calendar information, and remains at present, concerned that personal, confidential, irrelevant employee information once released to Defendant via Outlook calendars will be misused by Defendants.[4]

Defendant's complaint is that NIAC purportedly redacted personal, confidential, irrelevant information from the Outlook calendars it produced.  Contrary to Defendant's claim, NIAC has not modified any purportedly discoverable documents, but has redacted information, which is routinely done with documents that are produced in non-electronic/paper format.   The bottom line is that NIAC did produce employee Outlook calendar information relating to its any possible lobbying or lobbying-related activities.

Thus, NIAC has not attempted to "hide the ball" in this instance.

---

[3]Defendant's demand for NIAC Outlook calendar information resulted from deposition testimony of former NIAC employee Emily Blout that she recorded certain time in her Outlook calendar.

[4]Defendant has consistently argued against and opposed any effort by Plaintiffs to have a protective order put in place relating to confidential discovery material.

NIAC's Financial Basis for Amended 2008 Tax Return

Defendant also claims that he is entitled to documents relating to NIAC's financial basis for its 2008 amended tax return.[5]   Defendant's demand for the financial basis for NIAC's amended tax filing for 2008 is moot based upon the February 17, 2010, deposition testimony of Garrett Isacco, the NIAC-retained certified public accountant, whose office prepared NIAC's amended return and has already testified about the financial basis for NIAC's 2008 amended tax return.[6]   Moreover, absent salary information that Defendant already has, NIAC is unaware of any additional documents that relate to its financial basis for its 2008 amended tax return.[7]

Accordingly, Defendant's complaints in this regard are moot.

Mansouri and Talebi Emails

Defendant contends that he is entitled to a forensic imprint of NIAC's server based upon his mistaken belief that there is a nefarious reason laptops containing e-mails are unavailable from two former NIAC consultants – Dr. Mo Mansouri and Dr. Babak Talebi.   First, regarding Dr. Mansouri the record demonstrates that he left NIAC nearly a year before the current lawsuit was initiated.[8]   The timing of Dr. Mansouri's departure from NIAC undercuts Defendant's

---

[5]NIAC amended its 2008 tax return to file a Schedule C to reflect a certain level of lobbying activities undertaken by the organization.

[6]Moreover, Defendant has subpoenaed Phillip Isacco, an employee of Garrett Isacco's CPA firm, to give additional deposition testimony on March 9, 2010, regarding NIAC's 2008 amended tax filing.

[7]Mr. Garrett Isacco has already testified that NIAC took 10% of certain employees' respective salaries to calculate the value of any lobbying it did in 2008.

[8]Upon information and belief, the laptop Dr. Mansouri used during the time he worked with NIAC broke and he subsequently discarded it.   The computer was Dr. Mansuori's personal property at the time it was discarded, not NIAC's.   Further, there was no litigation hold in place at the time the laptop was discarded the laptop.

accusation of some conspiratorial campaign by NIAC to hide information from Defendant. Further, Dr. Talebi provided his computer to Defendant, gave Defendant access to his entire Gmail account, and allowed Defendant to copy electronic information.

With respect to Dr. Talebi's e-mails, Defendant's complaints, simply put, are attributable to his own previous inability to download information from Dr. Talebi's G-mail account once his computer was physically provided to Defendant for this purpose.

Moreover, NIAC does not have its own service; it uses a vendor's server. Further, NIAC would only be required to produce the e-mail of Drs. Mansouri and Talebi, if responsive, as kept in the regular course of business. In the regular course of business, those e-mails no longer exist.[9]

<u>A Second Bite at the "Emily Blout" Apple</u>

Defendant is simply seeking a second bite at the "Emily Blout" apple.[10]   However, Ms. Blout cannot provide any personal knowledge about NIAC's 2008 amended tax filing or her personal lobbying activities, if any, on behalf of NIAC. In fact, NIAC's 2008 amended tax filing was prepared approximately six (6) months after Blout left NIAC's employ.

---

[9]Providing the requested forensic imprint would be an extraordinary step. Fed. R. Civ. P. 37(e) requires "exceptional circumstances" for a court to impose sanctions – such as having to provide a forensic imprint – where a party has failed to provide electronically stored as a result of the "routine, good-faith operation of an electronic information system." No exceptional circumstances exist for such a sanction.

[10]NIAC denies and takes serious umbrage at Defendant's clear implication that NIAC was involved in the decision of Ms. Blout to correct her deposition testimony. Ms. Blout was represented by counsel and there is no basis for Defendant to imply that NIAC influenced Ms. Blout's post-deposition clarification of her deposition testimony

Respectfully submitted,

_____/S/_____

A.P. Pishevar (D.C. Bar No. 451015)
*PISHEVAR & ASSOCIATES, P.C.*
600 East Jefferson Street, Suite 316
Rockville, MD 20852
Phone: (301) 279 – 8773
Fax:    (301) 279 – 7347
Counsel for the Plaintiffs