# PLAINTIFFS' EXHIBIT "A"

Mail  Calendar  Documents  Sites                        pc@pishevarlegal.com | Settings | Help | Sign out

LAW OFFICES
A. P. PISHEVAR & ASSOCIATES, P.C.                    Search Mail    Search the Web    Show search opti
                                                                                       Create a filter

**Compose Mail**            Flowers Iran - www.irangiftland.com - بهترین کیفیت درکتر از 2 4ساعت در ایران گل بفرستید  < | >

**Inbox (63)**              « Back to Inbox   Archive     Report Spam     Delete     More actions...
Starred ☆
Chats ☉                                                                    1 of 494 Older ›
Sent Mail
**Drafts (27)**            **Fwd: NIAC Outlook Calendars**  Inbox                     Nev
All Mail
**Spam (5)**               ☆   Patrick Parsa show details 10:37 am (0 minutes ago) 📎 ↩ Reply   Prir
Trash
                                                                                     Would

**Contacts**                                                                         Ma
                                                                                     60
▼ Quick Contacts                                                                     Rc

Search, add, or invite      -------- Forwarded message --------
                            From: Patrick Parsa <pparsa@pishevarlegal.com>
☉ Patricia Constanza       Date: Wed, Apr 21, 2010 at 4:21 PM
  Set status here ▼         Subject: NIAC Outlook Calendars                          Flower /
☉ Ana Rondini              To: "Kapshandy, Timothy E." <tkapshandy@sidley.com>      Dinner 1
☉ Afshin Pishevar          Cc: Afshin Pishevar <ap@pishevarlegal.com>, Adrian Nelson AngelsT
  amir doulatshahi          <anelson@pishevarlegal.com>
  andresacosta03                                                                     Pennsyl
  bernardo.rojas            Tim,                                                     direct m
  cosimo.piscioneri                                                                  www.cx
  Fatima H.E                Attached you will find the outlook calendars for NIAC along with
  Michael Schiller          a corresponding covering letter from Adrian.            Accredit
  Roberto Renna                                                                      at Phoe
  Ross Gilson               Rgds,                                                    www.Ph
                                                                                     Degrees
                            Patrick
▼ Labels                                                                             Search
Follow up                                                                            iranian 1
INBOX/Craigslist                                                                     www.we
INBOX/Drafts  Show all
INBOX/Sent                                                                           Online [
**INBOX/Trash (3)**                                                                 Breeds,
**Migrated (6)**                                                                    www.pe
Misc
Priority      Edit labels   --                                                       More ab
                            Sincerely,                                               Free Pri
                            Patrick Parsa, Esq.                                      Music »
                            Jefferson Plaza - Suite 316                              Thank Y
                            600 E. Jefferson Street                                  TV Pers
                            Rockville, MD 20852
                            Tel.(301)279-8773
                            Fax(301)279-7347

**Compose Mail**

**Inbox (63)**
**Starred** ☆
Chats 💬
Sent Mail
**Drafts (27)**
All Mail
**Spam (5)**
Trash

**Contacts**

▼ Quick Contacts

Search, add, or invite

⬤ Patricia Constanza
⬛ Set status here ▼
⬤ Ana Rondini
⬤ Afshin Pishevar
  amir doulatshahi
  andresacosta03
  bernardo.rojas
  cosimo.piscioneri
  Fatima H.E
  Michael Schiller
  Roberto Renna
  Ross Gilson

▼ Labels
Follow up
INBOX/Craigslist
INBOX/Drafts    Show all
INBOX/Sent
**INBOX/Trash (3)**
**Migrated (6)**
Misc
Priority
        Edit labels

**8 attachments** — Download all attachments

📄 **Emily Blout.xlsx**
   176K View as HTML Download

📄 **Kevin Cowl.xlsx**
   38K View as HTML Download

📄 **Michelle Moghtader.xlsx**
   56K View as HTML Download

📄 **Patrick Disney.xlsx**
   131K View as HTML Download

📄 **Trita Parsi.xlsx**
   374K View as HTML Download

📄 **Arsalan Barmand.xlsx**
   19K View as HTML Download

📄 **David Elliot.xlsx**
   46K View as HTML Download

📄 **Covering Letter 4-21-10.pdf**
   45K View as HTML Download

↩ Reply   → Forward

« **Back to Inbox**   [ Archive ]   [ Report Spam ]   [ Delete ]   [ More actions... ▼ ]

                                        **1** of **494** Older ›

Compose a message in a new window by pressing "Shift"
while clicking Compose Mail or Reply.

**You are currently using 300 MB (4%) of your 7460 MB.**

Pishevar Legal Mail view: **standard with chat** | standard without chat |
basic HTML | Learn more

©2010 Google - Terms of Service - Privacy Policy - Program Policies -
Google Home

Powered by **Google**

# PLAINTIFFS' EXHIBIT "B"

This is the html version of the file http://ralphlosey.files.wordpress.com/2009/01/covadvrevonet.doc.
**Google** automatically generates html versions of documents as we crawl the web.

*Covad Communications Co. v. Revonet, Inc.*, 2008 WL 5377698 (D.D.C. Dec. 24, 2008).

United States District Court, **District of Columbia**.

COVAD COMMUNICATIONS COMPANY, Plaintiff,

v.

REVONET, INC., Defendant.

**Civil No. 06-1892 (CKK/JMF).**

Dec. 24, 2008.

**MEMORANDUM OPINION**

JOHN M. FACCIOLA, United States Magistrate Judge.

**\*1** Plaintiff Covad Communications Company ("Covad") brought this action against defendant Revonet, Inc. alleging that Revonet misappropriated and converted confidential, proprietary and trade secret information-namely, sales leads generated by or for Covad-and breached its contract with Revonet. This case was referred to me for management of discovery. Shortly thereafter, plaintiff filed its *Motion of Covad Communications Company to Compel Responses to Requests for Production of Documents* [# 43] ("Pls.Mot.").

### I. Background.

Covad served its First Set of Requests for Production of Documents, Exhibit A to Pls. Mot. [# 43-2] ("Doc.Req."), on April 27, 2007. Pls. Mot. at 2. Revonet responded on June 15, 2007 with a limited number of hard copy documents and represented that "[n]ot all documents have been obtained as Revonet has retained the assistance of an outside consultant to assist in collecting electronic documents ... other responsive documents will be produced as soon as they become available."*Id.* (citing Exhibit B to Pls. Mot. [# 43-3] at 1). Covad claims that Revonet has not produced any documents since that time.*Id.*

On August 4, 2008, Revonet advised Covad that it had additional responsive documents available for inspection and copying. Exhibit 2 to *Revonet's Memorandum in Opposition to Plaintiff's Motion to Compel* ("Defs.Opp.") [# 46-2] at 2. Covad apparently never responded to that letter, but instead wrote to Revonet on August 18th and demanded that Revonet produce those documents by August 22nd. *See* Exhibit D to Pls. Mot. [# 43-5] at 6; Exhibit C to Pls. Mot. [# 43-4]. In an August 20, 2008 conference call, Revonet stated that it would make the 35,000 pages of e-mails that are responsive to Covad's request available in hard copy at Revonet's office for inspection and copying. Pls. Mot. at 4. Covad took issue with Revonet's offer to produce the documents in hard copy as hard copy is not the documents' **native format**. A few weeks later, on September 3, 2008, Revonet offered to make the e-mails available in electronic format as TIFF files, but only on condition that Covad agree to pay for the fees incurred by

having one of Revonet's legal assistants delete privileged or otherwise non-responsive documents from the electronic production set. Exhibit D to Pls. Mot. at 6-7. Plaintiff objects to the form of defendant's production because printed pages (and TIFF files) are not the **native format** for e-mails. Pls. Mot. at 7-10.

Thus, Revonet insists that it be permitted to produce the e-mails in hard copy or as TIFF, provided Covad pays for the necessary deletions. In other words, Revonet will not produce the e-mails as they were originally created, i.e., in their **"native format"** as that important term is defined as follows by The Sedona Conference Glossary:

**Native Format:** Electronic documents have an associated file structure defined by the original creating application. This file structure is referred to as the **"native format"** of the document. Because viewing or searching documents in the **native format** may require the original application (for example, viewing a Microsoft Word document may require the Microsoft Word application), documents may be converted to a neutral format as part of the record acquisition or archive process. "Static" formats (often called "imaged formats"), such as TIFF or PDF, are designed to retain an image of the document as it would look viewed in the original creating application but do not allow metadata to be viewed or the document information to be manipulated. In the conversion to static format, the metadata can be processed, preserved and electronically associated with the static format file. However, with technology advancements, tools and applications are becoming increasingly available to allow viewing and searching of documents in their **native format**, while still preserving all metadata.

**\*2** The Sedona Conf. Working Group of Elec. Doc. Retention & Prod., *The Sedona Glossary: for E-Discovery & Digital Information Management* (Conor Crowley & Sherry Harris eds., 2d ed., 2007) at 37, *available at* http:// www.thesedonaconference.org/contentFiles/TSCGlossary_12_07.pdf. Instead, Revonet is claiming the right to convert the e-mails from their **native format** to other formats even though those are not as easily searchable by electronic means as the e-mails in their **native format** would be. The question presented is whether Revonet should be permitted to do so when that conversion's only justification is that Covad, according to Revonet, did not specify how the e-mails were to be produced.

## II. Analysis.

Rule 34 of the Federal Rules of Civil Procedure states that (1) the requesting party may designate the form in which the electronically stored information should be produced, and (2) if the request does not specify, then it should be produced in a form in which it is ordinarily maintained, or in a reasonably usable form. Fed.R.Civ.P. 34(b)(1)(C), 34(b)(2)(E)(ii). Thus, as just explained, the parties' view of the preliminary inquiry here is whether Covad designated the form in which the documents should be produced.

Rule 26(f), as amended, specifically requires the parties to discuss the form that production of electronically stored information should take. Fed.R.Civ.P. 26(f)(3)(C). This controversy predates that provision, and underscores its importance. *See Aquilar v. Immigration and Customs Enforcement Div. of the U.S. Dep't of Homeland Sec.,* No. 07-CV-8224, 2008 WL 5062700, at \*8-9 (S.D.N.Y. Nov. 21, 2008) (emphasizing the need for cooperation between counsel in defining the form of production) (citing *The Sedona Conference Cooperation Proclamation* (2008), available at http:// www.thesedonaconferen ce.org/dltForm?did=Cooperation_Proclamation.pdf). It does not appear that Covad and Revonet ever discussed what form this (or any other) production should take. Instead the parties seem to be making assumptions based on each others' behavior: Covad expecting its documents in electronic form because Revonet hired a company to collect electronically stored information, and Revonet assuming that they should produce 35,000 pages of e-mails in hard copy because Covad produced its documents in that

format. As there is no agreement, the parties invite me turn to to the language of the requests themselves to determine whether Revonet can produce the e-mails other than in their **native format**.

The instructions to Covad's document requests ask that Revonet "[p]roduce all documents in [its] possession, custody or control, as they are kept in the ordinary course of business, including with all staples and clips attached and with all associated file folders, dividers and labels." Doc. Req. at 3. "Documents" are defined as:

[A]ny tangible thing upon which any expression, communication, representation or data has been recorded by any means including, but not limited to, handwriting, printing, photostating, photographing, on a computer, instant messages, magnetic impulse, or mechanical or electronic recording and any non-identical copies (whether different from the original because of notes made on such copies, because of indications that said copies were sent to different individuals than were the originals, or because of any other reason), including but not limited to working papers, preliminary, intermediate or final drafts, correspondence, memoranda, charts, notes, records of any sort of meetings, invoices, financial statements, financial calculations, diaries, reports of telephone or other oral conversations, desk calendars, appointment books, audio or video tape recordings, microfilm, microfiche, computer tape, computer disk, computer printout, computer card, and all other writings and recordings of every kind that are in your actual or constructive possession, custody or control.

*3 Doc. Req. at 2.

Thus, I am supposed to determine by examining ancient boilerplate-designed for discovery in a paper universe-such nice questions as whether an e-mail, existing in a computer's memory is a "tangible thing" and how e-mails are "maintained in the ordinary course of business." While I have considered a similar provision in depth once before,[FN1] I see no need to repeat that metaphysical exercise here because it is a waste of judicial resources to continue to split hairs on an issue that should disappear when lawyers start abiding by their obligations under the amended Federal Rules and talk to each other about the form of production. I would much prefer to carry out my duties in accordance with Rule 1, which provides that the rules "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed.R.Civ.P. 1.

FN1.*See D'Onofrio v. SFX Sports Group, Inc.,* 247 F.R.D. 43, 47 (D.D.C.2008).

More importantly, I do not need to parse words because no one is pretending that Revonet prints all of its e-mails or converts them to TIFF files on a daily basis no matter how ephemeral, meaningless or trivial their content.[FN2] Therefore, though Covad's instruction is hopelessly imprecise and Revonet could colorably argue that it should be interpreted to include several different formats, no reasonable person can honestly believe that hard copy is one of them. For hard copy to be an acceptable format, one would have to believe that Revonet, in its day to day operations, keeps all of its electronic communications on paper. There is no evidence in the record that Revonet operates in this manner, and no suggestion that such a practice would be anything but incredible. Therefore, even though I can't say I know what Covad *has* asked for, I can say what they have *not* asked for, and that is what they got.

FN2. Note the following remarkable estimate:

Statistics, extrapolations and counting by Radicati Group from August 2008 estimate the number of emails sent per day (in 2008) to be around 210 billion.

183 billion messages per day means more than 2 million emails are sent every second. About 70%

to 72% of them might be spam and viruses. The genuine emails are sent by around 1.3 billion email users.

Heinz   Tschabitscher,   How   Many   Emails   are   Sent   Every   Day?,   http://email.about.com/od/emailtrivia/f/emails_per_day.htm (last visited December 22, 2008).

A much more fruitful use of the broad powers I unquestionably have to supervise discovery is to focus on the quickest and cheapest solution to the problem presented. I will assume that the e-mails at issue exist in what I have called their **native format** and can be copied onto a CD with a couple of keystrokes. Obviously, printing them or converting them to TIFF files probably (and ironically) costs more so Revonet is hard pressed to claim that producing them now in their **native format** is unfairly burdensome.

There is one burden, however: the cost of deleting privileged information from the CD to be produced. At one point, Revonet agreed to produce the e-mails in TIFF format but insisted that Covad pay for a paralegal to "manually delete the non-responsive and privileged TIFF's that have already been redacted from the paper document production." Exhibit D to Pls. Mot. at 6. Revonet estimated that this would take the paralegal 5 to 10 hours at a rate of $178.50 for a maximum cost of $1,785.00. *Id.*

The same paralegal need only take the paper documents that are irrelevant or privileged, find the corresponding "native" e-mails, delete the irrelevant ones and move the privileged ones to another receptacle so they can be logged for a privilege log and made available, if necessary, for my review if the claim of privilege is challenged by Covad. The question then becomes whether Revonet should bear that cost or share it with Covad.

**\*4** Revonet would have had to incur the cost of privilege review had it produced the e-mails in **native format** in the first place. That natural burden would not have been shifted because it is presumed that reviewing the data to ascertain whether any of it is privileged must be done by the producing party as a matter of course. *Peskoff v. Faber*, 251 F.R.D. 59, 61 (D.D.C.2008) (costs of production should be shifted only if burden is undue because, for example, sources are not reasonably accessible).

Moreover, by converting the data from its **native format** to TIFF and producing it in hard copy Revonet ran the risk of what has now come to pass-that it would nevertheless have to produce the data in its **native format**. Admittedly, the discovery requests antedate the effective date of the amendments to the Federal Rules. The rules now require the parties to confer about the format of production and to specify how a party is to produce electronically stored information. But, there was authority in at least 2000 that indicated that a party could be required to produce data in an electronic format even though it had already produced it in hard copy. *See* The Honorable Shira A. Scheindlin & Jeffrey Rabkin, *Electronic Discovery in Federal Civil Litigation: Is Rule 34 up to the Task?* 41 B.C. L.Rev. 327, 355 (2000) (collecting cases [FN3] differing on whether party could be forced to produce data in electronically stored format after having produced it in hard copy). Since a moderate amount of legal research would have yielded the cases that are summarized in that article, Revonet's producing the e-mails only in hard copy played with fire.

FN3.*E.g., Anti-Monopoly, Inc. v. Hasbro, Inc.,* No. 94-CV-2120, 1995 WL 649934, at \*1 (S.D.N.Y. Nov. 3, 1995) ("Thus, the rule is clear: production of information in "hard copy" documentary form does not preclude a party from receiving that same information in computerized/electronic form.") (citing *Nat'l Union Elec. Corp. v.. Matsushita Elec.Co.,* 494 F.Supp. 1257, 1261 (E.D.Pa.1980)).

With justification, Revonet points out that Covad produced its data in hard copy and accepted the first delivery from Revonet in hard copy without protest. The cases summarized in that article that reach the contrary conclusion-that a party cannot be forced to produce data in electronic format if it has produced it in hard copy [FN4]-should have given it pause and made it realize that it was playing with the same fire.

> FN4.*E.g.*, *Williams v. Owens-Illinois, Inc.*, 665 F.2d 918, 932-933 (9th Cir.1982), *cert. denied,*459 U.S. 971 (1982).*Accord Torrington Co. v. United States,* No. 91-08-00568, 1992 WL 40699 at *2 (Ct. Int'l Trade Feb. 21, 1992)); *Malone v. Ford Motor Co.,* No. 12539, 1992 WL 885097 at *2-3 (Va.Cir.Ct. Dec. 31, 1992).

Since both parties went through the same stop sign, it appears to me that they both should pay for the crash. I will require them to share the cost of the paralegal removing the privileged e-mails, as I have described it, to a cost of no greater than $4,000, i.e., $2,000 each. I expect Revonet to keep a careful record of the time spent and to alert me if there is any risk that the cost will exceed $4,000. At that point (which I hope will not be reached) I will ask Revonet to estimate what it will cost to finish the job and seek the views of counsel as how to cover it.

Finally, I would hope that my decision will have a didactic purpose. This whole controversy could have been eliminated had Covad asked for the data in **native format** in the first place or had Revonet asked Covad in what format it wanted the data before it presumed that it was not native. Two thousand dollars is not a bad price for the lesson that the courts have reached the limits of their patience with having to resolve electronic discovery controversies that are expensive, time consuming and so easily avoided by the lawyers' conferring with each other on such a fundamental question as the format of their productions of electronically stored information.

### III. Conclusion.

**\*5** For the foregoing reasons, Revonet will be directed to produce the e-mails that are the subject of this motion in their **native format**. Revonet shall also keep track of the amount of time it takes to delete the privileged e-mails and bill Covad for one half those expenses, provided one half does not exceed $2,000.

An Order accompanies this Memorandum Opinion.

END OF DOCUMENT

# PLAINTIFFS' EXHIBIT "C"



Mail   Calendar   Documents   Sites                    pc@pishevarlegal.com | Settings | Help | Sign out

[                                    ]   Search Mail      Search the Web    Show search opti
                                                                           Create a filter

**Compose Mail**                 eDiscovery Software - www.nuix.com - Simple. Powerful. Precise. Request a .   | < | > |

**Inbox (63)**          « Back to Inbox  | Archive |  | Report Spam |  | Delete |  | More actions... ▾ |
Starred ☆
Chats ◯                                                                         1 of 493 Older ›
Sent Mail
Drafts (27)             **Fwd: Discovery Issue**   Inbox                                      ⧉ New
All Mail
Spam (5)                ☆   **Patrick Parsa**  show details 10:21 am (1 minute ago) 🖉 ⬏ Reply    🖷 Print
Trash
                                                                                            Would y
**Contacts**
                                                                                            ✉ Ma
▾ Quick Contacts        ---------- Forwarded message ----------                              600
                        From: **Kapshandy, Timothy E.** <tkapshandy@sidley.com>              Roc
[Search, add, or invite ] Date: Tue, Jan 19, 2010 at 6:29 PM
◉ Patricia Constanza    Subject: RE: Discovery Issue
  | Set status here  ▾ | To: Patrick Parsa <pparsa@pishevarlegal.com>
◔ Ana Rondini           Cc: Afshin Pishevar <ap@pishevarlegal.com>, "Rogers, HL"            Free Gui
◉ Afshin Pishevar       <hrogers@sidley.com>, "Berenson, Bradford" <bberenson@sidley.com>   Secrets, I
  amir doulatshahi                                                                           TrustETC
  andresacosta03
  bernardo.rojas         Patrick:                                                            eDiscove
  cosimo.piscioneri                                                                          Governm
  Fatima H.E             You are correct that the emails were produced in HTML format and    Provider
  Michael Schiller       not technically in the original, native format  You will recall that that  www.edi
  Roberto Renna          protocol is what we agreed to, along with electronic word searches
  Ross Gilson            instead of complete reviews.  While the parties did initially agree  Skid Stee
                         to produce in native format, it became apparent as we conferred on our  Factory D
                         respective protocols that this would not be desirable for a number of  www.buy
▾ Labels                 reasons so was subject to a minor, technical adjustment. As we
Follow up                discussed at the time, Dai does not use Outlook. His emails are stored in  Fast & Se
INBOX/Craigslist         his Yahoo account (where the native file format must be converted in  Including
INBOX/Drafts             order to be saved, normally to eml).  Therefore, as we informed you, we  www.ima
INBOX/Sent  Show all     produced them in html as that is most universally reviewable format for
**INBOX/Trash (3)**      such files.  In fact, when one saves a Yahoo email on one's PC it is  New clou
**Migrated (6)**         typically converted to html if one does not use Outlook (which converts  legal hok
Misc                     the file to pst).  Similarly, your production also                 www.lega
Priority                 converted NIAC's original, native emails to another format and removed
              Edit labels some metadata (Outlook native files are msg files; you sent us pst files  Secure, L
                         which were necessarily altered and underwent even more alteration when  Emailing
                         you exported them to Explorer folders).                             Try Now!
                                                                                            YouSend
                         The parties each understood that such changes would occur during the
                         production process just as they understood that the protocol (word/name  More ab
                         searches instead of document-by-document review) would not capture  Outlook E
                         100% of discoverable documents. The parties agreed to this for the sake  Electronic
                         of efficiency.  Unfortunately, the saving of Yahoo files in html may have  Outlook x
                         garbled some of the Farsi emails.                                   Discoven

                         We note that plaintiffs also produced emails with garbled text (probably
                         from the original Farsi) and Finglish. Examples are attached. We did not
                         understand these garbled/Finglish emails to be evidence of tampering
                         and discovery fraud and threaten sanctions because we understood this
                         to be an unfortunate byproduct of the agreed discovery protocol.  We are
                         working to rectify the translation error and will resend you the ones you

**Compose Mail**

**Inbox (63)**
Starred ☆
Chats ♡
Sent Mail
**Drafts (27)**
All Mail
**Spam (5)**
Trash

**Contacts**

▼ Quick Contacts
Search, add, or invite
🙍 Patricia Constanza
  Set status here ▼
👤 Ana Rondini
👤 Afshin Pishevar
  amir doulatshahi
  andresacosta03
  bernardo.rojas
  cosimo.piscioneri
  Fatima H.E
  Michael Schiller
  Roberto Renna
  Ross Gilson

▼ Labels
Follow up
INBOX/Craigslist
INBOX/Drafts      Show all
INBOX/Sent
**INBOX/Trash (3)**
**Migrated (6)**
Misc
Priority
          Edit labels

requested in the native format as received by Dai (most likely eml). This may or may not rectify the situation but you are welcome to try with the eml files. We request that you do the same for all of your emails and docs containing garbled Farsi and send them to us in msg format.

Unfortunately, this was a technical glitch the parties did not foresee and we will work to remedy the situation as we assume you will, also . Please give me a call as to how you would like to proceed. The other issues raised in your January 13 and 15 emails will be addressed in separate letters shortly.

Thanks,

Tim

---

**From:** Patrick Parsa [mailto:pparsa@pishevarlegal.com]
**Sent:** Monday, January 18, 2010 5:16 PM
**To:** Kapshandy, Timothy E.
**Cc:** Afshin Pishevar
**Subject:** Discovery Issue

Tim,

It has come to our attention that on the CD your client provided us, all the emails that are included are HTML files - that is they are not in their original format and thus could have easily been tampered with. We take this fact extremely seriously as it is evidence of possible spoliation/alteration of discoverable material. A charge that I echoed in my previous email about a different matter. This is unfortunately turning into a reoccurring theme with the information your client has provided us. As such, we request that your client *immediately* complement these files with the *original* pst files. If not, your client's server should be analyzed by an independent third party to see what emails/files are on it. Let's resolve this as soon as possible so we do not have to bring the judge into the matter - as this is an extremely serious issue.

--
Sincerely,
Patrick Parsa, Esq.
Jefferson Plaza - Suite 316
600 E. Jefferson Street
Rockville, MD 20852
Tel.(301)279-8773
Fax(301)279-7347

---

------------------------------------------------------------------------
----
IRS Circular 230 Disclosure: To comply with certain U.S. Treasury regulations, we inform you
that, unless expressly stated otherwise, any U.S. federal tax advice contained in this
communication, including attachments, was not intended or written to be used, and cannot be
used, by any taxpayer for the purpose of avoiding any penalties that may

# PLAINTIFFS' EXHIBIT "D"

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| TRITA PARSI | ) | |
| and | ) | |
| NATIONAL IRANIAN AMERICAN COUNCIL<br>Plaintiffs, | ) | |
| v. | ) | Civil No. 08 CV 00705 (JDB) |
| DAIOLESLAM SEID HASSAN, | ) | |
| Defendant. | ) | |

## DEFENDANT'S SECOND REQUEST FOR PRODUCTION

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant Seid

Hassan Daioleslam ("Daioleslam") requests that Plaintiffs, Trita Parsi ("Parsi") and National

Iranian American Council ("NIAC") produce and make available for review and copying the

following documents in accordance with the definitions and instructions contained herein, within

thirty (30) days after service of this Request, at 9:00 a.m. at the offices of Sidley Austin LLP, or

at such other time and location as may be agreed upon by the parties.

## DEFINITIONS

1.    "NIAC" shall mean the National Iranian American Council, its board of

directors or trustees and any officials, representatives, employees, servants, attorneys, agents,

or any other person acting for or on its behalf, including, but not limited to, Plaintiff Trita

Parsi.

2.    "You" and "your" shall mean Plaintiffs Parsi and NIAC and officials, representatives, employees, servants, attorneys, agents, or any other person acting for or on Parsi and/or NIAC's behalf.

3.    "Iran" shall mean the country of the Islamic Republic of Iran and its ministries, agencies, instrumentalities, government-owned or controlled corporations, partnerships, or business entities, and any citizens, officials, representatives, employees, servants, attorneys, agents, or any other person acting for or on its behalf.

4.    "Membership," unless otherwise specified, shall mean former, current, or potential members of NIAC; persons who currently identify or formerly identified as members of NIAC, contribute or have contributed time or money to NIAC or provide or have provided NIAC with information regarding its policies.

5.    "United States political officials," unless otherwise specified, shall mean any United States Senator or Congressperson.

6.    "Staff," unless otherwise specified, shall mean any employees, servants, agents, representatives or any other person acting for or on behalf of his/her/their employer.

7.    "Internship," unless otherwise specified, shall mean any program by which NIAC offered temporary, paid or unpaid employment with NIAC or a United States political official, including any fellowship program.

2

8.    "Finances," unless otherwise specified, shall mean information regarding income and expenditures, including, but not limited to, funding, donations, grants, payments, compensation, consideration, income, expenditures, royalties, gifts, salaries, taxes, scholarships, disbursements, accounting information, balance sheets, cash-flow statements, daily accounting ledgers, check registers.

9.    "Complaint" shall mean the complaint filed by Parsi and NIAC against Daioleslam in this action.

10.   "Document" or "documents" is used in its broadest sense, as defined by Federal Rule of Civil Procedure 34(a), and includes, without limitation, all electronic, written, or printed matter of any kind, including drafts, originals and non-identical copies thereof, whether different from the original by reason of any notation made on such copies or otherwise, and records of any type or description, including without limitation the following: correspondence; interoffice and intraoffice communications; notes; letters; memoranda; work papers; analyses; plans; studies; statistical records; reports; press releases; contracts and agreements; records, summaries, agendas, minutes or notes of conferences, meetings, telephone calls, or other conversations; calendars, diaries, and appointment books; message pads; telephone messages and telephone logs; facsimiles, teletypes, telexes, and thermafaxes; photographs; tapes or other recordings; handwritten notes or notations in any form; voicemail messages; instant messages; data compilations, including, but not limited to, computer-generated and computer-stored information, whether or not ever printed out or displayed, such as documents stored on a network server, computer drive, CD or floppy disks; electronic mail, whether or not ever printed out or displayed, and any enclosures or attachments thereto; data posted or transmitted on Internet websites, including social networking sites and blogs.

11.   "Communications" means any transmittal of information in the form of facts, ideas, inquiries or otherwise, including a letter, memorandum, facsimile, meeting, telephone call, e-mail, instant message, blog posting, social networking site update, social networking site post, or social networking site message, or other communication, whether written or oral, between two or more of the persons or entities identified in the requests below, or relating to any person or entity identified in the request below, during the time period January 1, 2003 through the present.

12.   "Including" shall mean "including, but not limited to."

13.   "Relate to" or "relating to" shall mean any information or document which addresses, constitutes, contains, embodies, evidences, reflects, concerns, identifies, states, refers to, regards, records, responds to, deals with, describes, discusses, explains or is in any way pertinent to the subject of the request.

## INSTRUCTIONS

1.   Documents produced in response to one specific paragraph of this request need not be produced again, provided they are designated as being responsive to subsequent specific paragraphs when they are first produced.

4

2.     You are required to produce all of the requested documents which are in your possession, custody or control, including (by way of illustration only and not limited to) documents in the possession, custody or control of your affiliates, or merged and acquired predecessors and your present or former investigators, attorneys, directors, officers, partners, employees or other agents, as well as your present or former independent contractors over which you have or had control, and any other person acting on your behalf.

3.     You are to produce the originals and all copies of originals within the scope of this request, and make such original documents available for inspection and copying. These original documents must remain available throughout the custodian of records' examination.

4.     This request for production is continuing so as to require supplemental production pursuant to applicable procedural rules.  If, after making your initial production, you or any person acting on your behalf obtains varying or additional information or documents called for by the requests, all such original information and documents shall be made available to Counsel for Plaintiffs.

5.     If you withhold any information or documents requested herein on grounds of privilege, work-product or otherwise, identify the specific grounds upon which your objection is based and the particular request objected to, and identify any withheld documents or portion(s) thereof as follows:

    a.     date;

    b.     identity of its author/signatory and recipient;

    c.     type of document (e.g., letter, chart, memorandum, etc.);

    d.     summary of document contents, or the nature of the document;

e.      Notwithstanding the assertion of an objection, any purportedly privileged document containing non-privileged matter must be disclosed, with the purportedly privileged portion excised.

6.      If any otherwise responsive document was, but is no longer in existence or in your possession, custody or control, identify its current or last known custodian, the location/address of such document, and describe in full the circumstances surrounding its disposition from your possession or control.

7.      Documents produced pursuant to this request shall be labeled to indicate the specific paragraph(s) of the request to which they respond or, in the alternative, produced as they are kept in the ordinary course of business. If a document was prepared in several copies, or if additional copies were thereafter made, and if such copies were not identical or are no longer identical by reason of subsequent notation or modifications of any kind whatsoever, including, without limitation, notations on the front or back of the document, such non-identical copies must be produced.  The fact that a document has been or shall be produced by one person does not relieve any other person from the obligation to produce a copy of the same document, even if the two documents are identical in all respects.

## DOCUMENTS TO BE PRODUCED

1.      All documents on which you relied in drafting your Complaint.

2.      All documents relating to NIAC's corporate governance, including the charter, by-laws, articles of incorporation, and meetings of any boards or committees.

3.      All documents relating to NIAC membership, including all communications with potential, former, or current members, and membership and email lists.

4.      All documents relating to NIAC internships and fellowships, including all communications with potential, former, or current interns and fellows.

5.   All documents relating to NIAC's reputation or public estimation.

6.   All documents relating to Parsi's character or reputation.

7.   All documents relating to Parsi's allegation of special damages, including, but not limited to, all documents describing or evidencing any direct and/or quantifiable monetary losses suffered by Parsi. *See* Compl. ¶ 24.

8.   All documents relating to Parsi's allegation of compensatory and punitive damages, including, but not limited to, all documents describing or evidencing any direct and/or quantifiable monetary losses suffered by Parsi.

9.   All documents relating to NIAC's document-retention policies or litigation-hold policies.

10.   All calendars, diaries, or other documents relating to the time-keeping records of NIAC and its employees.

11.   Personnel files and all documents relating to the hiring and responsibilities of Emily Blout, Patrick Disney, and David Elliot.

_Timothy E Kapshandy / ET_

Timothy E. Kapshandy (Illinois Bar No.
6180926, admitted *pro hac vice*)
Bradford A. Berenson (D.C. Bar No. 441981)
HL Rogers (D.C. Bar No. 974462)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C.  20005
(202) 736-8000
hrogers@sidley.com

Dated: March 3, 2009

Attorneys for Defendant
Seid Hassan Daioleslam

8

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **TRITA PARSI** | ) |
| | ) |
| **and** | ) |
| | ) |
| **NATIONAL IRANIAN AMERICAN COUNCIL** | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )    **Civil No. 08 CV 00705 (JDB)** |
| | ) |
| **DAIOLESLAM SEID HASSAN,** | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

**CERTIFICATE OF SERVICE**

I certify that today, March 3, 2009, I served Defendant's Second Request for Production on the following via electronic mail pursuant to Fed. R. Civ. Pro. 5(b)(2)(E), to which he has consented:

> Afshin Pishevar
> 600 East Jefferson Street
> Suite 316
> Rockville, Maryland 20852
> (301) 279-8773
> ap@pishevarlegal.com

Pursuant to D.D.C. L.R. 5.2(a), I will retain the original in my possession.

Timothy E. Kapshandy /E.J.

Timothy E. Kapshandy (Illinois Bar No.
6180926, admitted *pro hac vice*)
Bradford A. Berenson (D.C. Bar No. 441981)
HL Rogers (D.C. Bar No. 974462)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C.  20005
(202) 736-8000
hrogers@sidley.com

Dated: March 3, 2009

Attorneys for Defendant
Seid Hassan Daioleslam

10

# PLAINTIFFS' EXHIBIT "E"



| | | |
|---|---|---|
| SIDLEY AUSTIN LLP<br>ONE SOUTH DEARBORN STREET<br>CHICAGO, IL 60603<br>(312) 853 7000<br>(312) 853 7036 FAX | BEIJING<br>BRUSSELS<br>CHICAGO<br>DALLAS<br>FRANKFURT<br>GENEVA<br>HONG KONG<br>LONDON<br>LOS ANGELES | NEW YORK<br>PALO ALTO<br>SAN FRANCISCO<br>SHANGHAI<br>SINGAPORE<br>SYDNEY<br>TOKYO<br>WASHINGTON, D.C. |
| tkapshandy@sidley.com<br>(312) 853 7643 | FOUNDED 1866 | |

May 7, 2010

Mr. Adrian Nelson
600 East Jefferson Street
Suite 316
Rockville, Maryland 20852

    Re:    *NIAC v. Daioleslam* -- NIAC Calendar and Emails

Dear Adrian:

      Since we had the March 5 conference with Judge Bates where NIAC promised complete unedited Outlook calendars and the Mansouri and Talebi emails from the ISP server (in lieu of our request for a forensic image), I have written you several times about the deficiencies in these productions but received no response.

<u>Refusal to Produce Complete Calendars and Mansouri Emails in Native Format</u>

      After a lengthy discussion with you on April 2 wherein you claimed the reason for the delay was uncertainly about the file formats we needed, I wrote you on April 4 and again on April 9 answering that pst format for the Outlook calendars (as you had done with the edited production of December 28) was fine, on April 21, you sent us 7 Excel summary files which were neither native, nor complete.  Here are just a few examples:

    1.  Disney's "complete" calendar omits a 23 Jan 2009 meeting with Senator McConnell that was included in the first version of his calendar produced 28 Dec 2009.

    2.  Disney's new calendar contains no entries after 24 Sep 2009 while the first version Contains dozens of entries after that.

    3.  Parsi's "complete" calendar produced 21 April 2010 also is missing entries that were on the first version produced 28 Dec 2009.  Omitted is a meeting with Puneet Talwar on 25 Dec 2009.

    4.  Also omitted from the "complete" unedited calendar is a meeting with Erik Belfrage on 25 Dec 2009.

    5.  Also omitted from the "complete" unedited calendar is a 3 June 2009 meeting with Jillian Burns at the State Department.

Sidley Austin LLP is a limited liability partnership practicing in affiliation with other Sidley Austin partnerships



SIDLEY AUSTIN LLP
SIDLEY

Mr. Adrian Nelson
May 7, 2010
Page 2

Any omissions would be troubling given that NIAC avoided having a forensic image ordered by promising to produce complete, unedited versions of these calendars. Omission of these important meetings with a U.S. Senator, a member the National Security Council, a State Department official, and a Swedish banker are even more suspicious.

Furthermore, the Excel summaries produced 21 April 2010 omit the important "date modified" field that was included in the first version of the calendars. As you will recall, it was NIAC's alteration of this field on Christmas Weekend of about 1/3 of the entries that caused us to suspect that NIAC's discovery obligations were not being met. To now totally delete that field from ALL of the calendar entries does not make the suspicion disappear. Rather, production of the complete, unedited versions of the calendars in native format would have given NIAC an opportunity to show that nothing was amiss at its offices during the Christmas Weekend alterations.

NIAC's refusal to produce the Outlook calendars in native format is equally troubling. As I stated in my email of April 22, all emails both sides have produce were produced in native format, you produced the calendar files in native format on December 28, the FRCP express a preference for native format, the parties agreed to native format production, and most importantly, on April 2 you specifically asked me in what format we wanted these produced. I replied on April 4 and 7 that pst was fine. To convert these to Excel and remove the important, aforementioned data is inexplicable. Having no response to my April 22 email, we assume you refuse to produce the complete, unedited calendars in pst format as promised and will contact the Court to renew our request for a forensic image of NIAC's Outlook records.

Recently Discovered NIAC CPU with Thousands of Emails

On April 9, you informed us that NIAC recently discovered a CPU that contained at least 8,000 Babek Talebi emails. On April 16 and 22 I requested you contact me to discuss a number of issues relating to that including where it was found, what other emails or documents were on it, what time period was covered, whether it was being search only for Talebi emails, etc. I have had no response to these requests. These are very important in light of the issues discussed below regarding the voids in the Talebi and Mansouri emails. Before we contact the Court regarding the calendars, please contact me so we can hopefully resolve or at least narrow down these email issues.

Mansouri and Talebi Emails

As you will recall, at the March 5 conference with Judge Bates NIAC agreed to search the server of its internet service provider ("ISP") for the emails of these two NIAC employees who had thrown out their computers. On March 11 you produced 36 Mansouri emails in pdf



Mr. Adrian Nelson
May 7, 2010
Page 3

format; on April 9 another 5 were produced.   On April 23, you sent us in native format approximately 90 Talebi emails none before mid-2007.

These raise a number of questions, but we have received no response from you:

1. Were both the ISP server and recently discovered CPU searched for their emails?
2. If not, why not?
3. When can we get the Mansouri emails in native format?
4. Why were there no emails for either gentleman prior to mid-2007?  Talebi was a Founder of NIAC in 2001.  Mansouri did much of the NGO work in 2005 and 2006. David Elliott testified that there was no need to inform the ISP about the document hold as emails were not being deleted.
5. Answers to the above questions about the recently discovered CPU would shed light as to where their pre-2007 emails are located.
6. How is it that Talebi's NIAC (not personal) email account contained over 8,000 emails, yet only 90 were produced?  Given that the email account was for NIAC business all or most of these should have been produced.
7. The completeness is further questioned by NIAC's failure to produce the 29 Jan 2008 email from Talebi to Behrooz Ghomghani and about which we had previously written. How is it that this was missed again?

Please call me to discuss these before our conference with the Court so as to narrow down any issues if possible.  However, given the above lapses with the calendars, we reserve the right to ask for a forensic image of the recently discovered CPU and ISP server.

Claim of Privilege

In your April 23 email, you stated that you were provisionally withholding a 24 March 2008 email from the Alliance for Justice to Babek Talebi transmitting three AFJ publications on lobbying and 501(h) elections.  It would not appear that the claim of attorney-client privilege is valid.  First, AFJ is not in the practice of law nor licensed to do so.  They publish information for NFPs.  Second, it would appear that at least two of the attachments AFJ sent to Talebi are published on its website.  Even if not, a previously prepared publication is not a "communication", let alone an attorney-client communication.  Third, you have repeatedly maintained that Mr. Talebi is not an officer, director, or employee of NIAC (and required us to track him down and subpoena him).  As such, he would not be authorized to obtain legal advice even if AFJ was in the practice of law.  Finally, NIAC has publicly stated that it has obtained legal advice that its lobbying activities are not in violation of any tax or lobbying laws; as such, it has waived any claim of privilege even to legitimate privilege claims relating to such advice. Finally, were NIAC to take the position in this case that its lobbying activities are legal and



Mr. Adrian Nelson
May 7, 2010
Page 4

supported by legal advice, that door would clearly be opened and any such communications would no longer be privileged. NIAC may not claim in court that its activities were supported by legal advice but claim such advice is not discoverable. Since you have not produced these, we assume you are asserting these are privileged and will also address the issue with the Court.

<u>Depositions</u>

As we have previously informed you, it is simply not possible to take the depositions of Disney, Blout, and Parsi until we have the complete, unedited calendars promised March 5. Assuming we can get them fairly soon, let's get dates for Blout's redeposition. It should not take long as it is limited to the calendar and time records produced after her deposition. Since Alex Patico did not have calendar records, we can take his deposition any time so please get us dates for him in the next several weeks. Also, please get dates for the deposition of Narimon Safavi, board member, in Chicago. We also would like to depose Talebi, Disney, and Parsi but those will need to await resolution of the above email and calendar discovery issues.

I look forward to speaking with you.

Very truly yours,

Timothy E. Kapshandy

cc:     A. Pishevar
        P. Parsa
        HL Rogers
        P. Jensen

TEK:sgo

CH1 5309284v.1

# PLAINTIFFS' EXHIBIT "F"

# PISHEVAR & ASSOCIATES, P.C.

### A T T O R N E Y S

600 EAST JEFFERSON STREET
JEFFERSON PLAZA • SUITE 316
ROCKVILLE, MARYLAND 20852
TELEPHONE (301) 279-8773 – FACSIMILE (301) 279-7347
WWW.PISHEVARLEGAL.COM

May 21, 2010

Timothy E. Kapshandy, Esquire
**Sidley Austin, LLP**
One South Dearborn Street
Chicago, Illinois 60603

> Re:   **Trita Parsi and NIAC v. Seid Hassan Daioleslam**
> Civil Action No.: 08-705 (JDB) (USDC-DC)

Dear Tim:

Let me begin by correcting the misimpression contained in your May 5, 2010, letter that Plaintiffs have not responded to concerns raised by the defendant about the sufficiency of the NIAC production consisting of Outlook calendars and e-mails from Dr. Mansouri and Mr. Talebi. While Plaintiffs may not have responded, in writing, each time to Defendant's lengthy written list of concerns/complaints, we have spoken on several occasions in an effort to resolve Defendant's never-ending demand for more information in the format that Defendant thinks it should be provided.

Accordingly, in an effort to satisfy the defendant, following is a written response to those issues outlined in your May 5th letter.

### NIAC Production of Outlook Calendars and Mansouri E-mails

Regarding prior discussions relating to the file format for NIAC's production of Outlook calendars, Plaintiffs never agreed to provide anything to the defendant in native format. Yes, we discussed in what format the defendant desired to receive electronic documents. Yes, the defendant indicated that it wanted documents in native format. However, Plaintiffs never agreed to the defendant's demand that documents be provided in native format.

Please recall that during our very lengthy and heated discussion you proposed a vague process by which Plaintiffs would produce electronic documents in native format to counsel only and counsel would somehow determine whether confidential/non-

Timothy Kapshandy, Esquire
May 21, 2010
Page 2 of 3

responsive information would be redacted from the document. Plaintiffs flatly rejected this vague approach to resolving the parties' impasse.

During undersigned's involvement in this litigation, it has become clear that the defendant believes that simply because he requests something, or demands something, that by doing so, Plaintiffs are obligated to comply. Defendant's posture, in this regard, has significantly contributed to the ongoing, unresolved issues between the parties.

Further, as it relates to the specific examples outlined in your May 5th letter intended to demonstrate the purported incomplete nature of the Outlook calendars provided by the plaintiffs, if the defendant's claims are correct, NIAC believes there are a number of benign explanations for any inconsistencies and hope to complete their investigation by Monday.

Accordingly, it is Plaintiffs position that they have made a good faith effort to provide the defendant with a complete set of Outlook calendars and all responsive e-mails relating to Dr. Mansouri.

## NIAC "Recently" Discovered CPU and E-mails

The CPU at issue was searched earlier in this case when NIAC did its initial document production. Upon information and belief, the defendant was already provided with responsive documents from the CPU at issue. Thus, the CPU at issue wasn't "recently" discovered as you have characterized it. (Please review my letter to you from on or about April 8, 2010.)

What "recently" was done was that NIAC searched this CPU again in light of the search terms agreed to by the defendant relating to Mr. Talebi. The entire CPU was searched, not any particular time period.

Thus, there is no recently discovered NIAC CPU containing thousands of e-mails not previously searched.

## Mansouri and Talebi E-mails

Below are plaintiffs responses to the numbered questions posed in your May 5 letter regarding e-mails produced relating to Dr. Mansouri and Mr. Talebi:

1. Yes, both the ISP server and previously searched CPU searched for e-mails.
2. See answer number 1.
3. We have not agreed to provide any electronic documents in Native format.
4. NIAC has had at least 3 different ISP servers. The ISPs, by agreement, only hold so much data. NIAC stored information on its CPUs. Once a CPU was discarded, it was discarded. Mr. Talebi had several computers during his association with NIAC. (We note that Defendant has produced very few, if

## PISHEVAR & ASSOCIATES, P.C.
### ATTORNEYS

Timothy Kapshandy, Esquire
May 21, 2010
Page 3 of 3

    any, pre-litigation hold e-mails from his Yahoo e-mail account.   Maybe forensic imaging is in order with respect to the dearth of pre-litigation hold e-mails produced by the defendant.)

5. See above answers.

6. The e-mails produced relating to Mr. Talebi were produced based upon the search terms agreed upon by the defendant.  The defendant seems to fail to understand the Mr. Talebi did community work.  Thus, the search terms agreed to by the defendant would not net many e-mails based upon the nature of Mr. Talebi's work.

7. This issue was previously addressed in a February 4, 2010, letter to you from Patrick Parsa, Esquire.

<u>Depositions</u>

    Lastly, we had an opportunity to discuss possible depositions dates for the first two weeks in June 2010.

    If you have any questions or concerns, please contact me or Afshin Pishevar.

Very truly yours,

Adrian V. Nelson, II

# PISHEVAR & ASSOCIATES, P.C.
### ATTORNEYS