IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TRITA PARSI, et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 08 CV 00705 (JDB) |
| | ) |
| SEID HASSAN DAIOLESLAM | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF
PLAINTIFFS' MOTION FOR RECONSIDERATION
OF JULY 1, 2010, ORDER REGARDING DISCOVERY

COMES NOW Plaintiffs, Dr. Trita Parsi and the National Iranian American Council ("NIAC") (collectively "NIAC"), by and through their counsel, Afshin Pishevar, Esquire, Adrian V. Nelson, II, Esquire, and Pishevar & Associates, P.C., pursuant to Fed. R. Civ. P., Rules 59(e), and hereby moves that the Court reconsider its July 1, 2010, Order (hereinafter "the Order") regarding discovery in the above-captioned case, and states as follows:

I.   INTRODUCTION

As presently fashioned, the Court's Order, in several respects, will visit "manifest injustice" upon NIAC and therefore, respectfully, must be reconsidered. Heightening the potential "manifest injustice" to NIAC as it relates to the portion of the Court's Order relating to forensic imaging of NIAC's server is the fact that forensic imaging 1) is unnecessary, 2) is being ordered notwithstanding the fact that the need for forensic imaging is of Defendant's own making, and 3) ultimately will result in NIAC likely having to bear the cost for forensic imaging when such imaging is only necessary because of Defendant's own instructions regarding the

production of Outlook calendars. Moreover, the Court's Order further visits "manifest injustice" upon NIAC as it appears to improperly require NIAC to produce email relating to Babak Talebi if an email relates to Mr. Talebi's "community work" without regard to whether the contents of any Talebi email is otherwise discoverable.

Accordingly, for the reasons set for more fully below, NIAC respectfully requests that the Court reconsider its Order.

## II. PROCEDURAL HISTORY

In May 2010, the defendant solicited the assistance of the Court to resolve two discovery disputes between the parties. First, the defendant complained that NIAC had failed to disclose complete and unaltered Microsoft Outlook calendars to the defendant. The second issue was whether NIAC had properly withheld emails relating to Babak Talebi.

The procedure established by the Court to resolve the two discovery disputes was to have the parties file simultaneous briefs by June 2, 2010, outlining their respective positions. *See* May 26, 2010, Minute Order and July 1, 2010, Order, p. 2. Both parties were strongly admonished by the court to limit to three (3) pages their respective briefs regarding the two discovery disputes.

On June 3, 2010, the Court held an on-the-record telephonic conference to hear from both parties regarding the discovery disputes. During the hearing, Counsel for the defendant, Timothy Kapshandy, Esquire, was permitted to testify that:

1. With respect to the second set of Outlook calendars produced by NIAC purportedly a field had been omitted. (Tr. 4:12-13)

2. With regard to the second set of Outlook calendars produced by NIAC "important" meetings were missing, including alleged meetings with a senator, Secretary of State official, and someone from NSC. (Tr. 4:14-16)

3. There are no calendar entries for a five month period in 2006 for plaintiff Dr. Parsi, which Counsel Kapshandy was permitted to testify was during the same time period Dr. Parsi allegedly received unsubstantiated authorizations from the Iranian government to engage in

certain purported political activity. (Tr. 4:23-5:1) In fact, Counsel Kapshandy was permitted to reference unauthenticated email during the hearing, which it does not appear the defendant attached as exhibit to their brief, as proof of Dr. Parsi's alleged nefarious political activity on the part of the Iranian government.

4. NIAC used a purported "community work" filter to significantly lessen the number of Talebi-related emails produced. (Tr. 5:15-20)

Ultimately, the heart of the Court's ruling during the June 3rd telephonic hearing was that it would "order a forensic imaging with respect to the Outlook server that relates to the calendars" and "require[] the plaintiff to review [Talebi's] emails and produce all responsive materials without excluding the materials relating to community work." (Tr. 15:19-16:2) The parties were tasked with preparing an order, but the Court noted that if the parties could not agree to the language and/or format of the order the plaintiffs could file objections to the proposed order fashioned by the defendant.

On June 10, 2010, NIAC filed objections to the proposed order prepared by the defendant. Therein, NIAC raised a number of objections with regard both to the procedure used by the Court to reach its ruling and the contents of the proposed order itself. First, NIAC argued, as it had during the telephonic hearing on June 3, 2010, that the simultaneous briefing process implemented by the Court was "unfair and prejudicial." *See* NIAC June 10, 2010, Memorandum [Docket Entry # 67], at p. 2.; *see also* Tr. 18:6-23. In the Court's Order, it upheld its use of a simultaneous briefing procedure by pointing to the "broad discretion over the scope of discovery" vested in a district court and by finding that both parties had a full opportunity to argue their respective positions during the telephonic hearing. *See* Order dated July 1, 2010, p. 2 (citation omitted).

In its Order, the Court also rejected NIAC's concern that the resulting Order was based upon, and at the very least, influenced by "unverified hearsay" raised during the testimony of counsel Kapshandy during the June 3rd telephonic hearing. *See* Order dated July 1, 2010, p. 3.

Lastly, NIAC raised an objection regarding possible metadata mining abuses that may result based upon the way in which the Order was proposed by the defendant.

On July 1, 2010, the Court issued its Order. First, the Court's Order requires that by July 16, 2010, NIAC make available to PricewaterhouseCoopers (hereinafter "PWC"), per the Defendant's suggestion, its servers on which its calendars were stored. Additionally, by July 16, 2010, NIAC has been ordered to provide to the defendant on a CD the ".pst" calendar records produced by NIAC on December 28, 2009, and the Excel calendar records produced by NIAC on April 21, 2010. PWC has been tasked with creating a report that will detail: 1) whether any calendar entries were omitted from the Outlook calendar productions on December 28, 2009, and April 21, 2010, and if so, when and by whom did such omissions occur; and 2) whether there are any deletions in the calendar entries and/or edits after December 8, 2009. Lastly, it appears that NIAC has been ordered to produce all emails relating to Babak Talebi by the July 16th deadline as well.

The instant Motion for Reconsideration is timely.

### III. FACTS RELEVANT TO RECONSIDERATION

The following facts are relevant to reconsideration of the Court's Order relating to the Outlook calendars (hereinafter the "Calendars") and the Talebi-related emails.

**A.   The Calendars**

To obtain a correct perspective on the Calendar issue, the Court must look back to an email dated December 9, 2009, from the defendant's counsel to NIAC. In that email, NIAC was

- 4 -

asked by the defendant to produce from NIAC Calendars) only "meetings with government officials." *See* Exhibit A, December 9, 2009, Email Timothy Kapshandy, Esquire. Counsel Kapshandy wrote in relevant part:

> As for discovery still owed by NIAC to defendant, several items were addressed yesterday:
>
> 3. Outlook/Calendar records of meetings with government officials (and any foreign persons) . . . We ask that you immediately review all diaries, calendars, for such and produce them immediately. As NIAC has used Outlook email for many years and you were able to produce those going back more than 6 years, the same should be true of Outlook calendar entries . . .

*See* Exhibit A.

Consequently, between December 25 and 27, 2009, during the Christmas holiday, NIAC, in "good faith," did exactly as the defendant had requested – it compiled a list of only meetings with government officials and foreign persons. In a December 28, 2009, transmittal email, NIAC outlined the extensive holiday efforts it had undertaken to produce the Calendar information requested by the defendant through counsel. *See* Exhibit B, December 28, 2009, Email from Patrick Parsi, Esquire and Exhibit C, Declaration of Trita Parsi, Ph.D.[1] Mr. Parsa wrote:

> I must remind that the production of the attached documents was extremely time consuming and was conducted during the Christmas holiday break (when many people are out of town) – in good faith in order to satisfy your deadline . . .

*See* Exhibit B.

**B.    Talebi Emails**

The defendant also alleges that NIAC wrongly withheld several thousand emails pertaining to Babak Talebi. However, during the course of discovery Mr. Talebi's personal

---

[1] NIAC reserves its right to supplement Dr. Parsi's Declaration with a notarized version of the same Declaration when he returns from international travel.

-5-

computer and Gmail accounts were searched, the latter of which resulted in the discovery and transference of over 100 emails to the defendant on December 21, 2009, which was in addition to many other emails that had already produced. *See* Exhibit D, December 21, 2009, Email from Patrick Parsa, Esquire.

Notwithstanding NIAC's "good faith" efforts, in or about April of 2010, NIAC became aware of an overlooked database of approximately 8,000 emails relating to Mr. Talebi. In light of its discovery, NIAC undertook a diligent inspection of the discovered files using certain search terms previously agreed upon by the parties. *See* Exhibit E, List of Party Agreed Upon Search Terms. NIAC did not, *sua sponte*, filter out Talebi-related email based upon it view that only email relating to the "community work" he did was relevant. Rather, once NIAC used the agreed upon search terms, it then determined whether the pool of Talebi-related emails were responsive to either Defendant's First Request for Production or Defendant's Second Request for Production. On April 23, 2010, NIAC produced only those Talebi-related emails that were responsive to the defendant's document requests were produced. *See* Exhibit F, April 23, 2010, Email from Adrian V. Nelson, II, Esquire.

## IV.   AUTHORITY AND ARGUMENT

### A.   Legal Standard for Reconsideration

Pursuant to Fed. R. Civ. P. 59(3), a district court may grant a motion for reconsideration if it finds that there is "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Firestone v. Firestone*, 76 F.3d. 1205, 1208 (D.C. Cir. 1996)(*per curium*) (citations omitted); *Koretoff v. Vilsack*, 626. F. Supp. 2d 4, 5 (D.D.C. 2009) (citations omitted).

**B.     Avoidance of a "Manifest Injustice" Warrants Reconsideration of the Order**

**1.     "Manifest injustice" resulted from the Court's simultaneous briefing procedure.**

As previously raised in NIAC's Objections to the order proposed by the defendant, the simultaneous briefing procedure established by the Court to resolve the two discovery disputes was unfair and resulted in manifest injustice. Certainly, as noted in its Order at p.2, the Court has broad discretion with respect to the scope of discovery. However, "fairness" must be the benchmark of all discovery-related decisions made by a Court.

The Court's simultaneous briefing schedule was unfair, especially when coupled with the Court's very strict three (3) page brief limitation. As is confirmed in footnote 1 of the Order, the Court appears not to be troubled by the fact that its procedure required NIAC not only to have to make anticipatory arguments, but to do so in the limited span of three (3) pages notwithstanding the plethora of complaints the defendant had about NIAC's discovery efforts relating to the Calendars and the Talebi-related email.

Accordingly, "manifest injustice" resulted from the Court's simultaneous briefing procedure, especially when coupled with its page limitation.

**2.     "Manifest injustice" resulted from Defendant's Counsel's permitted hearsay evidence.**

On June 3, 2010, the Court held an on-the-record telephonic conference to hear from both parties regarding the discovery disputes. During the hearing, Counsel for the defendant, Timothy Kapshandy, Esquire, was permitted to testify that:

1. With respect to the second set of Outlook calendars produced by NIAC purportedly a field had been omitted. (Tr. 4:12-13)

2. With regard to the second set of Outlook calendars produced by NIAC "important" meetings were missing, including alleged meetings with a senator, Secretary of State official, and someone from NSC. (Tr. 4:14-16)

3. There are no calendar entries for a five month period in 2006 for plaintiff Dr. Parsi, which Counsel Kapshandy was permitted to testify was during the same time period Dr. Parsi allegedly received unsubstantiated authorizations from the Iranian government to engage in certain purported political activity. (Tr. 4:23-5:1) In fact, Counsel Kapshandy was permitted to reference unauthenticated email during the hearing, which it does not appear the defendant attached as exhibit to their brief, as proof of Dr. Parsi's alleged nefarious political activity on the part of the Iranian government.

4. NIAC used a purported "community work" filter to significantly lessen the number of Talebi-related emails produced . (Tr. 5:15-20)

In its Objections to the Order, NIAC raised concerns about the injustice that resulted from Counsel Kapshandy being permitted to provide hearsay evidence that was relied upon by the Court and/or that influenced the Order ultimately entered by the Court. NIAC never argued, as the Court opines in its Order, that the defendant "must provide irrefuted and admissible evidence in order to obtain" the sought discovery. However, a party should not be permitted to engage in McCarthy-like tactics where mere allegations and innuendo, raised by counsel no less, are sufficient in order to obtain desired discovery.

With no significant proffer, other than Counsel Kapshandy's testimony, the defendant has been permitted to make an unfounded claim that an agent for NIAC held a meeting with an NSC official on December 25 and that this meeting, and others, were removed from the two sets of Outlook calendar previously produced by NIAC. First, no such meeting took place on December 25. Second, NIAC is not aware that any such meeting was ever listed on any NIAC calendar. And third, if any such meeting was listed, which NIAC denies, it was not intentionally removed, if removed at all. *See* Exhibit C.

For this reason also, "manifest justice" requires the Court to reconsider its Order.

### 3. "Manifest injustice" will result if forensic imaging is undertaken.

The Order requires NIAC to submit to what it anticipates will be an unnecessary, expensive forensic imaging process. As crafted, initially the defendant bears the cost for the desired forensic imaging. However, if PWC finds that the Calendars have been altered in any way, NIAC anticipates that it will be sanctioned with the expense of forensic imaging.

If NIAC is saddled with the cost of the forensic imaging undertaking, it will be manifestly unjust for several reasons. First, forensic imaging is unnecessary because NIAC is willing to stipulate that it altered the Calendars. *See* Exhibit C. The record clearly establishes that NIAC had to alter the Calendars based upon defendant's request that NIAC provide only information regarding certain meetings it had zeroed in on. *See* Exhibits A-C. The so-called Christmas holiday alterations undertaken by NIAC were not a part of some nefarious plan to hide "smoking gun" meetings, but rather were an attempt by NIAC to give the defendant only the information that it desired. *See* Exhibits A-C. Further, the nature of the Outlook calendar technology is such that an Outlook calendar is not a static document, but a dynamic document. NIAC would never be able to establish that the Calendars were not altered in some way because Outlook calendars are always evolving.

Accordingly, "manifest injustice" will result if NIAC is required to bear the costs for unnecessary forensic imaging based upon its willingness to stipulate the fact that it in December 2009 it altered the Calendars at the defendant's request in order to provide only the meeting information requested by the defendant.

### 4. "Manifest injustice" will result if NIAC is required to produce non-responsive Talebi emails.

Throughout discovery NIAC has remained committed to its obligations. It has searched all accessible databases, including its shared server and individual computers for discoverable material. Its diligence extended to anything it produced relating Mr. Talebi, including having searched Mr. Talebi's personal computer and Gmail accounts, resulted in the production of over 100 emails to the defendant on December 21, 2009. *See* Exhibits D-F.

Notwithstanding NIAC's "good faith" efforts, in or about April of 2010, NIAC became aware of an overlooked database of approximately 8,000 emails relating to Mr. Talebi. In light of its discovery, NIAC undertook a diligent inspection of the discovered files using certain search terms previously agreed upon by the parties. *See* Exhibit E. NIAC did not, *sua sponte*, filter out Talebi-related email based upon its view that only email relating to the "community work" he did was relevant. Rather, once NIAC used the agreed upon search terms, it then determined whether the pool of Talebi-related emails were responsive to either Defendant's First Request for Production or Defendant's Second Request for Production. On April 23, 2010, NIAC produced only those Talebi-related emails that were responsive to the defendant's document requests were produced. *See* Exhibit F.

Contrary to the defendant's disingenuous claim, which the Court appears to have adopted, NIAC never failed to produce any Talebi emails based upon some non-existent "community work" filter. Rather, NIAC used the search terms agreed upon by the parties to determine which of the Talebi emails was discoverable. NIAC simply sought to explain to the defendant that the "community" nature of the work done by Mr. Talebi may explain why so few emails were responsive to the defendants first and second requests for production of documents, which therefore resulted in so few Talebi emails ultimately being produced.

The Order appears to require NIAC to produce all of Mr. Talebi's emails, which is well beyond the parties agreement and the scope of what should be discoverable pursuant to the defendant's written discovery requests for documents. Accordingly, this is a "manifest injustice" that must be reconsidered.

## V. CONCLUSION

Accordingly, to avoid "manifest injustice" NIAC hereby requests that the Court reconsider the prescriptions and remedies set forth in its Order.

Respectfully submitted,

Dated: July 15, 2010

/S/
A.P. Pishevar (D.C. Bar No. 451015)
Adrian V. Nelson, II (*Pro Hac Vice*)
**PISHEVAR & ASSOCIATES, P.C.**
600 East Jefferson Street, Suite 316
Rockville, MD 20852
Phone: (301) 279 – 8773
Fax:    (301) 279 – 7347
Counsel for the Plaintiffs