IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TRITA PARSI, et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 08 CV 00705 (JDB) |
| | ) |
| SEID HASSAN DAIOLESLAM | ) |
| | ) |
| Defendant. | ) |

REPLY MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF
PLAINTIFFS' MOTION FOR RECONSIDERATION
OF JULY 1, 2010, ORDER REGARDING DISCOVERY

COMES NOW Plaintiffs, Dr. Trita Parsi and the National Iranian American Council ("NIAC") (collectively "NIAC"), by and through their counsel, Afshin Pishevar, Esquire, Adrian V. Nelson, II, Esquire, and Pishevar & Associates, P.C., pursuant to Fed. R. Civ. P., Rules 59(e), and hereby replies to Defendant's Opposition to Plaintiff's Motion for Reconsideration of the Court's July 1, 2010, Order (hereinafter "the Order") regarding discovery in the above-captioned case, and states as follows:

I.     INTRODUCTION

As is set forth below, Defendant is intentionally deceiving the court and/or is simply technically unsophisticated given some of the ludicrous arguments that he has made in his Opposition to NIAC's request that the Court reconsider it's July 1, 2010, Order. As is detailed below, the most ludicrous of the defendant's claims is that Dr. Parsi is trying to hide the fact that he purportedly met with an NSC official on December 25, 2009, which would have been Christmas day. This assertion doesn't even pass the straight face test.

## II. REPLY ARGUMENTS

A. **The Talebi Emails**

Babak Talebi ended his employment with NIAC in December 2008. Defendant's request for Mr. Talebi's emails came months after he had left NIAC's employment.

When Mr. Talebi contacted NIAC's counsel regarding the defendant's document request, NIAC encouraged him to produce the discovery items requested. While NIAC could have represented Mr. Talebi in this regard, cost concerns, given the small size of the organization, initially prohibited NIAC from offering to represent Mr. Talebi.

However, when concerns developed about Mr. Talebi's responses to the defendant's discovery requests, NIAC agreed to represent Mr. Talebi notwithstanding the cost imposition to the organization. It is therefore manifestly unjust that Defendant is now trying to paint NIAC's decision to represent Mr. Talebi as nefarious when NIAC's decision to do so was intended to ensure that Mr. Talebi provided the defendant with the requested discovery documents.

Further relating to Mr. Talebi, the defendant refuses to comprehend the simple reason why very few of Mr. Talebi's personal emails, from his private email account, were responsive to the defendant's request. Very simply, Mr. Talebi's private email account didn't contain many responsive emails since Mr. Talebi was encouraged not to conduct NIAC business through his private email account.

Also, it bears emphasizing that although the defendant had a copy of Mr. Talebi's computer and got the password to his email, defendant was unable, apparently from a technical standpoint, to effectively conduct the discovery it needed. Mr. Talebi appeared and produced his laptop computer. Defendant scanned the computer. However, upon information and belief within minutes of Mr. Talebi leaving at the conclusion of the scanning process, the defendant

contacted him and advised him that their scan process had been ineffective and needed to be repeated. Thus, either defendant was incapable of scanning the computer or it wanted a second bite at the apple as it related to Mr. Talebi's computer. Further, the defendant claimed that there were too many emails for the defendant to review and so it left that review for responsive emails to Mr. Talebi.

**B.     The NIAC Outlook Calendars**

1.     The "pst" version of the calendars.

Much has been made of David Elliott's purported testimony relating to whether NIAC kept calendars relating to government officials. As a small organization, NIAC never kept separate calendars relating to meetings with government officials. Instead, NIAC's employees simply used their Microsoft Outlook calendars to note meetings of any kind.

Once the parties came to a common understanding following Mr. Elliott's deposition testimony, NIAC produced "pst" calendars for five (5) NIAC employees and/or agents, not three (3) as the defendant has falsely claimed, including for Dr. Trita Parsi, David Elliott, Emily Blout, Patrick Disney, and Jamal Abdi. Mr. Abdi had just started working for NIAC at the time the "pst" versions of the calendars were produced. Further, Defendant's argument that Mr. Disney's calendar contained holidays is unpersuasive. Mr. Disney's calendar contained holidays because NIAC is a small organization and it simply missed the holidays in its effort to make sure that all the reported entries by the end of December.

The defendant apparently concedes, based upon his silence, that any alleged alternations to the NIAC calendars were based upon NIAC's need to open the calendars in order to comply with the defendant's request for information relating to meetings with government officials.[1]

Again, defendant provides no evidence, whatsoever, for their unfounded claim that NIAC had meetings with NSC officials and others noted in the original "pst" files produced. The accusation is devoid of any evidence, much less evidence that warrants forensic imaging being ordered by the Court. To order such imaging would be manifestly unjust.

Further, it is nonsensical for the defendant to indict NIAC because its employees did not record all meetings and save all calendar entries. This is particularly so in the case of Dr. Parsi who was a full time student in 2006 and wasn't subject to any litigation hold in 2006 that would have obligated him to save all calendar entries.

Again, without any evidence that would warrant forensic imaging, the defendant makes a bare allegation that Dr. Parsi had a meeting with Ambassador Zarif. Forensic imaging will not assist the defendant in determining whether such a meeting took place in 2006, if ever.

2.  The Excel versions of the calendars

Regarding the Excel versions of the calendars, there is no merit to Defendant's claim that there is a suspicious reason the "date modified" column was missing. The simple explanation is that when you export calendars from "pst" to Excel, it does not contain that "date modified" column.

---

[1] Contrary to the claim in footnote 5 of Defendant's opposition memorandum, NIAC is not refusing to comment about a so-called "SF" system for tracking notes of meetings with legislators. NIAC has not employed any such software or system and is therefore unable to comment about this unfounded claim by defendant.

Further, the defendant claims that the Excel versions of the calendars omitted a few meetings from 2006. What is the basis for the defendant's claim in this regard? The defendant has admitted in his opposition that the "pst" version of the calendars only contained meetings for 2009. So, defendant is clearly making up its claims that a few meetings were missing in 2006. How would Defendant know this?

The most glaring, non-exclusive, example of the defendant's technical ignorance and/or effort to intentionally mislead the court is as it relates to an email with a sent date of December 25, 2009. Defendant claims that this email was a calendar entry. However, the screen shot on page 11 of Defendant's Opposition clearly says: " Sent: Fri 12/25/2009 7:16:15 AM," which is clearly the time a meeting request email was sent, not the time a meeting was scheduled. For the defendant to claim that a "sent" date relating to a meeting request email is evidence that a meeting took place is the type of misrepresentation and/or technical ignorance that doesn't warrant forensic imaging. This is especially the case when the defendant is asking the court to believe that Dr. Parsi met with NSC officials on Christmas day at 7:16 a.m.

Simply put: the defendant's assertions are ludicrous, have wasted the court's time and judicial resources, and may result in "manifest injustice" if forensic imaging is permitted.

### III.   CONCLUSION

Accordingly, for each of the reasons set forth herein and in Plaintiffs' Motion for Reconsideration, to avoid "manifest injustice" NIAC hereby requests that the Court reconsider the prescriptions and remedies set forth in its Order.

Respectfully submitted,

_____/S/_____
A.P. Pishevar (D.C. Bar No. 451015)
Adrian V. Nelson, II (*Pro Hac Vice*)
**PISHEVAR & ASSOCIATES, P.C.**
600 East Jefferson Street, Suite 316
Rockville, MD 20852
Phone: (301) 279 – 8773
Fax:    (301) 279 – 7347
Counsel for the Plaintiffs