```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA


  TRITA PARSI and                   .
  NATIONAL IRANIAN AMERICAN         .
  COUNCIL,                          .
                                    .  CA No. 08-0705 (JDB)
          Plaintiffs,               .
                                    .
      v.                            .  Washington, D.C.
                                    .  Thursday, June 3, 2010
  DAIOLESLAM SEID HASSAN,           .  11:07 a.m.
                                    .
          Defendant.                .

  . . . . . . . . . . . . . . .

                       TELEPHONE CONFERENCE
                BEFORE THE HONORABLE JOHN D. BATES
                    UNITED STATES DISTRICT JUDGE


   APPEARANCES:

  For the Plaintiffs:          ADRIAN NELSON, ESQ.
  (Via Telephone)              AFSHIN PISHEVAR, ESQ


  For the Defendant:           TIMOTHY KAPSHANDY, ESQ.
  (Via Telephone)              PETER JENSEN, ESQ.
                               H.L. ROGERS, ESQ.


  Court Reporter:              BRYAN A. WAYNE, RPR, CRR
                               Official Court Reporter
                               U.S. Courthouse, Room 6714
                               333 Constitution Avenue, NW
                               Washington, D.C. 20001
                               202-354-3186
```

**Proceedings reported by machine shorthand, transcript produced by computer-aided transcription.**

```
 1                    P R O C E E D I N G S
 2              THE DEPUTY CLERK:  Civil action 08-705, Trita Parsi,
 3    et al, versus Daioleslam Seid Hassan.  I'm going to ask counsel
 4    appearing by phone to please identify yourselves one by one.
 5              MR. JENSEN:  Sure.  This is Peter Jensen at Sidley
 6    Austin.
 7              MR. KAPSHANDY:  Timothy Kapshandy of Sidley Austin on
 8    behalf of defendant.
 9              MR. ROGERS:  H.L. Rogers from Sidley Austin, also for
10    the defendant.
11              MR. NELSON:  Adrian Nelson and Patrick Pishevar on
12    behalf of the plaintiffs.
13              THE COURT:  Is that it?
14              MR. NELSON:  Yes.  Mr. Pishevar will be joining us
15    here in a little bit.
16              THE COURT:  My hope is "a little bit" will be too
17    late, but we'll see.  We're here because of a continuing dispute
18    and the inability of the parties and their counsel to resolve
19    the issue.  The Court has already heard from the parties and
20    addressed at least parts of these issues once before on March 5,
21    and pursuant to a phone call from counsel, this conference has
22    been set up to address continuing concerns raised by the
23    defendant, and I want to stress that, that the phone call that
24    we received to identify discovery issues that needed the Court's
25    attention framed those issues in terms of the two things that
```

1  the defendant was concerned about, and those deal with the
2  calendars and the e-mails and did not raise in that phone call,
3  either from plaintiff's counsel or defendant's counsel, any
4  other issues.
5      So I do not intend to hear any other issues during this
6  phone proceeding.  I'm focusing on what the parties focused on
7  when they initially called and said there was an issue that
8  required the Court's attention.
9      And I'm saying that specifically, Mr. Nelson, in response
10 to the observation, which quite frankly I thought was -- I'll
11 call it an odd thing to do, to note in your supplemental filing
12 that the plaintiff had discovery complaints but somehow the
13 Court's three-page limit on this filing did not allow you to
14 outline your discovery complaints.
15     Well, that's because you didn't raise the discovery
16 complaints, so I didn't have any anticipation that you had
17 discovery complaints.  And I'm not dealing with them today,
18 because you didn't raise them.
19     So let's deal with the situation that we have at hand, and
20 if you, on behalf of the plaintiffs, have discovery issues after
21 we're finished with this proceeding, you can highlight what they
22 are for me and I'll decide how to approach them.  But this
23 telephone conference is not to approach them, because I don't
24 have any knowledge of them.
25     Let me hear first from you, Mr. Jensen or whoever else is

1  going to speak on behalf of the defendant, with respect to where
2  you think things stand and what you think the solution is. And
3  I don't want to hear at length -- in other words, I don't want a
4  half an hour worth of discussion. Please do this in less than
5  five minutes.
6              MR. KAPSHANDY: Tim Kapshandy, Your Honor, and I will
7  be brief. The points addressed in our memorandum I would simply
8  add two things. The plaintiffs do not address, which is a
9  crucial issue besides not producing these in native format, the
10 omissions which we're facing now here on the second attempt to
11 produce these records which they denied existed amongst these
12 calendar records. A complete field has been omitted from this
13 new Excel creation, the date-modified field.
14     As we point out, there were at least more important
15 meetings that they had previously produced that are now missing,
16 and these involve things with the senator and Secretary of State
17 official and someone from the NFC.
18     And equally important, and I spent a lot of time yesterday
19 double checking this to make sure that it was correct, but there
20 is a complete absence during a five-month period in 2006 of any
21 calendar entries on Trita Parsi's calendar -- mind you, a
22 gentleman who averages about four or five meetings a day.
23     This is a very crucial time period, because it's after the
24 spring of 2006 in this litigation when he was authorized by the
25 Iranian ambassador to publicly release a peace proposal and

1       before Iran's president Ahmadinejad visited the UN.

2           The e-mail traffic, and there was one that was produced

3       August of that year, states -- and it's two lines, but it gives

4       you an idea of what Mr. Parsi is up to during this period --

5       writes the Iranian ambassador to his unofficial e-mail address,

6       "Hope all is well and that you are back from Tehran.  Would love

7       to get a chance to see the proposal or to understand more what

8       it entails.  If it is substantial, then certainly members of

9       Congress may find it a reasonable offer even if the White House

10      doesn't.  Trita Parsi."

11          For them to now maintain that this is only an issue about

12      native format, that everything responsive has been produced, is

13      really quite a stretch, and it's bordering on exasperating given

14      that these were requested more than a year and a half ago.

15          So that's all I would add at this point in time.  The

16      Talebi e-mail issue is similar in that here's a gentleman who

17      has been involved since the very beginning.  They identified

18      8,000 potentially responsive e-mails but claim that somehow that

19      they are related to his community service so that they're not

20      discoverable.  But we lay that out in our brief.

21              THE COURT:  So what's the solution in your view?

22              MR. KAPSHANDY:  Well, I think we're back where we were

23      when we were here on March 5, which is to get the forensic image

24      of the Outlook calendar and e-mail server, and we have a very

25      respected accounting firm who does this all the time.  PWC can

1  do this, and what I would propose frankly is -- and hopefully
2  I'm wrong, in which case there's no withholding of inappropriate
3  materials or altering of records, and we will bear the price of
4  that.
5       But if there is something going on in terms of withholding
6  of responsive documents or, even worse, potentially altering of
7  evidence as the PST files altered on December 25 to 27 suggest,
8  then I would ask that the cost of the forensic image be borne by
9  the plaintiffs.
10      And just to be accurate, the best way to get a picture of
11 any sort of alterations would be not only to get a forensic
12 image, which takes a snapshot at this particular point in
13 time -- you see it's today -- but also to ask for electronic
14 copies as prepared for counsel, not as transmitted through
15 counsel to us because those are native formats and there's
16 always a suggestion that every time somebody opens a file it
17 might be altered.
18      So we don't want to necessarily taint either side's counsel
19 with having made those changes, but the parties, the plaintiffs,
20 transmitted to plaintiff's counsel on December 28, made a few
21 calendar files, and on April 21 they transmitted this new Excel
22 file.  And if the consultant can get those three files and
23 forensic image of the Outlook server and compare them, we'll be
24 able to determine, one, if there are changes, and two, if
25 responsive documents have been produced.

1            THE COURT:  Wait a minute.  I have to get this a
2    little bit clearer.  You want a forensic image of the Outlook
3    server, just a snapshot as of what date?
4            MR. KAPSHANDY:  Well, you can only do it on the date
5    that you do it, unfortunately.  What it also permits perhaps, it
6    will show if files have been deleted and not overwritten.  It
7    may or may not.  It will always show when edits were made, not
8    necessarily what was removed, unfortunately.  But if you have
9    these pictures from these other time periods --
10           THE COURT:  All right.  And then in addition to that
11   forensic image, which is a snapshot as of the date that it's
12   done, you want what specifically?
13           MR. KAPSHANDY:  The electronic files in PST format for
14   the Outlook calendars that were transmitted to counsel probably
15   on December 28, which was a Monday, and the same for the Excel
16   calendar entries that were transmitted from the parties to their
17   counsel, most likely April 21 or slightly before then, which are
18   not March files.  They were e-mailed to us, but we don't want to
19   pick up any of the contamination from the handling by other
20   side's counsel.
21           THE COURT:  You say transmitted to counsel.  Who do
22   you mean transmitted to?
23           MR. KAPSHANDY:  Well, from the parties in this case,
24   NIAC and Trita Parsi, to their counsel who then in turn e-mailed
25   them to us.  And what we want to avoid is having any of the

1  contamination, as it were, by either side's counsel, because
2  whenever somebody opens those files after they've been prepared,
3  a record is made and sometimes that's reflected as a date
4  modified, through no one's fault.  And we can avoid that, shall
5  you call it, contamination issue by simply requesting the media
6  which was transmitted to NIAC to their counsel on those
7  respective dates.  That's my concern for wanting them on those
8  dates.
9              THE COURT:  And what about with respect to the
10 e-mails?
11             MR. KAPSHANDY:  Well, I think if we get a forensic
12 image, that's the only thing we have.  We don't have any
13 transmission of those files to counsel.  Maybe there was.  Maybe
14 the Court can inquire.
15             THE COURT:  A forensic image of what?
16             MR. KAPSHANDY:  Of the Outlook e-mail server.  They
17 said they filed these on a CPU, that they had previously either
18 been unaware contained Talebi e-mails that had been searched.
19 It's not entirely clear how they were missed, but a forensic
20 image, unless these have all been deleted, and that would even
21 show on a forensic image, unless somebody really went to great
22 effort to wipe out the hard drive, would allow these 8,000
23 e-mails to be reviewed and determined if in fact they are
24 responsive.
25             THE COURT:  As far as you are aware, are there any

1    privilege claims that have been made with respect to items that
2    would show up on either of the forensic images that you're
3    asking for?
4            MR. KAPSHANDY:  Well, they have not been made, and
5    that's a legitimate concern, and I think we should work out
6    something.  We could even instruct the forensic experts to
7    search for and not produce anything that has Mr. Pishevar's name
8    or his firm or Mr. Parsi or their name in it, because I don't
9    want to get into any -- even though we have a clawback
10   agreement, we don't want any of that, obviously.  We're
11   interested in the stuff actually before 2007 that Mr. Talebi was
12   working on.
13     And as far as the calendar, they produced some things.  The
14   calendar doesn't show a communication.  It does show sometimes
15   meetings or telephone calls with Mr. Pishevar, which the
16   existence of a call is not privileged, but there's nothing that
17   they've produced so far that either they've claimed privilege or
18   I am concerned about might be subject to privilege and should be
19   clawed back.
20           THE COURT:  I agree on the calendar that the privilege
21   issues would be different and may be less likely to arise, but
22   with e-mails, there could be more possible, at least, privilege
23   issues.
24           MR. KAPSHANDY:  Right.  And I think proper
25   instructions to the forensic experts can cull those out and --

1        THE COURT: All right. Mr. Nelson?
2        MR. NELSON: I would like to step back first and
3   discuss how we arrived at this point, because the impression I
4   am getting is that the defendant would have you believe that
5   this office and our client has been uncooperative, and that is
6   not the case.
7        First of all, part of the problem which finds us back at
8   this point is that, to be very frank, the reasonable proposals
9   that are being made, the seemingly reasonable proposals that are
10  being made now is not the way that the communication takes place
11  when counsel are just dealing with one another.  Part of the
12  problem has been purely in the communication between counsel.
13       There's been an implication that we agreed to produce
14  documents in native format.  There was never any such agreement
15  between anyone in this office and anyone that represents the
16  defendant.
17       In fact, I personally had an extensive conversation with
18  Mr. Kapshandy where I asked him what format they wanted
19  documents to be produced in, and he indicated they wanted things
20  to be produced in native format, at which time I clearly advised
21  him that I did not have the authority to authorize that, that in
22  fact my client had concerns about documents being produced in
23  native format, and so I could not agree to that at this time,
24  but I would revisit it with my client.
25       So anything that's in a submission that implies that we

1  agreed to provide things in native format is absolutely not
2  based in fact.  Further, if you read the communication that we
3  provided with our brief, Mr. Kapshandy himself has admitted in
4  his own writings that there are some information that both sides
5  have provided in native format; there is some information that
6  has not been provided to both sides in native format.
7      So for the defendant to indicate that this forensic imaging
8  that they're requesting is necessary because we have not
9  provided things in native format is not the agreement that
10 existed, and it doesn't seem as though it's required under the
11 case law or the Federal Rules of Civil Procedure.
12      Regarding transmission, after we had our conference call,
13 we began the process of trying to prepare both calendars and
14 e-mails for transmission, and the problem is that whenever
15 you're dealing with electronic information, as has been somewhat
16 conceded by the other side, every time a party uses that
17 material, it changes the nature of the material because it's not
18 static in form.
19      So our client has in no way been trying to hide any
20 calendar entries, has not attempted to hide any e-mails, has not
21 attempted to hide any fields such as the date that things were
22 modified.  That has not been the case here.  What has happened
23 is that we've been provided documents.  As counsel's required to
24 do, we've reviewed those documents, and we've provided them in
25 the format that our client thinks is most appropriate.

1          Our client is very concerned about this request renewed for
2     forensic imaging based upon the way in which past information
3     has been used by the other side.  I am not going to address the
4     issue because the Court advised us previously that it would not
5     entertain a confidentiality agreement, but in the past the other
6     side has leaked information to the media, and that's the way
7     this case has been tried in the media.  We have not done that.
8          So our concern is that to the extent that the Court would
9     order forensic imaging that that information would be used and
10    would be disseminated to the media for whatever purpose the
11    defendant chooses to disseminate it.
12         We don't believe that forensic imaging is necessary.  What
13    may be necessary is some type of an expert who can explain and
14    look at the information as it was transmitted, but forensic
15    imaging is the most intrusive form of remedy that could be
16    provided to the other side, and we don't think that it's
17    warranted in this case.
18         With respect to the particular e-mails that the defendant
19    is referencing, we have to understand how the process of
20    discovery developed in this case.  It's my understanding that
21    the parties first reached an agreement about particular search
22    terms that they would use in order to try to look through all
23    the thousands and thousands of e-mails that may be responsive in
24    this case.
25         Originally, when a response was provided, there were

1    certain search terms that were used.  The server that the
2    defendant continues to try to say was recently discovered was
3    already searched based on search terms that were agreed upon by
4    the parties.  E-mails were provided a long time ago from that
5    particular server.
6         What happened is that the defendants subpoenaed information
7    from Mr. Talebi, but they only wanted it from his personal
8    e-mail account.  At that time, he provided that information.
9    After that point, then they realized that there was an
10   additional server that might have e-mails of a professional
11   nature for Mr. Talebi, so we had to go back and search the same
12   server again for information based on the search terms that were
13   agreed upon only after Mr. Talebi's personal e-mail account.
14        So there has been no attempt to hide information here; it's
15   just the way that the process has unfolded in terms of engaging
16   in discovery.  So to allow them to have forensic imaging of a
17   database which they never originally accessed because they
18   specifically asked for information relating to his personal
19   e-mail account we think would be punitive when our client has
20   done nothing but comply as we've gone through this role in
21   discovery process.  I think those would be my responses to
22   what's been raised.
23             THE COURT:  All right.  Very briefly, Mr. Jensen.
24             MR. JENSEN:  Your Honor, the letter of response with
25   regard to the Talebi e-mails just doesn't hold water.  The

1  search terms that were used for both Talebi's personal e-mail
2  originally, according to NIAC, included Talebi.  What they
3  failed to explain is how they narrowed that down from 8,000
4  e-mails to 89 that were produced other than to say, well, it
5  only relates to his community work, so we would maintain that,
6  quote, community work is discoverable.
7      With regard to the native format agreement, the Kovac case
8  is directly on point and explicitly supports our position.
9  Because we produced files in an e-mail format, which was because
10 of a minor technical issue, the parties abandoned the agreement
11 to produce files in native format is just really a stretch.
12     What counsel appears to be saying is because they're
13 concerned that our client releases and writes about these on his
14 Web site, that they were justified in somehow pulling a
15 switcheroo after they called and asked, what format do you want
16 these in?  Again, per the Kovac case, if there is an agreement
17 that it be produced per that agreement, and if there's no
18 agreement as the plaintiffs now maintain, then the default is
19 native format.  Thank you.
20         THE COURT:  All right.  Only e-mails.  And I'm going
21 to issue an order, but let me give you a little bit of a sense
22 here.  On the e-mails, it does seem to me that this is basically
23 a dispute about not the past and how long it took to get this
24 body of e-mails, but with this additional volume of 8,000 Talebi
25 e-mails found on a server, the issue is how the plaintiff

1    decided what to produce from those 8,000 and winnowed it down to
2    89, I guess, that were produced in native format.
3        The complaint is primarily that this concept of community
4    work was applied and anything that was related to Mr. Talebi's
5    community work was not produced, and it does seem to me that the
6    defendant has made a persuasive argument against the use of that
7    limiting factor for the production of those e-mails.
8        And I haven't heard anything really either in the papers or
9    here today -- I haven't heard anything that really disputes what
10   the defendant's position is with respect to that community work
11   issue.  So I'm going to order in some way that those e-mails be
12   again reviewed, whether it be through a forensic image or
13   otherwise, again reviewed and that the e-mails be produced
14   without culling out everything that related to community work.
15       The easiest way, of course, is something along the lines of
16   a forensic image that just produces everything, but that has
17   some problems.  It has some potential privilege problems, and
18   I'm not sure that that's warranted in this circumstance.
19       So I think I'm just going to issue an order that requires
20   the plaintiff to review those e-mails and produce all responsive
21   materials without excluding the materials relating to community
22   work.  In other words, that that cannot be applied as a limiting
23   factor for the production of those responsive e-mails.
24       Now, on the other issue, I am going to order a forensic
25   image with respect to the Outlook server that relates to the

1  calendars, and as well, I'm inclined to order the production of
2  these several electronic files that were identified.  But what
3  I'm going to do is require the parties to have a further
4  discussion and then require the defendant to submit a proposed
5  order, because you know exactly what you think you need and is
6  warranted here.
7       You've described it vaguely to me, but I won't get it right
8  necessarily in an order, and I'd rather that you have a
9  discussion with plaintiff's counsel to see if they can agree to
10 the wording of the order that I'm going to issue, knowing that I
11 have decided to go ahead and issue an order requiring the
12 forensic image and the production of the electronic files to see
13 whether you can come up with an agreed-upon order to effectuate
14 that.
15      If you don't have agreement, then the defendant should
16 submit the proposed order, and within two days the plaintiff may
17 indicate objections to that proposed order.
18      You might as well just include the e-mail issue in that
19 proposed order as well, because that gives you a further
20 opportunity to have a brief discussion about it and maybe the
21 two sides, knowing that I am prepared not to order a forensic
22 image but to require production of the e-mails without any
23 limitation based on community work, it might be that you can
24 come up with the wording of a proposed order that I will issue
25 that both sides will agree to.

1      So that's an outline of what my rulings are.  What I'm
2 asking is that you have a discussion and then submit a proposed
3 order.  It might be a proposed order that each side has agreed
4 to.  On the other hand, if it's not with the agreement of both
5 sides, then the defendant should submit the proposed order
6 indicating that the plaintiff has not agreed to it, and the
7 plaintiff has two business days to file any objection to it that
8 you wish me to consider.  Those objections must be in a
9 memorandum of no more than four pages in length.  Is that clear
10 enough to everybody?
11      MR. NELSON:  Yes, Your Honor.  I do have two questions
12 from the plaintiff's perspective.  The first question is since
13 we're on the record, I'd like to know whether or not if the
14 plaintiffs reach an agreement in terms of what the language
15 should be in the proposed order whether or not by agreeing to
16 that language we would then be waiving any right that we have to
17 request reconsideration based upon the rulings that have been
18 made here today.
19      THE COURT:  No, and you can indicate that.  And if you
20 feel that you need to somehow indicate that, that's fine.  I
21 don't mean by setting up this proposed order mechanism to mean
22 that you have waived any rights to ask for reconsideration, et
23 cetera.
24      What I do mean is, I've given you the framework of the
25 ruling that I'm going to enter.  To effectuate that ruling, I

1  want the parties to talk and see if they can come up with an
2  agreed-upon order, but you would not be forfeiting or waiving
3  any ability or right to ask for reconsideration or in a future
4  setting to say that I shouldn't do the same thing that I did
5  here, et cetera.
6         MR. NELSON:  Thank you.  And my second point, since
7  we're on the record and with all due respect to the Court, I do
8  want the record to indicate that because of the format that we
9  went through in terms of resolving this dispute today, the Court
10 began its comments upon noting that it thought it was odd that
11 we mentioned the page limitation on our submissions.
12       I do want the record to reflect that part of the Court's
13 basis in its ruling about e-mails related to the community
14 standard issue, as it's being called.  That particular argument
15 was never made to us by the other side, nor did we have a way of
16 responding to that argument because our filings were made
17 simultaneously.
18       If we had followed a procedure where one side had filed
19 their arguments first and we had responded, then we could have
20 answered some of those issues, but with simultaneous filing we
21 have no way of anticipating what their arguments were going to
22 be.  So I do want that noted for the record, but we are ready to
23 move on with the way the Court has outlined that.
24         THE COURT:  All right.  That is noted for the record.
25 I think it's a fair point in terms of the briefing.  I take and

1    accept your view that you're ready to move on, and I would make
2    only the observation that in this proceeding I also have not
3    heard any real response on the community work.  But let's leave
4    that aside and move on, as you said.
5         With that, I will expect to receive a proposed order,
6    either fully agreed upon or as proposed by the defendant by
7    when, Mr. Jensen?  When do you think is an appropriate time
8    frame?
9              MR. KAPSHANDY:  This is Tim Kapshandy, Your Honor.  I
10   would expect we can chat right now and hopefully get something
11   to you by Monday morning.
12             THE COURT:  All right.  Now, understand that it
13   requires some discussion with the other side.  So let's not have
14   it on Monday.  Let's say by close of business on Tuesday.
15             MR. KAPSHANDY:  That's fine.
16             THE COURT:  All right?  Any other questions?
17             MR. NELSON:  No, Your Honor.
18             THE COURT:  All right.  Thank you all, and I'll look
19   forward to receiving something by the end of the day on Tuesday,
20   and I will act accordingly.  If it requires waiting for
21   plaintiff to pose any objections, I'll wait until the end of the
22   day Thursday to receive those objections.  Good day to everyone.
23   Have a good weekend.
24             (Proceedings adjourned at 11:37 a.m.)
25

```
                    *   *   *   *   *   *
```
## CERTIFICATE

I, BRYAN A. WAYNE, Official Court Reporter, certify that the foregoing pages are a correct transcript from the record of proceedings in the above-entitled matter.

_____
BRYAN A. WAYNE