| | |
|---|---|
| **From:** | Kapshandy, Timothy E. |
| **Sent:** | Monday, January 03, 2011 12:32 PM |
| **To:** | Adrian Nelson; Afshin Pishevar (ap@pishevarlegal.com); Patrick Parsa |
| **Cc:** | Rogers, HL; Jensen, Peter |
| **Subject:** | FW: PDF Discovery issues chart |
| **Attachments:** | PDF Discovery issues.pdf |

Adrian:

Further to the Court's Dec 22 order and discussions at the Dec 17 status conference, attached is a list of outstanding discovery issues we have complied to enable us to work together to wrap up discovery by Feb 5. While we would not expect NIAC to agree to some of them, please note that some have been outstanding for weeks and we'd ask that you supply those materials as soon as possible (e.g., the memos mentioned at Disney's dep, the materials mentioned at Parsi's dep, the litigation hold, access to the SF/Convio database, etc.) Using this as a checklist, let's try to knock off as many of these as possible and get this substantially narrowed down well in advance of the Feb 5 hearing. Please let me know a good time to discuss.

Thanks,

Tim



EXHIBIT A

## DISCOVERY ISSUES

| ISSUE | DESCRIPTION | STATUS |
|---|---|---|
| **Depositions** | | |
| Gardiner | 30 minute telephonic limited to the list of congressmen provided after his original deposition | PL's to offer dates in January ASAP |
| Talwar | DOJ has offered Talwar to 1.5 hour deposition in DC. Def to provide exhibits in advance. As of Dec 17, PL had not agreed to time limit or to dates offered. | If DOJ terms not acceptable to PL's, they are to work out arrangement and get possible dates from DOJ or raise with Court. |
| Aikat | Offered and accepted for Jan. 5 in NC | Noticed and scheduled |
| Lopez/ Timmerman/Rubin | PL's informed the Court and Def that they remain unavailable to this point. Lopez's counsel, however, offered her voluntarily for a dep in October and states that he was never contacted after that nor was her appearance ever subpoenaed. | Plaintiffs to subpoena and notice on dates Def can cover by Feb 4 if they want to take these deps. |
| Safavi | Def has requested dep in Chicago where Safavi lives since last summer. PL's raised concern about Talebi's costs and refused to produce Safavi unless treated as subpoenaed. Def agreed to pay costs of subway to and from his house and PLS stated in open court that they would produce Safavi. | PL to offer dates for Safavi in January ASAP |
| Parsi | A number of items were promised and/or requested at his dep and others are to be expected after his dep (e.g., SF) that will require follow up. Def requests the follow up materials ASAP and dates when Parsi can appear in January to complete his deposition. | Def awaiting followup materials and dates in January. |

1/20/11

| ISSUE | DESCRIPTION | STATUS |
|---|---|---|
| Salesforce/Convio Membership Data | ALL information regarding membership including names, dates, contributions, notes re meetings. At sometime in 2009 or 2010, Heller Consulting either transferred the SF data to another database (a Convio Product known as Common Ground) or overlayed the Common Ground product over the existing SF database. | At the Sept 16 status conference, PLs offered to provide the information needed for Def to access this data. Def repeatedly asked for this information an was told by SF and Convio that a username and password were required. At his deposition, Trita Parsi testified (Vol. 2, p. 315) that part of the data (meeting notes) were not migrated. The night before the Dec 17 status conference, NIAC stated that SF was mistaken and would make the meeting notes available for one week only. At the Dec 17 status conference, the Court was informed that Def had requested ALL info regarding membership and that as PL was claiming lost members as damages such was clearly relevant. The fact that PL had produced a 2007 membership list with several hundred members was not considered to have satisfied the discovery request for ALL information regarding membership. On May 22, 2009, PL certified that all discoverable documents had been produced knowing that this membership database existed. It was not until after PL's second production of calendar records (under risk of Court-order imaging) that Def discovered the existence of the SF database and not until the discovery of additional calendar records from the imaging process that Def discovered the extent of the use of the SF database and the nature of the migration of the data after the litigation hold. | 1. Def requests immediate direct access to ALL the SF or Convio or Common Ground database reflecting membership data. 2. Def requests NIAC to certify that none of the membership data or meeting notes were lost or deleted as part of the migration process or at any other time since suit was filed in March 2008. 3. Prof. Morse testified that he was informed that board minutes reflect that membership has dropped from 2000-3000 to 1200; no such documents have been produced. Def. requests such documents and all membership data in order to confirm such claims. 4. Def requests the costs of not obtaining these data the last 1.5 years including any time and expenses relating to having to redepose Trita Parsi on these membership data. |

| Other Unproduced Materials | | | |
|---|---|---|---|
| Dr. Parsi's notes regarding meetings with governmental officials (Iranian, U.S., or other governments). None appear to have been produced by NIAC or Parsi. | At the Dec 17 court hearing, NIAC claimed incorrectly that PwC had improperly obtained during the imaging process drafts of Parsi's book, "Treacherous Alliance." As was pointed out by Def, these were produced by NIAC in May 2009. (This can be verified by reading Def's article on the "Grand Bargain.") What is most troubling about this, as Def pointed out to the Court, is that PL's appear to believe that they could withhold such evidence even while certifying that ALL discoverable materials had been produced. Since Trita Parsi has written one book describing in great detail many meetings with governmental officials and is working on another one and since his calendar is full of hundreds of such meetings, it would appear that Parsi, who had many problems remembering things several years in the past at his deposition, has such notes and has not produced them. If he has not a single note relating in any way to such meetings Def. asks that that he confirm such under oath | Parsi to produce all notes relating to meetings with any governmental officials or verify under oath that the May 22, 2009 document production is complete and that he has no such notes or drafts or documents. If Parsi produces any such materials, Def requests the opportunity to redepose Parsi on these at PL's expense. | |
| | Litigation hold imposed in March 2008 when lawsuit filed. | This was purportedly attached to NIAC's email of 7:38 PM EST on Dec 16 but was not. Def has asked that it be produced but it has not. | PL to produce the litigation hold ASAP. Def requests the opportunity to depose Parsi on this once Def has had a chance to review it. |
| Materials promised by Prof. Morse at Deposition | | 1. Current list of testimony. 2. Example case of food/cocoa company used for computing lost profits. 3. Name/info of defense lawyer in Shriner's case. | Def. requests PL produce these ASAP |

| | | |
|---|---|---|
| Disney lobbying memos | At Disney's memo, besides the memo he did July 25, 2008, he mentioned other research and memos on lobbying laws that have not been produced: CLIPI materials (p. 76), intern research (p. 159), continued internal NIAC emails/memos (p. 167), law firm memos (p. 169, 238) and packet from legal experts (p. 73). These were requested in writing Nov. 17 and have yet to be produced. | 1. Def. requests all these be produced immediately. 2. Def. requests NIAC explain in open Court how consistent with its certification that all discoverable materials were produced in May 2009, these were not produced. 3. Any costs with Def's efforts to obtain an order to produce these and any addition deposition expenses caused by NIAC's untimely production. |
| Production of the shared server/drive/CPU per the Court's July 1 order along with any other PC's not produced for imaging including the Apple laptop acquired by Parsi in May 2010 | On Aug 18, instead of producing NIAC's shared server per the Court's July 1 order and to which NIAC had at least three opportunities to demonstrate did not contain any Outlook pst files, NIAC took it upon itself to produce some but not all of the machines connected to its network in August 2010 and withheld the server. Moreover, NIAC refused to produce Parsi's laptop claiming that it did not contain calendar entries for the time period covered by the Court-ordered imaging (even thought the Court order contained no time limitations). Some of the entries discovered during the imaging process reflected that in late 2009 and early 2010, NIAC hired Progressive Office to do a network survey. That consultant also installed another server and appears to have migrated data from the original server; the disposition of the original server is not clear. That survey demonstrates that 4 PCs connected to the network were not produced for imaging. One was named "niac-emily", apparently named after the Legislative Director, Emily Blout, and another was named "Policy Director." **Even more troubling was that the PC NIAC produced as Parsi's and swore under oath was used by him since early 2009 was not even connected to the network in Dec 2009.** At his deposition, trying to anticipate this evidence, Parsi testified that he had problems with his computer dropping off the network so the consultant was called in. The consultant states, however, that he | 1. Def reiterates its request that the shared server and the now 6 unproduced PCs be immediately produced for imaging and analysis at NIAC's expense. 2. Def requests that Parsi's current laptop be produced for imaging. 3. Def requests that the hard drives it imaged be returned for analysis of user habit information and registries so that it can be determined when which machines were used by which users and be able to do the same on the above 8 machines at NIAC's expense. 4. Def requests that PL's answer repeated requests about on which CPU/PC/server/drive the 8000 Talebi emails were located. 5. PL's immediately explain what became of the desktop "NIAC 2008" |

was never informed of this issue and Progressive Office would have found Parsi's computer if it were attached to the network in Dec 2009. Parsi also testified that NIAC did not produce computers that were merely used by interns but admitted that the interns got used machines that were previously used by others such as Emily Blout. At the Dec 17 hearing, NIAC produced a list of 13 computers (now calling them CPUs even though no one else including their computer consultants calls them CPUs) in NIAC's office along with a name of the user. This raised even more concerns as it showed the existence of two more machines in use that were not produced for imaging and also that the PC formerly used by Blout and Moghtader was no longer in its possession.

| | | |
|---|---|---|
| Materials Promised and/or requested at Parsi Deposition | A number of materials were promised and/or requested at Parsi's dep and have not yet been produced including, but not limited to: (1) what pecuniary damages Parsi is claiming, the basis for each and whether he intends to keep any recovery or turn over to NIAC as it is financing his personal lawsuit; (2) the computer/CPU/database/serve/ drive on which the 8000 Talebi emails were found; (3) when NIAC switched ISP/email providers and from whom to whom; (4) the written agreement between PL and Def to narrow search terms; (5) the agreement pre-Dec 8, 2009 permitting NIAC to narrow the calendar search to only 2009 and certain search terms; (6) the serial number of the desktop Parsi used in 2008; (7) the written litigation hold and any other written reminders or emails relating to it. PL's have not produced any reports or documents relating to Parsi's reporting of death threats to law enforcement officials allegedly related to Def. Def requests such be produced immediately or PL confirm that no such written reports were made. | 1. Def requests these be produced ASAP and Parsi be produced to continued his deposition on these materials. |
| Designation of certain Blout Calendar entries confidential | At Blout's deposition of Sept. 1, 2010, Def asked Blout's counsel to designate which entries were personal and would be redacted as confidential. On Oct. 12, her counsel sent a list of over 40 entries. Def responded that 8 related to a staffer or preparation for a NIAC event. Def is willing to treat the other 30 or so as confidential but needs NIAC's and Blout's consent | |
| Interrogatory regarding Talebi Emails | On August 20 & 24, NIAC produced about 2500 of 8000 recently discovered Talebi emails. On Aug. 23, Def sent interrogatories requesting: (1) on what basis NIAC had informed the Court that these did not contain search terms and did not relate to Talebi's community work when all the recently produced emails did; and (2) the basis for withholding the remaining 5000 + emails. NIAC | 1. Def. requests the costs of its motion to produce the Talebi emails.<br>2. Def. requests NIAC answer on which CPU/drive/PC server the 8000 emails were found.<br>3. Forensic images of all emails on that |

6

| | | |
|---|---|---|
| | responded by not answering the first question and responded to the second claiming none of the 5000 + emails were "discoverable" and contained no search terms. | machine at NIAC's expense.<br>4. If discoverable emails not produced, NIAC be subject to severe sanctions permitted including dismissal with costs and fees and civil contempt. |
| Weekly agendas | | |
| Costs of Court-ordered imaging | The July 1, 2010 order left open the issue of costs of the imaging pending the findings of the Court-ordered imaging. | 1. Def requests permission to file PWC's report with the Court.<br>2. Def. requests reimbursement of the costs of imaging/analysis/report. |
| Sanctions for failure to produce responsive emails | Hundreds of the Talebi emails met the search terms and were discoverable but were not produced in May 2009 until after ordered by the Court on July 1, 2010. Other emails were produced by Talwar, CNAPI, the Leveretts, Children of Persia and Prof. Morse that were discoverable but were not produced. | Def requests the costs of obtaining these and for having to obtain the July 1 Court order. |
| Third-Party Subpoena Responses | Def has received numerous voluminous documents and has repeatedly invited PL's to inspect such or arrange for copying. Some, less voluminous responses have been produced to PL. On Dec. 15 Def. provided PL with a list of persons who had produced docs and detailing whether the docs were hard copy or electronic. Def has also requested PL's to produce any materials PL's have received in response to subpoenas PL's served. To date, Def has received only several dozen emails from Michael Rubin. | 1. PL's to make available any additional docs received other than M. Rubin.<br>2. PL's to arrange to inspect docs Def received or arranged for copying by Feb. 4. |

7