| | |
|---|---|
| **From:** | Kapshandy, Timothy E. |
| **Sent:** | Wednesday, February 09, 2011 5:06 PM |
| **To:** | Adrian Nelson |
| **Cc:** | Afshin Pishevar (ap@pishevarlegal.com); Jensen, Peter; Rogers, HL |
| **Subject:** | Joint Report Re Status of Discovery in pdf format |
| **Attachments:** | Joint Report Regarding Status of Discovery.pdf |

Adrian:

Here is our draft of the joint status report on discovery due Friday. Please let us have your changes tomorrow so we can file early Friday afternoon. Note that there are some open spots (e.g,, the deps of Cirincione, Abdi, and Lynch) pending your response to our email of Monday, Feb. 7.

Thanks,

Tim

1

EXHIBIT Q

2/9/11 DRAFT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TRITA PARSI

and

NATIONAL IRANIAN AMERICAN COUNCIL

Plaintiffs,

v.

DAIOLESLAM SEID HASSAN

Defendant.

Civil No. 08 CV 00705 (JDB)

## JOINT REPORT REGARDING STATUS OF DISCOVERY

Plaintiffs, Trita Parsi and the National Iranian American Council (NIAC), and Defendant Daioleslam Seid Hassan, through their respective undersigned counsel and pursuant to the Court's Order at the December 17, 2011 status conference file this report of discovery and activities since that status conference.

On January 3, 2011, Defendant's counsel sent to Plaintiffs' counsel a list of outstanding discovery issues. (Ex. A). On Friday, January 7, Plaintiffs' counsel suggested a call on Monday, January 10. (Ex. B). Defendant's counsel responded that he was able to do a call on January 11, and on January 10, Mr. Nelson responded that January 11 would be great before he left for Europe. (Ex. B). On January 11, Defense counsel, emailed that he was free all day but

got no response or call. (Ex. B). On January 12, Defendant's counsel responding to an email from Mr. Nelson's colleague, Mr. Parsa, reiterated Defendant's requests for items in the January 3 list and specifically requested dates for the deposition of Mr. Safavi and completion of Mr. Gardiner. (Ex. C). Defendant next heard from Plaintiff on January 25 when Mr. Nelson called to discuss Defendant's prior request (throughout much of 2010) to reach agreement on a date, if any, for discovery supplementation; Mr. Nelson stated that he was planning on discussing the list of outstanding discovery with his client on January 26 and would get back to Defendant after that meeting. On January 31, Plaintiffs' counsel called Defendant's counsel. Regarding most of the items in Defendant's January 3 list (Ex. A), Plaintiffs' counsel stated that he would consult with his client and get back to Defendant on February 1.

As for the supplementation of discovery after the initial production of May 2009, the parties agreed that there be no need to supplement the May 2009 discovery responses except to the extent already specifically undertaken subsequent to May 2009. Also, Plaintiffs agreed to send the litigation hold notice Defendant had requested and which had been promised in Plaintiffs' email of December 16. On January 31, 2011, Plaintiffs emailed to Defendant an October 15, 2009 email from Trita Parsi. (Ex. H). Previously, however, NIAC's witness on its computers and discovery, David Elliott had testified on October 5, 2009 that the written litigation hold was emailed to all staff at least a month before his deposition, and thus the October 15, 2009 email could not have been the litigation hold instituted at the inception of the lawsuit. (Elliott Trans, pp. 66-70, attached as Ex. I). Defendant immediately re-requested the original litigation hold referenced in Mr. Elliott's deposition. (Ex. J). On February 4, Plaintiffs responded that the October 15, 2009 email was the only written copy of the litigation hold. (Ex. N).

2

Regarding the remaining items in Defendant's January 3 list, Plaintiffs responded on February 4 that they would respond by February 11 or by objecting to Defendant's requests as set forth in the following sections. (Ex. N)

Server/Forensic Imaging/PCs

At the close of the December 17 hearing, Plaintiffs provided to Defendant a list of each of NIAC's computers and the individual users at the time computers were produced to PwC on August 18, 2010 for imaging (attached as Ex. D). At the December 17, 2010 hearing, NIAC represented to the Court that NIAC's computer consultant, Progressive Office, produced to Defendant an inaccurate list of computers in NIAC's offices in December 2009 and that the five computers that were not produced for imaging August 18, 2010 were only used by interns. (Dec. 17 Trans., p. 19). The computer inventory and correspondence produced by Progressive Office is attached as Ex. E. During their January 31, 2011 call, Plaintiffs' counsel also said that he was not able to address the technical issues raised on pp. 4-5 of Ex. A and would need to involve NIAC's computer consultant suggesting a call on February 3, 2011. On February 4, he reported that the computer consultant was not available.

Salesforce Membership Database

Regarding Salesforce membership information, NIAC informed the Court (Trans., p. 21) that on December 16 it had managed to download 196 meeting note entries from the database. However, as Defendant pointed out at the December 17 hearing (Trans., p. 22) Defendant's Second Request for Production, No. 3 (Ex. F) explicitly requested all membership documents and lists. During their January 31, 2011 conference call Plaintiffs' counsel stated that NIAC had been able to download the entire Salesforce database with notes and would let Defendant know

the status and form of production on February 1, 2011. On February 4, Plaintiffs emailed that they would produce the Salesforce membership database by February 8. (Ex. N).

Depositions

At the December 16, 2010 status conference, Plaintiffs promised to produce NIAC board member, Narimon Safavi, for a deposition in Chicago where he lives (Trans, pp. 39-40). On January 3 and 12, Defendant requested dates for his deposition. (Exs. A and C). On January 31, Plaintiffs' counsel stated that he would work on getting dates. As of February 4, 2011, no dates had been offered but Plaintiffs offered to produce him at some time after February 4, 2011. The same is true of the 30-minute continuation of Mr. Gardiner's deposition over the list of Congressmen he produced after his deposition. On February 4, Plaintiffs' counsel emailed that they would try to get dates for both Safavi and Gardiner after the discovery cutoff. (Ex. N).

Plaintiffs claimed they were having difficulty in subpoenaing Michael Rubin, Kenneth Timmerman and Claire Lopez to appear for depositions: "We believe these people are trying to avoid service on these subpoenas." (Trans., p. 25). As of August 4, 2010, however, Ms. Lopez, through her counsel, had offered to appear any time after early October without requiring a subpoena. (Ex. G). As of December 22, Lopez's counsel had not heard from Plaintiffs. (Ex. G). On February 4, Plaintiffs' counsel emailed Defendant requesting that these three witnesses be deposed after the discovery cutoff. (Ex. N). Defendant responded that he disputed Plaintiffs' diligence but would not object as long as Plaintiffs failure to depose these witnesses did not inhibit Defendant's ability to move for summary judgment. (Ex. O).

The deposition of Puneet Talwar, under subpoena from Defendant, occurred February 1, 2011 after Plaintiffs dropped their objections raised in November. (Ex. H). The deposition of

Debashi Aikat, Plaintiffs' media futurist/journalism expert, took place on January 5, 2011 in Raleigh, North Carolina per Plaintiffs' offer on December 16, 2010.

As for the follow-up items requested at Parsi's deposition on December 1-2, 2010 (Ex. A, p. 6), Plaintiffs reported on February 4 (Ex. N) that they would produce these by February 11, 2011. As for Parsi's notes of interviews with Iranian officials detailed in his book, *Treacherous Alliance*, Plaintiffs related on February 4, 2011 that Parsi would state under oath that he no longer had any such notes as of the date the lawsuit was filed and the litigation hold instituted. (Ex. N). [STATUS OF OTHER ITEMS] Plaintiffs have refused to produce Mr. Parsi for further deposition on these after-produced items.

As for the items requested at Mr. Disney's deposition on November 17, 2010 (Ex. A, p. 4), on February 4 Plaintiffs promised to produce by February 11 the CLIPI and intern research memos. (Ex. N). With regard to the law firm memos and packet from legal experts, Plaintiffs promised to produce those or withhold as privileged by February 11. NIAC stated nothing with regard to the continued internal emails/memos Disney described at his deposition (p. 167).

The materials promised at Prof. Morse's deposition (including current list of testimony required by Rule 26) had not been produced as of February 4, 2011 although Plaintiffs did promise to me their best efforts to produce these by February 11, 2011. (Ex. N).

[DISCUSSION RE LYNCH & CIRINCIONE & ABDI]

PwC Imaging

Defendant has requested NIAC to reimburse him for the costs of the Court-ordered imaging of NIAC's server for unproduced, altered, and deleted calendars. Defendant also asked NIAC for permission to review user habit and registry information on the hard drives that were produced (to determine when the machines were used and by whom) given their representation

5

that their vendor has produced an inaccurate list of computers in response to Defendant's subpoena. Finally, Defendant requested NIAC's consent in providing PwC's report to the Court. Plaintiffs will not agree to any of these requests.

Talebi Emails

After being told by the Court (July 1, 2010 Order) that they could not withhold the 8,000 unproduced Talebi emails on the basis that these related to "community work", Plaintiffs produced 2,500 "Talebi emails" on August 24, 2010.[1] On August 24, 2010, Defendant sent two interrogatories requesting: (1) on what basis these were not produced previously (as they all contained at least one agreed search term and NIAC had stated that the server on which they had been located had been searched twice); and (2) on what basis the remaining 5,500 were being withheld. (Plaintiff's Response of September 24, 2010 attached at Ex. K). On September 24, 2010, Defendant pointed out that Plaintiff's response to Interrogatory No. 1 was evasive and that NIAC's response to Interrogatory No. 2 (i.e., that none of the remaining 5,500 unproduced Talebi emails contained any search terms) could not possibly be true as "Talebi" was a search term and requested Plaintiff to answer the two questions posed. As of February 4, 2011, Plaintiff has not further answered these.

Plaintiffs also disagree with Defendant's request that Plaintiffs be ordered to pay for Defendant's costs in obtaining the order to produce the Talebi emails. Similarly, Plaintiffs refuse to reimburse Defendant for the costs of obtaining NIAC emails from other third-parties such as Puneet Talwar, Children of Persia, CNAPI, Flynn and Hillary Leverett, and Prof. Morse (NIAC's own economist/damages expert).

---

[1] Plaintiffs did serve about 350 Talebi emails late Friday evening, August 20, 2010 per the Court's deadline. However, the file size of the 2,500 emails quickly overcame the limitations of Defense counsel's email server so the remaining 2,150 emails were not received until August 24 on a CD.

Pugwash Subpoena

Defendant has subpoenaed Pugwash, an organization that Trita Parsi has testified invited him to international meetings with current and former governmental officials, including Iranian officials. According to Parsi, Pugwash pays his travel expenses for these trips/meetings. Plaintiffs have produced no communications with Pugwash. In response to Defendant's subpoena, Pugwash's counsel has agreed to produce documents relating to Trita Parsi if the parties will agree to abide by a confidentiality agreement. (Ex. M). As of February 4, however, Planitiffs had not agreed to the confidentiality agreement nor provided reasons for not doing so.

Follow-up Request from Daioleslam's Deposition

On February 4, 2011, Plaintiffs requested that "Dai produce all of the materials he agreed to produce over both days of his deposition, including, but not limited to any records relating to the civil (or criminal) penalty he paid during the time he was doing business in France." (Ex. N). Defendant responded on February 7, 2011 that while Plaintiff had served no request to produce such records and that such was not discoverable, he would attempt to locate and produce such records. (Ex. O).

Respectfully submitted,

/s/
A.P. Pishevar (D.C. Bar No. 451015)
Adrian Nelson
Jefferson Plaza, Suite 316
600 East Jefferson Street
Rockville, Maryland 20850
(301) 279-8773
AP@pishevarlegal.com

/s/
Timothy E. Kapshandy (Illinois Bar No. 6180926, admitted *pro hac vice*)
Bradford A. Berenson (D.C. Bar No. 441981)
HL Rogers (D.C. Bar No. 974462)
Peter G. Jensen (D.C. Bar No. 982599)
Sidley Austin LLP
1501 K Street, N.W.

7

*Attorney for Plaintiffs Trita Parsi and the National Iranian American Council*

Washington, D.C. 20005
(202) 736-8000
hrogers@sidley.com

*Attorneys for Defendant Daioleslam Seid Hassan*

CHI 5700805v.1