UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TRITA PARSI and NATIONAL
IRANIAN AMERICAN COUNCIL,

    Plaintiffs,

    v.

DAIOLESLAM SEID HASSAN,

    Defendant.

Civil Action No. 08-705 (JDB)

## ORDER

Pursuant to [93] this Court's March 29, 2011 Order, NIAC was required to produce for in camera review the approximately 5,500 Babak Talebi e-mails claimed to be non-responsive. These e-mails have been a repeated source of contention between the parties.

On July 1, 2010, the Court ruled that NIAC could not withhold e-mails relevant to NIAC's alleged lobbying activities on the ground that "they relate to Mr. Talebi's 'community work,'" and therefore ordered that NIAC produce to defendant, by not later than July 16, 2010, all responsive e-mails relating to Talebi. See 7/1/2010 Order [Docket Entry 68] at 5-6. NIAC subsequently filed a motion for reconsideration of this Court's July 1, 2010 Order, which the Court denied on August 6, 2010. See 8/6/2010 Order [Docket Entry 78] at 3. At that time, the Court ordered that NIAC produce all "emails relating to Babak Talebi 'consistent with its discovery obligations'" by not later than August 20, 2010, and clarified once again that "NIAC may not withhold otherwise responsive emails 'on the grounds that they relate to Mr. Talebi's community work.'" Id. at 3-4 (quoting 7/1/2010 Order at 5-6) (internal quotation marks omitted).

-1-

NIAC provided defendant with approximately 2,500 of the 8,000 total Talebi e-mails in August 2010. See Def.'s Report [Docket Entry 87], Exs. K, L; see also id. at 8-9. NIAC claimed that it was withholding the remaining 5,500 e-mails because they "did not contain search terms and were non-responsive." Id., Ex. K. Defendant protested, arguing that all of the 8,000 e-mails at issue had to be discoverable, as they were all sent to or from Talebi, and thus, contained the name "Talebi," which was one of the parties' agreed-upon search terms. Id., Ex. L. Although nine months have elapsed since the Court first ordered the production of all responsive Talebi e-mails, the parties have been unable to resolve their dispute as to the remaining 5,500 e-mails in NIAC's possession; defendant has continued to seek production of these e-mails, while NIAC has continued to maintain that the e-mails are non-responsive. Hence, on March 29, 2011, the Court ordered that the 5,500 e-mails be produced for its in camera inspection. The e-mails have now been made available to the Court.

Based on its review of plaintiffs' submission, the Court finds that NIAC has, in fact, withheld responsive e-mails relating to Talebi. Such e-mails include, but are not limited to: (1) a July 2008 e-mail from Talebi explaining that NIAC, as a tax-exempt 501(c)(3) organization, "can 'advocate' but not 'lobby'"; (2) a NIAC "Phone Outreach" memorandum circulated in September 2008, discussing NIAC's sources of funding, whether NIAC supports the Iranian government, whether it is a lobbying group, and why it has chosen to sue defendant; (3) several e-mails that mention defendant's alleged defamation of NIAC; and (4) a June 4, 2005 NIAC presentation entitled "Demystifying Democracy: The Ingredients of Influence," which provides an overview of NIAC's "[s]even ingredients to influence" lawmakers. Such e-mails are undoubtedly "responsive" to defendant's requests -- first made as early as February 2009 -- for the production

of (1) all documents referring to NIAC's "lobbying, exercising political influence, taking positions on United States policies, or persuading United States political officials," see Def.'s Mem. [Docket Entry 52], Ex. 1, Def.'s First Request for Production ¶ 14; and (2) "[a]ll documents relating to Hassan," id. ¶ 2.  Significantly, NIAC has not purported to withhold these e-mails on the grounds that they are privileged or subject to the work-product doctrine; rather, NIAC has only maintained that these e-mails are "non-responsive" or do not contain "search terms."

That is simply incorrect.  Not only are the e-mails mentioned above responsive to defendant's requests for production, but the Court identified these e-mails by searching for obvious terms such as "lobbying," "Hassan," and "Iranian government."  Although the Court did not conduct a comprehensive review of every e-mail submitted by NIAC, it is not this Court's responsibility to parse through thousands of e-mails to determine those that are responsive and those that are not.  That was NIAC's job, which it has totally failed to complete in a satisfactory manner.

Accordingly, it is hereby **ORDERED** as follows:

1. NIAC shall produce to defendant, by not later than April 11, 2011, all previously unproduced Talebi e-mails – i.e., the 5,134 allegedly "non-responsive" Talebi e-mails that were provided to the Court for its in camera review, as well as any other Talebi e-mails in NIAC's possession.

2. To the extent that there is any "cost" associated with the production of these e-mails, that cost shall be borne by NIAC.

3. The Court strongly encourages the parties to continue to work together to resolve

all remaining discovery disputes amicably and without the Court's assistance. A status conference is currently scheduled in this matter for June 3, 2011, at 9:00 AM in Courtroom 8.

**SO ORDERED.**

/s/
JOHN D. BATES
United States District Judge

Dated: April 5, 2011