**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **TRITA PARSI** | ) | |
| | ) | |
| And | ) | |
| | ) | |
| **NATIONAL IRANIAN AMERICAN COUNCIL,** | ) | **CASE NO. 08 CV 00705 (JDB)** |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| **DAIOLESLAM SEID HASSAN,** | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF DEBASHIS AIKAT

Defendant, Seid Hassan Daioleslam, hereby moves to exclude the testimony of Plaintiffs' media expert, Debashis Aikat. Although Aikat purports to opine about Daioleslam's journalistic methods, his proposed testimony does no such thing. He admittedly did not apply the *N.Y. Times v. Sullivan* standard, but rather a "willful blindness" standard which supposedly comes from the Society of Professional Journalists' Code ("SPJ Code") — although such is not set forth in the SPJ Code. In addition, Aikat did not read any of Defendant's or NIAC's discovery documents, read only some of Defendant's articles and sources (as counsel limited him to ten hours of work), had never published his methodology in peer reviewed journals, and could not describe his methodology other than not being "illiterate." This testimony will not assist the trier of fact and therefore should be excluded.

**ARGUMENT**

Under Fed. R. Evid. 702, the district court must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). The Rule provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. It invokes *Daubert*'s twin requirements of reliability and relevance. *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579, 589-92 (1993). To that end, expert testimony must rest on "more than subjective belief or unsupported speculation" to be reliable, *id.* at 590, and may be excluded if "there is simply too great an analytical gap between the data and the opinion proffered," *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Rule 702 "imposes a special obligation upon a trial judge" to police these policies and to serve as a gatekeeper against expert testimony that does not meet the requisite standards. *Kumho Tire*, 526 U.S. at 147. In doing so, district courts must "resist the temptation to answer objections to receipt of expert testimony with the shorthand remark that the jury will give it the weight it deserves." *Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549, 569 (D.C. Cir. 1993) (citation and alterations omitted).

Aikat's proposed testimony falls well short of what is permissible. It is neither reliable nor relevant — each of which is, alone, a sufficient ground for exclusion — and it will not assist the trier of fact.

2

## I. AIKAT'S PROPOSED TESTIMONY IS NOT RELIABLE

*Daubert* outlines four non-exclusive factors relevant to the reliability inquiry: (1) whether the expert's technique or theory can be or has been tested; (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; and (4) whether the technique or theory has been generally accepted in the scientific community. *See Daubert*, 509 U.S. at 592-94. *see also Kumho Tire*, 526 U.S. at 149-52. Additional factors were identified in the Advisory Committee Commentary that accompanied the 2000 revision to Rule 702 in light of *Daubert*, including: "[w]hether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion"; "[w]hether the expert has adequately accounted for obvious alternative explanations"; and "whether [the expert] developed [the] opinions expressly for purposes of testifying." Fed. R. Evid. 702 advisory committee's notes ("Advisory Comm. Notes").

Under Rule 702, the reliability requirement applies both to the expert's methodology itself and to the application of that methodology to the facts of the case. Fed. R. Evid. 702; *see also* Advisory Comm. Notes ("If the expert purports to apply principles and methods to the facts of the case, it is important that this application be conducted reliably."). Aikat's proposed testimony is not reliable in either way.

### A.     Aikat's Methodology Is Not Reliable Nor Was it Applied Reliably

After numerous extensions and more than two years into this lawsuit, on June 1, 2010 Plaintiffs served the report of their "journalism" expert, Debashis Aikat.[1] (Aikat Report attached as Ex. A). After another six months of Defendant requesting his deposition, Plaintiffs finally produced Aikat for his deposition in North Carolina on January 5, 2011. (Aikat Dep. attached as Ex. C). In his report, Aikat opined that Defendant engaged in "willful blindness" by making accusations against Plaintiffs without sufficient support and breached his alleged journalistic duty to permit NIAC to respond to Defendant's articles.[2] (*See* Ex. A; Ex. C, pp. 26, 32-38, 54, 83, 86, 94-103, 124-126, 149-154, 162-166, 181-184).

Having been limited by Plaintiffs' counsel to ten hours of work and restricted to only Defendant's articles on his website (only a portion of which he had time to read), Aikat opined that Defendant engaged in "willful blindness" and breached his duty to permit NIAC to respond. (*See* Ex. A; Ex. C, pp. 26, 32-38, 54, 83, 86, 94-103, 124-26, 149-54, 162-66, 181-84). Aikat admitted that he was <u>not</u> evaluating the truth or falsity of Defendant's writings nor did he analyze Defendant's conduct under the *N.Y. Times v. Sullivan* standard. (Ex. C, pp. 51-53). Accordingly, Aikat's opinions about "willful blindness" and "duty to respond" do not meet the *Daubert* "fit" requirement (*see* Section II, <u>infra</u>, pp. 10-11).

Even assuming his "willful blindness" and "duty to respond" opinions were remotely relevant, it is clear that Aikat's methodology fails Fed. R. Evid. 702's reliability requirement. He has never published any peer-reviewed articles on his methodology for determining "willful

---

[1] Aikat is a "Media Futurist and Associate Professor of Journalism and Mass Communication" at the University of North Carolina. (Aikat's Profile, Depo. Ex.7, attached as Ex. B; *see also* Aikat Report, Ex. A). He describes himself as a "former journalist" last having worked as a journalist nineteen years ago in India. (Ex. C., pp. 64-65).
[2] Aikat also accuses Defendant of a conflict of interest (Ex. A, p. 5) but at his deposition admitted to having no evidence Daioleslam accepted money or favors; rather, Aikat just had a "feeling" Daioleslam had a "finger in this pie." (Ex. C, pp. 192-194).

4

blindness." (Ex. C, p. 47). He has never before given any opinions in a defamation case. (*Id.*, p. 38). Hence, his analysis is solely litigation-driven. And finally, there are no published error rates for his methodology. (*Id.*, pp. 58-61).

In fact, it is not even clear what this methodology is. Aikat's standard was merely "you read what defendant has to say" and "not being illiterate." (*Id.*, pp. 55, 58-61). If that is the case, this is not the sort of testimony that "assists" the trier of fact under Rule 702. The unreliability of Aikat's methodology is brought into sharp relief by examining what he did <u>not</u> do:

- He did not read any of Defendant's Farsi sources (*id.*, pp. 32-33); that might have been "nice" but his time was limited. (*Id.* pp. 37-38).
- His mandate was limited by counsel to 10 hours (*id.*, p. 26), although he eventually put in 17 hours with 8 hours for actual research and 9 hours for the writing of the report (*id.*, pp.12-17).
- He only read some of Defendant's articles and references as he had limited time (*Id.*, pp. 54, 83, 151-52, 192, 205-06).
- He could not recall which of Defendant's references he read (*Id.*, p. 86)
- He did not read Defendant's deposition (*Id.*, p. 34)
- He did not review any documents produced by Defendant or Plaintiffs (*Id.*, 102-03). He did not look at these critical materials as Plaintiffs' counsel asked him only to look at Defendant's writings. (*Id.*, pp. 158-59). So, he failed to read:
    - Any other articles referring to Parsi/NIAC as pro-regime advocates, including, but not limited to, Timmerman (2000), Lopez (2009), Aftab

5

  (2006), and TopIranian.com (2006). (*Id.*, pp. 124-26, 219-21, articles attached hereto as Ex. M).

  o The letter of British MP, Lord Corbett, to the U.S. Congress warning it that Parsi was a regime lobbyist. (Ex. C., pp. 162-66); (Lord Corbett affidavit, Ex. 15 to Aikat Dep., attached hereto as Ex. D).

  o Statements by then Illinois Congressman Mark Kirk referring to NIAC as a regime-sympathizer. (Ex. C, p. 154, Statement attached hereto as Ex. N).

  o Parsi's own statement in his resume that Parsi "established the first lobby group in the U.S. to support the normalization of ties between Iran and the U.S." (Ex. C, pp. 180-81; Parsi Dep. Ex. 66, attached hereto as Ex. E).

  o Parsi's communications with Iran's Ambassador Zarif (Ex. C, p. 126) — even though many were cited by Defendant and posted verbatim on Defendant's website — as these did not "interest" him. (*Id.*, pp. 181-182). In fact, Aikat had no idea who Ambassador Zarif was. (*Id.*, pp. 222-226).

- He had no idea who other Iranian Regime officials were, with whom Parsi had met (including Asst. Amb. Mohammadnia, Amb. Khazaei, and Vice President Hashemi Samareh),[3] or what Parsi's role was in the transmission in 2003 and public release in 2006 of Iran's "Grand Bargain" proposal and written about extensively by Defendant on his website. (*Id.*, pp. 222-26; *see* Ex. 12 to Aikat Dep. referencing "Iran's 2003 Grand Bargain Offer", attached hereto as Ex. F).

- He did not read Parsi's 1999 article with Siamak Namazi on how to set up an AIPAC-like lobby for Iran, even though Defendant has written about and relied

---

[3] Deposition of Trita Parsi, Vol. 2 pp. 217-219, pp. 252-254, pp. 258-263, excerpts attached hereto as Ex. I.

6

upon that article (Ex. C, pp. 206-17; Dep. Ex.16, attached hereto as Ex. G). In fact, Aikat had no idea who Namazi or his Tehran-based firm, Atieh Bahar, were. (Ex. C, pp. 204-06), again despite the fact that Defendant has written about them on his website extensively (examples attached as Ex. H).

- Aikat had failed to read at least two of Defendant's articles alleged in Plaintiffs' complaint to be defamatory, "Iranian Regime's Web of Influence" and "Iran's Oil Mafia" (Ex. C, pp. 186-92).

- Even regarding Defendant's articles Aikat had read, such as Dep. Ex. 9, he did not read all of the thirty-seven references (including Defendant's PowerPoint presentations) that were directly linked within the article (*id.*, pp. 149-52; Dep. Ex. 9 and Footnotes 14 and 15 attached as Ex. J).

- He could not say which of Defendant's articles he had read (Ex. C, p. 83); all he could say was that he did not have time to read them all. (*Id.*, p. 86).

- He did not assess whether Defendant knew what he wrote was false or had serious doubts about the truth of what he wrote. (*Id.*, pp. 52-53).

In spite of not having read many of Defendant's articles and references, Aikat opined that "none" of Defendant's articles were supported by adequate evidence. (*Id.*, pp. 81-82). Aikat recognized the paradox of opining that a journalist had willfully ignored something when he, himself, ignored many of Defendant's articles and references. Aikat ultimately conceded that under his own methodology he could not reach his conclusion without reading through "each and every reference," something he admittedly did not do. (*Id.*, pp. 90-94).

One could scarcely imagine from this litany of omissions and oversights how <u>any</u> journalistic expert could reliably reach Aikat's conclusions applying the same methodology.

Aikat's attempt to posit the SPJ Code as authority for both his "willful blindness" and "duty to respond" standards fails completely. The SPJ Code does not mention or define "willful blindness." (*Id.*, pp. 73-75). Similarly, the SPJ Code does not refer to any "duty to respond", nor could he cite any authority for it. (*Id.*, pp. 94-102). Rather, this phrase came from Plaintiffs' counsel. (*Id.*, pp. 94-97). Absent any recognized authority or standards for either of these "duties", there is no way to objectively evaluate either what these entail or whether Aikat applied them to Defendant's conduct in a reliable manner.

Aikat misapplied his "duty to respond" analysis in a similarly slipshod manner.[4] He testified that neither of the websites publishing Defendant's articles (http://www.Iranian-Americans.com and http://IranianLobby.com) provides a place for readers to post comments. (*Id.*, pp. 60-61). However, he did not even look at www.Iranian-Americans.com to see if anyone posted comments. (*Id.*, pp. 142, 181). Had he done so, he would have seen that www.Iranian-Americans.com did in fact invite readers to post comments and many, in fact, had done so. (*Id.*, pp; 168-181, Dep. Ex. 14, attached as Ex. O). Aikat did not notice that http://IranianLobby.com explicitly provides: "Post Your Comment." (*Id.*, p. 135). He was unaware that in response to Defendant's invitation, an individual mentioned in Defendant's 2008 "Web of Influence" article, Ali Mostashari, posted a lengthy reply to Defendant's article on the website. (*Id.*, pp. 135-36; Ex. 10 to Dep. attached as Ex. I). He did not know if NIAC was prohibited from posting on Defendant's site or had ever tried to do so. (Ex. C, pp. 136-37). Aikat was not aware that Defendant had posted NIAC's position verbatim on his website and provided links to NIAC's website. (*Id.*, pp. 139-40; Ex. J). He had no idea how many links Defendant had on his website to NIAC's website (Ex. C, p. 144). Since he had not read Defendant's deposition, he was not

---

[4] According to Aikat, the "duty to respond" entails "allow[ing] the Plaintiffs an opportunity to respond to Defendant's assertions against them." Ex. A, p. 7.

aware Defendant had a lengthy conversation with a NIAC supporter, Dariush Baghaei, and had invited him to post a response on his website (*Id.*, pp. 149-51).  Accordingly, the reliability of Aikat's application of this unwritten standard fails to pass muster under Rule 702.

Finally, it should be noted that NIAC's and Parsi's ability to get their side of the story out is unlimited.  Parsi regularly appears on various forms of media; NIAC has an active website issuing press releases and posting NIAC appearances and regularly holds briefings on Capitol Hill.  (*See* www.tritaparsi.com; www.niaccouncil.org, excerpts attached as Ex. L).  Any rationale for such a "duty to respond" does not apply to this debate between two public figures.  In fact, Radio Farda has on several occasions invited Parsi to debate Defendant on air; Parsi has repeatedly refused to do so.  (Hassan Daioleslam Dep. Vol. II, pp. 241-42 attached hereto as Ex. K).

### B.    Aikat Merely Did What He Was Told in Applying His Methodology to the Facts of This Case

Aikat's failure to confront confounding evidence is explained by his admission that in forming his expert opinion he blindly followed Plaintiffs' instructions.  He ignored the SPJ Code admonition:  "Test the accuracy of information from all sources."  (Ex. C, p. 12; Ex. A, p. 4).  This is evident from several aspects of his opinion, including:

- He was restricted by Plaintiffs' counsel to looking at Defendant's writings (Ex. C, pp. 158-159, 166, 211).
- His time to research and write his report was limited to ten hours (*Id.*, p. 26); although he eventually spent seventeen hours on it, he was not able to read all of

9

Case 1:08-cv-00705-JDB   Document 97   Filed 04/25/11   Page 10 of 15

> Defendant's articles and references due to this time limit (*Id.*, p. 54; *see* pp. 4-7, *supra*).

- He agreed to counsel's request to opine about Defendant's breaching some "duty to respond" even though he could point to no authority for such a duty. (Ex. C, pp. 94-102).

The upshot of Aikat's own willful blindness is that, by disregarding critical facts, Aikat failed to apply his methodology to the facts in a reliable way.  Instead of reaching a result that could be reliably reproduced by another expert, he reached the result preordained by his benefactor by skewing the methodology to ignore evidence that did not fit.  One of the factors of a Rule 702 inquiry is "[w]hether the expert has adequately accounted for obvious alternative explanations."  Advisory Comm. Notes.  Aikat, here, makes no attempt to even consider contrary evidence; he merely assumes such out of the analysis.

## II.   AIKAT'S PROPOSED TESTIMONY WILL CONFUSE RATHER THAN ASSIST THE TRIER OF FACT

Even if Aikat had put forth a reliable methodology about Defendant's "willful blindness" and breach of a "duty to respond" and applied it in a reliable manner, these are simply not relevant to a defamation case under the *N.Y. Times v. Sullivan* standard and thus do not meet *Daubert*'s so-called "fit" requirement.

In addition to being reliable, expert testimony must also assist the trier of fact.  Fed. R. Evid. 702.  In order to do so, expert testimony must "fit" the facts of the case, which "requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility."  *Daubert*, 509 U.S. at 591-92.  Here Aikat has shown no valid connection between the "willful blindness"

and "duty to respond" standards he has applied and the defamation case before this court. Aikat admitted that he was *not* evaluating the truth or falsity of Defendant's writings, nor did he analyze Defendant's conduct under the relevant *N.Y. Times v. Sullivan* defamation standard. (Ex. C, pp. 51-53.)

Defendant's conduct here is to be evaluated under *Sullivan*'s constitutional malice standard. "The constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice' — that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964). "[R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice." *St. Amant v. Thompson*, 390 U.S. 727, 730-731 (1968).

Aikat was aware of the *Sullivan* standard and admitted he did not apply it here. (Ex.C, pp. 51-53). Nor did Aikat evaluate the truth or falsity of Defendant's writings. (*Id.*, pp. 49-50). His "willful blindness" and "duty to respond" testimony are totally irrelevant and do not meet *Daubert*'s "fit" requirement. These opinions have absolutely no relevance to whether Defendant was subjectively harboring serious doubts about the truth of his writings.

Additionally, expert testimony that Defendant breached some unwritten "duty to respond" or was "willfully blind" would certainly confuse the jury, which will be properly instructed to apply the *Sullivan* standard. The aura of an expert in journalism from a large

11

university positing that the Defendant breached some "duties" having no bearing on the case would also be extremely prejudicial under Federal Rule of Evidence 403.

## **CONCLUSION**

For the foregoing reasons, Defendant requests this Court to exclude the proposed testimony of Plaintiffs' proposed journalism expert witness, Debashis Aikat.

Dated: April 25, 2011

                    /s/
Timothy E. Kapshandy (Illinois Bar No. 6180926, admitted *pro hac vice*)
Bradford A. Berenson (D.C. Bar No. 441981)
HL Rogers (D.C. Bar No. 974462)
Peter G. Jensen (D.C. Bar No. 982599)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C.  20005
(202) 736-8000
hrogers@sidley.com

Attorneys for Defendant
Seid Hassan Daioleslam

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| TRITA PARSI ) | |
| ) | |
| and ) | |
| ) | |
| NATIONAL IRANIAN AMERICAN COUNCIL ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil No. 08 CV 00705 (JDB) |
| ) | |
| DAIOLESLAM SEID HASSAN, ) | |
| ) | |
| Defendant. ) | |

## CERTIFICATE OF SERVICE

I certify that on April 25, 2011, I served, via email, Defendant's Motion to Exclude the Testimony of Debashis Aikat to:

    Afshin Pishevar
    Adrian Nelson
    600 East Jefferson Street
    Suite 316
    Rockville, Maryland 20852
    (301) 279-8773
    ap@pishevarlegal.com
    anelson@pishevarlegal.com

Dated: April 25, 2011

          /s/
Timothy E. Kapshandy (Illinois Bar No. 6180926, admitted *pro hac vice*)
Bradford A. Berenson (D.C. Bar No. 441981)
HL Rogers (D.C. Bar No. 974462)
Peter G. Jensen (D.C. Bar No. 982599)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000
hrogers@sidley.com

Attorneys for Defendant
Seid Hassan Daioleslam

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TRITA PARSI** | ) |
| | ) |
| and | ) |
| | ) |
| **NATIONAL IRANIAN AMERICAN COUNCIL** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| v. | ) Civil No. 08 CV 00705 (JDB) |
| | ) |
| **DAIOLESLAM SEID HASSAN,** | ) |
| | ) |
| **Defendant.** | ) |

### PROPOSED ORDER

Upon consideration of Defendant Daioleslam's Motion, it is hereby:

ORDERED this ____ day of _____, 2011 that Defendant's motion to exclude the testimony of Debashis Aikat is GRANTED;

SO ORDERED.

_____
Judge John D. Bates
United States District Judge