**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **TRITA PARSI** ) | |
| ) | |
| **and** ) | |
| ) | |
| **NATIONAL IRANIAN AMERICAN COUNCIL** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Civil No. 08 CV 00705** |
| ) | |
| **DAIOLESLAM SEID HASSAN,** ) | |
| ) | |
| ) | |
| **Defendant** ) | |
| ) | |

**PLAINTIFF'S OPPOSITION TO
<u>DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF JOEL MORSE</u>**

Plaintiff Trita Parsi and the National Iranian American Council (NIAC) hereby request

the Court to deny Defendant Daioleslam Seid Hassan's motion for an order excluding all

testimony by expert witness, Joel Morse.  Mr. Morse's testimony is both relevant and reliable, as

required by *Daubert*.  Moreover, the trial judge is granted broad discretion when making this

determination.  Business loss is a field which has undergone tremendous change within the last

ten years and incorporates a variety of expertise, including loss valuation.  Because of the

complexities involved in analyzing loss of expected income in a non-profit, Mr. Morse's

testimony is indispensable to ensure that the jury will be fully informed and thus be able to

decide based on full consideration of the evidence.

Mr. Morse is exceptionally qualified to opine on the extent of damages to Plaintiff.  (*See* Attached Ex. "A", CV of Joel N. Morse, Ex. A ("Morse CV").)  Mr. Morse holds a Ph.D. from the University of Massachusetts in Financial Economics and Management Science and authored numerous academic papers on various aspects of financial such as Litigation Finance, Financial Planning and was a Board Member of the Journal of Legal Economics.  *Id*.  Secondly, Dr. Morse is a Professor of Finance at the Merrick School of Business at the University of Baltimore and teaches corporate finance, investment analysis, and portfolio management.  *Id*.  Furthermore, Mr. Morse has testified as an expert in numerous trials in evaluating damages incurred by business entities.  Finally, Dr. Morse has been commended by Honorable Ronald B. Rubin, Circuit Court Judge for the Montgomery County Maryland who stated in an opinion regarding expert testimony regarding the loss of profits: "The court finds Dr. Morse to be one of the most knowledgeable and cogent experts in corporate finance and economic valuation that the court has ever seen testify".  (*See* Attached Ex. "B", Memorandum Opinion, Circuit Court for Montgomery County, Maryland Case No. 259919-V (April 22, 2009).)

I.    **INTRODUCTION**

Defendant claims that Morse's proposed testimony is flawed because Morse has developed several scenarios that provide for a range of damages estimates.  A lost profit analysis will consider changes in revenues and related changes in variable costs caused by variable impacts from external factor that are beyond the control of Plaintiff and NIAC.  The complexity of the model depends on the facts and circumstances, and the availability of relevant data. Defendant claims that Morse begins with a single, unprecedentedly high surplus in 2007, however the analysis is based on facts and the amount, regardless of how much is a fact on which Morse must base his analysis.  When a partial or temporary impairment of business is

involved, the lost profit conclusion results from the integration of two separate calculations of pre-tax net profits.

First, an economic model of pro-forma revenues and costs for the duration of the damage period is developed "but for" the wrongdoing (assuming that the wrongdoing never occurred). Next, economic models of the impaired revenues and costs that actually occurred and are projected to occur in the future are developed. The difference for each year represents lost profit for that year. With respect to Defendant's argument that Morse admits to a bias, that is simply not reflected in the record. Defendant argues that Morse only looked at materials sent to him by the Plaintiff, however Morse clearly states that his opinion is based on damages caused by Defendant and not other sources. (*See* Attached Ex. "C", December 8, 2010, Deposition of Joel N. Morse ("Morse Dep.), p. 137.) In addition, Morse opines that the events cascaded from the activities of the Defendant. Morse Dep. at 130-131. As such, Morse offers his professional expert opinion as to the cause of the damages and that Defendant's actions resulted in secondary impacts on donation levels.

Finally, in support of his expert opinion on what if any outside influences may have impacted donations to Plaintiff, Morse references two third party articles to support the national macroeconomic conditions for non-profit donations absent would have on NIAC's donations Defendant's actions. (*See* Attached Ex. "D", May 9, 2010, Expert Report of Joel N. Morse ("Expert Report"), p. 3.)

Quite often, the amount of lost sales or lost profits is not obvious and the expert must perform an analysis to determine the amount of "but for" revenues and related costs. If there are no other significant intervening factors affecting the change in revenue and costs over the period of time involved, then the before and after method may be used to determine lost profits for an

organization so that the trier of fact can use this information in considering damages. This method uses historical "before" revenues and costs as the basis for the corresponding pro-forma "but for" amounts. These are compared to the actual "after" amounts to determine lost profits. The difference is the amount of lost profit. The amount of profits lost need not be proven with mathematical precision; rather, evidence is sufficient if it enables the fact-finder to make a fair and reasonable finding of the amount.

Morse's methodology and proposed testimony is reliable and would assist the jury in determining damages. Accordingly, it should be allowed.

## **ARGUMENT**

The standard for admitting expert testimony is set forth in Federal Rule of Evidence 702, as interpreted by the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceutical, Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993). Federal Rule of Evidence 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." The *Kuhmo Tire* Court qualified these guidelines as "flexible," none of which need necessarily or exclusively to be applied. *Kumho Tire Co., Ltd. v. Carmichael*, 119 S.Ct. 1167, 1171 (1999).

"In *Kumho Tire*, the Court held that the *Daubert* standard applied to non-scientific expert testimony and reemphasized that the trial judge must 'make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the

same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'"

*United States v. Cunningham*, 194 F.3d 1186, 1197 (11th Cir. 1999) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).  "In *Daubert*, the Supreme Court stressed that the trial judge must make 'a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied.  *Daubert* at 591.  The Court in *Kumho Tire Co., Ltd. v. Carmichael*, held that the *Daubert* test applies not just too scientific expert witnesses, but to all potential testifying expert witnesses, including those with technical or specialized knowledge.  *Kumho Tire* at 1174.  The Court reasoned that the language of Rule 702 was meant to be all encompassing, and therefore, the same objectives set forth in Daubert apply to all expert witnesses.  *Id.* at 1171.

I.      **DR. MORSE'S PROPOSED TESTIMONY IS RELIABLE**

        A.      **Dr. Morse's Methodology is Reliable**

        Defendant argues that Morse uses a methodology that is "plain vanilla" and for simplicity purposes uses a time period beginning in 2008.  Morse uses the "but for" methodology that is a commonly recognized method in determining business loss and a "term of art" to distinguish business loss in a non-profit operation as opposed to lost profits in a for profit operation.  Defendant makes much of the nuances of the technical language used by Dr. Morse and the conclusions he draws arguing that many of them are incorrect.  Such a determination is better left for a jury and not the Defendant.  Dr. Morse's reputation and scholarly background leave no doubt that he is qualified to assist the jury in determining the amount of damages in this case.

        Defendant seems to question Dr. Morse's expert opinion on the grounds that he reaches an incorrect conclusion from Defendant's viewpoint.  Defendant had the opportunity to make such an argument via its own expert witness.  However, Defendant failed or chose not to

designate any expert witnesses.  As such, Defendant should not be permitted to stand in the shoes

of its non-existent expert witness and attempt to attack Dr. Morse's expert opinion.  Moreover,

the defendant should be precluded from attempting to hijack what is cleary a decision for the jury

to make, i.e. what damages, if any, Plaintiffs have suffered.

Notwithstanding the foregoing, the methodology Dr. Morse uses clearly does meet the

first prong of Federal Rule of Evidence 702 in that it is based on sufficient facts and data.  The

facts and data used by Dr. Morse consist of  NIAC's surplus in 2007 and 2009 and then apply a

reasonable variety of growth options to his opinion on damages.  To that end, the defendant

appears to complain that Dr. Morse's expert opinion is unreliable because he does not indicate a

preferred growth rate among considered growth rates.  This is because Dr. Morse approached his

role as an expert witness as more of a guide whose job it is to advise the jury against the

possibility that they would have unreasonably chosen some growth rate like 50% or more. Thus,

Dr. Morse does not apply an unreasonably large growth rate like 50 or 75%.  Instead, he has used

far lower figures that are more reasonable expectations for annual growth.  In fact, Dr. Morse

states in his export report that he applied conservative future growth rates far below the prior

annual growth rates.  *See* Expert's Report at 3.

Defendant argues that Dr. Morse "ignores" the reality of 2009, however providing no

basis to support a claim that 2009 was a "normal" year for NIAC.  Again, the defendant, who is

not qualified to do so, is making an argument that should have be made, if at all, by the expert

witness Defendant failed or chose not to designate.   Defendant also argues that Dr. Morse

"sprinkles in" qualitative analysis which he contends supports the calculations described above.

*See* Defendant's Motion to Exclude the Testimony of Joel Morse at 6.

Further, Dr. Morse qualifies his assumptions to avoid any bias by referring to a third party article on non-profit giving. *Id.* First, Dr. Morse's use of data that is the product of reliable principles and methods satisfies the second part of Federal Rules of Evidence 702. Moreover, Defendant is demanding a degree of exactness that the court and Dr. Morse reject as appropriate. In *Herman Schwabe, Inc. v. United Shoe Machinery Cor*p., 41 U. Rich. L. Rev. 422, 2006-07 at 422 citing *Herman Schwabe, Inc. v. United Shoe Machinery Corp.*", 297 F.2d 906 (2d Cir. 1962), in an often cited opinion, Judge Friendly in upholding the exclusion of the plaintiff's testimony as to lost profits, noted that it was especially important to protect juries against expert testimony containing "an array of figures conveying a delusive impression of exactness in an area where a jury's common sense is less available than usual to protect it. *Id.*

While lost profits must be proven with reasonable certainty and cannot be too speculative or remote to be computed reliably, the amount of profits lost need not be proven with mathematical precision. Rather, evidence is sufficient if it enables the fact-finder to make a fair and reasonable finding of the amount. "It is well settled that the evidentiary basis for a court's ruling on damages need only be sufficient to enable a court or jury to make a fair and reasonable approximation." *Seaboard Lumber Co. v. United States,* 308 F.3d 1283, 1302 (Fed. Cir. 2002). In addition, in *General Electric Company v. Joiner*, 522 U.S. 136 (1997), the U.S. Supreme Court further held that the trial judge has broad latitude when deciding both how to determine reliability and when reliability has been met. Uncertainty is a given in the constantly changing business world. Experts commonly provide estimates on profits using alternate scenarios. *See* Computer Sys. Eng'g, Inc v. Qantel Corp., 740 F.2d 59, 66 (1st Cir. 1984) (noting that plaintiff's expert created three different lost profit scenarios by extrapolating from three different profit and loss forecasts made by defendant).

Defendant argues that Dr. Morse did not apply any statistical analysis to his estimate of the growth rate.  Again, the defendant, a non-expert, makes this argument since Defendant did not designate any experts.  Morever,  Defendant ignores the references to actual facts from Plaintiff's prior financial reports showing prior growth levels.  In addition, the use of the differing levels of growth allows the jury to determine which growth rate is appropriate, not from the view point of projecting rates from scratch, but analyzing Morse's expert testimony and applying the other facts and evidence in the case to determine the amount of damages.  The old military axiom, "no plan of battle survives first contact with the enemy," has become an accepted principle of business as well.  *See, e.g.* James R. English, <u>Applied Equity Analysis: Stock Valuation Techniques for Wall Street Professionals</u> 176 (2001); Mark McNeilly, <u>Sun Tzu and the Art of Business: Six Strategic Principles for Managers</u> 80 92000); Brian Tracy, <u>TurboStrategy: 21 Powerful Ways to Transform Your Business and Boost Your Profits Quickly</u> 59 (2003). The use of alternative scenarios is so much a part of analysis and planning in business that Microsoft Excel, the leading business analysis software, incorporates a "Scenarios" tool designed for the express purpose of making it easier to develop alternative scenarios.  See Stephen G. Powell & Kenneth R. Baker, <u>The Art of Modeling With Spreadsheets</u> 118-21 (2004) (explaining the use of the Excel scenarios tool in business modeling).

Should some of Dr. Morse's data be inconsistent, trial courts have determined that challenging the data is best left to the trial process and not used to qualify an expert.  *See, e.g.*, Hertz Corp. v. Gaddis-Walker Elec., Inc., Nos. 96-6022, 96-6136, 1997 WL 606800, at 3 (10th Cir. Oct 2, 1997) (expert's failure to deduct certain costs could be corrected on cross-examination); Swiercznski v. Arnold Foods Co., 265 F. Supp 2d 802, 810 (E.D. Mich. 2003) (expert's use of inappropriate discount rate goes to weight of testimony , not admissibility);

Spalla v. Navarre Corp., 01-598, 2002 WL 31500395, at 4 (D. Minn. Nov 11, 2002) (expert's use of incomplete data in report can be attacked on cross-examination); Stelwagon Mfg. Co. v. Tarmac Roofing Sys., Inc., 862 F. Supp 1361, 1368 n.11 (E.D. PA. 1994) (flaws in methodology go to weight of testimony, not admissibility) *aff'd in part, rev'd in part*, 63 F.3d 1267 (3d Cir. 1995).

Morse's decision to not use partial year analysis is supported by a reference to an auto tort liability case.  Even though the cases are different, what is applied is the methodology used to base his expert decision on, not the same set of facts.  Morse provides ample support for his analysis on why he selected the years that damages would apply.  The number of years is based on expert opinion of how long the effects of a defamation damages would impact the level of donations to NIAC.  *Daubert* pointed out that Federal Rules 702 and 703 grant expert witnesses testimonial latitude unavailable to other witnesses on the "assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline." *Daubert*, 509 U.S. at 592 (pointing out that experts may testify to opinions, including those that are not based on firsthand knowledge or observation).

Defendant also argues that Morse estimates the actual surplus for 2010 to 2012 are unreliably low.  Dr. Morse's analysis was based on the factual financial data that he reviewed and was not speculative and is reasonable under the circumstances.  Morse's expert testimony provides a reasonable basis to assist a jury to deciding damages at trial.  Dr,. Morse has not, as Defendant argues, simply "done the math", but has applied rigorous and analytical analysis to the facts of the case and determined in his expert opinion the estimated amount of damages which is what he will testify to in court, therefore, his testimony should be included.  Finally, Defendant argues that the extrapolation by Dr. Morse to determine future year but-for surplus is improper

and over simplistic.  Such financial forecasting occurs on a regular basis and is used throughout the financial industry when future projections are created and is reliable in this case.

      **B.**      **Dr. Morse Reliably Did Apply His Methodology to the Facts Of This Case**

Defendant argues that Dr. Morse ignored external factors in developing his damage amounts.  However, as clearly stated in his deposition Dr. Morse used external publications to support his opinion that external factors had little impact on Plaintiff's damages.  Morse Report at 3.

Defendant argues that Dr. Morse ignored material that showed others may have impacted the loss of donations to NIAC.  However, Dr. Morse clearly explains such analysis by stating that in his opinion those third parties who spoke out against Plaintiffs were acting as a front for Defendant.  Defendant argues against the accuracy of Morse's opinion rather than on the methodology used to develop it.  Defendant argues that Morse has simply assumed that only the Defendant caused the harm and that as such testimony would be excluded under *Robertson*.  *Robertson v. McCloskey,* 680 F. Supp. 414, 415 (D.D.C. 1988).  In fact, Morse clearly states in his deposition that in his opinion he has recognized other contributing parties, however states that Defendant was behind these efforts.   Morse Dep. at 115-117.

**II.**    **DR. MORSE'S PROPOSED TESTIMONY WILL MEET THE REQUIREMENTS OF *DAUBER* BY "ASSISTING" THE TRIER OF FACT TO UNDERSTAND THE EVIDENCE**

While application of the *Daubert* test to scientific issues has been resolved, applying the test to expert economic testimony, however, remains enigmatic. With competing schools of economic thought, a variety of "accepted" methods of calculation, and a multitude of fluctuating variables, it can be difficult for judges and lawyers alike to determine when expert economic testimony meets the required *Daubert* standards.  When dealing with such testimony, the two

central factors generally examined by the courts include the qualifications of the expert and the general acceptance of the theory offered by the expert.  Sofia Adrogui & Alan Ratliff, *Kicking the Tires after Kumho: The Bottom Line on Admitting Financial Expert Testimony*, 37 Hous. L. Rev. 431 (2000).

Three critical factors often are used to inform the decision regarding acceptance of economic testimony as it relates to  measuring admissibility reliability of the data and the reasonableness of the assumptions.  With respect to an expert's qualifications, the court must review the witness's education, knowledge, and experience.   Dr. Morse meets this requirement due to his background, skills and expertise in the areas of financial and business analysis.  *See* Morse CV.

The proper foundation for a technical expert to demonstrate is "firsthand familiarity" with the subject of the testimony.  *Berry v. City of Detroit*, 25 F.3d 1342, 1350 (6th Cir. 1994).  Morse clearly meets this requirement as a result of his deft review of NIAC's financial statements, objective interviews with NIAC donors, and qualitative analysis attested to his Expert Report. To qualify as an expert, under Fed. R. Evid. 702, a witness must first establish his or her expertise by reference to "knowledge, skill, experience, training, or education." Fed. R. Evid. 702.  This requirement "does not mean that a witness is an expert simply because he claims to be."  *Pride v. BIC Corp.*, 218 F.3d 566, 577 (6th Cir. 2000).

The court must examine "not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question."  *Berry*, 25 F.3d at 1351.  Thus, the trial court must first determine "whether the expert's training and qualifications relate to the subject matter of his proposed testimony."  *Smelser v. Norfolk Southern Ry. Co.,* 105 F.3d 299, 303 (6th Cir. 1997).  In other words, "[t]he trial court ha[s]

to decide whether this particular expert ha[s] sufficient specialized knowledge to assist the jurors in deciding the particular issues in the case." *Kumho Tire Co.*, 526 U.S. at 157.

Regarding the acceptance of an expert's theory, the task is even more difficult because often there is no consensus within the field on any given theory.  Thus, the court often should review not only the underlying model used by the expert and the rationale supporting the expert's choice of that model, but also the reasonableness of applying the model to the facts of the specific case.  *Adrogui & Ratliff*, *supra* note 3, at 500.

## IV.    CONCLUSION

Dr. Morse's testimony falls squarely within the spectrum of admissible expert testimony under Rule 702.  The testimony is relevant, reliable, and required in order to allow jurors full deliberation of evidence.  Moreover, because the judge is granted broad discretion in determining admissibility of expert testimony, policy considerations underlying the law should prevail.  Most of the objections raised by Defendant go to the weight of the evidence rather than the reliability.  Also, as stated in Dr. Morse's report, he reserves the right to amend his opinion based on the receipt of additional facts and information as it may become available which may cause him to revise his opinion.

Respectfully submitted,

_____
                /S/
A.P. Pishevar (D.C. Bar No. 451015)
Adrian V. Nelson, II (*Pro Hac Vice*)
**PISHEVAR & ASSOCIATES, P.C.**
600 East Jefferson Street, Suite 316
Rockville, Maryland 20852
(301) 279 – 8773
(301) 279 – 7347 Fax
Counsel for the Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Plaintiffs' Opposition to Defendant's Motion to Exclude Testimony of Joel Morse was served on May 13, 2011, via email and first class U.S. mail, postage prepaid, upon:

> Timothy E. Kapshandy, Esquire
> Peter Jensen, Esquire
> *SIDLEY AUSTIN LLP*
> 1501 K Street, N.W.
> Washington, D.C. 20005
> *Counsel for the Defendant*

/S/
Adrian V. Nelson, II
