IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TRITA PARSI, et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 08 CV 00705 (JDB) |
| | ) |
| DAIOLESLAM SEID HASSAN, | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF DEBASHIS AIKAT**

Defendant argues that the expert testimony of Debashis Aikat is not relevant and would not assist the trier of fact. Defendant relies on the argument that Professor Aikat did not use the *NY Times v. Sullivan* standard and instead used a standard from the Society of Professional Journalists ("SPJ") in applying his analysis. *See* Attached Exhibit "A", Society of Professional Journalists ("SPJ") Code of Ethics. The one flaw in the Defendant's argument is that the *Sullivan* standard is a *legal* standard, and Aikat is providing expert advice on the *professional* standard as it applies to the writings of the Defendant. The journalism industry has many, many references to ethics and journalistic standards.[1] This expert testimony is necessary as the average lay person is not sufficiently knowledgeable in the area of journalistic ethics and standards.

---

[1] "ASNE Statement of Principles" (American Society of Newspaper Editors), http://asne.org/kiosk/archive/principl.htm; Statement of Ethical Principles, (Associated Press Managing Editors (adopted 1994), http://www.apme.com/?page=EthicsStatement; BBC Editorial Guidelines,  http://www.bbc.co.uk/guidelines/editorialguidelines/guidelines/; International Federation of Journalists (adopted 1954), http://www.ifj.org/en/articles/ifj-declaration-of-principles-on-the-conduct-of-journalists; The Online Journalism Review, University of Southern California, Annenberg School for Communications and Journalism, http://www.ojr.org/ojr/wiki/ethics/.

- 1 -

Defendant also argues that the term "willful blindness" is not listed specifically in the SPJ Code and therefore is not applicable. However, the term has been and is used in evaluating the professional standards as they apply to journalists in various media, including print, on-line and digital. Such expert testimony will assist the trier of fact in determining the proper professional standard to apply for journalistic standards.

Mr. Aikat is exceptionally qualified to provide expert testimony to assist the trier of fact in determining the whether the professional standards of journalism were breached by the Defendant. Mr. Aikat is an Assistant Professor at the School of Journalism and Mass Communication at the University of North Carolina Chapel Hill ("UNC-CH"). *See* Attached Exhibit "B", Debashis "Deb" Aikat, CV at 2 ("Aikat CV"). He earned a Ph.D. in Mass Communication and Journalism from the E.W. Scripps School of Journalism at Ohio University and his dissertation, "Adventure in the Cyberspace: Exploring the Information Content of the World Wide Web Pages in the Internet," was among the first studies of its kind in the field. *Id*. Along with published book chapters, Aikat's articles have appeared in referenced research publications including: *Electronic Journal of communication/La Revue Electronique de Communication*, and *Convergence: Journal of Research into New Media Technologies*. *Id*. Aikat is also a member of the editorial board of *Journal of Magazine and New Media Research*. *Id*. He has reviewed research for *Journalism and Communication Monographs*, *Journalism and Mass Communication Quarterly,* and *Journal of Communication*. *Id.*

A former journalist for over seven years, Dr. Aikat was named the inaugural winner of the Scripps Howard Foundation's "National Journalism Teacher of the Year (2003)" award for distinguished service to journalism education. *Id*. In 1997, the IRTS named him the Coltrin Communication Professor of the year. *Id*. In 2007, Dr. Aikat was elected to serve on the

Accrediting Council on Education in Journalism and Mass Communications (ACEJMC), which evaluates journalism and mass communication programs at universities and colleges. *Id*. He is also chair of the Association for Education in Journalism and Mass Communication Standard Committee on teaching. *Id*. Finally, Dr. Aikat has published many articles related to journalism and the web including "Of Online News and "Rogue" Web sites: Impact of the Web on the Private Sector" in *Understanding the Web: Social, Political, and Economic Dimensions of the Internet*, eds. Alan B. Albarran and David, H. Goff, Blackwell Publishing, Ames, Iowa, pages 49-71. *Id*. at 10.

As such, Dr. Aikat is more than qualified as an expert in the professional standards of journalism and his testimony will assist the trier of fact and therefore his testimony should not be excluded.

## **ARGUMENT**

The standard for admitting expert testimony is set forth in Federal Rule of Evidence 702, as interpreted by the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceutical, Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993). Federal Rule of Evidence 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." The *Kuhmo Tire* Court qualified these guidelines as "flexible," none of which need necessarily or exclusively to be applied. *Kumho Tire Co., Ltd. v. Carmichael*, 119 S.Ct. 1167, 1171 (1999).

"In *Kumho Tire*, the Court held that the *Daubert* standard applied to non-scientific expert testimony and reemphasized that the trial judge must 'make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *United States v. Cunningham*, 194 F.3d 1186, 1197 (11th Cir. 1999) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). "In *Daubert*, the Supreme Court stressed that the trial judge must make 'a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied. *Daubert* at 591. The Court in *Kumho Tire Co., Ltd. v. Carmichael*, held that the *Daubert* test applies not just too scientific expert witnesses, but to all potential testifying expert witnesses, including those with technical or specialized knowledge. *Kumho Tire* at 1174. The Court reasoned that the language of Rule 702 was meant to be all encompassing, and therefore, the same objectives set forth in *Daubert* apply to all expert witnesses. *Id.* at 1171.

I.      AIKAT'S PROPOSED TESTIMONY IS RELIABLE

A witness may be qualified based on any one or more of the qualities listed in Rule 702- knowledge, skill, experience, training or education. *Tiffany (NJ) Inc. v. eBay, Inc.,* 576 F. Supp. 2d 457, 458 (S.D.N.Y. 2007) (citing Jack B. Weinstein, Weinstein's Federal Evidence § 702.04[1][c] (2d ed. 2006)). "If the expert has educational and experiential qualifications in a general field closely related to the subject matter in question, the court will not exclude the testimony solely on the ground that the witness lacks expertise in the specialized areas that are directly pertinent." *In re Zyprexa,* 489 F. Supp. 2d 230, 282 (E.D.N.Y. 2007) (citing *Stag v. Delta Airlines, Inc.,* 117 F.3d 76, 80). *See also Johnson and Johnson Vision Care, Inc. v. CIBA Vision Corp*, 2006 WL 2128785 (S.D.N.Y. July 28, 2006)*,* at 5 ("In considering a witness's

practical experience and educational background as criteria for qualification, the only matter the court should be concerned with is whether the expert's knowledge of the subject is such that his opinion will likely assist the trier of fact in arriving at the truth." *Sullivan v. Ford Motor Co.,* No. 97 Civ. 593, 2000 WL 343777, at 4 (S.D.N.Y. Mar. 31, 2000) "One knowledgeable about a particular subject *need not be precisely informed about all details of the issues raised in order to offer an opinion*." (quoting *Thomas J. Kline, Inc. v. Lorillard, Inc.,* 8178 F.2d 791, 799 (4th Cir. 1989)). (emphasis added). "Quibble[s] with an expert's academic training" go to the "testimony's weight... not its admissibility," and are an appropriate subject for cross-examination. *United States v. Joseph,* 542 F.3d 13, 21-22 (2d Cir. 2008) (quoting *McCullock v. H.B. Fuller Co,* 61 F.3d 1038, 1043 (2d Cir. 1995)).

### A. AIKAT'S METHODOLGY IS RELIABLE AND WAS APPLIED RELIABLY

Plaintiff is unclear as to why Defendant provides a lengthy description of the background of Aikat's deposition history as it is unrelated to his methodology and reliability as an expert witness. Plaintiff will refrain from addressing this item as it is irrelevant to the argument of Aikat's reliability as an expert witness and focus the Court's time on the more relevant legal issues.

Defendant asserts that Dr. Aikat's use of the willful blindness standard is not an acceptable area of expertise to use. *See* Defendant's Motion to Exclude the Testimony of Debashis Aikat, at 4 ("Motion to Exclude"). Determining the sufficiency of the evidence provided by Dr. Aikat, however is the role of the trier of fact. Defendants may explore these perceived deficiencies through cross examination. *Primiano v. Cook,* 598 F.3d 558, 564 (9th Cir. 2010) ("Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion.") (citing *Daubert,* 509 U.S. at 596);

*e.g., Robinson v. Hartzell Propeller, Inc.,* 326 F.Supp.2d 631, 649 (E.D.Pa.2004) (determination of weight and sufficiency of expert evidence is "sole province of the jury").  As the Ninth Circuit observed on remand from the Supreme Court, "the test of *Daubert* is not the correctness of the expert's conclusions but the soundness of his methodology." *Daubert v. Merrell Dow Pharms., Inc.,* 43 F.3d 1311, 1318 (9th Cir.1995). Defendants may make use of the traditional methods of testing the weight of an expert's opinion by vigorous cross examination and presentation of contrary evidence.  *Daubert,* 509 U.S. at 596.

Defendant further asserts that because Dr. Aikat has not previously provided expert testimony that somehow that disqualifies Aikat and that his analysis "is solely litigation driven." Motion to Exclude at 5.  Such a determination is best left to this Court and to the trier of fact to determine (and Defendant's cross-examination) rather than for Defendant alone to decide.  Such a determination is illogical in that it would then bar anyone who has not previously testified as an expert witness solely on that basis alone and not their qualifications.  Such an analysis contradicts *Daubert* and progeny as well as the Federal Rules.

Defendant further asserts that he is not clear as to what Aikat's methodology is.  However, Aikat clearly supports his analysis by using the following methodologies:

- He took a scholarly approach.  See Attached Exhibit "D", Deposition of Debashis Aikat at 35 ("Aikat Depo").

- He stated he was using a journalistic standard.  Id. at 46.

- He was not testifying as to truth or falsity of what the Defendant wrote.  Id. at 50.

- He understands the standard for malice under New York Times v. Sullivan.  Id. at 51.

- He reviewed all articles posted on website at time of review related to Plaintiffs.  Id. at 54.

- At the time he viewed the website it did provide the ability to allow for comments to the articles.  Id. at 61.

- He viewed any links within each article. Id. at 54.

- He viewed a sufficient number of articles to draw a conclusion about Defendant's use of support ("not one article had support"). Id. at 81.

- He stated it would be unreasonable for anyone to attempt to search the entire Internet to find articles related to claims made in an article or posted on a website, but only those linked to the story or posting. Id. at 165.

Defendant argues that Aikat's opinion that Defendant engaged in "willful blindness" by making accusations against Plaintiff that were without sufficient support and by not providing the opportunity for the Plaintiff (or others) to respond. Motion to Exclude at 4. The term however has a quite extensive usage involving statements made with a reckless indifference to the truth. Dr. Aikat uses the term "willful blindness" as a term of art which is well defined. Evidence establishing reckless disregard for the truth or falsity of a statement, as well as willful blindness, satisfies the intent standard. *United States v. Munoz,* 233 F.3d 1117, 1136 (9th Cir.2000) ("reckless indifference to the truth or falsity of a statement satisfies the specific intent requirement in a mail fraud case").

Defendant asserts that Dr. Aikat applied his analysis of the "duty to respond" in a slipshod manner. Motion to Exclude at 8. Such a duty is clearly stated in the SPJ where for example it states "…Support the open exchange of views.." SPJ at 1. The SPJ further indicates such a requirement by stating "…Diligently seek out subjects of news stories to give them the opportunity to respond…" *Id*. Defendant also argues that readers had the opportunity to post comments on Defendant's website. Motion to Exclude at 8. However this ignores Dr. Aikat's statement in his deposition that at the time he viewed the website that ability did not exist or was not working. Aikat Depo at 61.

Defendant asserts that NIAC's and Trita Parsi's "ability to get their side of the story out is unlimited."  Motion to Exclude at 9.  Such an assertion is without basis and purports to assign an obligation to Plaintiffs that when defamatory statements are made that somehow the subject of these statements then must go out on their own and deny them.  This creates some previously unrecognized burden on the subject of defamatory stories or statements and is further irrelevant to Dr. Aikat's qualifications as an expert witness.

### B. AIKAT APPLIED HIS METHODOLOGY AND THE SPJ CODE WITHIN THE SCOPE OF THE AREAS HE WAS ASKED TO REVIEW

Dr. Aikat's opinion and expert testimony is based within the scope of what he was asked to consider on behalf of the Plaintiff.  Dr. Aikat was specifically asked o review the "general standard of the case and compliance within the journalism community/industry as is applies to those persons who hold themselves out as journalist, including any varying standard of care and compliance for this who hold themselves out as cyber-journalists."  *See* Attached Exhibit "C", May 17, 2010, Letter to Dr. Aikat.  In addition, Dr. Aikat was asked whether and to what extent you see evidence of "willful blindness" in the writings of the defendant as it relates to his assertions against the plaintiffs.  *Id*.  Finally, Aikat was asked whether defendant had a duty to allow the plaintiffs an opportunity to respond to his assertions against them.  *Id*.

Dr. Aikat's basis in opining about these standards in journalistic behavior is based on the use of the SPJ Code.  Dr. Aikat refers to using this standard in his deposition.  Aikat Depo at 74-75.  Dr. Aikat describes numerous examples where he was unable to determine that Defendant tested the accuracy of the information published which violated the section of the SPJ Code which states "Test the accuracy of information from all sources."  *See* SPJ Code at 1.  In addition, Dr. Aikat also discusses his inability to find any information concerning the Defendant's effort to seek out the Plaintiffs to allow them to respond to the postings.  Aikat Depo

at 112.  This specific standard is covered in the SPJ Code which states "Diligently seek out subjects of news stories to give them the opportunity to respond to allegations of wrongdoing.  SPJ Code at 1.

Dr. Aikat also refers again to the SPJ Code and provides yet another example of a violation where emails were used as the basis of a story without any proper reference.  Aikat Depo at 132-33.  The SPJ Code provides that journalists avoid undercover or other surreptitious methods of gathering information.  SPJ Code at 1.

**II.     AIKAT'S PROPOSED TESTIMONY WILL ASSIST THE TRIER OF FACT**

The Supreme Court has recently re-examined the trial judge's "gatekeeping" function under Daubert when the reliability of the basis for expert opinion testimony is brought into question, in *Kumho Tire Co. v. Carmichael*, 119 S. Ct. 1167 (1999).  Rule 702 "establishes a standard of evidentiary reliability." Id. at 1174 (quoting *Daubert*, 509 U.S. at 590).  Where the opponent to such proffered testimony brings the factual basis, data, principles, methods, or their application into question, "the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" *Kumho*, 119 S. Ct. at 1175 (quoting *Daubert*, 509 U.S. at 592).

Defendant makes a number of assertions as to the accuracy of the methods used by Dr. Aikat such as whether readers had the ability to post comments; whether all links in each story or posting were viewed; that the "journalistic standard" approach was appropriate; whether a sufficient number of articles were viewed to reach conclusions; whether he viewed postings or articles in Farsi; his lack of experience as an expert witness; limited time to view articles and postings; and knowledge of various Iranian regime officials and other individuals that were named in the articles.  Such assertions are based on Dr. Aikat's *conclusions* and not his


*methodologies*. "If the expert has educational and experiential qualifications in a general field closely related to the subject matter in question, the court will not exclude the testimony solely on the ground that the witness lacks expertise in the specialized areas that are directly pertinent." *In re Zyprexa,* 489 F. Supp. 2d at 282 (citing *Stagl,* 117 F.3d at 80). *See also Johnson and Johnson,* 2006 WL 2128785, at 5 ("In considering a witness's practical experience and educational background as criteria for qualification, the only matter the court should be concerned with is whether the expert's knowledge of the subject is such that his opinion will likely assist the trier of fact in arriving at the truth." In assessing the reliability of an expert's proposed testimony, the Court's focus "must be solely on principles and methodology, not on the conclusions they generate." *Daubert*, 509 U.S. at 595; *Amorgianos v. Nat'l R.R. Passenger Corp.,* 303 F.3d 256, 266 (2d Cir. 2002). Dr. Aikat's testimony regarding journalistic standards meets the requirement and would assist the trier of fact. Defendant's concerns about the conclusions of Dr. Aikat's findings are best addressed during cross-examination during trial. Defendants may explore these perceived deficiencies through cross examination. A court need not determine that the proffered expert testimony is irrefutable or certainly correct. As with all other admissible evidence, expert testimony is subject to testing by "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *United States v. Moreland*, 437 F.3d 424, 430-31 (4th Cir.), *cert. denied*, 547 U.S. 1142 (2006).

## CONCLUSION

For the foregoing reasons, Plaintiff requests this Court to include the proposed testimony of Plaintiff's journalism expert witness, Dr. Debashis Aikat.

Respectfully submitted,

         /S/         
A.P. Pishevar (D.C. Bar No. 451015)
Adrian V. Nelson, II (*Pro Hac Vice*)
**PISHEVAR & ASSOCIATES, P.C.**
600 East Jefferson Street, Suite 316
Rockville, Maryland 20852
(301) 279 – 8773
(301) 279 – 7347 Fax
Counsel for the Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Plaintiffs' Opposition to Defendant's Motion to Exclude Testimony of Debashis Aikat was served on June 2, 2011, via email and first class U.S. mail, postage prepaid, upon:

> Timothy E. Kapshandy, Esquire
> Peter Jensen, Esquire
> SIDLEY AUSTIN LLP
> 1501 K Street, N.W.
> Washington, D.C. 20005
> *Counsel for the Defendant*

         /S/         
Adrian V. Nelson, II