IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TRITA PARSI </br></br>and </br></br>NATIONAL IRANIAN AMERICAN COUNCIL </br></br>          Plaintiffs, </br></br>          v. </br></br>DAIOLESLAM SEID HASSAN, </br></br>          Defendant. | Civil No. 08 CV 00705 (JDB) |

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF THE
MOTION TO EXCLUDE THE TESTIMONY OF DEBASHIS AIKAT**

Defendant Seid Hassan Daioleslam respectfully submits this reply memorandum in response to Plaintiffs' opposition to the motion to exclude the testimony of Debashis Aikat. Plaintiffs' opposition ignores key parts of Defendant's arguments to exclude Aikat's testimony. Moreover, Plaintiffs' attempt to make sense of Aikat's methodology fails—shedding no additional light on Aikat's methods and being outright contrary to Aikat's own testimony. Accordingly, the reasons provided in the Defendant's original motion to exclude Aikat's testimony remain sound, and the motion should be granted.

**ARGUMENT**

Plaintiffs attempt to gloss over the details of Aikat's testimony. Instead, they rest their argument on the notion that Aikat is qualified by virtue of his academic and personal experience, and suggest that the reliability of his testimony should thus be determined by the trier of fact or during cross-examination. Plfs.' Opp., p. 2-5, 10. However, as stated in *Gen. Elec. Co. v. Joiner*,

522 US 136, 146 (1997), "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." See also *U.S. v. Stagliano*, 729 F. Supp. 2d 222, 230 (D.D.C., July 2010) (stating "Under *Daubert*, presenting an expert's qualifications, conclusions, and assurances of reliability are not enough. *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995). Simply put, the length of an expert's curriculum vitae is valueless if the principles and methods underlying the expert's proposed opinion testimony are either unreliable, or unhelpful, to the jury."). The D.C. Circuit has also made clear that district courts must "resist the temptation to answer objections to receipt of expert testimony with the shorthand remark that the jury will give it the weight it deserves." *Joy v. Bell Helicopter Textron, Inc.,* 999 F.2d 549, 569 (D.C. Cir. 1993) (citation and alterations omitted). Thus, Aikat's opinion must be subjected to *Daubert.*

Contrary to Plaintiffs' claims, Aikat did not utilize a pre-determined, well-accepted method of analyzing Defendant's articles that can be objectively evaluated. A close analysis of Aikat's methodology shows that it is so incomprehensible as to be unreliable. Plaintiffs have now attempted to create some sense and structure in Aikat's methodologies by matching random excerpts of the SPJ Code and *U.S. v. Munoz,* 233 F.3d 1117 (9th Circ. 2000). *See* Plfs.' Opp. p. 2, 7-9. In an attempt to simplify and strengthen the Aikat method, they selectively cite fragments of his testimony to make it seem as though he examined all of Defendant's articles and any links found within those articles. *Id.* at 6-7. Plaintiffs ignore Aikat's failure to read key discovery documents, counsel's instructions as to what Aikat should read, and the strict time limitation--all of which hindered the reliability of Aikat's testimony. Def. Mot., p. 5-7, 9-10. Instead, Plaintiffs respond that Aikat applied his tests "within the scope of the areas he was asked to review." Plfs.' Opp., p. 8. However, the fact that counsel limited his mandate does not make his methods valid.

## I. AIKAT'S PROPOSED TESTIMONY IS UNRELIABLE

### A. Aikat's Methodology Is Unreliable

Plaintiffs contend that Aikat's method was to read "all" of Defendant's articles on his website that pertained to the Plaintiffs. Plfs.' Opp., p. 6. This is wrong. At best, Aikat did a selective reading of Defendant's articles. He admittedly did not read, for instance, the 2008 article, "Iran's Oil Mafia: Penetrating the US Political System." *See* Def.'s Mot., Ex. C (Aikat Dep.), p. 192. This article from Defendant's website not only mentions "Trita Parsi" and "NIAC," but was specifically cited in Plaintiffs' complaint.[1]

Aikat admitted that he only reviewed "some" of Defendant's articles. *See* Def.'s Mot., Ex. C (Aikat Dep.), p. 53-54. In fact, he stated that "there is no definite set of documents that [I am] looking at, unless I'm informed otherwise." *Id.* at 211. He repeatedly claimed to have specifically read about "60" English articles that Defendant had written pertaining to Plaintiffs, even though the Defendant has only written approximately 40 English articles pertaining to NIAC and Trita Parsi. *Compare id.* at 81-82, 158, 224 and Ex. V (Dec. 2010 Supplemental Disclosures), p. 15-20. Such a puzzling claim of reading "60" articles does no justice to his credibility or his memory, unless he was talking about reading 60 articles total (including links to other references) which would then be even more deficient given, as discussed below, that the total number of articles and references far exceed that. In either case, the trier of fact has no idea as to what articles were to be read under the Aikat methodology. It is not even clear from what "websites" Aikat pulled his articles for his analysis. In this case, he repeatedly testified that in addition to Defendant's "iranianlobby.com" website, he read at least some of Defendant's articles on the PAIC website, "www.iranian-americans.com" *See* Def.'s Mot., Ex. C (Aikat

---

[1] It is also of note as it is a specific example showing Defendant posting NIAC's response to his claims, something which Aikat said the Defendant does not allow. *See* Ex. P (Iran's Oil Mafia article), p. 3.

3

Dep.), p. 30, 48-49, 117, 142.  However, he later contradicted himself saying he only focused on the "iranianlobby.com" website where the Defendant published many articles. *Id.* at 178-179.  Thus, Plaintiffs' claim that the method entails the reading of all of Plaintiff's NIAC/Parsi articles is wrong. And, it is unknown what articles were read and from precisely where he obtained the subset he did read.

Second, Aikat did not read all of the links referenced in Defendant's articles, which would have been necessary in any evaluation of the sufficiency of Defendant's sources. Plaintiffs claim that Aikat's method entailed reading "any links found within each article." Plfs.' Opp., p.  7.  This would have been necessary, as Aikat agreed that reviewing each and every reference is required in evaluating "willful blindness." *See* Def.'s Mot., Ex. C (Aikat Dep.), p. 93-94.  However, even the specific page cited in Plaintiff's Opposition for this proposition says otherwise. Aikat actually testified, "I have read through some of the articles[,] and I went to some of the links, but I did not read every element of his linked content because of the limited time…" *Id.* at p. 54.  He even clarified, "My answer to your question is I did not go through and parse every linked document.  I read the main article.  So just to clarify for your and my benefit, the Defendant writes an article in which the Defendant may refer to one or two links as support or as to say, that, [']Hey this is why it's happening,['] and I read through some of the important links…but not all of them." *Id.* at p. 54-55.  In fact, Aikat later admitted that he could not recall which references he read. *Id.* at p. 86.  He did know, however, that he did not read a PowerPoint presentation that was cited in at least one of Hassan's articles (*id.* at p. 151-152), and he admitted that he did not read Trita Parsi's 1999 article with Namazi about the need to create a lobby that was also cited by Defendant in at least one of his articles (*id.* at p. 205-206).  It is unfathomable

4

how Plaintiffs could convert all these admissions by Aikat and represent to the court that Aikat "viewed any links within each article." Plfs.' Opp., p. 7.

Moreover, Plaintiff's contention that Aikat read any links found within each of Defendant's articles is implausible. Aikat admitted that he had spent 8 hours on research and 9 hours on writing the report. *See* Def.'s Mot., Ex. C (Aikat Dep.), p. 16-17. While as stated above, it is not clear precisely which articles he read or even the number of articles he read, if he read "60" articles, that would leave him 8 minutes per article. Considering the number of links in Defendant's website can reach as high as 40 references, it is highly implausible that Aikat could have had enough time to read through all of these sources and verified their validity. As Aikat himself admitted, he did not read every element of the linked content because of "limited time." *Id.* at p. 54.

Third, Aikat's "willful blindness" methodology is simply incomprehensible despite Plaintiffs' attempt to make it more concrete. For example, they suggest that he used a "scholarly approach" and used the "journalistic standard." Plfs.' Opp., p. 6. Specifically what these entail, they studiously avoid.

In an attempt to salvage the irrelevance of Aikat's supposed application of the SPJ code, Plaintiffs claim that Aikat "understands the standard for malice under *New York Times v. Sullivan*." Plfs.' Opp., p. 6. However, Aikat admitted he did not evaluate the question of whether the Defendant personally knew what he had written was false or whether he had serious doubts about the truth of what he had written (Def.'s Mot., Ex. C (Aikat Dep.), p. 52-53), when, as stated by the Supreme Court, reckless disregard at a minimum requires a high degree of awareness of probable falsity or entertaining serious doubts as to the truth of a publication. *Harte-Hanks Communications, Inc. v. Connaughton*, 491 US 657, 667 (1989); *see also id.* at 658

(stating, "A showing of "'highly unreasonable conduct constituting an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers'" cannot alone support a verdict in favor of a public figure plaintiff in a libel action."). It is not clear how Aikat's alleged understanding of the actual malice standard and his failure to apply it here render his methodology relevant.

Plaintiffs also attempt to relate Aikat's "willful blindness" standard to *U.S. v. Munoz*. Plfs.' Opp., p. 7. In the process, they merely cite *dicta* from an out of Circuit, mail fraud case that does not apply "willful blindness" to any journalistic standard let alone to the *New York Times v. Sullivan* malice standard. This was a mail fraud case where in a Ponzi scheme, defendants led investors to believe that they were receiving 10% as opposed to 25% commission of sales of bus stop shelters, used opinion letters from attorneys based on a false assumption given by defendants regarding prequalification of all investors that was never done, among other acts. *Munoz*, 223 F.3d at 1123. In this case, the intent of the defendants was not at issue in the appeal, and the primary questions at issue pertained to calculating loss and sentencing. *Id.* at 1122-1125.

Aikat's authority for the alleged "duty to respond" as being akin to requiring accurate spelling is not terribly concrete or helpful to another who might want to replicate his method. Def.'s Mot., Ex. C (Aikat Dep.), p. 100-101. Plaintiffs attempt to make this more concrete by citing to the SPJ code which suggests that a journalist should "[s]upport the open exchange of views." Plfs.' Opp., p. 7. They also selectively omit the context of their support in that the SPJ Code specifically states that it is for "allegations of wrongdoing" that one should give others the opportunity to respond. *Compare* Plfs.' Opp. Ex. A (SPJ Code of Ethics) and Plfs.' Opp., p. 7. However, the SPJ code contains no such general "duty to respond." The truth is, the "duty" to

6

respond was specifically in a question posed by counsel. *See* Plfs.' Opp. Ex. C (Aikat agreement letter).  Moreover, Plaintiffs ignore that both of the websites posting Defendant's articles and which were reportedly viewed by Aikat permitted readers to post comments. *See e.g.*, Ex. T (Post Your Comment example) (showing "Post Your Comment" buttons) and Ex. U (PAIC article with comments) (showing actual comments posted); *see* discussion below.  Notwithstanding, NIAC's failure to post on these websites, Defendant provided a direct link to NIAC's website, a strong indication of a willingness to air the views of the other side. *See e.g.*, Ex. P (Iran's Oil Mafia article), p. 3 (showing Defendant's posting of NIAC's response to his claims).  Likewise, if one has volunteered to go on debates with the other side, as Defendant has, such would also be indicative of support for the open exchange of views. *See* Ex. Q (Hassan Dep. Excerpt), internal p. 203-204 (describing Defendant's willingness to debate Plaintiffs on Voice of America and other radio stations, and Plaintiffs' refusal to do so).  Aikat and Plaintiffs, however, fail to explain or consider these open exchanges while conclusorily alleging that the Defendant has breached some unwritten "duty to respond."

### B.   Aikat Did Not Reliably Apply His "Methodology"

Aikat stated that reviewing each and every reference is something that is required in evaluating willful blindness. Def.'s Mot., Ex. C (Aikat Dep.), p. 93-94.   However, as described above, he did not and could not have read all the articles and links within the articles. This is further proven by the fact that he did not know any of the key players and Iranian officials about whom Defendant wrote. *See* Def.'s Mot., p. 6-7.

Plaintiffs state that Aikat reliably applied his "duty to respond" test.  In an attempt to explain why Aikat did not notice the comments on Defendant's articles, Plaintiffs speculate that this ability must not have existed or was not working at the time of Aikat's viewing on May-June

7

2010. Plfs.' Opp., p. 7.  While only a limited web archive can be created and thus there is no real ability to test whether the feature was working, a 2008, 2010, and 2011 version of one of Defendant's articles shows that the "Post Your Comment" feature was at least available in 2008, 2010, and 2011. *See* Ex. T (Post Your Comment example)[2] (showing example of article with "Post Your Comment" in the Sept. 29, 2008, June 17, 2010, and June 7, 2011 versions of the website).  In both his Farsi and English websites for "www.iranianlobby.com," screen captures show that the comments function on his articles did work during at least those documented points in time. *See e.g.*, Ex. R (Farsi website comments)[3] (sampling of articles pertaining to Plaintiffs in his Farsi website showing others' comments on the Dec. 2008, Feb. 2009, and May 2009 versions) and Ex. S (English website comments)[4] (showing that the comments he was getting regarding his articles were junk [*e.g.*, pertaining to Online Casino on p. 1] but that the function worked for his English website on Dec 2008, Dec 2009, Feb 2010, and April 2010). Defendant's articles on the PAIC website, which Aikat claimed he read, also show that comments could be and were posted. *See e.g.*, Ex. U (PAIC article with comments) (showing comments on p. 6-7). Moreover, even assuming that for whatever reason the feature was temporarily unavailable precisely at the time that Aikat was on the web, the fact is that Aikat did not even see the "Post Your Comment" link on any of Defendant's articles prior to his

---

[2] The website date can be seen in the Wayback Machine date on the top of the first page of the article (in the case of the Sept. 29, 2008 version) or in the date printed stamp on the lower right hand corner (in the case of the June 17, 2010 and June 17, 2011 versions).  The "Post Your Comment" link is shown on p. 4, 8, and 12.

[3] The website date can be seen on the Wayback Machine date on the top of the first page of each article.  The comments are usually in Farsi (separated by horizontal lines with dates listed in English), but can be seen on p. 2-3, 6, 10, 16, and 18.

[4] These are screen captures showing attempted postings on his website.  The article's title can be seen on top of the dashed horizontal line towards the middle of the page in the white space area.  The attempted posting is underneath it along with the date of the attempted posting.  For example, for the first page, the attempted posting for his "Flirting with the Mullahs" article is by "Online Casino" on Aug. 30, 2008.  For the second page, the second dashed line shows an attempted posting for his "The Iranian Lobby and the Israeli Decoy" article on December 12, 2009 was again junk.

deposition. Def.'s Mot., Ex. C (Aikat Dep.), p. 61, 136.  This plainly shows the manner in which he applied his test.

Plaintiffs contend that Aikat applied "his methodology and the SPJ code within the scope of the areas he was asked to review." Plfs.' Opp., p. 8.  The problem is that even if he did indeed follow what he was asked to do, he was so severely limited by the time and data constraints that he could not carry out what he would have ideally wanted to do.  For example, he testified that he was "limited by [his] prior commitments to the particular assignment" (Def.'s Mot., Ex. C (Aikat Dep.), p. 38) and did not read every element of linked content because of the "limited time" (*id.* at p. 54).  Plaintiffs did not address the impact these limits imposed by counsel had on the reliability of Aikat's testimony. Def.'s Mot., Ex. C (Aikat Dep.), p. 37-38, 54, 128, 183, 211, 217.

## II.     AIKAT'S PROPOSED TESTIMONY WILL CONFUSE RATHER THAN ASSIST THE TRIER OF FACT

Aikat's testimony will confuse the trier of fact given that his "willful blindness" methodology was different from and never linked to the relevant *NY Times v. Sullivan* standard. *See* Def's Mot., p. 10-12.  Plaintiffs have failed to address this argument.

## CONCLUSION

Plaintiffs contended that all of Defendant's attacks (including those on the reliability of Aikat's "willful blindness" methodology and its application) are against Aikat's conclusions and not his methods. Plfs.' Opp. p. 9-10.  As shown above, however, the issue is not with his conclusion but rather with his methods and the unreliability of their application.  Specifically, his methods were incomprehensible and entailed a review of some unknown number of articles and references under unwritten standards without any purported error rate.  On top of that, when it

came to applying the standards, Aikat was willfully blind to many of Defendant's articles and references and to the fact that his websites permitted the posting of comments--driven largely by the time limit imposed by counsel.

Overall, the use of Aikat's "expert" testimony would only confuse the trier of fact given the undefined boundaries of and the flawed execution of his "willful blindness" test.  For the foregoing reasons and the reasons stated in Defendant's motion, Defendant requests this Court to exclude the proposed testimony of Plaintiffs' expert witness Debashis Aikat.

Dated: June 9, 2011

                /s/
Timothy E. Kapshandy (Illinois Bar No. 6180926, admitted *pro hac vice*)
Bradford A. Berenson (D.C. Bar No. 441981)
HL Rogers (D.C. Bar No. 974462)
Peter G. Jensen (D.C. Bar No. 982599)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C.  20005
(202) 736-8000
tkapshandy@sidley.com

Attorneys for Defendant
Seid Hassan Daioleslam

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TRITA PARSI** <br><br> **and** <br><br> **NATIONAL IRANIAN AMERICAN COUNCIL** <br><br> **Plaintiffs,** <br><br> v. <br><br> **DAIOLESLAM SEID HASSAN,** <br><br><br> **Defendant.** | Civil No. 08 CV 00705 (JDB) |

### CERTIFICATE OF SERVICE

I certify that on June 9, 2011, I served, via email, Defendant's Reply Memorandum in Support of the Motion to Exclude the Testimony of Debashis Aikat to:

>   Afshin Pishevar
>   Adrian Nelson
>   600 East Jefferson Street
>   Suite 316
>   Rockville, Maryland 20852
>   (301) 279-8773
>   ap@pishevarlegal.com
>   anelson@pishevarlegal.com

11

|  |  |
|---|---|
| Dated: June 9, 2011 | _____/s/_____<br>Timothy E. Kapshandy (Illinois Bar No. 6180926, admitted *pro hac vice*)<br>Bradford A. Berenson (D.C. Bar No. 441981)<br>HL Rogers (D.C. Bar No. 974462)<br>Peter G. Jensen (D.C. Bar No. 982599)<br>SIDLEY AUSTIN LLP<br>1501 K Street, N.W.<br>Washington, D.C.  20005<br>(202) 736-8000<br>tkapshandy@sidley.com<br><br>Attorneys for Defendant<br>Seid Hassan Daioleslam |