UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TRITA PARSI<br><br>And<br><br>NATIONAL IRANIAN AMERICAN COUNCIL,<br><br>    Plaintiffs,<br><br>vs.<br><br>DAIOLESLAM SEID HASSAN,<br><br>    Defendant. | CASE NO. 08 CV 00705 (JDB) |

## MOTION TO COMPEL PRODUCTION OF MEMBERSHIP LISTS

When discovery was initiated in this case, Defendant requested: "All documents relating to NIAC membership, including all communications with potential, former, or current members, and membership and email lists." (Defendant's Second Requests for Production, No. 3, March 3, 2009, attached as Ex. F to Defendant's February 14, 2011 Status Report, Docket No. 87). After all, Plaintiffs claimed in their Complaint that Defendant's articles had caused NIAC to be damaged in that such "have interfered or damaged the public support of NIAC by affecting NIAC's public estimation and reputation." (Complaint, Para. No. 42, Docket No. 1). As Defendant began writing about NIAC in early 2007, membership data before and after his articles would clearly show if NIAC had suffered any member losses as a result. Aside from absolute numbers, communications with members about reasons for resigning or not renewing would also directly reflect on whether Defendant's articles had caused any damages. Plaintiffs

also retained an economist, Joel Morse, to testify (based upon information NIAC furnished him) that NIAC's membership fell from 2,000 – 3,000 before the Defendant's articles to 1,200 current members. (*See*, Defendant's Motion to Exclude filed March 25, 2011, Docket No. 92; Parsi Dep., Vol. 3, pp. 18-24, attached as Ex. A). Clearly NIAC's real membership data is relevant and discoverable and necessary to enable Defendant to confirm whether these claims are true. In a recent June 24, 2011 interview, Parsi said that Defendant's defamatory statements "have failed and NIAC has continued to grow." ("A Candid Discussion with Trita Parsi on Iran After the Arab Spring," *Foreign Policy Blogs*, June 24, 2011, http://iran.foreignpolicyblogs.com/2011/06/24/a-candid-discussion-with-trita-parsi-on-iran-after-the-arab-spring/, attached as Ex. B).

In May 2009, NIAC produced limited membership lists dated prior to Defendant's articles but no current, complete membership lists. A December 2007 list of current and expired members was produced (Parsi Dep., Ex. Nos. 100 and 104, attached as Ex. C). A similar April 2008 list was produced. (Attached as Ex. D). The December 2007 member list contained 990 current and 828 expired members. The April 2008 list contained 1048 active and 948 expired members.[1] Therefore, unless NIAC had stopped maintaining lists of members in April 2008, Plaintiffs had not complied with the discovery request.

**Salesforce**

Calendar records produced April 21, 2010 (produced only after being ordered produced by the Court) reflected entry of member meeting notes into something called "SF." NIAC initially denied knowing what this was. (August 10, 2010 email, attached as Ex. F). At the September 16, 2010 status conference, NIAC admitted that it had used an online membership

---

[1] NIAC also produced on May 29, 2009 a list appearing to be from December 2004 based upon the expiration dates listed. (Attached as Ex. E). Strangely, this was produced in html format and was modified on May 22, 2009. This list contained 845 current members, 306 with no membership history, and 9 former members.

2

database called "Salesforce", but told the Court it had used it for "a very short period of time we did experiment with this for a time." (Sept. 16, 2010 Trans., p. 9, Docket No. 81). As for the "meeting notes" function of Salesforce, NIAC described its use of that as "sporadic." (Trans., pp. 9-10, Docket No. 81). At the December 17, 2010 status conference, NIAC again represented that the use of Salesforce "meeting notes" was for a very short period of time and specifically resulted in only 196 entries. (December 17, 2010 Trans., pp. 20-21, Docket No. 86).

NIAC also claimed that it no longer subscribed to Salesforce but had transferred the data to another database (later learned to be Convio). (September 16, 2010 Trans., pp. 9-10, Docket No. 81). NIAC promised to provide Defendant information to access the Salesforce data. (*Id.*) Defendant sent NIAC at least four requests for such (emails of Oct. 4, 18, 26 and Nov. 1, 2010, attached as Ex. G). NIAC maintained that the meeting notes had not been transferred from Salesforce to Convio and were no longer in Plaintiffs' possession. (Sept. 16, 2010 Trans., pp. 9-10, Docket No. 81).

At the December 17, 2010 status conference, Plaintiffs' counsel stated that NIAC had been able to download the entire Salesforce database the night before including meeting notes and would let Defendant know the status and form of production on February 1, 2011. (Trans., p. 21, Docket No. 86). On February 4, Plaintiffs emailed that they would produce the Salesforce membership database by February 8. (Ex. H). On the afternoon of February 11, Plaintiffs promised to provide the Salesforce membership database by the close of business. (Ex. I). On February 15, 2011, eleven days after the latest discovery cutoff, NIAC produced what it claimed was "the Salesforce membership information." (NIAC February 14, 2011 status memo, p. 9, Docket No. 88). This Excel file (dated Dec. 16, 2010) contained over 171,000 entries and spanned the years 2004-2010. (Parsi Dep. Ex. 116, 116B, attached as Ex. J). In reality, this was

3

not a membership list but rather was the list of "meeting notes." On March 2, 2011, NIAC's counsel acknowledged that NIAC had sent only the meeting notes on February 14 and produced five lists of "membership information." The files were labeled:

1. Opportunities (7,561 entries)
2. Accounts (4,333 entries)
3. Contacts (5,164 entries)
4. Leads (31,245 entries)
5. Campaigns (88 entries)

The metadata on these files show they were all created May 28, 2010. Whether NIAC had these files or its vendor, Salesforce, had these is not clear; what is clear is that NIAC made no effort to produce these notwithstanding numerous requests and two status conferences on the subject in 2010 until the night before the March 3, 2011 status conference.[2] At his May 11, 2011 deposition Parsi blamed Defendant for NIAC's withholding these Salesforce member lists:

> "Q: Okay. Then my question is, how is that for another four months they weren't produced to the defendant?
>
> A: They were produced. You have them in your possession.
>
> Q: My question was, how is that if you got them in December they weren't produced until April 21st?
>
> A: I said I believe it was in December.
>
> MR. PISHEVAR: Objection.
>
> BY MR. KAPSHANDY.
>
> Q: Well, we know –

---

[2] To compound the problem, many of the fields were coded and NIAC was thus ordered on March 29 to produce decoded versions of the Salesforce lists by April 6, 2011. On April 26, 2011 NIAC produced a decoded meeting notes list. It was not until June 1, 2011 that NIAC produced the codes for the 5 "membership" lists.

4

> A: The point – and the second point is that they were produced to you. Part of the difficulty we have had is that you have a tendency of changing your requests, being very vague about your requests. You are referring to a campaign Excel list as a membership database, which it is not. We've done our utmost to try to answer your questions, but the vagueness of your questions at times seem to be deliberate to create unnecessary misunderstandings.
>
> Q: So the reason that you got these in December but didn't produce to us until April --
>
> MR. PISHEVAR: Objection
>
> Q: -- is because we don't know how to ask a question?
>
> MR. PISHEVAR: Objection
>
> Don't answer that. You've already answered that. Asked and answered. Move on to the next question."

(Parsi Dep., Vol. 3, pp. 46-48, attached as Ex. A). Parsi does not and cannot explain why NIAC was producing the May 2010 Salesforce lists in April 2010 if it already had done so. The simple answer is – NIAC had not produced them and his testimony that it did is not true.

**Court's March 29, 2011 Order to Produce Complete Convio Membership List**

As the Salesforce lists were approximately a year obsolete, the Court specifically ordered NIAC to produce from the <u>current</u> Convio database: "NIAC's entire membership list . . . in a readable form by not later than April 6, 2011." On March 18, 2011, NIAC had produced a list of 9,000 "transactions" from Convio. (Parsi Dep. Ex. 117, attached as Ex. K). This was predominantly a list of donations over a six-year period. Many persons were listed five or more times and the list did not specifically list "expired members" or "former members" as had the May 28, 2010 Salesforce "Contacts" list. Accordingly, on June 6 and June 17, 2011 Defendant reiterated his request that NIAC comply with the March 29, 2011 order to produce its entire,

5

current membership list from Convio. (June 17, 2011 email attached as Ex. L). To date, this list of 9,000 "transactions" is the only data Plaintiffs have produced from Convio.

**<u>Parsi's Explanation</u>**

At Trita Parsi's second deposition (permitted by the Court's March 29, 2011 Order), Parsi testified that the Salesforce "Contacts" list was what NIAC considered as a "list of members" (Parsi Dep., Vol. 3, p. 94, attached as Ex. A). That May 2010 list, however, contained over 2,200 persons with "no membership history." (Parsi Dep. Ex. 111, 111A, attached as Ex. M). It also contained 1825 "expired members" and 118 "former members." In fact, it contained only 1,069 "active" members. (<u>Id.</u>)

As Parsi had indicated at his deposition that NIAC might have other lists of former members, besides these 118 "former members" on the May 2010 list of "Contacts", Defendant asked Plaintiffs to produce these former member lists or confirm that NIAC had no other lists. (June 6, 2011 email attached as Ex. L). NIAC responded:

> "Regarding "former members", the current 118 persons designated as "former members" on the information that NIAC most recently provided is based upon one classification, by NIAC, of what constitutes a "former member." However, not included in this classification are additional persons who paid dues to NIAC in the past but they are not current as it relates to their dues payments. As such, NIAC is certain that there are additional former dues paying members of NIAC who are not included in the 118 persons classified as "former members" on membership information previously provided."

(A. Nelson email of June 10, 2011, attached as Ex. L). In short, NIAC refuses to commit that the May 2010 list of 118 former members in its "contacts" list is the only such list of former members while at the same time refusing to produce any such current lists of former members. And, notwithstanding the Court's March 29, 2011 Order to produce NIAC's current <u>entire</u>

membership list, NIAC has not produced a current list of former members from Convio in spite of its admission that the May 2010 Salesforce list of "former members" is obsolete.

**List of Active Supporters**

At the same time in May 2010 when its Salesforce database showed 1069 current members (and about 2900 members if one includes the 1825 expired members), NIAC was telling donors such as the Parsa Foundation in June 2010 that it had 35,000 active supporters nationwide. (Parsi Dep., Vol. 3, pp. 63-68, attached as Ex. A; Parsi Dep. Ex. 105, attached as Ex. N). Six months later, on NIAC's website, NIAC was touting that it had 4,000 paid members and 43,000+ active supporters. (Parsi Dep. Ex. 101, attached as Ex. O). Parsi testified that these data were true and came from Convio. (Parsi Dep., Vol. 3, pp. 10-12, Ex. A). Defendant twice requested at the deposition (pp. 13, 67) that the list of 43,000+ active supporters be produced. Parsi maintained that, as the list of "active supporters" was a mailing list and not a list of members, it was not responsive to Defendant's request for "all documents relating to . . . potential, current, or former members." (Parsi Dep., Vol. 3, pp. 10-12, 67-68, Ex. A).

After the deposition, Defendant immediately reiterated his request for the current list of 43,000+ active supporters. (May 16, 2011 letter to A. Nelson, attached as Ex. P). NIAC responded on June 2 with a lengthy recitation about the May 2010 Salesforce database, but refusing to produce the list of 43,000+ active supporters from Convio. (June 2, 2011 A. Nelson letter, attached as Ex. Q).[3] Defendant's counsel called Plaintiffs' counsel on June 6 to discuss

---

[3] In NIAC's bizarre, nonresponse to the request for the list of 43,000+ list of active supporters that Parsi had clearly testified came from Convio, NIAC related that "although not required to do so pursuant to Judge Bates' Order, NIAC provided the Defendant with contacts/leads/campaign information [from Salesforce] that consisted of 31,000+ entries, not members as it existed in May 2010 at the time it was originally prepared which complied with Judge Bates' order." (Ex. Q, p. 2). There are numerous problems with NIAC's pronouncement: (1) How could this production be both "not required" and compliant with the Court's Order? (2) Trita Parsi explicitly testified that the "Contacts" list was the closest thing to a membership list and clearly required to be produced; (3) The list of 31,245 "leads" on the mailing list contains 11,180 duplicates as well as most of the 5,164 "Contacts"; so,

the issue but the call was terminated prematurely. On June 17, Defendant again requested NIAC's entire Convio database. (June 17, 2011 email attached as Ex. L).

**<u>Another Parsi Explanation</u>**

The disingenuousness of Plaintiffs' parsing became clear at Parsi's deposition when he was confronted with his 2005 resume where he claimed NIAC had 10,000 members. (Parsi Dep., Vol. 3, pp. 68-72, Ex. A; Dep. Ex. 106, attached as Ex. R). At that time, it turns out, he considered a mailing list as a "member" list. (<u>Id.</u>) In fact, he testified:

> A: This goes back to the issue that it was unclear exactly how to categorize and define "membership." Until this day, this is an open question. A lot of different organizations. For instance, I believe J Street follows a model in which they refer to their membership as their mailing list. There are other organizations that refer to it in different ways. But it is becoming increasing common that the number of people that you have on your mailing list occasionally are loosely referred to as supporters or members.
>
> Q: Okay. So when you referred to members here, that means a mailing list, but when defendant in his discovery requests asked for member lists, you exclude mailing lists.
>
> MR. PISHEVAR: Objection. Argumentative.
>
> BY MR. KAPSHANDY:
>
> Q: Is that correct?
>
> A: No, because you asked for paid membership.
>
> Q: Okay. So your understanding is that the defendant's requests for lists and membership lists is limited to paid members only and not former members or mailing lists? Just so we're clear.
>
> A: That was our understanding –
>
> Q: Okay. Thank you very much.

---

"contacts/leads/campaigns" really totals less than 16,000, not 31,000 or 35,000. Finally, NIAC's counsel then asserted that this May 2010 list was 12,000 short of the 43,000 Parsi testified came from Convio because it was a year old. However, NIAC never responded to the request and order to produce the <u>current</u> list from Convio.

(Parsi Dep., Vol. 3, pp. 71-72, Ex. A). As discussed above, Defendant's request was not so limited. This sort of over-narrow parsing when reading discovery requests or court orders (but not when touting on one's resume or website) is not consistent with the Federal Rules of Civil Procedure. More than two years after requesting documents relating to "potential, current, and former" members and an explicit March 29 order to produce its entire Convio membership database, the only "current" list from Convio, Plaintiffs have produced is a list of 9,000 "transactions" from 2004-2011.

**Missing Figures on Current Members**

Given NIAC's shifting definitions, the best, consistent measure of membership over time has been up-to-date, paid or active members. In summary, NIAC has produced to date the following lists of up-to-date, paid members:

| Date | Current/Active Members | Produced/Form |
|---|---|---|
| Dec. 2004 | 845 | May 2009/HTML |
| Dec. 2007 | 990 | May 2009/Excel |
| April 2008 | 1048 | May 2009/Excel |
| May 2010 | 1069 | March 2011/Excel (Salesforce "Contacts") |
| March 2011 | ? | March 2011/Excel (Convio Transactions) |

The Convio list of 9,000 "transactions" does not allow one to determine which of those are current members. Even if one manually eliminates all duplicates, all one can tell is that those persons gave money at some time in the past seven years. Certainly with all the time and effort NIAC has spent in inputting, maintaining, updating, and converting these membership data, it can print out from the entire Convio database lists reflecting current members, former members, expired members, and active supporters.

NIAC's reluctance to produce current Convio member data is understandable, albeit of its own doing. While the above lists show that NIAC's active member roles remained steady to slightly higher before and after Defendant's articles, they are not consistent with what Plaintiffs told their damages expert nor what they publically tell donors and Congressmen in grant applications and/or on NIAC's website. On top of inducing their damages expert to file a misleading report, Parsi's problem may be even worse if there is no such list, as he testified under oath (Ex. A, pp. 10-12) that NIAC does have a list of 43,000+ active supporters in Convio. Clearly, the list of 43000+ active supporters is relevant to damages and credibility and should not have been withheld. Likewise NIAC's March 2011 list of current and former members should have been produced from its Convio database.

WHEREFORE, Defendant respectfully requests an Order to compel NIAC to produce from its Convio database current lists of active paid members, former members, expired members, and active supporters, as well as an order assessing the costs of this motion and any other just and proper relief.

Dated: July 1, 2011

                                    /s/
Timothy E. Kapshandy (Illinois Bar No. 6180926, admitted *pro hac vice*)
Bradford A. Berenson (D.C. Bar No. 441981)
HL Rogers (D.C. Bar No. 974462)
Peter G. Jensen (D.C. Bar No. 982599)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000
hrogers@sidley.com

Attorneys for Defendant
Seid Hassan Daioleslam

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TRITA PARSI <br><br> and <br><br> NATIONAL IRANIAN AMERICAN COUNCIL <br> Plaintiffs, <br><br> v. <br><br> DAIOLESLAM SEID HASSAN, <br><br> Defendant. | Civil No. 08 CV 00705 (JDB) |

## ORDER

The Defendant having brought to the Court's attention in its July 1, 2011 Motion to Compel Production of Membership Lists and the Court being fully advised hereby ORDERS as follows:

Plaintiffs shall produce from their current Convio database complete lists of active/current members, expired members, former members and supporters reflecting all fields for each entry in a readable format. Plaintiffs shall pay to Defendant the costs of bringing this motion within 7 days of Defendant's submission of a bill of costs.

Dated: July 1, 2011

SO ORDERED.

/s/
JOHN D. BATES
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TRITA PARSI** ) | |
| ) | |
| and ) | |
| ) | |
| **NATIONAL IRANIAN AMERICAN COUNCIL** ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil No. 08 CV 00705 (JDB) |
| ) | |
| **DAIOLESLAM SEID HASSAN,** ) | |
| ) | |
| ) | |
| Defendant. ) | |

## CERTIFICATE OF SERVICE

I certify that on July 1, 2011, I served, via email, Motion to Compel Production of Membership Lists:

A.P. Pishevar (D.C. Bar No. 451015)
Adrian Nelson
Jefferson Plaza, Suite 316
600 East Jefferson Street
Rockville, Maryland 20850
(301) 279-8773
AP@pishevarlegal.com


Dated:   July 1, 2011                                          /s/
                                              Thomas E. Ross (D.C. Bar No. 994275)
                                              Bradford A. Berenson (D.C. Bar No. 441981)
                                              HL Rogers (D.C. Bar No. 974462)
                                              Peter G. Jensen (D.C. Bar No. 982599)
                                              SIDLEY AUSTIN LLP
                                              1501 K Street, N.W.
                                              Washington, D.C.  20005
                                              (202) 736-8000
                                              tom.ross@sidley.com

                                              Attorneys for Defendant
                                              Seid Hassan Daioleslam

## INDEX OF EXHIBITS TO MOTION TO COMPEL MEMBERSHIP LISTS

| EXHIBIT A | Deposition transcript of Trita Parsi, Vol. 3 (May 11, 2011) |
|---|---|
| EXHIBIT B | "A Candid Discussion with Trita Parsi on Iran After the Arab Spring," Foreign Policy Blogs (June 24, 2011). http://iran.foreignpolicyblogs.com/2011/06/24/a-candid-discussion-with-trita-parsi-on-iran-after-the-arab-spring/ |
| EXHIBIT C | December 2007 list of current members (Ex. 100) and expired members (Ex. 104) from the deposition of Trita Parsi, Vol. 3 (May 11, 2011) |
| EXHIBIT D | NIAC mailing list dated April 2008 |
| EXHIBIT E | [December 2004] NIAC membership list |
| EXHIBIT F | Email from NIAC denying knowledge of "SF" (August 10, 2010) |
| EXHIBIT G | Defendant's emails to NIAC requesting access to the Salesforce database (emails of October 4, 5, 18, 26 and Nov. 1, 2010) |
| EXHIBIT H | Email from Plaintiffs indicating they would produce the Salesforce membership database by February 8 (February 4, 2011) |
| EXHIBIT I | Email from Plaintiffs in which they promised to provide the Salesforce membership database by the close of business (February 11, 2011) |
| EXHIBIT J | Printout of Salesforce meeting notes (excerpt of Dep. Ex. 116) and CD of Salesforce meeting notes (Dep. Ex. 116 B) from the deposition of Trita Parsi, Vol. 3 (May 11, 2011)<br>- Dep. Exhibit 116B filed under seal with the Court |
| EXHIBIT K | Convio list produced 3/18/11 (Excerpt from Ex. 117, from the deposition of Trita Parsi, Vol. 3, May 11, 2011)<br>- Full copy of Dep. Exhibit 117 filed under seal with the Court |
| EXHIBIT L | Emails between Defendant and Plaintiffs regarding compliance with the March 29, 2011 order for NIAC to produce its entire current membership list from Convio (combined chain of emails from June 6, 10 and 17, 2011) |
| EXHIBIT M | Printout of Salesforce "Contacts" (Excerpt of Ex. 111A) and CD of Salesforce "Contacts" (Ex. 111 from the deposition of Trita Parsi, Vol. 3, May 11, 2011)<br>- Dep. Exhibit 111 filed under seal with the Court |

| EXHIBIT N | Parsa Foundation Grant Application (Ex. 105) from the deposition of Trita Parsi, Vol. 3 (May 11, 2011) |
|---|---|
| EXHIBIT O | December 6, 2010 "A Message from the President" (Ex. 101 from the deposition of Trita Parsi, Vol. 3, May 11, 2011) |
| EXHIBIT P | Letter from Defense counsel requesting current list of 43,000+ active supporters (May 16, 2011) |
| EXHIBIT Q | Letter from Plaintiffs' counsel regarding the list of 43,000+ active supporters from Convio (June 2, 2011) |
| EXHIBIT R | Trita Parsi 2005 resume (Ex. 106 from the deposition of Trita Parsi, Vol. 3, May 11, 2011) |