# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TRITA PARSI<br><br>and<br><br>NATIONAL IRANIAN AMERICAN COUNCIL<br><br>Plaintiffs,<br><br>v.<br><br>DAIOLESLAM SEID HASSAN<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>) Civil No.  08 CV 00705 (JDB)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MOTION FOR ORDER QUASHING SUBPOENA, OR IN THE ALTERNATIVE, FOR PROTECTIVE ORDER, MEMORANDUM OF POINT AND AUTHORITIES, EXHIBITS, DECLARATIONS OF KENNETH TIMMERMAN AND SCOTT F. CRAIG IN SUPPORT THEREOF; [PROPOSED] ORDER**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### STATEMENT OF FACTS

The present motion to quash subpoena, or in the alternative, for a protective order is submitted by non-party, Kenneth R. Timmerman ("Timmerman").  On May 13, 2011, after much pretense of actual service, plaintiffs "served" Timmerman with a notice and accompanying subpoena duces tecum, scheduling his deposition and requesting the production of numerous documents, for June 1, 2011, beyond the court ordered deadline for the completion of discovery. Timmerman was not provided witness fees or mileage expenses at the time of service.



RECEIVED
Mail Room

JUL - 6 2011

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

### a.   Plaintiffs' Errant Representations to the Court.

At hearing before this court on June 3, plaintiffs counsel, Adrian Nelson, represented, as follows:

> MR. NELSON: Okay. Well, let me be specific. With respect to depositions, I'll start there. I think that's the most easiest area to begin. We have an outstanding deposition, that being of Ken Timmerman. According to the order that was taken --
>
> THE COURT: Who's taking that deposition? Plaintiff or the Defendant?
>
> MR. NELSON: The Plaintiff. According to the order that was entered, it indicated that all depositions be completed by May 13th. As you are aware, we've been attempting to serve Mr. Timmerman, who was a third party, with a subpoena for quite some time. The last time we appeared here, I believe on March the 4th, we presented evidence of several attempts by our process server to serve him. We continued with those attempts after the status conference and we were successful in serving a subpoena on him on May the 13th, which was actually the very last day set by your order.
>
> THE COURT: And it was a subpoena for a deposition on what date?
>
> MR. NELSON: June the 1st.
>
> THE COURT: Well, that's two days ago.
>
> MR. NELSON: Yes. The deposition did not take place for several reasons. First, Mr. Timmerman has retained counsel who I believe is barred in the State of California and who either has or --
>
> THE COURT: Where does Mr. Timmerman live?
>
> MR. NELSON: He lives in Kensington, Maryland. His attorney either has or intends to file a motion for pro hac vice admission in this case, so I'm certain that even if he has done that, it hasn't been ruled upon.
>
> THE COURT: I haven't seen it.
>
> MR. NELSON: He also raised several objections to our notice of deposition, one being that, according to the order, depositions needed to be completed by May the 13th and therefore his client did not need to appear. He also challenged the fact that a witness fee check was not provided to his client, and therefore the subpoena was jurisdictionally deficient. Since then we have provided his client with a witness fee check, and so what remains outstanding is whether or not, in the Court's view, the fact that we were able to finally successfully serve him on May 13, would allow us to now take his deposition --

Contrary to Mr. Nelson's representations as above cited, the plaintiffs have *not* demonstrated reasonable diligence in their attempts to serve Mr. Timmerman. The Affidavit of Due Diligence ("Affidavit") filed with the court by plaintiffs on January 28, 2011, while confusing, does manage to demonstrate a blatant lack of due diligence in the service of process on Timmerman, where clarity is discernible.

According to the Affidavit, signed and filed by process server, Constantine McKoy, he attempted to serve Timmerman on the dates of January 12, 13, 14, 16 and 18, but was "unable to find the defendant (sic) at home." Mr. McKoy then states that he "ran a skip trace" and found a possible business address of 10400 Connecticut Avenue, Kensington, MD, but when he attempted service at this address, he was "unable to find a suite number" for Timmerman. The server then states that "on attempts at the home address" he was "either told that the defendant was not at home" or he "failed to get a response at the door."

"I was informed by his wife that the Connecticut Ave address was old and the defendant (sic) no longer had that address. I was unable to make contact with the defendant (sic)." According to the server, on at least one of the enumerated dates, he spoke with Timmerman's wife who told him that an old business address he had attempted service on, was no longer valid. Apparently, on another of these dates, a person who the server does not bother to name or identify in his affidavit, allegedly informed the server that Timmerman "was not at home." It is unclear whether the server is suggesting that the person who advised him that Timmerman was "not home" was the wife who also advised him of the deficient address, or yet another person.

Based on the server's declaration it is abundantly clear that if he spoke to Timmerman's wife, and was able to identify her as such, he located the correct address. Yet despite speaking with Timmerman's wife, the server did not state his purpose to her and did not leave a subpoena, deposition notice or any other paper work with her, and more importantly, never again attempted either to contact or serve Timmerman until May 12, 2011 - *four (4) months after* his alleged January attempts, and one (1) day before the expiration of the discovery *completion* deadline.

**b.    Plaintiffs' Knowledge of Timmerman's Whereabouts and Fabrications Concerning His Alleged "Evasion" of Service.**

Plaintiffs have insincerely represented that Mr. Timmerman was somehow dodging service of process in this case. However, as set forth in Timmerman's declaration, attached to this motion as Exhibit "I," they could have served him at any time by simply contacting him by phone, *which they ultimately did on May 12,* and agreeing to hand him the documents.

Plaintiffs' have conveniently neglected to advise the court in regard to the service issue, that Abraham Pishevar, the father of plaintiffs' present counsel, Afshin Pishevar, worked on the U.S. Senate campaign of Timmerman, has been to Timmerman's home on numerous occasions in conjunction with campaign conferences, and has taken photographs of Timmerman and the inside of Timmerman's home which, (Timmerman was subsequently informed) Pishevar provided to the Iranian government. Mr. Pishevar, Mr. Nelson and any process server employed by their office, could have contacted Mr. Timmerman with the greatest ease to effectuate service on him - and that is what eventually, though belatedly, they did.

On May 12, the process server, called Mr. Timmerman on his publicly listed phone number. During that conversation, which was *the first and only time Timmerman was ever directly contacted by plaintiffs in regard to this lawsuit*, Mr. Timmerman agreed to meet the process server at his home and accept the subpoena.

On May 13, the process server, despite misrepresenting himself (see Timmerman Declaration - Exhibit "I") met Timmerman at the latter's home and handed him a subpoena duces tecum and deposition notice, scheduling his deposition for June 1, 2011 - a date clearly beyond the court's ordered deposition completion deadline. Nor did the server tender witness fees or mileage to Timmerman.

On May 27, 2011, Timmerman's counsel *pro hac vice*, served objections to the subpoena duces tecum and deposition notice on the grounds that both were jurisdictionally defective, in that: Timmerman, was not provided witness fees or mileage expenses per FRCP, Rule 45(b)(1), the service of the subpoena on Timmerman was untimely and in violation of the court's discovery completion Order requiring the parties to complete the deposition of Timmerman and others by May 13, 2011 and, the SDT document request was overly broad and violative of Timmerman's privacy rights. A true and correct copy of the "Response to Plaintiffs' Subpoena and Notice of Deposition" served on plaintiffs' counsel by attorney Craig's office, is attached hereto as Exhibit "A." Also on May 27, attorney Scott F. Craig forwarded an email to Mr. Pishevar, to which his Response and objections were attached as files, and invited Pishevar to contact him to discuss the discovery dispute. A true and correct copy of the email correspondence to plaintiffs' counsel by attorney Craig's office, is attached hereto as Exhibit "B."

Attorney Nelson responded on June 1, acknowledging attorney Craig's correspondence and objections, and also that Timmerman would not appear for deposition "tomorrow" (June 1). A true and correct copy of Nelson's email correspondence is attached hereto as Exhibit "C." Attorney Craig responded via email the same date advising again that based on the plaintiffs' defective subpoena and deposition notice, Timmerman would not be appearing but they would be advised at the earliest date regarding his intentions, if he changed his position. A true and correct copy of Craig's responding email correspondence is attached hereto as Exhibit "D."

Evidently in response to counsel's objections, plaintiffs provided a witness fee check to Timmerman on *June 2* - a day after his deposition, per the notice and subpoena, was to have occurred. (Timmerman Declaration - Exhibit "E").

A subsequent request by attorney Craig to meet and confer by close of business on June 30, 2011 (Exhibit "F") was responded to by attorney Pishevar. On the same date, attorneys Pishevar and Nelson declared their intentions to depose Mr. Timmerman. (Exhibits "G" and "H").

Attorney Craig advised plaintiffs' counsel via email July 1 that his client was standing on his previously asserted objections - that he would not, in effect, cure the jurisdictional deficiency for the plaintiffs by presenting his client for deposition. (Exhibit "I," See also, Craig Declaration - Exhibit "J"). Mr. Pishevar's office advised on July 1 that he would be moving this court to compel Timmerman's deposition and the production of documents identified in the SDT (Exhibit "K").

-4-

Based on the plaintiffs' stated intent to proceed with Timmerman's deposition, the present motion to quash and/or for a protective order, has become necessary.

## II.

### PLAINTIFFS' FAILURE TO COMPLY WITH THE COURT'S DISCOVERY COMPLETION DEADLINE AS WELL AS THEIR FAILURE TO CONCURRENTLY TENDER WITNESS FEES WITH THE SUBPOENA, RENDERS PROCESS JURISDICTIONALLY DEFECTIVE

a.     **Failure to Tender Fees and Mileage Expenses.**

Rule 45(b)(1) of the *Fed. Rules of Civ. Proc*, provides in relevant part: "[s]erving a subpoena requires delivering a copy to the named person and, if the subpoena requires that person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by law." The tender of fees and mileage expenses is to be made "concurrently with the subpoena." *Tedder v. Odel*, 890 F.2d. 210 (C.A.9 1989);  see also *In re Stratosphere Corp. Securities Litigation*, 183 F.R.D. 684, 687. (D. Nev. 1999).

In *CF & I Steel Corp. v. Mitsui & Co.*, 713 F.2d. 494, 496 (C.A. 9 1983), the court, reviewing the language of Rule 45 regarding a subpoening party's obligation to make a concurrent tender of fees, explained as follows:

> "The district court construed the conjunctive of "and by tendering to him" as requiring the concurrent tender of witness fees and an estimated mileage allowance with service.  We agree.  Although the correct reading of this portion of Rule 45(b) is an issue of first impression for this court, it requires little comment.  The language is clear and the interpretation adopted by the district court is supported by widely accepted treatises on civil procedure.  [cites omitted].  *Therefore we hold the plain meaning of Rule 45 (b) requires simultaneous tendering of witness fees and the reasonably estimated mileage allowed by law with service of subpoena*."  (emphasis added).

While the plaintiffs, after receiving Timmerman's objections (served May 27) to their subpoena and evidently recognizing their failure to tender statutory fees, did attempt to subsequently remedy their deficiency by presenting a check to Mr. Timmerman, this occurred on June 2, one day after the date of the originally scheduled deposition of June 1.  Therefore, even assuming fees were belatedly provided, the delinquent and disjointed tender did not cure the defect in service as the date of deposition had already passed.  On June 2, plaintiff's did little more than provide a check to Mr. Timmerman for a scheduled deposition date that, in fact, did not then exist. Process in this instance is deficient in every respect.

No new date been scheduled by plaintiffs' counsel or discussed as requested by Timmerman's counsel.  The fact that plaintiffs belatedly tendered fees, raises the quandry necessitated by this motion and suggests that plaintiffs still intend to take Mr. Timmerman's deposition at some point in the future before trial.  In light of his pre-planned vacation plans, business plans and speaking tours, Mr. Timmerman would like to prevent plaintiffs from hanging

the prospect of future proceedings over his head, to avoid disruption of these obligations.

      **b.**    **Plaintiffs' Non-Compliance with the Court's Discovery Order**.

      On March 29, 2011, the court ordered the plaintiffs to " . . . complete the initial depositions of . . . Ken Timmerman . . . by not later than May 13, 2011, or they will be precluded from calling these witnesses at trial." (emphasis added). Service beyond the court's discovery completion deadline renders plaintiff's service of subpoena and deposition notice in this instance, jurisdictionally deficient.

      Because of this deficiency, plaintiffs' have, in actuality, failed to validly effectuate service of process on Mr. Timmerman. Plaintiff's ineffective service nevertheless poses a problem for Mr. Timmerman because it is anticipated that plaintiffs' may prospectively assert, as they previously have to the court and *now also to counsel,* that Mr. Timmerman was purposefully evading service. Therefore, Timmerman requests that the court quash the subpoena which was deficiently served on him, to end the potential of a legal dispute regarding service.

      Alternatively, in light of the lack of jurisdiction stemming from deficient service, Mr. Timmerman requests a protective order under FRCP, Rule 26 ©), that service was never properly completed on him and precluding plaintiffs from taking his deposition.

III.

### THE COURT SHOULD ENTER A PROTECTIVE ORDER PURSUANT TO FRCP, RULE 26, PROHIBITING PLAINTIFFS FROM DEPOSING OR COMPELLING DOCUMENTS FROM NON-PARTY TIMMERMAN

      The present motion has been necessitated by plaintiffs' counsel's misrepresentations to the court suggesting that Timmerman has evaded service in this matter, and, the plaintiffs' belatedly (June 2) tender of fees, indicates that plaintiffs intend to take Mr. Timmerman's deposition at some time in the future. Because, Mr. Timmerman has pre-planned and paid vacation plans and other commitments it is requested that the court preclude plaintiffs from taking his deposition and stringing him along further with apparently pointless attempts at service, for the reasons proffered.

      FRCP, Rule 26 c)(1) authorizes " . . . any person from whom discovery is sought" to seek a protective order after conferring in good faith to resolve the dispute without court action.

      In this instance, the court may forbid the discovery entirely [26(c)(1)(A)], forbid inquiry into certain matters or limit the scope of discovery to certain matters, [26(c)(1)(D)], or require that a trade secret or other confidential information not be revealed or be revealed only in a specified way [26(c)(1)(G)]. Timmerman requests the remedy under Rule 26(c)(1)(A) by forbidding plaintiffs from any discovery in regard to him. Such an order is appropriate based on the fact that plaintiffs have engaged in a blatant abuse of discovery, by violating the court's discovery compliance order and by suggesting to the court, in the absence of the non-party's presence, to misrepresent that Timmerman was responsible for the plaintiffs' delinquency in the timely service of process.

Sanctions imposed under Rule 26 were held not to be an abuse of discretion where an attorney obtained subpoena duces tecum in an untimely manner, or where his representation that he had previously requested certain documents was untrue. *Resolution Trust Corp. v. Dabney*, C.A.10 (Okla.) 1995, 73 F.3d. 262.

In *Otero v. Buslee*, C.A.10 (N.M.) 1982, 695 F.2d. 1244, the court gave the parties three months to complete all discovery in their action. One party unilaterally postponed depositions of key parties until two weeks before the expiration of such period without providing extenuating circumstances for the delay. The court held that the issuance of a protective order in such circumstances was proper. *Otero* is directly analogous to Timmerman's situation, except that the "extenuating circumstances" provided to the court by plaintiffs' counsel are deliberately misleading.

For the same reasons, the court's order, if granted, should preclude plaintiffs from seeking records or documents per their SDT, from Timmerman. A party has no duty to produce documents in response to an invalid subpoena and the attempt to enforce the subpoena was sanctionable under Rule 26. *In re Byrd, Inc.* C.A.10 (N.M.) 1991, 97 F.2d. 1135.

## IV.

## CONCLUSION

Non-party, Kenneth Timmerman, respectfully requests that the court quash service of plaintiffs' personal subpoena, subpoena duces tecum and notice of deposition, or in the alternative, issue a protective order precluding plaintiffs from pursuing any discovery in regard to Mr. Timmerman as herein requested.

DATED: July 5, 2011

By: _____

Scott F. Craig (CA Bar No. 129244,
admitted *pro hac vice*)
Scott F. Craig Law Office
9107 Wilshire Boulevard, Suite 450
Beverly Hills, California 90210
Tel: (310) 867-5980
email: scraiglaw@gmail.com
(Attorney for, Kenneth R. Timmerman)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| TRITA PARSI | ) |
| | ) |
| and | ) |
| | ) Civil No.  08 CV 00705 (JDB) |
| NATIONAL IRANIAN AMERICAN COUNCIL | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| DAIOLESLAM SEID HASSAN | ) |
| | ) |
| Defendant. | ) |
| | ) |

## CERTIFICATE OF SERVICE

I certify that today, July 5, 2011, I served, via email, NOTICE OF MOTION FOR ORDER QUASHING SUBPOENA, OR IN THE ALTERNATIVE, FOR PROTECTIVE ORDER, MEMORANDUM OF POINT AND AUTHORITIES, EXHIBITS, DECLARATIONS OF KENNETH TIMMERMAN AND SCOTT F. CRAIG IN SUPPORT THEREOF, on the following:

Afshin P. Pishevar
Adrian V. Nelson, II
Pishevar & Associates, P.C.
600 East Jefferson Street, Suite 316
Rockville, Maryland 20852
Tel: (301) 279-8773
email: ap@pishevarlegal.com
(Attorneys for Plaintiffs)

Timothy E. Kapshandy
Sidley Austin LLP
One South Dearborn
Chicago, Illinois 60603
Tel: (312) 853-7643
email: tkapshandy@sidley.com

HL Rogers
Peter G. Jensen
Thomas E. Ross
1501 K Street, NW
Washington, D.C. 20005
Tel: (202) 736-8000
email: hrogers@sidley.com
email: hrogers@sidley.com
email: tom.ross@sidley.com
(Attorneys for Defendants)

-1-

Pursuant to D.D.C. L.R. 5.2(a), I will retain the original in my possession.

Dated:  July 5, 2011

By: _____

Scott F. Craig (CA Bar No. 129244,
admitted *pro hac vice*)
Scott F. Craig Law Office
9107 Wilshire Boulevard, Suite 450
Beverly Hills, California 90210
Tel: (310) 867-5980
email: scraiglaw@gmail.com
(Attorney for, Kenneth R. Timmerman)

-2-