IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TRITA PARSI <br><br> and <br><br> NATIONAL IRANIAN AMERICAN COUNCIL, <br><br> Plaintiffs, <br><br> vs. <br><br> DAIOLESLAM SEID HASSAN, <br><br> Defendant. | CASE NO. 08 CV 00705 (JDB) |

**DEFENDANT'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS
CONCERNING THE LEGALITY OF PLAINTIFFS' LOBBYING ACTIVITIES**

Defendant Seid Hassan Daioleslam ("Daioleslam"), by and through undersigned counsel, hereby moves for an order from this Court pursuant to Federal Rule of Civil Procedure 37 compelling Plaintiffs to produce 1) documents containing legal advice stating that Plaintiffs were in compliance with lobbying laws, and 2) any and all information, whether favorable or unfavorable, relating to the legality of Plaintiffs' lobbying activities.

**INTRODUCTION**

Throughout the course of this litigation, Plaintiffs have made numerous statements implicitly and explicitly claiming that their lobbying activities were in compliance with the law. Plaintiffs allege that Defendant's statements "that Parsi is a member of a subversive and

illegal Iranian lobby" and "that NIAC is . . . engaging in illegal and subversive lobbying on behalf of [Iran]" are false, and thus are defamatory *per se*. (Complaint, Para. Nos. 13 and 34, Docket No. 1) (emphasis added). As Defendant's statements would not be defamatory if they were indeed true, the legality of Plaintiffs' lobbying activities is a material issue.[1] Yet Plaintiffs have withheld nearly all information supporting or refuting their claim of compliance, despite indicating on several occasions described below that they are in possession of such information.[2]

The deposition of NIAC's former Assistant Legislative and Policy Director, Patrick Disney, reveals that Plaintiffs relied on outside legal advice to support their assertion that their lobbying activities complied with the law. Disney testified that he conducted his own research on whether NIAC's lobbying activities required it to register under the Lobbying Disclosure Act (LDA), and NIAC consulted outside legal experts on the issue as well. (*See* Disney Dep. p. 72:2-19, Oct. 29, 2010, attached as Ex. B). However, the two apparently reached conflicting conclusions. Disney testified that his research led him to conclude that "our [NIAC's] activities exceeded the threshold beyond which we as individuals would have to register as lobbyist[s] under LDA." *Id.* at 163:20-23. An internal memo authored by Disney, titled "Lobbying Disclosure Act Guidelines" (Disney Dep., Ex. No. 14, attached as Ex. C), confirms his testimony. However, Disney later communicated to the reporter Eli Lake, under the guidance and advice of Trita Parsi and a PR firm, Brown Lloyd James, that

---

[1] Put another way, had NIAC registered under the LDA and FARA and paid taxes on lobbying activities, these statements would be neither false nor defamatory. Thus, by alleging defamation *per se*, NIAC has put compliance with such lobbying laws squarely in issue.

[2] At his deposition, Parsi even refused to answer a question concerning *whether* he had sought advice as to whether all of his meetings with Iranian governmental officials were legal under the Logan Act. (*See* Parsi Dep. pp. 162-67, May 11 2011, attached as Ex. A). Defendant made clear that he was not asking about the substance of that communication. By this motion, Defendant is requesting that Parsi be ordered to answer that question, and if the rest of the motion is granted, to answer the substance of that communication.

his previous opinion regarding NIAC's compliance with lobbying laws "was erroneous and has since been clarified by legal professionals who have found NIAC is in full compliance with the law." *Id.* at 238:21-24.

NIAC's public website confirms Disney's story regarding the organization's position on its compliance with lobbying laws. In the current "Myths vs. Facts" section on its website (attached as Ex. D), NIAC uses language nearly identical to its correspondence with Lake: it responds to the "myth" that "NIAC lobbies more than the legal limit allowed for nonprofit organizations under the law (20% of the organizational budget)," by stating "NIAC and its staff are in full compliance with all regulations and laws."

Despite numerous requests by Defendant, Plaintiffs have not provided any information verifying the existence or substance of legal advice stating that NIAC was in compliance with the law. At the March 4th, 2010 status hearing, Defendant's counsel recounted to the court the instances where Defendant requested this information: "…We've asked for [the information] repeatedly in general discovery, at [Disney's] deposition, after his deposition. This was promised to us on February 4. And then NIAC pulled that back – they also promised a privilege log…. We have received none of those, nor a privilege log." (*See* Tr. of Discovery Hearing, Mar. 4, 2011, p. 8, Docket No. 101). In response, Plaintiffs claimed that NIAC consulted outside legal advice only after the May 2009 cutoff date for discovery supplementation, and therefore they do not have to disclose this otherwise privileged material. (*See* Tr. of Discovery Hearing, Mar. 4, 2011, pp. 21-22, Docket No. 101). Plaintiffs subsequently did provide Defendant with a privilege log (attached as Ex. E). The log lists eight documents, many of which are from or copied to non-lawyers, including members of Raffa Consulting; one is from a law firm, Wiley Rein, LLP, and two more are members of

that firm. On June 8th and 17th, 2011, Defendant requested that Plaintiffs produce the documents listed in the privilege log and that they allow Parsi to answer the question of whether he sought advice from counsel regarding the legality of his lobbying activities (*See* emails attached as Ex. F). Plaintiffs refused both of these requests, and have not since provided any of the requested documents.

## ARGUMENT

### A. Plaintiffs have waived privilege for the contents of the legal advice it received and must disclose these documents to Defendant

Plaintiffs maintain that because NIAC consulted outside legal advice only after the cutoff date stipulated in the discovery supplementation agreement, the substance of that advice is protected by an ordinary application of the attorney-client privilege. Regardless of the date on which the advice was obtained, however, Plaintiffs' use of the advice to support a material element of their claim waives their claim of privilege.

Courts have consistently waived privilege where "the client places otherwise privileged matters in controversy" and then asserts privilege so as to withhold information relevant to that matter. *Minebea Co., Ltd. v. Papst*, 355 F. Supp. 2d 518, 522 (D.D.C. 2005) (quoting *Ideal Electronic Security Co. v. Int'l Fidelity Ins. Co.*, 129 F.3d 143, 151 (D.C. Cir. 1997)). Courts in the D.C. Circuit consider three factors in determining whether such "at issue" waiver has occurred:

> (1) [If] assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party;
>
> (2) [Whether] through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and

4

> (3) [Whether] application of the privilege would have denied
> the opposing party access to information vital to his defense.

*Wender v. U.S. Auto. Ass'n*, 434 A.2d 1372 (D.C. Cir. 1981) (quoting *Hearn v. Rhay*, 68 F.R.D. 574, 471 (E.D. Wash. 1975). If all of these factors exist, "a court should find that the party asserting a privilege has impliedly waived it through his own affirmative conduct." *Id.*

Plaintiffs in this case suggest that they have not impliedly waived privilege because they are not using the privileged information as an affirmative defense. (*See* Tr. of Discovery Hearing, Mar. 4, 2011, p. 18:11-16, Docket No. 101). However, the list of factors for determining at issue waiver takes into account only whether a party reveals the privileged information through *an* affirmative act; *which* affirmative act the party takes is not relevant, so long as the act results in denying the opposing party access to vital information. To illustrate, in *Minbea Co. Ltd. v. Papst*, 355 F. Supp. 2d 518 (D.D.C. 2005), the court rejected the argument that Plaintiff had avoided at issue waiver by not explicitly relying on advice of counsel to prove its "case-in-chief." *Id.* at 524. It found that by asserting reliance on its understanding of the representations of *defense's* counsel, Plaintiff had implicitly put the source of its understanding—the advice of its own counsel—at issue, and withholding information about Plaintiff's attorney-client communications would prevent the Defendant from effectively challenging the basis of Plaintiff's understanding. *Id.* The court therefore held that the Plaintiff had waived privilege as to the advice it received from its counsel, and ordered it to disclose those communications to Defendant. *Id.* at 525.

In the present case, Plaintiffs have put the advice they received about the legality of their lobbying activities at issue by 1) alleging in their complaint that Defendant's statements that the activities were illegal were false and defamatory *per se*, and 2) claiming that internal documents suggesting the activities were not in compliance with the law, such as Disney's

5

internal research, were countered by advice of "legal professionals." Withholding the contents of the legal advice would prevent Defendant from being able to effectively challenge the basis of Plaintiffs' claim that Defendant's statements were false (i.e., that their activities were compliant with all lobbying laws). Accordingly, under the "at issue" waiver doctrine, Plaintiffs have waived privilege as to this material and must disclose it to Defendant.

### B. The scope of the waiver extends to *all* material related to the legality of Plaintiffs' lobbying activities

Plaintiffs' waiver of privilege is not limited to the contents of the legal advice they received stating their compliance with lobbying laws; it also extends to any and all information they have concerning the legality of their lobbying activities. A broad waiver is needed to ensure that Plaintiffs do not selectively disclose only favorable information while asserting privilege over other relevant but unfavorable information.

Federal Rule of Evidence 502 provides a framework for determining the scope of a waiver of attorney-client privilege:

> (a) ...When [a] disclosure is made in a Federal proceeding or to a Federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a Federal or State proceeding only if:
>
> (1) the waiver is intentional;
>
> (2) the disclosed and undisclosed communications or information concern the same subject matter; and
>
> (3) they ought in fairness to be considered together.

A committee note clarifies that a "subject-matter waiver" will apply to undisclosed information if "fairness requires a further disclosure of related, protected information, in order

to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary." Fed. R. Evid. 502 advisory committee's note subdivision (a).

The D.C. Circuit has affirmed the principle articulated in the advisory committee's note several times. In *Ideal Electronic Security Co. v. Int'l Fidelity Ins. Co.*, 129 F.3d 143 (D.C. Cir. 1997), the Court of Appeals rejected the appellee's attempt to withhold or redact certain billing statements on the grounds of attorney-client privilege while disclosing other equally privileged statements. *See id.* at 151. It held that where a party "partially discloses the allegedly privileged information in support of its claim against another, but then asserts privilege as a basis for withholding from its opponent the remainder of the information which is necessary to defend against the claim," a court must waive privilege for the withheld information. *Id.* As the parties to *Ideal Electronic* had stipulated in an indemnification agreement that the appellant would pay only those attorneys' fees that were "reasonable," the court ordered the appellee to disclose *all* billing statements issued by its attorney so that the appellant could consider the reasonableness of the charges in their entirety. *See id.* at 152.

The D.D.C. has further clarified the scope of a waiver of attorney-client privilege in recent cases. In *U.S. Airline Pilots Ass'n v. Pension Benefit Guaranty Corp.*, 2011 U.S. Dist. LEXIS 41995, (D.D.C. 2011), the court held that the Defendant could not disclose a privileged report as evidence of compliance with its fiduciary duties but refuse to allow Plaintiffs to question the author of the report to challenge the sufficiency of her investigation. *See id.* at *11. It found that, in accordance with Rule 502(a), where a party uses privilege "to 'deny its adversary access to additional materials that could provide an important context for proper understanding" of the disclosed document, a court must waive privilege for material concerning the same subject matter as the disclosed document. *Id.* at *15 (quoting Charles A.

7

Wright et al., 8 Federal Practice & Procedure § 2016.2 (3d ed., 2010 update)). Another court explained that the scope of the subject matter waived is "broad," extending to "all documents that refer or relate to the subject matter" contained in the disclosed document, including materials generated after the creation of the disclosed document that "question or contradict in any way the competence or validity of the opinions rendered." *Intex Recreation Corp v. Metalast*, 2005 U.S. Dist. LEXIS 10149, *11, *13 (D.D.C. 2005). This rule ensures that a party will be barred from "claim[ing] reliance on advice of counsel as a defense, and hence a sword in litigation, while at the same time asserting attorney-client privilege or work product doctrine as a shield to protect against the opposing party testing the legitimacy of that claim." *Id.* at *10-*11.

Here, Plaintiffs' waiver of privilege for only the favorable advice they received mirrors the cases described above where a party discloses only that information which supports its claim or defense. At the very same time it was consulting the Wiley Rein firm in late 2009, NIAC amended its 2008 tax return from claiming that it engaged in no lobbying to reflect that it really spent 10% of its time on lobbying. (Original and amended 2008 returns attached as Ex. G). Accordingly, NIAC's own conduct provides a strong indication that its counsel did not advise that it was in "full compliance with all regulations and laws" as claimed on its website and by its PR consultants. Plaintiffs cannot satisfy their burden of proving that they are in full compliance by merely saying: "Trust us; this is what our legal advisors say." Rather, under Rule 502, D.C. Circuit, and D.D.C. precedent, they must produce *all* such advice, whether favorable or unfavorable, so Defendant can adequately defend against allegations of defamation.

## CONCLUSION

For the foregoing reasons, Defendant requests this Court to compel Plaintiffs to 1) produce documents containing legal advice stating that Plaintiffs were in compliance with lobbying laws, 2) produce any and all information, whether favorable or unfavorable, relating to the legality of Plaintiffs' lobbying activities, and 3) order Trita Parsi to answer at his deposition whether he ever sought advice as to whether his meetings with IRI officials was legal and the substance of that advice along with the costs of this motion an all other just and proper relief.

Respectfully submitted,

Dated:  July 8, 2011

_____/s/_____
Timothy E. Kapshandy (Illinois Bar No. 6180926, admitted *pro hac vice*)
Bradford A. Berenson (D.C. Bar No. 441981)
HL Rogers (D.C. Bar No. 974462)
Peter G. Jensen (D.C. Bar No. 982599)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C.  20005
(202) 736-8000
hrogers@sidley.com

Attorneys for Defendant
Seid Hassan Daioleslam

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TRITA PARSI<br><br>and<br><br>NATIONAL IRANIAN AMERICAN COUNCIL,<br><br>   Plaintiffs,<br><br>vs.<br><br>DAIOLESLAM SEID HASSAN,<br><br>   Defendant. | CASE NO. 08 CV 00705 (JDB) |

## **PROPOSED ORDER**

Upon consideration of Defendant Daioleslam's Motion to Compel, it is hereby:

ORDERED this ____ day of _____, 2011 that Defendant's motion to compel documents containing legal advice stating that Plaintiffs were in compliance with lobbying laws and any and all information, whether favorable or unfavorable, relating to the legality of Plaintiffs' lobbying activities is GRANTED, and Plaintiffs shall pay Defendant the costs of bringing this motion within seven days of Defendant's filing of a bill of costs;

SO ORDERED.

                     _____
                     Judge John D. Bates
                     United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TRITA PARSI<br><br>and<br><br>NATIONAL IRANIAN AMERICAN COUNCIL,<br><br>      Plaintiffs,<br><br>vs.<br><br>DAIOLESLAM SEID HASSAN,<br><br>      Defendant. | CASE NO. 08 CV 00705 (JDB) |

## CERTIFICATE OF SERVICE

I certify that on July 8, 2011, I served, via email, Defendant's Motion to Compel the Production of Documents Concerning the Legality of Plaintiffs' Lobbying Activities:

    Afshin Pishevar
    600 East Jefferson Street
    Suite 316
    Rockville, Maryland 20852
    (301) 279-8773
    ap@pishevarlegal.com

Dated: July 8, 2011

                                        /s/
                              Thomas E. Ross (D.C. Bar No. 994275)
                              Bradford A. Berenson (D.C. Bar No. 441981)
                              HL Rogers (D.C. Bar No. 974462)
                              Peter G. Jensen (D.C. Bar No. 982599)
                              SIDLEY AUSTIN LLP
                              1501 K Street, N.W.
                              Washington, D.C.  20005
                              (202) 736-8000
                              tom.ross@sidley.com

                              Attorneys for Defendant
                              Seid Hassan Daioleslam

# INDEX OF EXHIBITS TO DEFENDANT'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS CONCERNING THE LEGALITY OF PLAINTIFFS' LOBBYING ACTIVITIES

| | |
|---|---|
| EXHIBIT A | Excerpts from the Deposition of Trita Parsi, Vol. III (May 11, 2011) |
| EXHIBIT B | Excerpts from the Deposition of Patrick Disney (October 29, 2010) |
| EXHIBIT C | Disney memo on the Lobbying Disclosure Act Guidelines (Ex. 14) from the deposition of Patrick Disney (October 29, 2010) |
| EXHIBIT D | "Myths vs. Facts: Fighting the Smears," from the NIAC website, http://www.niacouncil.org/site/PageServer?pagename=About_myths_facts |
| EXHIBIT E | Plaintiffs' privilege log |
| EXHIBIT F | Emails between Defendant's counsel and Plaintiff's counsel regarding production of documents from the privilege log (June 8, 2011 and June 17, 2011) |
| EXHIBIT G | Original and amended 2008 tax returns for NIAC |