# EXHIBIT F

| | |
|---|---|
| From: | Kapshandy, Timothy E. |
| Sent: | Wednesday, June 08, 2011 12:06 PM |
| To: | 'Adrian Nelson' |
| Cc: | 'Afshin Pishevar'; 'Farrokh Mohammadi'; Jensen, Peter |
| Subject: | RE: Parsi/NIAC -- Today's Teleconference |
| | |
| Follow Up Flag: | Follow up |
| Flag Status: | Flagged |

Adrian, I tried calling back but was told you were not available.  Please let me know a good time to finish discussing the remaining issues in your June 2 letter.

As for the former member lists, we understand that the list of contacts contains the names of about 118 persons listed as former members.  As you know at list was prepared in May 2010. If you can confirm that NIAC has no other recent lists  (i.e., no such designation exists in the current Convio database) then that should resolve that issue.

As for the request that the legal invoices and payment records be covered by the confidentiality agreement, Defendant is in agreement.  Please produce all of those as soon as possible as those may be covered by our anticipated damages motion.

As for the claims of privilege, we would hope you would produce the eight documents on NIAC's privilege log and permit Parsi to answer the mere question if he ever sought advice (specifically excepting the CONTENT of that advice) on the legality of his meetings with foreign officials given the comments by Judge Bates at the last two conferences. If not, please let us know by Friday as we will have to start on a motion to compel on Monday, June 13.

I look forward to your call.

Thanks,
Tim


    -----Original Message-----
From: Kapshandy, Timothy E.
Sent: Monday, June 06, 2011 08:58 AM Central Standard Time
To:   Adrian Nelson
Cc:   Afshin Pishevar; Farrokh Mohammadi; Jensen, Peter
Subject:    RE: Parsi/NIAC -- Today's Teleconference

Adrian, I agree that it is unfortunate that you hung up while I was asking what became of the first server and whether NIAC intended to produce it.  I agree that you "never stated any facts" about the server.  That illustrates well the reason for the lack of discovery progress in this case.  If you cannot answer questions such as if NIAC even still has the server or whether it will produce it and, if not, why not (other than NIAC believes it has complied "with both the letter and spirit of the Court's May 29 Order") it becomes clear why discovery has taking so long in the case.   You appeared to be claiming that since the first server was no longer connected to the network that it was not subject to the Court's order which is why I was trying to clarify.  Therefore, so that there be no confusion, please feel free to put into writing NIAC's reasons for not producing the first server/shared drive in use in May 2009 and onto which all the discovery materials were placed by staff.

Finally, please call me to discuss the rest of the matters raised in your letter of June 2.

Thanks,
Tim


-----Original Message-----
From: Adrian Nelson [mailto:anelson@pishevarlegal.com]
Sent: Monday, June 06, 2011 8:26 AM
To: Kapshandy, Timothy E.; Jensen, Peter
Cc: Afshin Pishevar; Farrokh Mohammadi
Subject: Parsi/NIAC -- Today's Teleconference

Tim:

This is to confirm that I found it necessary to end today's
teleconference based upon your repeated refusal to stop
mischaracterizing my statements to you.
In the absence of another witness to our conversation, I was
uncomfortable with speaking with you further.  Accordingly, I
terminated the conversation.

To be clear, as it relates to the issue of NIAC's sharded drive that
was imaged by PwC, I never stated any facts relating to the current
disposition of the pre-December 2009 shared drive.  I will adress that
issue in writing.  Or, I will call and discuss that issue with you
when another member of our litigation team is available to be involved
in our telephone call.

As promised, I will provide NIAC's positions on our motion in limine,
any additional membership lists (including via Convio), and supporter
information by Friday at noon.

It is unfornuate that this case has once again degenerated to this
point.  But, it has.

-Adrian

**Kapshandy, Timothy E.**

| | |
|---|---|
| **From:** | Kapshandy, Timothy E. |
| **Sent:** | Friday, June 17, 2011 9:48 AM |
| **To:** | Adrian Nelson |
| **Cc:** | Afshin Pishevar; Farrokh Mohammadi; Jensen, Peter; Rogers, HL |
| **Subject:** | RE: Parsi/NIAC -- Monday's Teleconference -- Follow-Up |

Adrian:

Here is a response to your email of June 10 as well as a couple other issues:

1. List of Former Members:  Since you will not confirm that the May 2010 list which contains a list of 118 former members is the only list of former members and since the Court's March 29 order required NIAC to produce NIAC's entire list of members from its current Convio database, we request that NIAC immediately produce any other lists of former members.

2. Claim for Attorneys' Fees:  On June 8, Defendant accepted Plaintiffs' offer (made in writing on June 2 and repeated in Court on June 3) to subject the records to the confidentiality agreement.  You are now backpedaling and refusing to produce those until some time in the future when the Court determines that punitive damages might be permitted.  Discovery was cutoff months ago and there has never been any discussion by the parties or the Court that discovery or the trial would be bifurcated until your email of June 10.  Nor, is there a basis for such as the standard for such in public persons defamation cases for liability and damages is the same.  Moreover, as we move into mediation, Defendant is entitled to know the amount of attorneys fees claimed as damages and review the bases for such.  Please produce these immediately or Defendant will move to strike your claim for attorneys' fees.

3. Whether Parsi Sought Advice on the Logan Act:  Since you agree that the fact of the communication is not privileged, please permit Dr. Parsi to answer the question.  The record is clear that that substance of the advice was not being requested, just whether he had EVER sought advice on the subject (see pp. 165-166).

4. The Original Server:  In response to our questions as to whether the original server/shared-drive exists and why NIAC was not producing it, you have confirmed that it does exist but that it "may not be operational."  You do not state when it became nonoperational, in what respect it is not operational, or in fact whether it is truly not operational.  One would have hoped that if that was truly the case you would have at some time since the original July 1, 2010 order to produce the server have determined that and informed the Court and Defendant of such before 11 months were wasted in litigating production of the server for imaging.  Moreover, the Court's second order to produce the server of March 29 does not provide that it may be withheld if it "may not be operational."  Even if it is nonoperational, it should have been produced for Defendant's forensic experts to confirm its status and determine how and when it become nonoperational as such clearly implicates spoliation and other issues under the litigation hold.

5. Privilege Log:  You have not answered Defendant's request for the eight documents being withheld as privileged regarding advice about lobbying laws; accordingly, we understand you refuse to produce those and will move to compel production.

6. NIAC's Entire Convio Membership List:  As I stated to you on June 6, the Convio list NIAC produced on March 18 is a list of 9000 "transactions" (for the most parts dates of contributions over the last 6+ years).  Your June 2 letter confirms that this is a list of "transactions."  It is not a list of NIAC's entire list of members as required by the Court's March 29 order.  Many persons are on the list five or more times so it is impossible to determine how many members NIAC currently has.  I requested you to let us know by June 10 whether NIAC would produce a complete list of

members (current and expired) from Convio with each person listed only once. One has to believe that the Convio database permits NIAC to print such a list of members. As you have not responded to such, we will move to compel such.

7. Mediation: Please contact me to discuss coordination of dates that we might do mediation per the Court's recent order.

Thanks,
Tim

Tim Kapshandy
Sidley Austin, LLP
1 South Dearborn Street
Chicago, Illinois 60603
312-853-7643
cell: (219) 670-0698
tkapshan@sidley.com
http://www.sidley.com

-----Original Message-----
From: Adrian Nelson [mailto:anelson@pishevarlegal.com]
Sent: Friday, June 10, 2011 12:48 PM
To: Kapshandy, Timothy E.
Cc: Afshin Pishevar; Farrokh Mohammadi
Subject: Fwd: Parsi/NIAC -- Monday's Teleconference -- Follow-Up

Tim:

As requested, I am following up with you regarding a few remaining issues as outlined in my June 2 letter to you.

Regarding "former members", the current 118 persons designated as "former members" on the information that NIAC most recently provided is based upon one classification, by NIAC, of what constitutes a "former member." However, not included in this classification are additional persons who paid dues to NIAC in the past but they are not current as it relates to their dues payments. As such, NIAC is certain that there are additional former dues paying members of NIAC who are not included in the 118 persons classifed as "former members" on membership information previously provided.

Also, it appears that there was a misunderstanding about the existence of an "additional" membership list. It appears that no such list was provided to us by our client.

Regarding NIAC attorneys' fees records, it is NIAC's understanding that such records would only be relevant as to punitive damages. As such, NIAC would be looking to enter into the discussed Confidentiality Agreement with the defendant regarding the production of attorneys' fees records at the point in the case, if at all, when NIAC is permitted to prove its entitlement to punitive damages.

With respect to the privilege claims relating to any advice the defendant claims Dr. Parsi sought relating to the Logan Act, it is the plaintiffs' position that the fact of a meeting may not be privileged; however, the defendant is requesting privileged information, i.e. whether a

2

meeting took place regarding a particular subject matter.  So, for
this reason the plaintiffs cannot waive such a privilege.  If the
defendant can find a different way to seek non-privileged information
Plaintiffs will be happy to consider a new request for information.

Lastly, it is my understanding that the pre-December 2009 shared drive
used by NIAC still exists, but it may not be operational.

-Adrian

On 6/8/11, Kapshandy, Timothy E. <tkapshandy@sidley.com> wrote:
> Adrian, I tried calling back but was told you were not available.  Please
> let me know a good time to finish discussing the remaining issues in your
> June 2 letter.
>
> As for the former member lists, we understand that the list of contacts
> contains the names of about 118 persons listed as former members.  As you
> know at list was prepared in May 2010.  If you can confirm that NIAC has no
> other recent lists (i.e., no such designation exists in the current Convio
> database) then that should resolve that issue.
>
> As for the request that the legal invoices and payment records be covered by
> the confidentiality agreement, Defendant is in agreement.  Please produce
> all of those as soon as possible as those may be covered by our anticipated
> damages motion.
>
> As for the claims of privilege, we would hope you would produce the eight
> documents on NIAC's privilege log and permit Parsi to answer the mere
> question if he ever sought advice (specifically excepting the CONTENT of
> that advice) on the legality of his meetings with foreign officials given
> the comments by Judge Bates at the last two conferences. If not, please let
> us know by Friday as we will have to start on a motion to compel on Monday,
> June 13.
>
> I look forward to your call.
>
> Thanks,
> Tim
>
>
>
> -----Original Message-----
> From:      Kapshandy, Timothy E.
> Sent:      Monday, June 06, 2011 08:58 AM Central Standard Time
> To: Adrian Nelson
> Cc: Afshin Pishevar; Farrokh Mohammadi; Jensen, Peter
> Subject:   RE: Parsi/NIAC -- Today's Teleconference
>
> Adrian, I agree that it is unfortunate that you hung up while I was asking
> what became of the first server and whether NIAC intended to produce it.  I
> agree that you "never stated any facts" about the server.  That illustrates
> well the reason for the lack of discovery progress in this case.  If you
> cannot answer questions such as if NIAC even still has the server or whether
> it will produce it and, if not, why not (other than NIAC believes it has
> complied "with both the letter and spirit of the Court's May 29 Order") it
> becomes clear why discovery has taking so long in the case.   You appeared
> to be claiming that since the first server was no longer connected to the

3

> network that it was not subject to the Court's order which is why I was
> trying to clarify.  Therefore, so that there be no confusion, please feel
> free to put into writing NIAC's reasons for not producing the first
> server/shared drive in use in May 2009 and onto which all the discovery
> materials were placed by staff.
>
> Finally, please call me to discuss the rest of the matters raised in your
> letter of June 2.
>
> Thanks,
> Tim
>
>
>
> -----Original Message-----
> From: Adrian Nelson [mailto:anelson@pishevarlegal.com]
> Sent: Monday, June 06, 2011 8:26 AM
> To: Kapshandy, Timothy E.; Jensen, Peter
> Cc: Afshin Pishevar; Farrokh Mohammadi
> Subject: Parsi/NIAC -- Today's Teleconference
>
> Tim:
>
> This is to confirm that I found it necessary to end today's
> teleconference based upon your repeated refusal to stop
> mischaracterizing my statements to you.
> In the absence of another witness to our conversation, I was
> uncomfortable with speaking with you further.  Accordingly, I
> terminated the conversation.
>
> To be clear, as it relates to the issue of NIAC's sharded drive that
> was imaged by PwC, I never stated any facts relating to the current
> disposition of the pre-December 2009 shared drive.  I will adress that
> issue in writing.  Or, I will call and discuss that issue with you
> when another member of our litigation team is available to be involved
> in our telephone call.
>
> As promised, I will provide NIAC's positions on our motion in limine,
> any additional membership lists (including via Convio), and supporter
> information by Friday at noon.
>
> It is unfornuate that this case has once again degenerated to this
> point.  But, it has.
>
> -Adrian
>
>
> ----------------------------------------------------------------------------------
> ----------
> IRS Circular 230 Disclosure: To comply with certain U.S. Treasury
> regulations, we inform you
> that, unless expressly stated otherwise, any U.S. federal tax advice
> contained in this
> communication, including attachments, was not intended or written to be
> used, and cannot be
> used, by any taxpayer for the purpose of avoiding any penalties that may be
> imposed on such

4