IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TRITA PARSI** ) | |
| ) | |
| and ) | |
| ) | |
| **NATIONAL IRANIAN AMERICAN COUNCIL** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil No. 08 CV 00705 |
| ) | |
| **DAIOLESLAM SEID HASSAN,** ) | |
| ) | |
| ) | |
| Defendant ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF
<u>PLAINTIFFS' MOTION TO COMPEL DEPOSITION OF KENNETH TIMMERMAN</u>**

COME NOW Plaintiffs, Dr. Trita Parsi and the National Iranian American Council ("NIAC") (collectively "NIAC"), by and through their counsel, Afshin Pishevar, Esquire, Adrian V. Nelson, II, Esquire, and Pishevar & Associates, P.C., pursuant to Fed. R. Civ. P., Rules 26, 30 and 37, and hereby moves that the Court compel the deposition of Kenneth Timmerman, and states as follows:

**I.     INTRODUCTION**

It has been said, "Where there is smoke, there is fire." As is set forth below, there is certainly smoke relating to what appears to be a concerted effort by the defendant and Kenneth Timmerman to assist Mr. Timmerman in avoiding being deposed in this matter.

In this instance, the first whiff of smoke that the Court should take notice of is that although the defendant's lead counsel indicated at the parties' last status conference that "the defendant has no dog in this fight," referring to whether Mr. Timmerman is ultimately deposed by Plaintiffs, counsel for the defendant is serving as the sponsor for the *pro hac vice* admission of Mr. Timmerman's west coast lawyer who is fighting to protect Mr. Timmerman from being deposed herein, including having recently filed a Motion to Quash Subpoena, or in the Alternative, for Protective Order.[1]

The evidence of fire is even more clear by the defendant's admission that he discussed with at least one other entity, the Progressive American Iranian Committee ("PAIC"), how to respond to NIAC's discovery efforts. Specifically, NIAC attempted to serve a subpoena *duces tecum* upon PIAC, an organization with which the defendant has been affiliated with since its inception in 2008. (*See* Attached Exhibit "A", December 14, 2010, Deposition of Daioleslam Seid Hassan, p. 102:12-22). The defendant admits that PAIC's president, Dr. Siavash Abghari, consulted Defendant because he "wanted to know what kind of strategy to get" in response to the attempts of NIAC to serve a subpoena upon NIAC. (Hassan Dep., p. 105:12-20.) Although the defendant claims that he told Dr. Abghari that PAIC had "nothing to hide" and they should "just be truthful," relevant herein is that the defendant advised PAIC to "use all legal . . . everything that the law [permits]," NIAC contends to avoid cooperating with NIAC's discovery efforts. (Hassan Dep., p. 105:16-23) Not surprisingly, PAIC followed the advice of the defendant to use all legal means to avoid having to produce the documents requested by NIAC and took the following position:

---

[1]Under the Local Rules of the U.S. District Court for the District of Columbia, the mere fact that the defendant's attorneys are serving as the *pro hac vice* sponsors of Mr. Timmerman's counsel also indicates that they are adopting the legal positions and tactics asserted by the defendant and his counsel. *See* LCvR 83.2(c).

Progressive American Iranian Committee (PAIC) received your subpoena in the above referenced matter.[2] PAIC will not respond to this subpoena for the following reasons:

1. PAIC is not located in the jurisdiction of the United States District Court/District of Columbia and is about 500 miles away from that jurisdiction.

2. It is unduly burdensome.

3. Documents requested are not relevant to the above case.

(*See* Attached Exhibit "C," July 29, 2010, Letter from PAIC President Siavash Abghari.)

The "smoke" in this case as a result of the actions of the defendant would indicate that there is a "fire" as it relates to the concerted efforts of the defendant and Kenneth Timmerman to avoid being deposed in this case.

## II.   BACKGROUND

Kenneth Timmerman is a neo-conservative author and columnist who writes a weekly column for Frontpage magazine. It is NIAC's contention herein that it has been the target of several erroneous, maliciously defamatory opinion pieces by the Defendant, which have been echoed by Timmerman in Frontpage magazine. The articles, NIAC contends, are riddled with inaccuracies, misquotations, incorrect links and references to figures that played no role in NIAC's inception, operations, or its development over the years.

Specifically in an April 23, 2007, article in Frontpage magazine, Timmerman accused Dr. Parsi of violating federal law by acting as an intermediary between Iran and the United States during a 2003 Iranian proposal to the United States for negotiation. Timmerman claims in that

---

[2]It should be noted that PAIC refused to provide the subpoenaed documents notwithstanding the good-faith additional time that NIAC gave to PAIC to obtain a lawyer for the purpose of responding to, not objecting to, the subpoena issued by NIAC. (*See* Attached Exhibit "B," June 16, 2010, Letter from Adrian V. Nelson, II, Esquire to PAIC.)

article that Dr. Parsi, during the time he was an advisor to former U.S. Congressman Robert Ney, was aware of the Congressman's role in passing the 2003 proposal from a Swiss diplomat to Karl Rove and the Bush administration.

Further, Timmerman casts a shadow of suspicion relating to NIAC's sources of funding, notwithstanding the fact that NIAC's financial records, as a 501(c) (3) non-profit, are available to the public.  Further, Timmerman's innuendo regarding NIAC's sources of funding is notwithstanding the fact that its funding comes primarily from Iranian American donors and respected foundations such as the Ploughshares Fund, Tides Foundation, the Open Society Instituted and the National Endowment for Democracy, as well as the fact that NIAC does not accept any funding from any government agencies, including those in the U.S. or Iran.

Additionally, Timmerman has equated NIAC's position in opposition to a U.S.-Iran war as support for the Iranian government.  Timmerman has gone so far as to equate the position of NIAC, which are consistent with the Iraq Study Group's recommendations, in opposition to such a war, and in favor of diplomacy, as constituting "lobbying for the Iranian government."

The defendant has echoed and/or telegraphed the defamatory writings of Timmerman.  In fact, it is undisputed that even as it relates to this litigation that the defendant has continued his pattern and practice of sharing information with Timmerman, NIAC believes for the purpose of defaming NIAC.  During his deposition, the defendant admitted that he provided discovery documents in this litigation to Timmerman. (Hassan dep., pp. 132:23-133:9)

Accordingly, Timmerman's testimony is vital in this case.

### III. PROCEDURAL HISTORY/FACTS

On May 13, 2011, NIAC was finally successful in serving a subpoena *duces tecum* upon Timmerman at his home in Kensington, Maryland.  (*See* Attached Exhibit "D," May 14, 2011,

Affidavit of Service of Lynn Hill.)  Oddly, according to the process server at the time of service Mr. Timmerman was "angry" and pulled out a tape recorder to record the conversation that took place at the front door of his home relating to service of the subpoena.

By letter dated May 27, 2011, Scott F. Craig, Esquire, both advised NIAC's counsel that in his estimation "There are several legal deficiencies relating to the documents served on Mr. Timmerman . . ." and filed a Response to Notice of Taking Deposition of Kenneth Timmerman. (*See* Attached Exhibit "E," May 27, 2011, Letter from Scott F. Craig, Esquire and Response to Notice of Taking Deposition of Kenneth Timmerman.)  One of Timmerman's complaints was that the mandatory witness fees and mileage expenses were not provided to him at the time the subpoena was served.  That inadvertent oversight was corrected on June 2, 2011, when a witness fee check was tendered on Mr. Timmerman.  (*See* Attached Exhibit "F," June 2, 2011, Affidavit of Service of Michael A. Mills.)  Timmerman also advised that he wasn't available on June 1, 2011, the date set forth in the subpoena for his deposition.  Further, Timmerman took the position that the "categories of documents sought are grossly overbroad in scope and implicate a host of privacy issues relating to Mr. Timmerman, Daioleslam and potentially others."

Timmerman just recently filed a Motion for Order Quashing Subpoena, or in the Alternative, for Protective Order.

### IV. AUTHORITY AND ARGUMENT

This Court clearly has the authority to compel Timmerman to appear for the deposition he is clearly attempting to avoid, as well as to provide the documents subpoenaed by NIAC. Fed. R. Civ. P., Rule 26(b) provides:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant

information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

Consistent with Rule 26(b), Fed. R. Civ. P., Rule 30(a) provides: "A party may, by oral questions, depose any person, including a party, without leave of court except provided in Rule 30(a)(2)."

As is set forth above, Timmerman's writings, which NIAC contends contain deliberately false information nearly identical to that of the deliberately false information contained in the defendant's writings make Timmerman a witness with information that is reasonably calculated to lead to the discovery of admissible evidence.  For this reason alone, Timmerman should be compelled to appear for deposition.[3]

Moreover, in additional to the potentially relevant information Timmerman is trying to avoid providing, Timmerman should be compelled to appear for deposition based upon clear circumstantial evidence that the defendant's counsel is supporting Timmerman's efforts to avoid appearing for a deposition and that the defendant, himself, has advised other parties with information relevant to the issues herein on how to use the law to avoid providing such information.  Such conduct should not be endorsed by the Court.

## V.  CONCLUSION

Accordingly, for each of the reasons set forth above, Plaintiffs' Motion to Compel should be granted and Kenneth Timmerman should be compelled to appear for deposition on a date mutually agreeable to Timmerman and the parties herein.

---

[3] Plaintiffs separately will address the claims about purported lack of diligence in seeking to serve Mr. Timmerman, which are set forth in Timmerman's Motion to Quash, or in the Alternative, for Protective Order, so as to keep distinct the two different issues and/or legal standards herein, including whether Timmerman should be compelled to appear versus whether the subpoena served by NIAC should be quashed or narrowed in its scope as it relates to requested documents.

- 7 -

                                             Respectfully submitted,

                                       _____/S/_____  
                                       A.P. Pishevar (D.C. Bar No. 451015)  
                                       Adrian V. Nelson, II (*Pro Hac Vice*)  
                                       **PISHEVAR & ASSOCIATES, P.C.**  
                                       600 East Jefferson Street, Suite 316  
                                       Rockville, MD 20852  
                                       Phone: (301) 279 – 8773  
                                       Fax:    (301) 279 – 7347  
                                       Counsel for the Plaintiffs