IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| TRITA PARSI <br><br> and <br><br> NATIONAL IRANIAN AMERICAN COUNCIL <br><br> Plaintiffs, <br><br> v. <br><br> DAIOLESLAM SEID HASSAN <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil No. 08 CV 00705 (JDB) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**OPPOSITION OF NON-PARTY KENNETH R. TIMMERMAN TO PLAINTIFFS'
MOTION TO COMPEL HIS DEPOSITION**

**I.**

**STATEMENT OF FACTS**

Other than fabricating a fanciful conspiracy between counsel to insulate Kenneth Timmerman ("Timmerman") from deposition and enumerating Timmerman's political and journalistic biases, nowhere is there to be found in plaintiffs' motion to compel, *any* explanation or justification for their blatant failure to comply with Rule 45 or the court's discovery completion deadline. If there is any person in this particular round of discovery which does not "have a dog in the fight" it is Timmerman, who is not a party to the action and therefore has no personal or financial stake in the case.

Turning plaintiffs' aphorism on its head, they have generated much distracting smoke, but little substantive heat, regarding Timmerman's suspected "involvement in" issues of relevance to this case. At pages 3 and 4 of their moving papers, plaintiffs level numerous accusations claiming, in essence, that Timmerman is a co-conspirator with Daioleslam concerning information he

published about NIAC.  For example:

> "NIAC . . . has been the target of several *erroneous, maliciously defamatory pieces* by the defendant, *which have been echoed by Timmerman in Frontpage magazine*."

> "[t]he articles, are riddled with inaccuracies, misquotations, incorrect links and references to figures that played no role in NIAC's inception, operations, or its development over the years."

> "*Timmerman has equated NIAC's position in opposition to a U.S.-Iran war as support for the Iranian government*."

> ". . . *the defendant has continued his pattern and practice of sharing information with Timmerman*, NIAC believes for the purpose of defaming NIAC."

On the basis of these allegations one can only surmise why the plaintiffs did not name Timmerman as a party defendant under a civil conspiracy theory, and further, why given Timmerman's purported vanguard role in defaming NIAC, plaintiffs were so flagrantly dilatory in conducting any discovery toward him until *after* the discovery deadline had passed.

Nowhere in their moving papers, do plaintiffs offer an explanation as to why they waited until January 2011 to serve Timmerman with subpoena when this case has been pending since 2009.  Nor do they bother to explain why, after January, they waited *until May 12 - an additional four (4) months* - to attempt service on Timmerman, given his alleged axiomatic role in the libelous conduct underlying plaintiffs' core allegations.  Instead, plaintiffs proclaim that Timmerman was "evading" process while his attorney, as well as the defendant's counsel, were running a wedge formation to "prevent him from being deposed."

Most importantly, plaintiffs have skirted the fact that plaintiffs' counsel's own father, Abraham Pishevar, was an election campaign worker for Timmerman who had been to his house numerous times (and therefore knew his address) and also knew his telephone number.  It was on the same public telephone number that the process server on May 12 reached Timmerman and at the same address that he met Timmerman the following day to hand him papers.

When plaintiffs' process server finally telephoned him, Timmerman did not make any attempt to evade service.  On the contrary, he made arrangements to meet the server at his (Timmerman's) residence and accept the documents - the same address he lived at when he ran for U.S. Senate, the same address visited by plaintiffs' counsel's father on numerous occasions and the same address he has lived at before the present suit was filed until the present date.

Plaintiffs blow more diversionary smoke by attaching a declaration from their latest process server whose role was merely to deliver a belated witness fee check to Timmerman.  That server says that Timmerman was angry and photographed the server (because as Timmerman states in his declaration, the server misrepresented his purpose on the phone).  This declaration confesses nothing more than that plaintiffs acknowledge making a disjointed and untimely service of process in violation of Rule 45 and the court's order.

Thus what plaintiffs presented in disjointed fashion to Timmerman was the following: (May 13) a deposition notice scheduling his deposition for June 1, but with no witness fee or mileage expense check, and on (June 2) a check for witness fees and mileage but with no subpoena or notice for a subsequent deposition date attached - in a word - blatantly defective service of process which provides no basis for court jurisdiction over Timmerman in this matter.

Plaintiffs have played fast and loose with the court's discovery order and, instead of explaining their delinquency in serving Timmerman, have instead attempted to lay blame on him by ascribing to him a fictionally nefarious role in the case or by suggesting that he has deliberately attempted to evade process.  These false allegations are an undisguised effort to shift the focus from plaintiffs' counsel's own case mismanagement onto a non-party, who until very recently had no association with this case.

For this reason, Timmerman reiterates his request for an order quashing plaintiffs' subpoena, or in the alternative, for a protective order issued pursuant to Rule 26 c) precluding plaintiffs from proceeding with any pre-trial discovery in regard to Mr. Timmerman.

DATED:  July 8, 2011

By: _____
Scott F. Craig (CA Bar No. 129244,
admitted *pro hac vice*)
Scott F. Craig Law Office
9107 Wilshire Boulevard, Suite 450
Beverly Hills, California 90210
Tel: (310) 867-5980
email: scraiglaw@gmail.com
(Attorney for, Kenneth R. Timmerman)