IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TRITA PARSI )
)
and )
)
NATIONAL IRANIAN AMERICAN COUNCIL )
)
         Plaintiffs, )
)
    v. ) Civil No. 08 CV 00705
)
DAIOLESLAM SEID HASSAN, )
)
         Defendant )

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS
CONCERNING THE LEGALITY OF PLAINTIFF'S LOBBYING ACTIVITIES

COME NOW Plaintiffs, Dr. Trita Parsi and the National Iranian American Council ("NIAC") (collectively "NIAC"), by and through their counsel, Afshin Pishevar, Esquire, Adrian V. Nelson, II, Esquire, and Pishevar & Associates, P.C., in opposition to Defendant's Motion to Compel Production of Documents Concerning the Legality of Plaintiff's Lobbying Activities, and states as follows:

## I. BACKGROUND

On April 25, 2008, the National Iranian American Council (hereinafter "NIAC") and its president, Dr. Trita Parsi (hereinafter "Dr. Parsi") (hereinafter collectively "Plaintiffs" or "the plaintiffs"), filed a three (3) count Complaint against Seid Hassan Daioleslam. In Count I of the Complaint, Dr. Parsi alleges that he has been defamed by the defendant's written and oral

statements which were published via the internet, radio broadcasts, television broadcasts, and Voice of America broadcasts, as well as at events held open to the public. (*See* Complaint, ¶¶ 13-16.) Dr. Parsi alleges that the defamatory statements include, but are not limited to, the defendant's claim that Dr. Parsi is a member of a subversive and illegal Iranian lobby that engages in such activities with the sanction, direction, and blessing of the Islamic Republic of Iran. (*See* Complaint, ¶¶ 13-16., Docket entry no. 1) Dr. Parsi claims that the defendant's defamatory statements were made knowingly and with reckless disregard for the truth, or in the alternative said statements were negligently made. (*See* Complaint, ¶¶ 13-16.) In Count II of the Complaint, Dr. Parsi further alleges that the defendant publicized facts about Dr. Parsi that placed him a false light, including, but not limited to, that he has been involved in subversive lobbying activities in collusion with the Islamic Republic of Iran. (*See* Complaint, ¶¶ 26-29.) Lastly, in Count III of the Complaint, NIAC alleges that the defendant made false and defamatory statements about the organization including, but not limited to, the defendant's claim that NIAC is an extension of the Islamic Republic of Iran and engages in illegal and subversive lobbying on behalf of a foreign republic. (*See* Complaint, ¶¶ 35-39.) NIAC alleges that these defamatory statements were made by the defendant via written and oral statements which were published via the internet, radio broadcasts, television broadcasts, and Voice of America broadcasts, as well as at events held open to the public. (*See* Complaint, ¶¶ 36-39.)

## II. PROCEDURAL HISTORY/FACTS

During the discovery phase of this litigation Defendant has focused considerable time and effort in seeking information regarding purported lobbying activities of the Plaintiff, which activities, if any, are unrelated to the allegations stated in the Complaint. Defendant's discovery focus is unrelated to the allegations in the Complaint and have been undertaken to simply harass,

embarrass NIAC, increase litigation costs as well as delay this litigation. Further, Defendant's focus upon NIAC's purported lobbying activity would confuse the jury since it does not bear upon the allegations in the Complaint.

Defendant's motion to compel documents relating to NIAC's lobbying activities is consistent with the defendant's expressed indication that it may seek to introduce evidence during trial that does not relate to the truth the defendant's statements that Dr. Parsi and NIAC were lobbyists on behalf of the Islamic Republic of Iran. NIAC is and was, at all relevant times herein, a 501(c)(3) educational organization with a 501h election. As such, because NIAC may conduct lobbying activities according to relevant IRS regulations and applicable federal laws, references to general lobbying activities unrelated to lobbying on behalf of the Islamic Republic of Iran have no relevance to this litigation.

Defendant has conducted extensive discovery concerning Plaintiffs lobbying activities in general. Discovery was requested for timeframes and materials (specifically emails, mailing lists, and calendars) unrelated to this matter with the specific intent to extensively delay these proceedings. That the defendant has engaged in discovery efforts relating to NIAC's general lobbying activities is clear based upon the arguments set forth in and the exhibits appended to Defendant's present motion to compel. Defendant's fishing expedition took place during the depositions of Dr. Parsi and Patrick Disney, NIAC's former Assistant Legislative and Policy Director, as well as others, as is evidenced in the portions of their respective deposition transcripts cited by the defendant.

Three (3) discovery transcripts confirm the extent to which the defendant has been focused upon its "fishing expedition" relating to NIAC's alleged general lobbying activity, including, but not limited to:

- During the deposition of Dr. Trita Parsi, NIAC's President, the defendant exhaustively focused upon the terms and subjects of "lobby" activity, "lobbying", and "lobbyist" approximately 200 times on day two of Dr. Parsi's deposition without any significant tie to activity on behalf of the Iranian Republic. (*See* Attached Exhibit "A", Deposition of Dr. Trita Parsi dated December 2, 2010, Volume, II, Index, p. 350.)

- Likewise during the deposition of Mr. Patrick Disney, NIAC's former Legislative Director, the defendant similarly focused upon "lobby," "lobbying", and "lobbyist" approximately 200 times. (*See* Attached Exhibit "B", Deposition of Patrick Disney dated October 29, 2010, Index, p. 267.) Again, there was no nexus with the notion of lobbying on behalf of the Iranian Republic;

- Further, the exchange regarding NIAC's purported lobbying activity that took place between Timothy Kapshandy, Esquire, counsel for the defendant, and David Wilson, Esquire, the personal attorney retained by Emily Blout, NIAC's former Legislative Director, encapsulates the need for relief sought in Plaintiff's Motion in Limine. As attorney Wilson noticed, the defendant continues to focus exhaustively upon NIAC's permissible "legislative" activity with the U.S. Congress, as opposed to attempting to prove the truth of the defamatory claim made by the defendant that NIAC was engaged in "lobbying" on behalf of the Iranian Republic.

    Kapshandy: Did Babak Talebi have any involvement in lobbying issues at NIAC?

    Nelson: Objection. Foundation.

    Wilson: If you know, you can answer.

    Blout: I don't know.

    Kapshandy: Well, you were legislative director at one point in time at NIAC, correct?

    Blout: Correct

    Kapshandy: Did you interact – interface with Mr. Talebi on any lobbying issues? And by lobbying issues, I mean meeting with members of Congress or their staff on various issues of interest to the Iranian-American community?

    Wilson: Objection to the form of the question. I don't think that's the accurate description of lobbying. If you want to ask her about legislative activity, maybe that would be more appropriate.

    Nelson: Objection.

- 5 -

> Kapshandy: That's fair. Did you have any interaction with Mr. Talebi with regard to legislative activity while you were both at NIAC?
>
> Witness: Can you clarify what legislative activity means?
>
> Kapshandy: Meeting with members of Congress and staff.

(*See* Attached Exhibit "C", Deposition of Emily Blout dated September 1, 2010, pp. 29:11-30:16.) Clearly, Defendant equates legislative activity with alleged lobbying activity, and more importantly fails to glean that legislative or purported lobbying activity by Plaintiffs not undertaken on behalf of the Iranian Republic is irrelevant to the claims herein.

Moreover, NIAC has attempted to satisfy the defendant's never-ending appetite for more irrelevant discovery material regarding NIAC's general lobbying activity; Plaintiffs have produced any number of documents in that regard. (*See* Attached Composite Exhibit "D," April 29, 2011, Email from Farrokh Mohammadi, Esquire and list of lobbying-related documents produced by NIAC.

### III. AUTHORITY AND ARGUMENT

Under District of Columbia law, a statement is defamatory "if it tends to injure plaintiff in his trade, profession or community standing, or lower him in the estimation of the community." *See, Moldea v. New York Times Co.,* 15 F.3d 1137, 1142 (D.C. Cir. 1994); *citing, Afro-American Publishing Co. v. Jaffe,* 366 F.2d 649, 654 (D.C.Cir.1966) (en banc); *further citing, Vereen v. Clayborne,* 623 A.2d 1190, 1195 n. 3 (D.C.1993). Truth is a complete defense to defamation. *Id., Moldea* at 1142; *citing, Liberty Lobby, Inc. v. Dow Jones & Co.,* 838 F.2d 1287, 1292 (D.C.Cir.), *cert. denied,* 488 U.S. 825 (1988)

Herein, Plaintiffs claim that they have been defamed by the defendant's oral and written claims that both Dr. Parsi and NIAC are lobbyists for the Islamic Republic of Iran. Defendant

claims that his statements are truthful and that the plaintiffs have engaged in lobbying activities both as agents of and on behalf of the Islamic Republic of Iran. To that end, the defendant argues that documents containing legal advice stating that Plaintiffs were in compliance with lobbying laws, as well as any and all information relating to the legality of the plaintiffs' lobbying activities must be produced by Plaintiffs. Such discovery has no relationship to issues in this litigation, serves to waste the court's time, and has caused Plaintiff to incur extensive and unnecessary legal and administrative costs. As Magistrate Judge Paul W. Grimm observed in his recent opinion, *Mancia v. Mayflower Textile Services. Co.* 253 F.R.D. 354 (D. Md. 2008), Rule 26(g) was enacted "to eliminate one of the most prevalent of all discovery abuses: kneejerk discovery requests served without consideration of cost or burden to the responding party." *Id.* at 358.

In support of his motion to compel, the defendant focuses upon the attempts of Patrick Disney in 2009 and 2010 to make a laymen's determination as to whether NIAC was in compliance with federal law relating to lobbying. Assuming, *arguendo*, that Disney's efforts to educate himself about lobbying activities in 2009 and 2010 may be imputed to NIAC, such efforts, based upon their timing, do not relate in anyway to the issue at hand – whether the defamatory statements about NIAC's alleged lobbying activity on behalf of the Islamic Republic of Iran attributed to the defendant prior to April 25, 2008, were truthful. Notwithstanding the foregoing, all the while the defendant is focusing on Disney's lay efforts to understand lobbying laws in 2009 and 2010, the defendant tries to shoestring his efforts to NIAC's retention of counsel in 2010 to obtain professional legal advice regarding lobbying laws. Somehow, the defendant believes that both post-April 25, 2008, actions somehow put "at issue" advice that NIAC sought after its complaint was filed. Nothing could be farther from the truth.

### A. The 2009 and 2010 Lobbying-Related Documents Defendant Seeks to Compel Are Privileged and Irrelevant to the Truth of the Pre- April 2008, Defamatory Statements Made By Defendant.

The 2009 and 2010 documents that the defendant is seeking to compel are irrelevant as they do not bear, in any way, upon the truth or falsity of the pre-April 2008 defamatory statements made by the defendant. The defamatory statements at issue in this case were made prior to April 25, 2008, the date on which plaintiffs filed their lawsuit. In order for the documents that the defendant is seeking to be relevant, herein, they must demonstrate the following. First, the documents being compelled must be relevant to whether prior to April 25, 2008, NIAC was engaged in lobbying activity as an agent of and on behalf of the Islamic Republic of Iran. Moreover, for the documents being compelled to be relevant herein they must tend to demonstrate that prior to April 25, 2008, NIAC had been advised that it was engaged in illegal lobbying within the meaning of the Lobbying Disclosure Act (the "LDA") and/or the Internal Revenue Code (the "IRC").

The documents being compelled by the defendant are not relevant to either of the aforementioned issues in this case. On or about April 6, 2011, Plaintiffs forwarded a privilege log to the defendant. (*See* Exhibit "E" to Defendant's Motion to Compel Production of Document Concerning the Legality of Plaintiff's Lobbying Activities.) The eight (8) documents being compelled, which are all subject to the attorney-client privilege, were either written and/or exchanged in 2009 and 2010, well after this lawsuit was filed in April 2008.

Specifically, the defendant is seeking to compel the following documents that the plaintiffs identified in their Privilege Log:

- Five January 2010 emails and/or email chains written between and/or among Dr. Parsi, NIAC's President; Kevin Cowl, NIAC's Chief Operating Officer; Afshin

Pishevar, Esquire and Patrick Parsa, Esquire, NIAC's counsel herein; Robert Benton, Esquire, an attorney with Wiley Rein, LLP, which firm had been engaged by NIAC to review the legality of NIAC's legislative and./or lobbying activities; and Thomas Raffa, Dennis Shine, and Frank Smith, employees of the Raffa Consulting Firm, an accounting firm that was engaged by NIAC at the recommendation of attorneys at Wiley Rein, LLP; such communications were made subject to the attorney-client privilege.

- A February, 4, 2010, memorandum, authored by Wiley Rein, LLP attorneys Robert Benton, Esquire and Carol Laham, Esquire, providing a general classification of activities and expenditures under the Lobbying Disclosure Act and the Internal Revenue Code, which was written to NIAC and provided to Dr. Parsi and Kevin Cowl, subject to the attorney-client privilege.

- An undated memorandum, authored by NIAC's former Assistant Legislative and Policy Director Patrick Disney, addressing the lawsuit and covered lobbying activities, which was intended for and provided to Raffa Consulting, Afshin Pishevar, Esquire, and Patrick Parsa, Esquire, subject to the attorney-client privilege.

- An undated memorandum, authored by Wiley Rein, LLP, addressing the Lobbying Disclosure Act as of January 1, 2009, which was intended for and provided to NIAC, subject to the attorney-client privilege.

It is unclear upon what the defendant is basing his claim that Plaintiffs are seeking to rely upon the purported "favorable advice" they received as allegedly outlined in the documents the defendant is seeking to compel. At trial, Plaintiffs will need to demonstrate, among other things, that the defendant's claim that both Dr. Parsi and NIAC are agents of the Islamic Republic of Iran is false and defamatory. The defendant will then need to prove, among other things, that his statements in this regard were true. The 2009 and 2010 documents sought by the defendant have no relevance to the plaintiffs' burden of proof and the defendant's affirmative defense of truth.

Accordingly, for these reasons alone, Defendant's motion to compel should be denied.

### B. The Lobbying-Related Documents Defendant Seeks to Compel Are Privileged and Would Constitute Evidence Of Possible Subsequent Remedial Measures.

Fed. R. Evid. 407 prohibit the admission of evidence of "subsequent remedial measures." It provides: "When, after an injury or harm allegedly caused by an event, measures are taken

that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, [or] culpable conduct ..." Rule 407 limits a "search for truth" in the interest of a higher social policy.

Here, the higher social policy that must be upheld is society's preference that organizations, such as NIAC, comply with federal laws relating to lobbying by obtaining legal advice subsequent to being accused of not having been in compliance with federal lobbying laws. The public policy that under girds Fed. R. Evid. 407 clearly prohibits the defendant's attempt to demonstrate that NIAC was advised in 2010 by its legal counsel – Wiley Rein, LLP – that in 2008 it was not in compliance with federal lobbying laws, assuming, *arguendo,* that such advice was provided to NIAC by Wiley Rein.[1]

Accordingly, for this additional reason the defendant's motion to compel should be denied.

## IV. CONCLUSION

For each of the reasons set forth above, Defendant's Motion to Compel Production of Documents Concerning the Legality of Plaintiff's Lobbying Activities should be denied.

Respectfully submitted,

_____/S/_____
A.P. Pishevar (D.C. Bar No. 451015)
Adrian V. Nelson, II (*Pro Hac Vice*)
**PISHEVAR & ASSOCIATES, P.C.**
600 East Jefferson Street, Suite 316

---

[1] Notwithstanding the result demanded by Fed. R. Evid. 407, that the defendant's motion to compel be denied based upon the prohibition against admitted evidence of subsequent remedial measures, the defendant's motion to compel argument is nonetheless flawed. Defendant seems to be arguing that the purported Wilely Rein legal opinion, which he argues will show that NIAC was not in violation of federal lobbying laws, is somehow relevant to his alleged defamatory statements that NIAC was in violation of federal laws.

- 10 -

        Rockville, MD 20852
        Phone: (301) 279 – 8773
        Fax:    (301) 279 – 7347
        Counsel for the Plaintiffs

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **TRITA PARSI, et al.** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | Civil Action No. 08 CV 00705 (JDB) |
| ) | |
| **DAIOLESLAM SEID HASSAN,** ) | |
| ) | |
| **Defendant.** ) | |

## CERTIFICATE OF SERVICE

I certify that on August 1, 2011, I served, via email, Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion to Compel Production of Documents Concerning the Legality of Plaintiff's Lobbying Activities to:

>Timothy E. Kapshandy, Esquire
>Peter G. Jensen, Esquire
>SIDLEY AUSTIN LLP
>1501 K Street, N.W.
>Washington, D.C. 20005
>(202) 736-8000
>tkapshandy@sidley.com
>
>Attorneys for Defendant
>Seid Hassan Daioleslam
>
>                    /s/
>Afshin Pishevar
>Adrian Nelson
>600 East Jefferson Street
>Suite 316
>Rockville, Maryland 20852
>(301) 279-8773
>ap@pishevarlegal.com
>anelson@pishevarlegal.com
>
>
>Attorneys for Plaintiff
>Trita Parsi
>National Iranian American Council