IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TRITA PARSI <br><br> and <br><br> NATIONAL IRANIAN AMERICAN COUNCIL <br><br> Plaintiffs, <br><br> v. <br><br> DAIOLESLAM SEID HASSAN, <br><br> Defendant | Civil No. 08 CV 00705 |

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL PRODUCTION OF MEMBERSHIP LISTS

COME NOW Plaintiffs, Dr. Trita Parsi and the National Iranian American Council ("NIAC") (collectively "NIAC"), by and through their counsel, Afshin Pishevar, Esquire, Adrian V. Nelson, II, Esquire, and Pishevar & Associates, P.C., in opposition to Defendant's Motion to Compel Production of Membership Lists, and states as follows:

### I. PROCEDURAL HISTORY/FACTS/ARGUMENT

Admittedly, in March 2009 the defendant propounded a routine document production request for documents "relating to NIAC membership." (*See* Exhibit "F" to Defendant's Motion to Compel Membership Lists, Request for Production, No. 3.) In response to the defendant's document request, the parties negotiated and entered into a Confidentiality Agreement that

resulted in NIAC producing membership information in May 2009, as has been admitted by the defendant.[1] (*See* Defendant's Motion to Compel Membership Lists, p. 2)

Defendant's current demand for additional membership information is a recent fixation of the defendant that resulted from what was to be "limited" forensic imaging permitted by the Court.[2] As a result of forensic imaging, the Defendant began demanding that NIAC produce "meeting notes," not membership lists associated with Salesforce. Salesforce (SF) is a contact database; in essence, it is essentially an online address book, not software.

When it became clear that NIAC had recorded a limited number of meeting notes using Salesforce, the defendant "moved the goal line" from obtaining NIAC's Salesforce meeting notes to a demand for NIAC's entire Salesforce membership database even though membership information had been previously provided to the defendant in response to its written request for production of documents. This tactic of the defendant is what Dr. Parsi was alluding to during his May 2011 deposition where he stated: "[P]art of the difficulty we have had is that you have a tendency of changing your requests … We've done our utmost to try and answer your questions, but the vagueness of your questions at times seem to be deliberate to create unnecessary misunderstandings." (*See* Exhibit "A" to Defendant's Motion to Compel Membership Lists, Parsi Dep., Vol. 3, pp. 46-48.)

---

[1] As defendant often does, he belittles the quality of the information that NIAC produced in May 2009, failing to understand that NIAC is a small organization that does not have the resources of a firm the size of the defendant's counsel. As is often the case, the December 2004, December 2007, and April 2008 membership information which the defendant does not deny that NIAC produced was insufficient for the defendant. The complained of deficiency of the membership information provided by NIAC in May 2009 is based upon the defendant's clearly sarcastic view that NIAC may not have had any updated membership information to produce for the time period between April 2008 and May 2009. (*See* Defendant's Motion to Compel Membership Lists, p. 2.)

[2] Defendant admits that its current demand for Salesforce-generated membership information resulted from the defendant's review of calendar records during the initial forensic imaging process. (*See* Defendant's Motion to Compel Membership Lists, p. 2.)

On March 2, 2011, NIAC produced five documents containing membership information categorized as "Opportunities," "Accounts," "Contacts," "Leads," and "Campaigns." As before, the defendant was dissatisfied with the membership information provided by NIAC. So, on March 18, 2011, NIAC produced a list of 9000 transactions from Convio, which the defendant has characterized as predominately consisting of a list of donations over a six-year period. This time, the defendant complains that the information provided on March 18, 2011, did not specifically list "expired members" or "former members" as had the information that was produced 16 days earlier, but was complained about at that time. (*See* Defendant's Motion to Compel Membership Lists, p. 5)

Next, the defendant began his quest for "former members" membership information or a stipulation by NIAC that it only has 118 former members as of May 2010. The defendant refuses to accept the possibility that what constitutes a "former member" is a moving target in an organization such as NIAC. Is a former member a person who has cancelled their membership? Is a former member a person who is late in paying their membership dues? Is a former member a contact? Is a former member a person who is on NIAC's mailing list?

Information relating to NIAC former members is only relevant to the issue of damages. NIAC has retained an expert, Dr. Joel N. Morse, a Financial Economist, who has prepared a report about the extent to which NIAC has experienced "economic loss" by the defendant's defamatory statements. In his expert report, Dr. Morse wrote: "Typical membership rolls of 2000-300 people dropped to 1200 current members. At a Board meeting in 2008, 28% of members were not current in their dues. Recently, this figure has increased to over 50% not current." (*See* Attached Exhibit "A," Expert Report of Dr. Joel N. Morse, dated May 9, 2010.)

The membership information provided to the defendant is sufficient for Defendant to rebut NIAC's damages claims, including refuting any claims of damage made by Dr. Morse. The defendant's current focus upon NIAC's "supporters" once again is consistent with Defendant's propensity for "moving the goal line" and creating "unnecessary misunderstandings," as Dr. Parsi recognized in his most recent day of deposition.[3]

## II. CONCLUSION

For each of the reasons set forth above, Defendant's Motion to Compel Production of Membership Lists should be denied.

Respectfully submitted,

/S/
A.P. Pishevar (D.C. Bar No. 451015)
Adrian V. Nelson, II (*Pro Hac Vice*)
**PISHEVAR & ASSOCIATES, P.C.**
600 East Jefferson Street, Suite 316
Rockville, MD 20852
Phone: (301) 279 – 8773
Fax:    (301) 279 – 7347
Counsel for the Plaintiffs

---

[3] NIAC has already addressed the most recent red herring issue raised by the defendant relating to NIAC's supporters. (*See* Attached Exhibit "B," Letter from Adrian V. Nelson, II, Esquire, dated June 2, 2011.) However, in a nutshell, at deposition the defendant requested NIAC's entire mailing list because NIAC had referred to them as "supporters." That list, however, was included in the membership files, they were all combined. A total of 30,000+ entries were provided, which was the size of NIAC's mailing list in May 2010. The defendant is obsessed by a 43,000 figure, but that was the size of NIAC's mailing list in December 2010, 18 months after the production cut-off date.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TRITA PARSI, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 08 CV 00705 (JDB) |
| ) | |
| DAIOLESLAM SEID HASSAN, ) | |
| ) | |
| Defendant. ) | |

## CERTIFICATE OF SERVICE

I certify that on August 1, 2011, I served, via email, Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion to Compel Production of Membership Lists to:

>Timothy E. Kapshandy, Esquire
>Peter G. Jensen, Esquire
>SIDLEY AUSTIN LLP
>1501 K Street, N.W.
>Washington, D.C. 20005
>(202) 736-8000
>tkapshandy@sidley.com
>
>Attorneys for Defendant
>Seid Hassan Daioleslam

>_____/s/_____
>Afshin Pishevar
>Adrian Nelson
>600 East Jefferson Street
>Suite 316
>Rockville, Maryland 20852
>(301) 279-8773
>ap@pishevarlegal.com
>anelson@pishevarlegal.com
>
>Attorneys for Plaintiff
>Trita Parsi
>National Iranian American Council