# EXHIBIT E

You are currently viewing the printable version of this article, to return to the normal page, please click here.

# The Washington Times

## EXCLUSIVE: Iran advocacy group said to skirt lobby rules

76 Comments and 0 Reactions | Tweet | Share | Print | Email | More    Like

By Eli Lake



5:45 a.m., Friday, November 13, 2009

Shortly before Barack Obama took office, leaders of a prominent Iranian-American group in Washington began to fret.

If the new president were to tap former Middle East envoy Dennis Ross to oversee the nation's Iran policy, they feared their long-running effort to persuade American officials to lift sanctions could wind up in tatters. Patrick Disney, acting policy director of National Iranian American Council (NIAC), summed up the strategy: "Create a media controversy" concerning Mr. Ross, whose support for a tough line on Iran was well known.

"Those groups that feel comfortable being more aggressive in opposing Ross publicly (possibly Voters for Peace, [Friends Committee on National Legislation], Physicians for Social Responsibility, others) will do so," Mr. Disney wrote in an e-mail obtained by The Washington Times, "while others who may have less latitude on the matter will declare their preference for a more agreeable envoy."

Mr. Ross was appointed anyway and wound up on the National Security Council. But the episode highlights NIAC emergence as a major player in Washington and leading voice for engaging Iran and ultimately lifting U.S. sanctions.

Now a lawsuit has brought to light numerous documents that raise questions about whether the organization is usir that influence to lobby for policies favorable to Iran in violation of federal law. If so, a number of prominent Washington figures could come to regret their ties to the group.

Among NIAC's advisory board members are former Undersecretary of State Thomas Pickering, and John Limbert, former U.S. hostage in Iran, was a board member until his recent appointment as deputy assistant secretary of state for Iran.

Mr. Pickering, reached by The Times, acknowledged he is on the board but said he has never attended a meeting and is not familiar with the organization's operations. Based on his participation in two panels on Capitol Hill, he said, he did not think NIAC was a lobby.

Mr. Limbert declined to comment, citing his new position, but has appeared at NIAC conferences in the past and expressed admiration for the organization and for its charismatic leader, Trita Parsi.

Mr. Parsi, a green card holder, has become more critical of Iran's government since its disputed June 12 presidenti: elections, urging President Obama to condemn human rights abuses in Iran and to implement a "tactical pause" in efforts to arrange negotiations. But Mr. Parsi's history suggests a continuing commitment to changing U.S. policy on Iran, and he has clearly become more influential in Washington since the change of administrations.

Mr. Parsi has been called to the White House, lectured at the CIA and visited Secretary of State Hillary Rodham Clinton. He boasted in internal e-mails that he learned of Mr. Obama's speech to Iranians on the occasion of the

Persian New Year in March several hours before it was posted on the Internet.

Much of NIAC's less public work has come to light through e-mails, documents, board of directors meeting minut and strategy memos that were made public as part of the discovery process during a current defamation lawsuit against a critic of the group

Law enforcement experts who reviewed some of the documents, which were made available to The Times by the defendant in the suit, say e-mails between Mr. Parsi and Iran's ambassador to the United Nations at the time, Javad Zarif - and an internal review of the Lobbying Disclosure Act - offer evidence that the group has operated as an undeclared lobby and may be guilty of violating tax laws, the Foreign Agents Registration Act and lobbying disclosure laws.

Neither Mr. Parsi nor anyone else at NIAC has registered as a lobbyist or filed papers with the Justice Department as a local agent of the Iranian government or Iranian companies. Mr. Parsi was shown and read the documents cite in this article.

Mr. Parsi said in one of a series of lengthy interviews with The Times that he founded NIAC in 2002 to enable Iranian Americans to condemn the Sept. 11, 2001, terror attacks and that he has since run it as a grass-roots group aimed at strengthening their voice.

"We realized that our primary thing that separates the Iranian-American community from the Jewish-American community, the Arab-American community, the Armenian-American community is that the Iranian-American community has shunned political participation," he said.

The organization has between 2,500 and 3,000 members, according to Mr. Parsi, but had fewer than 500 responses to a membership survey conducted last summer, internal documents show. Yet NIAC asserts that it is the largest such group and represents the majority of the nearly 1 million Iranian Americans.

Mr. Parsi defended his decision to organize NIAC as a 501(c)(3) nonprofit organization and declare on tax forms that his group does not engage in lobbying - a status that enables donors to deduct contributions on their taxes.

"NIAC is a 501(c)(3) educational organization that engages in advocacy and also has a right to engage in lobbying he said. "But we are not a (c)(4), we are not a lobby. Is there anything wrong in being a lobby? Not in our view. Bt this is what we are, at this stage."

However, in a July 2008 memo obtained by The Times, Mr. Disney quoted the Lobbying Disclosure Act - a law th says even the preparation of materials aimed at influencing legislation or policy must be disclosed to the public - and said he and a colleague should register as lobbyists.

"Under this expansive view of 'lobbying,' I find it hard to believe Emily, and I devote less than 20 percent of our time to lobbying activity. I believe we fall under this definition of 'lobbyist,'" he wrote, referring to NIAC's legislative director at the time, Emily Blout.

The tax code allows nonprofits to devote less than 20 percent of their activities to lobbying if they declare the activity in a special section on their taxes. NIAC's latest tax form shows that the group has declared that it spends none of its time lobbying.

When asked about his policy director's memo, Mr. Parsi said that Mr. Disney is not a lawyer and that when he wro the memo, he was new to the organization.

When reached Thursday for the story, Mr. Disney said, "You are using an e-mail from very early in my time at NIAC to demonstrate that the organization is not following the rules. When I wrote the e-mail in question, I was a 22 year old with no legal education, but was asked to research and give an opinion about a complex legal matter.

"The opinion I expressed in the email was erroneous, and has since been clarified by legal professionals who have found NIAC is in full compliance with the law. The practice of using out of context and partial e-mails is poor journalism; and it is one of the reasons Americans are losing faith in the media."

Repeated efforts to reach Ms. Blout were unsuccessful.

An Iranian AIPAC

The genesis of NIAC goes back more than a decade to when Mr. Parsi was a student in Sweden. In 1996, he met another Iranian expatriate, Siamak Namazi. Mr. Namazi had a degree in urban planning but had recently joined a firm in Iran that sought to bring Western business standards to the Islamic Republic.

Mr. Parsi launched his first organization, Iranians for International Cooperation, in 1997, the year Iran elected a reformist, Mohammad Khatami, as president.

The group, which remained active until NIAC was founded, was designed to "safeguard Iran's and Iranian interests," according to its former Web site, which listed as its top priority "the removal of U.S. economic and political sanctions against Iran, and the commencement of an Iran-U.S. dialogue."

Mr. Namazi wrote in a Nov. 9, 1998, essay for iranian.com, that the group could have an important role to play in Washington but "we have a long way to go on the road to having our weight felt in American politics."

Mr. Namazi declined to comment on the record for this story.

A year later, Mr. Namazi and Mr. Parsi collaborated on a paper that they delivered at a conference in Cyprus. They described their vision for an organization modeled after the American Israel Public Affairs Committee (AIPAC), the pro-Israel lobby. The paper, among other things, proposed seminars on lobbying for Iranian Americans, based on AIPAC's youth leadership seminars. One of NIAC's first actions was to sponsor similar events.

Mr. Parsi later disputed that AIPAC was the model for NIAC.

"I don't think it is a blueprint for NIAC. I stand by what I wrote, absolutely, Iranian Americans have a tremendous interest in making sure that relations between the USA and Iran do not evolve into a military conflict," he said.

As early as December 2002, however, Mr. Parsi envisioned that his nonprofit would join with a full-fledged "grass roots lobby" to push for an end to sanctions on Iran. He wrote in a memo to Roy Coffee, a former aide to then-Tex Gov. George W. Bush: "Although the mission of the proposed lobby should be to improve relations between the U.S. and Iran and open up opportunities for trade, the initial targets should be less controversial issues such as visa and racial profiling/discrimination."

No such separate organization was ever established, however.

Defamation lawsuit

An Iranian-American journalist from Arizona named Hassan Daioleslam first publicly asserted in 2007 that NIAC was lobbying for Iran. Mr. Parsi then sued him for defamation. That court case, which is still unfolding, led to the disclosure of the NIAC documents.

Mr. Daioleslam's claim is a serious matter. If NIAC has been lobbying on behalf of a foreign government or a foreign company, Mr. Parsi could be subject to prosecution.

The Times asked two former federal law-enforcement officials to review documents from the case showing that M Parsi had helped arrange meetings between members of Congress and Mr. Zarif.

"Arranging meetings between members of Congress and Iran's ambassador to the United Nations would in my opinion require that person or entity to register as an agent of a foreign power; in this case it would be Iran," said one of those officials, former FBI associate deputy director Oliver "Buck" Revell.

The other official, former FBI special agent in counterintelligence and counterterrorism Kenneth Piernick, said, "It appears that this may be lobbying on behalf of Iranian government interests. Were I running the counterintelligenc program at the bureau now, I would have cause to look into this further."

However the case is not definitive. Two lawyers who read some of the same documents said they did not provide enough evidence to conclude that Mr. Parsi was acting as a foreign agent. Neither of the lawyers agreed to be quoted by name.

According to documents, Mr. Parsi appeared at times to be coordinating his advocacy work with Mr. Namazi, who was until 2007 a managing director of a company called Atieh Bahar. Atieh Bahar is the international consulting arm of the Atieh Group, a Tehran-based holding corporation for concerns that have contracts both with Iranian government ministries and Iran's banks, as well as international firms looking to do business in Iran. Had Congress lifted sanctions, Atieh Bahar stood to benefit.

Mr. Namazi has since left Iran and is based in the United Arab Emirates. The head of Atieh Bahar, Bijan Khajehpour, was arrested after the June 12 elections and imprisoned for several months, apparently because the current Iranian government distrusts anyone who has traveled frequently to the United States.

Mr. Parsi, who holds Iranian and Swedish passports and lives in the United States as a resident alien, told The Times that neither he nor his wife had received any money from the Iranian government or Iranian nationals.

As part of the lawsuit, Mr. Daioleslam's attorneys have subpoenaed bank records for the Parsis. Mr. Daioleslam sa his lawyers had just received Mr. Parsi's bank records that have been requested since May.

In his interviews with The Times, Mr. Parsi said his organization did not have to register as a lobby or foreign age because NIAC is allowed to conduct activities to educate the public.

At other times, he said the tax code and lobbying registration laws allow for lobbying on foreign policy, which he distinguished from advocating in Congress for specific legislation.

However, Hooshang Amirahmadi, the founder and head of a rival group, the American Iranian Council (AIC), said "NIAC has a direct connection to Congress, they ask their members or others to send their positions and views, the provide form letters and e-mails to their members ...

"We do none of this at AIC because we are not a lobbying organization," Mr. Amirahmadi said. "If AIC was to do what NIAC does, then we would be violating our 501(c)(3) status. That is my understanding of the law."

"Personal Diplomacy"

From 2002 until 2005, NIAC focused on combating discrimination against Iranian-Americans. Mr. Parsi said the focus shifted in 2006 and he became engaged in what he called "personal diplomacy" when he became convinced that the United States and Iran were headed toward war.

That year, the U.S. military was seeing signs that Iran-backed groups were planting the homemade bombs that wei killing U.S. troops in Iraq. Iran had also begun enriching uranium over the objections of the U.N. Security Council An Islamic council had purged most reformers from parliament and Iran had an aggressive new president, Mahmoud Ahmadinejad.

E-mail correspondence between Mr. Parsi and Mr. Zarif show Mr. Parsi suggesting that the Iranian diplomat meet with members of Congress.

"Happy to hear that you will meet with [Rep. Wayne] Gilchrest and potentially [Rep. James] Leach. There are mar more that are interested in a meeting, including many respectable Democrats," Mr. Parsi wrote in an Oct. 25, 2006 e-mail.

Mr. Gilchrest, a Maryland Republican who left office in 2009, said he remembered meeting with Mr. Parsi but did not consider him a major player in his efforts to meet Iranian officials.

"Trita was one person that we would use as a source of information. But I would not say we viewed Trita as a lobbyist," Mr. Gilchrest said. "He was a small part of our circle who wanted to meet with Iranians."

A spokeswoman for Mr. Leach, an Iowa Republican who left office in 2007 and now serves as chairman of the National Endowment for Humanities, said, "Hundreds of people attempt to make appointments with members of Congress every week. Chairman Leach has no memory of Trita Parsi or the National Iranian American Council."

Mr. Parsi also sought to publicize a 2003 Iranian offer to negotiate a so-called grand bargain with the United State: The Bush administration did not respond to the offer, which was sent to Washington after the U.S. overthrow of Iraqi dictator Saddam Hussein.

NIAC boasted about the media campaign in a grant application to private foundations for a proposed "U.S.-Iran Media Resource Program."

The application said NIAC "succeeded in putting Iran's 2003 Grand Bargain offer onto national headlines," noting that Mr. Parsi's efforts had generated 37 "pieces of analysis," a feature on CNN and 80 newspaper mentions.

The application credits NIAC for thwarting what Mr. Parsi said was "the Bush administration's push for a military confrontation with Iran."

Parsi's defenders

In the past few weeks, Mr. Parsi has launched a new campaign to paint his critics as neoconservatives and supporters of the People's Mujaheddhin, a Marxist-Islamic group that is on the U.S. list of foreign terrorist organizations.

He also sought, in a letter to The Times on Thursday from his lawyer, Afshin Pishevar, to head off the publication of details from NIAC's internal documents.

"Dr. Parsi and NIAC work tirelessly to advance the interests of Iranian-Americans and public interest. My clients take great exception to being falsely accused of representing or lobbying on behalf of the Islamic Republic of Iran, the letter said. He added, "I will add that NIAC is in full compliance with the law based on expert legal and professional analysis and the taking of partial e-mails and quotes out of context is strikingly contrary to the law an proper journalistic practices."

On the blogosphere, Mr. Parsi's defenders have stressed his numerous statements against the current Iranian government and its treatment of the democratic opposition.

Mr. Parsi has told reporters that his views toward Iran have changed because of its behavior since the June 12 elections and that those who oppose him have their own political agenda. Mr. Parsi has also stated that sanctions have not helped change Iranian behavior and have actually strengthened Iran's hard-liners by giving them a scapegoat for their failures.

When George W. Bush was president, NIAC also argued against U.S. funding for the promotion of democracy in Iran, arguing that it would hurt the opposition by tainting them as U.S. tools - a position also taken by some prominent Iranian reformers including Nobel laureate Shirin Ebadi.

At the same time, between 2002 and 2007, NIAC received a little less than $200,000 from the National Endowment for Democracy to build the capacity of Iranian nongovernmental organizations. The partner for the initial grant was an Iranian nongovernmental organization called the Hamyarand Foundation, whose founder is Mr. Namazi's father

Mohsen Makhmalbaf, an acclaimed Iranian filmmaker and unofficial spokesman for Iran's opposition Green Movement, told The Times, "I think Trita Parsi does not belong to the Green Movement. I feel his lobbying has secretly been more for the Islamic Republic."

blog comments powered by DISQUS

· Ads by Google    The Washington Times    Iran    Lawsuit    Iranian Clip    Iranian Girl