# EXHIBIT R

IV

111TH CONGRESS
1ST SESSION

# H. CON. RES. 94

Encouraging the negotiation of an "Incidents at Sea Agreement" between the United States of America and the Government of Iran.

_____

## IN THE HOUSE OF REPRESENTATIVES

APRIL 2, 2009

Mr. CONYERS (for himself and Mr. DAVIS of Kentucky) submitted the following concurrent resolution; which was referred to the Committee on Foreign Affairs

_____

# CONCURRENT RESOLUTION

Encouraging the negotiation of an "Incidents at Sea Agreement" between the United States of America and the Government of Iran.

Whereas, on January 6, 2008, five Iranian patrol boats manned by members of the Iranian Revolutionary Guard Corps interacted with three United States Navy ships in international waters in the Strait of Hormuz;

Whereas Vice Admiral Kevin Cosgriff, Commander of United States Naval Forces Central Command, called the behavior of the Iranian vessels "unnecessary, without due regard for the safety of navigation, and unduly provocative";

Whereas the interaction between the vessels nearly resulted in armed conflict between the United States and Iran;

2

Whereas, on January 11, 2008, Admiral William J. Fallon, former commander of United States forces in the Middle East and South Asia, told reporters that "This kind of behavior, if it happens in the future, is the kind of event that could precipitate a mistake.";

Whereas there exists little protocol or standardization in the communications between the United States Navy and the Iranian Navy and Revolutionary Guard Corps;

Whereas the Strait of Hormuz has been characterized as a "global strategic chokepoint" through which nearly two-fifths of the world's oil is shipped;

Whereas a clash in the Strait of Hormuz would have catastrophic consequences for the world economy, especially the price of oil;

Whereas the naval buildup in the region, and differences between the United States and Iran, Hamas, and the Israeli-Palestinian conflict, Lebanon and Hezbollah, and Iran's nuclear program, all make for an environment that is highly charged, fragile and very susceptible to destructive developments;

Whereas Department of Defense officials have said they want to prevent future naval interactions in the region from escalating into a confrontation due to nonexistent or ineffective communication;

Whereas at the height of the Cold War, the United States and the Soviet Union entered into an Agreement on the prevention of incidents on and over the high seas (entered into force with respect to the United States on May 25, 1972; 23 UST 1063; known as the "Incidents at Sea Agreement"), designed to reduce the likelihood of a mis-

3

understanding and miscommunication between United States and Soviet naval forces;

Whereas, on January 29, 2008, Retired Admiral James Lyons, who previously served as commander of the Pacific Fleet and Deputy Chief of Naval Operations, suggested in an opinion piece in the Washington Times that the set of rules and regulations incorporated in the Incidents at Sea Agreement could be applied as modified for naval operations in the Persian Gulf;

Whereas such an Incidents at Sea Agreement between the United States and Iran could establish necessary protocol to avoid confrontation between the two nations;

Whereas such protocols could include not interfering in the formations of the other party, avoiding maneuvers in areas of heavy sea traffic, requiring surveillance ships to maintain a safe distance so as to avoid embarrassing or endangering the ships under surveillance, using accepted international signals when ships maneuver near one another, not simulating attacks at, launching objects toward or illuminating the bridges of the other party's ships, informing vessels when submarines are exercising near them, requiring aircraft commanders to use caution and prudence in approaching aircraft and ships of the other party, and not permitting simulated attacks against aircraft or ships, performing aerobatics over ships, or dropping hazardous objects near them;

Whereas the absence of diplomatic relations between the United States and Iran need not be an obstacle to direct, military to military talks on procedural issues involving the safety of naval personnel and assets; and

4

Whereas entering into such an Incidents at Sea Agreement could help protect American lives and treasure: Now, therefore, be it

1    *Resolved by the House of Representatives (the Senate*
2    *concurring),* That it is the sense of Congress that it should
3    be the policy of the United States to promote the negotia-
4    tion of an ''Incidents At Sea Agreement'' between the
5    United States of America and the Government of Iran.

○