IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| TRITA PARSI <br><br> and <br><br> NATIONAL IRANIAN AMERICAN COUNCIL <br><br> Plaintiffs, <br><br> v. <br><br> DAIOLESLAM SEID HASSAN <br><br> Defendant. | Civil No. 08 CV 00705 |

## PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE REGARDING LOBBYING ACTIVITIES

COME NOW Plaintiffs, Dr. Trita Parsi and the National Iranian American Council ("NIAC") (collectively "NIAC"), by and through their counsel, Afshin Pishevar, Esquire, Adrian V. Nelson, II, Esquire, and Pishevar & Associates, P.C., in reply to Defendant's Opposition to Plaintiffs' Motion in Limine Regarding Lobbying Activities, and states as follows:

### I. AUTHORITY AND REPLY ARGUMENT

### A. This Court Previously Rejected Aspects of Defendant's Opposition Argument.

Previously, this Court rejected the defendant's tortured and parsed approach to defending the defamatory statements which are at issue in this defamation action. In Defendant's first motion for summary judgment, the defendant argued that his defamatory statements that Dr. Parsi and NIAC are lobbyists for the Islamic Republic of Iran were true statements if one adopts the "plain meaning" of the term "lobbyists." (*See Parsi v. Daioleslam*, 595 F.Supp.2d 99, 108

(D.D.C. 2009).)  Further, the defendant argued that plaintiffs' goals align with the Iranian government's goals, and that some Iranian government-owned publications and Iranian officials have suggested support of plaintiffs. *Id*. Lastly, the defendant argued that Dr. Parsi previously was the president of an organization known as Iranians for International Cooperation ("IIC"), which "identified itself as 'an Iranian lobby' and indicated that its 'main objective [was] to safeguard Iran and Iran's interests.'" *Id*.

Wisely, and correctly, this Court rejected the defendant's arguments based upon a finding that "defendant parses his statements too finely." *Parsi v. Daioleslam* at 108. This Court recognized that

> [t]he 'sting of the charge' is not, as defendant would have it, that plaintiffs are lobbyists. Nor does the assertion that plaintiffs' goals align with the Iranian government's goals carry real bite. Truthful or not, those statements do not form the core of plaintiffs' defamation claim. Rather, the sting of the charge is that plaintiffs are agents of the Iranian government."

*Id*. As this Court noted, what Plaintiffs take issue with are statements such as: "Officially founded in 2002, NIAC is one of the Iranian regime's Lobby arms in the US." Compl. ¶ 36(B). In another article, defendant wrote: "Trita Parsi was the regime's trusted man within the new network." (*Citation omitted*.) (*See Parsi v. Daioleslam* at 108.)

In his opposition to Defendant's Motion in Limine, the defendant has recycled the same arguments that this Court previously rejected. Once again, the "defendant points to Dr. Parsi's tenure as president of the IIC as proof that he was, in fact, the head of a self-described 'Iranian lobby.'" *Compare Parsi* at 109 *with* Def's. Resp. to Pls. Mot. To Exclude Evidence of Pls Lobbying Activities at 4-5. In the cumulative examples of NIAC's legislative activity cited in Defendant's Reply, the same flaw exists that caused this Court to reject the defendant's first attempt at fabricating a tortured picture of NIAC as an "Iranian lobby": There is not a single

"mention of support by the Iranian government" for the grassroots legislative activity of NIAC. Rather, Defendant is simply equating opposition to war as lobbying for the regime.[1]

Once again, the Court should reject Defendant's narrow view of the nature of the defamation in this case.

### B. It Is Defendant's Approach to Presenting Trial Evidence that is Unworkable.

Because the defendant is once again attempting to not so subtly distract the Court from the "sting of the charge" that Plaintiffs are an "Iranian lobby," he argues that focusing upon the true stinger of his defamatory accusations – whether Plaintiffs are agents of the Islamic Republic of Iran – should not be the initial focus of the trial. Rather, the defendant argues that to do so would be "unworkable." Instead, the defendant argues that the trial should first focus upon whether the Plaintiffs are "lobbyists" without regard to whether such purported lobbying activity is permissible or illegal.

Defendant's approach to the required evidence and proofs in this case is what is "unworkable." As is made evidently clear in Defendant's Opposition, the defendant has spent much of discovery focusing upon Plaintiffs' purported lobbying activities. Defendant has appended 34 exhibits to its Opposition solely related to Plaintiffs' purported lobbying activities. One can only imagine how many exhibits the defendant will offer at trial, given its two-plus year "fishing expedition" and "scorched earth" approach relating to Plaintiffs' purported lobbying

---

[1] Defendant even goes so far as to say that opposition to war means not only support for the Iranian Regime but also opposition to measures that would prevent Iran from acquiring nuclear weapons. *See* Def's. Ex's. O – Q. Specifically, the defendant argues that by opposing H. Con. Res. 362, Plaintiffs opposed measures that would prevent Iran from acquiring nuclear weapons. (Def. Opp. at 7-8.) As Defendant's Exhibit P shows, however, NIAC opposed H. Con. Res. 362 because of a strong fear that it would result in a military confrontation rather than a resolution through diplomatic means.

activities.[2] Why focus upon such lobbying activities unless they were undertaken by Plaintiffs as agents of the Islamic Republic of Iran?

The more judicially economic approach to the trial in this case would be for the parties to first focus upon whether the Plaintiffs have acted as agents of the Islamic Republic of Iran. If there is no evidence to that effect, then whether NIAC engaged in permissible or impermissible lobbying activities is irrelevant, as truth will no longer be a defense available to the defendant. The falsity of the "stinger" within his statements will have been proven.

Accordingly, it is the defendant's approach to presenting evidence at trial that is unworkable.

### C. Defendant Is Not Focusing Upon Plaintiffs Purported Lobbying Activity for Impeachment Purposes, But as a Part of His Campaign to Destroy Plaintiffs.

Defendant has been vocal about his desire to destroy NIAC and Dr. Parsi. (*See* Exhibit A, Email from Defendant to Ken Timmerman sent on April 2, 2008; *see also* Exhibit B, Email String between Defendant and Ken Timmerman sent on August 27, 2008.) As recently as this past weekend, the defendant claimed that Plaintiffs are in violation of the law. (*See* attached Exhibit C, Online Publication written on July 31, 2011, http://hakemiat-e-

---

[2] It is important to note that many of the Defendant's Exhibits attached to the Opposition are misleading and fail to portray the full picture, although that is very likely by design. For example, Defendant's Exhibit X purportedly shows that Plaintiffs' expert, Col. Gardiner, stated that "NIAC's positions were in accord with what the IRI would want." (Def. Opp. at 10.) In reality, however, Col. Gardiner explained in much detail how statements by the Plaintiffs countered the line of the regime. (*See* Def's Ex. X.)

Likewise, Defendant's Exhibit AA purportedly shows "whom he considered his master." *Id*. Again, the exhibit only shows that someone calling themselves "Terita Parsi" supposedly posted in an online forum in 1996, expressing admiration and love for the *Country* of Iran, not the Iranian Regime. Indeed, Defendant himself has stated his love for his country. By analogy, does this mean that he lobbies for the Iranian Regime?

Finally, in footnote 3 of Defendant's Opposition, he states that "[t]he metadata for all five timesheets produced, reflect created dates of Nov. 30, 2009. Parsi's timesheets reflect his time records were modified on Dec. 25, 2009, the same date a number of his calendar entries were modified." (Def. Opp. at 13.) Notwithstanding the fact that whether the entry was modified is irrelevant to his argument or this Motion and only serves as another attempt by the defendant to argue that Plaintiffs have been acting in a illegal or suspicious manner, the defendant conveniently fails to further clarify that any time a calendar is opened, it changes it and shows that it was modified.

mardom.blogspot.com/2011/07/38-irrefutable-documents-proving-niac.html.)  It is the defendant's vendetta against NIAC and Dr. Parsi that forms the basis of his current focus upon whether Plaintiffs are in violation of federal law, including the Lobbying Disclosure Act ("LDA"), the Foreign Agent Registration Act ("FARA"), the Internal Revenue Code ("IRC"), the Logan Act, and the Iran Libya Sanctions Act ("ILSA").

FARA requires that all persons acting as agents of foreign principals file a registration statement with the Attorney General. 22 U.S.C. §§ 611-618 (1983). The key section of the Act is the definition of the term "agent of a foreign principal." *Id.* at § 611(c). That term includes:

> any person who acts as an agent, representative, employee, or servant, or any person who acts in any other capacity at the order, request, or under the direction or control, of a foreign principal or of a person any of whose activities are directly or indirectly supervised, directed, controlled, financed, or subsidized in whole or in major part by a foreign principal, and who directly or through any other person —
>
> (i) engages within the United States in political activities for or in the interests of such foreign principal;
>
> (ii) acts within the United States as a public relations counsel, publicity agent, information-service employee or political consultant for or in the interests of such foreign principal;
>
> (iii) within the United States solicits, collects, disburses, or dispenses contributions, loans, money, or other things of value for or in the interest of such foreign principal.

*Id.*

The Logan Act has also been recent focus of the defendant's discovery efforts.  (*See* Defendant's Motion to Compel Production of Documents Concerning the Legality of Plaintiffs' Lobbying Activities, Docket no. 119.) The Logan Act, 18 U.S.C. § 953, makes it a crime for any citizen of the United States directly or indirectly to commence or carry on correspondence or intercourse with any foreign government or any officer or agent thereof "with intent ... to defeat the measures of the United States." During Dr. Parsi's deposition, the defendant, through

counsel peppered Dr. Parsi with questions regarding the nature of any legal advice that he may have received regarding compliance with the Logan Act. In his Motion to Compel, the defendant now claims that he simply wants Dr. Parsi to answer the question as to the fact of whether he ever sought such advice, not about the substance of any advice given. Be sure, the record is clear that the defendant, during Dr. Parsi's deposition, wanted to know the actual nature of any legal advice given to Dr. Parsi regarding the Logan Act.

Upon information and belief, it is the defendant's intention to use information obtained in this lawsuit in his effort to destroy Plaintiffs by claiming that they have violated FARA, the Logan Act, as well as the plethora of other federal laws the defendant is focused upon. Defendant is not interested in impeaching Dr. Parsi, Defendant is interested in creating a record to box-in Dr. Parsi as it relates to defendant's ongoing campaign to destroy Plaintiffs, including by use of existing federal law.

Whether the Plaintiffs violated any federal laws is not, however, the subject of this lawsuit nor the substance of Plaintiffs' defamation claims. The Court should not sanction the defendant's campaign to destroy Plaintiffs by allowing the defendant to transform a case about his defamatory statements into "malicious prosecution" of Plaintiffs using existing federal law.

## II. CONCLUSION

For each of the reasons set forth above, Plaintiffs' Motion *in Limine* Regarding Plaintiffs' Purported Lobbying Activities should be granted.

Respectfully submitted,

/S/
A.P. Pishevar (D.C. Bar No. 451015)
Adrian V. Nelson, II (*Pro Hac Vice*)
**PISHEVAR & ASSOCIATES, P.C.**
600 East Jefferson Street, Suite 316

> Rockville, MD 20852
> Phone: (301) 279 – 8773
> Fax:     (301) 279 – 7347
> Counsel for the Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| TRITA PARSI, et al. | ) |
| Plaintiffs, | ) |
| v. | ) Civil Action No. 08 CV 00705 (JDB) |
| DAIOLESLAM SEID HASSAN, | ) |
| Defendant. | ) |

## CERTIFICATE OF SERVICE

I certify that on August 5, 2011, I served, via email, Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion in Limine Regarding Plaintiff's Purported Lobbying Activity to:

>Timothy E. Kapshandy, Esquire
>Peter G. Jensen, Esquire
>SIDLEY AUSTIN LLP
>1501 K Street, N.W.
>Washington, D.C. 20005
>(202) 736-8000
>tkapshandy@sidley.com
>
>Attorneys for Defendant
>Seid Hassan Daioleslam
>
>
>_____/s/_____
>Afshin Pishevar
>Adrian Nelson
>600 East Jefferson Street
>Suite 316
>Rockville, Maryland 20852
>(301) 279-8773
>ap@pishevarlegal.com
>anelson@pishevarlegal.com
>
>
>Attorneys for Plaintiff
>Trita Parsi
>National Iranian American Council