UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TRITA PARSI<br><br>and<br><br>NATIONAL IRANIAN AMERICAN COUNCIL,<br><br>      Plaintiffs,<br><br>      v.<br><br>DAIOLESLAM SEID HASSAN,<br><br>      Defendant. | Civil No. 08 CV 00705 (JDB) |

**DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION
TO COMPEL DAMAGES DISCOVERY AND/OR
TO STRIKE IN PART PRAYER FOR RELIEF**

A.   Plaintiffs Continue to Refuse to Produce Legal Bills, Even with a Confidentiality Agreement: Court Should Compel Discovery and/or Strike the Prayer for Relief on Attorney Fees and Costs.

Plaintiffs do not dispute that in order to seek attorney fees and costs in this matter they must produce their legal bills. (*Plaintiffs' Opp. To Motion to Compel Damages Discovery or Strike Prayer for Relief*, Docket No. 127 at 3-4). However, they continue to refuse to provide any such information, even with a confidentiality agreement. *Id*. at 4. Plaintiffs claim that even with a confidentiality agreement they cannot be assured that Defendant will not misuse the information. Such fears are unfounded and unsupported by the actions of the parties. The fact remains, if Plaintiffs want to seek legal fees and costs they must provide information to support that award. *OFS Fitel, LLC, OFS Brightwave, LLC v. Epstein, Becker and Green, P.C.*, 549 F.3d

1344, 1366 (11th Cir. 2008).  In the absence of any such information this Court should either compel production of such records or strike Plaintiffs' Prayer for Relief as to legal fees.

Plaintiffs' state that Defendant has a "[h]istory of . . . [d]isseminating [d]iscovery [m]aterials" and thus they are unwilling to produce any bills.  (*Plaintiffs' Opp. To Motion to Compel Damages Discovery or Strike Prayer for Relief*, Docket No. 127 at 3-4).  Aside from being irrelevant to the Court's determination here, Plaintiffs' concerns are also unfounded.  As the Court well knows from the multiple times Plaintiffs have sought a protective order, Plaintiffs themselves have used discovery materials in their publications.  (*See*, e.g. Docket No. 46.)  Defendant has done similarly.  However, Defendant has strictly compiled with all three limited confidentiality agreements already in place in this case.  This leaves Plaintiffs in the unenviable position of arguing that fear of Defendant doing what Plaintiffs have repeatedly done (publish discovery materials) "leaves Plaintiffs extremely reticent about producing their legal bills" and further arguing that a confidentiality agreement would not sufficiently answer their supposed concerns when all prior practice in this case demonstrates that confidentiality agreements are more than enough to keep Plaintiffs' information out of the public eye.

Regardless, Plaintiffs provide no support or authority for their refusal to produce these bills.  Nor do they provide any support or authority as to the insufficiency of a confidentiality agreement.  In fact, the authority is to the opposite.  The Court should compel Plaintiffs to produce these records or strike Plaintiffs' Prayer for Relief as to attorney fees.

B.   Plaintiff Parsi's Claim for Special Damages is Unfounded: Court Should Strike the Prayer for Relief on Special Damages.

Plaintiff Parsi "does not dispute that specific evidence demonstrating the financial harm from defamation is required." (*Plaintiffs' Opp. To Motion to Compel Damages Discovery or Strike Prayer for Relief*, Docket No. 127 at 4); *see Robertson v. McCloskey*, 680 F. Supp. 414,

415-16 (D.D.C. 1988) (refusing to allow Plaintiff's expert to testify as to his lost future earning capacity because expert "assumed" that Plaintiff's reputation was harmed by the alleged libel); *see also Oncore Constr., LLC v. Laborer's Int'l Union ECF of N. Am.*, No. 02-1634, 2003 U.S. Dist. LEXIS 26760, at *18-19 (D.D.C. Sept. 30, 2003) (damages claims in defamation case require proof of damages to be actionable). And despite the fact that he has produced no evidence of financial harm and had no expert substantiate his claim, he now argues that there is such evidence. However, he is incorrect.

Plaintiff Parsi first argues that his 2007 non-NIAC business income was $18,750. *Id*. at 4. However, this is inaccurate. Plaintiff Parsi arrives at this number by including $10,200 paid to Parsi by NIAC out of a National Endowment for Democracy ("NED") grant. (Attached as Ex. A are disbursement records from the NED account showing NIAC's payments to Parsi.). Clearly, this is NIAC-related income. In fact, for Parsi to claim NIAC cut his consulting income as a result of Defendant's writings, would mean that NIAC necessarily believes the articles to be credible.

Additionally, Parsi's assumption that this NED grant was perpetual is unfounded. First, Defendant has written an article concluding that NIAC and Parsi defrauded the NED in various ways by misusing these funds. (Defendant's article appears at http://www.iranian-americans.com/docs/NedReport.pdf and is attached as Ex. B; see also, Defendant's deposition Testimony, Vol. I pp. 233-234 and Vol. II pp. 155-165, attached as Ex. C).[1] Second, Parsi's damages calculation assumes that he would continue to have NIAC pay him from the NED grant even though the NED grant was discontinued in 2006 due to the political climate in Iran

---

[1] Defendant has shared this information with the Office of Inspector General at the Department of State. (Daioleslam Dep., Vol. I pp. 233-234, attached as Ex. C). And to the extent Plaintiffs argue that this article is defamatory they will need to prove that they did not defraud the NED.

preventing NIAC from doing the project. (See Mansouri Dep., pp. 17-18, attached as Ex. D). The project director, Mohammad Mansouri, testified that the project was cancelled in the summer of 2006 (*Id.*) although NIAC continued to dip into the funds for the next year and a half as it would not look good if they returned the unused funds. (*Id.*, pp. 140-172). Parsi's assumptions in his damages claim that the NED grant would continue *in finitum* and that its termination in 2006 was due to Defendant's writings in 2007 are unsupported and inaccurate.

Second, Parsi also argues that in 2009 he suffered an additional income loss of $5,149. (*Plaintiffs' Opp. To Motion to Compel Damages Discovery or Strike Prayer for Relief*, Docket No. 127 at 5). However, it appears that this was mostly the result of his business expenses rising between 2008 and 2009 by $4,763. (See, Schedule C to Parsi's 2007-2009 tax returns, Ex. E to Def.'s Motion). In other words, Parsi makes the error of using "net" consulting income instead of "gross" consulting income. His actual gross consulting receipts for the three-year considering the termination of the NED grant were pretty consistently about $25,000/year:

|      | **Gross** | **Expenses** | **Net** |
|------|-----------|--------------|---------|
| **2007** | $33,642 | $14,892 | $18,750 |
| **2008** | 25,048 | 14,591 | 10,457 |
| **2009** | 24,662 | 19,354 | 5,308 |

(*Id.*, Schedule C). The reason his 2009 <u>net</u> consulting income "decreased" about $5,000 was due to the increase in expenses of $4,763. Clearly, Defendant's writings were not the cause of Parsi's increased expenses.[2] Thus, the majority of this alleged "loss" was completely unrelated to Defendant.

Third, Parsi, like Joel Morse (NIAC's damages expert who is the subject of a pending Daubert Motion) incorrectly begins his damages period in 2008. (*Defendant's Motion in Limine to Exclude Testimony of Joel Morse*, Docket No. 92 at 5). This allows Parsi to use 2007 income,

---

[2] The increase appears mainly to be due to a $5,000 increase in his home office deduction as a result of Parsi moving to a larger home in 2009. Clearly, Defendant's writings did not cause this.

which was far higher than his income from 2002-2006, as the baseline.  (*See,* 2002-2009 Tax Returns, attached as Ex. E to *Defendant's Motion to Compel Damages Discovery and/or Strike in Part Prayer for Relief*, Docket No. 120).  However, this conveniently ignores the fact that Defendant began his allegedly damaging writing at the beginning of 2007.  Parsi fails to explain the high income of 2007 in the face of this fact.  The correct comparison is his income in 2006 compared to that of 2007 through 2009.  Unfortunately for Parsi, his income in each year after 2006, when Defendant was writing, is higher than his income prior to Defendant's writings.

Finally, Parsi also has a Swedish bank account that he funds with the money he makes on certain speaking engagements, articles he has written, television appearances, and scholarships outside of the United States.  (Deposition of Trita Parsi, December 1, 2010, pp. 292-296, attached as Ex. H to *Defendant's Motion to Compel Damages Discovery and/or Strike in Part Prayer for Relief*, Docket No. 120).  Parsi has not produced these accounts in spite of Defendant's request for all documents relating to his damages claim.  And, as he does not include these funds on his U.S. income tax returns, it is impossible for Defendant to know to what extent Parsi's income has truly risen or decreased over the last several years.  For these reasons, the Court should strike Plaintiff Parsi's Prayer for Relief as to special damages in the form of lost income.

### C. Plaintiffs' Claim for General Damages is Unsupported: Court Should Strike the Prayer for Relief on General Damages.

Plaintiffs offer little to no evidence for their claim of general damages and offered nothing new in their Opposition.  Instead they argue that no evidence is required and these damages can be assumed.  However, this is incorrect.  Presumed damages are only available if a plaintiff proves that a defendant acted with knowledge of falsity or reckless disregard.  And although this remains an open question in this matter, Plaintiffs must also offer something more

than gross speculation in order to plead general damages and receive anything other than a nominal award.

Plainitffs cite *Gertz v. Robert Welch, Inc* for the proposition that under "[t]he common law of defamation" a plaintiff may recover "purportedly compensatory damages without evidence of actual loss." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349 (1974). However, Plaintiffs fail to point out that it was this very common law rule that the Court was modifying in its opinion. *Id*. ("[W]e hold that the States *may not* permit recovery of presumed or punitive damages, at least when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth.") (emphasis added). In the very next sentence after the section quoted by Plaintiffs, the Court reasoned that the common law rule required modification because it allowed juries and States to impinge unnecessarily on the First Amendment. *Id*. ("The largely uncontrolled discretion of juries to award damages where there is no loss unnecessarily compounds the potential of any system of liability for defamatory falsehood to inhibit the vigorous exercise of *First Amendment* freedoms." And, "States have no substantial interest in securing for plaintiffs such as this petitioner gratuitous awards of money damages far in excess of any actual injury.").

In fact, the Court changed the common law rule for one of the same reasons that this Court should not allow Plaintiffs to seek general damages without any proof of knowledge of falsity: The former common law rule of "the doctrine of presumed damages invites juries to punish unpopular opinion rather than to compensate individuals for injury sustained by the publication of a false fact." *Id*.

Although the question of knowledge of falsity or reckless disregard is open, Plaintiffs must still offer something now that is more than gross speculation in order to plead general

6

damages and receive more than a nominal award, *see, e.g.*, *Arlie Found, Inc. v. Evening Star Newspaper Co.*, 337 F.Supp. 421, 431 (D.D.C. 1972) (citing cases).  Plaintiffs, however, are unable to do this.  Plaintiff Parsi's only claim for general damages is mental anguish that he suffers from death threats. (Deposition of Trita Parsi, May 11, 2011, pp. 223-30, attached as Ex. H to *Defendant's Motion to Compel Damages Discovery and/or Strike in Part Prayer for Relief*, Docket No. 120). And, the only "death threat" potentially relevant to the Defendant came from just one person who always called with an interview of Defendant playing in the background. (*Id*. at 228).  Plaintiff Parsi has offered nothing more.  As such, this Court should strike the general damages sought in Plaintiffs' Prayer for Relief.

## CONCLUSION

For the foregoing reasons, Defendant requests this Court to compel damages discovery and/or strike the sections of Plaintiffs' Prayer for Relief discussed above.

Dated: August 16, 2011

/s/
Timothy E. Kapshandy (Illinois Bar No. 6180926, admitted *pro hac vice*)
Bradford A. Berenson (D.C. Bar No. 441981)
HL Rogers (D.C. Bar No. 974462)
Peter G. Jensen (D.C. Bar No. 982599)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C.  20005
(202) 736-8000
hrogers@sidley.com

Attorneys for Defendant
Seid Hassan Daioleslam

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TRITA PARSI** ) | |
| ) | |
| and ) | |
| ) | |
| **NATIONAL IRANIAN AMERICAN COUNCIL,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | Civil No. 08 CV 00705 (JDB) |
| ) | |
| **DAIOLESLAM SEID HASSAN,** ) | |
| ) | |
| ) | |
| **Defendant.** ) | |

## CERTIFICATE OF SERVICE

I certify that on August 16, 2011, I served, via email, Defendant's Reply in Support of His Motion to Compel Damages Discovery and/or Strike in Part Plaintiffs' Prayer for Relief to:

>   Afshin Pishevar / Adrian Nelson
>   600 East Jefferson Street, Suite 316
>   Rockville, Maryland 20852
>   (301) 279-8773
>   ap@pishevarlegal.com / anelson@pishevarlegal.com

Dated: August 16, 2011

/s/
Thomas E. Ross (D.C. Bar No. 994275)
Bradford A. Berenson (D.C. Bar No. 441981)
HL Rogers (D.C. Bar No. 974462)
Peter G. Jensen (D.C. Bar No. 982599)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C.  20005
(202) 736-8000
tom.ross@sidley.com

Attorneys for Defendant
Seid Hassan Daioleslam

# **INDEX OF EXHIBITS**

| EXHIBIT A | Disbursement records from the NED account showing NIAC's payments to Trita Parsi |
|---|---|
| EXHIBIT B | Defendant's March 24, 2010 article, "Did NIAC defraud the Congressional funds?" from http://www.iranian-americans.com/docs/NedReport.pdf |
| EXHIBIT C | Excerpts from the deposition of Diaoleslam Seid Hassan, Volumes I and II (Dec. 14-15, 2010) |
| EXHIBIT D | Excerpts from the deposition of Mohammad Mansouri Garakani (March 12, 2010) |