# EXHIBIT C

# Volume I

1

2             IN THE UNITED STATES DISTRICT COURT

3                FOR THE DISTRICT OF COLUMBIA

4   ----------------------------------------------------------

5   TRITA PARSI and NATIONAL IRANIAN AMERICAN

6   COUNCIL,

7                            Plaintiffs,

8             vs.                No. 08 CV 00705 (JDB)

9   DAIOLESLAM SEID HASSAN,

10                           Defendant.

11  ----------------------------------------------------------

12

13

14            DEPOSITION OF DAIOLESLAM SEID HASSAN

15                    Chicago, Illinois

16                 Tuesday, December 14, 2010

17

18

19

20

21

22  Reported by:

23  Mary M. Flagg, RPR

24  JOB NO. 4775

1                    December 14, 2010

2                    9:00 a.m.

3

4

5                    Deposition of DAIOLESLAM SEID HASSAN,

6    held at the offices of Sidley Austin, LLP, One South

7    Dearborn Street, Chicago, Illinois, pursuant to Notice

8    and Agreement, before Mary M. Flagg, a Notary Public of

9    the State of Illinois.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

```
 1    A P P E A R A N C E S:

 2    PISHEVAR & ASSOCIATES, P.C.
      Attorneys for Plaintiffs
 3        Jefferson Plaza, Suite 316
          600 East Jefferson Street
 4        Rockville, MD 20852
      BY: ADRIAN V. NELSON, II, ESQ.
 5        A.P. PISHEVAR, ESQ.
          E-mail: Anelson@pishevarlegal.com
 6
      SIDLEY AUSTIN LLP
 7    Attorneys for Defendant
          One South Dearborn Street
 8        Chicago, Illinois 60603
      BY: TIMOTHY E. KAPSHANDY, ESQ.
 9        ERIC GALVEZ, ESQ.
          tkapshandy@sidley.com
10        megalvez@sidley.com

11    ALSO PRESENT:   LARRY HITZ, LVS, Videographer
                      larry@toplegalvideoservices.com
12
                      DR. TRITA PARSI.
13

14

15

16

17

18

19

20

21

22

23

24
```

1          MR. NELSON:   Would you mark this as Plaintiff's

2     Exhibit Number 1.

3                          (Whereupon, Plaintiff's Exhibit

4                          Number 1, notice of deposition,

5                          was marked for identification.)

6          THE VIDEOGRAPHER:   Good morning.   This is the start

7     of tape labeled number one of the videotaped deposition

8     of Hassan Daioleslam, case number 08 CV 00705 entitled

9     Parsi et al. versus Hassan et al. in the United States

10    District Court for the District of Columbia.

11          Today is December 14, 2010.   The approximate

12    time is 8:57 a.m. Chicago.   The location is One North

13    Dearborn, Chicago, Illinois, 60603.

14          My name is Larry Hitz, Certified Legal Video

15    Specialist on behalf of TransPerfect Legal Solutions, 216

16    East 45th Street, 9th floor, New York, New York, zip code

17    10017.   The court reporter is today is Mary Flagg on

18    behalf of TransPerfect.

19          Will counsel please identify themselves for the

20    record and state what party you are representing with

21    your notice.

22          MR. NELSON:   Good morning.   Adrian Nelson and Afshin

23    Pishevar on behalf of the plaintiffs NIAC and Trita

24    Parsi.

1    that Mr. Parsi sent to Iranian ambassador to UN and he

2    told based on what I hear in Washington so so so, it

3    means that he relegates, he gave what he heard in

4    Washington to the Iranian ambassador.

5        MR. NELSON:  Well you're obligated to answer the

6    question unless your counsel directs you not to answer

7    it, so do you need to confer with your attorney?

8        MR. KAPSHANDY:  Let's go off the record then.

9        THE VIDEOGRAPHER:  Approximate time is 4:17.  We're

10   off the record.

11                            (Whereupon, a discussion was had

12                             off the record.)

13       THE VIDEOGRAPHER:  Approximate time is 4:25 p.m.

14   Chicago.  We're back on the record.

15       MR. NELSON:  Mr. Dai, you I think had a chance

16   during our break to consult with your attorney about my

17   last question which related to the names of the two

18   investigative reporters that are referenced in the

19   article that we were discussing.  Are you prepared to

20   answer that question now?

21       A    I did.  I wanted to talk about two other

22   points.  I will give you the names and -- two points

23   before that.  The question we had I think a while ago

24   about to whom I provided the discovery documents.  I

1    forgot to mention that, first of all, I prepared a

2    document NED.

3         Q    You prepared?

4         A    I prepared a complete document about the

5    relation between NIAC and NED, and in that document I

6    brought a lot of links to the actual document, discovery

7    documents.  That document I sent it to office of

8    Inspector General.  That's my duty to inform you that

9    NIAC to my belief has defrauded the congressional fund.

10   That is one.

11        The second that I was contacted by FBI few

12   months ago and I gave them some of the discovery

13   documents, those that are not privileged.  That is one

14   point.

15        The other point that something you have been

16   trying to ask me that brought me this point, that when I

17   told that this website from MEK posted were one of my

18   articles and in which they told that -- they borrowed it

19   from another website and they told me if I have a copy of

20   that, and I wanted to ask you and Mr. Parsi wrote that

21   my article that were posted on MEK website prior to being

22   published in English did he bring any document, any copy,

23   any link?  Because for every phrase that I wrote you

24   asked for a link, a document.

1   STATE OF ILLINOIS   )
                         )
2   COUNTY OF COOK      )

3

4           I, MARY M. FLAGG, a Registered Professional
    Reporter, within and for the State of Illinois, do hereby
5   certify:

6           That previous to the commencement of the
    examination of the witness, the witness was duly sworn to
7   testify the whole truth concerning the matters herein;

8           That the foregoing deposition was reported
    stenographically by me, was thereafter reduced to a
9   printed transcript by me, and constitutes a true record
    of the testimony given and the proceedings had;

10
            That the said deposition was taken before me
11  at the time and place specified;

12          That the signature of the witness was
    reserved.
13
            That I am not a relative or employee for
14  attorney or counsel, nor a relative or employee of such
    attorney or counsel for any of the parties hereto, nor
15  interested directly or indirectly in the outcome of this
    action.
16
            IN WITNESS WHEREOF, I do hereunto set my
17  hand at Chicago, Illinois this __ day of          2010.

18

19

20          _____
                  Registered Professional Reporter
21                License No. 084-001447

22

23

24

# __Volume II__

```
 1

 2              IN THE UNITED STATES DISTRICT COURT

 3                FOR THE DISTRICT OF COLUMBIA

 4     ----------------------------------------------------------

 5     TRITA PARSI and NATIONAL IRANIAN AMERICAN

 6     COUNCIL,

 7                              Plaintiffs,

 8                   vs.              No. 08 CV 00705 (JDB)

 9     DAIOLESLAM SEID HASSAN,

10                              Defendant.

11     ----------------------------------------------------------

12

13

14              DEPOSITION OF DAIOLESLAM SEID HASSAN

15                       Chicago, Illinois

16                  Wednesday, December 15, 2010

17

18

19

20

21

22     Reported by:

23     Mary M. Flagg, RPR

24     JOB NO. 4776
```

1                    December 15, 2010

2                    9:00 a.m.

3

4

5          Deposition of DAIOLESLAM SEID HASSAN,

6   held at the offices of Sidley Austin, LLP, One South

7   Dearborn Street, Chicago, Illinois, pursuant to Notice

8   and Agreement, before Mary M. Flagg, a Notary Public of

9   the State of Illinois.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

```
 1    A P P E A R A N C E S:

 2    PISHEVAR & ASSOCIATES, P.C.
      Attorneys for Plaintiffs
 3        Jefferson Plaza, Suite 316
          600 East Jefferson Street
 4        Rockville, MD 20852
      BY: ADRIAN V. NELSON, II, ESQ.
 5        A.P. PISHEVAR, ESQ.
          E-mail: Anelson@pishevarlegal.com
 6

 7    SIDLEY AUSTIN LLP
      Attorneys for Defendant
 8        One South Dearborn Street
          Chicago, Illinois 60603
 9    BY: TIMOTHY E. KAPSHANDY, ESQ.
          ERIC GALVEZ, ESQ.
10        Email: Tkapshandy@sidley.com
                 megalvez@sidley.com
11
      ALSO PRESENT:  DR. TRITA PARSI.
12

13

14

15

16

17

18

19

20

21

22

23

24
```

```
1                    DAIOLESLAM SEID HASSAN,

2    called as a witness, having been duly sworn by a Notary

3    Public, was examined and testified as follows:

4                         EXAMINATION

5                       BY MR. NELSON:

6         MR. NELSON:  Good morning, Mr. Dai.

7         A    Good morning.

8         MR. NELSON:  We are about to begin the continuation

9    of your deposition and I just wanted to make sure you

10   understood that the same understandings that we had in

11   place yesterday are in place today.

12        A    Yes.

13        Q    You understand that you are still under oath

14   and you are required to give truthful testimony today?

15        A    I do.

16        Q    Between last evening and this morning have you

17   reviewed any documents?

18        A    Regarding for the deposition, no.

19        Q    Nothing relating to the deposition?

20        A    No.

21        MR. KAPSHANDY:  He did some homework per your

22   request on a couple of pieces of information so we can

23   get that housecleaning out of the way.

24        MR. NELSON:  Okay.
```

Page 155

1    writing an article and bringing the facts.

2         Q    Do you know whether or not Mr. Terry Hicks was

3    a member of Senator Coburn's staff?

4         A    I think he was.

5         Q    And do you know whether or not the

6    investigation that you are contending the senate

7    undertook has been completed?

8         A    I don't have no -- I have no idea.

9         Q    Do you know whether or not NIAC has ever been

10   called to provide any statement or testimony relating

11   your claims that there was fraud in the NED NGO matter?

12        A    I have no idea.  The only thing I know that I

13   have asserted something in my article that Mr. Parsi

14   contacted his friends and his partners in Iran, and did

15   they confirm my claims.  So I was confident in my

16   writing.

17        Q    But as we sit here today in 2010 nearly two

18   years after you indicated the possibility of there being

19   an investigation you don't know whether there's been any

20   finding that NIAC did anything fraudulent relating to

21   NED, correct?

22        A    I am not aware of.

23        Q    Now in your testimony yesterday when you were

24   talking about the NED grant you indicated that one of

Page 156

1    your pieces of evidence that NIAC had done something

2    fraudulent was the fact that they purchased flowers with

3    grant money, is that correct?

4        A    I think so.

5        Q    And as you sit here today you have no personal

6    knowledge that any governmental agency has found that

7    NIAC was fraudulent in the way it administered that

8    grant, correct?

9        A    I have no idea even if they investigated it, so

10   how should I tell what the funding -- the finding of this

11   investigation is.

12       Q    So then what is your basis for going around in

13   publications and verbally saying that NIAC committed

14   fraud?

15       A    Verbally?  I published my opinion, sir, with

16   the facts.

17       Q    You never stated in any public forum that NIAC

18   engaged in fraud relating to NED?

19       A    I did, and I confirmed what I wrote.

20       Q    How did you confirm what you wrote if there's

21   been no finding of fraud by any governmental entity?

22       MR. KAPSHANDY:  Objection.

23       MR. NELSON:  You can answer.

24       MR. KAPSHANDY:  Those are totally unrelated.  Your

1    question assumes --

2         MR. NELSON:  No speaking objections.

3         MR. KAPSHANDY:  Argumentative and I ask that you

4    stop it.  The form is highly inappropriate.  You've asked

5    him what the basis was and you cut him off.  Let him

6    answer.

7         A    Sir, just to remind you that we have been

8    talking about Bob Ney.  As you remember, he was convicted

9    in 2007 for what he did in 2002, so it doesn't matter if

10   five years later something because it came to the light,

11   into the light five years later it does not mean that it

12   didn't happen.

13            For me that is my opinion.  That is my opinion

14   to tell something that I believe had been a fraud.  That

15   is my duty, a citizen duty to tell this truth as I see

16   it.  That is my duty.

17            If the people in place in the NED they don't

18   try to go farther and investigate it, so that is their

19   problem.  That is not my problem.

20   BY MR. NELSON:

21        Q    And my question to you is if there's been no

22   finding by any governmental agency that NIAC engaged in

23   fraud relating to the NED grant what is your factual

24   basis for either publishing or stating that NIAC engaged

1    in fraud?

2         MR. KAPSHANDY:  Objection.  Again, counsel, that's

3    misleading and argumentative.  You ask him what the basis

4    is that's fine, but never ever has he said they've been

5    found guilty of fraud by some agency and --

6         MR. NELSON:  And I did not state that.  And you need

7    to learn to listen to my questions.  I can ask them the

8    way I choose to.  I can set them up the way I choose to.

9    They're not misleading and he can answer my question or

10   you can instruct him not to answer my question, but

11   you're not going to dictate how I ask my questions.

12        MR. KAPSHANDY:  I'm objecting to it.  It's

13   misleading.

14        MR. NELSON:  The form is appropriate.  If you don't

15   like the form then we can contact the court, but this is

16   a proper form of a question and I'm going to ask it the

17   way I want to ask it.

18        Q    My question to you is if no government agency

19   has found that NIAC engaged in fraud then what is your

20   basis for making the statement that they have engaged in

21   fraud?

22        MR. KAPSHANDY:  Objection.  Form.  Misleading and

23   argumentative.  Go ahead and answer again.

24        A    Your question has two parts.  First part says

Page 159

1    if there has been no finding.  First of all, how do you

2    know that there has been any investigation?  Secondly, if

3    it has been investigated --

4    BY MR. NELSON:

5        Q    Didn't you already testify there was an

6    investigation by the senate?

7        A    I told that they started.  I don't know why

8    they stopped.

9        Q    Well that's an investigation, is it not?

10       A    I don't know why they stopped.  Maybe it's been

11   pressure, sir.

12       Q    Okay, so now you're changing your response to

13   say you know if there's was an investigation?

14       MR. KAPSHANDY:  Now you're cutting him off.  Were

15   you finished with your answer?

16       A    First of all, sir, I don't know that if it has

17   been a real investigation because I know that they

18   started to ask some questions from Mr. Parsi and NED

19   about it from the Senator Coburn's office.  I don't know

20   if that investigation was completed.  So how do you know

21   that any investigation was completed to affirm that the

22   finding or non-finding has been made, first of all.

23            Secondly, sir, it is not because it has not

24   been any investigation that I'm aware of that if I see

1    someone is stabbing someone in the street I don't go even

2    after two years to denounce someone, say hey, this man

3    for me, he has committed a crime.

4           Oh you are telling that, but it has been no

5    investigation.  I told regardless of what the other they

6    have done.  This is my duty and, sir, counsel, I don't

7    know how you can sit down today, ask me this questions

8    because at least the discovery documents prove that not

9    only I was right in 2008 to write that what I had in my

10   article, if I knew at that time what I know today based

11   on the discovery materials I would go personally to the

12   Congress and ask them why do you close your eyes to all

13   these documents.

14          I mean now today I am more solidified in my

15   conviction that NIAC and Mr. Parsi intentionally,

16   knowingly they defrauded the congressional money.

17          Third, in an e-mail he says to Mr. Parsi that

18   he should keep the unused money.  Even one cents it is

19   too much that is defrauding the congressional fund.

20      Q    Do you have a background in the administration

21   of government contracts?

22      A    What?

23      Q    Do you have any kind of expertise in how a

24   government grant should be administered?

Page 161

1       A       Do you?

2       Q       You don't ask me questions.  I ask you the

3   questions.

4       A       I am here, sir.

5       Q       Answer my question, sir.  Do you have any

6   professional background in the administration of

7   governmental grants?

8       A       I don't.  But it doesn't bother me to write

9   something that I think is a fraud for me.

10      Q       Do you have an understanding that using the

11  term "fraud" also has a legal definition?

12      A       Oh of course it has a legal definition.

13      Q       When you use the term "fraud" as you stated

14  with respect to NIAC and NED grant were you saying that

15  they committed fraud in a legal way?

16      A       First of all, sir, you are mistaken about

17  something.  The title of the article I sent to Front Page

18  was, Did NIAC defraud the National Endowment for

19  Democracy.  That was the title.  So I pose a question.

20              But sitting today I am very, very positive

21  to tell you that was not the question.  That was a real

22  fact that happened.  That they defrauded, they misled the

23  National Endowment for Democracy, they did not do any

24  job.  They tried to mislead the National Endowment for

1    Democracy.  They took the money for other uses that has

2    nothing to do with the project and they hid materials

3    from NED.

4        Q    Is it your testimony that because your article

5    was entitled, Did NIAC Defraud the NED that you did not

6    reach a conclusion that NIAC had defrauded the NED?

7        A    Oh, no not at all.  Even at that time for me

8    was a conviction that trying to labeling an entity in

9    Iran that has been established by the Iranian regime and

10   call it non-governmental that is by itself a fraud

11   because Mr. Parsi and NIAC's main partner in Iran was

12   called Hanyaran, H-a-n-y-a-r-a-n.

13            And this Hanyaran, sir, in '98 it was initiated

14   by the Iranian government with the direct assistance and

15   involvement of the Iranian government it was created.

16   The chairman of the board of this Hanyaran was deputy

17   minister and it was later confirmed by the e-mail by

18   Mr. Trita Parsi.

19            When you portray your partner in Iran as an NGO

20   while this entity has been created by the Iranian

21   government this is by itself a fraud and misleading.

22       Q    Is it your testimony that in your article that

23   you did not reach a conclusion that NIAC had defrauded

24   the NED?

Page 163

1      A    I reached a conclusion that NIAC defrauded.

2      Q    And when you concluded that NIAC defrauded the

3   NED were you concluding that NIAC had defrauded NED in an

4   illegal way?

5      A    I don't know what you mean by illegal.  When

6   you defraud the congressional fund do we have a legal way

7   of doing that?

8      Q    I asked you that question a few minutes ago.

9   Do you understand that there's a legal definition of

10   fraud?

11      A    I don't understand.  You ask me if defrauding

12   the National Endowment for Democracy was done in an

13   illegal way, I'm sure defrauding the congressional fund

14   it is an illegal -- we don't have a legal way of doing

15   that.

16      Q    So wouldn't it be important then if there is

17   a legal definition of fraud for you to indicate whether

18   or not when you conclude that NIAC defrauded the NED

19   whether or not you are saying that that was an illegal

20   way?  You don't think that's important to make that

21   distinction?

22      A    I think this is evidence, sir.

23      Q    You think what is evidence?

24      A    When I tell you I am being burned by the

Page 164

1   sunshine it implies it is in the day, it is not in the

2   night.  We are not in the night.  When I am telling that

3   NIAC defrauded the National Endowment for Democracy it

4   means that something that is not legal.

5        MR. NELSON:  Would you mark that as Exhibit 26,

6   please.

7                         (Whereupon, Plaintiff's Exhibit

8                         Number 26 was marked

9                         for identification.)

10       Q    I'm handing you what's been marked as

11  Exhibit 26.  And this purports to be an e-mail from you

12  to Michael Rubin.  "Subject:  NIAC lied about NED grant."

13  Looking at the second page of four, there's an e-mail

14  that is from Rubin to you dated June 14, 2008, and

15  Mr. Rubin says, "Hassan", and I'm reading in the middle

16  there, "I will try to put you in touch with some

17  congressional staff, but it would be important that you

18  not write or discuss any meetings you have with them."

19  Do you see that?

20       A    Yes, sir.

21       Q    Didn't you get advice from Mr. Rubin not to

22  keep any record of any meetings that you had with

23  congressional staff?

24       A    Sir, first of all, there was no such a meeting

Page 165

1    or contact.  To keep the record or not.

2        Q    So there was no meeting?

3        A    Nothing.  Nothing happened after that.  No one

4    contacted me.

5        Q    No congressman, no staff person?  Have you ever

6    been to The Hill before?

7        A    No.

8        Q    You've never been to Capitol Hill before?

9        A    No, sir.

10       Q    You've never met with a congressman in your

11   life?

12       A    With a senator, yes.

13       Q    What senator have you met with?

14       A    Senator McCain.

15       Q    When did you meet with Senator McCain?

16       A    It was this last summer in Arizona.

17       Q    In connection with his campaign for reelection?

18       A    One part was to support him because he was

19   threatened by a very right wing former congressman and

20   as, you know, the choice between a very right wing

21   congressman and Senator McCain.  So we ask the Iranian

22   Americans in Arizona I think two hundred and 50 people.

23   They met with Senator McCain.  I was one of them and I'm

24   proud of it, the event, and he came to support the

Page 260

1    STATE OF ILLINOIS   )
                         )
2    COUNTY OF COOK      )

3

4            I, MARY M. FLAGG, a Registered Professional
     Reporter, within and for the State of Illinois, do hereby
5    certify:

6            That previous to the commencement of the
     examination of the witness, the witness was duly sworn to
7    testify the whole truth concerning the matters herein;

8            That the foregoing deposition was reported
     stenographically by me, was thereafter reduced to a
9    printed transcript by me, and constitutes a true record
     of the testimony given and the proceedings had;

10
             That the said deposition was taken before me
11   at the time and place specified;

12           That the signature of the witness was
     reserved.
13
             That I am not a relative or employee for
14   attorney or counsel, nor a relative or employee of such
     attorney or counsel for any of the parties hereto, nor
15   interested directly or indirectly in the outcome of this
     action.
16
             IN WITNESS WHEREOF, I do hereunto set my
17   hand at Chicago, Illinois this __ day of          2010.

18

19

20           _____
                   Registered Professional Reporter
21                 License No. 084-001447

22

23

24