UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TRITA PARSI<br><br>and<br><br>NATIONAL IRANIAN AMERICAN COUNCIL,<br><br>    Plaintiffs,<br><br>    v.<br><br>DAIOLESLAM SEID HASSAN,<br><br>    Defendant. | Civil No. 08 CV 00705 (JDB) |

**DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION
TO COMPEL PRODUCTION OF DOCUMENTS CONCERNING
THE LEGALITY OF PLAINTIFFS' LOBBYING ACTIVITIES**

Plaintiffs have placed the legality of their lobbying activities squarely at issue in this case. Plaintiffs' Complaint alleges that Defendant defamed Plaintiffs by stating "that Parsi is a member of a subversive and *illegal* Iranian lobby" and "that NIAC is . . . engaging in *illegal* and subversive lobbying on behalf of [Iran]." Plaintiffs' Complaint, Counts I and III, #14 and 34 (emphasis added). Plaintiffs have alleged that these statements are defamatory *per se* and are thus required to prove their falsity. That obligation extends to both the assertion that Plaintiffs lobby on behalf of Iran and that the lobbying activities are illegal. Indeed, throughout this litigation Plaintiffs have repeatedly claimed that their "purported lobbying activities" were in compliance with the law. Plaintiffs cannot make that assertion and then withhold the basis for that claim from the Defendant's view. This effort to use the attorney-client privilege as both a sword and a shield should be rejected.

I.      **Plaintiffs' Response Brief Contains Major Misstatements**

Plaintiffs' Response states that "NIAC is and was, at all relevant times herein, a 501(c)(3) educational organization with a 501h election." (Response, p. 3). However, NIAC only made a 501h election late in 2009 after a November 2009 *Washington Times* article reporting that NIAC was engaged in illegal lobbying. Attached as Ex. A are NIAC's 2008 (amended) return and 2009 returns reflecting that NIAC did not use the section of Form C for 501h organizations in 2008 but did in 2009. Accordingly, NIAC was not at all times a 501(c)(3) with a 501h election. The distinction is important. Entities making 501h elections are entitled to spend up to 10-20% of their resources on lobbying depending on their size (26 U.S.C. §4911), but are required to keep records substantiating their claims. (See also, IRS publications produced by NIAC, attached as Ex. B and Instructions for Sched. C, Form 990, attached as Ex. C). 501(c)(3) entities, on the other hand, are not permitted to engage in any "substantial" lobbying . (*Id.*) Lobbying for IRS purposes is not the same as lobbying for LDA purposes; e.g., IRS lobbying includes executive branch lobbying and grassroots advocacy whereas LDA does not. (*Id.*) As such, NIAC's statement that it "may conduct lobbying activates according to relevant IRS regulations" (Response, p. 3) is a meaningless tautology and misleading. More accurately, NIAC should have said it was NOT permitted to engage in substantial lobbying prior to 2009.

II.     **Plaintiffs Ignore Defendant's Main Arguments**

Plaintiffs' Response ignores entirely Defendant's main argument that Plaintiffs have placed the legality of their lobbying at issue by including a claim of "illegal" lobbying in their Complaint and by pursuing defamation *per se* claims. Plaintiffs instead focus on whether Parsi and NIAC were lobbyists on behalf of the regime. (Plaintiffs' Response, pp. 2-6). While that is indeed one of the main components of the complaint, it is not the only component. As noted, the Complaint includes the claim that Defendant committed *per se* defamation by stating that NIAC

and Parsi were engaged in illegal lobbying.  Plaintiffs' Complaint, Counts I and I II, #14 and 34.  As such, Plaintiffs must prove the falsity of those statements.  To do so, they must introduce evidence that the lobbying activities were in compliance with the law.  Defendant is entitled to view and challenge that evidence.

Plaintiff makes much of the fact that the documents are privileged and claims that they are irrelevant to this litigation.  (Plaintiffs' Response pp. 7-9).  While some of the documents do appear to be privileged, for others Plaintiffs' privilege claim is dubious – specifically, the correspondence between NIAC and the Raffa Consulting Firm.  According to Plaintiffs, Raffa Consulting is "an accounting firm that was retained by NIAC at the recommendation of attorneys at Wiley Rein."  (Reply, p. 8).  It is axiomatic that attorney-client communications made in the presence of a third-party are not privileged.  While some states have statutorily created an accountant-client privilege (none exist in common law), Washington, D.C. is not one of those jurisdictions and does not recognize an accountant-client privilege.  *Kuhn & Kogan Chtd. v. Jeffrey C. Mensh & Assocs.,* 77 F. Supp. 2d 52 (D.D.C. 1999) (citing *Independent Petrochemical Corp. v. Aetna Casualty and Surety Co.,* 117 F.R.D. 292, 295 (D.D.C. 1987).

Plaintiffs' argument that the documents are irrelevant only stands if they ignore the plain language of their Complaint (and, indeed, the main argument in defendant's Motion to Compel) – namely, that the legality of Plaintiffs' lobbying activities is at issue in this case.  By introducing the legality of their lobbying activities into this case and by relying on the advice of lawyers to support a material element of their claim – that their activities were legal – Plaintiffs have waived any claim of privilege over those materials.   In fact, NIAC's statements to *Washington Times* reporter, Eli Lake, that "legal professionals" confirmed they were in compliance with lobbying laws alone constitutes a waiver.

**III.     Plaintiffs' Arguments Are Without Merit**

In their Response, Plaintiffs make essentially the same arguments as those in their Motion in Limine. (Docket No. 121). Plaintiffs conclusorily claim that the Defendant's discovery into their legal lobbying activities was a fishing expedition. (Response, pp. 3-4). They provide detailed stats on the number of times the word "lobbying" was mentioned at various depositions. (The fact that the word "lobbying" is used repeatedly in depositions in a case where Plaintiffs claim that articles about their lobbying activities are defamatory is hardly surprising.)

Plaintiffs argue that only evidence of illegal lobbying is relevant and discoverable. (Response, p. 5). Not only does this assume the ultimate fact in issue in the case, but – if accurate – means that Plaintiffs would be admitting to illegal lobbying by providing *any* discovery in this case. It is clear, considering the fact that Plaintiffs produced thousands of documents over the past two and a half years related to their lobbying activities, that they do not really subscribe to this view.

Plaintiffs also claim that legal advice that they were engaged in permissible lobbying is irrelevant to their lobbying activity before the suit was filed. (Response, p. 6). However, this ignores the problem of pursuing a defamation *per se* claim. Because they are attempting to prove *per se* defamation, they must show that they were at all times engaged in legal lobbying. Once they attempt to make that proof at trial (e.g., from testimony by Parsi), Defendant will be entitled to ask about the basis for that claim. As Parsi and all NIAC witnesses have disclaimed any expertise in lobbying laws, it is expected that Plaintiffs will claim that they received expert (i.e., legal) advice confirming that position. Additionally, as discussed above, once Plaintiffs testify that the legal advice supports their claim, any privilege over that advice is waived.

4

Finally, Plaintiffs now advance an argument that may be read to indicate that the advice they received from Wiley Rein was that their lobbying activities were not in compliance with the law, but that it should not be disclosed nevertheless.[1]  Plaintiffs now argue that FRE 407 and "higher social policy" encourage organizations to correct past legal noncompliance.  (Response, pp. 8-9).  Plaintiffs now seem to be admitting that the advice received does not support their contention that NIAC was in full compliance with all regulations and laws.  While FRE 407 does preclude the introduction in a personal injury case of subsequent remedial measures in order to prove negligence, culpable conduct, or defect, there are many exceptions to that rule.  23 Charles A. Wright & Kenneth W. Graham, Jr., FEDERAL PRACTICE AND PROCEDURE: EVIDENCE  § 5282 (1980).  Plaintiffs cite no case law supporting the proposition that FRE 407 would precluded evidence of legal advice about past *illegal* conduct by a plaintiff, especially when the plaintiff is claiming his conduct was at all times legal.   Plaintiffs "higher social policy" argument stands reason on its head.  One would think that the criminal penalties were enough incentive to comply with federal law and that the added incentive of being able to prevail in a tort case as long as one stops committing the crime sometime before verdict is marginal.  Moreover, Plaintiffs' interpretation of FRE 407 would provide a "free pass" to introduce false evidence without fear of impeachment.  Most importantly, FRE 407 does not provide a privilege against disclosure; it merely precludes admission of <u>subsequent</u> remedial measures into evidence.  Plaintiffs here are trying to preclude discovery of <u>prior</u>, not subsequent, conduct.  There is no authority for such.

---

[1] Defendant in good faith did not posit this in his motion, as such would have been tantamount to suggesting that Plaintiffs were advancing an argument not supported in fact or law contrary to Federal Rule of Civil Procedure 11(b). After all, all of Plaintiffs' public pronouncements were that the legal experts confirmed that their conduct was legal.  Plaintiffs' Response is the first indication since Disney's July 2008 memo that their lobbying was not legal.

5

## IV.     Conclusion

WHEREFORE, Defendant reiterates his request for an order to compel plaintiffs to 1) produce documents containing legal advice stating that the Plaintiffs were in compliance with lobbying laws, 2) produce any and all information, whether favorable or unfavorable, relating to the legality of Plaintiffs' lobbying activities, and 3) order Trita Parsi to answer at his deposition whether he ever sought advice as to whether his meetings with IRI officials was legal and the substance of that advice along with the costs of this motion an all other just and proper relief.

Dated:  August 16, 2011                                       /s/
Timothy E. Kapshandy (Illinois Bar No. 6180926, admitted *pro hac vice*)
Bradford A. Berenson (D.C. Bar No. 441981)
HL Rogers (D.C. Bar No. 974462)
Peter G. Jensen (D.C. Bar No. 982599)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C.  20005
(202) 736-8000
tkapshan@sidley.com

Attorneys for Defendant
Seid Hassan Daioleslam

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TRITA PARSI** ) | |
| ) | |
| and ) | |
| ) | |
| **NATIONAL IRANIAN AMERICAN COUNCIL,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | Civil No. 08 CV 00705 (JDB) |
| ) | |
| **DAIOLESLAM SEID HASSAN,** ) | |
| ) | |
| **Defendant.** ) | |

## ORDER

Upon consideration of Defendant Daioleslam's Motion to Compel, it is hereby:

ORDERED this ___ day of _____, 2011 that Defendant's motion to compel documents contain legal advice stating that Plaintiffs were in compliance with lobbying laws and all and all information, whether favorable or unfavorable, relating to the legality of Plaintiffs' lobbying activities is GRANTED.  Plaintiff Trita Parsi is also ordered to answer Defendant's questions about legal advice Parsi sought.  Plaintiffs shall pay Defendant the costs of bringing this motion within seven days of Defendant's filing a bill of costs;

Dated: _____, 2011            **SO ORDERED**


                                    _____/s/_____

                                    JOHN D. BATES
                                    United States District Judge.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **TRITA PARSI** ) | |
| ) | |
| and ) | |
| ) | |
| **NATIONAL IRANIAN AMERICAN COUNCIL,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | Civil No. 08 CV 00705 (JDB) |
| ) | |
| **DAIOLESLAM SEID HASSAN,** ) | |
| ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## CERTIFICATE OF SERVICE

I certify that on August 16, 2011, I served, via email, Defendant's Reply in Support of His Motion to Compel Production of Server and Compliance with Court's Orders of July 1, 2010 and March 29, 2011 to:

> A.P. Pishevar (D.C. Bar No. 451015)
> Adrian Nelson
> Jefferson Plaza, Suite 316
> 600 East Jefferson Street
> Rockville, Maryland 20850
> (301) 279-8773
> AP@pishevarlegal.com

Dated:  August 16, 2011                                         /s/
Thomas E. Ross (D.C. Bar No. 994275)
Bradford A. Berenson (D.C. Bar No. 441981)
HL Rogers (D.C. Bar No. 974462)
Peter G. Jensen (D.C. Bar No. 982599)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C.  20005
(202) 736-8000
tom.ross@sidley.com

Attorneys for Defendant
Seid Hassan Daioleslam

## **INDEX OF EXHIBITS**

| EXHIBIT A | NIAC's 2008 (amended) return and 2009 |
|---|---|
| EXHIBIT B | Internal Revenue Service articles on lobbying and 501(c)(3) status |
| EXHIBIT C | Internal Revenue Service 2008 instructions for Schedule C (Form 990 or 990-EZ) |