UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| TRITA PARSI <br><br> and <br><br> NATIONAL IRANIAN AMERICAN COUNCIL, <br><br> Plaintiffs, <br><br> v. <br><br> DAIOLESLAM SEID HASSAN, <br><br> Defendant. | Civil No. 08 CV 00705 (JDB) |

**DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION
TO COMPEL PRODUCTION OF MEMBERSHIP LISTS**

On July 1, 2011, Defendant moved for an order compelling Plaintiffs to produce NIAC's current, entire membership list from its Convio database as ordered by the Court on March 29, 2011 specifically and including: current members, former members, expired members, and current supporters. In response, Plaintiffs do not address their failure to comply with the Court's March 29 order, but rather argue that the production of the expert report of Joel Morse addressed NIAC's membership loss. (Response, pp. 3-4, Docket No. 129). In response to Defendant's "complaint" that the list of 9,000 Convio "transactions" produced March 15 does not list current, former, and expired members, Plaintiffs claim that it is difficult or impossible to prepare a list of former members from Convio, but fail to mention that they did send Defendant a list of 116 former members from Convio. (July 1, 2011 email from A. Nelson and Convio list of former members attached as Ex. A). Nor, do Plaintiffs explain how they could produce this list of former members from Convio but not produce from the Convio database lists of current or expired members or

"active supporters."[1]  Accordingly, Defendant renews his request for an order compelling Plaintiffs to produce from its Convio membership database lists of current members, former members, and active supporters as well as the costs of his motion.

## I.     Plaintiffs' Response Brief Contains Major Misstatements

Plaintiffs argue that Defendant "moved the goal line" and served requests that are vague. (Response, p. 3).  Defendant's request back in March 2009 was simple: "All documents relating to NIAC membership including . . . email and membership lists."  (See, Def's Motion, p. 1).

Plaintiffs claim that Defendant has made a new "demand for additional information." (Response, p. 2).  This is not true.  Defendant is merely asking for the membership information requested March 3, 2009 and ordered produced by the Court March 29, 2011.

Plaintiffs claim that Defendant began a "quest for 'former members' membership information."  (Response, p. 3).  This issue arose at Parsi's May 11, 2011 deposition when he testified that NIAC tracked a category of membership besides "current" or "expired" – called "former members."  (See, Ex. A. to Def's Motion, pp. 54-59).  *After* the deposition, Plaintiffs' counsel explained that a list of 118 former members could be found among the Salesforce May 2010 list of 5,164 "Contacts" produced March 2, 2011.  (See, Ex. I to Def's Motion).  In response to Defendant's request for a 2011 list of "former member" from Convio, Plaintiffs first wrote on June 10 that the answer is difficult to ascertain (Id.), but then on June 30 sent Defendant a list of 116 former members from its Convio database.  (Attached as Ex. A).   This list contains nearly the same names as the list of 118 former members in the May 2010 "Contacts"  list except it adds four names and removes six others.  Interestingly, the list also contains, among others, Plaintiffs'

---

[1] The "active supporters" category arose during Trita Parsi's deposition on May 11, 2011.  (See, Ex. A to Def.'s Motion, pp. 9-13).

counsel, Mr. Pishevar. In spite of the purported difficulty, Plaintiffs seemed to have had no trouble printing this list from Convio.

Plaintiffs persist in their claim that Salesforce was used for recording "a limited number of meeting notes." (Response, p. 2). When the Defendant first located reference to Salesforce in the calendars that Plaintiffs had to be ordered to produce, Plaintiffs repeatedly told the Court that they used this feature for "a very short period of time"; "we did experiment with this for a time." (Sept. 16, 2010 Trans., p. 9). In further effort to stave off production, they also described its use as "sporadic" and "discontinued." (Id., pp. 9-10). At the Dec. 17, 2010 hearing, in another attempt to avoid producing the Salesforce database, they again claimed that the "meeting notes" function of Salesforce was used for only a short period of time. (Dec. 17, 2010 Trans., pp. 20-21). Finally, on February 15, 2011, when NIAC produced the meeting notes file from Salesforce, it was revealed that the Salesforce meeting notes file alone contained over 171,000 entries and covered a period of six years, 2004-2010. (See, Ex. J to Def's Motion). At the March 4, 2011 hearing, confronted with this contradictory evidence, Plaintiffs' counsel admitted that "the member tracking information had been used for a longer period of time." (March 3, 2011 Trans., p. 40). How they can now revert to their original claim that these 171,000 entries over 6 years were not produced as they were merely "a limited number of meeting notes" is unimaginable. Regardless, these were clearly covered by Defendant's March 3, 2009 discovery request and should not have been hidden for two years while more that a dozen depositions were taken.

## II.  Plaintiffs Ignore Defendant's Main Arguments

Plaintiffs do not dispute that the list of 9,000 entries that they did produce from Convio on March 18, 2011 was merely a list of "transactions." (Response, p. 3). They ignore, however, Defendant's request and the Court's order of March 29, 2011 to produce a complete list of *members* from Convio. Rather, they admit that they produced a list of 9,000 transactions (which

just so happens to have some membership information).  In addition, they fail to explain how they could produce a list of 116 "former members" from Convio, as they did on June 30, 2011, but would not produce a list of current members, expired members, or active supporters.

Instead, Plaintiffs make an issue of the fact that Defendant learned of the Salesforce database from his review of calendar records produced by NIAC (after being ordered to do so by the Court under threat of forensic imaging).  (Response, p. 2. fn. 2).  The relevance of the fact that NIAC successfully hid these calendar records and, in turn, the existence of the Salesforce database from Defendant is not clear.  This exact conduct has already required the NIAC to be ordered to reproduce NIAC's  Legislative Director, Emily Blout, for a second deposition to answer questions about these calendars and other materials that were not produced before her deposition.  (See, Court's Order of March 5, 2010).

### III.    Plaintiffs' Arguments Are Without Merit

Plaintiffs argue that they did produce three lists of members from Salesforce dated December 2004, December 2007 and April 2008 and that "NIAC is a small organization that does not have the resources of a firm the size of defendant's counsel."  (Response, p. 2, fn. 2).  The Court has made clear in previous hearings on the membership lists that Plaintiffs may not pick and choose which data to produce:

> THE COURT: Let me hold for a moment.  The concept of duplicative doesn't work that easily in a discovery context.  If a party to a case has two databases of membership and the discovery request is for all membership information, you can't say we'll give you this database but the other database is duplicative.  Maybe it is exactly the same, maybe it isn't.  You can't just say we're going to choose what to give you if they've requested all the data with respect to membership.  But that's

4

(Dec. 17, 2010 Trans., p. 24).

Plaintiffs' argue that they do not have to produce the current list of 43,000+ active supporters from Convio as they already produced a May 2010 list of 30,000+ entries from Salesforce on March 2, 2011. (Response, p. 3, fn. 3). The Court's order, however, did not permit them to produce four 18 month-old lists from Salesforce as a surrogate for its "complete" and "current" membership list from Convio. The order was clear. Furthermore, Parsi testified that the Salesforce online database did not contain "active supporters"; rather, that data came from Convio:

> Q Okay. Did you have in Salesforce something other than members?
> A The reason why you are confusing these issues is because Salesforce did not have a mailing list capability, so the mailing list was not kept at Salesforce.
> Q So you now are saying that you have a mailing list of supporters of 43,000 plus in Convio. Correct?
> A The number at the time in 2010, whenever this was sent, was 43,000. I don't know what the exact number is today.
> Q Okay. Well, we're going to ask --
> A Those are people on our mailing list.
> Q We're going to ask that that be produced.

(Parsi Dep, Vol. 3, p. 13, attached to Def's Motion as Ex. A).

Finally, Plaintiffs' argument that it is sufficient that Defendant has the report of their economist, Joel Morse, (Response, p. 3) is meritless. Morse testified that his sole source of support for this membership data was a verbal communication with NIAC's COO, Kevin Cowl. (See, Def's Motion to Exclude, Docket No. 92, p. 15 and Ex. C thereto, Morse Dep., pp. 180-194). Defendant is not required to take NIAC's word for these figures, but rather is entitled to see the actual data to test both NIAC's claims and Morse's opinion, especially in light of the contradictory

5

data. According to Morse, after Defendant's articles, "Typical membership rolls of 2000-3000 people dropped to 1200 current members." (See, Pl's Response, p. 3). However, the four limited lists NIAC has produced thus far reflect current membership nowhere close to Morse's figures and show a slight increasing trend before and after Defendant's articles:

| Date | Current/Active Members | Produced/Form |
|---|---|---|
| Dec. 2004 | 845 | May 2009/HTML |
| Dec. 2007 | 990 | May 2009/Excel |
| April 2008 | 1048 | May 2009/Excel |
| May 2010 | 1069 | March 2011/Excel (Salesforce "Contacts") |
| March 2011 | ? | March 2011/Excel (Convio Transactions) |

(See, Def's Motion, p. 9 and actual membership lists attached to Def's motion). Figures provided to NIAC's board in 2007, but not Morse, gave yet another set of conflicting figures:

> Trita reviewed the membership trends: 1,034 (2005) increased to 1,307 in 2006 and 1,680 as of today – citing these figures as "absolutely unacceptable". Sean asked whether or not NIAC's email list had also expanded to which Trita replied in the affirmative (Debra Cagan campaign reflected an estimated 25,000 recipient list with 4,000 "open"). Different system options were discussed (Topic etc) while Marsha recommended board members and others supply potential member email addresses to (Trita recommended Shami, a NIAC staff person).

(NIAC's October 26, 2007 Board Minutes attached as Ex. B). These conflicting figures provide all the more reason for Plaintiffs to be compelled to produce their current membership figures from Convio.

**IV.     Conclusion**

WHEREFORE, Defendant reiterates his request for an order compelling Plaintiffs to produce from NIAC's current Convio database lists of current/active members, expired members, and active supporters as well as the costs of this motion and all other just and proper relief.

Respectfully submitted,

Dated:  August 16, 2011

$\underline{\hspace{4em}/s/\hspace{6em}}$
Timothy E. Kapshandy (Illinois Bar No. 6180926, admitted *pro hac vice*)
Bradford A. Berenson (D.C. Bar No. 441981)
HL Rogers (D.C. Bar No. 974462)
Peter G. Jensen (D.C. Bar No. 982599)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C.  20005
(202) 736-8000
tkapshan@sidley.com

Attorneys for Defendant
Seid Hassan Daioleslam

7

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TRITA PARSI** ) | |
| ) | |
| and ) | |
| ) | |
| **NATIONAL IRANIAN AMERICAN COUNCIL**, ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | Civil No. 08 CV 00705 (JDB) |
| ) | |
| **DAIOLESLAM SEID HASSAN,** ) | |
| ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

### ORDER

The Defendant having brought to the Court's attention in its July 1, 2011 Motion to Compel Production of Server and Compliance with Court's Orders of July 1, 2010 and March 29, 2011 and the Court being fully advised hereby ORDERS as follows: Plaintiffs are to produce from their current Convio database by _____, 2011 all lists of (1) current/active members, (2) expired members, and (3) active supporters.  In addition pursuant to FRCP 37 Plaintiffs are ordered to pay as sanctions all Defendant's costs associated with bringing this motion

Dated: _____, 2011                **SO ORDERED**

                                                           _____/s/_____

                                                           JOHN D. BATES
                                                           United States District Judge.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **TRITA PARSI** ) <br> ) <br> **and** ) <br> ) <br> **NATIONAL IRANIAN AMERICAN COUNCIL,** ) <br> ) <br> **Plaintiffs,** ) <br> ) <br> **v.** ) <br> ) <br> **DAIOLESLAM SEID HASSAN,** ) <br> ) <br> **Defendant.** ) <br> ) | Civil No. 08 CV 00705 (JDB) |

## CERTIFICATE OF SERVICE

I certify that on August 16, 2011, I served, via email, Defendant's Reply in Support of His Motion to Compel Production of Membership Lists to:

A.P. Pishevar (D.C. Bar No. 451015) / Adrian Nelson
Jefferson Plaza, Suite 316
600 East Jefferson Street
Rockville, Maryland 20850
(301) 279-8773 / AP@pishevarlegal.com


Dated:  August 16, 2011

/s/
Thomas E. Ross (D.C. Bar No. 994275)
Bradford A. Berenson (D.C. Bar No. 441981)
HL Rogers (D.C. Bar No. 974462)
Peter G. Jensen (D.C. Bar No. 982599)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C.  20005
(202) 736-8000
tom.ross@sidley.com

Attorneys for Defendant
Seid Hassan Daioleslam

## **INDEX OF EXHIBITS**

| Exhibit A | July 1, 2011 email from A. Nelson and Convio list of former members |
|-----------|---------------------------------------------------------------------|
| Exhibit B | NIAC's October 26, 2007 Board Minutes                               |