### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TRITA PARSI** ) | |
| ) | |
| **and** ) | |
| ) | |
| **NATIONAL IRANIAN AMERICAN COUNCIL ,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Civil No. 08 CV 00705 (JDB)** |
| ) | |
| **DAIOLESLAM SEID HASSAN,** ) | |
| ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

### DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION
### TO COMPEL PRODUCTION OF SERVER AND COMPLIANCE
### WITH COURT'S ORDERS OF JULY 1, 2010 AND MARCH 29, 2011

For the first time since being ordered to produce their server on July 1, 2010 and again on March 29, 2011, Plaintiffs revealed in their August 2 response what became of that server – it was one of the PC's not produced at the August 18, 2010 imaging as it was merely an "intern's machine. (See, Dec. 17, 2010 Trans, p. 17; complete list of NIAC PCs, Dec. 17, 2010, attached as Ex. B).[1]  Plaintiffs clearly will do anything to avoid having that server imaged including claiming that it was merely an intern's machine in addition to having already told the Court thrice at the Sept. 16, 2010 hearing (pp. 6-7) that it had no server.  Having been given two

---

[1] Ex. B to Plaintiffs' Response identifies the "file server" in use prior to December 2009 as a Dell Dimension 4550 with s/n 42BVV21.  Plaintiffs Dec. 17, 2010 complete list of computers lists a Dell Dimension 4550 s/n with 42BW21 as an "Intern Computer."  So, Plaintiffs either made a typographical error or failed to disclose the existence of the server with s/n 42BVV21 on their 'complete list' of computers.

chances to comply with Court-ordered imaging of its server, Plaintiffs have filed a response ("Response," Docket No. 131) which, rather than taking responsibility for their failure to produce the server, blamed numerous external factors including:

1. Defense counsel's Jekyll-Hyde personality disorder (pp. 1-2);

2. Defense counsel's hearing disorder (p. 2, fn. 1);

3. Defense counsel's never requesting "to image the Dell Dimension 4550" (p. 5);

4. "Incorrect' and "sloppy" work of their own computer consultant, Progressive Office (p. 6);

5. PwC's exceeding the scope of the Court's order (p. 7);

6. PwC's failure to follow industry standards (p. 7);

7. PwC's delay (p. 8); and

8. PwC's improper reinstallation of the drives (p. 9).

These accusations range from unfounded and irrelevant to outright scandalous and, unfortunately,  will require substantial judicial time to sort through.  As a result, Defendant requests not only the production of the *original* file server and the costs of this motion and the wasted imaging of the wrong server, but also the costs of a complete forensic image of the original server and backups including all analyses needed to determine who accessed the original server and when as well as any efforts to delete files or wipe hard drives.

## I.   Plaintiffs' Response Brief Contains Major Misstatements

### A.   The Imaging Process

The major portion of Plaintiffs' Response (pp. 3-5) involves the April 6-7 imaging of he server NIAC produced to PwC and is based upon a letter from an attorney-consultant, Marc Hirschfeld, who was not personally involved in the imaging or any of the communications and

which relates numerous deficiencies in the imaging process directed at PwC and Defendant's counsel.  So as to not burden this reply, Defendant provides (attached as Ex. A) a detailed chronology with supporting documentation and a report by PwC (Ex. C) refuting the accusations made by Hirschfeld and Plaintiffs.

The events surrounding the imaging demonstrate that Defendant, more so than Plaintiffs, was concerned with performing reliable imaging and returning the drive as quickly as possible. While Plaintiffs claim that PwC should have done logical imaging and done it at the site, they neglect to mention that they refused to permit PwC to come onto their site and image the machine in a powered-up state (which is necessary for logical imaging) and they failed to provide the technical specifications necessary for PwC to know what equipment to even bring to Sidley's offices.  (See, Ex. A).  Accordingly, the day before the machine was turned over, Defense counsel requested the server be imaged at PwC's McLean lab and Mr. Nelson agreed on the morning of the imaging.  (See, Exs. A and C).  Both Plaintiffs and Mr. Hirschfeld make the same misstatement that PwC "delayed in returning the device in order to image the drive unnecessarily a second time" (Ex. C to Response, p.2) and that "NIAC agree[d] to let PwC 'logically' image the shared drive overnight at PwC's Virginia lab (Response, p. 4).  PwC neither did a second image nor a logical image due to NIAC's refusal to consent to the same.  (See, Exs. A and C).  As for the "delay" in returning the server (Response, pp. 4-5), this was entirely contrived.  The facts demonstrate that Mr. Ross of Sidley Austin requested at 10:08 AM, two hours before NIAC's noon deadline, to know to whom and where the server should be returned. He reiterated the request at 1:08 PM.  At 1:25 PM Mr. Mohammadi responded and the drive was returned at 1:47, 22 minutes later.   (See, Ex. A).  As for the claim that PwC damaged the drive. Defense counsel offered to set up a call for PwC technicians to instruct NIAC how to get the

drive working but NIAC refused to take the suggested steps, instead demanding that PwC either reseat the drive itself or purchase a new server.  (See, Ex. A).  So, PwC sent a technician to NIAC's office and within ten minutes had the server working.  (See, Ex. A).

NIAC asserts that because of PwC's alleged mistake in reinstalling the drives "the data on the drives could have been destroyed." (Response, p. 9).  This is not true.  In fact, PwC actually performed a backup immediately upon receipt of the server, something NIAC has never done in the last 1-1/2 years.  (See, PwC report, attached as Ex. C).  PwC's technician was able to reseat the drive within ten minutes after arrival at NIAC's offices.  No data was lost or could have been lost.

NIAC claims without any basis (except for the report of their new consultant who also sets forth no bases for his opinions) that "PwC grossly exceeded the scope of the ordered imaging of the calendars."  (Response, p. 7).  In PwC's report on the imaging of the eight PCs NIAC produced in August 2010 instead of the server, PwC set forth in detail its methodology and the extent to which it went to ensure that only calendar psts were accessed.  NIAC's unfounded assertions are scandalous and these accusations of unprofessional conduct should be stricken.[2]

## B.    The Server

Plaintiffs state that "defendant had never requested to image the Dell Dimension 4550." (Response, p. 5).  Defendant has repeatedly requested and the Court has twice ordered NIAC to produce the server (or shared drive or whatever they want to call it) that was used in May 2009

---

[2] This is not the first time Plaintiffs have hurled such unfounded accusations of violating court orders against PwC. At the December 17, 2010 hearing, Plaintiffs suggested that because Defendant had examined Parsi about drafts of his book, PwC must have taken those during the imaging of August 2010.  (Trans., p. 26).  In fact, as Defendant pointed out, Plaintiffs produced those drafts in May 2009.  Even more troubling, however, was the fact that Plaintiffs believed they could have withheld these drafts (which discuss dozens of meetings with Iranian officials).

and onto which the files were moved for production.  True, Defendant did not request the Dell

Dimension 4550 with s/n 42BVV21 by name and number; but, until August 2, 2011, NIAC

claimed that that machine was merely an "intern machine."  Prior to the December 17, 2010

hearing, Plaintiffs never even admitted that that machine existed, and in September, 2010 thrice

told the Court they had no server (even though their latest consultant has conceded that NIAC

did have a "file server" and that Dell Dimension 4550 was the file server).  (See, Ex. B to Pl's

Response).

       **C.**        **<u>Parsi's Unconnected Machine</u>**

      Plaintiffs then try to explain away Stuart Kushner's affidavit and Network Care Machine

Summary (Ex. E to Def's Feb. 14, 2011 Status Report, Docket No. 87, which reports that the PC

that Plaintiffs produced for imaging in August 2010 as Parsi's was not even connected to

NIAC's network in December 2009) by saying: "It was for this very reason that Progressive

Office was retained because after the installation of the Iomega Store Server on or about

December 4, 2009, Dr. Parsi had problems with his computer as it was not connecting to the

Iomega Store Center. (Response, p. 6).   They ignore, however, Kushner's affidavit where he

attests: "At no time during the project, was Progressive Office informed by NIAC that it was

experiencing problems with Trita Parsi's desktop or falling off the network."  (Ex. E(c)  to Def's

Feb. 14, 2011 Status Memo, Docket No. 87).  Kushner went on to attest: " NIAC's office is very

small and the existence of a computer that size not connected to the network would have been

noticed and raised questions."  (Id.).  Dozens of contemporaneous emails between NIAC and

Progressive Office throughout the project confirm Kushner's testimony.  (Ex. E(b) to Def's Feb.

14, 2011 Status Memo, Docket No. 87).  Not a single one of these emails mentions the fact that

the computer of the president of the organization supposedly kept falling off the network.

NIAC, then goes on to attack Kushner's network survey as "sloppy' and "incorrect" as his survey "incorrectly" lists the serial numbers of three PCs. (Response, p. 6). However, it is NIAC and Parsi who are sloppy and incorrect. Their response confuses the computer "names" with the serial numbers (which merely differ from the serial number by a letter or digit or two). Progressive Office's survey correctly lists BOTH the serial number (which NIAC ignores) and the computer name. As Kushner's supplemental affidavit makes clear, the survey data is not collected manually (as NIAC did in Ex. B, attached), but rather is generated automatically by software. (Kushner Supp. Affid., Ex. E to Def's Motion, para. 6). NIAC even takes a hit from one of its own wild shots when it complains: "Defendant's Exhibit D [to his Feb. 14 Status Memo] lists computer 42BW21. Once again, there is no computer with this serial number. There is however, a computer with the serial number 42BVV21." (Response, p. 6). *However,. Exhibit D is* <u>*NIAC's own survey*</u> *of machines that NIAC produced in Court on December 17, 2010. Progressive Office's survey did not even list that machine as that was the* <u>*old server Progressive Officer removed from the network*</u>. Thus, it is NIAC and Parsi who are "incorrect" and "sloppy" and who have created this unfounded and needless diversion. At the time of his work throughout 2009-2010, NIAC never expressed any dissatisfaction with Kushner's work; and even as late at February 10, 2011, just before Kushner's original affidavit was filed in this case, NIAC retained him for another project and paid him in full for his work. (Kushner Supplemental Affid., para. 8, attached to Def's Motion as Ex. E).

### D.    Other Misstatements

NIAC asserts that "Defendant demanded Excel calendars from NIAC staff." (Response, pp. 9-10). Plaintiff counsel's own words show this to be untrue. In response to Defendant's

complaint that NIAC produced the April 21, 2010 "complete, unedited" calendars in Excel and not native pst format, Mr. Nelson wrote on May 21, 2010:

> Dear Tim:
>
> Let me begin by correcting the misimpression contained in your May 5, 2010, letter that Plaintiffs have not responded to concerns raised by the defendant about the sufficiency of the NIAC production consisting of Outlook calendars and e-mails from Dr. Mansouri and Mr. Talebi. While Plaintiffs may not have responded, in writing, each time to Defendant's lengthy written list of concerns/complaints, we have spoken on several occasions in an effort to resolve Defendant's never-ending demand for more information in the format that Defendant thinks it should be provided.
>
> During undersigned's involvement in this litigation, it has become clear that the defendant believes that simply because he requests something, or demands something, that by doing so, Plaintiffs are obligated to comply. Defendant's posture, in this regard, has significantly contributed to the ongoing, unresolved issues between the parties.
>
> Regarding prior discussions relating to the file format for NIAC's production of Outlook calendars, Plaintiffs never agreed to provide anything to the defendant in native format. Yes, we discussed in what format the defendant desired to receive electronic documents. Yes, the defendant indicated that it wanted documents in native format. However, Plaintiffs never agreed to the defendant's demand that documents be provided in native format.

(See, Ex. 7 to Def's June 2 Memo, Docket No. 63). It cannot be fathomed how anyone could now assert that Defendant "demanded" the files in Excel format when Plaintiffs vociferously insisted on producing them in Excel notwithstanding Defendant's request for them in native format. It is also unfortunate that precious judicial resources need be wasted correcting counsel's contradictory assertions. The Court has previously admonished counsel not to make such unfounded statements. (See, Sept. 16, 2010 Trans., pp. 10-11).

Plaintiffs also claimed: "All emails are maintained on the user's workstation . . . There is no cloud provider or offsite data archives." (Response, p. 3). Again, this is false. On March 11, 2010, the day before the deposition of Mohammad Mansouri (whose NIAC-supplied computer "broke" and was discarded), NIAC produce dozens of emails from "NIAC's external server." NIAC's counsel wrote: "As discussed, the e-mails were only recently discovered following a

search of NIAC's external server."  (March 11, 2011 email from Patrick Parsa, attached as Ex. D).  Attached to this email were three dozen emails dating back three years.  How NIAC can make such a misrepresentation is unimaginable.[3]

Finally, the new "complete inventory" (Ex. B to Plaintiffs' Response) raises even more questions.  First, it lists eleven devices that were not on the December 17, 2010 list "of all the computers that existed."  (See, chart attached as Ex. E; Dec. 17, 2010 Trans, pp. 19-20).  One machine that "existed" in December 2010 according to NIAC's list (Ex. B) and Kushner's December 2009 survey has now gone AWOL – Lenovo ThinkPad T61p, s/n L3C0481.  (See, Ex. E).  And, the machine NIAC produced for imaging as Trita Parsi's is now an "intern" computer.  (See, Ex. E).  Just seven months ago, NIAC's counsel stated in open court, "Once they receive this list [Ex. B hereto] and they can check it against what PwC gave them, they'll be able to determine that we gave them all of the computers that would be relevant for the purposes of imaging."  (Dec. 17, 2010 Trans., p. 20).  Now, seven months later, they have filed a new inventory containing eleven more devices not to mention a server previously claimed to be merely an "intern" machine.  (See, Ex. E).

## II.   Plaintiffs Ignore Defendant's Main Arguments

Plaintiffs ignore Defendant's main, and simple, argument – they have twice been ordered to produce their original file server and have not.  The Court's second order actually gave the Plaintiffs the option to produce instead of the server the rest of the PCs not produced on August 18, 2010.  (March 29, 2011 Court order).  However, Plaintiffs were trapped by their own machinations, as that option would have required them to produce a machine they told the Court on December 17, 2010 was merely an "intern computer" (but was in fact the original file server)

---

[3]  Why NIAC has not searched this external email server for emails of employees other than Mansouri, given the loss and theft of at least three PCs, none of which were backed up, will be the subject of a later sanctions motion.

– Dell Dimension 4550 with s/n 42BVV21.  Thus, the March 29 order essentially told them: "Produce the server or produce the server."  Still, thinking the Court's order gave them some wiggle room, they redefined the order to read: "Produce the server of your choice" -- which, of course, assumed that the Court knew that they even had more than one server.

Rather than provide some explanation for why they did not comply with the Court's second imaging order, Plaintiffs spend most of their response complaining about PwC's conduct in imaging the new server.  Even if true, this could not have been a basis for ignoring the Court's second imaging order as this imaging had not even occurred when NIAC decided to not produce the original server.  That whole discussion is a red herring.

Finally, Plaintiffs still never provide the status of the original server.  On June 17, 2011, in response to Defendant's request as to why it had not been produced, Plaintiffs' counsel claimed that the server "may no longer be operational."   Since March 29, 2011 when they were ordered to produce it a second time, Plaintiffs have still not determined and informed the Court whether the device is even functioning.

### III.   Plaintiffs' Arguments Are Without Merit

Plaintiffs' basic argument is that "Defendant has failed to demonstrate any meaningful irregularities associated with NIAC's conduct" and Defendant "failed to conduct its imaging campaign according to industry standards" and therefore "should be told he cannot image NIAC's servers any further."  (Response, p. 10).  Apparently, NIAC sees nothing irregular in misrepresenting to the Court three times that it had no server (even when their own consultant

and many witnesses called it a "server) and then telling the Court that this machine was merely an intern machine.[4]

Instead, Plaintiffs blame Defendant: "the Defendant had never requested to image the Dell Dimension 4550." (Response, p. 5). Since January 2010, Defendant has been asking to image that server. For the last year-and-a-half, Plaintiffs have gone to great extent to avoid producing that server, including denying that they had any servers and calling it an intern machine. When first ordered to produce it, they produced eight of their twelve PCs instead. When ordered to produce the server again, they produced a new, second server. Until August 2, 2011, NIAC never admitted that the server was this Dell Dimension 4550 with s/n 42BVV21.

Plaintiffs argue that the data from the first server was migrated to the second server acquired in December 2009 (Response, p, 5) and Defendant should not get a "third bite at the apple." Defendant would like just one bite at the apple but agrees that a third attempt should not have ever been necessary. Tendering of the new server, even if data was "migrated" prevents access to deleted files on the first server; those deleted files are not migrated unless the old server was forensically imaged, something that is very unusual and not described in Progressive Office's work for NIAC. (See, Ex. C). Moreover, the report of NIAC's new consultant, Real Analysis (Ex. B to PL's Response) reflects, for the first time, that NIAC's first server was backed up onto an external drive. Such backups are invaluable aids in performing any imaging and should have been produced with the first server for imaging. (See, Ex. C).

---

[4] Another irregularity raised by Plaintiffs' Response is that another of their PC's (a purported intern machine) appears to have disappeared. According to the July 28, 2011 inventory by Real Analysis attached at Ex. B to Plaintiffs' Response, NIAC no longer has the LENOVO laptop, ThinkPad T61p (s/n L3C0481), which was detected by Kushner's December 2009 survey and NIAC's own December 2010 inventory (Ex. B) but was withheld from imaging as it was merely an intern's machine. Defendant would request that that machine be ordered produced for imaging to determine who used it and when and what files, if any, were deleted or wiped from it.

**IV.** <u>**Conclusion**</u>

WHEREFORE, Defendant reiterates its request for an order to produce the original server/shared drive (Dell Dimension 4550, s/n 42BVV21) and all back-up hard-drives used for that server and for all other just and proper relief, including the costs of this motion and the costs of the wasted effort in imaging the new server and the ability to review registry and user habit information and any other files on the server as well as laptop ThinkPad T61p (s/n L3C0481)  to determine who accessed those devices and when and what files were transferred to and from it and whether any files were wiped or deleted and, if so, when, all at Plaintiffs' expense.

Dated:  August 16, 2011

_____
/s/

Timothy E. Kapshandy (Illinois Bar No. 6180926,
admitted *pro hac vice*)
Bradford A. Berenson (D.C. Bar No. 441981)
HL Rogers (D.C. Bar No. 974462)
Peter G. Jensen (D.C. Bar No. 982599)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C.  20005
(202) 736-8000
tkapshan@sidley.com

Attorneys for Defendant
Seid Hassan Daioleslam

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **TRITA PARSI** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **NATIONAL IRANIAN AMERICAN COUNCIL,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil No. 08 CV 00705 (JDB)** |
| | ) | |
| **DAIOLESLAM SEID HASSAN,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## <u>ORDER</u>

The Defendant having brought to the Court's attention in its July 1, 2011 Motion to
Compel Production of Server and Compliance with Court's Orders of July 1, 2010 and March
29, 2011 and the Court being fully advised hereby ORDERS as follows:

Plaintiffs shall produce for forensic imaging the shared-drive/server in use in NIAC's
offices in May 2009 onto which discoverable files were placed by _____, 2011 as well as
ThinkPad T61p laptop (s/n L3C0481) .  Defendant and his forensic computer consultants shall be
entitled to access all files and data on the server and shall have the right to do all analyses
necessary on the server and the laptop to determine who used the machines and when and
whether any files were deleted or wipe and by whom at Plaintiffs' expense.  Plaintiffs shall pay
to Defendant the costs of bringing this motion within 7 days of Defendant's submission of a bill
of costs and the costs associated with Defendant's imaging the new server produced on April 7,
2011.  The Court reserves the right to impose additional costs and data in the event the imaging
analysis reflects the withholding of other discoverable evidence.

Dated: _____, 2011                    **SO ORDERED**

                                              _____/s/_____

                                              JOHN D. BATES
                                              United States District Judge.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **TRITA PARSI** ) | |
| ) | |
| **and** ) | |
| ) | |
| **NATIONAL IRANIAN AMERICAN COUNCIL**, ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Civil No. 08 CV 00705 (JDB)** |
| ) | |
| **DAIOLESLAM SEID HASSAN,** ) | |
| ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**CERTIFICATE OF SERVICE**

I certify that on August 16, 2011, I served, via email, Defendant's Reply in Support of

His Motion to Compel Production of Server and Compliance with Court's Orders of July 1, 2010

and March 29, 2011 to:

      A.P. Pishevar (D.C. Bar No. 451015)
      Adrian Nelson
      Jefferson Plaza, Suite 316
      600 East Jefferson Street
      Rockville, Maryland 20850
      (301) 279-8773
      AP@pishevarlegal.com

Dated:  August 16, 2011

                                                      /s/

Thomas E. Ross (D.C. Bar No. 994275)
Bradford A. Berenson (D.C. Bar No. 441981)
HL Rogers (D.C. Bar No. 974462)
Peter G. Jensen (D.C. Bar No. 982599)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C.  20005
(202) 736-8000
tom.ross@sidley.com

Attorneys for Defendant
Seid Hassan Daioleslam

2

## <u>INDEX OF EXHIBITS</u>

| EXHIBIT A | Chronology of events surrounding PWC imaging of NIAC servers |
|-----------|-------------------------------------------------------------|
| EXHIBIT B | Complete list of NIAC PC's dated Dec. 17, 2010 |
| EXHIBIT C | PwC Report |
| EXHIBIT D | March 11, 2011 email from Patrick Parsa |
| EXHIBIT E | Comparison of various NIAC computer inventories |