# EXHIBIT C



August 15, 2011

**Real Analysis LLC - Computer Inventory and Data Map Report**

The inventory of NIAC computers completed by Real Analysis, LLC as of July 28, 2011 was analyzed and compared to previous lists compiled. Exhibit 1 lists the NIAC computers identified from the various data sources and items to note include:

- The amount of disclosed NIAC computers has increased over time: 8 computers were originally provided to PwC for imaging in August 2010, 10 computers were inventoried on the Progressive Office report in December 2009, 13 computers were listed on the NIAC report in December 2010, and 23 computers / backup devices were on the latest inventory report created by Real Analysis, LLC.

- A Lenovo Thinkpad (serial number L3C0481) is not on the latest inventory completed by Real Analysis, LLC. This laptop is listed on both the Progressive Office report and the NIAC report.

- Nine NIAC computers and backup devices were identified for the first time on the Real Analysis, LLC inventory list including several backup drives for current and historic file servers.

- The custodian assigned to the computer has changed for three of the computers: Reza Marashi is now using Patrick Disney's computer (serial number 5Z0KBG1), Nobar Elmi is using Arsalan Barmand's computer (serial number 7N4XKL1), and an intern is using Trita Parsi's computer (serial number BBFWQH1).

The data on the historic file server (serial number 42BVV21) was migrated to the NAS (serial number 0JAK380013) in December 2009 by Progressive Office. Three external hard disk drives were used to back up this historic file server and the NAS (serial numbers 2HA133W4, MS1EELTK, MS1E13LK). These data sources should be analyzed for Outlook calendar entries as files may have been deleted from the NAS and historic file server after this migration occurred. In addition, deleted files existing on the historic file server would not have been migrated by Progressive Office.

**Precision Legal Services' Conclusion #1 - PwC Grossly Exceeded the Scope of the Ordered Imaging of Calendar Entries**

The order from 3/29/11 states:

*"With respect to the NIAC server containing NIAC's Outlook calendar entries that this Court ordered be produced in July 2010 for forensic imaging by PricewaterhouseCoopers ("PwC"), plaintiffs shall produce this server (or "shared drive") by not later than April 6, 2011. If no such server or "shared drive" is produced by that date, plaintiffs shall instead produce by not later than*



*April 8, 2011 the four (4) individual computers ("CPUs") identified by defendant that plaintiffs previously failed to produce, as well as the desktop that Parsi used in 2008. PwC may then conduct forensic imaging of NIAC's server or the five (5) computers. PwC's forensic analysis shall be limited to NIAC's Outlook calendar entries, as specified in this Court's July 2010 Order."*

The order from 7/1/10 states:

*"NIAC shall, by not later than July 16, 2010, submit the server on which its Outlook calendars are kept to forensic electronic discovery experts at PricewaterhouseCoopers for forensic imaging. Those experts shall produce to defendant the Outlook calendar records, complete and unedited to the extent possible, in native ".pst" format. These records shall include all fields and metadata.*

*3. PricewaterhouseCoopers' forensic computer experts shall prepare a report for the parties detailing the following issues:*

> *a. Whether any calendar entries located in the forensic image were omitted from the Outlook calendar productions on December 28, 2009 and April 21, 2010, and, if so, the substance and date of such entries.*
>
> *b. Whether edits were made to the Outlook calendar files on December 25-27, 2009, and, if so, what were the specific edits, and by whom were they made.*
>
> *c. Whether any calendar entries were deleted after the date of the event on the calendar and, if so, which entries were deleted, by whom, and when were they deleted.*
>
> *d. Whether, after December 8, 2009, any Outlook calendar events were edited or deleted by someone other than the calendar owner."*

Both the 3/29/11 and 7/1/10 court orders instructed PwC to perform forensic imaging and analysis of the plaintiffs' various computers.  Forensic imaging was required to conduct the ordered analysis of deleted Outlook calendar entries.  An image of all the partitions or of the entire hard disk drive(s) is required to recover all deleted files, perform file signature analysis, and mount compressed files that may contain Outlook calendar entries.  "A targeted acquisition of the calendar items from the logical partition" as suggested by the plaintiff's expert Precision Legal Services would only capture "live" files that were not deleted and consequently could have missed deleted calendar entries as was ordered in Paragraph 3.C. in the 7/1/10 court order. Further, PwC's process of physical image acquisition and forensic analysis was previously described in the report issued to the court dated 10/18/10.  This same process was applied to the network attached storage "NAS" device, a type of computer server used for storing and sharing files, in the imaging that was performed on 4/6/11.



**Precision Legal Services' Conclusion #2 - PwC Did Not Follow Industry Standards in Imaging NIAC's Shared Drive.**

Industry standards do not dictate a specific method to perform forensic imaging of RAID arrays. Industry standards call for a situational appropriate response. In this case, NIAC did not provide any information about the computers that would be imaged prior to the meeting on 4/6/11. In the absence of information about the configuration of the NAS and the fact that the device was presented to PwC in a powered-off state, PwC created a physical image of the individual hard disk drives. This is preferable to an image of a logical partition for the following reasons:

- A physical image of the hard disk drives provides a complete backup of all data contained on the NAS, which would be available in the event of a problem. A logical partition image would only provide a backup of a subset of the data.

- The data on the NAS was at risk of being altered if an attempt was made to power-on and configure a connection to perform a logical image other than on NIAC's network.

- NAS devices may contain hidden partition(s) for any number of technical or backup purposes. Hidden partitions are areas on the hard disk drives where data can be stored but is not readily visible to the casual observer. A hidden partition on the NAS would not be visible during a logical partition imaging process and would have been missed.

NIAC provided no information about the RAID type or configuration to PwC. PwC was able to rebuild the array during the forensic analysis using the physical images. This allowed PwC to see the partitions and shares that were configured on the NAS and perform the ordered search and recovery of all Outlook calendar records contained on the NAS. PwC would not have been able to fulfill the court ordered analysis with a logical image of Outlook calendar entries as suggested by Precision Legal Services.


**Precision Legal Services' Conclusion #3 - PwC delayed returning NIAC's shared drive in order to unnecessarily image the device a second time.**

PwC did not image the NAS a second time as asserted by NIAC. A physical image of the NAS was acquired by PwC at the McLean forensics lab. Performing a logical image was discussed after the NAS was returned to NIAC and plugged back into the NIAC network. PwC did not want to change any configuration options when the NAS was powered-on. This asserted logical image was never performed once the NAS was returned to NIAC.



**Precision Legal Services' Conclusion #4 - It was unnecessary for PwC to remove the NAS to its lab in Virginia.**

This option was suggested to the parties involved since the size of the hard drives (4 hard drives at 500 GB capacity each) would require a significant amount of time to both image and verify.  It was estimated to take at least 16 hours to complete the imaging process for the NAS, with each hard disk drive requiring 3 hours for acquisition and 1 hour for verification.

Given the expected duration of imaging, PwC offered to perform the work in our McLean lab to minimize cost and effort for all parties.  PwC was able to leverage additional imaging equipment available in the lab to minimize labor costs that would not have been available at the Sidley offices.  All parties agreed to this arrangement and proper chain of custody documentation was maintained throughout the imaging process to ensure evidential integrity.

**Precision Legal Services' Conclusion #5 - PwC improperly reinstalled the hard drives rendering it unusable.**

There is always a risk for computer hardware malfunction when powering on and off a device or through normal usage.  To mitigate the risk of data loss in the event of a failure, standard practice dictates that valid backups be created.  A physical image of a hard drive is a valid backup.  PwC created a valid backup for NIAC during the physical imaging process thus mitigating the risk of data loss.

 The NAS was provided to PwC in a powered-off state which prevented PwC from determining the working state and current configuration prior to imaging.  The PwC forensic imaging process does not alter the data contained on the NAS device.  Each hard disk drive was removed from the powered-off NAS enclosure and imaged with forensic write-blocking hardware that prevented data from being altered.  After the imaging of the four hard disk drives was completed, a verification process was performed to ensure that every "bit" of data contained on the hard drive had been accurately captured and a backup copy was created.  This process ensured PwC had two identical copies of the server that would be available in the event that a problem occurred.  Lastly, PwC powered-on the NAS prior to leaving the McLean lab to ensure the power indicator lights were activated.

 The NAS was returned to NIAC on 4/7/11 as it was received; in a powered-off state with the hard disk drives re-installed in the NAS enclosure.  PwC participated in a conference call with NIAC on 4/7/11 and was alerted to a power-on issue.  PwC provided technical support via phone and dispatched a technician to the NIAC offices on 4/8/11 to reseat the hard disk drives.  The NAS was operational after this visit and no data was altered or destroyed during the imaging process.