UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TRITA PARSI and NATIONAL
IRANIAN AMERICAN COUNCIL,

    Plaintiffs,

    v.

DAIOLESLAM SEID HASSAN,

    Defendant.

Civil Action No. 08-705 (JDB)

## ORDER

Pursuant to the discovery hearing held with the Court on this date, and upon consideration of [112], [113], [119], [120] defendant's motions to compel discovery, [118], [122] the motions regarding the deposition of non-party Kenneth Timmerman, and [121] plaintiffs' motion in limine to exclude testimony and evidence related to plaintiffs' purported lobbying activity, and the entire record herein, it is hereby **ORDERED** as follows:

1. Defendant's motion to compel the production of plaintiffs' server [112] is **GRANTED**. Plaintiffs shall produce, by not later than September 7, 2011, <u>all</u> of the servers/shared-drives on which NIAC's Outlook calendar entries have been kept from 2007 to the present. This production shall include, but shall not be limited to: (1) NIAC's server/share-drive that was in use in May 2009, which NIAC has now identified as Dell Dimension 4550 (serial no. 42BVV21) and (2) the computer used by Babak Talebi (serial no. jjnc891), which NIAC previously characterized as an "intern" computer, but was found to contain 8,000 Talebi e-

mails. PricewaterhouseCoopers ("PwC") may conduct forensic imaging of NIAC's servers/shared-drives and Talebi's computer. This forensic imaging shall be limited to (1) the Outlook calendar entries contained on the servers/shared-drives and Talebi's computer, as originally specified in this Court's July 2010 Order; and (2) user/habit/login information in order to determine the identities of the persons who used the computers' Outlook calendar function. PwC therefore may <u>not</u> conduct forensic imaging of all of the files contained on NIAC's server. Because this is now the third time that plaintiffs have been ordered to produce their server -- a server that plaintiffs initially claimed did not exist -- plaintiffs shall pay the costs associated with defendant bringing the instant motion to compel. Payment shall be made to defendant within seven (7) days of defendant's submission of his bill of costs. With respect to the costs of any forensic imaging conducted by PwC, these costs shall be borne, at least initially, by defendant. If, however, defendant believes that the forensic imaging shows that plaintiffs omitted discoverable calendar entries from previous productions, or made inappropriate edits to such entries, defendant may seek to recover the costs of the PwC forensic analysis from plaintiffs.

2. Defendant's motion to compel the production of plaintiffs' membership lists [113] is **GRANTED**. Plaintiffs shall produce NIAC's complete membership list from Convio by not later than September 7, 2011. The membership list must be current as of the date that it is produced, and it must be produced in a readable format. The membership list shall differentiate between so-called "active," "current," or

"paid" NIAC members and "expired" NIAC members.  To the extent that a current NIAC membership list showing both "active" and "expired" NIAC members cannot be produced from Convio, NIAC must provide defendant with all other membership lists and mailing lists in its possession by not later than September 7, 2011.  Because this is the second time that plaintiffs have been ordered to produce their current membership list, plaintiffs shall pay the costs associated with defendant bringing the instant motion to compel.  Payment shall be made to defendant within seven (7) days of defendant's submission of his bill of costs.

3. Non-party Kenneth Timmerman's motion for an order quashing the subpoena, or, in the alternative, for a protective order [118], is **GRANTED**, and plaintiffs' motion to compel the deposition of Kenneth Timmerman [122] is **DENIED**.  Plaintiffs had ample opportunity to depose Timmerman prior to the February 4, 2011 discovery deadline.  The Court then provided plaintiffs with additional time to depose Timmerman, allowing them up until May 13, 2011 to take the deposition.  Although plaintiffs maintain that their failure to depose Timmerman is attributable to Timmerman's attempts to evade service of process, the Court finds this explanation unpersuasive, given that (1) plaintiffs appear to have known Timmerman's home address throughout this litigation, as they previously served him at that locale; (2) Timmerman responded in a timely manner as soon as he was contacted by plaintiffs via his publicly-listed telephone number.  Accordingly, plaintiffs shall be prohibited from taking the deposition of Kenneth Timmerman or subpoenaing him for the production of documents in this case.

4. Defendant's motion to compel damages discovery and/or to strike in part plaintiffs' prayer for relief is **GRANTED in part** and **DENIED in part**. Plaintiffs have represented to the Court that they intend to introduce evidence of their attorneys' fees and costs only in support of their claim for punitive damages. To date, however, plaintiffs have refused to provide defendant with their attorneys' bills, allegedly because of confidentiality concerns. Plaintiffs have indicated that they would like to delay production of their attorneys' bills until the Court rules on defendant's forthcoming dispositive motion(s), since a ruling from the Court on those motions could obviate the need for any production of attorneys' bills. At this time, the Court will not strike plaintiffs' claim for attorneys' fees and costs. Nevertheless, the Court notes that plaintiffs will likely be required to produce their attorneys' bills at some later date if they intend to present evidence of attorneys' fees in support of their claim for punitive damages at trial. With respect to defendant's motion to compel other forms of damages discovery, the motion is **GRANTED**. In accordance with defendant's second request for production, plaintiffs must provide defendant with "[a]ll documents relating to Parsi's allegation of special damages, including, but not limited to, all documents describing or evidencing any direct and/or quantifiable monetary losses suffered by Parsi." See Def.'s Mot. to Compel, Ex. G (emphasis added). This request clearly encompasses all documents related to Parsi's "consultant income," including all information regarding the Swedish bank account in which Parsi allegedly deposited the "consultant income" that he has earned from "consulting"

activities abroad.   Defendant's motion to strike plaintiffs' claims for special and general damages is **DENIED** at this time, without prejudice to the filing of a renewed motion to strike at a later date.

5. Defendant's motion to compel the production of documents concerning the legality of plaintiffs' lobbying activities [119] is **DENIED**, based on plaintiffs' representation they will not seek to introduce evidence of, or seek to rely upon, any legal advice they received to prove that they were not engaged in illegal lobbying activities.

6. The Court will **DEFER JUDGMENT** as to plaintiffs' motion in limine to exclude testimony and evidence related to plaintiffs' purported lobbying activities [121]. In general, evidence of plaintiffs' lobbying activities on Iran-related issues, including evidence of lobbying conducted or allegedly conducted on behalf of the Iranian Government, will be admissible.  Evidence of plaintiffs' lobbying activities on non-Iran-related issues will not be admissible.  Any further disputes regarding the admissibility of specific items of evidence of plaintiffs' alleged lobbying activities will be dealt with on a case-by-case basis as they arise.

**SO ORDERED.**

                                          /s/
                                JOHN D. BATES
                        United States District Judge

Dated: August 30, 2011