# EXHIBIT M

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

---

TRITA PARSI and NATIONAL IRANIAN AMERICAN COUNCIL,

        Plaintiffs,

    vs.      No. 08 CV 00705 (JDB)

DAIOLESLAM SEID HASSAN,

        Defendant.

---

DEPOSITION OF PATRICK DISNEY

New York, New York

Friday, October 29th, 2010

Reported by:
Jeremy Frank, MPM
JOB NO. 4506

Page 2

1
2              October 29th, 2010
3                 2:14 p.m.
4
5       Deposition of PATRICK DISNEY, held at
6  the offices of Sidley Austin, LLP, 787 7th
7  Avenue, New York, New York, pursuant to Notice
8  and Agreement, before Jeremy Frank, a Notary
9  Public of the State of New York.
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

```
                                                             Page 3
 1

 2    A P P E A R A N C E S:

 3

 4         PISHEVAR & ASSOCIATES, P.C.

 5         Attorneys for Plaintiffs

 6              Jefferson Plaza, Suite 316

 7              600 East Jefferson Street

 8              Rockville, MD 20852

 9         BY:  ADRIAN V. NELSON, II, ESQ.

10              A.P. PISHEVAR, ESQ.

11              PATRICK PARSA, ESQ.

12

13         SIDLEY AUSTIN LLP

14         Attorneys for Defendant

15              1501 K Street, N.W.

16              Washington DC 20005

17         BY:  PETER G. JENSEN, ESQ.

18              JOSH FOUGERE, ESQ.

19

20         ALSO PRESENT:

21              AYDALINE GARCIA, videographer

22

23

24

25
```

1
2          THE VIDEOGRAPHER:  This is tape
3    number one in the videotaped deposition
4    of Patrick Disney in the matter of Trita
5    Parsi and National Iranian American
6    Council versus Daioleslam Seid Hassan  in
7    the United States District Court for the
8    District of Columbia.  This deposition is
9    being held at Sidley Austin, 787 7th
10   Avenue, New York, New York on October
11   29th, 2010 at approximately 2:14 p.m.  My
12   name is Aydaline Garcia and I'm the video
13   specialist, and the court reporter is
14   Jeremy Frank.
15          Will counsel please introduce
16   themselves beginning with the party
17   noticing this proceeding.
18          MR. JENSEN:  My name is Peter
19   Jensen, I'm counsel for the defendant
20   with the law firm of Sidley Austin.
21          MR. FOUGERE:  Josh Fougere also for
22   the defendant with Sidley Austin.
23          MR. NELSON:  Adrian Nelson with
24   Pishevar & Associates on behalf of NIAC
25   and Dr. Trita Parsi.

Page 28

1                    Disney
2       Q.   You don't remember.
3            And were these computers connected
4    in any way?
5       A.   All of the desktop computers in
6    the office were connected via what we called
7    the share drive which was a location in which
8    one user could store a file that could then be
9    accessed by any of the other computers in the
10   office.
11      Q.   Was that via a share drive housed
12   on a server?
13      A.   I'm not knowledgeable at all about
14   the terminology and so I'm not comfortable
15   calling it a server or anything like that, I
16   called it a share drive.
17      Q.   Do you remember seeing like a
18   central processing unit, a central computer
19   that connected everyone's computer?
20           MR. NELSON:  Objection, he's
21       already answered he's not familiar with
22       the technological aspects of the
23       configuration.
24           You can answer if you're able to.
25      A.   There was a corner back at our

Page 197

1                   Disney
2     categories.
3            MR. NELSON:  He was referring to
4        discovery requests.
5        A.    That's correct.
6        Q.    Then you were also given a list of
7     terms and you used that list of terms to
8     figure out which documents in your files were
9     responsive.
10            If a document had a single term on
11    there did you put it in one of those 14
12    folders?
13       A.    Having gone through this process a
14    couple of times, a few times, I remember one
15    or two some of those times literally going
16    through every e-mail, I don't think the search
17    terms as we are calling them were in existence
18    yet.  I went through every single file and
19    every single e-mail and matched them up with
20    the discovery request, the 14 discovery
21    requests.  Later --
22       Q.    Let me stop you there.
23            So you were given a document, that
24    these 14 documents requests, how would you
25    know whether or not one of those fell in one

```
 1                       Disney
 2   of those discovery requests categories?
 3        A.    Those 14 --
 4        Q.    Initially were you given search
 5   terms at the same time as you were given those
 6   14 document requests?
 7        A.    To the best of my recollection the
 8   search terms came after the discovery
 9   requests, the 14 discovery requests.  I
10   wouldn't speculate about exactly when we
11   received what, but that's how I remember
12   things.
13        Q.    You went through your files, did
14   you say every single file?
15        A.    Yes, it was a difficult process.
16        Q.    Sounds like it.
17              How long did it take you?
18        A.    A long time.
19        Q.    A month, few weeks?
20        A.    Again having done it a couple
21   occasions, I don't know exactly but it was a
22   good bit of time.
23        Q.    Why did you need to do it on a
24   couple occasions?
25        A.    Because the lawsuit continued past
```

1              Disney
2    the time I turned over the first round of
3    documents.
4         Q.    So it was updating the initial
5    production?
6         A.    That's correct.
7         Q.    Was it the same criteria that you
8    used for all of those subsequent reviews?
9         A.    It was, we mentioned there were
10   search terms that were communicated later.  We
11   also, I remember engaged in something of a
12   back and forth about search terms that we
13   thought were inappropriate.  For example, NIAC
14   being on every document we ever produced, it
15   wasn't a helpful search term so --
16        Q.    You looked at the search terms,
17   then you made a determination which of those
18   would warrant whether or not a document was
19   responsive and which wouldn't?
20        A.    Like I said, the 14 discovery
21   requests were the, I literally created on my
22   computer a file for each of the 14, I would
23   call paragraphs, 14 discovery requests.  And
24   as I went through the documents using the
25   search terms or even if a document did not

1                Disney
2    include any of the search terms, I examined
3    that document and made a determination about
4    which if any of the 14 files to put it into.
5         Q.    Okay.
6               So you went through so I
7    understand, you went through all of your
8    documents by hand without running the search
9    terms beforehand to determine whether it fell
10   into one of these categories?
11        A.    There are times I used search
12   terms, there are times I didn't.
13        Q.    Okay.
14              And do you have a share drive,
15   talking about that collection of machines and
16   corner, I think you said that in that
17   collection of machines there is a share drive
18   or folder where people could dump documents
19   that other folks on the network could see.
20        A.    That's correct.
21        Q.    You might not use the word
22   network; is that correct?
23        A.    Yes.
24        Q.    And do you know if anyone searched
25   the documents on that share drive to

Page 204

1               Disney
2    delete or edit any of your calendar entries to
3    any of those days?
4        A.    If your asking if I falsified any
5    information on my calendar, I did not.
6        Q.    Not falsified, I'm asking if you
7    edited or deleted anything from your calendars
8    on those days?
9        A.    No.
10       Q.    Okay.
11             Are you aware of anyone at NIAC
12   who did?
13       A.    Not remembering who I turned over
14   my calendar to or how I turned it over, I
15   can't speak to what anyone else did with my
16   calendar.
17       Q.    Who did you turn it over to?
18       A.    Trita generally handled those
19   sorts of things when we produced the discovery
20   documents.  We placed them either on the share
21   drive or we placed the share drive, Trita was
22   sort of the go-between between us on the staff
23   and our counselors.
24       Q.    You took your calendar entries,
25   you're not sure how you converted them into a

```
 1                    Disney
 2              C E R T I F I C A T E
 3    STATE OF NEW YORK    )
 4                        : ss.
 5    COUNTY OF NEW YORK   )
 6
 7         I, Jeremy Frank, a Notary Public within
 8    and for the State of New York, do hereby
 9    certify:
10         That PATRICK DISNEY, the witness whose
11    deposition is hereinbefore set forth, was duly
12    sworn by me and that such deposition is a true
13    record of the testimony given by the witness.
14         I further certify that I am not related
15    to any of the parties to this action by blood
16    or marriage, and that I am in no way
17    interested in the outcome of this matter.
18         IN WITNESS WHEREOF, I have hereby
19    set my hand on the 1st day of November, 2010.
20
21                        _____
22                        JEREMY FRANK, MPM
23
24
25
```