# EXHIBIT N

(( To Be Supplmnt'd ))

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TRITA PARSI** ) | |
| ) | |
| **and** ) | |
| ) | |
| **NATIONAL IRANIAN AMERICAN COUNCIL** ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Civil No. 08 CV 00705 (JDB)** |
| ) | |
| **PLAINTIFFS SEID HASSAN** ) | |
| ) | |
| **PLAINTIFF.** ) | |

## PLAINTIFF'S OBJECTIONS AND RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiffs

Trita Parsi and the National Iranian American Council, by and through its attorneys, A.P.

Pishevar and Pishevar & Associates, P.C., hereby object and respond to Defendant

Daioeslam Seid Hassan's First Set of Interrogatories as follows:

## INTRODUCTORY STATEMENT

In response to these interrogatories, Plaintiffs have attempted to locate responsive

information through an investigation of sources from which such information might

reasonably be expected to be found.  These responses and objections are made on the

basis of the best information available to Plaintiffs at the time of gathering responsive

materials or information, within the limits of, and subject to, Plaintiffs' general and

specific objections to these Interrogatories.  Plaintiffs reserve the right to supplement or

modify their responses and objections to the Interrogatories if additional information

becomes available. Furthermore, these responses are to be viewed in conjunction with the other documents, responses, answers, pleadings, papers and statements produced as a result of discovery in this matter.

The fact that Plaintiffs are willing to provide responsive information to any particular Interrogatory does not constitute an admission or acknowledgement that the Interrogatory is proper, that the information Defendant seeks is within the proper bounds of discovery, or that other requests for similar information will be treated in a similar fashion.

Plaintiffs reserve the right to rely on facts, documents, and other evidence, which may develop or subsequently come to their attention, to assert additional objections or supplemental responses should they discover that there is information or grounds for objections, and to supplement or amend these responses at any time.

These Response to Interrogatories have been prepared with the assistance of counsel and are not the sole product of this signatory party and many if not most of the language is written by counsel.

## GENERAL OBJECTIONS

1. Plaintiffs' General Objections, as set forth herein, are to be considered objections and responses to the specific interrogatories that follow. Plaintiffs' objections and responses shall not waive or prejudice any objections he may later assert.

2. The information supplied in these responses is not based solely upon the knowledge of the person signing the interrogatories.

3. The word usage and sentence structure are those of the attorneys who assisted

in preparing these responses.  The language does not purport to be the language of the executing party.

4.   Plaintiffs object to the interrogatories to the extent that they are duplicative of prior discovery requests, including document discovery from which requested information can be ascertained.

5.   Plaintiffs object to the interrogatories to the extent they seek discovery of information protected by the attorney-client privilege, the work product doctrine, the reporter's privilege, or any other applicable privilege or exemption.  Any inadvertent disclosure of material protected by the attorney-client privilege, the work product doctrine, the reporter's privilege, or any other applicable privilege or exemption is not intended as, and should not be construed to constitute, a waiver.  For purposes of responding to these requests, Plaintiffs will construe each definition and each request as not seeking legal memoranda, drafts of pleadings, attorneys' notes, communications among counsel for Plaintiffs, or other documents that have come into existence because of this litigation.

6.   Plaintiffs object to the interrogatories to the extent they are:  (a) overly broad; (b) impermissibly vague and ambiguous and fail to describe with reasonable particularity the information sought; (c) seek production of documents or information that is not relevant to the subject matter at issue in this action and/or are not reasonably calculated to lead to the discovery of admissible evidence; and (d) impose undue burdens that outweigh any probative value the information sought may have in this action.

7. Plaintiffs object to Defendant's interrogatories to the extent that they seek the production of information that already is in the possession of Defendant or their counsel.

8. Plaintiffs object to Defendant's interrogatories to the extent they seek disclosure of information that is readily available to Defendant.  Plaintiffs object further to such discovery on the grounds that it is unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible or relevant evidence.

9. Plaintiffs object to Defendant's interrogatories to the extent that they are overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible or relevant evidence.

10. Plaintiffs expressly reserve the right to object to additional discovery into the subject matter of these interrogatories.

11. Plaintiffs object to all "Instructions" in the Interrogatories to the extent those instructions and definitions exceed the requirements of the Federal Rules of Civil Procedure, the Local Rules of this Court, and applicable case law.

12. Plaintiffs object to Defendant's "Instructions," to the extent that the definition of "you" may be construed to require Plaintiffs to produce information that is not available to them.

13. Plaintiffs object to the extent that the various subparts of specific Interrogatories, including but not limited to Interrogatory 1, to the extent that the subparts constitute separate interrogatories.

14. Plaintiffs' General Objections and Specific Objections, if any, are based upon

the information presently known to them.  Plaintiffs expressly reserves the right

to rely on facts, documents or other evidence, which may develop or

subsequently come to their attention, to assert additional objections or

supplemental responses should they discover that there is information or

grounds for objections, and to supplement or amend these responses at any

time.

### SPECIFIC OBJECTIONS AND RESPONSES

In addition to his General Objections, Plaintiffs also asserts the following Specific

Objections and provides the following responses to Plaintiffs' individual interrogatories.

Plaintiffs preserves all of his General Objections set forth above, and none of the

following Specific Objections limits the scope, breadth, or generality of those General

Objections.


## INTERROGATORY NO. 1

Identify each person who has, or you believe to have, any knowledge relating to the

information sought herein and in Daioleslam's First and Second Requests for Production

of Documents; specify the subject matter about which the person has knowledge;

describe the substance of that knowledge, and provide contact information for the

witness.

## RESPONSE TO INTERROGATORY NO. 1

A.      Trita Parsi – tparsi@niacouncil.org, (202) 386-2303. Knows of most of the

activities of the organization.

B.     Patrick Disney – pdisney@niacouncil.org, (202) 386-6325. Represents NIAC on Capitol Hill and has as a result intimate knowledge of NIAC's policy priorities.

C.     Emily Blout, emilyblout@gmail.com, (781) 727-8911.  Represented NIAC on Capitol Hill and has as a result intimate knowledge of NIAC's policy priorities.

D.     David Elliott, delliott@niacouncil.org, (931) 698-8442. Represents NIAC on Capitol Hill and has as a result intimate knowledge of NIAC's policy priorities.

E.     Michelle Moghtader, mmoghtader@niacouncil.org, (202) 460-5680. Represents NIAC in the Iranian-American community.

## INTERROGATORY NO. 2

Describe in detail NIAC's internship and fellowship programs, including the recruitment process, application process, job responsibilities, or salary or other payment.

## RESPONSE TO INTERROGATORY NO. 2

NIAC's internship program is a standard internship program, offering unpaid internships for smart and outgoing students in College and grad schools with an interest in the Iranian-American community and US-Iran relations.

The internships are announced on the NIAC website, as well as on the career services websites of US universities in the DC area. The applicants apply to a designated staff member of NIAC. Interviews are conducted by Patrick Disney. NIAC accepts approximately 3-5 interns per semester. During the summers they have to work full time.

During the semesters, the expectation is that each intern will work a minimum of 15h/week.

The fellowship program, funded by CitiBank, aims to help provide Iranian American youth in the US with an opportunity to do an internship in a policy related field. (The program is currently on hold due to lack of funding.) The fellowship applicants apply in early Spring and indicate why they are interested, their involvement in the Iranian-American community, their qualifications and the Congressional offices they are interested in seeking an internship in. NIAC staff reviews the applications and selects 3-4 applicants to conduct deeper interviews with. The interviews have in the past been conducted by Dokhi Fassihian and Djamshid Foroughi (a past board member). Once a fellow has been selected (funding has only been available for one fellow a year), NIAC sends his/her application to approximately ten Congressional offices and does the follow up to ensure that an internship is secured. Once the internship has been secured, NIAC pays the travel and accommodation for the fellow for three months to stay and work in DC. NIAC receives $6000 from Citibank for the program, of which $1800 goes to administrative costs, and $4200 covers the fellows travel, accommodation and a monthly stipend of $500 for three months. The fellow is then required to write two articles about what he or she has learnt through this experience in the policy world. NIAC publishes those articles on its website.

## INTERROGATORY NO. 3

Describe in detail the sources of NIAC's funding, including the name and contact information of every funding source, a list of how much funding they provide and how

frequently they provide funding. Please break this down by each year since NIAC's inception to date.

## RESPONSE TO INTERROGATORY NO. 3

Information regarding larger donors to NIAC ($5000+/year) is available in the tax returns provided by NIAC. Information regarding regular members of NIAC and their donations is proprietary and confidential information that is irrelevant and is not discoverable.

## INTERROGATORY NO. 4

Describe in detail your relationship to Iran, including any funding, information, advice or support Iran provides to you or you provides [sic] to Iran.

## RESPONSE TO INTERROGATORY NO. 4

NIAC has no relationship with Iran. We do not receive funding, advice or support from Iran, or vice versa.

## INTERROGATORY NO. 5

Describe in detail your relationship with United States political officials and their staff including any funding, information, or advice or support United States political officials provided to you or you to United States political officials.

## RESPONSE TO INTERROGATORY NO. 5

NIAC receives no funding from US political officials, not does NIAC provide financial support to US political officials. NIAC acts as an educational and advocacy

body, providing analyses and recommendations on complex policy issues that are of concern to the Iranian-American community.

**INTERROGATORY NO. 6**

Identify the evidence that supports your contention that Daioleslam acted with reckless disregard of the truth. *See* Compl. at ¶¶ 21, 28, 37.

**REPONSE TO INTERROGATORY NO. 6**

The evidence that the Defendant acted with reckless disregard of the truth is found in the fact that many easily disproven statements were made on multiple occasions. For example, the Defendant referred to Dr. Parsi as Iran's "trusted man" and to NIAC as "one of the Iranian regime's Lobby arms in the US." *See* Compl. ¶ 36, 17. Neither Dr. Parsi nor NIAC has any connection with Iranian government and even the most rudimentary research would have established that these statements were baseless. Furthermore, at no time has the Defendant pointed to any reputable and accessible source of information to support his inflammatory statements asserting an official relationship between NIAC or Dr. Parsi and the Iranian government.

In fact, on several occasions the Defendant has made statements that were blatantly by countered by numerous accounts on the public record. For example, the Defendant alleged that Dr. Parsi and NIAC did not condemn violently anti-Israeli statements made by the Iranian President despite the fact that Dr. Parsi is a frequent critic of Iran's poor human rights record and the Holocaust specifically. *See* Affidavit of Trita Parsi ¶ 15.

This response is not intended to be an exhaustive statement of the evidence to support this claim, which has been supported throughout. *See* Complaint, affidavits, exhibits, etc.

## INTERROGATORY NO. 7

Identify the evidence that supports your contention that Daioleslam's statements have "damaged NIAC's reputation and the public estimation of the organization." *See* Compl. at ¶ 41.

## RESPONSE TO INTERROGATORY NO. 7

A large number of articles written attacking NIAC and perpetuating defamatory statements against the organization are using Daioleslam's work as their basis, as evidenced by the footnotes and citations of Daioleslam's articles. A few examples (produced on enclosed disc whenever possible – this is not by any means a complete list):

1. Front Page Magazine's articles attacking NIAC uses Daioleslam as its key source. Daioleslam's first articles in English also appeared in Front Page magazine. Please see:

   a. Iran's Oil Mafia By: Hassan Daioleslam, **FrontPageMagazine.com | Wednesday, April 11, 2007**

   b. Iran's Web of Influence in the U.S. By: Hassan Daioleslam, **FrontPageMagazine.com | Monday, August 04, 2008**

   c. The Fraud of the National Iranian American Council By: Hassan Daioleslam, **FrontPageMagazine.com | Thursday, June 19, 2008**

d.   Iran's Lobby Drooling in Washington Bazaar By: Jamie Glazov
(Interviewing Daioleslam)
**FrontPageMagazine.com | Monday, November 17, 2008**

e.   Intimidation Campaign By: Kenneth R. Timmerman (Discussing
Daioleslam)
**FrontPageMagazine.com | Friday, August 10, 2007**

f.   Human Rights Travesty By: Kenneth R. Timmerman  (Citing Daioleslam)
**FrontPageMagazine.com | Friday, July 20, 2007**

g.   The Iranian Web of Influence in the United States By: Hassan Daioleslam
**FrontPageMagazine.com | Wednesday, April 02, 2008**

h.   Guess Who's Coming for Dinner By: Kayvan Kaboli and Hassan
Daoleslam
**FrontPageMagazine.com | Wednesday, September 24, 2008**

i.   Iran: The Price of Peace By: Jamie Glazov (Interviewing Daioleslam)
**FrontPageMagazine.com | Friday, October 17, 2008**

j.   **The Mullahs' Washington Mouthpiece?**, Robert Spencer, 07/08/2009,
Human Events. Citing Daioleslam articles.

k.   **Suspect Group Asks Obama to Stop Pressuring Iran**, Kenneth
Timmerman, November 17, 2008. Citing Daioleslam articles.

2.  Members of the Iranian-American community have declined to join NIAC as
members, serve on our event host committees, partake in our events, and/or renew
their membership as a result of the defamatory material Daioleslam has produced.
Numerous examples exist, including

    a.   Email exchange between Anthony Ravani, a former high-level NIAC donor, and Sean Jazayeri, a NIAC board member from March 17, 2009.

    b.   Email exchange between NIAC members in Louisville, KY, February 9, 2009, seeking to organize membership drives, but having their efforts scuttled by supporters of Daioleslam citing and spreading Daioleslam's defamatory articles.

    c.   Email sent by Banafsheh Zand-Bonazzi to existing and potential NIAC supporters, citing Timmerman and Daioleslam's work.

3.   Members of the US policy community who have been approached by supporters of Daioleslam, repeating his defamatory arguments and urging staffers on Capitol Hill and other decision makers to review Daioleslam's website. For instance, see email from Omid Biniaz to approximately 100 staffers on Capitol Hill on June 17, 2009.

4.   At public speeches that NIAC has given or been scheduled to give, major disturbances have been arranged by people citing Daioleslam's articles, handing out his articles and writings and at times Daioleslam has himself been directly involved in efforts to publicly harm NIAC's reputation and public estimation:

    a.   NIAC Forum in Chicago on July 24, 2008. Supporters of Daioleslam hand out Daioleslam's articles and harass people attending the event.

    b.   Speech at Synagogue in Denver, March 2009. Supporters of Daioleslam hand out Daioleslam's articles and seek to disrupt the event. The occurrence is covered by the local newspaper, Inter Mountain Jewish News. The article is subsequently reported on a website

supported/organized by Daioleslam, located at http://www.ijn.com/ijn-news/local/800-iranian-agent-at-local-shul-absurd, http://www.iranian-americans.com/2009/03/882.html.

c.  Amnesty International panel on Human Rights in Iran, February 22, 2008, in Los Angeles. Supporters of Daioleslam organize – with his assistance and direct involvement – to disrupt Amnesty event where Trita Parsi was a scheduled speaker. Using Daioleslam's writings, the organizers mobilized a mob to disrupt the event. Also, Daioleslam's supprorters organized to have him speak at the same venue only an hour earlier, Within five minutes of the event opening, Amnesty decided to cancel the event due to the disruptions.

d.  US Congress, panel discussion hosted by Middle East Policy Council, January 18, 2008. Supporters of Daioleslam hand out his articles to Congressional staffers at the meeting, grabbing them on their way in and out of the meeting to attack NIAC's standing and public estimation.

e.  Bus Boys and Poets (1025 5th Street, NW, Washington DC), Talk on Feb 8, 2009. Speech given by Michelle Moghtader of NIAC disrupted by aggressive supporter of Daioleslam, citing his articles.

f.  Supporters of Daioleslam create an entry for National Iranian American Council and Trita Parsi on Wikipedia in the Spring of 2008, and fill it with defamatory statements taken from Daioleslam's articles. The entries are footnoted with Daioleslam's articles. NIAC protests and Wikipedia deems the material defamatory and politically motivated. The defamatory

information is removed by Wikipedia and the entries are locked for further editing.

g. Numerous Youtube clips citing Daioleslam's articles, internet postings, Voice of America appearances, power point presentations and speeches given by Daioleslam, other defamatory statements by Daioleslam have damaged NIAC's reputation, the organization's public estimation, damaged and interfered in the organization's public support and prejudiced the public's estimation of the organization and the individuals in the organization.

h. Numerous threatening and harassing phone calls inspired by Daioleslam's articles, at times citing Daioleslam's articles, made to Trita Parsi. Several of these have been reported to the FBI.

## INTERROGATORY NO. 8

Identify the evidence that supports your contention that Daioleslam's statements have "interfered or damaged the public support of NIAC by affecting NIAC's public estimation and reputation." *See* Compl. at ¶ 42.

## REPONSE TO INTERROGATORY NO. 8

See Response to Interrogatory No.7 and other responses and documents as indicated by Introductory Statement, paragraph 1, above and reaffirmed and reincorporated herein.

**INTERROGATORY NO. 9**

Identify the evidence that supports your contention that Daioleslam's statements have "interfered with the activities of NIAC by prejudicing the public's estimation of that organization." *See* Compl. at ¶ 43.

**RESPONSE TO INTERROGATORY NO. 9**

See Response to Interrogatory No. 7 and other responses and documents as indicated by Introductory Statement, paragraph 1, above and reaffirmed and reincorporated herein.


**INTERROGATORY NO. 10**

Identify the person(s) responsible for NIAC's financial records.

**RESPONSE TO INTERROGATORY NO. 10**

    **A.**    Nahzi Nikki, nahzi.nikki@gmail.com.

    **B.**    Gary Issaco, (410) 489-4295.

    **C.**    Phillip Issaco, (410) 489-4295.


**INTERROGATORY NO. 11**

Identify the person(s) responsible for your information technology system and email communication.

**RESPONSE TO INTERROGATORY NO. 11**

    **A.**    David Elliott, delliott@niacouncil.org, (931) 698-8442.

    **B.**    Trita Parsi, tparsi@niacouncil.org, (202) 386-2303.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **TRITA PARSI** | ) |
| | ) |
| **and** | ) |
| | ) |
| **NATIONAL IRANIAN AMERICAN COUNCIL** | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | )  **Civil No. 08 CV 00705 (JDB)** |
| | ) |
| **PLAINTIFFS SEID HASSAN** | ) |
| | ) |
| **PLAINTIFF.** | ) |
| | ) |

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17 day of July , 2009, the foregoing copy of PLAINTIFFS Trita Parsi and the National Iranian American Council's Answers to Defendant's Document Requests was mailed via first class mail, postage prepaid to:

> HL Rogers
> Sidley Austin LLP
> 1501 K Street, NW
> Washington, DC 20005

**Pishevar & Assocates, P.C.**

A.P. Pishevar, Esq.
600 East Jefferson St.
Suite 316
Rockville, MD 20852
(301) 279-8773
(301) 279-7347 (fax)
ap@pishevarlegal.com
*Attorney for PLAINTIFFS*

**INTERROGATORY NO. 12**

Identify the service provider for your email communications.

**RESPONSE TO INTERROGATORY NO. 12**

Dreamhost.com.

I affirm that the above is true to the best of my knowledge, information, and belief.

Dr. Trita Parsi, NIAC

Respectfully submitted,

**Pishevar & Assocates, P.C.**

A.P. Pishevar, Esq.
600 East Jefferson St.
Suite 316
Rockville, MD 20852
(301) 279-8773
(301) 279-7347 (fax)
ap@pishevarlegal.com
*Attorney for PLAINTIFFS*