# EXHIBIT U

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

- - -

TRITA PARSI and NATIONAL :

IRANIAN AMERICAN COUNCIL :

Plaintiffs :

v.                  :   Civil No.:

DAIOLESLAM SEID HASSAN,  :   08 CV 00705 (JDB)

Defendant :   Page 1 - 243


VOLUME III

- - -

Wednesday, May 11, 2011

- - -

Continued deposition, videotaped, of Dr. Trita Parsi,

was taken at the Law Offices of Sidley Austin, LLP,

1501 K Street, NW, Sixth Floor, Washington, DC 20005

commencing at 10:01 a.m. before Leslie A. Todd,

Registered Professional Court Reporter and Notary

Public, in and for the District of Columbia.

Page 2

```
 1    On behalf of the Plaintiffs:

 2         A. P. PISHEVAR, ESQUIRE
           Pishevar & Associates, P.C.
 3         Jefferson Plaza, Suite 316
           600 East Jefferson Street
 4         Rockville, Maryland 20852
           (301) 279-8773
 5         ap@pishevarlegal.com


 6
      On behalf of the Defendant:
 7
           TIMOTHY E. KAPSHANDY, ESQUIRE
 8         THOMAS E. ROSS, ESQUIRE
           ERIC GALVEZ, ESQUIRE
 9         TASHA MANORANJAN, ESQUIRE
           Sidley Austin, LLP
10         1501 K Street, Northwest
           Washington, D.C. 20005
11         (202) 736-8374
           tim.kapshandy@sidley.com
12

13    Also present:

14         DAIOLESLAM SEID HASSAN
           DANIEL HOLMSTOCK (Videographer)
15

16

17

18

19

20

21

22
```

Page 6

```
                    1              P R O C E E D I N G S
10:00:51            2              THE VIDEOGRAPHER:  The time is 10:01 a.m.,
10:00:53            3    May 11, 2011.  This is tape No. 1, Volume 3, of the
10:00:58            4    continued videotaped deposition of Mr. Trita Parsi.
10:01:02            5              Will the court reporter please swear in the
                    6    witness.
                    7    WHEREUPON,
                    8                   DR. TRITA PARSI
                    9    called as a witness, and having been first duly sworn,
                   10    was examined and testified as follows:
10:01:14           11              EXAMINATION BY COUNSEL FOR DEFENDANT
10:01:14           12    BY MR. KAPSHANDY:
10:01:18           13         Q    Are you ready, Dr. Parsi?
10:01:20           14         A    Yes, I am.
10:01:21           15         Q    Okay.  And as you know from our previous
10:01:23           16    two sessions, my name is Timothy Kapshandy on behalf
10:01:27           17    of the defendant in the case, and I will dispense
10:01:32           18    with the usual rules.
10:01:33           19              As you know, you are under oath, and the
10:01:35           20    same understanding and procedure we had in place as
10:01:37           21    from the previous two sessions applies.  Okay?
10:01:40           22         A    (The witness nods.)
```

| | | |
|---|---|---|
| 14:09:55 | 1 | involvement did you have, if any, at any point in |
| 14:09:59 | 2 | time in the determination as to whether any of the |
| 14:10:03 | 3 | Babak Talebi 8,000 e-mails should or should not be |
| 14:10:08 | 4 | produced? |
| 14:10:08 | 5 | A    That's what I'm trying to answer, sir. |
| 14:10:10 | 6 | There were two batches of Babak Talebi e-mails if |
| 14:10:14 | 7 | I'm not mistaken. |
| 14:10:14 | 8 | Q    There were three, but tell us what you |
| 14:10:16 | 9 | recall. |
| 14:10:16 | 10 | A    Three.  Okay.  My recollection is were the |
| 14:10:18 | 11 | 8,000, those were reviewed by our counsel.  That's |
| 14:10:21 | 12 | my recollection. |
| 14:10:22 | 13 | Q    And -- okay.  That's helpful. |
| 14:10:25 | 14 | When were those located and on what |
| 14:10:28 | 15 | machine were those located? |
| 14:10:32 | 16 | A    I don't recall which machine specifically |
| 14:10:34 | 17 | they -- |
| 14:10:34 | 18 | Q    That was one of the items of homework that |
| 14:10:37 | 19 | we gave you at your last deposition, and we were |
| 14:10:39 | 20 | hoping to get that resolved here.  You had promised |
| 14:10:40 | 21 | to determine the CPU, the server, the computer, |
| 14:10:45 | 22 | whatever it was that it was found on because it was |

Page 176

14:10:50  1   8,000 e-mails that had not been produced previously

14:10:54  2   in this case.

14:10:54  3          Do you have any idea on what device those

14:10:57  4   were found?

14:10:58  5       A   I actually don't recall that we had that

14:11:02  6   conversation, but we can definitely go and look into

14:11:03  7   that, but it was one of our computers at our office.

14:11:06  8       Q   Okay.  Well, we will put that on our

14:11:08  9   continued to-do list.  Which Talebi CPU, server --

14:11:08 10          MR. PISHEVAR:  I don't recall this as being

14:11:14 11   on a to-do list.

14:11:14 12          MR. KAPSHANDY:  I can find it for you at a

14:11:20 13   break, Counsel, but I don't want to take the time

14:11:20 14   now.

14:11:20 15          THE WITNESS:  Can I get a pen so I can

14:11:20 16   write these things down.

14:11:20 17   BY MR. KAPSHANDY:

14:11:24 18       Q   In any event, it was found on a computer

14:11:24 19   there and it was described as a previously

14:11:26 20   overlooked CPU or database.  Do you recall that,

14:11:30 21   Dr. Parsi?

14:11:33 22       A   I believe it was something like that.  A

Page 177

14:11:38  1   computer is probably the term we were using.

14:11:42  2       Q    No, you called it a CPU.

14:11:42  3       A    Called it a CPU?

14:11:44  4       Q    And then it was also described as a

14:11:46  5   database, so my question for you is, do you have a

14:11:49  6   database --

14:11:49  7       A    No.

14:11:51  8       Q    -- where these would have been located?

14:11:52  9       A    Where e-mails would have been located?

14:11:53  10      Q    These 8,000 Talebi documents.

14:11:56  11      A    No, I don't believe so.  I very much doubt

14:11:58  12  that we would have e-mails in the database.  The

14:12:04  13  to-do list is to find out which computer, and you

14:12:07  14  want the serial number?

14:12:08  15      Q    That would be very helpful.

14:12:24  16           Now, my question again is, how was it that

14:12:26  17  it was determined prior to Talebi's deposition last

14:12:28  18  year that only a hundred of these Talebi e-mails

14:12:36  19  were responsive to defendant's discovery requests?

14:12:39  20  Were you involved in that?

14:12:40  21      A    As I just explained to you, my

14:12:43  22  recollection that I was involved is was in a

```
14:12:46   1    different batch of Talebi e-mails.

14:12:48   2        Q    Okay.  So you had no involvement with

14:12:50   3    these 8,000 e-mails that were found on an overlooked

14:12:54   4    CPU and determination as to whether any of them were

14:12:58   5    discoverable?

14:12:58   6        A    My recollection is that that batch was

14:13:01   7    reviewed twice by our counsel.  That's my

14:13:04   8    recollection.

14:13:04   9        Q    Okay.  That's fine, and that's I think

14:13:07   10   where we're headed.

14:13:10   11            And -- and when were those sent to your

14:13:12   12   counsel and in what format?  Were they put on a CD

14:13:15   13   or a hard drive or something?

14:13:17   14       A    I don't remember the date, but --

14:13:18   15            MR. PISHEVAR:  Objection.  This is also

14:13:20   16   containing attorney-client privileged communications.

14:13:22   17            MR. KAPSHANDY:  No, I'm simply asking when

14:13:24   18   material were sent to counsel for review.

14:13:25   19            THE WITNESS:  I don't recall exactly when

14:13:27   20   they were sent to him for review.

14:13:29   21   BY MR. KAPSHANDY:

14:13:32   22       Q    As part of the initial review done prior
```

Page 179

| | | |
|---|---|---|
| 14:13:35 | 1 | to June of 2009, was that CPU or that computer |
| 14:13:39 | 2 | subjected to the agreed search terms to determine if |
| 14:13:44 | 3 | it contained relevant information? |
| 14:13:45 | 4 | A    All the computers that we had were |
| 14:13:50 | 5 | reviewed by us.  I assume that computer is included. |
| 14:13:52 | 6 | Q    Well, I brought many of the documents that |
| 14:13:54 | 7 | were produced in the last couple of weeks as part of |
| 14:13:56 | 8 | the third production of 5500 Talebi e-mails.  And |
| 14:14:01 | 9 | let me tell you, Dr. Parsi, that they contained over |
| 14:14:05 | 10 | 1,300 e-mails containing your name that had not been |
| 14:14:10 | 11 | produced previously. |
| 14:14:11 | 12 | So my question for you is, how is it that |
| 14:14:14 | 13 | those were not produced back in May of 2009 or prior |
| 14:14:18 | 14 | to Talebi's deposition or even as part of the second |
| 14:14:24 | 15 | production of 2500 Talebi e-mails? |
| 14:14:27 | 16 | A    I'm pretty confident that that review was |
| 14:14:32 | 17 | done by our counsel.  I was not involved in that. |
| 14:14:35 | 18 | Q    Okay.  Well, then we need not ask you |
| 14:14:39 | 19 | about those any further.  I may have some questions |
| 14:14:42 | 20 | about some of the e-mails that were thankfully |
| 14:14:46 | 21 | produced to us recently. |
| 14:14:56 | 22 | I will just pull one out as an example. |

Page 208

14:41:48  1    missing?

14:41:49  2         Q    No.  None of them have a page missing now

14:41:53  3    because we've finally gotten complete copies of the

14:41:56  4    Disney memo.

14:41:58  5         A    There is an extra copy.  Is there a reason

14:42:00  6    for that?

14:42:01  7         Q    That's the way it was -- I think one of

14:42:03  8    them is a native file and one of them was the hard

14:42:05  9    copies is why they were produced that way.

14:42:44 10              If you want to take your time, we'll go

14:42:45 11    off the record.

14:42:45 12         A    Oh, I'm sorry?  You were at -- I didn't

14:42:46 13    know you were asking --

14:42:46 14         Q    The question was, why was that not

14:42:48 15    produced before?  It's clearly before June of 2009.

14:42:51 16         A    I don't know if it was or if it wasn't.

14:42:54 17    This is an e-mail that was essentially sent by

14:42:56 18    someone at AFJ -- I don't know what AFJ is -- to

14:43:01 19    Patrick Disney.

14:43:02 20         Q    Relating to lobbying laws.  You have no

14:43:06 21    idea why it wasn't produced?

14:43:07 22         A    It seems to be just a printout from the

Page 209

```
14:43:10   1    website.
14:43:10   2         Q    It's an e-mail, Dr. Parsi --
14:43:12   3         A    Mm-hmm.
14:43:14   4         Q    -- from somebody at AFJ, which stands for
14:43:17   5    Alliance For Justice, to Patrick Disney, and he
14:43:20   6    testified about it at his deposition.
14:43:21   7         A    Mm-hmm.  Oh, he did?  Oh, he did?
14:43:23   8         Q    Right.
14:43:24   9         A    So you guys had it then.
14:43:26  10         Q    No, he said he had these communications,
14:43:29  11    and the question was at that time was, why have they
14:43:31  12    not been produced, as it has been repeatedly since
14:43:35  13    then, and were not produced until ordered by the
14:43:38  14    Court just a month ago.
14:43:39  15              So my question was, why were those not --
14:43:40  16              MR. PISHEVAR:  Objection to your
14:43:40  17    characterization.
14:43:40  18    BY MR. KAPSHANDY:
14:43:40  19         Q    -- produced?
14:43:41  20         A    I believe this was produced.
14:43:42  21         Q    Okay.  Well, we will put that aside.
14:43:49  22              Let me hand you what we'll mark as your
```

Page 210

14:43:51  1    deposition Exhibit 130.

14:43:48  2             (Exhibit No. 130 was marked for

14:43:48  3             identification.)

14:43:48  4    BY MR. KAPSHANDY:

14:44:01  5       Q    Which is produced as part of the Babak

14:44:03  6    Talebi production, which is a markup of the

14:44:13  7    "Incidents At Sea" Resolution.

14:44:19  8             MR. PISHEVAR:  Didn't you ask Babak Talebi

14:44:20  9    about this at his deposition?

14:44:22  10            MR. KAPSHANDY:  Pardon?

14:44:23  11            MR. PISHEVAR:  Didn't you ask him about

14:44:24  12   this at his deposition?

14:44:25  13            MR. KAPSHANDY:  No, we didn't have it.

14:44:27  14            MR. PISHEVAR:  So it wouldn't be an exhibit

14:44:30  15   to that depo then.

14:44:31  16   BY MR. KAPSHANDY:

14:44:32  17      Q    First of all, this is -- you know what a

14:44:35  18   markup is, a redlined copy of a document?  That's

14:44:38  19   what this appears to be, correct?

14:44:39  20      A    Sorry, a markup?

14:44:42  21      Q    Somebody --

14:44:43  22      A    Is editing something.

Page 211

| 14:44:45 | 1 | Q | -- DE has put comments in there and made |

14:44:45  1        Q     -- DE has put comments in there and made

14:44:49  2    revisions to the document.  It's known as redlining

14:44:52  3    or marking up a document.

14:44:53  4              In this case, in particular, a proposed

14:44:54  5    legislation regarding the "Incidents At Sea" Treaty.

14:44:57  6    Right?

14:44:58  7        A     Mm-hmm.

14:44:59  8        Q     Any idea why that wasn't produced?

14:45:01  9        A     Was this part of the Babak Talebi e-mails?

14:45:05  10       Q     Yes.

14:45:06  11       A     Well, you have to ask my counsel.  As I

14:45:06  12   explained to you, I did not do that discovery.

14:45:07  13       Q     Well, do you think it was discoverable?

14:45:09  14       A     I don't know.

14:45:09  15             MR. PISHEVAR:  Objection.  Calls for a

14:45:10  16   legal conclusion.

         17             THE WITNESS:  I'm just saying to you right

         18   now, you asked me why it wasn't produced, I said --

         19   BY MR. KAPSHANDY:

         20       Q     Your counsel keeps --

         21       A     -- I wasn't the one who did it.

14:45:13  22       Q     Your counsel keeps objecting that the

Page 212

```
14:45:15   1   determination of discoverability --

14:45:15   2              MR. PISHEVAR:  That's not --

14:45:15   3   BY MR. KAPSHANDY:

14:45:18   4        Q    -- is not something you are able to make.

14:45:20   5   But my question for you is, that being the case, how

14:45:23   6   is it that you and your employees made these initial

14:45:25   7   reviews of their computers and put documents on the

14:45:28   8   server to be reviewed for counsel if they didn't and

14:45:31   9   weren't in a position to determine what is

14:45:33  10   discoverable or not?

14:45:34  11              MR. PISHEVAR:  Was this an attachment to

14:45:36  12   something?  Do you have what it was attached to or --

14:45:37  13              MR. KAPSHANDY:  No, it was just produced

14:45:39  14   like that.  It was a markup in a Word file.  You

14:45:43  15   should look at them sometime.  There are about 8,000

14:45:46  16   of them, Counsel.

14:45:47  17              MR. PISHEVAR:  Okay.  Please don't insult

14:45:49  18   me.

14:45:49  19              THE WITNESS:  Well, no, if it was part of

14:45:50  20   the e-mails, then it was not a --

14:45:50  21              MR. PISHEVAR:  Gratuitous.

14:45:51  22              THE WITNESS:  -- standalone document, then
```

Page 213

14:45:52   1   it must have been an attachment.  Can I see the

14:45:54   2   e-mail?

14:45:54   3   BY MR. KAPSHANDY:

14:45:54   4        Q    You can't tell how they're attached?  They

14:45:54   5   were just produced separately?

14:45:54   6        A    You can.  You can.

14:45:59   7        Q    Well, we will appreciate your assistance

14:46:00   8   of counsel.

14:46:00   9        A    If there's an e-mail, let me see that

14:46:01  10   there's an attachment to it.

14:46:02  11             MR. KAPSHANDY:  Counsel, if you could, we

14:46:04  12   would appreciate your assistance and help us

14:46:06  13   determine what that was an attachment to, it would be

14:46:09  14   much appreciated.

14:46:10  15             THE WITNESS:  No, if you printed it out,

14:46:12  16   you must have clicked on the e-mail and then you

14:46:12  17   printed on the document, so you --

14:46:14  18   BY MR. KAPSHANDY:

14:46:14  19        Q    Unfortunately, I would have appreciated

14:46:16  20   that too, Dr. Parsi, had the documents been so

14:46:19  21   linked in the format that they were produced.

14:46:20  22        A    It is, because it's a PSD file.

```
14:46:20   1        Q    Well, they weren't when they were produced
14:46:22   2   to us.
14:46:23   3        A    No, no, no, you probably opened it up with
14:46:25   4   the wrong program again.
14:46:25   5        Q    Don't worry.  Better computer expertise --
14:46:27   6        A    It's a PSD file.  You just import it into
14:46:30   7   your Outlook, and then you have everything in their
14:46:32   8   native format.
14:46:33   9             MR. KAPSHANDY:  Can we go off the record a
14:46:51  10   second.
14:46:52  11             THE VIDEOGRAPHER:  The time is 2:46 p.m.
14:46:55  12   We're going off the record.
14:58:22  13             (Recess.)
14:58:22  14             THE VIDEOGRAPHER:  The time is 2:58 p.m.
14:58:30  15   We're back on the record.
14:58:31  16   BY MR. KAPSHANDY:
14:58:31  17        Q    Okay.  Dr. Parsi, I would like to wrap
14:58:34  18   things up here and move to a couple of other
14:58:37  19   subjects, but, first, I -- I think I know what the
14:58:39  20   answer to the question is, but for the record, what
14:58:42  21   I'm going to do is mark as Exhibit 131 a compilation
14:58:47  22   of materials produced as part of the recent Talebi
```

Page 215

```
14:58:51   1   production related simply to CNAPI, the Campaign for
14:58:55   2   New American Policy on Iran, and I take it your
14:58:59   3   answer for that will be the same, you had no
14:59:01   4   involvement in the determination as to whether and
14:59:03   5   when those should have been produced, correct?
14:59:05   6          A   I believe so.
14:10:28   7              (Exhibit No. 131 was marked for
14:10:28   8              identification.)
14:59:06   9   BY MR. KAPSHANDY:
14:59:06  10          Q   Let me hand you what we'll mark as your
14:59:08  11   deposition Exhibit 132, which, believe it or not, is
14:59:15  12   still only a small fraction of the Talebi e-mails
14:59:18  13   that were produced recently.
14:10:28  14              (Exhibit No. 132 was marked for
14:10:28  15              identification.)
14:59:20  16              MR. KAPSHANDY:  We have a set for you too,
14:59:20  17   Counsel.
14:59:20  18   BY MR. KAPSHANDY:
14:59:23  19          Q   And I won't spend any time going through
14:59:27  20   these in any detail, and what we will represent for
14:59:29  21   the record that it's not all 5,500 or 8,000 of them.
14:59:33  22              But I take it your answer is the same, is
```

| 14:59:36 | 1 | that you had no involvement in the determination as |
| 14:59:38 | 2 | to whether those were discoverable or not? |
| 14:59:40 | 3 | A   No. |
| 14:59:45 | 4 | Q   I would like to turn to the question now |
| 14:59:49 | 5 | of damages that we are also permitted by the Court |
| 14:59:52 | 6 | to examine you on, correct? |
| 14:59:54 | 7 | A   I believe so. |
| 14:59:54 | 8 | Q   You understand that?  Are you prepared to |
| 14:59:56 | 9 | talk about that today? |
| 14:59:57 | 10 | A   Yes. |
| 14:59:57 | 11 | Q   Now, I understand you have not had an |
| 15:00:02 | 12 | economist, such as Professor Morse on behalf of |
| 15:00:05 | 13 | NIAC, do opinion or a professional report or |
| 15:00:10 | 14 | expertise on the amount of damages that Trita Parsi |
| 15:00:14 | 15 | has suffered economically, correct? |
| 15:00:16 | 16 | A   Correct. |
| 15:00:18 | 17 | Q   And, in fact, if we look at your income |
| 15:00:21 | 18 | tax returns from the time the Defendant Hassan |
| 15:00:26 | 19 | Daioleslam started writing about you in 2007 to |
| 15:00:28 | 20 | present, your income has increased every year since |
| 15:00:31 | 21 | then, correct? |
| 15:00:33 | 22 | A   I don't recall the exact numbers of my tax |

1                    CERTIFICATE OF NOTARY PUBLIC

2           I, LESLIE A. TODD, the officer before whom

3    the foregoing deposition was taken, do hereby certify

4    that the witness whose testimony appears in the

5    foregoing deposition was duly sworn by me; that the

6    testimony of said witness was taken by me in stenotypy

7    and thereafter reduced to typewriting under my

8    direction; that said deposition is a true record of the

9    testimony given by said witness; that I am neither

10   counsel for, related to, nor employed by any of the

11   parties to the action in which this deposition was

12   taken; and, further, that I am not a relative or

13   employee of any counsel or attorney employed by the

14   parties hereto, nor financially or otherwise

15   interested in the outcome of this action.

16

17   Dated this _____ day of _____ 2011.

18

19                         _____
                           LESLIE A. TODD
20                         Notary Public in and for the
                           District of Columbia
21

22   My commission expires: