# EXHIBIT EE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

-------------------------------------------------
TRITA PARSI and NATIONAL IRANIAN AMERICAN
COUNCIL,

       Plaintiffs,

    vs.     No. 08 CV 00705 (JDB)

DAIOLESLAM SEID HASSAN,

       Defendant.
-------------------------------------------------

DEPOSITION OF PATRICK DISNEY

New York, New York

Friday, October 29th, 2010

Reported by:
Jeremy Frank, MPM
JOB NO. 4506

Page 2

1
2                    October 29th, 2010
3                       2:14 p.m.
4
5         Deposition of PATRICK DISNEY, held at
6    the offices of Sidley Austin, LLP, 787 7th
7    Avenue, New York, New York, pursuant to Notice
8    and Agreement, before Jeremy Frank, a Notary
9    Public of the State of New York.
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 5

1
2          THE VIDEOGRAPHER:  This is tape
3     number one in the videotaped deposition
4     of Patrick Disney in the matter of Trita
5     Parsi and National Iranian American
6     Council versus Daioleslam Seid Hassan in
7     the United States District Court for the
8     District of Columbia.  This deposition is
9     being held at Sidley Austin, 787 7th
10    Avenue, New York, New York on October
11    29th, 2010 at approximately 2:14 p.m.  My
12    name is Aydaline Garcia and I'm the video
13    specialist, and the court reporter is
14    Jeremy Frank.
15          Will counsel please introduce
16    themselves beginning with the party
17    noticing this proceeding.
18          MR. JENSEN:  My name is Peter
19    Jensen, I'm counsel for the defendant
20    with the law firm of Sidley Austin.
21          MR. FOUGERE:  Josh Fougere also for
22    the defendant with Sidley Austin.
23          MR. NELSON:  Adrian Nelson with
24    Pishevar & Associates on behalf of NIAC
25    and Dr. Trita Parsi.

1                    Disney
2       A.   I believe everyone took their own
3  notes individually, I made notes individually,
4  yes.
5       Q.   What did you do with those notes?
6       A.   I kept them in my files.
7       Q.   Were they hard copy, did you put
8  them in electronic documents?
9       A.   I generally handwrote them.
10      Q.   Were those files searched for
11 responsiveness?
12      A.   They were.
13      Q.   If they were responsive were they
14 produced?
15      A.   Yes.
16      Q.   Let's flip over to March 19th,
17 2009 in the calendar exhibit.
18           Do you see an entry that says,
19 "Discovery leg team meeting?"
20      A.   I do.
21      Q.   Under the required attendees
22 column it looks like it has David Elliott,
23 Emily Blout, and obviously yourself would be
24 another attendee since this is your calendar.
25 In the description it says to discuss what

Page 207

1                    Disney
2    will be considered privileged in the
3    discovery.
4            MR. NELSON: You said March 19th?
5        Q.  March 19th, 2009.
6        A.  Yes, I see that.
7        Q.  Tell me about that meeting.
8        A.  I don't remember this specific
9    meeting, I remembered having a question
10   about--
11           MR. NELSON: I object, are you, was
12       this, let me speak to you.
13           Is this a little meeting that you
14       had with lawyers?
15           THE WITNESS: No lawyers were
16       present in this meeting to the best of my
17       recollection.
18           MR. NELSON: What you're testifying
19       to no lawyer was present?
20           THE WITNESS: Not remembering the
21       specific meeting, but I believe no
22       lawyers were present at this meeting.
23           MR. NELSON: You can answer.
24       Q.  To the best of your recollection
25   what was this meeting?

Page 208

1           Disney
2      A.   We in the process of discovery it
3   was communicated to us that certain matters
4   were not open to be being produced, these
5   included communications with legal counsel.
6   This was something that we all as a staff
7   needed to have a very clear conception up, and
8   it is my belief this meeting was an
9   opportunity to discuss exactly what would fall
10  under that category.
11     Q.   So were the three of you, were all
12  the staff when they were doing the review of
13  these documents, were they making a determi-
14  nation about what was privileged and what
15  documents were not privileged?
16     A.   As individuals were doing their
17  own discovery process, they were constantly
18  making determinations about one thing or
19  another.
20     Q.   Is privilege one of those
21  determinations?
22     A.   In the course of reviewing our
23  e-mails for discovery process, if each
24  individual had an e-mail with our attorneys,
25  that individual would most likely have

Page 209

1           Disney
2  determined that to be nondiscoverable, so if
3  that's answer to the question, the answer
4  would be yes.
5       Q.    Okay.
6             So by nondiscoverable you mean
7  that if you determined it was privileged and
8  this is you, Patrick Disney, look at this
9  e-mail and say it was sent to my lawyer, or
10 the lawyer was cc'd on it or something like
11 that, you make the determination that that
12 document is privileged, you would then
13 withhold that document.
14            Is that --
15      A.    I don't want to generalize, but it
16 was communicated to us the various ways that
17 we could understand whether or not a document
18 met the criteria to be turned over, and we
19 each as an individual made that determination,
20 yes.
21      Q.    And who communicated that to you?
22      A.    Again it was very complicated
23 determination, it was a complicated issue, so
24 I'm certain it was communicated to us through
25 various discussions from Trita to other

```
 1                        Disney
 2                 C E R T I F I C A T E
 3    STATE OF NEW YORK     )
 4                          : ss.
 5    COUNTY OF NEW YORK    )
 6
 7           I, Jeremy Frank, a Notary Public within
 8    and for the State of New York, do hereby
 9    certify:
10           That PATRICK DISNEY, the witness whose
11    deposition is hereinbefore set forth, was duly
12    sworn by me and that such deposition is a true
13    record of the testimony given by the witness.
14           I further certify that I am not related
15    to any of the parties to this action by blood
16    or marriage, and that I am in no way
17    interested in the outcome of this matter.
18           IN WITNESS WHEREOF, I have hereby
19    set my hand on the 1st day of November, 2010.
20
21                         _____
22                         JEREMY FRANK, MPM
23
24
25
```