# EXHIBIT KKK

Shelton, WA, Sanderson Field, NDB OR GPS–A, Amdt 2, CANCELLED

[FR Doc. E6–14731 Filed 9–11–06; 8:45 am]
BILLING CODE 4910–13–P

# DEPARTMENT OF HEALTH AND HUMAN SERVICES

## Food and Drug Administration

### 21 CFR Part 880

### General Hospital and Personal Use Devices

*CFR Correction*

In Title 21 of the Code of Federal Regulations, parts 800 to 1299, revised as of April 1, 2006, on page 410, in § 880.5950, paragraph (b) is corrected to read as follows:

**§ 880.5950  Umbilical occlusion device.**

\*   \*   \*   \*   \*

(b) *Classification.* Class I (general controls). The device is exempt from the premarket notification procedures in subpart E of part 807 of this chapter, subject to the limitations in § 880.9.

[FR Doc. 06–55527 Filed 9–11–06; 8:45 am]
BILLING CODE 1505–01–D

# DEPARTMENT OF THE TREASURY

## Office of Foreign Assets Control

### 31 CFR Part 560

### Iranian Transactions Regulations

**AGENCY:** Office of Foreign Assets Control, Treasury.
**ACTION:** Final rule; amendment.

**SUMMARY:** The Office of Foreign Assets Control of the U.S. Department of the Treasury ("OFAC") is amending the Iranian Transactions Regulations, 31 CFR part 560, to revoke the authorizations contained in § 560.516 with respect to Bank Saderat and to except Bank Saderat from the scope of § 560.405 and § 560.532(b). These amendments effectively prohibit all transactions directly or indirectly involving Bank Saderat. In addition, OFAC is making a technical amendment to paragraph (a)(1) of § 560.516.
**DATES:** *Effective Date:* September 8, 2006.
**FOR FURTHER INFORMATION CONTACT:** Assistant Director of Compliance Outreach & Implementation, tel.: 202/622–2490, Assistant Director of Licensing, tel.: 202/622–2480, Assistant Director of Policy, tel.: 202/622–4855, or Chief Counsel, tel.: 202/622–2410, Office of Foreign Assets Control, Department of the Treasury, Washington, DC 20220 (not toll free numbers).

**SUPPLEMENTARY INFORMATION:**

**Electronic and Facsimile Availability**

This document and additional information concerning the Office of Foreign Assets Control ("OFAC") are available from OFAC's Web site (*http://www.treas.gov/ofac*) or via facsimile through a 24-hour fax-on demand service, tel.: (202) 622–0077.

**Background**

The Iranian Transactions Regulations, 31 CFR part 560 (the "ITR"), implement a series of Executive orders, beginning with Executive Order 12957, issued on March 15, 1995, under the authority of the International Emergency Economic Powers Act (50 U.S.C. 1701–1706) ("IEEPA"). In that order, the President declared a national emergency with respect to the actions and policies of the Government of Iran, including its support for international terrorism, its efforts to undermine the Middle East peace process, and its efforts to acquire weapons of mass destruction and the means to deliver them. To deal with that threat, Executive Order 12957 imposed prohibitions on certain transactions with respect to the development of Iranian petroleum resources. On May 6, 1995, the President issued Executive Order 12959 imposing comprehensive trade sanctions to further respond to this threat, and on August 19, 1997, the President issued Executive Order 13059 consolidating and clarifying the previous orders.

The Office of Foreign Assets Control ("OFAC") is amending the ITR to cut off Bank Saderat, one of the largest Iranian government-owned banks, from the U.S. financial system. Bank Saderat has been a significant facilitator of Hizballah's financial activities and has served as a conduit between the Government of Iran and Hizballah, Hamas, the Popular Front for the Liberation of Palestine-General Command, and Palestinian Islamic Jihad.

To cut off Bank Saderat from the U.S. financial system, OFAC is making three amendments to the ITR that effectively prohibit all transactions directly or indirectly involving Bank Saderat. OFAC is amending § 560.516, a general license authorizing payment and U.S. dollar clearing transactions involving Iran, to revoke its applicability to Bank Saderat. OFAC is also amending § 560.405, an interpretive section, and § 560.532(b), a statement of licensing policy, to exclude Bank Saderat from the scope of these provisions.

Section 560.516(a) authorizes U.S. depository institutions to process transfers of funds to or from Iran, or for the direct or indirect benefit of persons in Iran or the Government of Iran, if the transfer is covered in full by any of the following conditions and does not involve debiting or crediting an Iranian account: (1) The transfer is by order of a non-Iranian foreign bank from its own account in a domestic bank to an account held by a domestic bank for a second non-Iranian foreign bank; (2) the transfer arises from an underlying transaction that has been authorized by a specific or general license issued pursuant to the ITR; (3) the transfer arises from an underlying transaction that is not prohibited by the ITR; or (4) the transfer arises from an underlying transaction that is exempted from regulation pursuant to § 203(b) of IEEPA. Section 560.516(b) authorizes U.S. registered brokers or dealers in securities to process transfers of funds to or from Iran, or for the direct or indirect benefit of persons in Iran or the Government of Iran, if the transfer is covered in full by any of the conditions set forth in (2)–(4) above and does not involve debiting or crediting an Iranian account. The term *Iranian account* is defined in § 560.320 to mean an account of a person located in Iran or of the Government of Iran maintained on the books of either a U.S. depository institution or a U.S. registered broker or dealer in securities.

OFAC is adding a new paragraph (f) to § 560.516 to revoke the applicability to Bank Saderat of the general licenses in paragraphs (a) and (b) of § 560.516. Effective September 8, 2006, transactions directly or indirectly involving Bank Saderat are excluded from the scope of these authorizations. OFAC is also including an exception in this amendment to provide 90 days to wind down or complete performance of transactions involving Bank Saderat that are described in paragraphs (a)(2) through (4) or (b) of § 560.516 and that were entered into before September 8, 2006, except for specific licenses issued pursuant to § 560.532(b) that were being used before September 8, 2006 to obtain letters of credit issued by Bank Saderat, for which OFAC is providing a 180-day wind-down period.

Section 560.405 is an interpretive section providing that transactions ordinarily incident to licensed transactions and necessary to give them effect are also authorized, with certain exceptions. OFAC is adding a new exception to § 560.405 for transactions directly or indirectly involving Bank Saderat. Effective September 8, 2006, such transactions will not be authorized

as transactions ordinarily incident to a licensed transaction. As with § 560.516, OFAC is providing 90 days to wind down or complete performance of all transactions involving Bank Saderat that were entered into before September 8, 2006, except for specific licenses issued pursuant to § 560.532(b) that were being used before September 8, 2006 to obtain letters of credit issued by Bank Saderat, for which OFAC is providing a 180-day wind-down period.

Section 560.532 of the ITR deals with payment for and financing of commercial sales and exportation or reexportation of agricultural commodities and products, medicine, and medical devices that are licensed pursuant to § 560.530. Section 560.532(a) sets forth a general license authorizing certain payment terms. Section 560.532(b) provides that specific licenses may be issued on a case-by-case basis for payment terms and trade financing not authorized by the general license in paragraph (a). Pursuant to § 560.532(b), OFAC has issued specific licenses authorizing the use of letters of credit issued by Iranian banks to pay for authorized agricultural and medical sales. OFAC is adding a new sentence to § 560.532(b) providing that, effective September 8, 2006, specific licenses that have been or will be issued pursuant to this paragraph will not authorize any transactions involving Bank Saderat. However, with respect to specific licenses that were being used as of September 8, 2006 to obtain letters of credit issued by Bank Saderat, OFAC is further amending § 560.532(b) to provide a 180-day wind-down period to complete performance on any letters of credit issued by Bank Saderat or to obtain a letter of credit from a different issuing bank.

In addition to the amendments relating to Bank Saderat, OFAC is also making a technical amendment to § 560.516. Paragraph (a)(1) of § 560.516 authorizes U.S. depository institutions to process transfers of funds to or from Iran, or for the direct or indirect benefit of persons in Iran or the Government of Iran, if the transfer is by order of a non-Iranian foreign bank from its own account in a domestic bank to an account held by a domestic bank for a second non-Iranian foreign bank. OFAC is amending this paragraph by deleting the word "second" to clarify that U.S. depository institutions are authorized to make transfers between accounts held by different branches of the same non-Iranian foreign bank.

**Public Participation**

Because the amendments of the ITR involve a foreign affairs function, the provisions of Executive Order 12866 and the Administrative Procedure Act (5 U.S.C. 553) requiring notice of proposed rulemaking, opportunity for public participation, and delay in effective date are inapplicable. Because no notice of proposed rulemaking is required for this rule, the Regulatory Flexibility Act (5 U.S.C. 601–612) does not apply.

**Paperwork Reduction Act**

The collections of information related to the ITR are contained in 31 CFR part 501 (the "Reporting, Procedures and Penalties Regulations"). Pursuant to the Paperwork Reduction Act of 1995 (44 U.S.C. 3507), those collections of information have been approved by the Office of Management and Budget under control number 1505–0164. An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless the collection of information displays a valid control number.

**List of Subjects in 31 CFR Part 560**

Administrative practice and procedure, Banks, Banking, Brokers, Foreign Trade, Investments, Loans, Securities, Iran.

■ For the reasons set forth in the preamble, the Office of Foreign Assets Control amends 31 CFR part 560 as follows:

**PART 560—IRANIAN TRANSACTIONS REGULATIONS**

■ 1. The authority citation of part 560 continues to read as follows:

   **Authority:** 3 U.S.C. 301; 18 U.S.C. 2339B, 2332d; 22 U.S.C. 2349aa–9; 31 U.S.C. 321(b); 50 U.S.C. 1601–1651, 1701–1706; Pub. L. 101–410, 104 Stat. 890 (28 U.S.C. 2461 note); Pub. L. 106–387, 114 Stat. 1549; E.O. 12613, 52 FR 41940, 3 CFR, 1987 Comp., p. 256; E.O. 12957, 60 FR 14615, 3 CFR, 1995 Comp., p. 332; E.O. 12959, 60 FR 24757, 3 CFR, 1995, Comp., 356; E.O. 13059, 62 FR 44531, 3 CFR, 1997 Comp., p. 217.

**Subpart D—Interpretations**

■ 2. In § 560.405, republish the introductory text, redesignate paragraphs (a) through (e) as paragraphs (b) through (f), respectively, and add a new paragraph (a) to read as follows:

**§ 560.405  Transactions incidental to a licensed transaction authorized.**

Any transaction ordinarily incident to a licensed transaction and necessary to give effect thereto is also authorized, except:

   (a) Effective September 8, 2006, transactions directly or indirectly involving Bank Saderat, except that transactions involving Bank Saderat that were entered into before September 8, 2006 may be performed according to their terms until December 7, 2006.

   **Note to paragraph (a):** But see § 560.532(b), which provides a 180-day wind-down period for specific licenses that were being used before September 8, 2006 to obtain letters of credit issued by Bank Saderat.

\* \* \* \* \*

**Subpart E—Licenses, Authorizations, and Statements of Licensing Policy**

■ 3. In § 560.516, revise paragraph (a)(1) and add a new paragraph (f) to read as follows:

**§ 560.516  Payment and United States dollar clearing transactions involving Iran.**

   (a) \* \* \*

   (1) The transfer is by order of a foreign bank which is not an Iranian entity from its own account in a domestic bank (directly or through a foreign branch or subsidiary of a domestic bank) to an account held by a domestic bank (directly or through a foreign branch or subsidiary of a domestic bank) for a foreign bank which is not an Iranian entity. For purposes of this section, "foreign bank" includes a foreign subsidiary, but not a foreign branch of a domestic bank;

\* \* \* \* \*

   (f) Effective September 8, 2006, this section does not authorize transactions directly or indirectly involving Bank Saderat, except that transactions described in paragraphs (a)(2) through (a)(4) or (b) of this section involving Bank Saderat that were entered into before September 8, 2006 may be performed according to their terms until December 7, 2006.

   **Note to paragraph (f):** But see § 560.532(b), which provides a 180-day wind-down period for specific licenses that were being used before September 8, 2006 to obtain letters of credit issued by Bank Saderat.

■ 4. In § 560.532, revise paragraph (b) to read as follows:

**§ 560.532  Payment for and financing of exports and reexports of commercial commodities, medicine, and medical devices.**

\* \* \* \* \*

   (b) *Specific licenses for alternate payment terms.* Specific licenses may be issued on a case-by-case basis for payment terms and trade financing not authorized by the general license in paragraph (a) of this section for sales pursuant to § 560.530. Effective September 8, 2006, specific licenses that have been or will be issued pursuant to this paragraph will not authorize any payment terms or trade financing involving Bank Saderat, except that, in the case of specific licenses that were

Federal Register / Vol. 71, No. 176 / Tuesday, September 12, 2006 / Rules and Regulations    53571

being used before September 8, 2006 to obtain letters of credit issued by Bank Saderat, such letters of credit may continue to be performed according to their terms until March 7, 2007. See § 501.801(b) of this chapter for specific licensing procedures.

\* \* \* \* \*

Dated: September 7, 2006.

**Adam J. Szubin,**

*Director, Office of Foreign Assets Control.*

[FR Doc. 06–7620 Filed 9–8–06; 3:20 pm]

**BILLING CODE 4811–37–P**

---

## GENERAL SERVICES ADMINISTRATION

### 41 CFR Part 102–36

[FMR Amendment 2006–06; FMR Case 2006–102–4]

RIN 3090–AI27

### Federal Management Regulation; Disposition of Excess Personal Property

**AGENCY:** Office of Governmentwide Policy, General Services Administration (GSA).

**ACTION:** Final rule.

**SUMMARY:** The General Services Administration is amending the Federal Management Regulation (FMR) by correcting references to outdated or superceded provisions of law or regulation; correcting text to be in conformance with revised laws, regulation, or Federal agency responsibilities; and clarifying text where the intended meaning could be updated or made clearer.

**DATES:** Effective Date: October 12, 2006.

**FOR FURTHER INFORMATION CONTACT:** The Regulatory Secretariat, Room 4035, GS Building, Washington, DC 20405, (202) 501–4755, for information pertaining to status or publication schedules. For clarification of content, contact Mr. Robert Holcombe, Office of Governmentwide Policy, Office of Travel, Transportation, and Asset Management (MT), at (202) 501–3828, or e-mail at *Robert.Holcombe@gsa.gov.* Please cite Amendment 2006–06, FMR case 2006–102–4.

**SUPPLEMENTARY INFORMATION:**

### A. Background

GSA is in the process of revising the Federal Property Management Regulations (FPMR) and transferring most of the content into a new, streamlined Federal Management Regulation (FMR). Consequently, FMR part 102–36 (41 CFR part 102–36) contains references to FPMR sections that no longer exist. Also, Public Law 107–217 revised and restated certain provisions of the Federal Property and Administrative Services Act of 1949 (Property Act). For example, the Property Act provisions found at 40 U.S.C. 471–514 will now generally be found at 40 U.S.C. 101–705. This final rule updates the title 40 U.S.C. citations to reflect the changes made by Public Law 107–217. Finally, updating or clarifying revisions were made where the revisions are seen as administrative or clerical in nature. This includes a revised definition of "Foreign excess personal property."

### B. Executive Order 12866

The General Services Administration (GSA) has determined that this final rule is not a significant regulatory action for the purposes of Executive Order 12866.

### C. Regulatory Flexibility Act

This final rule is not required to be published in the **Federal Register** for comment. Therefore, the Regulatory Flexibility Act does not apply.

### D. Paperwork Reduction Act

The Paperwork Reduction Act does not apply because the changes to the FMR do not impose information collection requirements that require the approval of the Office of Management and Budget under 44 U.S.C. 3501, *et seq.*

### E. Small Business Regulatory Enforcement Fairness Act

This final rule is exempt from Congressional review under 5 U.S.C. 801 since it relates solely to agency management and personnel.

### List of Subjects in 41 CFR Part 102–36

Government property management, Surplus government property.

Dated: April 14, 2006.

**David L. Bibb,**

*Acting Administrator of General Services.*

■ For the reasons set forth in the preamble, GSA amends 41 CFR part 102–36 as set forth below:

## PART 102–36—DISPOSITION OF EXCESS PERSONAL PROPERTY

■ 1. The authority citation for 41 CFR part 102–36 is revised to read as follows:

**Authority:** 40 U.S.C. 121(c).

■ 2. Revise § 102–36.5 to read as follows:

### § 102–36.5  What is the governing authority for this part?

Section 121(c) of title 40, United States Code, authorizes the Administrator of General Services to prescribe regulations as he deems necessary to carry out his functions under subtitle I of title 40. Section 521 of title 40 authorizes the General Services Administration (GSA) to prescribe policies to promote the maximum use of excess Government personal property by executive agencies.

### § 102–36.10  [Amended]

■ 3. Amend § 102–36.10 by removing "the Commonwealth of Puerto Rico, and the Commonwealth of" and adding "Puerto Rico, the Federated States of Micronesia, the Marshall Islands, Palau, and" in its place.

### § 102–36.35  [Amended]

■ 4. Amend § 102–36.35 by removing from paragraph (b) "The Property Act" and adding "Title 40 of the United States Code" in its place; and by removing from paragraph (c) "part 101–45 of this title" and adding "part 102–38 of this chapter" in its place.

■ 5. Amend § 102–36.40 by—

■ a. Removing from the definition "Exchange/sale property," "means" and adding "is" in its place; and removing "part 101–46 of this title" and adding "part 102–39 of this chapter" in its place;

■ b. Removing from the definition "Foreign excess personal property," "the Commonwealth of Puerto Rico, and the Commonwealth of" and adding "Puerto Rico, the Federated States of Micronesia, the Marshall Islands, Palau, and" in its place;

■ c. Removing the definitions "Federal Disposal System (FEDS)" and "Property Act"; and

■ d. Adding the definition "GSAXcess®" to read as follows:

### § 102–36.40  What definitions apply to this part?

\* \* \* \* \*

*GSAXcess®* is GSA's website for reporting, searching and selecting excess personal property. For information on using GSAXcess®, access *http://www.gsaxcess.gov.*

\* \* \* \* \*

### § 102–36.50  [Amended]

■ 6. Amend § 102–36.50 by removing "the Property Act" and adding "title 40 of the United States Code" in its place.

### § 102–36.55  [Amended]

■ 7. Amend § 102–36.55 by removing from paragraph (e) "FEDS" and adding "GSAXcess®" in its place.