IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| TRITA PARSI ) | |
| and ) | |
| NATIONAL IRANIAN AMERICAN COUNCIL ) | |
| Plaintiffs, ) | |
| v. ) | Civil No. 08 CV 00705 |
| HASSAN SEID DAIOLESLAM, ) | |
| Defendant ) | |

PLAINTIFFS' SUPPLEMENTAL EXCEPTIONS
TO DEFENDANT'S REVISED BILL OF COSTS

COME NOW Plaintiffs, Dr. Trita Parsi and the National Iranian American Council ("NIAC") (collectively "NIAC"), by and through their counsel, Afshin Pishevar, Esquire, Adrian V. Nelson, II, Esquire, and Pishevar & Associates, P.C., pursuant to Fed. R. Civ. P., Rule 37, and hereby supplements Plaintiff's Exceptions to Defendant's Revised Bill of Costs, and states as follows:

I. PROCEDURAL HISTORY

On September 13, 2011, Plaintiffs' filed a joint Motion to Stay and Exceptions to Defendant's Bill of Costs (hereinafter "Motion and Exceptions"). Therein, among other concerns regarding Defendant's Bill of Costs, Plaintiffs noted that the defendant's Bill of Costs contained either an error as it related to the total number of hours devoted to Defendant's two granted motions or Defendant had included some unidentified multiplier in support of it's Bill of

Costs. Additionally, Plaintiffs' noted that the defendant's Bill of Costs did not contain any billable hour information for the attorneys and non-attorneys who provided professional services in support of Defendant's two granted motions.

On the evening of September 13, 2011, upon receipt of Plaintiffs' Motion and Exceptions, Defendant corrected his Bill of Costs acknowledging that there was an error in terms of the total number of hours that had been devoted by the attorneys and non-attorneys who had worked on the two granted motions. Additionally, the defendant listed the hourly rates for the attorneys and non-attorneys who worked on the two granted motions, which rates had been omitted from the defendant's original Bill of Costs.

On September 20, 2011, the Court granted Plaintiffs' Motion to Stay. However, what remains to be decided by the Court is the following: 1) whether Plaintiffs' conduct which resulted in the defendant having filed its motions to compel was "substantially justified"; and 2) whether the hours devoted by the defendant to the two granted motions were "reasonable."

## II. LEGAL STANDARD

Fed. R. Civ. P. 37(a)(5) sets forth that "reasonableness" and "substantial justification" are the two standards that inform whether, and to what extent, a party is entitled to attorney's fees relating to a successful motion to compel. Specifically, Fed. R. Civ. P. 37(5)(A) provides:

> *If the Motion is Granted (or Disclosure or Discovery Is Provided After Filing).* If the motion is granted – or if the disclosure or requested discovery is provided after the motion was filed – the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
>
> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;

(ii) the opposing party's nondisclosure, response, or objection was substantially justified; or

(iii) other circumstances make an award of expense unjust.

For the reasons set for below, Plaintiffs contend that its conduct was "substantially justified" and that the attorneys fees captured in Defendant's Bill of Costs are not "reasonable."[1]

### III. EXCEPTIONS TO BILL OF COSTS

### A. Plaintiffs Were "Substantially Justified" In Their Discovery Conduct

A "party compelled to produce discovery can escape liability by establishing that its resistance to discovery was substantially justified." *Mitchell v. Nat'l. Railroad Passenger Corp.*, CA 01-1866 (D.D.C. August 20, 2003.) (*See* Attached Exhibit "A".) As a threshold matter, Plaintiffs reject any notion that they were "resistant" to the discovery sought in the defendant's Motion to Compel Production of Server and Motion for Production of Membership Lists.

"Substantial justification" has been defined as follows:

> "If there is an absence of controlling authority, and the issue presented is one not free from doubt, and could engender a reasonable difference of opinion among conscientious diligent but reasonable advocates, then the opposing positions taken by them are substantially justified."

As is set for the below, it is Plaintiffs' contention that they were "substantially justified" in there conduct that preceded the defendant's motions to compel.

#### 1. Motion to Compel Production of Server

By Order dated July 1, 2010, Plaintiffs were ordered to produce for imaging NIAC's "server" for forensic imaging by PwC. PwC was to produce to the defendant NIAC's Outlook

---

[1] Plaintiffs' respectfully submit that in their attempt to address the legal standard of "substantial justification" as required, they are not attempting to reargue what has already been ruled upon by the Court in relation to Defendant's motions to compel. However, the "substantial justification" legal standard does require Plaintiffs to justify their conduct.

calendar records in native pst format. What seems to have fallen on deaf ears is NIAC's repeated explanation that it does not have a "server."

At all times relevant, NIAC has had a simple computer network that consisted of desktop and laptop workstations connected to a centrally located shared drive, which shared drive that was in use in December 2009 when the Outlook calendars were purportedly compromised by NIAC was NIAC's Iomega Store Center NAS (serial no. 0JAK380013). Thus, in the absence of a "server" it is undisputed that NIAC attempted to comply with the spirit of the Court's July 1 Order by producing to PwC for imaging eight PCs from which the Outlook calendar pst files could be extracted.

As a small, grassroots organization, NIAC does not have an onsite Network Administrator. As a result, NIAC inadvertently did not produce four PC's that the defendant believed should have been produced, including the PC used by Babek Talebi. The four PC's not produced by NIAC was not an intentional, nefarious act, but rather due to the fact that NIAC believed Talebi's former computer was one that had been used by one of NIAC's interns, not Talebi.[2]

Ultimately, by Order dated March 29, 2011, the court ordered NIAC to produce the server/shared drive or, in the alternative, the four PC's that had not been previously produced. NIAC complied with the Court's Order by producing its Iomega Store Center NAS which had been in use in December 2009 at the time the Outlook calendars were purportedly altered by NIAC. Instead, the defendant complained that NIAC should have produced a Dell Dimension

---

[2] It should be noted that Defendant never specified that Talebi's computer was being sought when asked which user's computers should be produced. In an email sent by Tom Ross from Sidley on August 18, 2010 to Patrick Parsa at Pishevar & Associates, Tom Ross specified ten people whose computers they believed should be produced for imaging. That list did not include Babek Talebi's computer.

4550 Desktop Computer (serial no. 42BVV21) that had been used prior to December 4, 2009, as a shared drive for NIAC's files. It is unclear why NIAC was expected to know that the Court expected NIAC to produce the Dell Dimension shared drive system when it was not in use in late December 2009, and all of its pst files had been transferred to the Iomega Store Center effective December 4, 2009, which was the shared drive that was in use in late December 2009, when the Outlook calendar files were purportedly altered.

Clearly based upon the foregoing, there is "substantial justification" for NIAC's conduct that preceded the defendant's motion to compel. First, the issue of whether NIAC had or did not have a traditional "server" was not "free from doubt" and "could engender a reasonable difference of opinion among conscientious, diligent but reasonable advocates." A finding of "substantial justification" is buttressed by the Court's own acknowledgement in its supplemental March 29, 2011, Order that NIAC may not have a "server," but may have a shared drive or find it necessary to only produce the four CPUs it had not previously produced. Second, whether NIAC was being asked to produce its in-service December 2009 shared drive versus its out-of-service pre-December 2009 shared drive certainly was not "free from doubt" and once again "could engender a reasonable difference of opinion among conscientious, diligent but reasonable advocates"

Accordingly, as it relates to Defendant's Motion to Compel Production of Server, it is NIAC's position that it has demonstrated that its conduct in response to the court's July 1, 2010, and March 4, 2011, Orders was "substantially justified" and therefore should result in Defendant not receiving any costs, or reduced costs, under its Bill of Costs.

### 2. Motion to Compel Membership Lists

In March 2009, the defendant propounded routine document requests, including any documents relating to NIAC membership. In May 2009, in response to those document requests, the defendant admits that NIAC produced what it had in the way of membership information – a December 2007 list of current and expired members and a 2008 list of current and expired members.

Again, NIAC is a small grassroots organization that does not have a large staff, which often results in the defendant's ivory tower refusal to understand the record-keeping of small organizations. The defendant found it unfathomable that NIAC didn't have more current membership records, writing in his Motion to Compel at page 2: "[U]nless NIAC had stopped maintaining lists of members in April 2008, Plaintiffs had not complied with the discovery request."

As a result of the forensic imaging ordered by the Court, the defendant began to request Salesforce database information, specifically meeting notes from NIAC. Salesforce is a subscriber, online database used by NIAC for a period of time. Defendant has finally conceded at page 4 of his Motion to Compel that it is unclear whether NIAC had the Salesforce database information or whether its vendor had access to the membership information. NIAC has always maintained that it did not have immediate access to the information once its subscription ended.

Once NIAC was able to gain access to Salesforce and produce membership information, the defendant complained that "the Salesforce lists were approximately a year obsolete" and that the information produced by NIAC should have been from its Convio database. Defendant does not deny that NIAC produced from Convio a list of 9,000 transactions. It is clear that NIAC's recordkeeping in the ordinary course of their business is not to the defendant's liking, specifically how it classifies its members. The parties differing definitions of what constitutes a

"former member," "active member," "expired member," "opportunity," "account," "contact," "lead," or "campaign" is the real source of the discovery dispute relating to NIAC's membership lists. However, the fact remains that NIAC produced said records as they are ordinarily kept, prior to the filing of Defendant's motion.

With respect to NIAC's membership lists it is clear that compliance with the defendant's document request were "substantially justified" as NIAC's obligations were not "free from doubt" and "could engender a reasonable difference of opinion among conscientious, diligent but reasonable advocates". First, the defendant has admitted that it was possible, albeit inconceivable, that as of April 2008 NIAC had stopped updating its membership records. Second, the defendant has further conceded that it is unclear whether NIAC had access to its Salesforce to obtain any existing membership information. Third, the parties had different understandings about membership classifications. Fourth, NIAC produced full membership lists, prior to the filing of Defendant's motion, albeit in a format that was not satisfactory to Defendant.

Accordingly, Plaintiffs have demonstrated "substantial justification" for there conduct relating to the defendant's request for membership list information, which "substantial justification" authorizes the court to deny Defendant's Bill of Costs or reduce the costs the defendant is seeking.

### B. The Time Spent In Support of Defendant's Motions Seems Unreasonable.

Based upon Plaintiff's Bill of Costs, five persons worked on Defendant's Motion to Compel Server and Motion to Compel Membership Lists, including: Thomas Kapshandy, Esquire, Thomas Ross, Esquire, HL Rogers, Esquire, Ms. Meredith Dudley, and Mr. Jeffrey Tisak. (*See* Attachment "A" to Defendant's Bill of Costs). Upon information and belief,

Messrs. Kapshandy, Ross and Rogers are attorneys, while Ms. Dudley and Mr. Tisak are non-attorneys, possibly paralegals. (*See* Attached Exhibit "B" – "D," Biographies for Timothy Kapshandy, HL Rogers, and Thomas Ross respectively.)

### 1. The Unreasonableness of Attorney Time Spent In Support of Defendant's Motion.

As it relates to hours claimed by attorneys in support of bills of costs, this court has acknowledged: "It must guard against two dangers that are mirror images of each other; insufficient or excessive delegation." "Insufficient delegation means that experienced lawyers are performing tasks well beneath them . . . On the other hand, inexperienced lawyers . . . may burn up many ours doing tasks that their seniors could have accomplished more efficiently and cheaply." In this instance, it must be noted that in the introduction to its Bill of Costs the defendant admitted that he is receiving legal services on a *pro bono* basis. This factor must be taken into consideration as it relates to whether junior associate Thomas Ross was permitted to bill so many hours on the two motions at issue as a way of giving him experience/training in a case in which a client would not be billed for the legal working done.

Messrs. Kapshandy, Ross, and Rogers collectively spent 43.1 hours in support of both of Defendant's Motions. In essence, defendant's counsel spent eight hours per day during a five day work week in support of Defendant's Motions. This is unreasonable for several reasons. First, the Court is asked to consider that Defendant's Motion to Compel Server was only four pages and contained no case law, and the defendant's Reply In Support of Defendant's Motion to Compel Server was only eleven pages, which also did not contain any case law. Both Defendant's Motion to Compel Server and Reply consisted of factual arguments that had been previously outlined in other forms, including letters to opposing counsel and status reports to the Court. Additionally, with respect to Defendant's Motion to Compel Membership Lists and

- 8 -

Reply, the initial motion was 14 pages and the Reply was only 6 pages. Again, Defendant's Motion and Reply consisted of previously made factual arguments and required no legal argument based upon legal research.

In essence, Defendant's Motions and respective Replies totaled approximately 35 pages. It seems unreasonable that Defendant's attorneys billed over one hour for each page of Defendant's Motions and Replies, which pleadings contained only regurgitated factual arguments and no arguments that required any legal research. Defendant does not have the right to claim the time of numerous attorneys working on the same Motion as "reasonable" and "necessary" simply because as one of the countries largest firms, they can. Defendant has the resources to commit five persons to a task, but simply because "they can" does not make it "necessary" or "reasonable."

Accordingly, Plaintiffs respectfully submit that the attorney time devoted to Defendant's Motions and Replies was unreasonable.

### 2. The Unreasonableness of Non-Attorney Time Spent In Support of Defendant's Motion.

The amount of non-attorney time spent in support of Defendant's Motion is astounding. Ms. Dudley and Mr. Tisak spent 81.6 hours compiling the exhibits that supported Defendant's Motion. In essence they spent two complete 40-hour work weeks preparing the exhibits in support of Defendant's Motions. Simply put, this is excessive.

Accordingly, Plaintiffs respectfully submit that the non-attorney time rendered in support of Defendant's Motions and Replies was unreasonable and excessive.

### IV. CONCLUSION

In the American system, prevailing parties in a Motion to Compel Discovery are not automatically awarded costs and fees. It is not a loser-pays-system. Rather, a showing has to be

made that the losing party's conduct was not "substantially justified," which in this case it was. Furthermore, the Bill of Cost submitted by the Defendant is unreasonable given the motions involved in this matter. Accordingly, for each of the reasons set forth above, Defendant's Bill of Costs should be disallowed in whole or in part.

Respectfully submitted,

_____/S/_____
A.P. Pishevar (D.C. Bar No. 451015)
Adrian V. Nelson, II (*Pro Hac Vice*)
**PISHEVAR & ASSOCIATES, P.C.**
600 East Jefferson Street, Suite 316
Rockville, MD 20852
Phone: (301) 279 – 8773
Fax:    (301) 279 – 7347
Counsel for the Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TRITA PARSI, et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 08 CV 00705 (JDB) |
| | ) |
| DAIOLESLAM SEID HASSAN, | ) |
| | ) |
| Defendant. | ) |

## CERTIFICATE OF SERVICE

I certify that on September 23, 2011, I served, via email, Plaintiffs' Supplemental Exceptions to Defendant's Revised Bill of Costs to:

>Timothy E. Kapshandy, Esquire
>Peter G. Jensen, Esquire
>SIDLEY AUSTIN LLP
>1501 K Street, N.W.
>Washington, D.C. 20005
>(202) 736-8000
>tkapshandy@sidley.com
>
>Attorneys for Defendant
>Seid Hassan Daioleslam
>
>
>             /s/
>_____
>Afshin Pishevar
>Adrian Nelson
>600 East Jefferson Street
>Suite 316
>Rockville, Maryland 20852
>(301) 279-8773
>ap@pishevarlegal.com
>anelson@pishevarlegal.com
>
>
>Attorneys for Plaintiff
>Trita Parsi
>National Iranian American Council