Mitchell v. National Railroad Passenger Corporation, CA 01-1866 (RWR/JMF) ECF (D. D.C. 8/20/2003) (D.D.C., 2003)

Page 1
ELAYNE R. MITCHELL, Plaintiff,
v.
NATIONAL RAILROAD PASSENGER CORPORATION, et al., Defendants.
CA 01-1866 (RWR/JMF) ECF.
United States District Court, District of Columbia.
August 20, 2003.
MEMORANDUM OPINION

JOHN M. FACCIOLA, District Judge.

I previously granted in part and denied in part *Plaintiff's Motion to Compel Defendants' Discovery Responses*. Plaintiff has now moved for attorneys fees.

## ANALYSIS

### Legal Standard

When a motion to compel is granted in part and denied in part, the court is obliged to apportion the fees and costs incurred in "relation to the motion among the parties and persons in a just manner." Fed.R.Civ.P. 37(4)(C). The party compelled can, however, escape liability by establishing that its resistance to the discovery was substantially justified. Fed.R.Civ.P. 37(4)(A). I have defined the term "substantial justification" as follows:

By substituting "substantial justification" for good faith, Fed.R.Civ.P. 37(a)(4)(A) objectifies the controlling standard by forcing judicial consideration of the state of law when the motion to compel is made and opposed. If there is an absence of controlling authority, and the issue presented is one not free from doubt and could engender a responsible difference of opinion among conscientious, diligent but reasonable advocates, then the opposing positions taken by them are substantially justified.

*Athridge v. Aetna Cas. & Sur. Co.*, 205 F.R.D. 200, 205 n. 1 (D.D.C. 1998).

### Whether Amtrak's[1] Position was Substantially Justified

The question presented is, therefore, whether the defendant's position was substantially justified, as I have defined that term, as to each issue raised. In my opinion of July 15, 2002, I identified those issues as follows:

a. The duties of Paul Bello, an employee who survived the restructuring that resulted in plaintiff's termination;

b. The consequences, if any, of previous Amtrak restructuring efforts on Amtrak employees who are members of protected classes;

c. Amtrak's hiring and firing of other members of protected classes during plaintiff's employment;

d. All other complaints of discrimination, if any, against Amtrak during the period of plaintiff's employment;

e. The availability of information regarding a prior class action filed in this court, in which plaintiff was a class member;

f. Whether certain materials produced by a consultant from Amtrak are protected by the attorney-client or work product privileges;

g. Whether severance agreements with other employees were discoverable;

h. Whether the discovery cutoff date bars any additional discovery;

i. Whether plaintiff should be permitted to take two additional depositions.



I will address each of these issues in turn in order to ascertain whether Amtrak's position as to that issue was substantially justified.

## The Consequences of Previous Amtrak Restructurings

In its opposition to plaintiff's motion, Amtrak indicated that, despite its objections, it had provided information about restructuring in 1998, 1999, 2000 and 2001. *Defendant's Opposition to Plaintiff's Motion to Compel* at 6. Plaintiff replied that she still wanted information as to restructurings "between 1996 and 1999." *Plaintiff's Reply in Support of Her Motion to Compel Discovery Responses* at 2. She also insisted that she was entitled to "information concerning the current duties performed by Paul Bello, a younger, white, male, non-disabled employee who was not "restructured" out of his job when plaintiff was." *Id*. Plaintiff wanted to know why Bello was retained when she was not and whether Bello was performing any of her duties. *Id*.

I concluded that plaintiff was entitled to the information she sought. *Mitchell v. Nat'l. R.R. Passenger Corp*, 208 F.R.D. 455, 457 (2002). However, in opposition to plaintiff's petition for attorney fees, Amtrak now tells me for the first time that it had produced Bello's file, which contained a job description and that Bello was scheduled for a deposition.

We cannot proceed in this fashion. Parties should not be bringing to my attention significant information bearing on a discovery request after I have ruled upon it. The Supreme Court has admonished judges not to permit the litigation pertaining to attorney fees to take longer than the litigation itself. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). I cannot be faithful to that responsibility if I permit parties to raise, during fee proceedings, factual issues that require a hearing to resolve. These issues should have been raised when I was resolving the discovery dispute itself. I will, therefore, not consider information brought to my attention for the first time after I have ruled on the discovery dispute.

Considering only the information that was before me when I ruled, I must find that Amtrak did not provide any justification in its original documents for its resistance to plaintiff's discovery as to the additional restructurings or Bello's job duties. That being the case, I cannot find that Amtrak's position was substantially justified.

## Amtrak's Hiring and Firing of Members of Protected Classes

Amtrak opposed providing any information about hiring within the Human Resources Department during the period of time plaintiff worked there because she complained of being terminated. Amtrak cited no authority for the distinction it drew between hiring data and termination data. Plaintiff relied on an Eight Circuit case in which the court concluded that it would be "hard to see how evidence which suggests that [the defendant] discriminated against blacks in hiring would be irrelevant to the question of whether it fired a black employee because of his race." *Estes v. Dick Smith Ford, Inc.*, 856 F.2d 1097, 1102 (8th Cir. 1988). I reached the same conclusion and I am still convinced that a pattern of not hiring qualified African Americans might bear on the motive or intent that accompanies the firing of an African American. I persist in that view and cannot find that Amtrak's contrary position, unsupported by a reference to any case, let alone controlling authority in this jurisdiction, could be described as substantially justified.

## Other Complaints of Discrimination

Amtrak cited a 1983 District Court case in support of its assertion that "discrimination claims filed against Amtrak are not probative of whether defendants discriminated against plaintiff when she was terminated." *Defendants' Opposition to Plaintiff's Motion to Compel* at 11. Nevertheless, Amtrak produced the one discrimination claim filed against Amtrak in 2000 and represented that no other claims regarding the Human Resources Department had been filed in 1999 and 2000.


fastcase

Mitchell v. National Railroad Passenger Corporation, CA 01-1866 (RWR/JMF) ECF (D. D.C. 8/20/2003) (D.D.C., 2003)

I have concluded in three published opinions, all cited in my opinion in this case, that other claims of discrimination against a defendant are discoverable if limited to the same form of discrimination claimed by plaintiff, to the same department or agency where plaintiff worked, and to a reasonable time before and after the discrimination complained of. *Mitchell*, 208 F.R.D. at 458. Those opinions are, in turn, based on what I believe to be controlling authority in this jurisdiction. My opinions are quickly available and, while I am hardly infallible, I would expect a conscientious advocate to distinguish these opinions or convince me that I am wrong. Simply ignoring these earlier decisions does not provide Amtrak with the substantial justification it needs.

I appreciate, however, that despite its objection, Amtrak produced the only discrimination complaint in the Human Resources Department in 2000 and represented that there were none in 1999 and 2000. Thus, the only real difference between the parties concerned the temporal scope of discovery. Plaintiff sought complaints filed in the period from 1996-2000. She got the complaints filed from 1999-2000 but not the complaints (if any) filed from 1996-1998.

By its very nature, discovery generates an attitude among lawyers of demanding more than they want in the hopes of getting what they need. Plaintiff demands data for 10 years and defendant offers two years, and both hold their breath until a judge is forced to find some middle ground. As suggested in my Memorandum Opinion, the limits on the scope of discovery in Title VII cases are a function of the facts of the case and, therefore, it is impossible to gather the cases and make a lapidary judgment as to what is or is not reasonable. *Mitchell*, 208 F.R.D. at 488. In the absence of controlling authority, whether or not the scope suggested by the party resisting discovery is deemed reasonable, and, therefore, substantially justified, cannot be stated with the requisite certainty that should accompany a judicial determination awarding attorneys fees and costs. This is not to say that absurd limitations will never be condemned. Rather, it is to say that when both sides proposed reasonable limits, their equipoise demands that the parties be left where the court found them and that there not be any fee shifting.

In this case, I cannot say that the temporal limitations Amtrak proposed were unreasonable. Therefore, I will not condemn them as substantially unjustified, even though I expanded the temporal scope of discovery beyond what the Amtrak conceded.

### Information Regarding Prior Class Action

Defendant prevailed in the dispute over information regarding a previous class action in which plaintiff, as a class member, sued Amtrak.

### Application of Privileges to Materials Produced by Amtrak Consultant

I conducted an *in camera* review of the document Amtrak claimed was privileged and found nothing in it that was protected by either of the privileges claimed. In my view, neither the attorney-client nor work product privileges should have been asserted in the first place, even if one allows for the caution with which lawyers should act when deciding to hand over possibly privileged documents. There is nothing in the document that could possibly disclose trial strategy or reveal what a client told a lawyer in confidence for the purposes of seeking legal advice or legal representation. Therefore, in my view, neither privilege should have been claimed in the first place.

### Other Severance Agreements

Amtrak resisted producing severance agreements during the five year tenure of its Vice President for Human Resources, Lorraine Green, on the grounds that they were confidential, even though plaintiff offered to delete the names from the severance agreements and there was a protective order in place covering them. Amtrak's resistence to discovery on grounds of confidentiality was not justified since there were alternatives to the public disclosure that Amtrak feared.



Mitchell v. National Railroad Passenger Corporation, CA 01-1866 (RWR/JMF) ECF (D. D.C. 8/20/2003) (D.D.C., 2003)

### Implications of the Discovery Cutoff Date

In addition to *Plaintiff's Motion to Compel Discovery Responses*, plaintiff also filed a *Motion to Quash* and a *Motion to Allow Additional Depositions*. I ruled on these as well in my Memorandum Opinion. As I pointed out, Judge Roberts rendered the *Motion to Quash* moot when he extended the discovery cutoff date and I permitted plaintiff to take the additional depositions she sought.

For the purposes of this case, plaintiff's motion to compel spoke to incomplete answers to interrogatories. When such a motion is denied in whole or in part, the court may award expenses to the winner. Fed.R.Civ.P. 37(a)(2)(B) & (3). *The Motions to Quash and Allow Additional Depositions* were certainly not motions to compel responses to discovery demands that had been served. Instead, they sought relief *ab initio* and there is no warrant in the Federal Rules of Civil Procedure for shifting the expense of making such motions from the movant to her opponent. *See Telluride Management Solutions, Inc. v. Telluride Investment Group*, 55 F.3d 463, 467 (9th Cir. 1995); *Unigard Security Ins. Co. v. Lakewood Engineering & Manufacturing Co.*, 982 F.2d 363, 368 (9th Cir. 1992).

### The Hours Claimed

I now turn to the hours claimed by plaintiff's counsel. The first problem is that it is impossible to tell how much of the time was spent on the two issues where I have found either that Amtrak prevailed or that resistance to additional discovery was substantially justified. If counsel for the moving party keeps detailed records, the court can determine the precise amount of time spent on an issue and allow those fees if the opposing party's opposition was not substantially justified. But nothing is that easy. It is more often the case that lawyers describe the work they are doing in general terms and, therefore, it may be impossible to divide a block of time in a lawyer's billing entry among the various issues identified. Those who like draconian solutions would say that a court is justified in disallowing an entry if the lawyer does not specify with exactitude how the time was spent. Under this theory, it is that lawyer, and not her opponent, who pays for the imprecision of the entry. That solution can cause obvious unfairness. First, while legal research can be done on discrete issues, other tasks cannot. A lawyer begins her work by reviewing the discovery she has received; it is unrealistic to expect her to stop every time she reaches an interrogatory dealing with one topic and make a billing entry before she goes to the next one.

Moreover, legal writing, if it is true scholarship, involves as much editing as it does writing and one frequently edits a document as a comprehensive whole, moving a section from its original location to a better and final destination. In such circumstances, a diary entry of "editing and modifying memorandum in support of motion" may be as detailed an entry as the lawyer's work permits.

A more responsible and fairer approach is to compare the total number of hours worked against the document produced. The more complicated the legal issues and the factual analysis the greater the number of hours that must be spent on the document. But, the court cannot simply look at the number of hours spent absolutely. It must guard against two dangers that are mirror images of each other; insufficient or excessive delegation. Insufficient delegation means that experienced lawyers are performing tasks well beneath them. Clients will not pay $350 for a lawyer to stand over a xerox machine; their opponents should not have to, either. On the other hand, inexperienced lawyers, although they bill at a lower rate, may burn up many hours doing tasks that their seniors could have accomplished more efficiently and cheaply. The bottom line comparison should be between the gross hours worked and the gross fees sought in relation to the document produced.

To make that comparison, I first took the fees claimed and allocated them in gross to the four documents plaintiff filed: (1) *Plaintiff's Motion to Compel Defendants' Discovery Responses with the accompanying Memorandum*

in Support of Plaintiff's Motion to Compel Defendants' Discovery Responses,[2] (2) *Plaintiff's Reply in Support of Her Motion to Compel Discovery Responses*, (3) *Plaintiff's Motion for Attorney Fees Incurred in Moving to Compel Discovery* and (4) *Plaintiff's Reply to Defendant's Opposition to Petition for Attorney Fees*.

To refine the analysis, I then compared, as to each attorney, the hours and fees claimed with the hours devoted to each document's preparation. This comparison yields the fees charged for preparation of each document. *See* Chart 1.[3]

**Chart 1. Claimed Attorney Fees by Document**

| | Mot. to Compel Atty. Fees Claimed | Mot. for Atty. Fees | Opp. to Mot. for Atty. Fees | Reply to Opp. to Mot. to Compel | Reply to Mot. for Atty. Fees | Total Hours & Fees Claimed by Document |
|---|---|---|---|---|---|---|
| MLW Hours | 24.25 | 5.25 | 3.00 | 20.75 | 53.25 | |
| Rate | $370/Hr. | $370/Hr. | $370/Hr. | $370/Hr. | $370/Hr. | |
| Fee | $8,972.50 | $1,942.50 | $1,110.00 | $7,677.50 | $19,702.50 | |
| JRA Hours | 22.25 | 10.50 | 0.00 | 6.75 | 27.50 | |
| Rate | $175/Hr. | $175/Hr. | $175/Hr. | $175/Hr. | $175/Hr. | |
| Fee | $3,893.75 | $1,837.50 | $0.00 | $1,181.25 | $6,912.50 | |
| Total Hours Claimed by Document | 46.50 | 15.75 | 3.00 | 27.50 | 92.75 | |
| Total Fees Claimed by Document | $12,866.25 | $3,780.00 | $1,110.00 | $8,858.75 | $26,615.00 | |



Mitchell v. National Railroad Passenger Corporation, CA 01-1866 (RWR/JMF) ECF (D. D.C. 8/20/2003) (D.D.C., 2003)

```
|_____|_____|_
_____|_____|_____|____
_____|
```

The chart indicates that the fees sought are high. *The Motion to Compel*, a 16 page document, cost $12,866.25 to produce, that is, about $800 per page. Indeed, all four documents submitted by the plaintiff, taken together, total 50 pages and cost $26,615.00 to produce, more than $500 a page. This results, of course, from the great amount of time being spent on each document being so great. For example, 46.5 hours are claimed for producing the *Motion to Compel* which means that it took more than one full working week to produce this 16 page document.

Additionally, the most senior attorney spent more time working on the documents than the junior lawyer did. The senior lawyer, identified as "MLW," spent 24.25 hours on the *Motion to Compel* while the junior lawyer ("JRA") spent 22.25 hours on that document. Indeed, MLW spent nearly three times as much time as JRA did in preparing *Plaintiff's Reply to Defendant's Opposition to Petition for Attorney Fees*. While plaintiff's counsel protests that a small law firm may not have the luxury of assigning the most junior lawyers to the most labor intensive tasks, it is also true that courts have to consider the realities of the market place in determining the reasonableness of the fees sought. I find it hard to believe that in a fiercely competitive legal market a client would tolerate a division of responsibility wherein the most senior lawyer does the most labor intensive work. I would have to believe that the universal practice of the bar is to assign the junior lawyers to do the research and prepare drafts while the more senior guide the research and then review and edit the drafts. In the absence of some reason why this case should be a unique deviation from that practice, I find this discrepancy remarkable and worthy of downward adjustment before I allow the fee. In doing so, I will use counsels' hourly billing rates, giving due credit, as I must, to their representation as officers of the court that the rates sought are their normal rates and therefore justified under the so-called *Laffey* line of cases that deem an award of fees identified in the *Laffey* matrix as reasonable hourly rates in this jurisdiction. *See Whatley v. District of Columbia*, 224 F. Supp.2d 62, 66 n. 2 (D.D.C. 2002).

To arrive at a legitimate downward adjustment, I first noticed that the junior attorney spent about one hour per page on each of the documents she worked on because she spent 39.5 hours on the 44 pages she produced. Allowing her a rate calculated at an hour per page seems fair because it allows for the reality that junior lawyers have to do appreciable research to familiarize themselves with the applicable legal principles.

On the other hand, I cannot allow a senior lawyer the same time per page, for the senior lawyer's proper role is to supervise and edit the work the junior lawyer has done. In my experience reviewing the work of junior lawyers and my clerks, an appropriate rate is one based on the ability of a supervising lawyer to review a ten page draft in an hour. I assume, as I must, that the work given the senior by the junior will not require substantial revision. By granting the junior one hour per page, I can insist on quality work by the junior that will not require more than ordinary review and editing.

The use of these rates yielded the adjusted fees displayed in Chart 2.

**Chart 2. Adjusted Attorney Fees by Document and Rate of Work**

```
_____
_____
___

|                        |           |  Reply
to       |                | Reply to  |
|
|                        | Mot. to   | Opp.
to       | Mot. for       | Opp. to   |
|
| Document               | Compel    | Mot.
to       | Atty. Fees  | Mot. for  | Totals
|
```



Mitchell v. National Railroad Passenger Corporation, CA 01-1866 (RWR/JMF) ECF (D. D.C. 8/20/2003) (D.D.C., 2003)

| Compel | | Atty. Fees | | | Hours | 16.00 | 7.00 |
|---|---|---|---|---|---|---|---|
| | | | | 6.00 | 21.00 | 50.00 | |
| | | | | | Adjusted | | |
| Document Length | 16 pages | 7 | | | Fee | | $2,800.00 |
| pages | 6 pages | 21 pages | 50 | $1,225.00 | $1,050.00 | $3,675.00 | |
| pages | | | | $8,750.00 | | | |
| | | | | Total Adjusted | | | |
| MLW | Hours | | | | | | |
| | Billed | 24.25 | 5.25 | Fees by Document | | | $3,392.00 |
| 3.00 | 20.75 | 53.25 | | $1,484.00 | $1,272.00 | $4,452.00 | |
| | | | | $10,600.00 | | | |
| | Adjusted | | | | | | |
| | Hours | 1.60 | .070 | | | | |
| .060 | 2.10 | 5.00 | | | | | |
| | Adjusted | | | | | | |
| | Fee | $592.00 | | | | | |
| $259.00 | $222.00 | $777.00 | | | | | |
| $1,850.00 | | | | | | | |
| JRA | Hours | | | | | | |
| | Billed | 22.25 | 10.50 | | | | |
| 0.00 | 6.75 | 39.50 | | | | | |
| | Adjusted | | | | | | |

I am not finished, however, because I must discount the final adjusted figure to allow for Amtrak prevailing on one issue, and because I have found that its restricting the temporal scope of discovery regarding other discrimination complaints was substantially justified.

As I have explained, there were seven legal issues and Amtrak prevailed on one, justifying a 14% reduction. I also find that an additional discount in the same amount is necessary because Amtrak's position as to the temporal scope of the discovery of prior complaints of discrimination was substantially justified. I will, therefore, discount the $10,600 by 28.57% and award plaintiff $7,571.43 in fees.

**ORDER AWARDING ATTORNEY FEES**

In accordance with the Memorandum Opinion being issued simultaneously herewith, **IT IS ORDERED THAT** defendants shall pay plaintiff $7,571.43.

---------------

Notes:



Mitchell v. National Railroad Passenger Corporation, CA 01-1866 (RWR/JMF) ECF (D. D.C. 8/20/2003) (D.D.C., 2003)

1. The defendants are the National Railroad Passenger Corporation, Lorraine Green and Paula Porter. For ease of reference, I will refer to them collectively as "Amtrak."

2. Hereafter "Motion to Compel."

3. I am not allowing any fees for the *Motion for Additional Depositions* and $5,715.00 for that work must be eliminated.

----------------

