IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| TRITA PARSI )<br>)<br>and )<br>)<br>NATIONAL IRANIAN AMERICAN COUNCIL )<br>)<br>                Plaintiffs, )<br>)<br>v. )<br>)<br>HASSAN SEID DAIOLESLAM, )<br>)<br>)<br>                Defendant )<br>                                ) | Civil No. 08 CV 00705 |

**REPLY TO DEFENDANT'S RESPONE TO PLAINTIFFS'
INITIAL AND SUPPLEMENTAL EXCEPTIONS TO BILL OF COSTS**

COME NOW Plaintiffs, Dr. Trita Parsi and the National Iranian American Council ("NIAC") (collectively "NIAC"), by and through their counsel, Afshin Pishevar, Esquire, Adrian V. Nelson, II, Esquire, and Pishevar & Associates, P.C., pursuant to Fed. R. Civ. P., Rule 37, and hereby files this Reply to Defendant's Response to Plaintiffs' Initial and Supplemental Exceptions to Bill of Costs[1], and states as follows:

### I. INTRODUCITON

Defendant's Revised Bill of Cost is excessive and unreasonable, both as to attorney and non-attorney time spent, and should be denied or substantially reduced. The amount of senior attorney time is not proportional and is disparate given the junior attorneys' time spent on the

---

[1] Defendant filed separate responses to Plaintiffs' Exceptions to Bill of Costs and Plaintiffs' Supplemental Exceptions to Bill of Costs. Plaintiffs will reply to both responses herein.

motions to compel. Additionally, the non-attorney time is grossly excessive for the types of exhibits involved in the motions. Furthermore, even if the court finds that the Bill of Costs is reasonable, there was "substantial justification" for the Plaintiffs' actions with respect to the discovery disputes, and therefore they should not be sanctioned. Finally, Defendant's abusive and wasteful approach to discovery from the inception of this case is tantamount to unclean hands and a bar to its request for sanctions.

## II. DEFENDANT'S TIME SPENT ON THE MOTIONS TO COMPEL IS UNREASONABLE

Unsurprisingly, Defendant mischaracterizes and takes out of context what the plaintiffs said in their exceptions. The time spent by Defendant's attorneys is excessive and unreasonable given the type of motions involved. Furthermore, the legal assistant time involved was grossly excessive as it should not have taken over eighty hours to prepare 33 exhibits for two motions.

### A. Time Spent by Attorneys was Disproportionate and Unreasonable

Although Defendant states that Plaintiffs did not cite to any authority to support their position that the time spent by the attorneys was disproportionate and unreasonable, in the next sentence, Defendant admits that a case was cited in the supplemental brief, which apparently supports Defendant's position. Not only is this disingenuous, but is also a misstatement of the holding of the case.

In *Mitchell v. National RR Passenger Corp.,* CA 01-1866 (D.D.C. Aug. 20, 2003), Judge Facciola reduced the requested attorneys fees for two motions to compel, totaling 50 pages, which included replies, from $26,615.00 to $7,571.43. In so doing, Judge Facciola focused on the time the attorneys spent on the motions. Contrary to Defendant's mischaracterization, Judge Facciola, with respect to a junior associate, stated "[a]llowing her a rate calculated at an hour per page seems fair because it allows for the reality that junior lawyers have to do appreciable

research to familiarize themselves with the applicable legal principles." (Ex. A to Plaintiffs' Supplemental Bill of Exceptions, p. 6). In the very next sentence, Judge Facciola states "[o]n the other hand, I cannot allow a senior lawyer the same time per page...." *Id.* In fact, Judge Facciola elaborates that given the competitiveness of the legal market, a supervising senior attorney should not be doing the most labor intensive work and therefore can be expected to spend one hour per ten pages to review the work done by a junior attorney. *Id.*

Defendant's Revised Bill of Cost shows that rather than reviewing and assigning tasks, Mr. Kapshandy spent the majority of the time drafting and finalizing the two motions to compel and the two replies. (*See* Ex. A. to Defendant's Revised Bill of Recoverable Costs.) In fact, Mr. Kapshandy spent nearly twice the amount of time on the motions to compel than did Mr. Ross. While Mr. Kapshandy spent most of the time drafting and finalizing the motions, Mr. Ross' involvement seems to have been limited to reviewing, proofreading and filing the Motions, as well as creating a timeline. *Id.*

The motions to compel are void of legal arguments and were limited to factual recitations.[2] Simply because Sidley Austin can have one of its senior attorneys work on a motion with minimal involvement of junior attorney's does not make it either necessary nor reasonable. Although one hour per page may be reasonable for work done by a junior attorney, it is excessive and unreasonable for a senior attorney.

### B. Time Spent by Non-Attorney's was Grossly Excessive

It may be true that the exhibits to the motions were voluminous, but they were most certainly not complex. Out of the 33 Exhibits, eleven were emails or letters and three were

---

[2] A majority of these factual recitations and arguments were made in previous motions. In arguing that Defendant was "regurgitating" arguments previously made, Plaintiffs were simply pointing out that the Motions were not complex and primarily involved restating previously alleged factual arguments.

deposition transcripts. Seven were membership list charts or another type of excel spreadsheet file.[3] Although those seven contained redactions, the redactions were of entire columns, not individual lines. No other documents contained redactions. Furthermore, excluding the deposition transcripts, eight exhibits were exhibits previously produced or used, specifically exhibits used during depositions. Finally, at least two other exhibits were reports prepared and produced by PwC when it conducted imaging of the various computers.[4]

Given the type of exhibits involved and the fact that a number of these exhibits, especially the lengthy ones, were previously produced and used, the amount of time spent by the non-attorneys in preparing the exhibits is grossly excessive and unreasonable.[5]

### III. PLAINTIFFS WERE "SUBSTANTIALLY JUSTIFIED" IN THEIR DISCOVERY CONDUCT

Plaintiffs have maintained from the beginning that they did not posses a server but merely a shared drive. This distinction, although not readily apparent, is important. A server is a computer that is used to maintains a network. Other computers connect to the network through the server and thus share information and communicate with each other. Therefore, all traffic on the network is routed through the server and all shared files and documents are saved on the server. A shared drive, on the other hand, is simply a storage drive that other computers can access. Therefore, network traffic does not go through the shared drive and only those files and documents that each user wants to share are saved and stored on the shared drive.

---

[3] It should be noted that these membership lists and excel sheets were provided to the Defendant in discovery and as such were, or should have been, reviewed and analyzed by Defendant as part of the discovery process. Claiming that they were analyzed as part of the motions to compel, as Defendant does, is not candid, to say the least.

[4] For a more detailed review of each exhibit prepared by the Defendant, *see* Plaintiffs' Exhibit A.

[5] Also of interest is the fact that the initial Motions to Compel contained 26 exhibits and required 34.5 hours of non-attorney time to prepare. The remaining 47.1 hours of non-attorney time was spent preparing the 7 exhibits attached to the two replies and reviewing the 5 exhibits attached to the Plaintiffs' oppositions.

The importance of this distinction is that where one would expect a server to store all files shared on the network on the server, a shared drive does not. This distinction is the root of many of the discovery disputes involving the "server" and has caused much of the confusion and ambiguity. Defendant's continued insistence to classify Plaintiffs' shared drive as a server, despite Plaintiffs repeated clarifications, has contributed greatly to the disputes regarding the production of drives.[6]

In light of the fact that there was never a server, it is undisputed that NIAC attempted to comply with Court's July 1 Order by producing eight PCs from which Outlook calendar entries could be extracted. There is no evidence to the contrary that NIAC intentionally or for nefarious reasons withheld the other four computers. It was simply done so inadvertently as NIAC is a small organization without the personnel designated to oversee and maintain its network administration. Furthermore, after the Court ordered the production of the server/shared drive or the four additional PCs, Plaintiffs did produce the shared drive that was in use at the time the alleged alteration of calendar entries took place.[7]

With respect to the membership information, it is undisputed that membership information was produced, albeit not in the manner Defendant wanted. However, the discovery material was fully produced, in the manner it was maintained in the ordinary course of business. First, Defendant argued that they were not produced in a timely manner, even though Plaintiffs

---

[6] Plaintiffs concede that at various times throughout this case they or persons affiliated with them inadvertently referred to the shared drive as a server. However, at no point did the Plaintiffs admit that a server existed, only that there was a shared drive.

[7] The entire dispute regarding production of PCs/shared drives/servers arose because the Defendant believed NIAC altered calendar entries on or about Christmas Eve of 2009. Defendant requested forensic imaging of the shared drive arguing that the forensic image would show whether alterations were made, what the alterations were and by whom. Plaintiffs did produce the shared drive that was in use at the time the purported alterations took place. Why the Plaintiffs should have known that the pre-December 2009 shared drive was also being sought is not readily clear.

stated that they did not have immediate access to the Saleforce information. After Plaintiffs were able to access the information and produce it, Defendant proceeded to argue that the production was not for the timeframe they sought. Once Plaintiffs were able to gather and produce more current information, Defendant moved on to the next argument and stated that the production was not in the format they sought. So Plaintiffs then did the work for Defendant and formatted the production to comply with the way the Defendant preferred the information. What should be apparent is that Plaintiffs attempted to comply with the discovery requests and Court Orders as they pertain to membership lists.

Accordingly, Plaintiffs have demonstrated "substantial justification" for their conduct relating to production of the shared drive and other PCs and their conduct relating to the defendant's request for membership information. As such, the court should deny Defendant's Bill of Cost.

## IV. THE MEET AND CONFER RULES DO NOT APPLY

Plaintiffs filed a Motion to Stay the Courts Order as well as Exception to the Defendant's Bill of Costs. The Meet and Confer Rules are aimed to require parties to communicate regarding motions in order to determine whether the dispute can be resolved without the need to file the motion. The defendant does not have the authority to stay a court's ruling and thus a meet and confer would not have resolved this matter. Additionally, exceptions to a court filing are not motions and do not fall within the requirements of Local Rule 7. Therefore, whether the parties met and conferred prior to the plaintiffs filing the Motion to Stay and the Exceptions is irrelevant and not applicable to this matter. Lastly, where it is apparent that a meeting of the minds is futile and a meet and confer would be improvident, the court should not require it.

## V. CONCLUSION

Given the type of motions involved, the work done by senior attorneys in relation to junior attorneys, and the hours billed by non-attorneys to compile exhibits, the Defendant's Bill of Costs should be denied or substantially reduced as it was excessive and unreasonable. Furthermore, Plaintiffs were "substantially justified" in their actions with respect to production of the shared drive and other PCs as well as production of membership lists. Moreover, Defendant's approach to discovery in this case has been to "make much ado about nothing" and to use discovery as a means of manipulating as much burden and abuse for the Plaintiff as humanly possible. It is worth noting that the Plaintiff is of limited resources and a small non-profit organization. This approach to discovery by the Defendant is evidence of unclean hands and should bar Defendant from obtaining attorney's fees. Finally, as the Court granted Plaintiffs' Motion to Stay, Defendant's request that "Plaintiffs be ordered to pay as a penalty a reasonable per diem for every day after September 20, 2011 they have not paid Defendant's Bill of Costs as ordered" should be denied. As such, Defendant's Bill of Costs should be disallowed in whole or in part.

Respectfully submitted,

_____/S/_____
A.P. Pishevar (D.C. Bar No. 451015)
Adrian V. Nelson, II (*Pro Hac Vice*)
**PISHEVAR & ASSOCIATES, P.C.**
600 East Jefferson Street, Suite 316
Rockville, MD 20852
Phone: (301) 279 – 8773
Fax:    (301) 279 – 7347
Counsel for the Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TRITA PARSI, et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 08 CV 00705 (JDB) |
| | ) |
| DAIOLESLAM SEID HASSAN, | ) |
| | ) |
| Defendant. | ) |

## CERTIFICATE OF SERVICE

I certify that on September 23, 2011, I served, via email, Plaintiffs' Supplemental Exceptions to Defendant's Revised Bill of Costs to:

>Timothy E. Kapshandy, Esquire
>Peter G. Jensen, Esquire
>SIDLEY AUSTIN LLP
>1501 K Street, N.W.
>Washington, D.C. 20005
>(202) 736-8000
>tkapshandy@sidley.com
>
>Attorneys for Defendant
>Seid Hassan Daioleslam

/s/
Afshin Pishevar
Adrian Nelson
600 East Jefferson Street
Suite 316
Rockville, Maryland 20852
(301) 279-8773
ap@pishevarlegal.com
anelson@pishevarlegal.com


Attorneys for Plaintiff
Trita Parsi
National Iranian American Council