**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| TRITA PARSI ) | |
| ) | |
| and ) | |
| ) | |
| NATIONAL IRANIAN AMERICAN COUNCIL ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | **Civil No. 08 CV 00705** |
| ) | |
| DAIOLESLAM SEID HASSAN ) | |
| ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES**
**IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

The Plaintiffs, Trita Parsi and the National Iranian American Council ("NIAC"), have been repeatedly and persistently defamed by the Defendant, Seid Hassan Daioleslam.  The Defendant has engaged in a campaign to convince the public that Plaintiffs are agents of the Islamic Republic of Iran, engaged in elicit activities on behalf of that regime.  The defendant has made statements, presented as fact, explicitly claiming such a relationship exists between the plaintiffs and government of Iran.  These statements are entirely false and have caused irreparable harm to the plaintiffs in the Iranian-American community, which overwhelmingly disapproves of the Iranian regime.  The defendant knew that his statements were false; or in the alternative he published them with a reckless disregard to the truth.

1

# I. BACKGROUND

Dr. Trita Parsi, a resident of McLean, VA., is the president of the National Iranian American Council ("NIAC"), a Washington, D.C. based non-profit group. Plaintiffs' Complaint ("Compl") ¶¶ 9-10. The NIAC is "dedicated to promoting Iranian American involvement in American civic life and relying on public financial and human resource support." Id. ¶ 10.

On April 25, 2008, Plaintiffs Parsi and NIAC filed a three-count Complaint against Defendant Daioleslam Seid Hassan seeking damages and injunctive relief for common law defamation and portrayal in a false light. Id. ¶ 11. The thrust of the plaintiffs' complaint is that Defendant "has published false and defamatory statements indicating that [Plaintiffs are] member[s] of a subversive and illegal Iranian lobby colluding with the Islamic Republic of Iran." Id. ¶13.

Founded in early 2002, the National Iranian-American Council is a non-partisan, non-political, non-sectarian, and non-profit organization dedicated to promoting Iranian-American participation in American civic life. Dr. Trita Parsi is the President of this organization. (See Exhibit A; see also Pls.' Ex. F to Pls.' Opp. Mot. Dismiss.) With reckless disregard for the truth, Defendant has accused NIAC and Dr. Parsi of being agents of the Islamic Republic of Iran. Iran is designated by the United States as a sponsor of terrorism. (See Exhibit B; see also Pls.' Ex. E to Pls.' Opp. Mot. Dismiss.) Nothing could be as defamatory to both NIAC and Dr. Parsi as being accused of being an actual (not metaphorical) **agent** of the Islamic republic of Iran. Not only would such action be criminal (see pg. 15 *infra*), but it would be tremendously scandalous and be damaging to Plaintiffs' respective reputations in the Iranian-American Community. This Community is NIAC's constituency, its grass roots, its source of memberships and revenue.

This Community is NIAC's best source of donations.  It would defy logic and common sense for NIAC and Dr. Parsi to be agents of the Islamic Republic of Iran.

Defendant's agenda-driven motivation is to destroy the reputation of NIAC and Dr. Parsi. This is self-evident from the organizations and publications he is associated with, e.g. the MKO (An Organization designated as a Terrorist Organization by the D.O.S.)  (See Exhibit N ¶ 20; see also Aff. of Trita Parsi to Pls. Opp. to Mot. Dismiss at ¶ 20.)  Therefore, inter alia, Defendant has the motivation to falsify allegations against Plaintiffs as well as disguise his purely agenda-driven allegations as "opinion."  The fact that Defendant attempts to disguise and conceal his action and even his identity is *consciousness of* his *guilty* state of mind.  Furthermore, the fact that he has disregarded basic procedures of (for a *self-* professed "investigative journalist") simple fact checking even in the lay sense, indicates that Defendant has absolutely no regard for the truth, but that he is simply on a mission wherein the agenda is to destroy the reputation of anyone who is against his end-goal (no diplomatic solutions to the conflict with Iran).  Coupled together, his (i) motive and (ii) his singular failure to follow even the most basic journalistic standards are more that sufficient to lead a reasonable juror to conclude that this amounts to a "reckless disregard for the truth."

To make Defendant's malice even more obvious, Defendant was placed on actual notice of the falsity of his publications, inter alia, when Plaintiff served him with a detailed *cease and desist* letter well in advance of taking legal action.  (See Exhibit D; see also Ex. D to Pls.' Opp. to Mot. Dismiss.)  He knew or should have known that what he was publishing was false; he had absolute notice and actual knowledge of this falsity; certainly after he was served with *legal notice* by Plaintiffs.  Despite this heightened duty to be more scrupulous and to verify his facts

and allegations with more scrutiny, the defendant instead continued to publish more defamation with even more intensity, with even more of a blatant and reckless disregard for the truth.

## II. ARGUMENT

### A. Defendant's Motion for Summary Judgment Should Be Denied As It Fails To Comply With Rule 56 of the Federal Rules of Civil Procedure.

#### 1. Objection to Comprehensive Characterization

Plaintiffs support this Counter Statement and the Material Facts set forth herein by providing depositions, declarations, and sworn evidence, and specific facts showing that there is a genuine issue of material fact for trial, which may or may not be disputed. Plaintiffs' provision of a response to any material fact presented in the Defendant's Material Facts shall not constitute a waiver of any applicable objection, privilege, or other right. Where required, in order to respond to the Defendant's Material Facts, Plaintiffs represent that they have made good faith efforts to identify the information that would allow them to admit or deny such matters presented as material facts. Plaintiffs hereby reserve the right to supplement this Counter Statement in the event it becomes necessary to do so.

As a threshold matter, Plaintiffs generally dispute Defendant's comprehensive characterization of the "material facts" submitted with its Motion for Summary Judgment as "material facts as to which there is not genuine dispute." Plaintiffs will separately address each numbered "material fact" below. As noted in this Counter Statement, the evidence cited in the record in support of many of the below "material facts" presented by Defendant does not support the assertion that they are undisputed. Further, and as noted herein, many of Defendant's statements as presented are vague and ambiguous, incomplete, or lacking in context and/or mischaracterize, some blatantly, the "material facts" they purport to state, thus rendering the statement presented meaningless and useless as a "material fact."

### 2.   Objection to Relevance and Materiality

It bears noting at the outset of this Counter Statement that a substantial number of the matters presented as "material facts" by Defendant are not relevant or material to the allegations made in the Complaint.  Plaintiffs note their objections on materiality and relevance grounds generally here and reserve the right to object to such matters on that basis.

### 3.   Objection to Absence of Independent Verification

As another threshold matter, Plaintiffs object to the absence of independent verification as to many of the matters presented by Defendant as "material facts" in the Motion for Summary Judgment.  The Motion presents these 49 facts as standing for the truth of the matter asserted as undisputed, and incidentally, true.  The Motion, while supported by Defendant's declaration, is *not* supported by a certification of exhibits as being "true and correct copies of documents," and is not separately supported by any sworn affidavit for some of the assertions alleged as facts, or any other independent third-party verifications.

### 4.   General Objections

The following general objections apply to each of Defendant's Material Facts included in its Motion for Summary Judgment, and are in addition to specific objections, if applicable.

a.   To the extent that Plaintiffs respond to the specific statements of material facts to which they have objected, Plaintiffs reserve the right to maintain such objections with respect to any additional information, and such objections are not waived by the furnishing of such information.

b.   Plaintiffs do not, by virtue of replying to any statement of material fact, admit to any legal or factual contention asserted in the text of any material statement, except as expressly stated.

c.  To the extent that any statement or material facts quotes from a document or references a statement and solicits an admission that the quote or statement is evidence of the truth of the matter asserted, Plaintiffs object on the grounds of hearsay.

d.  Plaintiffs generally object because no definitions were provided for any terms referenced in the Material Facts and many terms are open to widely different interpretations, making many of the statements of material fact inherently vague and ambiguous.  Plaintiffs have made a good faith effort to respond to Defendant's Material Facts.

**5.  Plaintiffs Object to Defendants' Material Statement of Facts**

As required by Fed. R. Civ. P. 56, Defendant has failed to provide a legitimate statement of genuine issues of material fact to which there is no dispute between the party.  Rather, the defendant has overwhelmingly relied upon inadmissible hearsay evidence in support of propositions that are in the sole province of the jury for determination.

Notwithstanding the foregoing, and without waiving any objections, Plaintiffs submit the following Counter-Statement, demonstrating that there are many genuine issues in dispute and that Defendant's Motion for Summary Judgment should be denied.  The statements below are numbered to correspond to the Defendant's Material Facts in Defendant's Motion for Summary Judgment[1]:

Defendant's Material Fact 1: Trita Parsi, a resident of McLean, VA, is the president of the National Iranian American Council ("NIAC"), a Washington, DC non-profit group. Compl. ¶¶ 9-10.

Response: Plaintiffs do not dispute Defendant's Material Fact 1, but further avers that said "fact" is not material and therefore does not create a genuine issue of material fact.

---

[1]All exhibits referred to herein are attached or reference prior filings.

<u>Defendant's Material Fact 2:</u> Defendant Hassan Daioleslam (Hassan Dai) is a resident of Scottsdale, AZ. Compl. ¶11.

      <u>Response:</u> Plaintiffs do not dispute Defendant's Material Fact 2, but further avers that said "fact" is not material and therefore does not create a genuine issue of material fact.

<u>Defendant's Material Fact 3:</u> Plaintiffs NIAC and Trita Parsi are public figures. Docket No. 13.

      <u>Response:</u> Plaintiffs do not dispute Defendant's Material Fact 3.

<u>Defendant's Material Fact 4:</u> Plaintiffs have accused Defendant of writing defamatory statements with the sting of the charge being that Plaintiffs are lobbyists for Iran. Compl. ¶ 13, 34; Docket No. 13.

      <u>Response:</u> Plaintiffs do not dispute Defendant's Material Fact 4, but further avers that said "fact" is not a fact but rather a legal claim that is incomplete nonetheless. Plaintiffs assert in the Complaint that the Defendant published one or more false and defamatory written and oral statements tending to adversely affect the reputation, honesty, integrity or virtue of Parsi.  Specifically the Defendant is alleged to have published false and defamatory statements that Parsi is a member of a subversive and illegal lobby colluding with the Islamic Republic of Iran and engaging in criminal conduct.  Compl. ¶ 13.

<u>Defendant's Material Fact 5:</u> Plaintiffs have also alleged that Defendant has made defamatory statements suggesting that Plaintiffs have engaged in illegal activities and that these statements are defamatory per se. Id. ¶ 14.

Response: Plaintiffs do not dispute Defendant's Material Fact 5, but further avers that said "fact" is not a fact but rather a legal claim that is incomplete nonetheless. Plaintiffs assert in the Complaint that the Defendant also improperly publicized facts about the Plaintiffs that put them in false light by falsely attributing to him conduct and views.  Id. ¶ 26-32.  Specifically the defendant falsely represented that the Parsi engages in criminal conduct, is associated with criminal elements, holds certain policy views, and is involved in a subversive lobbying group colluding with the Islamic Republic of Iran. Id.

Defendant's Material Fact 6: Plaintiffs claim that because of Defendant's defamatory statements, Parsi's character and reputation were harmed and that he suffered mental anguish and personal humiliation. Compl. ¶ 23.  In the alternative, they claim that he has suffered special damages. Compl. ¶ 24.

Response: Plaintiffs do not dispute Defendant's Material Fact 6, but further avers that said "fact" is not a fact but rather a legal claim.

Defendant's Material Fact 7: Plaintiffs claim that because of Defendant's defamatory statements, NIAC's reputation and public estimation were damaged.  Compl. ¶ 41.  In the alternative, they claim that these statements have interfered with public support of NIAC and interfered with their activities. Compl. ¶¶ 42-43.

Response: Plaintiffs do not dispute Defendant's Material Fact 7, but further avers that said "fact" is not a fact but rather a legal claim.

Defendant's Material Fact 8: Emily Blout, Patrick Disney, and Trita Parsi have disclaimed expertise on lobbying laws. Ex. P, Q, and R.

    Response: Plaintiffs do not dispute the substance of Defendant's Material Fact 8, but further aver that the level of expertise of Blout, Disney and Parsi regarding lobbying laws does not discount their lay understanding of any such laws.

Defendant's Material Fact 9: Plaintiffs will not seek to introduce evidence of or seek to rely upon legal advice they received to prove that they were not engaged in illegal lobbying activities. Docket No. 138.

    Response: Plaintiffs object to Defendant's Material Fact 9 on the ground that said "fact" is not a fact but rather a request for a stipulation that is wholly inappropriate, which therefore requires Plaintiffs to dispute Defendant's Material Fact 9.

Defendant's Material Fact 10: In 1997, Trita Parsi founded the Iranians for International Cooperation (IIC), whose main objective was to safeguard Iran's and Iranians' interests and whose main agenda was to remove U.S. economic and political sanctions against Iran. It was "capable of orani[z]ing the grassroots and pressure US lawmakers to pose a more Iran friendly position." Ex. B, p. 1, 3; *see also* Ex. S, p. 1.

    Response: Plaintiffs dispute Defendant's Material Fact 10.  Although it is true that Iranians for International Cooperation (IIC) was an organization in which Dr. Parsi was a founding board member and that one of its objectives was to safeguard Iran's and Iranians' interest, there is no evidence that IIC was a lobby for the Iranian regime.

    Additionally, Defendant's Exhibit B to the Summary Judgment Motion does not support the proposition it supposedly stands for and is a narrow take and mischaracterization of the document as a whole.  For example, Exhibit B says that IIC's efforts have been to raise the standing and view of Iranians in the US.  (See Def.'s Ex. B to Def.'s Mot. For Summ. J. at 1.  The document does not mention lobbying for the

Iranian regime or even for their views.  <u>See generally Id</u>.  The mission statement says "Mindful of the detrimental effect hostility and distrust between Iran and the United States of American have on the prospect of peace, prosperity, and democracy in Iran." <u>Id</u>. at p.4.  In accordance with the manner Defendant has written his defamatory articles, Defendant likens "Iran friendly" to "Iranian regime friendly."

Finally, IIC was a separate entity from NIAC and therefore the IIC's existence cannot be evidence of NIAC's supposed lobbying on behalf of the Iranian regime.

<u>Defendant's Material Fact 11:</u> In his IIC role, Trita Parsi "established the first lobby group in the U.S. to support the normalization of ties between Iran and the U.S." and lobbied the U.S. Congress, EU, and Swedish Parliaments. Ex. A.

<u>Response:</u> Plaintiffs dispute Defendant's Material Fact 11 and reassert the factual disputes alleged in response to Defendant's Material Fact 10.  Defendant is again asserting that IIC lobbied the U.S. Congress, EU and Swedish Parliaments and thus lobbied them on behalf of the Iranian regime.  This leap in logic is unsupported by the facts or Defendant's Exhibit A.  Moreover, the defendant has denied that he believes Dr. Parsi is "a part of the Iranian regime," but at most "lobbied in favor of the Iranian regime." (<u>See</u> Exhibit E, p. 35:11-13.)

<u>Defendant's Material Fact 12:</u> As policy advisor to Congressman Bob Ney, Trita Parsi authored three reports on U.S.-Iran relations which Ney used to alter his position on Iran. Ex. A.

<u>Response:</u> Plaintiffs do not dispute Defendant's Material Fact 12.  However, Plaintiffs dispute the proposition for which the Defendant asserts the statement stands. Defendant relies on this statement to show that Dr. Parsi was lobbying while working as a policy advisor to Congressman Bob Ney.  However, any reports prepared for

Congressman Ney while Dr. Parsi worked for Congressman Ney, were done at the request of Congressman and as part of his employment. They are not evidence of Dr. Parsi's alleged lobbying on behalf of the Iranian regime, much less on behalf of NIAC. Moreover, the defendant has denied that he believes Dr. Parsi is "a part of the Iranian regime," but at most "lobbied in favor of the Iranian regime." (See Exhibit E, p. 35:11-13.)

Defendant's Material Fact 13: In August 1997, Trita Parsi published in an article: "I have reported my activities on Capitol Hill to the signatories of the petition, which has resulted in the formation of a small but active Iranian lobby group. About 80 members of Congress receive faxes and letters from us on a regular basis, and we are determined to continue to lobby for the interests and well being of our people and nation. We Iranians need to show that we are a political force to be reckoned with." Ex. T.

Response: Plaintiffs do not dispute the substance of the quote contained in Defendant's Defendant's Material Fact 13. However, Plaintiffs dispute the proposition Defendant alleges it stands for. There is a significant distinction between being an "Iranian lobby group" and being the "Iranian regime's lobby group," a distinction that has escaped the Defendant. The statement itself specifically states that they will "lobby for the interest and well being of our *people and nation*." (See Def.'s Ex. T to Def.'s Mot. For Summ. J. (emphasis added).) Moreover, the defendant has denied that he believes Dr. Parsi is "a part of the Iranian regime," but at most "lobbied in favor of the Iranian regime." (See Exhibit E, p. 35:11-13.)

Furthermore, it is important to note that Defendant's Exhibit T refers to a document that was created in 1997, many years before the creation of NIAC and unrelated to NIAC.

Defendant's Material Fact 14: In April 1998, Siamak Namazi of Atieh Bahar wrote, "Clearly Iran stands to gain substantially should its expatriate population hold decision-making power in foreign lands. Then, the Iranian government should be cognizant that the inevitable assimilation and naturalization of its expatriate population is in accordance with the long-term interests of Iran." Ex. U. In a Nov. 1998 article (where he thanks Hooshang Amirahmadi and Trita Parsi for reviewing and critiquing his article), he also wrote, "Clearly, the Islamic Republic has been reforming its behavior towards the 1.5 to 2 million strong Iranian population in exile … In fact, the new wave of relative liberalism brought on since the election of Mohammad Khatami in May 1997 brings new hope. . . . To that end, we have to build stronger channels of communications with Iran. Specifically, we must increase our contact with the country by creating more opportunities for cultural exchanges. People-to-people talks, as called for by the new government, need not be limited to exchanges between Americans and Iranians. . . . What I suggest in this regard is a policy of engagement . . . [take] away from AIPAC's ability to spread misinformation about Iran. . . . New organizations such as the Iranian-American Republican Council or the Iranians for International Cooperation are flourishing on our collective political map and adding their voice to the cacophony of Washington lobbies." Ex. V.

Response: Plaintiffs dispute Defendant's Material Fact #14. This Fact is vague and ambiguous, and contains a presupposition subject to a separate factual basis.

Mr. Namazi has nothing to do with NIAC. Simply being an acquaintance of Dr. Parsi and requesting that Dr. Parsi critique his writing does not make Dr. Parsi a lobbyist

for the Iranian regime.  Furthermore, the statement does not even support the proposition that Mr. Namazi is or was a lobbyist on behalf of the Iranian regime.  The fact that Mr. Namazi had to flee Iran because of political persecution and his ties and support from Western governments and organizations such as the NED, support the opposite view. Finally, even reading the statement made by Namazi does not show lobbying for the Iranian regime.  In fact, all it shows is that the Iranian regime might be changing their attitude towards Iranian's and Iranian organizations in the US.

Defendant's Material Fact 15: A November 1999 paper co-authored and presented by Trita Parsi and Siamak Namazi in Cyprus suggested the creation of a lobby group to balance against other Middle Eastern lobbies, the creation of specific lobbying seminars, and the use of Iranian-Americans to lobby against confrontation with Iran. Ex. C.

> Response: Plaintiffs dispute Defendant's Material Fact 15 and reassert the factual
> disputes alleged in response to Defendant's Material Fact 14.  Moreover, the defendant
> has denied that he believes Dr. Parsi is "a part of the Iranian regime," but at most
> "lobbied in favor of the Iranian regime." (See Exhibit E, p. 35:11-13.)

Defendant's Material Fact 16: In October 2000, Middle East expert Ken Timmerman called Parsi the "new unofficial spokesman in Washington" for Iran's ruling clerics and said that he and his group have been lobbying on behalf of President Khatami to lift US sanctions. Ex. L. He has also called NIAC and Parsi apologists for the regime, said that they have links with the regime, and said that NIAC has been portraying the regime as moderate, reasonable, and misunderstood. Ex. W, X, and Y.

> Response: Plaintiffs dispute Defendant's Material Fact 16.  Mr. Timmerman
> refers to Parsi and his "group" as the "new *unofficial* spokesman in Washington." (See

Def.'s Ex. L to Def.'s Mot. For Summ. J. (emphasis added).)   As such, Mr. Timmerman himself is acknowledging that they are not a lobby and only suggests that the views held mirror some of those held by the Iranian regime.  Additionally, Defendant worked with Mr. Timmerman extensively when he published his own articles and Mr. Timmerman's articles are no less defamatory.  (See Exhibit F.)

Additionally, many of Mr. Timmerman's articles were published after Defendant's defamatory articles and in fact cited heavily to Defendant's articles (*See* Def.'s Ex. X to Def.'s Mot. For Summ. J.; *see also* Def.'s Ex. W and Y to Def.'s Mot. For Summ. J.)  Relying on an article that relies on Defendant's own articles is circular reasoning and cannot be the basis of asserting an undisputed material fact.

Defendant's Material Fact 17: Middle East expert Clare Lopez has also called NIAC a known supporter of the regime and said that it acts on behalf of policies that favor Tehran. Ex. O; *see* Clare Lopez interview with Secure Freedom Radio, http://www.youtube.com/watch?v=QP_zVenqgxg (last accessed on Sept. 9, 2011).

Response: Plaintiffs dispute Defendant's Material Fact 17.  Clare Lopez made her statements after Defendant's articles and in fact relied upon Defendant's articles in making those statements.  Defendant is again guilty of making circular arguments.  Undisputed material facts cannot be based on such faulty reasoning.  Furthermore, the statement itself says that NIAC is "a known supporter of the regime and said that it acts on behalf of policies that favor Tehran." (*See* Def.'s Ex. O to Def.'s Mot. Summ. J.)  Ms. Lopez does not call NIAC a lobby for the Iranian regime and in fact admits that only some of the policies favor those of Tehran, not the Iranian regime.

14

Defendant's Material Fact 18: On June 23, 2001, Trita Parsi stated in e-mail correspondence, "I assume everyone has been busy, but it would be good if we could finish the minutes so we can follow Mr. Ba[qu]er Namazi's instructions and send it to Amb. Bill Miller." Ex. Z (Exhibit 77 to Trita Parsi's Dec. 2010 Dep.).

> Response: Plaintiffs dispute Defendant's Material Fact 18 and reassert the factual
> disputes alleged in response to Defendant's Material Fact 14.  Moreover, Namazi had to
> flee the oppression in Iran.

Defendant's Material Fact 19: In September 2002, Parsi received payment from Bijan Khajehpour, chairman and co-founder of Tehran-based Atieh Bahar, for consulting work. Parsi stated that his work for Atieh Bahar was one of approximately 10-15 consulting reports he had done. Ex. AA (Parsi Dep., Dec. 1, 2010), p. 14-15, 30.

> Response: Plaintiffs dispute Defendant's Material Fact 19.  Further, Plaintiffs
> dispute the proposition that Defendant alleges it stands for.  Specifically, nothing in the
> statement shows or even implies that Plaintiffs are lobbyists for the Iranian regime.  The
> work that was done was done for a company in England.  (See Exhibit G, p 325-329.)  In
> fact, the work was not for Atieh Bahar but for Menas Associates.  (Id.)

Defendant's Material Fact 20: The January 2003 report by NIAC to the National Endowment for Democracy ("NED") stated that, "NIAC would negotiate with relevant officials from the Iranian government in order to receive authorization to implement the project. This could take as long as three to four months. However, due to NIAC's extensive contacts, it could take less time. With government approval, NIAC would partner with any NGO that it chooses and carry out the project." Ex.BB, p. 5. It also boasted about its good relations with both Iran's Ambassador Zarif (whom Parsi personally knew) and the Iranian Interest Section (which serves

as Iran's unofficial embassy in Washington) including its head, Ali Jazini. Ex. BB, p. 5-6. The July 2003 report by NIAC to NED stated that NIAC has access to parts of the Iranian government. Ex. CC, p. 4.

  Response: Plaintiffs do not dispute Defendant's Material Fact 20, but further avers that said "fact" is not a fact, but rather a conclusion that is nonetheless immaterial. The simple fact is that having connections or knowing people does not make you a lobbyist. Dr. Parsi, as an expert on US-Iran policy and through his work, knows and has connections with a number of government officials, including Congressmen and Israeli officials. According to Defendant's logic, that would make him a lobbyist for the US government as well as a lobbyist for the Israeli government and thus a double agent.[2] The fault in this form of logic is apparent. Moreover, the defendant has denied that he believes Dr. Parsi is "a part of the Iranian regime," but at most "lobbied in favor of the Iranian regime." (See Exhibit E, p. 35:11-13.)

  Furthermore, it should be noted that the NED is a government entity. It would not have dealings with organizations it believed to be a lobbyist for the Iranian regime. NIAC and Parsi passed the NED's test and thus were able to work with the NED. This fact should be taken as *per se* evidence that NIAC is not a lobbyist on behalf of the Iranian regime. It is the US government after all who determines what it means to be a lobbyist and it would be in the best position to make that determination.

  Finally, Defendant mischaracterizes the proposition that Defendant's Exhibit CC supposedly stands for. In fact, the Exhibit states "the parts of the Iranian government that NIAC has access to are steadily losing their influence in Iran," which actually supports

---

[2] Interestingly, Defendant does accuse Plaintiff Parsi of being a double agent working for the CIA and the Iranian regime. (See http://media.causes.com/1103983?share=1&m=8da98f13&s=email (last accessed October 28, 2011).)

the proposition that NIAC is not a lobbyist on behalf of the Iranian regime.  (*See* Def.'s

Ex. CC to Def.'s Mot. Summ. J.)

<u>Defendant's Material Fact 21:</u> Middle East expert Michael Rubin wrote that NIAC

lobbies, and that NIAC has used its NED grant to train NGO's that are perhaps less threatening

to Iran. Rubin raised questions about whether NIAC channeled NED funds to one of its own staff

member's Iran-based organization. Ex. DD, EE. He has also called out NIAC advisory board

member Farideh Farhi for hiding an affiliation with Iran's foreign ministry. Ex. FF.

> <u>Response:</u> Plaintiffs do not dispute Defendant's Material Fact 21, but further
>
> avers that said "fact" is not a fact, but rather partisan accusations by one of Defendant's
>
> own cohorts that is nonetheless immaterial.
>
> Moreover, Plaintiffs dispute the proposition Defendant alleges it stands for.  The
>
> articles written by Michael Rubin, which Defendant refers to in his Exhibits DD, EE, a
>
> FF, are all written after Defendant's defamatory articles were written.  In fact, Mr. Rubin
>
> relied on Defendant's articles in drafting his articles.  (<u>See</u> Def.'s Ex. QQQ to Def.'s Mot.
>
> Summ. J.)  What is extremely noteworthy is that, despite working with Defendant and
>
> relying on Defendant's articles, Mr. Rubin never explicitly states that NIAC or Dr. Parsi
>
> are lobbyists for the Iranian regime.  In fact, Mr. Rubin recommended that Defendant be
>
> more careful in his word choice and characterization.  (<u>See</u> Exhibit H.)  Not only does
>
> this show that Defendant was aware of the defamatory nature of his articles, but that even
>
> Defendant's colleagues did not view Plaintiffs as lobbyists for the Iranian regime.

<u>Defendant's Material Fact 22:</u> Since NIAC's founding in early 2002 to the present, Parsi

and his staff at NIAC had hundreds of meetings and communications with Congressmen and

staffers; many of these involving three key issues to Iran: (1) engagement; (2) sanctions; and (3) regime change. *See* Docket No. 130.

> Response: Plaintiffs dispute Defendant's Material Fact 22. The statement is vague and unsupported by the facts. Furthermore, any meetings discussing regime change are contrary to the proposition that Plaintiffs are lobbyists for the Iranian regime.

Defendant's Material Fact 23: A March 2005 article by the Student Movement Coordination Committee for Democracy in Iran (SMCCDI) accused Trita Parsi of having promoted Khatami and his corrupt gang both in Sweden and in the U.S. while a board member of the AIC. Ex. GG, p. 3-4.

> Response: Plaintiffs dispute that the document in support of Defendant's Material Fact 23 speaks for itself, but further avers that said document is immaterial and constitutes hearsay, which therefore renders it inadmissible for trial and improper to rely on in support of summary judgment. However, it should be noted that the Student Movement Coordination Committee for Democracy in Iran is a one-man organization. Moreover, Plaintiff Parsi has never promoted Khatami, any corrupt gang, nor has he ever been a member of AIC's Board of Directors.

Defendant's Material Fact 24: Trita Parsi was a conduit for meetings between Iranian officials and U.S. Congressmen. *See, e.g.,* Ex. HH, G.

> Response: Plaintiffs dispute Defendant's Material Fact 24. Defendant's exhibits do not support this statement. In fact, Exhibit HH is mischaracterized by the defendant. According to Defendant's Exhibit HH, Plaintiff Parsi was contacted by a third party about discussing the idea of a Congressional delegation. (See Def.'s Ex. HH to Def.'s Mot. Summ. J.) Nothing therein or in Exhibit G supports Defendant's statement.

Additionally, even if Plaintiff Parsi was a conduit, that does not make him a lobbyist on behalf of the Iranian regime, which proposition is in the sole province of the jury for determination.

Defendant's Material Fact 25: Trita Parsi has communicated with Ambassador Zarif regarding the case for dialogue with Iran. Ex. D.

Response: Plaintiffs do not dispute Defendant's Material Fact 25. However, Plaintiffs dispute the proposition Defendant alleges it stands for, which proposition is in the sole province of the jury for determination. Communications with Ambassador Zarif do not make Parsi a lobbyist for the Iranian regime. In fact, as an Iranian grassroots organization that represents a large number of Iranians in the US, one would expect that the head of the organization have access to important government officials, such as Ambassador Zarif. Moreover, the defendant has denied that he believes Dr. Parsi is "a part of the Iranian regime," but at most "lobbied in favor of the Iranian regime." (See Exhibit E, p. 35:11-13.)

Defendant's Material Fact 26: Trita Parsi has communicated with Ambassador Zarif regarding the Grand Bargain proposal from Iran. Ex. E. Zarif was the person who authorized Parsi to release the offer publicly in 2006 in an effort to alter Bush administration policy. Ex. II (Dai Dep., Dec. 1, 2010) at p. 224-225; Ex. JJ (Parsi Dep., Dec. 1, 2010), p. 281-284.

Response: Plaintiffs dispute Defendant's Material Fact 26. Defendant's Exhibit E does not state what Defendant alleges. Similarly, Defendant's Exhibits II and JJ do not state what Defendant assets. Specifically, although Defendant, in his own Deposition alleges that Ambassador Zarif authorized the release of the "offer," nothing in Plaintiff Parsi's deposition supports this. (See Def.'s Ex. II and JJ to Def.'s Mot. Summ. J.) In

fact, Plaintiff Parsi never says Ambassador Zarif authorized this or that Plaintiff Parsi assisted in the public release of it. (Id.) Defendant is simply relying on his own deposition as evidence of a material fact that is undisputed.

Additionally, as part of Plaintiff Parsi's work on the Hill, he had access to the Grand Bargain proposal; it was not through Ambassador Zarif. (See Exhibit G, p. 267-270.)

Defendant's Material Fact 27: Parsi communicated with Ambassador Zarif regarding another proposal about which Parsi wrote, "Hope all is well and that you are back from Tehran. Would love to get a chance to see the proposal or to understand what more it entails. If it is substantial, then certainly members of Congress may find it a reasonable offer, even if the White House doesn't." Ex. F.

Response: Plaintiffs do not dispute Defendant's Material Fact 27. However, Plaintiffs dispute the proposition Defendant alleges it stands for, which proposition is in the sole province of the jury for determination. Simply communicating with Ambassador Zarif does not make Plaintiff Parsi a lobbyist for the Iranian regime. Moreover, the defendant has denied that he believes Dr. Parsi is "a part of the Iranian regime," but at most "lobbied in favor of the Iranian regime." (See Exhibit E, p. 35:11-13.)

Defendant's Material Fact 28: Trita Parsi volunteered to help Ambassador Zarif with his goals, to which Ambassador Zarif stated, "Your help is always welcome." Ex. G.

Response: Plaintiffs dispute Defendant's Material Fact 28. Further, Plaintiffs dispute the proposition Defendant alleges it stands for, which proposition is in the sole province of the jury for determination. First, the email exchange does not discuss Zarif's goals. If Plaintiff Parsi was a lobbyist for the Iranian regime, why would he have to

request access to the proposal?  Likewise, if he was a lobbyist for the Iranian regime, why would he have to volunteer to help?  Moreover, the defendant has denied that he believes Dr. Parsi is "a part of the Iranian regime," but at most "lobbied in favor of the Iranian regime."  (See Exhibit E, p. 35:11-13.)

Defendant's Material Fact 29:  A March 2006 e-mail by Trita Parsi stated, "NIAC has a good name in [I]ran and your association with it will not harm you. In fact, I believe two of our board members are in Iran as we speak!" Ex. KK.

Response:  Plaintiffs do not dispute Defendant's Material Fact 29, which proposition is in the sole province of the jury for determination.  However, Plaintiffs dispute the proposition Defendant alleges it stands for.  Being in good standing with the community does not make one a lobbyist, let alone a lobbyist for the Iranian regime, as Defendant is implying.  Moreover, the defendant has denied that he believes Dr. Parsi is "a part of the Iranian regime," but at most "lobbied in favor of the Iranian regime."  (See Exhibit E, p. 35:11-13.)

Defendant's Material Fact 30:  A May 2006 e-mail by Trita Parsi to Gareth Porter regarding his bio claims, "Few analysts in Washington have the access of Dr. Parsi to decision makers in Iran." Ex. TTT.

Response:  Plaintiffs do not dispute Defendant's Material Fact 30, which proposition is in the sole province of the jury for determination.  However, Plaintiffs dispute the proposition Defendant alleges it stands for.  Access does not equal lobbying. In fact, as a result of the work Plaintiff Parsi does, he is required to have access to a number of officials in order to have success in his field.  Furthermore, using Defendant's own logic, Parsi also has access to U.S. officials and therefore must be a lobbyist for the

U.S. government.  Moreover, the defendant has denied that he believes Dr. Parsi is "a part of the Iranian regime," but at most "lobbied in favor of the Iranian regime."  (See Exhibit E, p. 35:11-13.)

Defendant's Material Fact 31: The 2006 public release of the secret Iranian "Grand Bargain" proposal in 2006 was done through Trita Parsi, in an effort to alter Bush Administration policy. Ex. LL.

Response: Plaintiffs dispute Defendant's Material Fact 31, which proposition is in the sole province of the jury for determination.  Defendant's Exhibit LL does not support the statement it is cited for and is a mischaracterization of the article.  First, the article does not say anything about Ambassador Zarif authorizing Plaintiff Parsi to do this or that Plaintiff Parsi assisted Ambassador Zarif.  (See Def.'s Ex. LL to Def.'s Mot. Summ. J.)  In fact, Plaintiff Parsi says he can not reveal his source of information about this proposal.  (Id.)  Furthermore, this was an initiative of Plaintiff Parsi in an effort to avoid war.  Holding a view held by a majority of Iranian-Americans, that war with Iran is not the solution, does not make Plaintiffs lobbyists for the Iranian regime.  Moreover, the defendant has denied that he believes Dr. Parsi is "a part of the Iranian regime," but at most "lobbied in favor of the Iranian regime."  (See Exhibit E, p. 35:11-13.)

Defendant's Material Fact 32: In August 2006, Parsi's contact at Hamyaran (Baquer Namazi who is Siamak Namazi's father) wrote Parsi: "Thank you for your efforts, all designed to serve our dear country." Ex. J.

Response: Plaintiffs dispute Defendant's Material Fact 32.  First, Defendant's statement "Parsi's contact at Hamyaran (Baquer Namazi who is Siamak Namazi's father)" contains a presupposition subject to a separate factual basis that is unsupported.

Furthermore, this is yet another example of Defendant's lack of attention and mischaracterization. The email specifically says country, which does not mean Iranian regime. In fact, it implies the country and its people. Defendant himself believes he is helping the Iranian people and the country. Is he therefore a lobbyist for the Iranian regime? Finally, Mr. Namazi, as an individual, has his own views and those are simply not reflective of Plaintiffs' views. Moreover, the defendant has denied that he believes Dr. Parsi is "a part of the Iranian regime," but at most "lobbied in favor of the Iranian regime." (See Exhibit E, p. 35:11-13.)

Defendant's Material Fact 33: In Sept. 2006, Trita Parsi relayed information he obtained to Amb. Zarif telling him that from what he hears U.N. envoy Bolton is not likely to get the U.S. Senate vote. Ex. H.

Response: Plaintiffs do not dispute Defendant's Material Fact 33. However, Plaintiffs dispute the proposition Defendant alleges it stands for, which proposition is in the sole province of the jury for determination. Plaintiff Parsi was relaying an article, via email, to Ambassador Zarif, and was sharing his assessment with the Ambassador. As part of his work on the Hill, Plaintiff Parsi does this frequently, both with U.S. officials and Israeli officials. As already explained, this does not make him a lobbyist for the U.S. or Israeli governments. Moreover, the defendant has denied that he believes Dr. Parsi is "a part of the Iranian regime," but at most "lobbied in favor of the Iranian regime." (See Exhibit E, p. 35:11-13.)

Defendant's Material Fact 34: Trita Parsi met with Ambassador Zarif in person several times between March 2006 and June 2007. Ex. MM, I, Ex. NN (Parsi Dep., Dec. 2, 2010), p. 264-265.

Response: Plaintiffs do not dispute Defendant's Material Fact 34 as it relates to whether Dr. Parsi met Ambassador Zarif.   However, Plaintiffs dispute both the proposition Defendant alleges it stands for, which proposition is in the sole province of the jury for determination, as well as whether the Exhibits relied upon by the defendant support said proposition.

Plaintiff Parsi's meetings with Ambassador Zarif were always interviews for his book.   Those interviews are listed in Plaintiff Parsi's book, with the date of the interviews.   Furthermore, Defendant mischaracterizes Exhibits MM.   Nowhere in Defendant's Exhibit MM does it state that Plaintiff Parsi actually met with Ambassador Zarif.   See Def.'s Ex. MM to Def.'s Mot. Summ. J.   Finally, as has been pointed out numerous times, meetings with officials does not constitute lobbying.   Plaintiff Parsi in his position as an expert on U.S. and Iran relations has to have meetings in order to remain current and to maintain his credibility.   (See generally Exhibit I.)

Moreover, the defendant has denied that he believes Dr. Parsi is "a part of the Iranian regime," but at most "lobbied in favor of the Iranian regime."   (See Exhibit E, p. 35:11-13.)

Defendant's Material Fact 35: Parsi communicated with Gholamhossein Mohammadnia, who worked under Zarif and his successor; Parsi also admitted to having met with him. Ex. MM; Ex. I; Ex. NN (Parsi Dep., Dec. 2, 2010) p. 246-247, 262-264.

Response: Plaintiffs do not dispute Defendant's Material Fact 34.   However, Plaintiffs dispute the proposition Defendant alleges it stands for, which proposition is in the sole province of the jury for determination, and that the Exhibits relied upon by the defendant support said proposition.

Moreover, the defendant has denied that he believes Dr. Parsi is "a part of the Iranian regime," but at most "lobbied in favor of the Iranian regime."  (See Exhibit E, p. 35:11-13.)

Defendant's Material Fact 36: In September 2006, an article reported that the former head of the Iran Interest Section, Dr. Fathnejad, "stressed the importance of creating a relationship with organizations of Iranians outside the country . . . including the NIAC organization which is headed by a young Iranian named Trita Parsi." Ex. OO, p. 4.

Response: Plaintiffs dispute Defendant's Material Fact 36.  Defendant mischaracterizes his Exhibit OO.  The actual quote reads as follows: "stressed the importance of creating a relationship with organizations of Iranians outside the country and pointed to the successes of some of them, including the NIAC organization which is headed by a young Iranian named Trita Parsi."  By not quoting the entire sentence, Defendant completely changed the meaning of the statement.

Furthermore, Plaintiffs cannot control who praises them.  Simply because an individual praises or defames Plaintiffs does not make Plaintiffs a lobbyist for the Iranian regime.

Defendant's Material Fact 37: A December 2006 interview of Parsi with *Aftab*, an IRI-supported publication, refers to NIAC as "the Iranian Lobby in America." Ex. PP, p. 4. In that interview, Parsi stated that the west should "first" say that Iran has a "right" to gain access to "all aspects of a peaceful nuclear program and start negotiations . . . without setting preconditions." *Id.* at p. 5.

Response: Plaintiffs dispute Defendant's Material Fact 37.  The quote in Defendant's Exhibit PP does not stand for the proposition asserted by Defendant and is a

major mischaracterization.   The interviewer actually poses the following question to Plaintiff Parsi: "Is the Iranian lobby in America becoming Active?"   (See Def.'s Ex. PP to Def.'s Mot. Summ. J.)   The interview does not refer to NIAC as the Iranian lobby in America.   Moreover, the defendant has denied that he believes Dr. Parsi is "a part of the Iranian regime," but at most "lobbied in favor of the Iranian regime." (See Exhibit E, p. 35:11-13.)

Furthermore, the interview was with Rfe radio, which is a U.S. funded radio station.   Aftab reprinted the interview and added its own commentary.   Defendant could have easily checked this.   In fact, Defendant probably knew this as Plaintiffs immediately put a statement on their website clarifying this point.   Yet, Defendant chose to ignore it.

Defendant's Material Fact 38: On April 21, 2007, Iran's Qudsdaily called NIAC, "the Iranian Lobby in America." Ex. K.

Response: Plaintiffs dispute Defendant's Material Fact 38.   The quote in Defendant's Exhibit K does not stand for the proposition asserted by Defendant and is a major mischaracterization.   First, the translation is incomplete and should not be relied upon.   Second, the translated portion does not contain the quote that Defendant alleges in the statement.   Finally, simply because an Iranian press makes this alleged statement does not make it true.   Moreover, the defendant has denied that he believes Dr. Parsi is "a part of the Iranian regime," but at most "lobbied in favor of the Iranian regime." (See Exhibit E, p. 35:11-13.)

Defendant's Material Fact 39: Qudsdaily defended NIAC by labeling Defendant's claim as simply another attack by "neoconservative" political groups. Id.

Response: Plaintiffs dispute Defendant's Material Fact 39.   The quote in Defendant's Exhibit K does not stand for the proposition asserted by Defendant and is a major mischaracterization.   Plaintiffs reassert the factual disputes alleged in response to Defendant's Material Fact 38.   Furthermore, nowhere in the incomplete translation is Defendant mentioned.   Defendant seems to infer from the term "neo-conservative political groups" that he specifically is being referred to.   Moreover, the defendant has denied that he believes Dr. Parsi is "a part of the Iranian regime," but at most "lobbied in favor of the Iranian regime."   (See Exhibit E, p. 35:11-13.)

Defendant's Material Fact 40: In January 2008, in a response to a question about why NIAC never takes a meaningful stand against human rights violations, Trita Parsi responded that NIAC is not a human rights organization and that it is not their expertise. *See* Ex. O, p. 14-15.

Response: Plaintiffs dispute Defendant's Material Fact 40.   Further, Plaintiffs dispute the proposition Defendant alleges it stands for, which proposition is in the sole province of the jury for determination.   The cited source is Claire Lopez's discredited paper "The Rise of the Iran Lobby."   Although she claims that Plaintiff Parsi spoke at an event in which he claimed NIAC is not a human rights organization, this is not true. Parsi never spoke at the event.   Defendant ties the fact that NIAC does not take a meaningful stand against human right violations as an indication that Plaintiff NIAC is a lobby for the Iranian regime.   However, as Plaintiff Parsi states, that is not NIAC role or expertise as an organization.   Defendant fails to acknowledge that Plaintiff Parsi has spoken up against human rights violations numerous times.   (See Exhibit I ¶9-10, 14.)

Defendant's Material Fact 41: In July 2008, NIAC attempted to sponsor a policy briefing luncheon (including members of the Department of State) to meet with Massoud Khodabandeh

and Anne Singleton. Ex. QQ. A sworn affidavit by Lord Corbett of Castle Vale states that he had appealed to Congresswoman Ileana Ros-Lehtinen to notify her that Iranian agents (Khodabandeh and Singleton) were invited by NIAC (whom he referred to as known lobbyists for the regime) and that Lord Corbett gave her a report documenting their links with Iran which then resulted in their being unable to come to the U.S. for the NIAC event. Ex. N, p. 2-3; Ex. RR-a; Ex. RR-b; Ex. RR-c; Ex. RR-d; Ex. RR-e, p. 8-11.

> Response: Plaintiffs dispute Defendant's Material Fact 41. At the outset, Defendant mischaracterizes Exhibit QQ. Massoud Khodabandeh and Anne Singleton were the speakers at an event and were invited to it as exports on the MEK terror group. It was not a meeting between these two alleged Iranian agents and members of U.S. Congress. Furthermore, Khodabandeh and his wife are former members of MEK and defectors, which explains why Defendant accuses them of being agents of the Iranian regime. On the other hand, Lord Corbett is a supporter of MEK and started to echo Defendant's views after reading Defendant's publications. Moreover, the defendant has denied that he believes Dr. Parsi is "a part of the Iranian regime," but at most "lobbied in favor of the Iranian regime." (See Exhibit E, p. 35:11-13.)

Defendant's Material Fact 42: In July 2008, NIAC's Assistant Legislative Director wrote in a memo: "Under this expansive view of lobbying [LDA], I find it hard to believe Emily and I devote less than 20% of our time to lobbying." Ex. SS, p. 2.

> Response: Plaintiffs do not dispute Defendant's Material Fact 42. However, Plaintiffs dispute the proposition Defendant alleges it stands for. At the time Patrick Disney made the statement, he was 23 years old and had no legal training. His opinions were simply that, opinions. Additionally, he specifically stated those opinions were

about lobbying, not lobbying on behalf of the Iranian regime.    Moreover, the defendant has denied that he believes Dr. Parsi is "a part of the Iranian regime," but at most "lobbied in favor of the Iranian regime." (See Exhibit E, p. 35:11-13.)

Defendant's Material Fact 43: Parsi met with Iranian officials (incl. Motjaba Samareh Hashemi [special adviser to Pres. Ahmadinejad] and Amb. Soltanieh [Iran's ambassador to the International Atomic Energy Agency]) in Europe during Pugwash meetings. *See* Ex. NN (Parsi Dep., Dec. 2, 2010), p. 225-231). Puneet Talwar, member of the National Security Council, who was deposed in this case, testified that he never authorized Parsi to meet these Iranian officials. Ex. SSS (Talwar Dep., Feb. 1, 2011), p. 28-30.

Response: Plaintiffs do not dispute Defendant's Material Fact 43.   However, Plaintiffs dispute the proposition Defendant alleges it stands for.  Many officials from various countries were in attendance at the Pugwash meetings, including officials from Iran and the US.  Additionally, whether Plaintiff Parsi received permission Puneet Talwar to attend the meeting is irrelevant.  Moreover, the defendant has denied that he believes Dr. Parsi is "a part of the Iranian regime," but at most "lobbied in favor of the Iranian regime." (See Exhibit E, p. 35:11-13.)

Defendant's Material Fact 44: Parsi has admitted to meeting with Mohammad Khazaee, Zarif's replacement as Ambassador to the U.N. Ex. NN (Parsi Dep., Dec. 2, 2010), p. 253.

Response: Plaintiffs do not dispute Defendant's Material Fact 44.   However, Plaintiffs dispute the proposition Defendant alleges it stands for, which proposition is in the sole province of the jury for determination.  Simply meeting with an official does not make Plaintiff Parsi a lobbyist for the Iranian regime.  In fact, Plaintiff Parsi specifically states that these meetings were around the same time his book was released, which is why

29

he had a large number of meetings with a variety of officials and individuals. (See Def.'s Ex. NN to Def.'s Mot. Summ. J. at p. 253.) Moreover, the defendant has denied that he believes Dr. Parsi is "a part of the Iranian regime," but at most "lobbied in favor of the Iranian regime." (See Exhibit E, p. 35:11-13.)

Defendant's Material Fact 45: Parsi has met with Rahim Mashaei, Chief of Staff to Pres. Ahmadinejad and former Iranian Vice-President. Ex. NN (Parsi Dep., Dec. 2, 2010), p. 216-218.

Response: Plaintiffs dispute Defendant's Material Fact 45. Defendant mischaracterizes Plaintiff Parsi's statements and Plaintiffs dispute the proposition Defendant alleges it stands for, which proposition is in the sole province of the jury for determination. According to Plaintiff Parsi's deposition, he was present at a meeting in which Rahim Mashaei was also in attendance. (See Def.'s Ex. NN to Def.'s Mot. Summ. J. at p. 217-218.) There is no indication that Plaintiff Parsi actually met with Rahim Mashaei. This is yet another example of Defendant's mischaracterization of Exhibits and statements made in depositions. Moreover, the defendant has denied that he believes Dr. Parsi is "a part of the Iranian regime," but at most "lobbied in favor of the Iranian regime." (See Exhibit E, p. 35:11-13.)

Defendant's Material Fact 46: Mohsen Makhmalbaf (unofficial spokesman for Iran's Green Movement) has said that Parsi does not belong to the Green Movement but instead has been lobbying secretly for Iran. Ex. TT.

Response: Plaintiffs dispute Defendant's Material Fact 46. Defendant mischaracterizes the statements made in Exhibit TT. Mohsen Makhmalbaf stated, "I think Trita Parsi does not belong to the Green Movement. I feel his lobbying has secretly been more for the Islamic Republic." (See Def.'s Ex. TT to Def.'s Mot. Summ. J.) A

feeling that Plaintiff Parsi is lobbying for the Iranian regime does not mean Plaintiff Parsi is in fact doing so.   Additionally, Mohsen Makhmalbaf is not a spokesperson for the Green Movement; he is a movie maker.   In fact, Mir-Hossein Moussavi, leader of the Green movement has explicitly rejected him as a spokesperson.   Moreover, the defendant has denied that he believes Dr. Parsi is "a part of the Iranian regime," but at most "lobbied in favor of the Iranian regime."   (See Exhibit E, p. 35:11-13.)

Defendant's Material Fact 47: From at least 2000 to the present, various articles by others have explicitly said of or referred to the Plaintiffs as:

General Response: Plaintiffs dispute the all of Defendant's Material Facts 47(a)-(p).   A number of Iranian regime operated newpapers have publicly critizised Plaintiffs. (See Exhibit P; C.)   Clearly Plaintiffs were not the Iranian regimes lobby.   Otherwise, the Iranian regimes' press would not criticize Plaintiffs so handily.

a.   being the mullah's voice (Ex. M)

Response: Plaintiffs do not dispute Defendant's Material Fact 47(a).   However, Plaintiffs dispute the proposition Defendant alleges it stands for, which proposition is in the sole province of the jury for determination.   Supporting diplomatic means to end the conflict with Iran does not make Plaintiff Parsi a lobbyist for the regime.   Furthermore, Mr. Timmerman relied on Defendant's articles in drafting his articles. (See Def.'s Ex. X to Def.'s Mot. Summ. J.)   Moreover, the defendant has denied that he believes Dr. Parsi is "a part of the Iranian regime," but at most "lobbied in favor of the Iranian regime." (See Exhibit E, p. 35:11-13.)

b.   being the "Islamic Republic's lobby group" (Ex. UU, p. 1)

Response: Plaintiffs do not dispute Defendant's Material Fact 47(b). However, Plaintiffs dispute the proposition Defendant alleges it stands for, which proposition is in the sole province of the jury for determination. The author cites to no sources or factual support for his accusations. It should be noted that the Student Movement Coordination Committee for Democracy in Iran is a one-man organization. Moreover, the defendant has denied that he believes Dr. Parsi is "a part of the Iranian regime," but at most "lobbied in favor of the Iranian regime." (See Exhibit E, p. 35:11-13.)

c. bending the truth and serving the purpose of Iran's Ministry of Intelligence (VEVAK) (Ex. VV, p. 3)

Response: Plaintiffs dispute Defendant's Material Fact 47(c). Defendant mischaracterizes the statements made in Exhibit VV. The author does not state that Trita Parsi is serving the purpose of Iran's Ministry of Intelligence (VEVAK). Rather, he states that Parsi serves the regime's interests as an advocate of a policy of appeasement. Advocating this policy does not make Plaintiff Parsi a lobbyist for the Iranian regime. Moreover, the defendant has denied that he believes Dr. Parsi is "a part of the Iranian regime," but at most "lobbied in favor of the Iranian regime." (See Exhibit E, p. 35:11-13.)

d. representing itself as a non-political organization while hosting rulers of Iran and supporting "reformists" (Ex. WW)

Response: Plaintiffs do not dispute Defendant's Material Fact 47(d). However, Plaintiffs dispute the proposition Defendant alleges it stands for, which proposition is in the sole province of the jury for determination. No source is given for the allegation that NIAC hosts rulers of Iran. Additionally, supporting "reformists" does not equate to

lobbying for the Iranian regime.  Moreover, the defendant has denied that he believes Dr. Parsi is "a part of the Iranian regime," but at most "lobbied in favor of the Iranian regime."  (<u>See</u> Exhibit E, p. 35:11-13.)

e.   posing as a group advancing Iranian-American interests even though it has spent the majority of its time promoting the interests of the IRI, resulting in NIAC having only few supporters (Ex. X)

    <u>Response:</u> Plaintiffs do not dispute Defendant's Material Fact 47(e).  However, Plaintiffs dispute the proposition Defendant alleges it stands for, which proposition is in the sole province of the jury for determination.  Furthermore, Mr. Timmerman relied on Defendant's articles in drafting his articles. (<u>See</u> Def.'s Ex. X to Def.'s Mot. Summ. J.)  Moreover, the defendant has denied that he believes Dr. Parsi is "a part of the Iranian regime," but at most "lobbied in favor of the Iranian regime."  (<u>See</u> Exhibit E, p. 35:11-13.)

f.   being rejected by a majority of Iranians with so few of whom participating in their surveys and most of whom publicly denouncing NIAC's use of their name (Ex. XX, p. 1); *see also*, Ex. Z to Def's Omnibus Sanctions Motion.

    <u>Response:</u> Plaintiffs do not dispute Defendant's Material Fact 47(f).  However, Plaintiffs dispute the proposition Defendant alleges it stands for, which proposition is in the sole province of the jury for determination.  The author states that "most" American-Iranians are denouncing NIAC and anyone intending to use their name.  This statement is obviously not supported by any research or documentation.  Moreover, the defendant has denied that he believes Dr. Parsi is "a part of the Iranian regime," but at most "lobbied in favor of the Iranian regime."  (<u>See</u> Exhibit E, p. 35:11-13.)

g.  being part of the Islamic Republic of Iran agents and lobby groups (Ex. YY)

Response:  Plaintiffs dispute Defendant's Material Fact 47(g).   Defendant mischaracterizes the statements made in Exhibit YY.  The author accuses Plaintiff Parsi of being part of a lobby group not of being a lobby group on behalf of the Iranian regime.  Additionally, this article was written after Defendant's writings. Moreover, the defendant has denied that he believes Dr. Parsi is "a part of the Iranian regime," but at most "lobbied in favor of the Iranian regime."  (See Exhibit E, p. 35:11-13.)

h.  being the second pillar in the U.S. Iran lobby (Ex. ZZ)

Response:  Plaintiffs do not dispute Defendant's Material Fact 47(h).  However, Plaintiffs dispute the proposition Defendant alleges it stands for, which proposition is in the sole province of the jury for determination.  This article was written after Defendant's writings and relies on discovery from this suit.  Moreover, the defendant has denied that he believes Dr. Parsi is "a part of the Iranian regime," but at most "lobbied in favor of the Iranian regime."  (See Exhibit E, p. 35:11-13.)

i.  being the Iranian regime's man in Washington and doing a lot of legwork for the Iranian regime (Ex. AAA)

Response:  Plaintiffs do not dispute Defendant's Material Fact 47(i).  However, Plaintiffs dispute the proposition Defendant alleges it stands for, which proposition is in the sole province of the jury for determination.  This article was written after Defendant's writings.  Moreover, the defendant has denied that he believes Dr. Parsi is "a part of the Iranian regime," but at most "lobbied in favor of the Iranian regime."  (See Exhibit E, p. 35:11-13.)

j.  being a facilitator for the work of Iran's Ministry of Intelligence and Security (Ex. BBB)

    Response: Plaintiffs dispute Defendant's Material Fact 47(j).  Plaintiff reasserts the factual disputes alleged in response to Defendant's Material Fact 47(c).  Furthermore, Defendant mischaracterizes the statements made in Exhibit BBB.   The author accuses analyst Karim Sadjadpour of being a facilitator for the work of Iran's Ministry of Intelligence and Security, not Trita Parsi.  Moreover, the defendant has denied that he believes Dr. Parsi is "a part of the Iranian regime," but at most "lobbied in favor of the Iranian regime."  (See Exhibit E, p. 35:11-13.)

k.  being lobbyists for the Islamic Republic who only recently advocated for human rights to cover up true intentions (Ex. CCC)

    Response: Plaintiffs do not dispute Defendant's Material Fact 47(k).  However, Plaintiffs dispute the proposition Defendant alleges it stands for, which proposition is in the sole province of the jury for determination.  This article was written after Defendant's writings.  Moreover, the defendant has denied that he believes Dr. Parsi is "a part of the Iranian regime," but at most "lobbied in favor of the Iranian regime."  (See Exhibit E, p. 35:11-13.)

l.  having failed to advocate for human rights violations of Mullahs (Ex. DDD)

    Response: Plaintiffs do not dispute Defendant's Material Fact 47(l).  However, Plaintiffs dispute the proposition Defendant alleges it stands for, which proposition is in the sole province of the jury for determination.  This article was written after Defendant's writings and is factually incorrect. (See Exhibit I, p. 9-10, 14.)  Furthermore, failing to advocate for a specific cause does not make one a lobbyist for the Iranian regime.

Moreover, the defendant has denied that he believes Dr. Parsi is "a part of the Iranian regime," but at most "lobbied in favor of the Iranian regime." (See Exhibit E, p. 35:11-13.)

m. being the lobby for Iran (Ex. EEE, p. 1)

    Response: Plaintiffs do not dispute Defendant's Material Fact 47(k). However, Plaintiffs dispute the proposition Defendant alleges it stands for, which proposition is in the sole province of the jury for determination. The author of this blogpost provides no factual support for the allegations made. Furthermore, this post was written after Defendant's writings. Moreover, the defendant has denied that he believes Dr. Parsi is "a part of the Iranian regime," but at most "lobbied in favor of the Iranian regime." (See Exhibit E, p. 35:11-13.)

n. being an agent of Iran (Ex. FFF, p. 28).

    Response: Plaintiffs do not dispute Defendant's Material Fact 47(n). However, Plaintiffs dispute the proposition Defendant alleges it stands for, which proposition is in the sole province of the jury for determination. Exhibit FFF is a blogpost with a picture of Trita Parsi and an alleged list of Islamic Republic paid agents. The author of this blogpost provides no factual support for the allegations made. Moreover, the defendant has denied that he believes Dr. Parsi is "a part of the Iranian regime," but at most "lobbied in favor of the Iranian regime." (See Exhibit E, p. 35:11-13.)

o. being a lobbyist and infamous apologist for the clerical regime (Ex. GGG)

    Response: Plaintiffs do not dispute Defendant's Material Fact 47(o). However, Plaintiffs dispute the proposition Defendant alleges it stands for, which proposition is in the sole province of the jury for determination. Being a lobbyist and apologist does not

make one a lobbyist for the Iranian regime. Moreover, the defendant has denied that he believes Dr. Parsi is "a part of the Iranian regime," but at most "lobbied in favor of the Iranian regime." (See Exhibit E, p. 35:11-13.)

p.  serving the Islamic Republic and being an agent of Rafsanjani (Ex. PPP)

   Response: Plaintiffs do not dispute Defendant's Material Fact 47(p). However, Plaintiffs dispute the proposition Defendant alleges it stands for, which proposition is in the sole province of the jury for determination. The author of this blogpost provides no factual support for the allegations made. Moreover, the defendant has denied that he believes Dr. Parsi is "a part of the Iranian regime," but at most "lobbied in favor of the Iranian regime." (See Exhibit E, p. 35:11-13.)

Defendant's Material Fact 48: Defendant believed that his articles were true. Dai Affidavit, Att. 1 to Docket No. 5.

   Response: Plaintiffs dispute Defendant's Material Fact 48 based upon the numerous persons who advised the Defendant that his writings were inaccurate and he still published those inaccuracies. (See section II.B.2.c. infra.)

Defendant's Material Fact 49: Defendant entertained no serious doubts about the truth of his articles. Dai Affidavit, Att. 1 to Docket No. 5.

   Response: Plaintiffs dispute Defendant's Material Fact 49 based upon the numerous persons who advised the Defendant that his writings were inaccurate and he still published those inaccuracies. (See section II.B.2.c. infra.)

Despite extensive discovery throughout this case, Defendant has not been able to produce one undisputed material fact that shows that NIAC or Dr. Parsi are lobbyists on behalf of the Iranian regime. Defendant is simply seeking to imply that based on the material facts, most of

which are disputed, NIAC and Dr. Parsi lobby on behalf of the Iranian regime.  However, that is simply not a determination that can be made as a matter of law for purposes of Summary Judgment, as the Material Facts as set forth by the Defendant are in dispute.

### B. The Defendant's Motion for Summary Judgment Should Be Denied As There are Disputes As To Genuine Issues of Material Fact.

#### 1. Legal standard for summary judgment

Summary judgment may be granted only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see* Burke v. Gould, 286 F.3d 513, 517 (D.C. Cir. 2002).  A material fact is one that is capable of affecting the outcome of the litigation.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322.

A court considering a motion for summary judgment must draw all "justifiable inferences" from the evidence in favor of the non-movant and believe the non-movant's evidence.  Anderson, 477 U.S. at 255.  The court will not, however, make credibility determinations or weigh the evidence. Id. at 249.  Thus, the Court does not "'determine the truth of the matter, but instead decide[s] only 'whether there is a genuine issue for trial.'"  Pardo-Kronemann v. Donovan, 601 F.3d 599, 604 (D.C. Cir. 2010) (quoting Anderson, 477 U.S. at 249).  Any factual assertions in the movant's affidavits will be accepted as being true unless the

opposing party submits his own affidavits or other documentary evidence contradicting the assertion.  Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992).

### 2. There are genuine issues of material fact in dispute disregarded by the defendant.

### a. Defendant is a member of MEK.

Defendant denies that he has been is a member of MKO/MEK, an organization designated by the government of the United States of America as a terrorist organization.  (See Exhibit I, Aff. of Trita Parsi ¶ 20.); see also attached Exhibit 2, Hassan Dep., Vol. II, pp. 204:21-23; 205:16-18.   The MEK is a militant organization that advocates the overthrow of the Islamic Republic of Iran through violence. (See Exhibit I, ¶19.)

Defendant has attempted to distance himself from his family and associates with ties to the MEK.  (See Exhibit J, pp. 205:19-208:20; see also Exhibit E, Hassan Dep., Vol. I, pp. 9-13, and 17)  Defendant's sisters Zarah and Fetemeh are involved in politics with the MEK.  (See Exhibit E, pp. 9-13)  Also, the defendant's brother Hussein works with the MEK.  (See Exhibit E, p.17.)   In fact, Defendant's brother and sister are currently high-ranking officials of the organization at Camp Ashraf in Iraq, a military camp given to the MEK by  the late dictator Saddam Hussein.  (See Exhibit E,  p. 9-13.)

However, others have said that the defendant is a member of the MEK.  Mr. Sobhani has written an article stating that the defendant is a member of the MEK.  (See Exhibit E, p. 31.) Defendant disputes Sobhani's claims.  (See Exhibit E, p. 31.)  Likewise, the defendant disputes the claim of Dr. Nourach, his friend, that Defendant is a member of the MEK.  (See Exhibit E, pp. 94:15-97:4.)  Additionally, Massaoud Khodabandeh, a former MEK member who is now a leading expert on and critic of the group has stated the following:

> I can say without doubt that Hassan Daioleslam is a member of what I call for accuracy the 'the Rajavi cult' [referring to MEK leaders Massoud and Maryam

> Rajavi]. In this respect he is obedient to the Rajavi leadership and would not act
> in a way inconsistent with their requirements and certainly not without their
> knowledge or consent (if not to say actual order). The term "membership"
> describes his relationship to the Rajavis. The MKO, just like Al Qaida, does not
> have 'membership cards' … Daioleslam's writing is on the MKO websites. They
> do not publish just anyone's writing. Only those obeying organizational
> constraints.

(Exhibit I, ¶25.)

During his deposition, Defendant used oratorical acrobatics to disguise and disavow is affilaiton with the MEK. In fact, as prolific a writer he is, Defendant doesn't recall writing about the fact that he purportedly doesn't agree with the views of MEK. (See Exhibit E, p. 19) However, in an email exchange with Jamie Glazov, Dai wrote: "[I]t has been a great mistake [for the US government] to discard them [the MEK]. They should be included in a general support of Iranian opposition as a whole." During his deposition, Defendant put it this way:

**b. Defendant's MEK sympathizing motivates his malice toward Plaintiffs.**

Dai's support for, or at a minimum, association and sympathy with the MEK explains his political motivation and malice he ahs in "destroying" Trita Parsi and NIAC, which in his view would be an "absolute intergral part of any attack on Clinton or Obama." (See Exhibit I, ¶29.) As the defendant wrote in a 2008 email: "I strongly believe Trita Parsi is the weakest part of the Iranian web because he is related to Siamak Namazi and Bob Ney. I believe that destroying him will be the start of attacking the whole web." (See Attached Exhibit K, April 2, 2008 Email from Defendant to Kenneth Timmerman.)

To that end, in 2009 the defendant leaked documents to Eli Lake, a reporter for the *Washington* Times, which Defendant had obtained through discovery in this case. Not only did the defendant supply discovery documents to *Washington Times* reporter Eli Lake, but he also published them on his website Irianianlobby.com. (See Exhibit E, p. 123:6-22.) Additionally,

Defendant provided discovery materials to Mr. Kaboli, who is the Executive Director of the Progressive American Irainian Committee.    (See Exhibit E, p. 132:7-22.)    Further, the Defendant sent discovery documents to journalists Michael Rubin and Tim Timmerman. (See Exhibit E, p. 132:23-133:9.)

> **c. Defendant's malice toward Plaintiffs is the cause of his reckless disregard of journalistic standards in his writings about Plaintiffs.**

The defendant considers himself to be an "investigative journalist." (See Exhibit E, p. 30:4-6.) As an investigative journalist, the defendant finds a subject and then he claims to do an investigation. Defendant claims that as an investigative journalist he is searching for "the truth." (See Exhibit E, p. 30:13-18.) He defines "truth" as "something I believe in to be correct . . . Something I really believe." (See Exhibit E, pp. 68:22-69:3.) Defendant claims that his understanding of truth is always based on the facts. (See Exhibit E, p. 69:2-8.)

However, as an investigative journalist, the defendant admits that he has written false information about NIAC, including that Bob Ney, Roy Coffee, and Mr. DiStefano were founders of NIAC.    (See Exhibit E, p. 69:18-70:4.) It appears that the defendant wrote about his belief that Ney, Coffee and DiStefano were founders of NIAC even though he wasn't sure at the time. (See Exhibit E, p. 70:11-12.)    In fact, prior to publishing false allegations about Ney, Coffee, and Distefano fellow neo-conservative journalist Tim Timmerman, who was considering publishing the defendant's article, asked the defendant the following:

> This is a key allegation in the article. Where is the proof? If this is an assumption then we have to phrase it much differently and open the article differently. There's no point in opening with Ney if Ney is not directly involved or involved in a way that you can establish with the creation of NIAC."

(See Exhibit J, pp. 28:9-30:18.) Nonetheless, in reckless disregard for the truth, the defendant published an article in which he misstated that Ney, Coffee and DiStefano founded NIAC.

Often the defendant had to be reminded to ensure the accuracy of his work.  In another instance, Timmerman reminded the defendant of the importance of doing so.  (See Exhibit J, pp. 126:15-127:17)  Similarly, Jed Babin refused to publish one of the defendant's articles saying that the articles contained  a lot of accusations/allegations that could be libelous if not supported by credible references.  (See Exhibit J, pp. 101:11-106:1)   Further Babin stated, "to accuse NIAC of lobbying for Iran is to accuse them of a crime without supporting evidence."  (See Exhibit J, pp. 130:22-132:12.) Also, Vahin Alaghband told the defendant that his writings should be based on facts not conjecture.  (See Exhibit J, pp. 169:4-173:15.)

Further as it relates to "truth," defendant strongly objected, when it came to his own reputation, to an allegedly "false" publication another journalist, a Mr. Sobhani, made who wrote an article claiming that the defendant was a member of the MEK.  The defendant was incensed about this claim, stating:  "It was a lie and [Sobhani] knew it was a lie."  (See Exhibit E, p. 31:8-10.)  The defendant seemed to acknowledge that in the United States people who write articles that contain facts about others contact them for comment, but that journalist Sobhani did not contact him about the MEK allegations before publishing his article.  (See Exhibit E, pp. 31:11-13; 32:17-33:2.)  Notwithstanding this expectation, Defendant admits that he did not contact Plaintiffs about the assertions the defendant was making  because he didn't "expect the truth from them."  (See Exhibit E, pp. 35:15-36:13; 37:14-15; 38:9-18.)  Moreover, Jamie Glazov raised a concern about the defendant's journalistic integrity since he was writing negative things about a Mr. Namazi without contacting him or anyone in his family for comment.  (See Exhibit J, pp. 193:9-24; 195:8-10.)

**B. The Defendant's Motion for Summary Judgment Should Be Denied As There Are Disputes As To Genuine Issues of Material Fact Regarding Defendant's Defamatory Statements With Respect to Plaintiffs.**

1.   **General legal standard  for defamation where as here there are disputed genuine issues of material fact.**

As more fully developed above, the test for defamation is:

[First,] that the defendant made a false and defamatory statement concerning the plaintiff; [second,] that the defendant published the statement without privilege to a third party; [third,] that the defendant's fault in publishing the statement to at least negligence; and [fourth,] either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm.

Blodgett v. University Club, 930 A.2d 210,222 (D.C. 2007).

2.   **There are general issues of material fact relating to Defendant's defamatory statements.**

a.   **The falsity of the Defendant's statements is a disputed material fact**

In a defamation action, if there is a factual dispute regarding the falsity of the statements, then a court should not find, as a matter of law, that the statements are substantially true unless "no reasonable juror could find them to be false."   Moldea v. New York Times Co., 15 F.3d 1137, 1143, 1148 (D.C. Cir. 1994) (remanding and vacating a District Court grant of summary judgment where substantial truth of the allegedly defamatory statements was at issue). Particularly where "truth or falsity of multiple statements" are at issue, "it is the jury's province to determine whether publication should be sufficiently false" to be considered defamatory.  Id. at 1150.

The Defendant has written many false statements about the Plaintiffs, calling the Plaintiffs, inter alia, "the Mullahs[3] lobby," "the Ayatollahs' Lobby," 'key players in the lobby enterprise of Tehran's ayatollahs in the United States," and "an active and disguised Washington-based lobbying enterprise for the Iranian theocratic regime." (See Exhibit L, M; N ¶

---

[3] The terms "Mullah" and "Ayatollah" refer to theocratic rules of the Islamic Republic of Iran

21.)  As is apparent from even a quick perusal of the Defendant's website,[4] these statements are made repeatedly and professed as though statements of fact—not opinions, as the Defendant contends.  (Mem. in Support of Def.'s Mot. To Dismiss Compl. or in the Alternative Def.'s Mot. for Sum. J., at 15-19 ("Def. Mot. to Dismiss")).  The Defendant contends that these statements are true.  (Aff. of Seid Hassan Daioleslam, ¶ 13 ("I…still do believe [the statements regarding the Plaintiffs] to be true.".)  The Plaintiffs contend they are false.  (See Exhibit N ¶ 21.)

Trita Parsi has never been considered a lobbyist for Iran, but in fact has argued against the current Iran regime.  For example, Parsi in an article in the January 2005, Financial Time magazine criticized the Islamic Republic for its human rights abuses and urged the EU and US to focus on human rights in Iran.  (See Exhibit L; N ¶ 12.  In addition, Parsi wrote that "Iranian people certainly deserve a better government--one that provides Iran's youthful population with a better economic future and respects human rights."  Id.  Finally, in June 2009, Parsi wrote a piece for the Christian Science Monitor in which he called on President Obama to condemn the Iranian government's human rights abuses in the aftermath of the Iranian elections.  Id.  These are certainly not the writings of a lobbyist for Iran regime, but rather someone who has spoken out about and in direct contradiction to the acts of the regime.

### b.  There is a dispute regarding the facts establishing the Defendant's requisite degree of fault.

While the Defendant has asserted his belief in the truth of his statements, he "cannot…automatically insure a favorable verdict by testifying that he published with a belief that the statements were true."  St. Amant v. Thiompson, 88 S. Ct. 1323, 1326 (1968).  The good faith of the Defendant is a question of fact to be determined based on the circumstances surrounding the publication, including but not limited to whether the story is "fabricated by the

---

[4] http://english.iranianlobby.com

defendant, is the product of his imagination," or where there are obvious reasons to doubt the veracity of the basis for the story.  Id.

As detailed in the Affidavit of Trita Parsi, the Defendant's allegations are based upon statements that were "cherry picked" with complete disregard for the countless criticisms Plaintiff Parsi has leveled against the oppressive Iranian regime—both in his individual capacity and as president of NIAC.  (See Exhibit N ¶ 15 (listing and extensively quoting criticisms the Plaintiffs have leveled against the Islamic Republic of Iran for, inter alia, human rights abuses).) Not only has the Defendant failed to provide any basis for his inflammatory statements about the Plaintiffs' alleged ties to that oppressive regime, the Defendant has altogether ignored their existence and explicitly stated that the Plaintiffs have not made such criticisms.  (See e.g. Exhibit L (stating that "Parsi paints a rosy picture of the human rights situation in Iran" and that the Plaintiff Parsi "refrain[s] from condemnation of the torture, mass executions, rapes of women in prison, and stoning").)  In fact, Plaintiffs criticisms of the regime were made in the very same sources to which the Defendant quotes for his support.  (See Exhibit N ¶ 15.a.)  This selective memory about the Plaintiff and willful blindness of the truth is powerful evidence of *actual malice*.

As a self-fancied "investigative journalist," it would be irresponsible to the point of beyond recklessness for the Defendant not to a least discuss the evidence opposing the thesis of his articles, when evidence was known to the Defendant.  The extent to which the Plaintiffs have been openly critical of the Iranian regime should have given the Defendant "obvious reasons to doubt the veracity" of the basis for his statements, one of the factors to consider.  See St. Amant v. Thompson, 88 S. Ct. at 1326.  For example, it would be easy for any journalist to find that the common theme among Parsi's articles has not been one of lobbying on behalf of the Iran regime,

but rather to point out numerous issues *against* the regime.   One example (of many) is where Parsi in May 2007, wrote of "the Iranian intelligence service's shameless targeting of Iranian-American scholars and journalists" in their effort to sabotage US-Iran talks.  (See Exhibit N, ¶ 12.  Yet another example of his writings against the current regime is where Parsi wrote "By tying improved relations to Iranian respect for human rights, Washington will develop a stake in Iran's future and ultimate stability, but not a stake in the survival of the Iranian theocracy."  Id., ¶ 13.

### 3.   There are general issues of material fact relating to defamation *per se*.

#### a.   Legal standard for defamation *per se*.

"One who publishes a slander that imputes to another conduct constituting a criminal offense is subject to liability to the other without proof of special harm if the offense imputed is of a type which, if committed…would be…punishable by imprisonment in a state of federal institution…or regarded by public opinion as involving moral turpitude."  Restatement (Second) of Torts § 571  Cf. Roper v. Great Atlantic & Pacific Tea Co., 164 A.2d 478 (D.C. App. 1960) (finding that statements by a store manager that a minor had stuffed her pockets with candy constituted slander *per se*).  If a U.S. person—whether an individual or another legal entity—wishes to act as an "agent of a foreign principal" and engage in "political activities," the person must register with the Attorney General as such, or face fines of up to $10,000 and up to five years imprisonment.   Foreign Agents Registration Act, 22 U.S.C. §§ 611-619.   "Foreign principal" encompasses foreign governments, foreign political parties, and any non-U.S. organization or person. Id. § 611(b). The term "agent of a foreign principal" is define as:

> …any person who acts as an agent, representative, employee, or servant, or any person who acts in any other capacity at the order, request, or under the direction or control, of a foreign principal or of a person any of whose activities are directly. Ir indirectly

supervised, directed, controlled, financed, or subsidized in whole or in major part by a foreign principal, and who directly or through any other person—

    i.    engages within the United States in political activities for or in the interests of such foreign principal;

    ii.    acts within the United States as a public relations counsel, publicity agent, information-service employee or political consultants for or in the interests of such foreign principal;

    iii.    within the United States solicits, collects, disburses, or dispenses contributions, loans, money, or other things of value for or in the interest of such foreign principal; or

    iv.    within the United States represents the interests of such foreign principal before any agency or official of the Government of the United States [.]

Id. § 611(c).  "Political activities" means

Any activity that the person engaging in believes will, or that the person intends to, in any way influence any agency or official of the Government of the United States or any section of the public within the United States with reference to formulating, adopting, or changing the domestic or foreign policies of the United States or with reference to the political or public interests, policies, or relations of a government of a foreign country or a foreign political party[.]

Id. § 611(o).

The Defendant has repeatedly asserted that the Plaintiffs engaged in political activities for the Iranian regime—or at the least with person within Iran whose interests are aligned with the regime.  (e.g., Aff. of Seid Hassan Daioleslam ¶ 11; Plts.' Memo, Ex. B.)  This would place the Plaintiffs activities squarely and firmly within the Foreign Agents Registration Act definition of an "agent of a foreign principal engaged in political activities."  Since this offense is punishable by up to five years imprisonment, 22 U.S.C. § 618(a), the Defendant has accused the Plaintiffs of an offense which would qualify those statements as defamation *per se*, precluding the need for showing special damages.  Washburn v. Lavole, 357 F. Supp. 2d 210, 214 (D.D.C. 2004).

**b.  Legal standard for defamatory statements other than *per se*.**

"A statement is defamatory if it tends to injure the plaintiff in his trade, profession, or community standing."  Washburn, 357 F.Supp. 2d at 215.  "Courts are charged with the

responsibility of determining whether a challenged statement is capable of conveying a defamatory meaning." White, 909 F.2d at 518.  However, a court "may only rule as a matter of law when the publication is not reasonably capable of any defamatory meaning and cannot be reasonably understood in any defamatory sense." Washburn, 357 F. Supp. 2d at 215. (quoting White, 909 F.2d at 518).

The Defendant's statements have caused numerous injuries to the Plaintiffs, particularly hampering the ability of the Plaintiffs to carry out their work as advocates for the Iranian-American community.  (See Exhibit N ¶¶ 8-14.)  The statements have also hurt the Plaintiffs' credibility with the U.S. government officials, and undermined the ability of Plaintiff NIAC to fundraise in the Iranian-American community. (Id.)  These statements are certainly capable of defamatory meaning—both facially and as evidenced by the effect they have had upon Plaintiff's reputation, trade, professional, and community standing.

> **4. There are disputed issues of material fact regarding whether Defendant's defamatory statements were published by the defendant as statements of fact or opinion.**

Whether a statement is an "assertion of fact" or consists of an "expression of opinion" is to be determined as a matter of law. White v. Fraternal Order of Police, 707 F. Supp. 579, 591 (D.D.C. 1989). (citing Ollman v. Evans, 750 F.2d 920 (D.C. Cir. 1984).  The test for whether a statements consists of an opinion is a "totality of circumstances" test, though there is a four-part analysis to aid courts in making that determination.  Id.  First, the court should look to the "common usage or meaning of the specific language in the statement.  Id.  Next, the court should address whether the statement is objectively verifiable (i.e., "capable of being objectively characterized as true or false."  Id.  Third, the statement should be viewed in its "full context" since other content surrounding the statement may "influence the average reader's readiness to

infer that a particular statement has factual content." Id. at 591-92.  Finally, the court should

look to the 'broader context or setting in which the statement appears." Id. at 592.

In order to assist in the discussion of this test, the following is a representative, but far

from exhaustive, list of defamatory statements made by the Defendant which would qualify as

'assertions of fact" under the Ollman test:

- "[NIAC is] an active and disguised Washington-based lobbying enterprise for the Iranian *theocratic regime*. NIAC is an effective node of Tehran's comprehensive lobbying web."  (Iran's Oil Mafia, Pls' Ex. B.) (emphasis added)
- "Trita Parsi and NIAC...have worked hard to improve the image of Tehran's rulers and pale Tehran unfriendly actions by the West."  (Ayatollah's Lobby in Washington, Pls' Ex. A.)
- "NIAC and Trita Parsi are key players in the lobby enterprise of Tehran's ayatollahs in the United States."  (Id.)

First, the common usage and meaning of each of these statements indicates its factual

nature.  The defendant consistently uses forms of the verb "to be" to describe the Plaintiffs.  The

verb "to be" is defined as meaning "[t]o have existence, truth, or actuality."  Webster

Comprehensive Dictionary, Encyclopedic Edition vol. 1, 122 91984).  Thus, the ordinary and

plain meaning of these statements, relying on the verb "to be," is that their substance has truth.

Second, each of these statements are objectively verifiable, namely, the Plaintiffs have

denied the factual nature of these statements and have supplied evidence to support their position

(See Exhibit N.)  For example, the Defendant states that the Plaintiffs have attempted to

"improve the image" of the Iranian regime.  (See Exhibit L.)  However, Plaintiff Parsi has, on

numerous occasions, both personally and on behalf of NIAC, indicated his condemnation of the

Iranian regime (See e.g. See Exhibit N ¶ 15(c).)

Third, the content surrounding the statements would suggest to a reader that the

statements in question are statements of fact, rather than opinion.  The defendant claims to be a

member of the mass media and presents his articles as works of investigatory journalism.  (Aff.

of Seid Hassan Daioleslam ¶ 1.)  This style of writing suggests that he is supplying his readers with facts uncovered during investigation.

Finally, the broader context of the statements demonstrates that they are factual in nature. The Defendant holds himself out as an expert in Iranian issues, indicating a special knowledge of facts relating thereto.  (See Exhibit O; Aff. of Seid Hassan Daiolesliam ¶¶ 104.)  The totality of circumstances surrounding the publication of the Defendant's defamatory statements indicate that they are defamatory statements that meet the legal definition of statements made with actual *malice*, statements uttered to destroy a fine non-profit organization and good man's reputation simply because of the Defendant's hidden, politically driven agenda.

### III. CONCLUSION

Based upon the number of disputed genuine issues of material fact outlined above, Defendant's Motion for Summary Judgment should be denied.

Respectfully submitted,

_____/S/_____

A.P. Pishevar (D.C. Bar No. 451015)
Adrian V. Nelson, II (*Pro Hac Vice*)
**PISHEVAR & ASSOCIATES, P.C.**
600 East Jefferson Street, Suite 316
Rockville, MD 20852
Phone: (301) 279 – 8773
Fax:     (301) 279 – 7347
Counsel for the Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| TRITA PARSI, et al. | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 08 CV 00705 (JDB) |
| | ) |
| DAIOLESLAM SEID HASSAN, | ) |
| | ) |
| Defendant. | ) |

## CERTIFICATE OF SERVICE

I certify that on October 28, 2011, I served, via email, Plaintiffs' Opposition to Defendant's Motion for Summary Judgment to:

Timothy E. Kapshandy, Esquire
Peter G. Jensen, Esquire
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000
tkapshandy@sidley.com

Attorneys for Defendant
Seid Hassan Daioleslam

_____/s/_____
Afshin Pishevar
Adrian Nelson
600 East Jefferson Street
Suite 316
Rockville, Maryland 20852
(301) 279-8773
ap@pishevarlegal.com
anelson@pishevarlegal.com

Attorneys for Plaintiff
Trita Parsi
National Iranian American Council