# Exhibit C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TRITA PARSI <br><br> and <br><br> NATIONAL IRANIAN AMERICAN COUNCIL <br><br> Plaintiffs, <br><br> v. <br><br> DAIOLESLAM SEID HASSAN, <br><br> Defendant | Civil No. 08 CV 00705 |

## DECLARATION OF MARC HIRSCHFELD

I, Marc Hirschfeld being over 18 years of age, have personal knowledge of and am competent to testify to the matters and facts set forth in this affidavit, and state as follows:

1. I am an attorney duly licensed in Maryland and the District of Columbia and I am the Founder and President of Precision Legal Services "PLS".

2. PLS has been appointed by the Superior Court of the District of Columbia and Montgomery County Circuit Court to perform forensic data collection, analysis and provide assistance with E-discovery in various civil matters.

3. I have been appointed by the Montgomery County Circuit Court to assist the Court in mediating disputes regarding E-discovery issues.

4. I am a member of the Electronic Discovery Reference Model subcommittee on Search, the Maryland State Bar Association Technology Committee, and the DC Bar E-Discovery Committee.

5. I have provided CLE courses to members of the Montgomery County Bar and presented talks on E-discovery and Forensics to the American Bar Association, Federal Bar Association, Maryland State Bar Association and Montgomery County Bar Association.

6. On or about September 2011, NIAC engaged PLS to investigate PwC's October 18, 2010 report and analyze Defendants allegations in their Omnibus Motion for Sanctions.

7. First, I addressed PwC's report which states that the "date modified" fields of many Outlook calendar events were changed during December 23-27 2009. I have tested and confirmed that 11 common activities can cause a date modified field to change including 1) changing the start or end time of the event, 2) changing the reminder, 3) snoozing the reminder, 4) dismissing the reminder, 5) changing the show as (out of office, busy etc.) 6) marking private, high, or low importance, 7) categorizing with a flag 8) time zone information change, 9) adding notes to the body, 10) changing the subject of an event and 11) exporting events from shared calendars.

8. I tested several of the "87 appointment with modification dates in the date range 12/25/2009-12/27/2009" from NIAC's exported PST to their original PST's and they are substantively the same without the 12/25-12/27 date modified.

9. Several of the 87 documents contained the word "Copy:" in the subject line. I opened these files which state "this meeting was copied to your calendar and will not receive updates." This verifies Outlook's release notes which indicates that adding the word "Copy:" is expected when an individual exports shared calendar events

10. I have reviewed the PwC report detailing 181 documents that were produced on 4/21/10 that were allegedly not produced on 12/28/09. Many of these documents were produced without the word Copy: and are the same documents. Some of the documents contained different categories; however these documents were produced.

11. I have reviewed some of the events that contained no subject location or body that were retrieved by PWC and determined that these items were non-events inadvertently created when a user accidentally opens a time slot and closes the new item or hits delete on that item.

12. With regard to items found in deleted folders, I have reviewed several documents and concluded that the events listed were deleted for legitimate reasons. I have verified that when an item is cancelled either by hitting the cancel button on the calendar item or by selecting the meeting and deleting it prior to its occurrence, the item gets moved to the deleted folder and does not need recovery. When an individual changes the time of a meeting, Outlook similarly creates a second item in the deleted folder with the old meeting information. These deletions occur in the ordinary course of business and are not suspicious without additional evidence.

13. PwC states that it ran three rounds of processing against the PST files. During the third pass, PwC utilized FTK to recover purged events. These events were "purged" from the original PST file when they had been archived to an Archive pst in the ordinary course of business. The large number of documents that were "recovered" but still produced is strong evidence that no additional double deletions occurred and no spoliation occurred.

14. I have reviewed several items that appear to have been created by Babek Talebi on December 25, 2009 that were provided by PwC from Trita Parsi, David Elliot and Kevin Kowl's calendars and all of the instances were created at the same time. I was unable to determine how these files made their way into the three calendars at the very same time on all

the machines without having access to Mr. Talebi's gmail account. However, it is not likely that the files were created at exactly the same time on all three machines manually as suggested by Defendant. Also it is highly unlikely that any of the custodians had accessed Mr. Talebi's gmail account through the complicated Outlook protocols necessary to download three past event items and add them to his calendar. Had they been able to perform the download they would have not been able to limit the download to three past items.

15. I have reviewed Mr. Disney's outlook calendar via a remote session and determined that Mr. Disney did not have a category for Lobbying. Categories are created at the user level and can be changed at anytime by any of the participants without changing the substance of the meeting. If Mr. Disney changed the general yellow category intending to mark future documents with Legislative Direct in February 2010, than previous items would contain the new category instead of the old category without Mr. Disney's knowledge. This will also change the date modified of the event.

16. I tested an export of several calendar items in excel format that contained highlighting and I was unable to export the highlighting. However I was unable to locate the documents that were purportedly changed in category color

17. I have reviewed and compared Patrick Disney and other Custodians 1/21/09 and 1/28/09 events. These events were recurring monthly events. The events stated it "Occurs the third Wednesday of every 1 month effective 1/21/2009 from 12:30 PM to 2:00 PM" and "Occurs the fourth Wednesday of every 1 month effective 1/28/2009 from 12:30 PM to 1:30 PM" respectively. If Disney opened the 12/16 event on 12/23 and changed the recurrence cycle to the FOURTH Wednesday of the month all of the past events would change to the FOURTH Wednesday as well. The date modified on this event would be 12/23.

18.  PwC provides that a Patrick Disney 2/26/09 meeting at the Rayburn Building regarding the Incidents at Sea bill was modified at 12/23/09 at 6:18PM but does not provide the substance of the change. I have tested and verified that eleven (11) common activities can cause a date modified field to change including 1) Changing the start or end time of the event, 2) Changing the reminder, 3) Snoozing the reminder, 4) Dismissing the reminder, 5) Changing the Show As (out of office, busy etc.) 6) Marking Private, high, or low importance, 7) Categorizing with a flag 8) Time Zone information change 9) Adding notes to the body 10) changing the subject and 11) Exporting events from shared calendars. The dismissing of a reminder or the export process itself was the likely cause of the change in the date modified field.

19.  PwC's report provides that Michelle Moghtader had created and deleted a 10/27/10 event at J Street. I have reviewed the files and conclude that it is likely that Michelle deleted the items when she did not attend the meeting as is indicated by the date last modified on 10/27/09 at 10:33 AM when she was in front of her computer.

20.  Defendant's motion discusses a CLPI training event that occurred on 11/3/09. I have analyzed the rest of Plaintiffs' production and conclude that a similar event was produced for the same time period. A user that has two events scheduled at the same time for the same purpose will often delete one of those items in the ordinary course of business.

21.  I have analyzed several calendar events that were found in deleted folders and were created after the completion of the event. The fact that the event occurred in the past at the time of the creation and that the item was found in deleted items is indicative that the individual created the event for the wrong date and time and therefore deleted the item in the ordinary course of business.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FORGEOING IS TRUE AND CORRECT.

_____  
Marc Hirschfeld, Esq.

10/28/11  
Date