# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **TRITA PARSI** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **NATIONAL IRANIAN AMERICAN COUNCIL** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil No. 08 CV 00705 (JDB)** |
| | ) | |
| | ) | |
| **DAIOLESLAM SEID HASSAN,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## DEFENDANT'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS CONCERNING MEETINGS WITH IRANIAN GOVERNMENTAL OFFICIALS

Defendant Seid Hassan Daioleslam ("Daioleslam") hereby moves for an order from this Court pursuant to Federal Rule of Civil Procedure 37 compelling Plaintiffs to produce all documents and notes relating to Trita Parsi's ("Parsi") meetings with Iranian governmental officials.

## BACKGROUND

In February 2009, Defendant served a document production request for: "All documents relating to the government of Iran or . . . communications with any person then

residing in Iran or then or now affiliated with any government or quasi-governmental group or agency of Iran (whether located within the borders of Iran or elsewhere)."  (Ex. A).  Except for a handful of emails with Iran's U.N. Ambassador Mohammad Javad Zarif ("Zarif"), Plaintiffs produced no other documents regarding Parsi's meetings with Iranian governmental officials[1] despite the fact that Parsi's 2007 book, *Treacherous Alliance*, contains over 200 footnotes citing communications with such officials.  As to the notes of these meetings Parsi had with Iranian officials, Parsi at his deposition could not recall where he kept the notes or when they were discarded; he just knew he no longer had them.  (Parsi Dep., Vol. III, pp. 132-135, attached as Ex. B).[2]

That was the end of the issue until September 24, 2011, when Defendant saw a press release from Yale University Press touting Parsi's soon-to-be-released book, *A Single Role of the Dice,* referencing Parsi's interviews of "70 high-ranking officials from the U.S., Iran, Europe  . . . ."[3]  That day, Defendant's counsel asked why none of these notes had been produced.  (Email exchange attached as Ex. C).  Plaintiffs' counsel responded on September 26 that Parsi was only questioned at his deposition about notes for his 2007 book.  (*Id.*) Defendant's counsel responded on September 27 that his Rule 34 document requests were not

---

[1]   After several court hearings, Plaintiffs did eventually produce partial calendars in May 2010 reflecting meetings with Zarif, other Iranian governmental officials, and a number of other foreign governmental officials in the U.S. and abroad.  Still, no notes regarding any of  these meetings were produced.

[2] Parsi's book has 235 citations to meetings with Iranian governmental officials, yet no notes from these meetings have been produced in the litigation.  At his deposition, Parsi could not recall where he kept the notes of these meetings nor when he discarded them.  (Parsi Dep., Vol. 3, pp. 132-135, Ex. B).  Given the obvious value of these and the fact that Parsi currently has another book on Iran-U.S. relations in press, one would have thought these had great value to him and he would have backed them up or at least recalled what became of them.  Parsi's failure to save these (and back up his machine) is not consistent with his practice.  In a February 2006 email he stated:  "I send it [to] you as I send it to myself since my Outlook is a news archive going back to 1997 and I save everything that has the potential to be useful down the road."  (Attached as Ex. D).

[3] Trita Parsi, *A Single Role of the Dice* (last accessed Oct. 31, 2011), *available at* http://yalepress.yale.edu/book.asp?isbn=9780300169362.  (Attached as Ex. E).

limited to the first book and reiterated his request for any notes of meetings with governmental officials.  (*Id.*)  On September 30, Plaintiffs' counsel responded that Defendant's request:

1. Was overly broad and vague;
2. Called for confidential information;
3. Could cause Plaintiffs injury;
4. Involved confidential business information;
5. Would result in an invasion of privacy to Plaintiffs;
6. Would result in an invasion of privacy to unnamed third parties;
7. Called for privileged information under *Zerilli v. Smith,* 656 F.2d 705 (D.C. Cir. 1981);
8. Called for notes that were proprietary;
9. Called for irrelevant information; and
10. Called for information outside of the Court's March 29, 2011 order regarding supplementation of the June 2009 discovery responses.

Plaintiffs further maintained that Defendant waived his right to these notes by not asking Parsi about them at Parsi's deposition.  (*Id.*)  On October 5, Defendant's counsel responded that at the very least these documents should have been put on a privilege log, that confidentiality or proprietary information may not be withheld (and rather is handled with confidentiality agreements), and that the reporter's privilege of *Zerilli* was wholly inapposite here.  (*Id.*) Plaintiffs' counsel responded on October 11, refusing to even agree that such notes existed and suggested a conference with the Court.  After several attempts to get Plaintiffs to agree to a date for such a conference, they agreed to October 24; at the October 24 conference the Court requested the parties to brief the issue.

## ARGUMENT

As an initial matter, it must first be noted that Plaintiffs' allegations in this case have never been limited to specific articles listed in the complaint.  While the complaint cites several of Defendant's 2007 articles, it goes on to allege:

> 37.   The Defendant published numerous other false and defamatory statements, both directly and by innuendo, to the affect of the above mentioned statements and otherwise.
>
> 38.   These false and defamatory statements were made by the Defendant of and concerning NIAC.

Plaintiffs insisted on discovery of information relating to Defendant's articles published *after* 2007 and their purported journalism expert, Debashi Aikat ("Aikat"), issued a report in June 2010 regarding all of Defendant's articles to date.  In fact, Aikat testified that all of the articles were unsubstantiated:

> Q    And in that paragraph, since we are on it,  let's get into it, you mention, "Several of the Defendant's writings provide statements that are not supported by substantiated or adequate evidence."  And this is our chance to find out which of those you are referring to.  So could you, please, tell us which of the Defendant's statements you believe are not supported or substantiated by  adequate evidence.
>
> A    Mr. Kapshandy, in my research I read  through more than 60 articles and items that the  Defendant had written, and all of those articles did not have, I'm sorry to say, were not supported or substantiated by adequate evidence.  And I was doing that in the spirit of scholarship, and I was struck  by how this person, who I do not know, was criticizing another person without supporting it by adequate evidence so it struck me.  And so I read about 60 articles and it did not -- none of those -- in fact, I was looking for one -- none of them had adequate evidence.

(Aikat Dep., pp. 81-83, Ex. F).  Plaintiffs' October 28, 2011 response to Defendant's summary judgment motion cites to several of Defendant's post-suit articles as defamatory (Docket No. 153, pp. 40-41, and Ex. L, M, O).  If Plaintiffs are now stipulating that none of Defendant's writings after 2007 are defamatory, that would be news to Defendant.  Moreover,

Plaintiffs would have a difficult time arguing that none of the dozens of articles after 2007 did not cause them harm while very similar articles published in 2007 did cause them harm.

Second, there can be no dispute that meetings between Parsi and Iranian governmental officials are relevant and discoverable in a suit where Plaintiffs have the burden of proving that they were not lobbying for the Iranian government.  Parsi may actually have explanations for these meetings (the latest apparently that he was merely a "journalist" interviewing these officials) and his notes and other documents relating to these meetings or "interviews" may support his story or not.  But, there can be no denying that these are discoverable.  As discussed in Defendant's Motion for Summary Judgment (Docket No. 144, p. 8), Parsi testified about meetings with at least four Iranian governmental officials including a former vice-president.  Documents produced by Pugwash under a confidentiality agreement list other Iranian governmental officials at these meetings in 2008.  Information on Pugwash's website confirms the presence of Iranian governmental officials such at Hashemi Samareh (senior advisor to the President of Iran), Ambassador Soltanieh and Ambassador Ziaran.  (Ex. G).  A NIAC email to a Congressional staffer trying to get Rep. Delahunt to attend a Pugwash meeting stated that senior Iranian officials – including a vice-president, an ambassador, and others – were going to attend the meeting.  (Blout's Dec. 3, 2008 email, attached as Ex. H).  In fact, Pugwash explicitly thanked Parsi for his efforts in organizing the meeting.  (Parsi Dep., Vol. III, pp. 148-152, attached as Ex. I).  While Parsi may now want to characterize his role as merely a passive "journalistic" observer, Defendant was surely entitled to documents and notes from these meetings to test Parsi's explanation.

As for the claim of privilege under *Zerilli*, it is difficult to evaluate the legitimacy of this claim as Plaintiffs have prepared no privilege log.  As with Plaintiffs' privilege claims relating to lobbying advice documents, Plaintiffs here have failed to disclose the presence of the discoverable documents and failed to prepare a privilege log, apparently hoping that the issue would disappear.  (For a discussion of the pattern of such discovery practices in this case, *see* Defendant's Omnibus Motion for Sanctions filed Sept. 16, 2011.)  Even without a privilege log, it would appear that Plaintiffs' *Zerilli* privilege claim is ill-founded.  First, *Zerilli* only applies to journalists.  *Zerilli,* 656 F.2d at 711.  Second, it only applies to non-party journalists.  *Id*..  Here Parsi is a party to a suit he brought.  There is absolutely no support in *Zerilli* for the proposition that a journalist may bring a defamation suit and then shield evidence from the defendant that undermines his claim by arguing that the information sought involves confidential sources.  Third, there is no evidence that Parsi obtained information from these sources under promises of anonymity.  *Id*. at 710-711.  Even if he did, by disclosing their names at his deposition, he has waived that privilege.  Finally, the information here goes to the "heart of the matter," an exception to the *Zerilli* privilege.  *Id*. at 713.

Most of the rest of Plaintiffs' objections involve claims of confidentiality, proprietary interest, and privacy. Notwithstanding Defendant's request, Plaintiffs have provided no support for these claims such as the nature of the injury, the basis of the claims of confidentiality, or the basis of the proprietary interest claims.  (*See* Exhibit C).  More importantly, Plaintiffs ignore that such claims of confidentiality or privacy are not a basis for refusing to produce evidence.  Rather, these are typically addressed with confidentiality orders and Plaintiffs provide no reason as to why such would not be sufficient here.

The final argument Plaintiffs put forth is that the notes were created after June 2009 and accordingly are subject to the Court's March 29, 2011 order regarding supplementation of discovery after June 2009.  Without a privilege log it is hard to evaluate Plaintiffs' claim but it should be noted that many of the Pugwash meetings where Parsi met these officials occurred in 2008 and 2009.  So, unless Parsi waited a year or more to reduce the conversations to writing, these notes were in existence when the parties first exchanged documents in May-June 2009.  Second, the March 29 order related to *supplementation* which assumes some documents were exchanged in the first place.  The only way for Parsi to have managed to have escaped producing any notes from any of his meetings with Iranian officials would be for him to have discarded all those from his first book prior to the March 2008 litigation hold, to have not taken another single note until July 2009 (even though he had a number of meetings with such officials in 2008-2009), and then to have started note taking again in July 2009 up until the summer of 2010 when he began his second book.  Such timing would be an amazing coincidence.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendant requests this Court to compel Plaintiffs to produce all documents and notes relating to Parsi's meetings with any current or former officials of the government of Iran including summaries and accounts rendered in drafts, proofs and copies of his book, *A Single Role of the Dice,* along with the costs and fees associated with the filing of this motion an all other just and proper relief.

Respectfully submitted,

Dated: November 4, 2011                          _____/s/  Timothy Kapshandy_____

Timothy E. Kapshandy (Illinois Bar No.
6180926, admitted *pro hac vice*)
Bradford A. Berenson (D.C. Bar No. 441981)
HL Rogers (D.C. Bar No. 974462)
Peter G. Jensen (D.C. Bar No. 982599)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C.  20005
(202) 736-8000
hrogers@sidley.com

Attorneys for Defendant
Seid Hassan Daioleslam

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **TRITA PARSI** | ) |
| | ) |
| **and** | ) |
| | ) |
| **NATIONAL IRANIAN AMERICAN COUNCIL** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | )   **Civil No. 08 CV 00705 (JDB)** |
| | ) |
| | ) |
| **DAIOLESLAM SEID HASSAN,** | ) |
| | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

**<u>PROPOSED ORDER</u>**

Upon consideration of Defendant Daioleslam's Motion to Compel Production of

Documents Concerning Meetings with Iranian Governmental Officials, it is hereby:

ORDERED this _____ day of _____, 2011 that Defendant's motion to compel

is GRANTED and Plaintiffs shall produce all documents and notes relating to Parsi's meetings

with any current or former officials of the government of Iran including summaries and accounts

rendered in drafts, proofs and copies of his book, *A Single Role of the Dice,* and Plaintiffs shall

also pay Defendant the costs of bringing this motion within seven days of Defendant's filing of a

bill of costs;

SO ORDERED.

_____
Judge John D. Bates
United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **TRITA PARSI** | ) |
| | ) |
| **and** | ) |
| | ) |
| **NATIONAL IRANIAN AMERICAN COUNCIL** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | )   **Civil No. 08 CV 00705 (JDB)** |
| | ) |
| | ) |
| **DAIOLESLAM SEID HASSAN,** | ) |
| | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on November 4, 2011, I served, via email, Defendant's Motion to Compel

Production of Documents Concerning Meetings with Iranian Governmental Officials:


Afshin Pishevar
Adrian Nelson II
600 East Jefferson Street
Suite 316
Rockville, Maryland 20852
(301) 279-8773
ap@pishevarlegal.com

Dated: November 4, 2011

                              */s/  Thomas Ross*

Thomas E. Ross (D.C. Bar No. 994275)
Timothy E. Kapshandy (Illinois Bar No. 6180926, admitted *pro hac vice*)
Bradford A. Berenson (D.C. Bar No. 441981)
HL Rogers (D.C. Bar No. 974462)
Peter G. Jensen (D.C. Bar No. 982599)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C.  20005
(202) 736-8000
tom.ross@sidley.com

Attorneys for Defendant
Seid Hassan Daioleslam