# EXHIBIT C

| | |
|---|---|
| **From:** | Kapshandy, Timothy E. |
| **Sent:** | Friday, October 14, 2011 3:31 PM |
| **To:** | Adrian Nelson |
| **Cc:** | ap@pishevarlegal.com; Jensen, Peter; Ross, Tom; Rogers, HL; Farrokh Mohammadi |
| **Subject:** | RE: Parsi Swedish Bank Account & Requested Notes of Interviews with Governmental Officials |

Adrian, I am available to do a call with the Court Monday or Tuesday October 17-18. Please let me know what is best for you.
Thanks,
Tim

**From:** Adrian Nelson [mailto:anelson@pishevarlegal.com]
**Sent:** Tuesday, October 11, 2011 1:18 PM
**To:** Kapshandy, Timothy E.
**Cc:** ap@pishevarlegal.com; Jensen, Peter; Ross, Tom; Rogers, HL; Farrokh Mohammadi
**Subject:** Re: Parsi Swedish Bank Account & Requested Notes of Interviews with Governmental Officials

Tim:

I've been out of the office since Wednesday. My responses are below in red.

Adrian

On Wed, Oct 5, 2011 at 5:02 PM, Kapshandy, Timothy E. <tkapshandy@sidley.com> wrote:

Adrian:

Banking Records: This would be very unusual and contrary to U.S. banking practices to not keep underlying documentation of transactions. If a customer has any dispute about a transaction, and the only record is the type of summary printout that Trita Parsi produced, the customer would have no way to challenge the error. Banks typically keep the underlying documents for their own protection for a number of years. Could you please obtain from the bank and provide a certificate attesting that these are true and authentic records of any and all of Parsi's accounts and that the bank, in fact, does not retain underlying documentation supporting these transactions?

**We are checking into whether we can obtain the requested certification from the Swedish bank.**

Claims of Privilege and Confidentiality Regarding Iranian Meetings: You make a number of arguments for not producing or even identifying these documents in a privilege log and these are ill-founded for a number of reasons:

1. You are "not affirming the factual contents of the press release" (i.e., that Parsi had a number of meetings with Iranian governmental officials). If the press release contains false information, we assume Parsi has asked

1

Yale Press to pull it down and correct it. If so, please send us a copy of the corrected release and there will be no need to address the numerous reasons you gave for withholding such nonexistent documents.

**Your response/questions seem to presume that Dr. Parsi is his own publisher.**

2. You assert that the interview notes contain "confidential information." What is the legal basis for such a claim? You do not say. Confidential information is not privileged from disclosure and is handled with confidentiality agreements.

**To the extent any such interview notes purportedly exist, Dr. Parsi is author/journalist. Interviews with sources for his book are confidential. We already provided you with case authority for our position on the privilege issue. Please refer to my prior email on this subject.**

3. You state that release of information reflecting that Parsi met with Iranian officials would " cause Plaintiffs injury." That may well be, but information about such meetings is certainly relevant to both liability and damages and is discoverable.

**Please detail how any purported interview notes are relevant to damages. It is not sufficient for you to make such a summary claim. Also, what is your legal basis that purported interview notes created well after your client made his defamatory statements is relevant to liability?**

4. You maintain that the notes/documents are "confidential business information." Again, what is the legal basis? Is Parsi creating an telephone email directory of Iranian governmental officials? What is the business he will lose to competitors if this information is made public? Once that is known, we can address if needed with a confidentiality agreement.

**To the extent any such interview notes purportedly exist, Dr. Parsi is author/journalist. It is a fundamental principle of journalism and First Amendment law that journalists must be able to protect sources, except in rarer circumstances. Interviews with sources for his book are confidential. Again, we already provided you with case authority for our position on this. Please refer to my prior email on this subject. We are not sure how you have created some false argument that Dr. Parsi is creating a telephone email directory. That's quite a stretch.**

5. You claim that the production of such documentation would result in an invasion of privacy to Plaintiff. On what possible basis can Parsi claim that he had an expectation of privacy in meetings with foreign governmental officials? Moreover, once he has placed the existence and content of such meetings at issue in a suit where he is claiming that writings by Defendant about his relations with Iranian governmental officials is injuring him, he cannot in a public law suit claim that all such meetings were for one purpose but deny Defendant documents reflecting what actually occurred at those meetings. Again, confidentiality agreements can address any privacy issues.

2

To the extent any such interview notes purportedly exist, again Dr. Parsi is author/journalist. As such, he has an expectation of privacy relating to his journalistic work product, especially when such work product would be for a time period well-after your client made his defamatory statements.

6. You make the same claim for Iranian governmental officials. Again, you do not state the basis on which these governmental officials had an expectation of privacy nor that you have standing to represent them. Again, a confidentiality order, if needed, could address this concern.

**Please see our response to point number 5 above.**

7. You claim that any notes or documents are privileged under Zerilli vs. Smith 656 F.2d 705 (DC Cir. 1981). This case is wholly inapposite for a number of reasons. It only applies to third-parties. It only applies to journalists. You have not proffered any evidence that these "sources" were in advance promised confidentiality in exchange for their information. This goes to the "heart of the matter" and, hence, is excepted from the Zerilli privilege. And, you have produced no privilege log which should have been done long ago.

**Fortunately, you are not the judge in this matter. So, your interpretation of *Zerilli* is simply that -- your interpretation of that case. As for a proffer, I didn't realize that we were in the midst of either a deposition or hearing. As for a privilege log, your contention presumes that such purported interview notes are responsive and/or relevant to a document request.**

8. Parsi's notes and documents relating to the meetings are '"proprietary" you assert. If this means that only Parsi has the right to sell them, then that is inconsistent with all the privacy and confidentiality claims just made and discussed above. You do not state the proprietary interest nor address how a confidentiality agreement would not address that. These are certainly relevant and discoverable.

**Your argument is flawed. A journalist can have the exclusive right to divulge sources if they are so inclined. Such right is not inconsistent with privacy and confidentiality claims.**

9. You claim that Defendant waived his right to these documents by not asking about them at Parsi's deposition. Rule 34 requests are totally separate from depositions. There is no such rule. NIAC and Parsi chose to hide these and not even provide a privilege log. If you are saying that the veracity of Parsi's written discovery responses should not have been relied upon, you have a point there.

**Dr. Parsi hid nothing and your accusation is insulting, but typical.**

10. You claim that any meetings with Iranian governmental officials are irrelevant to Defendant's 2006-2007 allegations. First, Defendant did not write about Parsi until 2007. Second, as you know, Defendant has written about Parsi and NIAC in 2008-2011. Are you claiming those are not the basis of your allegations? If so, please confirm as soon as possible as that drastically narrows the scope of the suit. Third, even if Parsi met with Iranian

3

government officials after a particular article by defendant in 2007, that would not make the notes or documents irrelevant. This is especially so in light of Parsi's having discarded his notes from many meeting with Iranian governmental officials before the January 2008 litigation hold.

**It is clear that we will not agree about the relevance of any interview notes. The court's opinion on this issue my prove beneficial.**

11. Finally, you claim that you do not need to produce the notes/documents per the Court's march 29, 2011 order regarding supplementation of responses made in May 2009. Of course, this totally misses the point that the order applied to *supplementation*. In other words, you would have first had to have produced something in the first place.

As it does not appear that you are willing to even produce a privilege log or produce these under a confidentiality agreement and we are not likely to resolve this, please let us know good times to call Judge Bates' office to schedule a telephonic conference. If you are willing to produce these, please let us know.

**As it does not appear that your client is entitled to any such purported interview notes, please suggest times for a conference call with Judge Bates and we will advise if those times work for us.**

Thanks,

Tim

---

   **From:** Adrian Nelson [mailto:anelson@pishevarlegal.com]
   **Sent:** Friday, September 30, 2011 5:18 PM
   **To:** Kapshandy, Timothy E.
   **Cc:** ap@pishevarlegal.com; Jensen, Peter; Ross, Tom; Rogers, HL
   **Subject:** Re: Pasi Swedish Bank Account & Requested Notes of Interviews with Governmental Officials

   Dear Tim:

   First, let me address the Swedish Bank records. Our client has investigated whether his bank has any underlying documents relating to deposits made. We have been advised that they do not maintain that information. Further, our client has advised that with the exception of any documents submitted with his tax filings, which you already have, he does not have any underlying documents relating to deposits.

4

With respect to the interview notes your are seeking, following, *inter alia*, is our position. First, we are not affirming the factual contents of the press release that form the basis/predicate of your request for the interview notes. Second, Document Request No. 3, upon which defendant is basing his request for the interview notes, is both overly broad and vague at the very least. Notwithstanding the broad and vague nature Request No. 3, Plaintiffs reaffirm their objections to Document Request No. 3 on the grounds that providing any existing interview notes would (i) result in the disclosure of confidential information, (ii) cause Plaintiffs injury, (iii) involve confidential business information, (iv) result in an invasion of privacy to Plaintiff; and (v) result in an invasion of privacy to third parties. Third, Plaintiffs assert that any interview notes that may exist, if at all, are privileged pursuant to Zerilli v. Smith, 656 F.2d 705 (C.A.D.C., 1981). Fourth, any such interview notes are proprietary. Fifth, Plaintiffs contend that the defendant has waived any claims to the requested interview notes as he was aware of this book during Dr. Parsi' deposition and elected not to ask any questions about it and/or request any information pertaining thereto. Sixth, Plaintiffs assert that any interview notes are not relevant to whether Mr. Daioleslam's 2006-2007 allegations as to Plaintiffs were defamatory in nature. Seventh, it does not appear that providing the interview notes comports with the supplementation parameters established by the Court in its March 29, 2011 Order.

We suggest that the parties further discuss these issues before any Motion to Compel is filed.

Very truly yours,

Adrian V. Nelson, II

On Tue, Sep 27, 2011 at 5:35 PM, Kapshandy, Timothy E. <tkapshandy@sidley.com> wrote:

Adrian, thanks for your prompt response. While Parsi did testify about the notes for his 2007 book (claiming that they had been discarded prior to the litigation hold), Defendant's document requests for all documents relating to communications with Iranian officials was not limited to notes for his 2007 book. As the press release from Yale Press indicates that there were interviews relating to the Obama Administration's Iran policy (which by definition would be after the litigation hold was implemented) and as you are not claiming that these were also discarded, these new interview notes would have been covered by the document production request (First Set, No. 3) and should have been produced. Please let us know when we can expect them or if you are refusing to produce them and on what basis.

Thanks,

Tim

**From:** Adrian Nelson [mailto:anelson@pishevarlegal.com]
**Sent:** Monday, September 26, 2011 11:25 AM
**To:** Kapshandy, Timothy E.
**Cc:** ap@pishevarlegal.com; Jensen, Peter; Ross, Tom; Rogers, HL
**Subject:** Re: Notes of Interviews with Governmental Officials

Tim:

5

I believe that you may be confusing Dr. Parsi' prior sworn testimony. I refer you to Vol. III (May 11, 2011), pp. 133:2-137:21, of the Parsi deposition transcript. There you asked Dr. Parsi about interview notes relating to his 2007 book "Treacherous Alliance," not his current book.

Before filing any Motion to Compel, please advise whether there is some place in Dr. Parsi's deposition where you asked him questions about his current book and any related interview notes. Otherwise, we will consider this matter resolved.

-Adrian

On Sat, Sep 24, 2011 at 4:05 PM, Kapshandy, Timothy E. <tkapshandy@sidley.com> wrote:

http://yalepress.yale.edu/book.asp?isbn=9780300169362

Adrian:
This press release from Yale Press about Parsi's new book (which he has been working on since last year) indicates that he conducted interviews with 70 governmental officials, including Iranian officials. Just four months ago Parsi testified under oath that he did not know what became of these interview notes. As you know, plaintiffs have not produced a single note from any of Parsi's many meetings with Iranian governmental officials. If plaintiffs refuse to produce these without yet another motion to compel, please let me know so we can arrange a conference call with the court.

Sincerely,

Tim

*Tim Kapshandy*

6

Sidley Austin LLP

One South Dearborn Street

Chicago, Illinois 60603

312-853-7643

312-853-7036 (fax)

219-670-0698 (cell)

www.sidley.com

---

IRS Circular 230 Disclosure: To comply with certain U.S. Treasury regulations, we inform you
that, unless expressly stated otherwise, any U.S. federal tax advice contained in this communication, including attachments, was not intended or written to be used, and cannot be
used, by any taxpayer for the purpose of avoiding any penalties that may be imposed on such
taxpayer by the Internal Revenue Service.  In addition, if any such tax advice is used or referred
to by other parties in promoting, marketing or recommending any partnership or other entity,
investment plan or arrangement, then (i) the advice should be construed as written in connection
with the promotion or marketing by others of the transaction(s) or matter(s) addressed in this
communication and (ii) the taxpayer should seek advice based on the taxpayer's particular
circumstances from an independent tax advisor.
****************************************************************************************************
This e-mail is sent by a law firm and may contain information that is privileged or confidential.
If you are not the intended recipient, please delete the e-mail and any attachments and notify us
immediately.

****************************************************************************************************