# **EXHIBIT E**



| | |
|---|---|
| SIDLEY AUSTIN LLP<br>ONE SOUTH DEARBORN STREET<br>CHICAGO, IL 60603<br>(312) 853 7000<br>(312) 853 7036 FAX | BEIJING<br>BRUSSELS<br>CHICAGO<br>DALLAS<br>FRANKFURT<br>GENEVA<br>HONG KONG<br>LONDON<br>LOS ANGELES | NEW YORK<br>PALO ALTO<br>SAN FRANCISCO<br>SHANGHAI<br>SINGAPORE<br>SYDNEY<br>TOKYO<br>WASHINGTON, D.C. |

tkapshandy@sidley.com
(312) 853 7643

FOUNDED 1866

February 12, 2010

Mr. Patrick Parsa
600 East Jefferson Street
Suite 316
Rockville, Maryland 20852

    Re:    <u>NIAC's Discovery Responses</u>

Dear Patrick:

    This is in response to your letter of February 4 regarding NIAC's discovery responses, in particular:

    1.    NIAC's time and calendar records regarding lobbying;
    2.    The financial records supporting NIAC's amended 2008 tax return; and
    3.    Mansouri's and Talebi's emails.

<u>Inconsistent Positions About Whether Document Production Complete</u>

    First, however, we must address your statement: "We have had an understanding that we would be producing in rolling stages." Aside from supplemental materials created after the parties initially responded, this is not true. When I repeatedly asked for calendar and time records of lobbying activities, you always responded, "Everything has been produced." You confirmed in your Feb. 4 letter that "we did a thorough search and came to the conclusion that there were no time records . . . in our effort to make sure you had everything you needed *before* her deposition." (p. 3). Once Blout testified that her Outlook calendar was used to track lobbying meetings, your statements were belied and you had the temerity to blame us: "it is your responsibility to at least remind us to provide it to you *before* you decide to depose someone."

    You cannot have it both ways. Either the responsive time/calendar lobbying records were produced completely before her deposition or they were not. And, if not, you cannot blame us. These were requested numerous times:

    1.    Defendant's document requests of February 6, 2009 (over one year ago) requested: "All documents referring to NIAC's activities as lobbying, exercising political influence, taking positions on United States policies, or persuading United States political officials" and "All documents relating to United States political officials, including all



Patrick Parsa
February 12, 2010
Page 2

communications with United States political officials and their staffs." Documents were defined to include "agendas, calendars, diaries, and appointment books."

      2.     To be clear, we repeatedly asked if there were any Outlook calendar entries of such lobbying meetings and you responded, "Everything has been produced." The reason we asked about Outlook calendars is that such would be easily searchable with the agreed search terms and as the Outlook software was provided to NIAC employees for work purposes, producing such would not involve private business and would clearly relate only to NIAC business.

      3.     As you point out on page 3 of your letter, we emailed you December 7 to remind you to produce any of her lobbying time records before her deposition.

      4.     Before the deposition started on December 8, I reiterated the request for any of her lobbying time records.

      5.     At her deposition, Blout confirmed that Outlook calendar records of lobbying meetings existed but were not produced:

**SIDLEY** | SIDLEY AUSTIN LLP

Patrick Parsa
February 12, 2010
Page 3

```
11      Q.    When you produced documents at the request
12   of Dr. Parsi here, were you not informed that the
13   Defendant in this case had asked for Outlook calendar
14   documentation of such meetings with staffers and
15   congressmen?
16      A.    Well, I read the discovery request, the
17   original one, and it did not make mention of anything
18   like that, to my knowledge.
19            MR. KAPSHANDY:  Counsel, we specifically
20   did request those and we're going to rerequest.  We
21   had a number of discussions about Outlook
22   documentation of meetings from anyone at NIAC with
23   members on The Hill.
24            MR. PISHEVAR:  We've gone through an
25   exhaustive search and gave you what was there to be
```



Patrick Parsa
February 12, 2010
Page 4

```
                                                                    217

 1   had.  If there's anything more that we find, we'll be

 2   happy to give it to you.

 3               MR. KAPSHANDY:  Well, I would urge, in

 4   light of this witness's testimony that that's where

 5   she kept track of these meetings, that you look at

 6   hers and every other NIAC member's Outlook calendar.

 7               And then we'll have to figure out a way to

 8   delete personal or other stuff, but that was clearly

 9   requested and followed up in requests.

10               And unless those have been destroyed,

11   which they shouldn't have been, in light of the

12   litigation hold, we would, again, request that those

13   be produced.  That's easy to --
```

While Blout, a nonlawyer, perhaps cannot be faulted for her interpretation of the discovery requests, experienced counsel in light of these numerous requests clearly should have known that calendar entries of lobbying meetings were covered.

      6.      Per the above exchange, the lobbying calendar records were re-requested at the December 8 deposition.

      7.      On December 9, I emailed you re-requesting the time records and calendar records of lobbying meetings.

      8.      On December 18, I asked about the status of these lobbying time and calendar records.

      9.      On December 31 after you produced some calendar records for 2009 and time records of lobbying for all of 2009, I pointed out that these appeared incomplete (no records for 2008 or earlier) and some that were produced were altered Dec 25-27.



Patrick Parsa
February 12, 2010
Page 5

10. On January 19, I wrote again requesting calendar records for 2008 and earlier, complete records for 2009, and a forensic image for the Outlook calendars to determine what was altered Dec 25-27.

For you to inconsistently claim that all lobbying time/calendar records were produced before the deposition of NIAC's former legislative director and that the lapse was our fault for not having requested them persistently enough is unacceptable.

Lobbying Time and Calendar Records

You state in your Feb. 4 letter that you are still collecting calendar information and will be producing the remaining records in about a week. You refuse to explain why these were not produced before Blout's deposition (given the above-discussed repeated requests for over a year) and refuse to pay for the cost of redeposing her on these late-produced records. We will raise this with the court.

You also fail to explain why some of the calendar records were altered December 25-27. While it is plausible that moving the records to an Explorer file for production as you did would alter the date of revision, that would be the case for ALL of the entries, not just one-third. A forensic image would clarify if there is an innocent explanation, which we certainly hope is the case. In light of your inability to explain these alterations and your failure to produce all of the Outlook calendar records for over a year, we will ask the court for appropriate relief.

As for your self-limiting the calendar production to meetings with Congressmen and staffers, my December 9 email merely referred to Ms. Blout's descriptions of such meetings. The relevant document requests (above) govern the scope of the request relating to lobbying meetings. So, be sure to include meetings with foreign persons as well as nongovernmental entities such as CNAPI, PAIAA, and CASMII, etc. in your production. As you know, Mr. Disney had a number of meetings with such groups.

Financial Basis for Amended 2008 Tax Return

As you know, NIAC amended its 2008 return to admit to engaging in lobbying and claiming $14,771 in lobbying expenditures. You have repeatedly refused to produce the basis for this figure. First, you claimed on January 13 that they will be produced "once we have completed our calculations." Now, you refuse to produce such, stating that our demand is unreasonably burdensome and over-broad. And finally, you state: "since you have already subpoenaed Mr. Isaaco [NIAC's CPA who prepared the return], there is no need for us to discuss



Patrick Parsa
February 12, 2010
Page 6

this further." But, as you also represent Mr. Isaaco, you are well-aware that he claims to have "no responsive documents."

Rule 34 does not permit a party to avoid a response by pointing to another person who might be subpoenaed. Moreover, when the same counsel also represents that other person and states as an officer of the court that that person has "no responsive documents" this is the royal runaround. Since both NIAC and your other client, Mr. Isaaco, refuse to produce these clearly relevant documents, we will have to raise this with the court. We will also raise the fact that NIAC had this amended return reflecting NIAC's lobbying activities well before Blout's deposition (where she repeatedly denied lobbying) as an additional basis for NIAC to pay for the costs of redeposing her on these issues.[1]

Mansouri and Talebi Emails

Both of these former NIAC employees/consultants give a similar story: They used their own computers (Mansouri's paid for by the NED) to do their NIAC work and both of them "broke" and were thrown out with no effort to save the data on them. Similarly, as you claimed you did not represent either of them and thus we would have to subpoena them, once we did so, you jumped in and represented them prohibiting us from further communications. However, as you point out in your letter of Feb. 4, Dr. Mansouri did email us on Sept. 15, 2009 that the "laptop I used back then stopped working *several months ago* and it is not in my possession anymore." (Emph. added.) This would mean that Mansouri's computer was working in the summer of 2009, more than a year after the suit was filed and months after defendant served his discovery requests. As this computer was paid for with NIAC funds from the NED, it should have been preserved per the litigation hold and searched by NIAC for information requested in defendant's document requests. Moreover, now that you represent Mansouri, your refusal to produce him for a deposition is unreasonable. When you did not represent him, he voluntarily responded to us and even offered to make his gmail account available. Now that you represent him, it would appear that you are using that representation for litigation advantage for another client.

There is a more fundamental problem with the emails of both Talebi and Mansouri that was raised in my January 19 letter and which you have refused to address – i.e., NIAC has not

---

[1] Rather than respond to the request for these relevant lobbying records, you attempt to deflect the request by complaining that three of defendant's articles published on his website were not handed over. First, all of these are on his public website so you have them. Second, the December 2008 article was produced (0003124). The other two were only written in December 2009 and will be covered in the supplemental production. Accordingly, this feeble attempt to accuse Daioleslam of the same sort of runaround NIAC is using for these records is not analogous at all.



Patrick Parsa
February 12, 2010
Page 7

searched the email server for their (or any NIAC employees') responsive emails. As you know, even if these men threw out their computers, all of their emails sent from their NIAC emails (which you claim is what they used for NIAC business), would reside on that server. In addition you refused to address our concern that Mr. Elliott had testified that he did not instruct NIAC's email provider to do anything different in light of the litigation hold in place since April 2008. Accordingly, we will ask for a forensic image of the email server for these emails.

The Changing of Blout's Testimony

Interestingly, after we raised Blout's testimony that she was not even aware of the litigation hold as strong evidence of NIAC's noncompliance with its discovery obligations, you stated in your Feb. 4 letter (p. 4) that "Ms. Blout is in the process of changing her deposition transcript to reflect . . . she remembered being told by NIAC not to delete anything pertinent to the litigation." This is very troublesome for several reasons. First, at our August 3 meet-and-confer, we requested a copy of this litigation hold and it has yet to be produced. Second, Ms. Blout's deposition was on Dec. 8 and the transcript was completed on Dec. 23. Under Rule 30, she had 30 days to make any corrections. The fact that she suddenly became aware of this untimely testimony revision after we sent our letter of January 19 is suspicious. At her deposition, when she said she was not aware of the litigation hold, I even followed up and asked a second question:

```
25      Q.    Are you aware that when the lawsuit was
```

TransPerfect Legal Solutions (212) 400-8845

```
1    commenced NIAC put in place a litigation hold so that
2    no documents were destroyed that might be relevant to
3    the proceedings?
4        A.   No.
```

For her to now say that she did not realize this meant "not to delete anything pertinent to the litigation", almost the exact phrase used at the deposition, is questionable. Given that you no



Patrick Parsa
February 12, 2010
Page 8

longer represent her, we request the right to question her about the circumstances of this untimely testimony change and any conversations about the changing of this testimony with your office or NIAC employees at her reconvened deposition. We also reiterate our request for a copy of the litigation hold and to whom and when it was communicated.

Conclusion

To sum up, the issues we would like to raise with the court are:

1.  A forensic image of NIAC's Outlook calendar(s).

2.  An order to produce the basis of the new figures and information in NIAC's amended 2008 tax return before Isaaco's deposition on Feb. 17.

3.  A forensic image of the server of NIAC's email provider.

4.  The costs of deposing Blout on the late-produced (and not-yet-produced) calendar records, amended tax return, and testimony change.

5.  Producing Dr. Mansouri for a deposition.

If we can resolve any of these short of court intervention, please let me know. Otherwise, we will set up a conference with the court per the judge's usual practice. Thank you.

Sincerely

Timothy E. Kapshandy

TEK:sgo

cc: Afshin Pishevar
    Adrian Nelson
    HL Rogers
    Bradford Berenson

CH1 5182201v.1