**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **TRITA PARSI** ) | |
| ) | |
| **and** ) | |
| ) | |
| **NATIONAL IRANIAN AMERICAN COUNCIL** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Civil No. 08 CV 00705** |
| ) | |
| **DAIOLESLAM SEID HASSAN,** ) | |
| ) | |
| **Defendant.** ) | |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS
CONCERNING MEETINGS WITH IRANIAN GOVERNMENT OFFICIALS**

COME NOW, Plaintiffs, Dr. Trita Parsi and the National Iranian American Council ("NIAC") (collectively "NIAC"), by and through their counsel, Afshin Pishevar, Esquire, Adrian V. Nelson, II, Esquire, and Pishevar & Associates, P.C., in opposition to Defendant's Motion to Compel Production of Documents Concerning Meetings With Iranian Government Officials ("Defendant's Motion to Compel"), and state as follows:

## I.   BACKGROUND

Once again, the defendant has been masterful in misrepresenting the facts and muddying the water as it relates to his recent demand that he is entitled to interview notes relating to Dr. Trita Parsi's yet to be released book titled: *A Single Role of the Dice: Obama's Diplomacy with*

*Iran* (the "Unreleased Book").[1]   Although the emphasis of the defendant's current Motion to Compel relates to Dr. Parsi's Unreleased Book, in typical fashion the defendant attempts to confuse the issue relating to Dr. Parsi's Unreleased Book by focusing upon Dr. Parsi's 2007 book titled: *Treacherous Alliance* (the "First Book").   The Court should not be misled.

The defendant's current Motion to Compel clearly stems from his frustration that Dr. Parsi did not retain any of his interview notes from his First Book.   Dr. Parsi is on record, under oath, no less, that he did not save his interview notes related to his First Book.[2]   (*See* Attached Exhibit "A", Declaration of Dr. Trita Parsi, ¶ 9.)   That should have been the end of the defendant's inquiry relating to the First Book since the defendant has not demonstrated that Dr. Parsi is not being truthful in this regard.

However, in typical fashion the defendant has attempted to jettison his frustration regarding the nonexistent interview notes relating to the First Book into an entitlement to any interview notes relating to Dr. Parsi's Unreleased Book.   Defendant writes: "That was the end of the issue [relating to the interview notes concerning the First Book] until September 24, 2011 when Defendant saw a press release from Yale University Press touting Parsi's soon to be released book . . ."   (*See* Defendant's Motion to Compel, p. 2)   The manufactured issue – Defendant's frustration about the nonexistent pre-2007 interview notes relating to the First Book -- clearly is in no way related to the 2010 research done as it relates to Dr. Parsi's Unreleased Book.

---

[1]According to a recent 2011 Yale University Press release, the Book, the result of Dr. Parsi's research, "provides a definitive and comprehensive analysis of the Obama's administration's early diplomatic outreach to Iran and discusses the best way to move toward more positive relations between the two discordant states."   (*See* Attached Exhibit "B", Yale University Press release regarding *A Single Role of the Dice*.)

[2]Dr. Parsi's First Book was based upon his doctoral dissertation, which research was done well before 2007, and in no way involved research that was conducted in support of Dr. Parsi's Unreleased Book. (*See* Exhibit "A", ¶¶ 9, 11.)

It is clear that the defendant has manufactured another discovery dispute in this case.  On September 24, 2011, counsel for defendant wrote:

> Adrian:
>
> This press release from Yale Press about Parsi's new book (which he has been working on since last year) indicates that he conducted interviews with 70 governmental officials, including Iranian officials.  Just four months ago Parsi testified under oath that he did not know what became of these interview notes. As you know, plaintiffs have not produced a single note from any of Parsi's many meetings with Iranian governmental officials.  If plaintiffs refuse to produce these without yet another motion to compel, please let me know so we can arrange a conference call with the court.
>
> Sincerely,
>
> Tim

(*See* Attached Exhibit "C," September 24, 2011 Email from Timothy Kapshandy, Esquire.)  Clearly from the above email, the defendant has been aware that Dr. Parsi had been working on his Unreleased Book since 2010.  In fact, on December 2, 2010, on the very first day of Dr. Parsi's deposition, under examination from Defendant's counsel, Dr. Parsi testified to the fact that he was a fellow with the Woodrow Wilson Center, where he used office space to write his currently Unreleased Book on U.S.-Iran relations.[3]  (*See* Attached Exhibit "D," Deposition of Dr. Trita Parsi, Vol. I, dated December 2, 2010, pp. 249:18-250:4; *see also* Exhibit "A," ¶ 20.) Despite having two additional opportunities to depose Dr. Parsi after December 2, 2010, the defendant never requested any interview notes from Dr. Parsi until September 2011.  (*See* Exhibit "A," ¶ 21.)

---

[3]Clearly the defendant has been searching cyberspace to monitor both the personal and professional activity of Dr. Parsi, which is the reason that Defendant became aware of the Yale University Press release relating to the Unreleased Book.  To that end, information regarding Dr. Parsi's work as a fellow with the Woodrow Wilson Center (the "Center") has been available on the websites of both the Center and NIAC since May 2010, which was prior to all three days of Dr. Parsi's depositions.

To that end, on September 26, 2011, through counsel, Dr. Parsi responded to the defendant's counsel as follows:

Tim:

I believe that you may be confusing Dr. Parsi' prior sworn testimony. I refer you to Vol. III (May 11, 2011), pp. 133:2-137:21, of the Parsi deposition transcript. There you asked Dr. Parsi about interview notes relating to his 2007 book "Treacherous Alliance," not his current book.

Before filing any Motion to Compel, please advise whether there is some place in Dr. Parsi's deposition where you asked him questions about his current book and any related interview notes. Otherwise, we will consider this matter resolved.

-Adrian

(*See* Attached Exhibit "E," September 26, 2011, Email from Adrian V. Nelson, II, Esquire.) On the second day of Dr. Parsi's deposition, the defendant did not ask any questions relating to Dr. Parsi's Unreleased Book, of which he was aware. (*See* Exhibit "A," ¶ 21.) Moreover, months later, on the third day of Dr. Parsi's deposition, in May 2011, the defendant did not focus upon Dr. Parsi's Unreleased Book. (*Id.*) Instead, in May 2011 the defendant focused upon Dr. Parsi's First Book, not his Unreleased Book. (*See* Attached Exhibit "F," Deposition of Dr. Trita Parsi, Vol. III, dated May 11, 2011, pp. 133:2-137:21.)

Contrary to the fantasy created by the defendant, the facts are that in 2010, Dr. Parsi received a fellowship from the prestigious Woodrow Wilson International Center for Scholars that provided support for his work toward writing the Unreleased Book. (*See* Exhibit "A", ¶ 21.) As a Woodrow Wilson fellow, Dr. Parsi did not begin his research on the Unreleased Book until May 2010. (*Id.* at ¶ 10.) He did not do any research for his Unreleased Book, including, but not limited to, conducting interviews with any government officials until May 2010. (*Id.*)

As further background, clearly the research associated with the Unreleased Book, which did not begin until May 2010, occurred after the parties agreed upon discovery cutoff in May

2009.   Defendant concedes these facts, and/or his lack of evidence to the contrary, as an "amazing coincidence." (Defendant's Motion to Compel, p. 7.)  Nonetheless, the defendant has presented no evidence that Dr. Parsi's research relating to his Unreleased Book need be produced given the parties supplementation agreement memorialized in the Court's March 29, 2011, Order.

Lastly, concerning research interviews that Dr. Parsi conducted in support of his Unreleased Book, the defendant has made a bald, misleading assertion that the mere attendance of Dr. Parsi and several purported Iranian government officials at the Pugwash meeting provides evidence that Dr. Parsi was conducting interviews for his Unreleased Book. (*See* Defendant's Motion to Compel, pp.6-7.)  However, to put it simply, the meetings in Europe sponsored by Pugwash that occurred in 2008, were not in any way the basis of Dr. Parsi's Unreleased Book and Dr. Parsi did not conduct any interviews during those conferences. (*See* Exhibit "A," ¶ 22.)

For the many reasons set forth below, the defendant is not entitled to the interview notes he is seeking relating to Dr. Parsi's Unreleased Book.

## II. ARGUMENT AND AUTHORITY

By email dated September 30, 2011, Plaintiffs outlined a plethora of objections to the defendant's claim that he is entitled to notes from interviews Dr. Parsi conducted beginning in May 2010 with various governmental officials.[4]

_____

[4] Without waiving any objections and privileges previously asserted, the fuss that Defendant has made relating to Dr. Parsi's notes from interviews with governmental officials for his Unreleased Book relates to two (2) interviews conducted with officials with the Iranian regime. (*See* Exhibit "A," ¶ 23.)  None of the interviews conducted were of persons living in Iran at the time the interview was conducted. (*Id.*)  Furthermore, the remaining interviews are with officials and non-officials from the US, EU and other states. (*Id.*)

**A. Plaintiffs Generally Object to Defendant's Document Request**

Plaintiffs continue to reaffirm their general objections to Defendant's Document Request No. 3 – which sought documents relating to any communications with ANY person living in Iran, as well as ANY past or present Iranian government official – on the grounds that said document request is overly broad and vague.  It is clear that Document Request No. 3 is overly broad and vague as it would appear to require Dr. Parsi to produce even personal communications with friends and relatives living in Iran, which communications are wholly irrelevant and unrelated to the claims and defenses at issue in this case.

**B. Plaintiffs Additionally Object to Defendant's Document Request**

Further, Plaintiffs advised the defendant that they were reaffirming their original objections to Defendant's Document Request No. 3, including that providing any existing interview notes would:

1.  Result in the disclosure of confidential information;

2.  Cause Plaintiffs injury;

3.  Involve confidential business information;

4.  Result in an invasion of privacy to Plaintiff; and

5.  Result in an invasion of privacy to third parties.

Dr. Parsi is the author of a book on the Obama administration's policies relating to Iran, the Unreleased Book.  (*See* Exhibit "A," ¶ 10.)  In order for Dr. Parsi to obtain the candid views of persons providing facts and opinions regarding the Obama administration's policies relating to Iran, Dr. Parsi had to agree that he would keep confidential the names of his book sources, to ensure that the facts and opinions they provided would not result in any form of retribution, be it by the Iranian regime or others, including the U.S. government.  (*See* Exhibit "A," ¶¶ 12-17.)

This request for anonymity was not only made by officials of the Iranian Regime but also by U.S. officials. (*Id.*)

If Dr. Parsi is ordered to disclose the names of his book sources, he will be injured as no future persons with sensitive facts and opinions will be willing to provide such information to him out of fear of some unauthorized disclosure.[5] (*See* Exhibit "A," ¶ 18.) As is more fully set forth in Plaintiffs' Oppositions to Defendant's Omnibus Motion for Sanctions and Motion for Summary Judgment, it bears repeating that the defendant has clearly stated his intention to destroy Dr. Parsi, the ultimate injury.[6] (*See also* Exhibit "A," ¶¶ 24-27.) Of less concern is the financial injury that will also result to Dr. Parsi if he cannot write future books predicated on confidential sources.

Dr. Parsi's book, in addition to being a scholarly work, is also a financial enterprise. The names of Dr. Parsi's sources therefore constitute confidential business information, no different than the secret ingredients a manufacturer guards as it relates to the product it makes.

Both Dr. Parsi and the his confidential sources are entitled to have their privacy rights guarded, especially when the desired invasion – the disclosure of post May 2010 interview notes – is irrelevant to the defamatory nature of the defendant's statements and writings in 2007 and 2008, which are at issue in this case.

---

[5]In *Zerilli v. Smith*, *supra.*, the court noted that "Unless potential sources are confident that compelled disclosure is unlikely, they will be reluctant to disclose any confidential information to reporters." *Id.* at 712.

[6]Although set out more fully in Plaintiffs' Opposition to Defendant's Motion for Summary Judgment, it bears repeating that Defendant has relied on discovery throughout this litigation to continue to attack the Plaintiffs publicly, by continuing to write defamatory articles as well as appearing on several news shows and making additional defamatory statements. (*See* Pls.' Opp. to Mot. Summ. J. at 40-41; *see e.g.* http://www.youtube.com/watch?v=TuYaYuR_AAU&feature=share, last visited November 16, 2011, cert. translation Attached as Exhibit "G," pp. 1:15-2:10, 4:1-6 (Interview in which Defendant states that through the discovery process, he found out Dr. Parsi is receiving funds from the CIA, although uncertain as to exact amount, and alleges that Dr. Parsi is a double agent).) Defendant is simply seeking another tool to use in his quest to destroy Plaintiffs.

**C.  Plaintiffs Object to Defendant's Document Request Based Upon *Zerilli*.**

Further, Plaintiffs maintain that the interview notes being compelled are clearly privileged pursuant to *Zerilli v. Smith*, 656 F.2d 705 (C.A.D.C., 1981).   In *Zerilli*, the court reaffirmed the First Amendment constitutional importance of protecting reporters:

> Compelling a reporter to disclose the identity of a confidential source raises obvious First Amendment problems. The First Amendment guarantees a free press primarily because of the important role it can play as "a vital source of public information." *Grosjean v. American Press Co.,* 297 U.S. 233, 250, 56 S.Ct. 444, 80 L.Ed. 660 (1936). "The press was protected so that it could bare the secrets of government and inform the people." *New York Times Co. v. United States,* 403 U.S. 713, 717, 91 S.Ct. 2140, 2143, 29 L.Ed.2d 822 (1971) (Black, J., concurring). Without an unfettered press, citizens would be far less able to make informed political, social, and economic choices. But the press' function as a vital source of information is weakened whenever the ability of journalists to gather news is impaired.[39] Compelling a reporter to disclose the identity of a source may significantly interfere with this news gathering ability; journalists frequently depend on informants to gather

*Id*. at 710-711.

As the law developed regarding a journalist's privilege, the court held that such privilege should be readily available in civil cases.  *Id*. at 712; *citing Carey v. Hume,* 492 F.2d 631, 636 (D.C. Cir.), *cert. dismissed,* 417 U.S. 938 (1974).  Most importantly, the court in *Zerilli* was reluctant to override the journalist's privilege except where a refusal to compel such confidential source information would effectively shield a journalist-defendant from liability in a defamation action.  *Id.* at 713-14.

First, defendant summarily dismisses the relevance of *Zerilli* in this instance based upon his implied view that Dr. Parsi is not a journalist.  Dr. Parsi's First Book and Unreleased Book undercut the defendant's summary claim that Dr. Parsi is not a journalist simply because he is a scholarly journalist unlike the defendant.

Further, Dr. Parsi is not a journalist-defendant seeking to shield himself from liability in a libel action. The defendant misreads *Zerilli* as not being available where the journalist is a party in the case in which disclosure is sought. Rather, the distinction is whether the journalist is a party who is seeking to avoid liability by refusing disclosure.

Additionally, Dr. Parsi has confirmed that his sources were promised anonymity or that their interviews, or parts thereof, were "on background only." (*See* Exhibit "A," ¶¶ 12-17.) The defendant is flatly wrong when he claims that Dr. Parsi has disclosed the names of his sources. This argument is nonsensical since the defendant cannot claim to know the names of the sources of the very notes he has yet to receive or review. Moreover, Dr. Parsi never revealed the name of any sources during his deposition or in any other manner. (*Id.* at ¶ 21.) This claim by the defendant is simply an effort to muddy the water since the defendant failed to ask Dr. Parsi any specifics regarding his Unreleased Book on any of the three days of his deposition, as has been set forth above. (*Id.*) Dr. Parsi also did not volunteer this information on any day of his deposition. (*Id.*)

Lastly, Dr. Parsi's interview notes relating to the Obama administration's U.S.-Iran policy between 2009 and mid-2011 does not "go to the heart" of Dr. Parsi's claim that the defendant's writings defamed him in 2007 and 2008, including their continuing effect.

### D. Defendant Has Waived of Any Right to the Requested Interview Notes

Plaintiffs contend that the defendant has waived any claims to the requested interview notes as he was aware of this book during Dr. Parsi' deposition and elected not to ask any questions about it and/or request any information pertaining thereto. On the first day of Dr. Parsi's deposition, the defendant became aware that Dr. Parsi was working on his Unreleased Book. (*See* Exhibit "A," ¶ 21.) In fact, on December 2, 2010, on the very first day of Dr. Parsi's

deposition, under examination from Defendant's counsel, Dr. Parsi testified to the fact that he was a fellow with the Woodrow Wilson Center to write his currently Unreleased Book on U.S.-Iran relations. (*See* Exhibit "D," pp. 249:18-250:4; *see also* Exhibit "A," ¶ 21.)   Despite this knowledge, on the second day of Dr. Parsi's deposition, the defendant clearly made a tactical decision not to ask any questions relating to Dr. Parsi's Unreleased Book. (*See* Exhibit "A," ¶ 21.)   Moreover, months later, on the third day of Dr. Parsi's deposition, in May 2011, the defendant did not focus upon Dr. Parsi's Unreleased Book. (*Id*.)   Instead, in May 2011 the defendant focused upon Dr. Parsi's First Book, not his Unreleased Book. (*See* Exhibit "F," pp. 133:2-137:21.)

Additionally, the research associated with the Unreleased Book, which did not begin until May 2010, occurred after the parties agreed upon discovery cutoff in May 2009.   Defendant concedes these facts, and/or his lack of evidence to the contrary, as an "amazing coincidence." (Defendant's Motion to Compel, p. 7.)   Nonetheless, the defendant has presented no evidence that Dr. Parsi's research relating to his Unreleased Book need be produced given the parties' supplementation agreement memorialized in the Court's March 29, 2011, Order.   Plaintiffs' have adhered to this Agreement and have not requested discovery past the discovery cut-off date.   However, the defendant is seeking to re-open discovery in order to request information that was not even in existence until, at the earliest, May 2010.   Defendant has continued to write defamatory articles and has made numerous defamatory statements in interviews, all post May 2009, and further, has used material obtained in discovery to continue to harm and harass Plaintiffs. (*See* Pls.' Opp. to Mot. Summ. J. at 40-41; *see also* Exhibit "G.")   If Defendant is seeking to now request additional discovery material past the agreed upon discovery supplementation date of May 2009, then Plaintiffs should be permitted to do the same.

## IV. CONCLUSION

Accordingly, for each of the reasons set forth above, Defendant's Motion to Compel Documents Concerning Meetings with Iranian Government Officials should be denied.

Respectfully submitted,

_____ /S/ _____

A.P. Pishevar (D.C. Bar No. 451015)
Adrian V. Nelson, II (*Pro Hac Vice*)
**PISHEVAR & ASSOCIATES, P.C.**
600 East Jefferson Street, Suite 316
Rockville, MD 20852
Phone: (301) 279 – 8773
Fax:     (301) 279 – 7347
Counsel for the Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| TRITA PARSI, et al. | ) |
|  | ) |
|  | ) |
| Plaintiffs, | ) |
|  | ) |
| v. | ) **Civil Action No. 08 CV 00705 (JDB)** |
|  | ) |
| DAIOLESLAM SEID HASSAN, | ) |
|  | ) |
| Defendant. | ) |

### CERTIFICATE OF SERVICE

I certify that on November 16, 2011, I served, via email, Plaintiffs' Opposition to Defendant's Motion to Compel to:

Timothy E. Kapshandy, Esquire
Peter G. Jensen, Esquire
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000
tkapshandy@sidley.com

Attorneys for Defendant
Seid Hassan Daioleslam


_____/s/_____
Afshin Pishevar
Adrian Nelson
600 East Jefferson Street
Suite 316
Rockville, Maryland 20852
(301) 279-8773
ap@pishevarlegal.com
anelson@pishevarlegal.com


Attorneys for Plaintiff
Trita Parsi
National Iranian American Council