# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| TRITA PARSI and NATIONAL IRANIAN AMERICAN COUNCIL, Plaintiffs, v. DAIOLESLAM SEID HASSAN Defendant. | Civil Action No. 08-705 (JDB) |

## PLAINTIFFS' SURREPLY IN OPPOSITION
## TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

COME NOW, Plaintiffs, Dr. Trita Parsi and the National Iranian American Council ("NIAC") (collectively "NIAC"), by and through their counsel, Afshin Pishevar, Esquire, Adrian V. Nelson, II, Esquire, and Pishevar & Associates, P.C., and pursuant to leave of court granted for Plaintiffs' to file the instant Surreply in Opposition to Defendant's Motion for Summary Judgment, and briefly state as follows:

### I.  SURREPLY ARGUMENTS

**A.    DEFENDANT HAS MADE NEW ASSERTIONS REGARDING THE LACK OF EVIDENCE OF DEFENDANT'S ACTUAL MALICE.**

Probably for strategic purposes, Defendant waited until he filed his Reply in support of his Motion for Summary Judgment to focus upon his claim that Plaintiffs purportedly cannot demonstrate, by clear and convincing evidence, that Defendant published his articles with actual malice.  Defendant devotes fifteen pages, the majority of his Reply, in support of his sole Reply argument – that Plaintiffs cannot demonstrate

evidence of actual malice. Defendant essentially used the opportunity to file a Reply to shift the focus of his Motion for Summary Judgment.[1]

Notwithstanding the foregoing, there is strong evidence of defendant's actual malice in the record, which evidence constitutes disputed genuine issues of material fact. First, in their Opposition Plaintiffs have already raised clear evidence of Defendant's actual malice toward Dr. Parsi and NIAC, including, but not limited to: 1) his stated intent to "destroy" Dr. Parsi and NIAC; 2) his connections to the MEK/MKO; and 3) his willful disregard for journalistic standards.[2]  (*See* Plaintiffs' Opposition to Defendant's Motion for Summary Judgment, pp. 39-42.)

Additionally, Plaintiffs' journalism expert Dr. Debashis Aikat provided an opinion regarding whether, and to what extent, there is evidence of the defendant's "willful blindness" in the writings of the defendant as it relates to assertions against the Plaintiffs.  Dr. Aikat concluded the following:

> In the attempt to address controversial matters of public interests, several of the Defendant's writings provide definitive statements that are not supported or substantiated by adequate evidence.   Such writings

---

[1]Unlike Defendant's Reply, Defendant's Motion for Summary Judgment ("Motion") devoted only four pages to the issue of actual malice, with most of those pages devoted to reciting the legal standard.  In fact, of the 49 material facts listed by the defendant only two relate to the issue of actual malice.  Defendant's original Motion barely addressed actual malice.  In fact, Defendant cited only to his Affidavit and his deposition transcript in support of his claim that Plaintiffs cannot demonstrate actual malice.  Despite Defendant's glancing treatment of the issue of actual malice in his original Motion, Defendant shifts gears in his Reply and focuses solely on actual malice, while completely ignoring the bulk of his own original motion arguments that focused upon the alleged truth of his defamatory claims.

[2]Journalism expert Dr. Debashis Aikat set forth the general standard of care for a journalist, such as the defendant, as well as evidence of Defendant's deviation from that standard of care, including, but not limited to, the defendant's failure to give Plaintiffs' an opportunity to respond to his assertions against them.  (*See supra.* Exhibit "A-1," pp. 3-5 and 7.)

> compromise integrity and disrupt the credibility of the Plaintffs in the mind of the reading public.  For good reason, the reading public cannot distinguish the difference between misrepresented context and truth.
>
> In the absence of properly substantiated facts, several writings of the Defendant, seem to misrepresent issues and context.  For instance, the Defendant critiques the Plaintiff's professional identity and standing with unsubstantiated allegations.  A significant number of articles highlights events, actions, and "evidence" that are out context and, therefore, misleading to the reader.
>
> The Defendant's writings  . . . make no mention of efforts or requests, if any, to provide a fair and reasonable opportunity for the Plaintiffs to respond to allegations of wrongdoing, if any.

(*See* Attached Exhibit "A-1," Expert Report of Dr. Debashis Aikat, p. 6.)   Clearly, Dr. Aikat concluded that there was evidence that the defendant often misrepresents and/or fails to support many of the assertions he makes in his publications.

By way of example, a careful review of just one of the defendant's publications, for the sake of brevity, provides clear indicia of his actual malice toward Plaintiffs, which is evident given the number of misrepresentations, unsupported statements, and even falsifications the defendant makes.  In his publication entitled *Iran's 2003 Grand Bargain Offer: Secrets, Lies, and Manipulation*, ("*Iran's Grand Bargain Offer*") the defendant argues that Dr. Parsi, as an agent of the Iranian regime, played a role in the so-called 2003 "grand bargain" – an offer from Iran to the United States that the two countries co-exist.  (*See* Attached Exhibit "A-2," *Iran's Grand Bargain Offer, Secrets, Lies, and Manipulation*)

Below is a summary of the systematic manner in which the defendant, in his *Iran's 2003 Grand Bargain Offer* publication, mischaracterizes information to support the thrust of his malicious publication:

- The block quote relating to endnote five has been mischaracterized in several ways. (*See* Exhibit A-2, n. 5.)

  o First, with regard to the end of the sentence that begins "In May 2003," the defendant omits 8 questions as well as a commercial break to give the impression that what follows the "…" is related to what precedes it.

  o Also, the sentence that begins "And the argument by," is from earlier in the interview than were the text is asserted in the block quote.

  o Additionally, the quote that ends "argued that it could not negotiate …" is a response to something asked two questions later.

- In the section of the publication entitled "Role of Bob Ney and Trita Parsi in the 'Grand Bargain,'" the defendant has a block quote that begins "Kharazi told me," however the quote is unsupported by any source.

- Several paragraphs later in the same section of his publication, the defendant asks the question: "Why did Iran decide to ask Bob Ney and Trita Parsi to 'manage the issue' (as Parsi stated) and send the proposal to the White House?" This statement completely contradicts the defendant's own previous source, endnote 8, *The Huffington Post*, http://www.huffingtonpost.com/steve-clemons/what-did-rove-do-with-200_b_41472.html, which says that it was the Swiss Ambassador, not Iran, that chose to approach Ney and ask him to carry the proposal.[3] This demonstrates an intentional misrepresentation by the defendant of his own source.

- The section headed "Grand bargain or buying time?" has several source issues.

  o First, endnote 13 fails to provide a link to the cited source.

  o Second, endnote 14 is a Farsi source that is not translated.

  o Third, the defendant cites to a February 2, 2007, article in *Etemad* newspaper but fails to provide a link to the entire source or an English translation.

  o Fourth, endnote 15 is a Farsi source that is not translated.

---

[3]In fact, Bob Ney was chosen by the Swiss Ambassador in Tehran to carry the Iranian proposal to the White House because he knew the Ohio Congressman to be the only Farsi-speaking member of Congress and one who was particularly interested in Iran. (*See* http://www.huffingtonpost.com/steve-clemons/what-did-rove-do-with-200_b_41472.html)

- o   Fifth, endnote 16 is a Farsi source that is not translated.

- o   Sixth, endnote 17 is a Farsi source and there is no link available.

- In the final section of his publication entitled "The 2003 Offer Was Part of a Broader Misinformation Campaign" the defendant uses misinformation himself.

  - o   Two sentences prior to endnote 8, the defendant states: "Then, the Iranian regime gave a fresh copy of the offer to Trita Parsi." Since the defendant does not have a source for his claim, at most he should have said that Trita Parsi "obtained a copy of the offer." However, the defendant's nefarious goal is to tie Dr. Parsi to the Iranian regime absent any proof.

  - o   Further, later in this section the defendant states that in a 1999 joint paper, Dr. Parsi and Siamak Namazi set forth their strategy to "beat up" the U.S. administration as a way to prevent harsh policy toward the Iranian regime. The defendant is saying that NIAC was created to bash U.S. policy, while the quote that immediately follows, which begins "An Iranian-American lobby is need," is saying a very different thing - that an Iranian-American lobby is needed to prevent bashing of Iran.

  - o   Moreover, in endnote 19 and 22 the defendant cites to his own article as a source in both instances.

  - o   Also, the source that supports endnote 20 is missing.

  - o   The source for endnote 23 is simply an event website

  - o   Lastly, with regard to the defendant's final sentence, "The 2003 grand bargain could only be viewed as a part of the Iranian regime's unofficial diplomacy, in harmony with its general foreign policy," he makes this statement without having explained, in the preceding five paragraphs, why or how Dr. Parsi is the key to understanding the 2003 grand bargain. His malice toward Dr. Parsi and NIAC is the reason he can make such an unsubstantiated claim – the main point of his piece – without providing a scintilla of evidence that supports his primary assertion.

Plaintiffs must be permitted to present the jury with the opportunity to present the rest of Defendant's publication, in equal detail, to demonstrate that the mischaracterizations, misrepresentations, bald assertions, falsifications, and unsourced statements, cannot be

dismissed as mere mistakes but are a part of a "systematic" effort by the defendant to "destroy" Plaintiffs, which efforts demonstrate actual malice.

Coupled, with Dr. Aikat's finding, and the above micro-analysis of only one of the defendant's publications, is the finding of Retired U.S. Air Force Colonel Samuel Gardiner that in his publications the defendant uses a technique that was employed by the late Senator Joseph McCarthy – attack an opposition leader rather than the leader's positions. (*See* Attached Exhibit "A-3," Expert Report of Colonel Samuel Gardiner, p. 8.)  Colonel Gardiner writes:

> In the fields of strategic communications and information operations, a very often and successfully used technique is to attack the opposition individuals rather than their positions . . . Part of this often includes attacking their patriotism or associating them with evil foreigners.
>
> Senator Joe McCarthy used this technique of personal attack to influence opinion in his investigation of Communism in the United States.  If the individuals held positions that appeared to parallel the Communist Party, the individuals were labeled as agents of the Soviet Union.
>
> \*\*\*
>
> Mr. Daioleslam has been using the same technique by attacking Trita Parsi and NIAC.
>
> \*\*\*
>
> Mr. Daioleslam's defamatory statements are not verifiable.  The evidence is that his statements are not true, and the evidence is that he made the defamatory statements even when he clearly had contradictory information.

(Exhibit "A-3," pp. 8-9.)  For sake of brevity, Plaintiffs' refer the Court to pp. 9-14 of Colonel Gardiner's expert report wherein he provides a detailed analysis of Mr. Daioleslam's false and intentionally malicious statements regarding his major

defamatory theme – that Dr. Parsi and NIAC are lobbyists for the government of Iran.  (*See* Exhibit "A-3," pp. 9-14.)

Without a doubt, there is ample evidence of the defendant's actual malice in his writings toward Dr. Parsi and NIAC.

## B.   DEFENDANT HAS MISREPRESENTED PLAINTIFFS' OPPOSITION TO HIS STATEMENT OF SO-CALLED "MATERIAL FACTS."

In his Motion for Summary Judgment, the defendant identified 49 so-called "material facts."  Under Federal Rules of Civil Procedure, Rule 56(c), the defendant had a duty to establish, among other things, that "there is no genuine issue as to any <u>material fact</u> …"  Most of the "facts" included in the Defendant's Material Statement of Facts were not "material facts" and they did not disprove the existence of  the disputed "genuine issue" in this case – the defamatory nature of the defendant's publications.

In fact, the so-called "material facts" that Plaintiffs did not dispute were in actuality non-material facts, including Facts Numbers 1-9, and 12, 13, 20, 21, 23, 25, 27, 29, 30, 33, 34, 35, 42-44, 47a, b, d, e, f, h, i, and k – p.  These alleged undisputed "material facts" simply amount to party background information, restatements of the plaintiffs' claims in their Complaint, legal conclusions, and misrepresentations of documents that speak for themselves and have been taken out of context.  In many instances, Plaintiffs did not dispute the existence of the articles relied upon by the defendant, but rather Plaintiffs disputed the propositions for which the defendant contends said articles stand.

## II. CONCLUSION

For the reasons set forth in both Plaintiffs' Opposition to Defendant's Motion for Summary Judgment, as well as in the instant Surreply, Defendant has failed to demonstrate that he is entitled to Summary Judgment.  At the very least, there is clearly a dispute between the defendant and Plaintiffs, supported by the impartial views of experts Dr. Aikat and Colonel Gardiner, as to Defendant's actual malice.

Respectfully submitted,

_____/S/_____
A.P. Pishevar (D.C. Bar No. 451015)
Adrian V. Nelson, II (*Pro Hac Vice*)
**PISHEVAR & ASSOCIATES, P.C.**
600 East Jefferson Street, Suite 316
Rockville, MD 20852
Phone: (301) 279 – 8773
Fax:    (301) 279 – 7347
Counsel for the Plaintiffs

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **TRITA PARSI, et al.** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) **Civil Action No. 08 CV 00705 (JDB)** |
| | ) |
| **DAIOLESLAM SEID HASSAN,** | ) |
| | ) |
| **Defendant.** | ) |

---

**CERTIFICATE OF SERVICE**

I certify that on November 23, 2011, I served, via email, Plaintiffs' Surreply in Opposition to Defendant's Motion For Summary Judgment to:

> Timothy E. Kapshandy, Esquire
> Peter G. Jensen, Esquire
> SIDLEY AUSTIN LLP
> 1501 K Street, N.W.
> Washington, D.C. 20005
> (202) 736-8000
> tkapshandy@sidley.com
>
> Attorneys for Defendant
> Seid Hassan Daioleslam

> _____/s/_____
> Afshin Pishevar
> Adrian Nelson
> 600 East Jefferson Street
> Suite 316
> Rockville, Maryland 20852
> (301) 279-8773
> ap@pishevarlegal.com
> anelson@pishevarlegal.com

> Attorneys for Plaintiff
> Trita Parsi
> National Iranian American Council

- 9 -