IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **TRITA PARSI** <br><br> and <br><br> **NATIONAL IRANIAN AMERICAN COUNCIL** <br><br> Plaintiffs, <br><br> v. <br><br> **DAIOLESLAM SEID HASSAN,** <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) **Civil No. 08 CV 00705 (JDB)** ) ) ) ) ) ) ) |

DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION TO COMPEL
PRODUCTION OF DOCUMENTS
<u>CONCERNING MEETINGS WITH IRANIAN GOVERNMENTAL OFFICIALS</u>

      Defendant Seid Hassan Daioleslam ("Daioleslam") hereby files this reply in support of his motion for an order from this Court pursuant to Federal Rule of Civil Procedure 37 compelling Plaintiffs to produce all documents and notes relating to Trita Parsi's ("Parsi") meetings with Iranian governmental officials.

## BACKGROUND

In Plaintiffs' Response ("Response") to Defendant's motion to compel, Plaintiffs divide their reasons for not producing any of the requested documents relating to meetings with Iranian officials into three time periods: 2007 and earlier, 2008-2009, and 2010-present. Generally, the reasons for withholding these are as follows:

> Before 2008:  Parsi produced no documents or notes relating to meetings discussed in hundreds of notes to his first book arguing that this was before the litigation hold (Ex. B to Def's Motion).  Parsi had no recollection of where he kept these notes or when he got rid of them; he just knew he no longer had them.  (*Id*.).  Apparently, knowing that his second book refers to some of these meetings, Parsi now presents an anticipatory explanation in his affidavit: "I also want to make abundantly clear that to the extent in my Unreleased Book I cite to sources in my First Book, the First Book, itself, [sic] is the source and not any underlying notes since I no longer have any interview notes from my First Book." (Parsi Affid., Para. 20, Ex. A to Response).
>
> 2008-2009:  While Parsi admitted to numerous meetings with Iranian officials during this time period after suit was instituted, he does not admit to having discarded any documents or notes from this period.  Nor, does he deny that any exist.  Rather, he claims that these were not "interviews" and  none of these meetings were used in his second book due out in the next few weeks.  (Parsi Affid., Para. 22, Ex. A to Response).  Of course, Defendant's Rule 34 requests (Ex. A to Def's Motion) were not so limited.  They requested all documents relating to communications with Iranian officials.
>
> 2010-2011:  Parsi admits to having some notes relating to meetings with Iranian officials (although he asserts that they were not in Iran at the time as if that somehow affects the scope of the discovery request).   (See Parsi Affid., Para. 23,  Ex. A to Response).  Without ever having created a privilege log for these materials, Parsi withheld these as privileged under *Zerilli v. Smith*, 656 F.2d 705 (D.C. Cir. 1981), and further refuses to produce these for a number of reasons including privacy, proprietary interests, some sort of confidentiality claim, and vague assertions of "injury." (Response, p. 6).  He also attested that "No research, including, but not limited to, interviews with governmental officials, was done for the Unreleased Book prior to May 2010."  (Parsi Affid., Para. 11, Response Ex. A).

Tellingly, Parsi's Response is limited to "interview notes."  While Defendant's Rule 34 requests called for all documents relating to his meetings with Iranian officials, Parsi ignores those other than to dismissively state that the requests are "overly broad and vague" and

"would appear to require Dr. Parsi to produce even personal communications with friends and relatives living in Iran." (Response, p. 6). Defendant's motion concerns all documents related to these meetings, not merely "interview" notes.

Parsi also makes no mention of summaries or renditions of those meetings that authors typically keep in order to accurately manage thousand of facts for a book of hundreds of pages. Parsi's citation to some of the discarded pre-2008 meetings in his new book is an interesting dance. While he was unable at his deposition to even recall where he kept these notes or when he got rid of them, he apparently is now able to recall them in such detail so as to be able to accurately recount them in a scholarly book. Since Parsi is able to recount such in sufficient detail, Defendant requests that Parsi be required to produce a list of the pre-2008 meetings reflecting the date, the Iranian official, the location, the purpose of the meeting, who paid for his or the official's transportation, the nature of the meeting, and the names of others present or participating.

Defendant accordingly renews his original request for an order to compel Parsi and NIAC to produce any documents relating in any way to any meetings or communications between Parsi and any Iranian officials.

## ARGUMENT

Rather than providing the Court copies of the footnotes to his new book that could have confirmed Parsi's affidavit, he chose to withhold such. A prepublication copy of Parsi's new book just obtained last week by Defendant belies Parsi's claims. (Selected notes to *A Single Role of the Dice* attached as Ex. A). Contrary to his affidavit (Para. 20), Parsi does cite in his new book discussions with Iranian officials in 2009. (*See* Ex. A. p. 249, note 26; p.

3

253, note 33; p. 255, note 16). The latter of these includes multiple communications: "Conversations with individuals close to Mousavi and former president Khatami throughout the summer and fall of 2009." (*Id.*). Why were none of the materials related to these conversations produced? These conversations transpired before May 2010 when Parsi claims he began research for his book. These were after Parsi's laptop was stolen in Norway so the notes could not have disappeared with that laptop. Note 33 on page 253 is also interesting: "Interview with campaign worker at Mousavi's headquarters July 28, 2009." Parsi's calendar produced in May 2010 is essentially blank for two weeks from July 21, 2009 until August 3, 2009 (when his flies to London and back the next day).[1] NIAC bank records do reflect a number of transactions during this period, however, including:

> July 22, 2009   $2712.47 was wired by NIAC out of the country
> 
> July 31, 2009   NIAC reimbursed Parsi over $1300 for some sort of expenses

(Copies attached as Ex. B). Why were no documents produced relating to the discussions with Mousavi campaign workers during this period when his calendar is blank? Why does he fly to London for one day? Who is incurring the out of country expenses (and charging NIAC for them)? As for pre-2008 discussions, contrary to Parsi's affidavit, the citations are not to his first book but rather directly to the conversations:

> 16. Interview with Ali Reza Alavi Tabar, Tehran, August 21, 2004; Interview with former Deputy Foreign Minister Abbas Maleki, Tehran, August 1, 2004; Interview with former Iranian official, Tehran, August 2004.

---

[1] There was an entry entered by David Elliott for July 24 "Meeting with Emirati Diplomats" and another dated July 29 entered by Kevin Cowl for a number of NIAC staffers: "Meeting on Grass Roots Multiplier."

(*See* Ex. A, p. 243, note 16).  As for discussions with Iranian officials from 2010-2011 cited in the footnotes, many, if most most, of these are not anonymous sources.  (*See* Ex. A).

Plaintiffs' assertion of the reporter's privilege under *Zerilli v. Smith* is not applicable here.  The burden is on Plaintiffs to show that they are entitled to application of the reporter's privilege, which—along with all constitutional privileges—are to be narrowly construed and are generally disfavored.  *United States v. Nixon*, 418 U.S. 683, 710 (1974) (constitutional privileges are "exceptions to the demand for every man's evidence [and] are not lightly created nor expansively construed, for they are in derogation of the search for truth"); *von Burlow v. von Burlow*, 811 F.2d 136, 144 (2nd Cir. 1987) (the party claiming the privilege bears the burden of proving the privilege's application).  Plaintiffs have failed to meet that burden.

First and foremost, Parsi is not a "journalist," at least not the type of journalist who is entitled to the privilege.[2]  Courts that have examined which persons are "journalists" for purposes of application of the privilege have defined the term narrowly.  The "journalist's privilege was designed not to protect a particular journalist, but 'the activity of investigative reporting more generally,'" *Madden Titan Sports, Inc. v. Turner Broad. Sys., Inc.*, 151 F.3d 125, 129 (3d Cir. 1998) (quoting *Shoen v. Shoen*, 5 F.3d 1289, 1293 (9th Cir. 1993)), and is limited in its application to "persons engaged in the process of 'investigative reporting' or 'news gathering.'" *Madden*, 151 F.3d at 130 (quoting *von Burlow*, 811 F.2d at 144).  The Third Circuit has adopted a three-fold test for determining application of the privilege:

---

[2]  In Parsi's Affidavit, he states that his "articles" have appeared in several publications and that he was a guest columnist for the Inter Press News service.  (Parsi Affid., Para. 6-7, Response Ex. A)  Parsi does not provide citations to those articles.  Of the ones that Defendant was able to locate, none were "news" articles.  Rather, they were opinion or scholarly pieces.

5

"journalists" must be "1) engaged in investigative reporting; 2) gathering news; *and* 3) possess the intent at the inception of the newsgathering process to disseminate this news to the public." *Madden*, 151 F.3d at 131 (emphasis added). By definition, "scholarly journalis[ism]," (Parsi Affid., Para. 8, Response Ex. A), would not apply. Plaintiffs have proffered no cases where a "scholarly journalist" was entitled to the privilege and Defendant is aware of none. Scholarly work is and should be different from reporting the news as the hallmark of scholarly work is it reproducibility; accordingly, scholarly work cannot be based upon confidential information not subject to peer review. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589-95 (1993) (scholarly work must have been a subject of peer review). Even traditional journalists, if they are writing a piece that is not merely reporting news, are not entitled to the privilege. Linda L. Berger, *Shielding the Unmedia: Using the Process of Journalism to Protect the Journalist's Privilege in an Infinite Universe of Publication*, 39 Hous. L. Rev. 1371, 1395-96 (2003) ("Recognizing that journalists are not always engaged in journalism, . . . cases have withheld the journalist's privilege from traditional reporters who were not engaged in what the court considered to be the traditional journalism function, but instead were engaged in lobbying or political activism."). Because he was not engaged in investigative reporting or gathering news, Parsi is not a "journalist" for purposes of the reporter's privilege.

Additionally, as *Zerilli* makes clear, the privilege is greatly diminished when the reporter is a party. *Zerilli v. Smith*, 656 F.2d 705, 714 (D.C. Cir. 1981). Plaintiffs attempt to dismiss this problem by asserting that *Zerilli* is really saying the touch-point is whether the reporter is attempting to avoid liability by refusing disclosure. (Response, p. 9). But *Zerilli* makes no such distinction. Rather, *Zerilli's* bias against application of the privilege to

6

journalists who are a party is because party-journalists have "skin in the game," as opposed to non-party journalists whose only interest in the matter is protection of their sources. Whether the journalist is the party bringing suit or defending against the suit is immaterial. *Anderson v. Nixon*, 444 F. Supp. 1195 (D.D.C. 1978) (denying application of the privilege where reporter was plaintiff).

Even if Plaintiffs were able to show that the privilege applied, their claim must fail because it does not pass the *Zerilli* test. Plaintiffs argument that the substance of Parsi's conversations with Iranian government officials does not "go to the heart of the case" is textbook *ipse dixit.* (Response, p. 9). For materials to "go to the heart of the case," the case does not necessarily have to turn on that matter. As long as success would be difficult if a party is denied access to materials, *Zerilli's* "heart of the case" question is satisfied. *See Carey v. Hume*, 492 F.2d 631, 637 (D.C. Cir. 1974) (determining that the reporter's privilege did not apply in a libel case because, while it would be possible to succeed in showing actual malice without the identify of those parties, success was unlikely under those circumstances). Truth is often a defendant's primary defense in libel actions. In this case, the Defendant has determined that the truth of the matter asserted is one of his best defenses and Defendant has expended an enormous amount of time and resources in discovery pursing that defense. Access to the details of Parsi's meetings with Iranian officials is essential to that defense, and therefore those materials go to the heart of the case.

Defendant has satisfied the second prong of the *Zerilli* test by subpoenaing and deposing dozens of witnesses. Indeed, Plaintiffs do not even attempt to argue that Defendant has not satisfied this prong.

Additionally, two other factors weigh in favor of Defendant: 1) despite Parsi's Affidavit and Plaintiff's Response, many of the sources cited in his book are not confidential, and 2) Plaintiffs failed to disclose the existence of these materials, causing undue delay. As outlined above, Defendant has obtained an copy of Parsi's forthcoming book. The Notes are replete with the names of individuals he interviewed for the book, including former and current Iranian officials.[3] The fact that many of those sources are not confidential diminishes any privilege claim Plaintiff may have over the materials. "[W]here nonconidential information is at stake, the showing needed to overcome the . . . privilege is less demanding than for material acquired in confidence." *Gonzales v. NBC*, 194 F.3d 29, 30 (2d Cir. 1998). And, despite the fact that they produced a privilege log, Plaintiffs did not disclose the existence of these materials, even though they were withholding them based on a claim of privilege. The need to disclose the existence of responsive materials for which a party is withholding because of a privilege (particularly when the privilege claim is dubious) is essential to the administration of justice. A "pattern of evasion and stonewalling" by one party is a factor to be considered in determining whether the other party has exhausted reasonable alternative sources for the information. *Lee v. Depart. of Justice*, 413 F.3d 53, 57 (D.D.C. 2005). Plaintiffs' failure to disclose even the existence of these responsive materials has caused undue delay to these proceedings and cuts against application of the privilege.

Plaintiffs' claims of confidentiality, proprietary interest, injury, and invasion of privacy are also ill-founded. Plaintiffs provide no specifics and cite no case law to support

---

[3] *See, e.g.*, Interview with Ataollah Mohajerani (former Minister of Culture and Islamic Guidance), 19 September 2010, Ex. A. p. 245, note 10; Interview with Ambassador Khazaee (current Ambassador of Iran to the United Nations), Ex. A. p. 245, note 15; Interview with Javad Zarif (former Ambassador of Iran to the United Nations), Ex. A. p. 247, note 33.

their claims.[4]  Most importantly, they fail to explain why a confidentiality order would not suffice to protect any such claims.  Unlike privilege claims, claims of privacy or confidentiality or proprietary information do not render materials nondiscoverable.  Rather, these are typically handled with confidentiality orders.  Plaintiffs fail to address this but instead speculate that Defendant might write further defamatory articles with these discovery materials.  (Response, p. 7, fn 6).  However, courts have limited or no authority to anticipatorily ban articles that might be defamatory.  *See, e.g.*, *Leatherman v. Rangel*, 986 S.W. 2d 759, 763–64 (Tex. App. 1999) ("To the extent that a plaintiff seeks relief based upon facts that have not yet occurred, there is no live controversy between the parties . . . .  It would be improper for this Court to address an injury"—based on a claim of "anticipatory defamation"—"which has not yet occurred and which, in fact, may never occur.").  Plaintiffs have an adequate remedy at law if that occurs: damages.  In addition, their argument that Defendant might use the materials in violation of a confidentiality order also fails.  There are adequate remedies for this also (other than barring such discovery)—Defendant faces the risk of sanctions for the violation of such an order.

## CONCLUSION

For the foregoing reasons, Defendant requests this Court to compel Plaintiffs to produce all documents and notes relating to Parsi's meetings with any current or former officials of the government of Iran, including summaries and accounts rendered in drafts, proofs, and copies of his books and whether or not "interviews" or related to either of his

---

[4]  Some of the claims are scarcely credible.  For example, Parsi claims that the "names of [his] sources therefore constitute confidential business information, no different than the secret ingredients a manufacturer guards as it relates to the product it makes."  (Response, p. 7).  The names of public officials are nothing like a secret recipe.  By definition these names are public and if another author wants to talk to these officials, Parsi cannot prevent that.  Copyright laws adequately protect Parsi's renditions of those conversations.  No legal authorities protect the mere names of those officials as Parsi asserts.

9

books, as well as a list of all meetings with Iranian officials detailing: (1) the name of the officials and any participants; (2) the date and location; (3) the purpose of the meeting; (4) who paid for the attendance of Parsi and the official; (5) the purpose and nature of the meeting; (6) whether any documents or notes relating to the meeting ever existed; and (7) if such were not produced, the reasons for nonproduction.  Additionally, Defendant requests that the Court order Plaintiffs to pay for the costs and fees associated with the filing of this motion and all other just and proper relief.

                Respectfully submitted,

Dated: November 29, 2011          /s/ Timothy E. Kapshandy
                Timothy E. Kapshandy (Illinois Bar No.
                6180926, admitted *pro hac vice*)
                Bradford A. Berenson (D.C. Bar No. 441981)
                HL Rogers (D.C. Bar No. 974462)
                Peter G. Jensen (D.C. Bar No. 982599)
                SIDLEY AUSTIN LLP
                1501 K Street, N.W.
                Washington, D.C.  20005
                (202) 736-8000
                hrogers@sidley.com

                Attorneys for Defendant
                Seid Hassan Daioleslam

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TRITA PARSI** ) | |
| ) | |
| and ) | |
| ) | |
| **NATIONAL IRANIAN AMERICAN COUNCIL** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | **Civil No. 08 CV 00705 (JDB)** |
| ) | |
| **DAIOLESLAM SEID HASSAN,** ) | |
| ) | |
| **Defendant.** ) | |

PROPOSED ORDER

Upon consideration of Defendant Daioleslam's Motion to Compel Production of Documents Concerning Meetings with Iranian Governmental Officials, it is hereby:

ORDERED this ____ day of _____, 2011 that Defendant's motion to compel is GRANTED and Plaintiffs shall produce all documents relating to Parsi's meetings with any current or former officials of the government of Iran including summaries and accounts rendered in drafts, proofs and copies of his books and whether or not "interviews" or related to either of his books, as well as a list of all meetings with Iranian officials listing: (1) the name of the officials and any participants;  (2) the date and location: (3) the purpose of the meeting; (4) who paid for the attendance of Parsi and the official;  (5) the purpose and nature of the meeting; (6) whether any documents or notes relating to the meeting ever existed; and (7) if such were not

produced the reasons for nonproduction.  Plaintiffs shall also pay Defendant the costs of bringing this motion within seven days of Defendant's filing of a bill of costs.

    SO ORDERED.

                                                                                                    _____

                                                                                                   Judge John D. Bates
                                                                                                   United States District Judge

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **TRITA PARSI** | ) |
| and | ) |
| **NATIONAL IRANIAN AMERICAN COUNCIL** | ) |
| Plaintiffs, | ) |
| v. | ) Civil No. 08 CV 00705 (JDB) |
| **DAIOLESLAM SEID HASSAN,** | ) |
| Defendant. | ) |

## CERTIFICATE OF SERVICE

I certify that on November 29, 2011, I served, via email, Defendant's Motion to Compel Production of Documents Concerning Meetings with Iranian Governmental Officials:

> Afshin Pishevar
> Adrian Nelson II
> 600 East Jefferson Street
> Suite 316
> Rockville, Maryland 20852
> (301) 279-8773
> ap@pishevarlegal.com

| | |
|---|---|
| Dated: November 29, 2011 | */s/ Thomas Ross* |
| | Thomas E. Ross (D.C. Bar No. 994275) |
| | Timothy E. Kapshandy (Illinois Bar No. 6180926, admitted *pro hac vice*) |
| | Bradford A. Berenson (D.C. Bar No. 441981) |
| | HL Rogers (D.C. Bar No. 974462) |
| | Peter G. Jensen (D.C. Bar No. 982599) |
| | SIDLEY AUSTIN LLP |
| | 1501 K Street, N.W. |
| | Washington, D.C. 20005 |
| | (202) 736-8000 |
| | tom.ross@sidley.com |
| | |
| | Attorneys for Defendant |
| | Seid Hassan Daioleslam |