# EXHIBIT 1

**GFL ADVANTAGE FUND, LTD., A BRITISH VIRGIN ISLANDS CORP., Plaintiff,**
v.
**DOUGLAS R. COLKITT, Defendant.**
**Civil Action No. 02ms475 (ESH/JMF).**
**United States District Court, District of Columbia.**
**July 15, 2003.**
**MEMORANDUM OPINION**

JOHN FACCIOLA, District Magistrate Judge.

This case has been referred to me by Judge Huvelle for discovery disputes pursuant to LCvR 72.2(a). Currently ripe for resolution is defendant's <u>Motion To Stay Consideration Of Plaintiff's Motion To Compel Discovery From Womble, Carlyle, Sandridge, & Rice, P.L.L.C.</u>, plaintiff's <u>Motion To Compel Compliance With Subpoena Duces Tecum Served Upon Womble, Carlyle, Sandridge, & Rice, P.L.L.C.</u> and plaintiff's <u>Motion To Strike Sur-Reply In Opposition To Plaintiff's Motion To Compel.</u> For the reasons set forth herein, defendant's motion to stay will be denied. Furthermore, I will grant plaintiffs' motion to compel to compliance with its subpoena duces tecum served upon Womble, Carlyle, Sandridge, & Rice, P.L.L.C. Finally, plaintiff's motion to strike will be denied as moot.

## BACKGROUND

This action initially arises out of two loan transactions made between the defendant, Dr. Colkitt ("Colkitt"), and GFL Advantage Fund Limited ("GFL"). The first loan was for $3 million, which was to be repaid at a seven percent interest rate. <u>GFL Advantage Fund, Ltd. v. Colkitt</u>, 2000 U.S.Dist.LEXIS 21747, at * 7-8 (M.D. Fla. July 17, 2000). The second loan was for $10 million, which was to be repaid at a four percent interest rate. <u>Id.</u> For both loans, Colkitt was the sole borrower and both were unsecured. <u>Id.</u>, The only collateral provided for both loans were shares of stock in companies in which Colkitt was the majority shareholder and chairman of the board. <u>Id.</u> at * 9. In the months following the loan, however, the share price of these companies dropped precipitously. <u>Id.</u> at * 14. In 1997, GFL brought a lawsuit against Colkitt in the Middle District of Pennsylvania to recoup the amount of both loans in addition to the interest that had accrued on the two loans. Thereafter, on April 25, 2000, Judge McClure of the Middle District granted summary judgment in favor of GFL in excess of $21 million. <u>GFL Advantage Fund. Ltd. v. Colkitt</u>, 2000 U.S.Dist.LEXIS 21747, at * 1 (M.D. Pa. July 17, 2000). That decision was subsequently affirmed by the Third Circuit Court of Appeals. See <u>GFL Advantage Fund. Ltd. v. Colkitt, 272 F.3d 189 (3rd Cir. 2001)</u>, <i>cert denied,</i> 536 U.S. 923 (2002).

Three months after entry of judgment, GFL began tracking down Colkitt's assets in order to collect on the judgment. After a series of failed attempts at negotiating a resolution of the disputed discovery issues, GFL filed a motion to compel in the Middle District of Pennsylvania. On June 6, 2001, Judge McClure issued an order allowing GFL to seek information from Colkitt and his wife, limiting the scope of discovery to the period after January 1, 1999, and ordering GFL to seek less specific information about the categories of documents it sought. <u>Motion To Stay Consideration Of Plaintiff's Motion To Compel Discovery From Womble, Carlyle, Sandridge, & Rice, P.L.L.C.</u> ("D. Mot. Stay & Opp.") at 8, Exhibit 3.

Thereafter, GFL proceeded with discovery by issuing subpoenas in Florida, Pennsylvania, and the District of Columbia. In March 2002, this court issued a subpoena to Womble, Carlyle, Sandridge, & Rice, P.L.L.C. ("Womble Carlyle"). The subpoena seeks "[c]hecks(s), drafts(s), wire transfer advice(s), notice(s) and/or confirmation(s), debit notice(s), credit notice(s), and letters relating to any payment of retainer, fees and/or costs for or on behalf of Douglas R. Colkitt." Memorandum Of Law In Support Of Motion To Compel Compliance With Subpoena Duces Tecum Served Upon Womble, Carlyle, Sandridge, & Rice, P.L.L.C. ("P. Mot.") at Exhibit B.

At approximately the same time, GFL issued similar subpoenas in the Middle District of Florida as well as the Eastern District of Pennsylvania. D. Mot. Stay & Opp. at 15. Before filing its motion to compel in this court, GFL filed motions to compel compliance with those subpoenas in Florida and Pennsylvania. Id. The Eastern District of Pennsylvania, on December 2, 2002, dismissed the action without prejudice and ordered GFL to re-file its motion in the Middle District of Pennsylvania because "there are still outstanding motions before the Judge in the case giving rise to the judgment in the United States District Court for the Middle District of Pennsylvania." Id. at Exhibit 1, n. 1. GFL re-filed its motion to compel in the Middle District of Pennsylvania as ordered, where it is currently pending. The Middle District of Florida, however, entered an Order enforcing the subpoena, but limited it to the period Judge McClure had previously set for discovery.[1] Id. at Exhibit 6, n. 2.

## DISCUSSION
### Womble Carlyle's Motion to Stay

A court has broad discretion to stay all proceedings in an action pending resolution in a proceeding currently pending in another court. Landis v. North American Co., 299 U.S. 248, 254 (1936). "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, counsel, and for litigants." Id. at 254-55; Nat'l Shopmen Pension Fund, et al. v. Folger Adam Sec., Inc., 274 B.R. 1, 3 (D.C. 2002) (citing Air Line Pilots Ass'n v. Miller, 523 U.S. 866, 879 n. 6 (1998)). This is best done by the "exercise of judgment, which must weigh competing interests and maintain an even balance." Landis v. North American Co., 299 U.S. at 255. The party requesting such a stay must make out a clear case of hardship or inequity in order to prevail. Id. See also Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc., 713 F.2d 1477, 1484 (10th Cir. 1983). But, "[t]he right to proceed in court should not be denied except under the most extreme circumstances." Id.

Womble Carlyle urges this Court to stay plaintiff's motion to compel compliance with its subpoena pending resolution of a similar subpoena at issue in one of the federal courts of Pennsylvania because "it would be most appropriate for the Middle District of Pennsylvania to judge the propriety of Plaintiff's subpoena . . . and, it would serve the interests of efficiency and judicial economy [as well as] avoid the possibility of inconsistent results on the same issue." D. Mot. Stay & Opp. at 17-18. As noted above, the party requesting a stay of a pending action must establish a "clear case of hardship." Landis v. North American Co., 299 U.S. at 255. Womble Carlyle, however, fails to even argue how it will suffer any harm by this court resolving the issues unquestionably before it. The ad hominem attack it makes on plaintiff and its counsel

based on findings in other cases does not relieve this court of the obligation it has to consider whether to enforce the subpoena notwithstanding Womble Carlyle's objections. Those objections will be considered in this opinion. Womble Carlyle surely cannot ask that its objections be heard by a certain court when another party had legitimately invoked the jurisdiction of this Court.

Alternatively, Womble Carlyle argues that "Rule 45 affords the nonparty recipient of a subpoena 'territorial protection' by vesting power to compel discovery from a nonparty . . . in the subpoena-issuing court. However, the nonparty need not take advantage of this 'territorial protection' . . . [because] the recipient of the subpoena may seek a protective order from the trial court." D. Mot. Stay & Opp. at 16-17 (citing In re Sealed Case, 141 F.3d 337, 341-42 (D.C. Cir. 1998)). Regardless of whether Womble Carlyle intends to file a motion for a protective order in the Middle District of Pennsylvania does not terminate this court's ability and obligation to rule on plaintiff's motion to compel compliance with its subpoena. Womble Carlyle's motion to stay is, therefore, denied.

### Plaintiff's Motion To Compel Compliance With Its Subpoena

A party is entitled to discover information "if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1). Moreover, a party may only obtain discovery as to a matter that is "relevant to the claim or defense of any party." Pleasants v. Allbaugh, 208 F.R.D. 7, 9 (D.C. 2002); Krieger v. Fadely, 199 F.R.D. 10, 13 (D.C. 2001) (holding that the nature of the claims asserted defines relevancy). Because the substantive nature of the claim defines relevancy and, as to the execution of a judgment, information relevant to GFL's claim would be (1) the location of the judgment debtor's assets which would satisfy the judgment and (2) the source of those assets. GFL asserts that such documents as checks, drafts, wire transfers, etc., if in possession of the law firm, are relevant because they will "provide evidence concerning the existence of assets . . . [and] will identify the sources of the funds that he used to pay for legal services." P. Mot. at 4. I agree. Such financial documents and billing records are reasonably calculated to lead to admissible evidence which will provide GFL an opportunity to enforce the judgment rendered. FED. R. CIV. P. 26(b)(1).

Despite their obvious relevance, Womble Carlyle presents four arguments against production of the documents: (1) that GFL failed to comply with the meet and confer standards of Local Rule 7.1(m); (2) that the information sought is privileged; (3) that GFL's subpoena is overbroad; and (4) that the subpoena seeks only to harass, annoy, embarrass, and oppress Colkitt and his counsel. I will entertain each objection in turn.

First, Womble Carlyle argues that the motion to compel should be denied because of GFL's failure to "include in its motion a statement that it 'discuss[ed] the anticipated motion with opposing counsel.'" D. Mot. Stay & Opp. at 20. This argument, of course, omits any mention of the attempts by GFL's counsel to ascertain Womble Carlyle's intention on complying with the subpoena. GFL's Reply Memorandum Of Law In Support Of Its Motion To Compel Compliance With A Subpoena Duces Tecum Served Upon Womble, Carlyle, Sandridge, & Rice, P.L.L.C. And In Opposition To Womble Carlyle's Motion To Stay Consideration ("P. Reply & Opp. Stay") at 5-6 & Exhibit 4. In fact, GFL wrote a letter to Womble Carlyle and followed it up with

a telephone call, both of which went unanswered. It was only after these fruitless attempts to meet and confer that GFL filed its motion to compel.

The Local Rule contemplates that counsel will speak to each other; it does not anticipate that counsel's attempts to initiate a dialogue will be stonewalled. I find it unreasonable to insist that counsel wait for a response that never comes, like the two tramps who wait for Godot, before filing the motion.

In any event, Womble Carlyle's objection to the claimed violation of the rule would be more attractive if it were accompanied by a representation that Womble Carlyle did not have an objection to some or all of the relief requested. Of course, it opposes every aspect of the motion. If I were to strike the motion for failure to comply with the rule, GFL would have to then comply with it and re-file the motion all the while knowing of Womble Carlyle's opposition to it. I see no purpose in reading the rule to require everyone to engage in such a silly waste of everybody's time.

Womble Carlyle next asserts the attorney-client privilege with respect to the financial documents and billing records sought by GFL. The attorney-client privilege protects confidential communications made by the client to an attorney for the purpose of seeking legal advice. Tax Analysts v. Internal Revenue Service, 117 F.3d 607, 617 (D.C. Cir. 1997). In turn, communications from the attorney to the client are also privileged if their disclosure would reveal the client's confidential communications to the attorney. Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 862 (D.C. Cir. 1980). As I wrote in Evans v. Atwood, 177 F.R.D. 1 (D.C. 1997):

This Circuit, however, more narrowly defines the attorney-client privilege to protect from disclosure the communications made by the client to the attorney for the purpose of seeking legal advice. Tax Analysts v. Internal Revenue Service, 117 F.3d 607, 617 (D.C. Cir. 1997). The privilege protects the communications made by the attorney to the client only insofar as the attorney's communications disclose the confidential communication from the client. Brinton v. Department of State, 636 F.2d 600, 603-604 (D.C. Cir. 1980). See Schlefer v. United States, 702 F.2d 233, 244 (D.C. Cir. 1983); Coastal States Gas Corporation v. Department of Energy, 617 F.2d 854, 862 (D.C. Cir. 1980); Mead Data Central v. United States Department of the Air Force, 566 F.2d 242, 253 (D.C. Cir. 1977).

Id. at 3. Moreover, the privilege only applies when the information is the product of an attorney-client relationship and is maintained as confidential between the attorney and client. Brinton v. Dep't of State, 636 F.2d 600, 603 (D.C. Cir. 1980). See also S.E.C. v. Bilzerian, 2001 WL 1801157, at * 1 (D.C. June 15, 2001). The standard to be applied is whether the client reasonably intended the attorney to keep the communication confidential. Id. (quoting In re Ampicillin Antitrust Litigation., 81 F.R.D. 377, 389 (D.C. 1978)).

Before a court turns to the question of privilege, the subpoenaed party must comply with the requirements of Fed.R.Civ.P. 45(d)(2) which provides:

When information subject to a subpoena is withheld on a claim that is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications or things not produced that is sufficient to enable the demanding party to contest the claim.

The rule is obviously mandatory. Failure to comply with it "is deemed to waive the underlying privilege claim." In re: Grand Jury Subpoena, 274 F.3d 563, 576 (1st Cir. 2001) and cases cited therein.

Womble Carlyle excuses itself from compliance with this rule on the grounds that the nature of the documents is well-understood, and a privilege log would not further elucidate their nature or might, on the other hand, disclose the very information claimed to be privileged. Sur-Reply Brief in Opposition to Plaintiff's Motion to Compel at 12-13. But, as I have explained, the subpoena seeks "[c]hecks(s), drafts(s), wire transfer advice(s), notice(s) and/or confirmation(s), debit notice(s), credit notice(s), and letters relating to any payment of retainer, fees and/or costs for or on behalf of Douglas R. Colkitt." P. Mot. at Exhibit B. It is impossible to understand how any such materials could possibly fall within the attorney-client privilege as I have defined it. The apparent inapplicability of the privilege on its face increases, rather than decreases, the need for a privilege log.

Womble Carlyle nevertheless attempts to compare itself to an attorney who was subpoenaed to testify and produce documents before the grand jury in order to identify those people, unknown to the government, who had paid the attorney legal fees in connection with the attorney's representation of other defendants. D. Mot. Stay & Opp. at 21 (citing In re Subpoenaed Grand Jury Witness, 171 F.3d 511 (7th Cir. 1999)). In that case, the Seventh Circuit held that forcing the attorney to identify who paid him would reveal the client's motive for seeking legal representation, and learning why an anonymous person sought legal advice would disclose what that person intended to keep confidential. Id. at 514. Accordingly, Womble Carlyle suggests that "[p]laintiff appears to be seeking to learn whether others have made payments `on behalf of' Dr. Colkitt, presumably to bring (or support) fraudulent conveyance actions against them," thereby seeking out third-party payors identities which are deemed to be privileged by the Seventh Circuit. D. Mot. Stay & Opp. at 20.

I see absolutely no connection between the instant case and In re Subpoenaed Grand Jury Witness. Here, everyone knows Colkitt's identity and why he sought Womble Carlyle's legal representation. Learning how much he paid and the bank accounts and other depositories cannot possibly disclose what Colkitt told Womble Carlyle in confidence for the purpose of seeking legal advice or representation. Athridge v. Aetna Cas. & Sur. Co., 184 F.R.D. 181, 188 (D.C. 1998) ("There is nothing in these letters and bills [produced during litigation] which discloses any information communicated . . . for the purpose of seeking his legal advice."). Billing records are usually generated for ordinary business purposes and merely include who the bill is being sent to and how the fee was paid. See Nesse v. Pittman, 202 F.R.D. 344, 356 (D.C. 2001). In some cases, billing records have been deemed to be privileged. (holding that billing entries of an attorney were privileged under the work product rule because they disclosed what the attorney had done for the client, thereby revealing his mental processes). Id. However, that is not the case here. Womble Carlyle is only asserting that these alleged billing records and financial documents

are covered by the attorney-client privilege, not the work product rule. D. Mot. Stay & Opp. at
20-21. Additionally, GFL has made it clear that the only information it seeks is the location of
Colkitt's assets in order to enforce the $21 million judgment entered against him. P. Reply &
Opp. Stay at 1-2. Indeed, I note again that the subpoena seeks only "[c]hecks(s), drafts(s), wire
transfer advice(s), notice(s) and/or confirmation(s), debit notice(s), credit notice(s), and letters
relating to any payment of retainer, fees and/or costs for or on behalf of Douglas R. Colkitt," not
billing records.

Womble Carlyle nevertheless parades a horrible: GFL may then use information that other
persons paid fees on Colkitt's behalf to claim that those payments were fraudulent conveyances.
But, Womble Carlyle cannot possibly assert an attorney client privilege with those third parties;
if their payments were "communications," they were not made by their clients, nor were they for
the purpose of seeking legal advice or representation. Moreover, whether GFL has other uses for
the information has no bearing on whether the information is relevant. Indeed, it is hard to
imagine how information concerning fraudulent conveyances to avoid creditors could be any
more relevant to the topic and purpose of GFL's subpoena.

The third objection to GFL's motion to compel is that the subpoena is overbroad because it
is "without any temporal limitation." D. Mot. Stay & Opp. at 21. Judge McClure from the
Middle District of Pennsylvania limited discovery against Colkitt in the post-judgment
proceedings to the period commencing January 1, 1999. Id., Exhibit 3 at 6-7. Additionally, Judge
Lazzara in the Middle District of Florida imposed such limitation when he granted GFL's motion
to compel in that jurisdiction against another law firm. Id. at Exhibit 6. Accordingly, I will also
impose the same temporal limitation set by Judge McClure, and upheld by Judge Lazzara, on
GFL's discovery of those documents listed in the subpoena.

Lastly, Womble Carlyle gripes that GFL's subpoena is "nothing more than an effort to
further harass and frustrate Dr. Colkitt and his counsel" and suggests that GFL discover the
information from the source itself, namely Colkitt. Id. at 22. Colkitt has not paid any of the $21
million judgment since 2000 and has hired lawyers to limit the discovery of those assets which
potentially could pay off the judgment. Why would GFL possibly expect to receive any more
meaningful discovery from Colkitt than it would from law firms who represent him and his
interests?

**Plaintiff's Motion To Strike**

Pursuant to Fed.R.Civ.P. 12(f), a motion to strike will only lie if a pleading contains
redundant, immaterial, impertinent or scandalous matter. Makuch v. F.B.I., 2000 WL 915767, at
* 1 (D.C. January 7, 2000); FED. R. Civ. P. 12(f). Such motions are disfavored and some courts
have indicated that parties may not attack briefs and motions in such a fashion.[2] By the same
token, a court surely possesses the power to correct an imbalance when one party has raised a
new matter in a brief or memorandum of points and authorities. Makuch, 2000 WL 915767, at *
1 (holding that the court possesses considerable discretion in disposing of a motion to strike).

GFL first argues that Womble Carlyle's Sur-Reply Brief In Opposition To Plaintiff's Motion
To Compel should be stricken because it was filed without leave of court. That argument,

however, is moot. On January 31, 2003, I granted Womble Carlyle leave to file its sur-reply as denoted by my signature and the fiat language, "Let this be filed," on the cover page of the brief.

Next, GFL asserts that the sur-reply "should nevertheless be stricken for failure to adhere to the standards for filing sur-replies in the U.S. District Court for the District of Columbia." Motion To Strike Sur-Reply In Opposition To Plaintiff's Motion To Compel at 2. GFL contends that Womble Carlyle has presented "no additional facts or new matters of any relevance to GFL's Reply." Id. at 3.

Our local rules contemplate only three filings when a motion is fled the a motion the opposition and the reply to the opposition. If the last pleading filed, the reply, raises new matters, then the opponent may be "sandbagged" by not being able to answer a contention that appeared for the first time in the reply. Hence, the standard in this court for granting leave to file a sur-reply is "whether the party making the motion would be unable to contest matters presented to the court for the first time in the opposing party's reply." Lewis v. Rumsfeld, 154 F. Supp.2d 56, 61 (D.C. 2001); Robinson v. The Detroit News, Inc., 211 F. Supp.2d 101, 112 (D.C. 2002). GFL's reply brief raises no new arguments which Womble Carlyle would have been unable to contest without the filing of its sur-reply. The reply brief merely addresses the arguments made by Womble Carlyle in its opposition papers. Because there are no novel issues which necessitated a response, Womble Carlyle's sur-reply would be eligible to be stricken and not considered in the resolution of GFL's motion to compel compliance with its subpoena. But, I granted leave to file the sur-reply and have reviewed it in my resolution of this case. GFL has now prevailed and was not harmed by the filing that merely reiterated what Womble Carlyle had already said. In my discretion, I will simply deny GFL's motion as moot.

## CONCLUSION

Because Womble Carlyle has not shown a compelling need or demonstrated any hardship in order for this court to invoke a stay of these proceedings, its motion to stay consideration of plaintiff's motion to compel compliance with its subpoena is denied. Instead, plaintiff's Motion To Compel Compliance With Subpoena Duces Tecum Served Upon Womble, Carlyle, Sandridge, & Rice, P.L.L.C. is granted. Finally, plaintiff's motion to strike Womble Carlyle's sur-reply brief is denied as moot.

An Order accompanies this Memorandum Opinion.

## ORDER

In accordance with the accompanying Memorandum Opinion, it is, hereby,

**ORDERED** that plaintiff's Motion To Compel Compliance With Subpoena Duces Tecum Served Upon Womble, Carlyle, Sandridge, & Rice, P.L.L.C. [#1] is **GRANTED** as to those documents deemed not to be privileged. It is further, hereby,

**ORDERED** that defendant's <u>Motion To Stay Consideration Of Plaintiff's Motion To Compel Discovery From Womble, Carlyle, Sandridge, & Rice, P.L.L.C.</u> [#4] is **DENIED.** It is further, hereby,

**ORDERED** that plaintiff's <u>Motion To Strike Sur-Reply In Opposition To Plaintiff's Motion To Compel</u> [#10] is **DENIED as moot.** It is further, hereby,

**ORDERED** that the parties' <u>Consent Motion For Hearing</u> [#11] is **DENIED as moot.**

**SO ORDERED.**

---------------

Notes:

1. Womble Carlyle, in its motion to stay and opposition brief, suggests that the Middle District of Florida granted GFL's motion to compel compliance with its subpoena because the motion was unopposed. However, Judge Lazzara specifically indicated that, despite the failure to file an opposition, the court independently examined the merits of the motion and ruled accordingly. D. Mot. Stay & Opp. at Exhibit 6.

2. 5A C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1380, at 647-49 (2d ed. 2002 supp.); <u>see</u> <u>Thomas v. Bet Sound-Stage Restaurant/BrettCo., Inc.,</u> 61 F. Supp.2d 448 (D. Md. 1999) (motions are not pleadings, therefore, Rule 12(f) motion is inappropriate if directed at a motion); <u>U.S. v. Crisp,</u> 190 F.R.D 546 (D. Cal. 1999) (motion to strike is limited to pleadings); <u>Mahon v. City of Largo, Florida,</u> 829 F. Supp. 377 (D. Fla. 1993) (a response to a motion is not a pleading and thus motion to strike is inappropriate).

---------------