UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TRITA PARSI and NATIONAL IRANIAN AMERICAN COUNCIL,<br><br>Plaintiff,<br><br>vs.<br><br>SEID HASSAN DAIOLESLAM,<br><br>Defendant. | Civil Action No. 08-705 (JDB)<br><br>**DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION FOR AN ORDER REQUIRING PLAINTIFFS TO POST A BOND AND NOT WASTE ASSETS** |

## DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION FOR AN ORDER REQUIRING PLAINTIFFS TO POST A BOND AND NOT WASTE ASSETS

In their Opposition to Defendant's Motion for an Order Requiring Plaintiffs to Post a Bond and Not Waste Assets ("Plaintiffs' Response"), Plaintiffs contend that "Defendant is once again using the legal system to defame NIAC and try and destroy it."[1] According to Plaintiffs, "the Defendant uses this Motion as yet another opportunity to attack Plaintiffs and to try and smear their reputations and to shift the burden of their wasted discovery costs."[2] Plaintiffs even allege that "such behavior rises above mere lawyering and approaches harassment."[3]

These charges could not be further from the truth. Defendant filed his Motion for an Order Requiring Plaintiffs to Post a Bond and Not Waste Assets (the "Motion") out of genuine concern, based on internal NIAC documents disclosed during discovery, that Plaintiffs would

---

[1] Plaintiffs' Opposition to Defendant's Motion for an Order Requiring Plaintiffs to Post a Bond and Not Waste Assets at 13, Parsi et al. v. Hassan, No. 08-705 (D.D.C. Mar. 5, 2012), ECF No. 175.

[2] *Id.*

[3] *Id.*

hide or exhaust their assets in an effort to prevent Defendant from collecting on a future award of costs and fees. As documented in the Motion, this concern stems principally from various internal NIAC emails and financial records that demonstrate that Plaintiffs fraudulently misrepresented their finances in an effort to prevent the National Endowment for Democracy ("NED") from collecting unused—and recovering misused—grant funds.[4] Defendant is moreover concerned that, given Trita Parsi's open access to NIAC's financial accounts and NIAC's lack of internal accounting controls, Plaintiffs will again misrepresent their finances to hide their assets from Defendant and this Court.[5]

In their Response, Plaintiffs failed to address most of Defendant's specific concerns. In fact, Plaintiffs' Response confirms them. Plaintiffs confirmed, for example, that NIAC's books are not audited by an independent auditor,[6] that Parsi has written himself checks from NIAC's accounts and still has that authority (in addition to a NIAC bank debit card),[7] and that NED never audited NIAC's expenses in any kind of detail.[8] In addition, Plaintiffs' assurance that NIAC deposited $25,000 to their counsel's trust account to cover sanctions already awarded by the Court provides but cold comfort to Defendant in light of the recent disbarment of one of Plaintiffs' attorneys for misappropriation of client funds.[9] Plaintiffs' failure to address the specific examples of misuse of funds other than in general terms and without attaching a single piece of substantiating financial documentation confirms the risks raised in Defendant's Motion.

---

[4] Defendant's Motion for an Order Requiring Plaintiffs to Post a Bond and Not Waste Assets at 4–9, Parsi et al. v. Hassan, No. 08-705 (D.D.C. Mar. 12, 2012), ECF No. 172.

[5] *Id.* at 10–11.

[6] Plaintiffs' Opposition to Defendant's Motion for an Order Requiring Plaintiffs to Post a Bond and Not Waste Assets at Ex. 5, para. 4, Parsi et al. v. Hassan, No. 08-705 (D.D.C. Mar. 5, 2012), ECF No. 175.

[7] *Id.* at Ex. 5, para. 18.

[8] *Id.* at Ex. 5, para. 4.

[9] *See* Ex. 1, Adrian Nelson Disbarment Order (Feb. 12, 2012); *see also* Maryland Court of Appeals Hearing (Feb. 2, 2012) *available at* http://www.courts.state.md.us/coappeals/webcastarchive.html.

**ARGUMENT**

Plaintiffs dispute neither this Court's authority to impose the relief requested nor the legal standard for granting such relief. They dispute instead the possibility that the Court will grant either of Defendant's substantive[10] or sanctions[11] motions, and they disclaim any risk that they will be unable to honor an award based on the granting of either motion. The Court will soon render decision on Defendant's substantive and sanctions motions, which have been fully briefed, so these issues need not be addressed here. Thus, the only issue raised by Plaintiffs' Response is whether there is a risk that they might not be able to satisfy such an award in particular as a result of the fraudulent wasting of assets.

**I.     Plaintiffs Failed to Address the Misappropriation of NED Funds**

In his Motion, Defendant cited specific discovery documents which show that Plaintiffs went to great lengths to "take care" of unused or misused funds to avoid having "to pay some money back to NED."[12] Plaintiffs sought ways to "get the money out and then donate it to NIAC again, which," according to Mohammed Mansouri, NIAC's Director of NGO Projects, "is much more better than let it go back to NED."[13]

Rather than address the specific examples of fraudulent behavior toward NED, Plaintiffs resort instead to a July 2008 NED press release in which NED insisted that "the terms of the grant agreement" between NED and NIAC "were met," and denying an allegation made by

---

[10] Defendant's Motion for Summary Judgment, Parsi et al. v. Hassan, No. 08-705 (D.D.C. Sept. 16, 2011), ECF No. 144.

[11] Defendant's Omnibus Motion for Sanctions, Parsi et al. v. Hassan, No. 08-705 (D.D.C. Sept. 16, 2011), ECF No. 143.

[12] Defendant's Motion for an Order Requiring Plaintiffs to Post a Bond and Not Waste Assets at Ex. 8, Parsi et al. v. Hassan, No. 08-705 (D.D.C. Mar. 12, 2012), ECF No. 172.

[13] *Id.*

Defendant that NIAC lobbied Congress while receiving funds from NED.[14] Plaintiffs also rely on an affidavit in which Trita Parsi insisted that NIAC's expenses were "subject to verification by NED."[15] As shown below, both sources are entirely inadequate for combating the specific, discovery-supported claims raised in Defendant's Motion.

In his affidavit, Parsi asserted, without support, that "[a]ll efforts were taken to ensure that all proper expenses were charged to the NED account by providing receipts for all of these expenses."[16] This assertion is misleading in a number of respects. NED never *actually* audited or verified any of NIAC's expenses (although it could have if it wanted to). Instead, NED merely performed "[s]tandard reviews of NIAC's quarterly financial and narrative reports"[17] to which no receipts (or any other form of verification) were attached. Plaintiffs attached one such quarterly report as Exhibit 4 to their Response, but, tellingly, they omitted from the exhibit the *actual financial data that was provided to NED*. The quarterly reports that NIAC provided to NED (except for the third quarter 2007 report, which was not produced) are attached to this reply in their entirety as Exhibit 2. As the reports reveal, NED would have had no way to verify, based on the financial data contained in the reports, the validity of NIAC's expenses, nor could it have uncovered unauthorized expenses, such as payments for flowers and gifts to board members,[18] airplane tickets for Babek Talebi's lobbying activities,[19] or the thousands of dollars for postage

---

[14] Plaintiffs' Opposition to Defendant's Motion for an Order Requiring Plaintiffs to Post a Bond and Not Waste Assets at Ex. 1, Parsi et al. v. Hassan, No. 08-705 (D.D.C. Mar. 5, 2012), ECF No. 175.

[15] *Id.* at Ex. 5, para. 35.

[16] *Id.* at Ex. 5, para. 38.

[17] *Id.* at Ex. 1.

[18] Defendant's Motion for an Order Requiring Plaintiffs to Post a Bond and Not Waste Assets at Ex. 6, Parsi et al. v. Hassan, No. 08-705 (D.D.C. Mar. 12, 2012), ECF No. 172 (showing that NIAC spent $1,230 to buy flowers from ftd.com, an online flower store, for a NIAC anti-war fundraising event in California several months after the NED projects were officially terminated.").

[19] *Id.* at Ex. 4 (showing airline fares as late as February 2008).

(curiously, in even amounts),[20] rent,[21] office supplies,[22] or telephone charges (as late as December 2007 to Vonage).[23] The "financial report" Plaintiffs omitted from their Exhibit 4 shows that NIAC merely "provided" the following general summary of expenses to NED:

| LINE ITEM | BUDGET | PRIOR EXPENDITURES* | EXPENDITURES THIS PERIOD | TOTAL EXPENDITURES |
|---|---|---|---|---|
| Salaries | $24,372 | $12,198.00 | $4,062.00 | $16,260.00 |
| Space and Utilities | 24,300 | $16,214.48 | $4,050.00 | $20,264.48 |
| Supplies and Equipment | 1,080 | $480.53 | $662.56 | $1,143.09 |
| Communications and Postage | 5,040 | $2,151.95 | $1,350.87 | $3,502.82 |
| Travel and Per Diem | 4,500 | $3,724.85 | $0.00 | $3,724.85 |
| Contractual Services | 14,760 | $13,902.00 | $2,460.00 | $16,362.00 |
| Other Direct Costs | 8,004 | $2,067.40 | $1,680.00 | $3,747.40 |
| TOTAL PROGRAM COSTS | $107,000 | $50,739.21 | $14,265.43 | $65,004.64 |
| TOTAL ADMINISTRATIVE COSTS | $0 | | | |

(Ex. 2-E, attached). Nowhere does NIAC "provide" to NED the level of detail (let alone receipts) shown in the financial reports produced to Defendant during this case which reflect the dubious charges as well as thousands more in payments after this report to NED in the second quarter of 2007.

Perhaps in an attempt to head off this line of argument, Parsi conceded in his affidavit that certain expenses indeed were improper, including "flowers that were purchased in December

---

[20] *Id.* at Ex. 4 (showing postage expenses in the amount of $100, $100, $450, $200, $80, $80, $240, $240, and $200).

[21] *Id.* at Ex. 4 (showing that NIAC expensed $31,500 against NED funds for rent between May 23, 2005, and June 25, 2007).

[22] *Id.* at Ex. 4 (showing office expenses in the amount of $819.93 and $4,836.19).

[23] *Id.* at Ex. 6 (showing large telephone charges as late as December 2007).

2007 for an event."[24] Parsi asserts, however, that "this was later corrected in the internal accounting and NED also accounted for it by crediting and debiting the correct amounts."[25] This is not something corrected by "internal accounting." NED funds were spent on what Parsi only now admits were improper purchases and could have been corrected only by returning the money to NED. Parsi provides no details for this, however, such as when and how the misuse was discovered, how the internal accounting resulted in NED being made whole, or when NED was informed and paid back. Given Parsi's history of providing incorrect information to this Court, he should be required to produce all documents concerning when this misuse was discovered and how and when it was reported to NED and corrected. He should face appropriate sanctions if the information in his affidavit turns out to be false.

Having no answer to the specific discovery documents in Defendant's Motion, Plaintiffs instead make much of the fact that on July 3, 2008, NED issued a statement maintaining that "the terms of the grant agreement" between NED and NIAC "were met," and denying an allegation made by Defendant in a June 2008 magazine article that NIAC lobbied Congress while receiving funds from NED. According to the statement, NED based its denial on "[s]tandard reviews of NIAC's quarterly financial and narrative reports," which apparently did not list lobbying as one of NIAC's activities.[26] Plaintiffs argue anachronistically that NED's denial of wrongdoing in 2008 proves that the allegations made in Defendant's Motion, which were based on documents discovered in 2009, are false.[27]

---

[24] Plaintiffs' Opposition to Defendant's Motion for an Order Requiring Plaintiffs to Post a Bond and Not Waste Assets at Ex. 5, para. 37, Parsi et al. v. Hassan, No. 08-705 (D.D.C. Mar. 5, 2012), ECF No. 175.

[25] *Id.*

[26] *Id.* at Ex. 1.

[27] *Id.* at 4–5. NIAC's regurgitation of NED's 2008 statement here is highly inappropriate as NIAC amended its 2008 tax returns in late 2009 and admitted that it did engage in lobbying in 2008. Defendant's Motion

6

This argument has no merit. NED issued its July 2008 statement in response to a June 2008 article by Defendant that in no way involved the financial irregularities raised by discovery documents Defendant received after he wrote the 2008 article. Defendant's 2008 article stated that NIAC misled NED regarding the involvement of an Iranian government official in the NGO oversight organization NIAC was working with, Hamyaran.[28] NED's July 2008 press release thus in no way clears NIAC of the financial irregularities addressed in the Motion.

Nowhere in their Response do Plaintiffs credibly explain the damning, and apparently uncontroverted, emails by Mansouri (to Parsi) that NIAC should "take care of" unused NED funds to ensure that NIAC would not be required "to pay some money back to NED from the last year's budget."[29] Nor do they adequately explain what Mansouri meant when he insisted that Plaintiffs should invent "relevant costs," thereby enabling them to "get the money out and then donate it to NIAC again, which is much more better than let it go back to NED."[30]

Instead of repudiating this "[u]se it or lose it" approach to the NED grant,[31] Plaintiffs merely attempt to impeach their own witness and Director of the NGO Project, Mohammad Mansouri, by saying that he merely "worked on the NED projects" and that he "could not have

---

to Compel Production of Documents Concerning the Legality of Plaintiffs' Lobbying Activities at Ex. G., Parsi et al. v. Hassan, No. 08-705 (D.D.C. July 8, 2011), ECF No. 119 .

[28] Discovery in the case confirmed that *after* Defendant's article NED pressed Parsi as to whether Hossein Malek-Afzali, Hamyaran Board Chairman, was a Deputy Minister; Parsi's contact in Tehran, Baquer Namazi confirmed that he was and Parsi asked his NED contact to call him *after* the July press release NIAC now touts to give her the information. *See* Ex. 3, Deposition of Trita Parsi at 170–85 & Ex. 84 (Dec. 2, 2010); *see also* Ex. 4 Email from Baquer Namazi to Trita Parsi (July 5, 2008). For a complete description of both the financial fraud and the misleading of NED regarding the involvement of the Iranian government in Hamyaran, NIAC's partner in the NGO project, see Ex. B to Defendant's Reply in Support of His Motion to Strike Damages, Parsi et al. v. Hassan, No. 08-705 (D.D.C. Aug. 16, 2011), ECF No. 134.

[29] Defendant's Motion for an Order Requiring Plaintiffs to Post a Bond and Not Waste Assets at Ex. 8, Parsi et al. v. Hassan, No. 08-705 (D.D.C. Mar. 12, 2012), ECF No. 172.

[30] *Id.*

[31] *Id.* at Ex. 3, p. 172.

been aware of all the project[']s expenses."[32] This statement cannot be taken seriously, however, given that numerous NIAC documents describe Mansouri as the Director of the NGO Project for which he was paid over $50,000 from May 2005 through August 2007.[33] Accordingly, Mansouri would have known about substantial postage expenses had they actually been made. At any rate, given that most of the communications were by internet or anonymous phone calls it is not clear how NIAC could have mailed materials to these NGOs in Iran anyway. NIAC had a chance to clear up these questionable expenses, and its failure to come forward with documentation speaks volumes.

## II. Plaintiffs Do Not Have Proper Accounting Controls in Place to Prevent Continuing Misuse of NIAC Funds

In his affidavit attached to Plaintiffs' Response, Parsi admitted that NIAC's books are not audited.[34] "Although the Board has discussed conducting audits at various times," Parsi declared, "due to the high costs, NIAC has so far been unable to conduct any audits."[35] This claim is of dubious merit given NIAC's penchant for spending large sums of money for items unrelated to NIAC's mission, like professional basketball tickets for members,[36] personal loans to members (without proper documentation),[37] gifts for board members, and extravagant parties.[38]

---

[32] Plaintiffs' Opposition to Defendant's Motion for an Order Requiring Plaintiffs to Post a Bond and Not Waste Assets at Ex. 5, para. 36, Parsi et al. v. Hassan, No. 08-705 (D.D.C. Mar. 5, 2012), ECF No. 175.

[33] Defendant's Motion for an Order Requiring Plaintiffs to Post a Bond and Not Waste Assets at Ex. 4, Parsi et al. v. Hassan, No. 08-705 (D.D.C. Mar. 12, 2012), ECF No. 172

[34] Plaintiffs' Opposition to Defendant's Motion for an Order Requiring Plaintiffs to Post a Bond and Not Waste Assets at Ex. 5, para. 4, Parsi et al. v. Hassan, No. 08-705 (D.D.C. Mar. 5, 2012), ECF No. 175.

[35] *Id.*

[36] Defendant's Motion for an Order Requiring Plaintiffs to Post a Bond and Not Waste Assets at Ex. 14, pp. 40, 172, Parsi et al. v. Hassan, No. 08-705 (D.D.C. Mar. 12, 2012), ECF No. 172 ($1,300 for tickets to Washington Wizards basketball game on February 2, 2010).

[37] *Id.* at 37 ($5,000 loan to Hadi Semati on January 18, 2010).

[38] *Id.* at exs. 14 & 15 ($6,690.00 at Ravagh Persian Grill on July 15, 2009).

Instead, Parsi offers that the Board is responsible for financial oversight.[39] Yet there is no indication from the minutes of any Board meeting that the Board had an audit committee or ever did review NIAC's finances in any level of detail such that it could uncover misuse of the sort documented in the motion. And contrary to Parsi's assertion that one "function of the Board is to determine the consultation fees due to consultants,"[40] no board minutes show that Parsi's consulting payments were approved by the board.

Plaintiffs admit that Parsi could and did write himself checks, and that he still has that authority.[41] Parsi has a NIAC debit card, ostensibly for legitimate NIAC expenses, which raises the question as to why so often Parsi needed to write himself checks for "reimbursement." Never does NIAC provide the underlying expenses or receipts for these reimbursements demonstrating their legitimacy.

Finally, Parsi states that the board did determine his salary (which is true), but he claims that he *rejected* increases due to financial pressures.[42] This is astounding and should judicially estop him from claiming lost income as damages. As Defendant argues in his motion to strike Parsi's damages, unless NIAC believes Defendant's writings, these could not have *caused* Parsi's alleged lost income because NIAC's board determined his income.[43] In a failed attempt to

---

[39] Plaintiffs' Opposition to Defendant's Motion for an Order Requiring Plaintiffs to Post a Bond and Not Waste Assets at Ex. 5, para. 6, Parsi et al. v. Hassan, No. 08-705 (D.D.C. Mar. 5, 2012), ECF No. 175 ("[T]he NIAC board is charged with the responsibility of reviewing NIAC's financial statements during Board meetings, to ensure that the finances are in good health.").

[40] *Id.* at Ex. 5, para. 12.

[41] *Id.* at Ex. 5, para. 18.

[42] *Id.* at Ex. 5, para. 20 ("[O]n more than two occasions, after I became a full time employee, the Board suggested to me that my salary should be increased. However, I rejected those offers due to my concern that it would put too much financial pressure on NIAC.").

[43] Defendant's Reply in Support of His Motion to Compel Damages Discovery and/or to Strike in Part Prayer for Relief at 3, Parsi et al. v. Hassan, No. 08-705 (D.D.C. Aug. 16, 2011), ECF No. 134 ("[F]or Parsi to claim NIAC cut his consulting income as a result of Defendant's writings, would mean that NIAC necessarily believes the articles to be credible.").

demonstrate his own fiscally responsible management of NIAC, Parsi completely undermined his damages claim (which, given the absence of any expert testimony, is based solely upon his claim that his income diminished after Defendant's writings began).[44]

## CONCLUSION

Plaintiffs failed to allay Defendant's concerns that Parsi, a citizen of Iran and Sweden, will abuse his position to misappropriate or hide assets from Defendant and this Court in the same manner that he did with respect to NED funds. Accordingly, Defendant respectfully reaffirms his request that the Court enter an order requiring Plaintiffs to post a bond in the amount of $300,000 and directing Plaintiffs not to waste their assets in the event they must be used to satisfy any future Court-ordered liabilities.

Dated:  March 12, 2012

/s/
Timothy E. Kapshandy (Admitted Pro Hac Vice)

/s/
Peter G. Jensen (D.C. Bar No. 982599)
Bradford A. Berenson (D.C. Bar No. 441981)
HL Rogers (D.C. Bar No. 974462)
Thomas E. Ross (D.C. Bar No. 994275)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000
tom.ross@sidley.com

Attorneys for Defendant
Seid Hassan Daioleslam

---

[44] *See* Defendant's Motion to Compel Damages Discovery and/or To Strike in Part Prayer for Relief at 4–5, Parsi et al. v. Hassan, No. 08-705 (D.D.C. July 8, 2011), ECF No. 120; Plaintiffs' Memorandum on Points and Authorities in Opposition to Defendant's Motion to Compel Damages Discovery and/or to Strike in Part Prayer for Relief, Parsi et al. v. Hassan, No. 08-705 (D.D.C. Aug. 1, 2011), ECF No. 127; Defendant's Reply in Support of His Motion to Compel Damages Discovery and/or to Strike in Part Prayer for Relief at 2–5 (D.D.C. Aug. 16, 2011), ECF No. 134.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| TRITA PARSI and NATIONAL IRANIAN AMERICAN COUNCIL, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) ) Civil Action No. 08-705 (JDB) |
| SEID HASSAN DAIOLESLAM, | ) ) |
| Defendant. | ) ) |

### CERTIFICATE OF SERVICE

I certify that on March 12, 2012, I served, via email, Defendant's Reply in Support of His Motion for an Order Requiring Plaintiffs to Post a Bond and Not Waste Assets on:

    Afshin Pishevar
    600 East Jefferson Street
    Suite 316
    Rockville, Maryland 20852
    (301) 279-8773
    ap@pishevarlegal.com

Dated: March 12, 2012
                                  /s/
                                  Peter G. Jensen (D.C. Bar No. 982599)
                                  Bradford A. Berenson (D.C. Bar No. 441981)
                                  HL Rogers (D.C. Bar No. 974462)
                                  Thomas E. Ross (D.C. Bar No. 994275)
                                  SIDLEY AUSTIN LLP
                                  1501 K Street, N.W.
                                  Washington, D.C. 20005
                                  (202) 736-8000
                                  tom.ross@sidley.com
                                  Attorneys for Defendant
                                  Seid Hassan Daioleslam