IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TRITA PARSI <br><br> and <br><br> NATIONAL IRANIAN AMERICAN COUNCIL <br><br> Plaintiffs, <br><br> v. <br><br> DAIOLESLAM SEID HASSAN <br><br> Defendant. | Civil No. 08 CV 00705 |

**PLAINTIFFS' REPLY MEMORANDUM TO DEFENDANT'S MEMORANDUM ON STATUS OF PRODUCTION OF TRITA PARSI'S SWEDISH BANK ACCOUNT RECORDS**

Plaintiffs, Dr. Trita Parsi and the National Iranian American Council ("NIAC") (collectively "NIAC"), by and through their counsel, Afshin Pishevar, Esquire, and Pishevar & Associates, P.C., respectfully submit this Reply Memorandum to Defendant's Memorandum on the Status of Production of Trita Parsi's Swedish Bank Account Records. Defendant improperly alleges that Plaintiffs did not take their discovery obligations seriously because obtaining the Swedish bank records took longer than he would like. This could not be further from the truth. Plaintiffs and their counsel spent a substantial amount of time communicating with the SEB bank in Sweden ("Swedish Bank") to obtain "all information regarding the Swedish bank account..." pursuant to the Court's August 30, 2011 Order, and in fact, obtained and produced almost all of the information requested.

Plaintiffs' efforts went above and beyond those contemplated by the Federal Rules of Civil Procedure. The records requested by the Defendant are not kept in a domestic banking institution, but rather a foreign bank that operates pursuant to Swedish Banking laws. Despite this, and after an extensive and exhaustive search, Plaintiffs, through the Swedish Bank, were able to successfully locate and produce most of the information requested by the Defendant, as they were made available to the Plaintiffs. Any delay caused was not the result of Plaintiffs' inaction or delay, as Defendant suggests.

On August 30, 2011, the Court Ordered that all information regarding the Swedish Bank be produced. On September 9, 2011, all available online statements were provided, which was everything the Plaintiffs had access to. (*See* Declaration of T. Parsi at ¶ 2, Attached as Exhibit A; *see also* Email of September 9, 2011, Attached as Exhibit B.) Additionally, Plaintiffs requested a printout from the Swedish Bank of all available transactions, after the Defendant sought more detailed records. (Exhibit A at ¶ 3) This 20 page document, listing over 1,000 transactions from January 2000 to May 2011, was produced on September 21, 2011, upon receipt by the Plaintiffs. (Exhibit A at ¶ 3; *See* Email of September 21, 2011, Attached as Exhibit C; *see also* Exhibit D to Def's Memo. on Status of Production.) Defendant then requested the underlying documentation for all the transactions. Plaintiff Parsi contacted the bank located in Sweden to make this request and was subsequently informed that this type of documentation was not kept by the Bank. (Exhibit A at ¶ 4) As Plaintiffs have no access to that information, they had to rely on the Swedish Bank's representations. (*Id*. at ¶ 5, 6).

Despite this, Defendant insisted that the underlying documentation be produced. Specifically, Defendant stated that his Swedish Bank "experts" claim those records are kept, and further, that failing to maintain the underlying documentation would be against US Banking

policy. However, Defendant never provided any kind of documentation as to any of these claims, and further, never explained why a foreign bank was subject to US Banking laws. In any event, Plaintiffs again contacted the Swedish Bank and again requested the underlying documentation. (*Id.*) However, the Swedish Bank again stated those documents are not kept. Plaintiffs then requested this in writing from the Swedish Bank, but the Bank refused to provide any statements in writing.[1] (*Id.*).

After continued efforts to obtain these records, on or about March 12, 2012, the Swedish Bank informed Plaintiffs that those documents may be researched via outside sources. (*Id.* at ¶ 7) However, the Swedish Bank continued to insist that these documents are not kept by the bank itself and further clarified that it may not be able to procure all the documents and that the process may take some time. (*Id.*) The cost for this search is approximately $25 per transaction. (*Id.* at ¶ 11) Over the next 2 months, the Swedish Bank was able to locate and produce the underlying documentation for 34 of the 42 requested documents. (*Id.* at ¶ 9) Additionally, the Swedish Bank identified 4 documents for which they would not be able to produce any documentation, leaving 4 documents that are still pending. (*Id.* at ¶ 9, 10).

Plaintiffs complied with their duty to produce responsive documents. They did not have access to these documents and had to rely on the Swedish Bank to produce what was available. The Swedish Bank in turn, went outside of their own database of stored information and found the requested information from outside sources. These efforts far exceed the obligations imposed by the Federal Rules of Civil Procedure to comply with discovery requests. Additionally, despite now claiming that Plaintiffs improperly withheld documents, and further,

---

[1] Throughout this process, the Swedish Bank refused to provide a declaration or to communicate in writing. In fact, when Plaintiffs' counsel wrote an email to a representative at the bank, the response was to contact the bank telephonically to make any requests. (*See* Email of March 12, 2012, Attached as Exhibit D.)

that these documents speak to Plaintiff Parsi's damages claims, Defendant never subpoenaed the Swedish Bank for these records.

Defendant seeks to hold Plaintiffs to a more stringent standard than they apply to themselves in responding to discovery requests. In responding to a request from Plaintiffs for Defendant's records from a conviction in France, Defendant stated, "Defendant will attempt to obtain such records. However, please note that such are in France any may take some time to procure." The "some time" turned into over one year before any of the requested documents were turned over. Furthermore, there are still outstanding deficiencies with the documents that Defendant did provide. The Defendant acknowledged and witnessed first hand the complicated, time-consuming nature of obtaining documents from Europe. While Defendant allowed himself over one year to turn over any of the Defendant's conviction records from France, he brazenly assert that Plaintiffs' "chose to stonewall and prevaricate" by taking months to obtain Dr. Parsi's bank account records from Sweden, instead of an immediate response as Defendant expects. A record of Defendant's efforts, or lack thereof, regarding the production of Defendant's France conviction follows.

Defendant comes to this Court with unclean handsOn December 15, 2010, Defendant testified at his deposition about his record in France stemming from the sale of stolen perfume. (Daioleslam Dep. Vol. II, pp. 123-125). When initially asked about his prior arrest record in Europe, Defendant stated that he had none. (*Id.* at p. 11) It was only after a break, after consulting with counsel, that Defendant admitted to having a record in France. (*Id.* at pp. 123-125). After discussing the charges, Defendant stated that those records would be provided to Plaintiffs. (*Id.*) On February 4, 2011, Plaintiff contacted Defendant regarding outstanding discovery issues. (*See* February 4, 2011 Email, Attached as Exhibit E.) Among the issues

discussed was a request to provide Plaintiffs with the underlying documentation of the civil or criminal penalty Defendant received in France. (*Id.*) Defendant responded on February 7, 2011 stating, "Defendant will attempt to obtain such records. However, please note that such are in France any may take some time to procure." (*See* February 7, 2011 Email, Attached as Exhibit F.) On December 22, 2011, over one year after they were first requested, Plaintiffs notified Defendant that we had still yet to receive Defendant's police records from France. (*See* December 22, 2011 Letter, Attached as Exhibit G.) On December 28, 2011 Defendant produced an altered version of Defendant's conviction records. (*See* December 28, 2011 Email, Attached as Exhibit H, H-1[2].) This is either a criminal conviction or "prior bad act." However, Plaintiffs cannot decipher the record as the Defendant has refused to date to provide a legible, unaltered and unredacted record. Plaintiffs do know that he was punished with at least a fine or penalty. In April 2012, Plaintiffs requested an unaltered, legible version of these records from Defendant. (*See* April 26, 2012 Email, Attached as Exhibit I.) Nineteen months after stating the records would be provided, Defendant has yet to produce an unaltered version of these records.[3]

A district court may order sanctions for misconduct either pursuant to Rule 37 of the Federal Rules of Civil Procedure, which authorizes a court to assess a sanction for violation of a discovery order, or pursuant to the court's inherent power to "protect [its] integrity and prevent abuses of the judicial process." Shepherd v. American Broadcasting Cos., 62 F.3d 1469, 1474

---

[2] Upon production of the France conviction, Defendant requested that it be subject to a confidentiality agreement. Plaintiffs never agreed to this request and dispute that any portion of this record or document is confidential or subject to a confidentiality agreement. However, the record has been submitted to the Court under seal in an abundance of caution. By so doing, Plaintiffs do not concede to or agree that the document is confidential or subject to any confidentiality agreement.

[3] Unlike some witnesses whose records were subject to confidentiality on a case-by-case basis, the Defendant is a party. Defendant will seek to concoct a confidentiality agreement by reference to unrelated and express agreements of confidentiality for certain non-parties in this case. Such an argument by analysis is inapplicable and a stretch at best.

(D.C. Cir. 1995); *See also* Bizprolink, LLC. v. Am. Online, Inc., No. 04-1852, 2005 U.S. App. WL (4th Cir. July 27, 2005)[4] (Attached as Exhibit J). The "central requirement of Rule 37 is that any sanction must be just," and the "choice of sanction should be guided by the concept of proportionality." Bonds v. District of Columbia, 93 F.3d 801, 808 (D.C. Cir. 1996). Defendant displays no regard for this concept of proportionality, as he have been made aware on numerous occasions that this case is primarily about stopping him from publishing defamatory statements that Plaintiffs are literally agents of the Iranian Regime.[5] With this in mind, Defendant has propounded and pursued with impunity, discovery that has required several hundred thousand dollars of costs to be incurred by the Plaintiffs. This, in a case where at every turn, from the inception of this case, Plaintiffs have offered to resolve this matter, with the Defendant merely agreeing to stop saying that Plaintiffs are literally the agents of the Iranian Regime. Defendant's instant filing reflects the tactics employed by Defendant throughout this lawsuit. No production or response by Plaintiffs is sufficient all in order to avoid the merits and use discovery costs to win the case.

Plaintiffs made all efforts to obtain the requested documents, and in the end only four transactions were not produced. As there is no prejudice to the Defendant, and Plaintiffs took all

---

[4] The Fourth Circuit examined the lower court's dismissal of BizProLink's claim against America Online for discovery sanctions. The Court overturned the lower court because although the production of documentation supporting its damages claim was meager, it had complied with the discovery order by giving AOL all the documentation that it had. The Court concluded that a trial evidence limitation would have "allowed the merits of the damages claim to be adjudicated at trial, rather than in the context of a discovery dispute when it is unclear that a violation has occurred."

[5] For just two examples of such statements made by the Defendant in his articles, *see* **Hassan Dai, Ayatollahs' Lobby In Washington Offering Human Rights as a Negotiating Item** (June 25, 2008) http://english.iranianlobby.com/page1.php?id=2&bakhsh=ARTICLES (last visited July 17, 2012) and **Hassan Dai, The Iranian Lobby and the Israeli Decoy** (June 25 2008) http://english.iranianlobby.com/page1.php?id=8&bakhsh=ARTICLES (last visited July 17, 2012)

- 7 -

efforts to obtain the documents ordered to be produced, striking Dr. Parsi's claim for damages is not an appropriate remedy for the four transactions that were not produced.

Respectfully submitted,

_____/S/_____
A.P. Pishevar (D.C. Bar No. 451015)
226 North Adams Street
Rockville, MD 20850
(301) 279-8773
ap@pishevarlegal.com
Phone: (301) 279 – 8773
Fax:     (301) 279 – 7347
Counsel for the Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| TRITA PARSI, et al. | ) |
| Plaintiffs, | ) ) ) ) |
| v. | ) Civil Action No. 08 CV 00705 (JDB) |
| DAIOLESLAM SEID HASSAN, | ) ) ) |
| Defendant. | ) |

## CERTIFICATE OF SERVICE

I certify that on July 19, 2012, I served, via email, Plaintiffs Reply Memorandum to Defendant's Memorandum on Status of Production of Trita Parsi's Swedish Bank Account Records to:

>Timothy E. Kapshandy, Esquire
>Peter G. Jensen, Esquire
>SIDLEY AUSTIN LLP
>1501 K Street, N.W.
>Washington, D.C. 20005
>(202) 736-8000
>tkapshandy@sidley.com
>
>Attorneys for Defendant
>Seid Hassan Daioleslam
>
>_____/s/_____
>Afshin Pishevar
>226 North Adams Street
>Rockville, MD 20850
>(301) 279-8773
>ap@pishevarlegal.com
>
>Attorney for Plaintiff
>Trita Parsi
>National Iranian American Council