IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TRITA PARSI<br><br>and<br><br>NATIONAL IRANIAN AMERICAN COUNCIL<br><br>Plaintiffs,<br><br>v.<br><br>HASSAN SEID DAIOLESLAM,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil No. 08 CV 00705<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' OBJECTIONS TO DEFENDANT'S FINAL BILL OF COSTS**

COME NOW Plaintiffs, Dr. Trita Parsi and the National Iranian American Council ("NIAC") (collectively "NIAC"), by and through their counsel, Afshin Pishevar, Esquire and Pishevar & Associates, P.C., pursuant to the Court's Opinion and Order of September 13, 2012 (the "September 13 Order") [Dkt. No. 190], hereby file their Objections to Defendant's Final Bill of Costs [Dkt. No. 194], and state as follows[1]:

## I.  INTRODUCITON

As the Court stated in its September 13 Opinion, "defendant's expenditures in litigating this case have not been proportionate with the likely value of the case."  September 13 Order [Dkt. No. 190].   The lack of proportionality is most evident in Defendant's claimed amount for the forensic imaging costs, comprising over half of the total costs of the Defendant's Final Bill of

---

[1] Plaintiffs are not waiving any rights or arguments previously articulated in their pleadings, motions, and oral arguments.

Costs. Furthermore, the lack of proportionality is evident throughout the numerous exhibits to Defendant's Final Bill of Costs. The amount of time spent is excessive and unreasonable, both as to attorney and non-attorney time claimed. Numerous costs are unsubstantiated and lack any detail as to the actual work being done. More alarming are the numerous costs claimed by Defendant that are unrelated to the work for which Sanctions were awarded. Finally, Defendant requests costs under Rule 54(d). The Court rejected this request in its September 13 Opinion.

Because of the excessive hours claimed, inadequate documentation, failure to justify the number of hours sought, and improper billing entries, Defendant's Final Bill of Costs should be denied or substantially reduced.

## II. ARGUMENT

### A. FORENSIC IMAGING COSTS

The Defendant has the burden of proving that the fees and costs requested are reasonable, necessary and related to the award of sanctions. *See Role Models America, Inc. v. Brownlee*, 353 F.3d 962, 970 (D.C. Cir., 2004). A review of the one page summaries provided by PWC reveals a number of serious concerns regarding Defendant's decision to hide the itemized fees from the Court and Plaintiffs. The information contained in Price Waterhouse Coopers' (hereinafter "PWC") bill cannot be classified as work product, since it is being used to justify an award of costs and PWC should have been acting independently once the Court appointed PWC to perform forensic analysis services instead of acting as an agent of the Defendant. As such, the Defendant and PWC should have provided an itemized bill setting forth what the charges were for and should be compelled to provide all correspondence with PWC related to forensic imaging and analysis. Even if Defendant claims that the information is somehow privileged, Defendant could have provided an affidavit from its expert explaining what additional costs were involved.

Because Plaintiffs are the only party to provide actual evidence of additional potential costs, its experts opinion should be accepted by the Court to determine the final costs.

Defendant has only provided a two page summary of the invoices in his Final Bill of Costs related to the imaging. Most of the fees should be precluded because the invoices 1) do not itemize the fees of each employee and each activity, 2) include forensic <u>analysis</u> charges instead of just forensic <u>imaging</u> charges, 3) include fees for items and services that would have been necessary had PWC performed one imaging rather than three imagings, and 4) include items not related to analysis or imaging at all.

### i.    The Invoices Defendant Submits in Support of its Costs for the Last Two Rounds of Imaging are Woefully Deficient

Defendant provided only a summary sheet containing calculations of time spent by each PWC employee, without any explanation or description of the work completed by that employee. The Plaintiffs are left to guess as to what work was done by which employee.  Had Defendant provided an itemized bill Plaintiffs would be able to examine if the Manager, billing at higher rates than Staff members, is adequately delegating work.  From the inadequate bill provided, it is evident that Managers and Directors billed more time than any staff member and these fees should be precluded as the Defendant has failed to meet his burden of establishing the reasonableness of the fee request.

In addition, despite the fact that the forensic imaging of the devices occurred in Washington, DC, PWC charged for 8.1 hours or $4,576.00 for Eric Matrejek, 34.1 hours or $14,083.00 for Bryan Humphrey, 30.5 hours or $10,065.00 for Chazz Bicknell and 4 hours or $1,320.00 for Anthony Anderson during the second forensic imaging event.  These individuals are located in Chicago.  Based on the summary bills provided by Defendant for the work performed by PWC, it is unclear whether these individuals were involved in the imaging process,

especially since PWC does not include travel costs for these individuals, nor were their names on the chain of custody documents at the time of the imaging. The charges for these individuals were $30,044.00 out of the $36,615.93 fees for the second forensic imaging invoice without any explanation as to the scope of their work or why work was being performed in Chicago when all the imaging took place in Washington, DC. As such, those charges should be excluded from the Final Bill of Costs.

Similarly, with regard to the third imaging, most of the individuals on the bill were Chicago employees. Again, the summary bill does not provide any detail as to the work performed by those individuals and why work was performed in Chicago when all the imaging took place in Washington, DC. As such, Defendants should be precluded from collecting any fees associated with any of these individuals.

Defendant also did not provide PWC's invoices for the first round of imaging. The first bill is necessary to ensure that there is logical trend of narrowing the tasks and hours spent with each round of imaging. Remarkably, the third round of imaging was three times as expensive as the second round. With the current two invoices submitted, Plaintiffs are left to guess if the amount of work done was reasonable, necessary, customary within a reasonable degree of professional certainty. As such, Defendant has not met his burden and costs should not be awarded.

**ii.   Charges for Forensic Analysis of the Drives Should be Excluded**

The Court specifically differentiates between the costs for forensic imaging which it ordered recoverable in the Sanctions order; from the cost for forensic analysis which the Court ordered are not recoverable. As the Court stated;

> If defendant believes that forensic analysis shows that discoverable calendar entries were omitted he may now seek to recover those costs. As discussed below, the Court is not

persuaded that plaintiffs intentionally edited calendar entries, so fee-shifting is not appropriate on that basis. It is clear that some discoverable entries were not produced, but, as is also discussed below, it does not appear that there was any wholesale effort to wrongfully withhold entries from production. Hence in the Court's view shifting of all fees is not warranted on that basis either. Nonetheless, the Court concludes that some lesser amount of fee-shifting is justified.

September 13 Order at 4-5 [Dkt. No. 190]. The Court ordered that Plaintiffs must "reimburse defendant for the costs of the last two rounds of <u>imaging</u>." September 13 Order at 5 [Dkt. No. 190]. The Court appears to specifically limit costs against Plaintiffs for <u>imaging</u> and not <u>analysis</u>. The Court also alludes to further limiting the costs of forensic imaging only to items that are consistent with <u>Defendant('s) expla(nation) at the motions hearing that conducting three separate imaging sessions cost far more than conducting one larger imaging session</u>. *Id.*

Once again Defendant provides no basis or support for Tim Kapshandy's non-expert "testimony" that the costs for three imaging events are more costly than one event. This is consistent with Defendant's pattern of behavior throughout the discovery phases of the litigation. Namely; 1) make an outrageous allegation supported with little or no evidence, 2) hide any information that would contradict the allegation and 3) have the Court force Plaintiffs to defend the allegation with expensive experts. In the instant situation, Defendant provides no evidence other than a one page summary of PWC's fees and Mr. Kapshandy's non-expert testimony. Defendant appears to be hiding PWC's detailed bills because they likely do not support his allegation that the fees for the last two rounds of imaging were significantly larger than had there only been one imaging event.

Based on the Court's Order, Defendant should be barred from recovering costs associated with any of the analysis for the two imaging events and should only be allowed costs for <u>some</u> of the imaging. The third round of imaging provides a line item detailing a $40,551.00 charge for "analysis and reporting on data collected" and should therefore be excluded based on the fact

that fee shifting was only for forensic <u>imaging</u> and not for the <u>analysis</u>. The second imaging summary does not even provide a dollar amount for analysis but the description states that analysis work was involved and should therefore again be barred.  In fact most of the fees should be barred because Defendants failed to provide a nexus of costs to imaging let alone a nexus to the additional costs of three imaging events over one event.

Based on the foregoing, Defendant's Final Bill of Costs should be reduced by $40,551.00 for the third round of imaging, and all of the costs for the second round of imaging should denied as Defendant has failed to show that the amount claimed is reasonable and related to the actual imaging and not the actual analysis.

### iii.   Defendant Seeks to Recover Imaging Costs for Work Wholly Unrelated to the Imaging of the Drives

Defendant's one page breakdown of PWC's costs for each of the imaging events in question includes a number of items that were clearly precluded by the order.  The summary includes costs for hardware, presumably for hard drives to store images of the computer systems that were copied.  These fees would have been incurred had the imaging been performed in one round and should therefore be precluded in fee-shifting. (*See* Declaration of Marc Hirschfeld attached hereto as Exhibit A at ¶ 9.)

It also appears that PWC charged for imaging the shared drive incorrectly in the first instance and improperly initiating a series of two additional attempts to image the drive unnecessarily[2].  (*Id.* at ¶ 11.)  PWC includes a charge for "troubleshooting NIAC Server,"[3] and

---

[2] On April 6, 2011 NIAC provided PWC with the NAS device (also known as the "shared drive") at the offices of counsel for Defendant per the Court Order and PWC's request.  The device was to be returned at noon on April 7, 2011.  During that period, PWC not only created a "physical image" of the device which would contain all possible information necessary for PWC to perform its analysis, but PWC also wanted to retain the device and create a second <u>logical</u> image of the device at PWC headquarters, without providing a reason as to why this was necessary.  The next day, Defendant informed NIAC that PWC would need to image the device a third time while the device was connected to NIAC's network. These procedures and requests were completely inconsistent with forensic best

for "server hardware" of $576[4]. The "server hardware" charge on PWC's bill appears to be the purchase of the identical NAS device which would have never been necessary had PWC performed the reassembly correctly. The description of "troubleshooting the NIAC server" seems to be the analysis of their own inability to reassemble the NAS device properly. Despite clear evidence that PWC was at fault for the issues listed above, it appears that Defendant is now attempting to shift those costs to Plaintiffs.

Finally, there are a number of additional charges that are not related to the actual imaging of the devices. In the PWC November 11, 2011 bill, Defendant presents PWC charges of $12,477.70 for responding to the Omnibus Motion in November, two months after the imaging occurred. Clearly these fees cannot possibly be tied to the third forensic imaging. In addition, the charges of $826.00 presented for "reproduction of deliverables from the initial report" were for the first imaging event and cannot be tied to the second or third imaging events. Defendant include a $14,894.00 charge for reviewing and responding to Plaintiffs' memorandum which also has nothing to do with forensic imaging. The "planning and imaging of NIAC data sources"

___

practices. (Exhibit A at ¶ 10-11; *see also* PWC Report, Process for Physical Imaging of NAS Server, attached hereto as Exhibit B.) When NIAC requested an explanation for PWC's bizarre requests, Mr. Ross informed NIAC's counsel that powering up the device would destroy the settings on the drive and render it useless. PWC did not image the device logically despite Mr. Ross's previous representations to the contrary.

[3] After the April 7 imaging was completed, PWC stated that it properly re-assembled the NAS device. Ultimately, however, PWC admitted that this was not true and that PWC did not properly re-assemble the device. (Exhibit A at ¶ 12.) PWC returned the device several hours late on April 7 and the device was not operating correctly. When NIAC informed Mr. Ross that the device was nonfunctional, Mr. Ross stated that the device was working properly when it left PWC. This statement was in direct contradiction to Mr. Ross's previous statement that powering up the device while it was not attached to NIAC's network would destroy the network settings. Subsequently, a call was placed between NIAC, PWC and the Defendant, with the Defendant providing strict instructions controlling what PWC was allowed to say despite the fact that PWC was now a Court appointed third party independent. During that call, PWC acknowledged that the PWC technician did not assemble the NIAC device correctly. (*Id.*) PWC sent a technician to reseat the hard drives within the NIAC NAS device who acknowledged to NIAC staff that PWC had not re-installed the hard drives correctly in the first instance. (*See generally* Declaration of David Elliott, attached hereto as Exhibit C.)

[4] Due the PWC's "problems" with the imaging of the drives on April 7, PWC purchased an identical NAS device to test the issues and to determine what the problem was.

mentioned in the November 11, 2011 PWC should not have cost more than $1,500.00. (*See* Exhibit A at ¶ 6-8, 10.)  PWC, however, charged $30,859.00 which is not "reasonable" under any standard and is not supported by proper evidence.

Within the expenses section of the November bill, PWC includes $2,119.13 for meals, travel and lodging.  This was unnecessary in light of the fact that PWC has a local Washington DC office with qualified forensic analysts capable of performing the necessary imaging work. Additionally, the $1,147.99 fee for hard drives should also be excluded because PWC would have needed the same drives had they performed the forensic imaging in one event. (*Id*. at ¶ 9.)

Based on the foregoing, $72,116.09 out of $99,608.39 of fees from the November bill should be excluded for the reasons stated above. Of the remaining $30,859.69 fee for "planning and imaging of NIAC data sources including file server", Defendant's failed to provide a breakup of costs for imaging and planning as well as breaking out costs for the increased costs for having to perform a second and third imaging instead of one larger imaging event.  As such these fees should be excluded as well.  With regard to the May 25th bill, $30,044.00 of the costs were for individuals that were located in Chicago and therefore and should be excluded. $779.37 of expenses should be excluded because 1) the hard drives would have been a necessary purchase had the imaging been performed at one time and 2) the purchase of the "Server Hardware" was due to PWC own inability to properly reassemble the NAS device.  The only evidence that has been provided regarding potential costs of performing three imaging events rather than one event is Marc Hirschfeld's declaration that the costs should not exceed $1,500.00.

## B. EXPENSES FOR DEFENDANT'S SANCTIONS MOTION

Defendant has the burden of establishing the reasonableness of its fee request. *Role Models America, Inc. v. Brownlee*, 353 F.3d 962, 970 (D.C. Cir., 2004). The time spent by Defendant's attorneys is excessive and unreasonable. Furthermore, the legal assistant time involved was grossly excessive. Finally, "[s]upporting documentation `must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended." *Id.* As the Defendant failed to do so, the Bill of Costs should be denied or substantially reduced.

### i. Time Spent by Senior Partner is Excessive and Unreasonable.

In *Mitchell v. National RR Passenger Corp.,* CA 01-1866 (D.D.C. Aug. 20, 2003), Judge Facciola reduced the requested attorneys fees for two motions to compel, totaling 50 pages, which included replies, from $26,615.00 to $7,571.43. In so doing, Judge Facciola focused on the time the attorneys spent on the motions. Judge Facciola noted the importance of adequate delegation in analyzing the reasonableness and appropriateness of hours claimed. Judge Facciola elaborates that given the competitiveness of the legal market, a supervising senior attorney should not be doing the most labor intensive work and therefore "**an appropriate rate is one based on the ability of a supervising lawyer to review a ten page draft in an hour**." *Id.* (*emphasis added*). This formula applied by Judge Facciola in apportioning the fees under Federal Rule 37, should be applied to the hours claimed for the Sanctions Motion.

Counsel for Defendant does not adequately delegate the work associated with bringing its Sanctions Motion. Defendant's Final Bill of Cost shows that rather than reviewing and assigning tasks, Mr. Kapshandy, a Senior Partner, spent extensive time drafting Defendant's Omnibus Sanctions Motion. (*See* Ex. A. to Defendant's Final Bill of Costs.) In fact, Mr. Kapshandy spent

more time on Defendant's Sanctions Motion than the aggregate time of the two associates working on this motion, Tom Ross and HL Rogers.  Specifically, Mr. Kapshandy claims 39.8 hours on the Omnibus Sanctions Motion, whereas Mr. Ross and Mr. Rogers claim a combined total of 35.3 hours. This is even more egregious given that Counsel for Defendant has at least five associates working on this case at its disposal, and at least four non-legal staff.  *See* Def's. Exhibit J to Final Bill of Costs.  Therefore, pursuant to the formula applied by Judge Facciola and as more fully set forth in Plaintiffs' Exhibit D, Mr. Kapshandy's time should be reduced to 7.3 hours and the amount claimed should be reduced to $3467.50.  *See* Plaintiffs' Exhibit D.

### ii. Time Spent by Non-Attorney's is Excessive and Timesheets are Deficient.

This Circuit has made it clear that when analyzing an award of fees, the Court must examine whether the time records are adequately detailed and descriptive.  *See In re Sealed Case,* 890 F.2d 451, 455 (D.C.Cir.1989) (per curiam) ("[W]e note numerous instances of documentation and specification that do not adequately describe the legal work for which the client is being billed.  This makes it impossible for the court to verify the reasonableness of the billings, either as to the necessity of the particular service or the amount of time expended on a given legal task.")  In *Role Models America, Inc. v. Brownlee*, this Circuit scrutinized Appellants request for attorney's fees, stating,  "the law clerk's time records, for instance, give an identical one-line entry, '[r]esearch and writing for appellate brief,' on eight consecutive weekdays: the clerk billed 8.25, 6.25, 7.25, 8.25, 7.25, 4, 8, and 4.25 hours on those days. Such generic entries are inadequate to meet a fee applicant's 'heavy obligation to present well-documented claims.'"[5] The law clerk's timesheet submitted for the Omnibus Sanctions Motion contains numerous similar deficiencies that deserve a substantial reduction in the fees claimed.

---

[5] *Role Models America, Inc. v. Brownlee*, 353 F.3d 962, 970 (D.C. Cir., 2004)

The description of work by the non-attorney's gives identical one line entries for an entire three month period, similar to the *Role Models* case.  Not only are the entries repetitive, but they lack any description, so the Plaintiffs are left to guess what actual work was being done in the 166 hours spent by legal assistant Jeffrey Tisak, for example.   Mr. Tisak's entire timesheet for work related to the Omnibus Sanctions motion is comprised of 31 of the exact same entries, each one stating, "Review NIAC documents for upcoming sanctions motion as per T. Kapshandy."  An additional defect with Mr. Tisak's timesheet is a major inconsistency in his billing.  Under the expenses section of this bill, there is an entry for over two thousand dollars in Westlaw research costs for Mr. Tisak on September 8, 2011, yet he has no entry on his timesheet for doing any work on this day.  This same inconsistency is seen in an expense entry for Westlaw research by Meredith Dudley.  There is a Research service cost on November 10, 2011, however Ms. Dudley's time does not reflect doing any work on this day.  The two non-attorney timesheets reflect exclusively working on reviewing documents and preparing exhibits, yet they have thousands of dollars in legal research costs under the expenses section.

Finally, the amount of hours spent on this Sanctions Motion by the two non-attorneys is unreasonable and excessive.  Mr. Tisak and Ms. Dudley spent a total of 191.65 hours working on this one motion.   The only description of work for the 191 hours are repetitive entries of reviewing documents and preparing exhibits.

Plaintiffs request that these costs be denied or substantially reduced as Defendant does not meet his burden in showing that these costs were reasonable, necessary and related.

### iii.  Defendant Seeks to Recover Unrelated Costs.

Defendant seeks to recover costs for airfare to Washington, D.C. and lodging for Tim Kapshandy and Seid Daioleslam in July 2012.  These travel costs related to the July 6 Motions

Hearing are not related to the costs associated with bringing the Sanctions Motion, as on the same day the Parties argued several other motions, and therefore should be denied.  Additionally, and more troubling, is the fact that Defendant is also trying to recover costs for the Summary Judgment Motion.  Defendant's Bill of Costs includes an entry on September 8, 2011 stating, "draft and revise summary judgment motion." *See* Def's. Exhibit A to Final Bill of Costs.  As set out more fully in below, this is a recurring problem throughout Defendant's Bill of Costs, as Defendant seeks to recover costs for unrelated Motions.

Plaintiffs request that these costs be denied or substantially reduced as Defendant does not meet his burden in showing that these costs were reasonable, necessary and related.

### C. EXPENSES FOR DEFENDANT'S MOTION TO COMPEL "SERVER" PRODUCTION AND DEFENDANT'S MOTION TO COMPEL PRODUCTION OF SALESFORCE DATA

Defendant's Revised Bill of Cost for the two Motions to Compel is excessive and unreasonable, both as to attorney and non-attorney time spent, and should be denied or substantially reduced.  The amount of senior attorney time is not proportional and is disparate given the junior attorneys' time spent on the motions to compel.[6]  As set forth in more detail in Plaintiffs' Exhibit E and Plaintiffs' Reply to Defendant's Response to Initial and Supplemental Exceptions to Bill of Costs [Dkt. No. 149] Mr. Kapshandy's hours claimed should be reduced from 24.2 hours to 3.5 hours and the amount claimed should be reduced from $11,495.00 to $1,662.50 per the formula set out by Judge Facciola in *Mitchell v. National RR Passenger Corp.,* CA 01-1866 (D.D.C. Aug. 20, 2003).  Additionally, the non-attorney time claimed, over 80

---

[6] For a more detailed analysis of Plaintiffs' Exceptions to Defendant's Bill of Costs Pursuant to the Court's Order of August 30, 2011 see Reply to Defendant's Response to Plaintiffs' Initial and Supplemental Exceptions to Bill of Costs  [Dkt No. 149].

hours compiling exhibits, is grossly excessive for the types of exhibits involved in the motions.[7] The majority of these exhibits were either e-mails or previously produced exhibits.[8]

Additionally, for at least the second time, Defendant seeks to recover costs for work unrelated to the award of sanctions. Defendant's exhibit contains three entries for work related to its motion to compel damages information.[9] The Court did not award costs for this motion and attempting to recover is disingenuous and untruthful.

### D. COSTS RECOVERABLE UNDER RULE 54 (d)

Defendant states that he is entitled to costs under Federal Rule of Civil Procedure 54(d). That rule provides that "unless a federal statute, these rules, or court order provides otherwise, costs--other than attorney's fees--should be allowed to the prevailing party." Defendant goes on to state that these costs were not addressed in the Court's September 13 Order. In the September 13 Order the Court specifically stated, "At the close of his sanctions motion, defendant requests that the Court 'impos[e] as sanctions all fees and expenses associated with the defense of this case.' The Court declines to do so...the numerous issue-specific sanctions awards that the Court has made are all that is appropriate here." (September 13 Sanctions Opinion, Dkt. No. 190 at 24-25).

Based on this, Defendant's request for costs under Rule 54 (d) should be denied as this issue was already decided by the Court. The Defendant claims in his Bill of Cost that the

---

[7] *Id.*

[8] *Id.*

[9] On August 11, 2011 there is an entry stating, "review and revise reply to damages motion to compel." On August 8, 2011 there are two separate entries stating, "review and revise damages motion to compel server" and "review and revise damages motion to compel membership." See Def's Final Bill of Costs, Exhibit C.

amount he should recover under Fed. R. Civ. Pro. 54(d) is $25,586.55.  Since the Court declined to award those costs, the entire $25,586.55 should be denied.

### E. EXPENSES FOR MARCH 29, 2011 ORDER

Defendant's Bill of Costs related to the March 29, 2011 Order contain numerous deficiencies in timekeeping in addition to the work being inadequately delegated.  Again, Senior Partner Tim Kapshandy claims more hours worked on this issue than any of the other numerous associates.  In fact, Mr. Kapshandy claims 16.4 hours, primarily reviewing and revising the joint status report.  This amount is almost equivalent to the total time spent by the other four associates working on this issue.  See Def's. Exhibit E.  As Judge Facciola noted in *Mitchell*, "I assume, as I must, that the work given the senior by the junior will not require substantial revision." The lack of delegation and excessive hours by Senior Partner Tim Kapshandy is not acceptable and Defendant's Bill of Costs should be denied or substantially reduced.

Additionally, Legal Assistant Jeffrey Tisak claims 15.4 hours working on tasks related to this March 29, 2011 Order. These hours are comprised of numerous entries, each one stating, "review NIAC documents as per T. Kapshandy."   Not only are the entries repetitive, but they lack any description, so the Plaintiffs are left to guess what actual work was being done and if that work was related to obtaining the March 29, 2011 Order.  Plaintiffs request that these costs be denied or substantially reduced as Defendant does not meet his burden in showing that these costs were reasonable, necessary and related.

### F. THIRD-PARTY SUBPOENAS

The costs under this category are primarily for fees related to service on various subpoenas.  Defendant provides no underlying bill or documentation for the costs associated with the service of these subpoenas. There is no explanation as to why several of the subpoenas were

thousands dollars to effectuate service.   Plaintiffs request that these costs be denied or substantially reduced as Defendant does not meet his burden in showing that these costs were reasonable, necessary and related.

### G. EXPENSES FOR TALEBI DEPOSITION

Legal Assistant Jeffrey Tisak claims 37 hours of work related to the Talebi Deposition. With the exception of one entry, all of Mr. Tisak's time consists of entries stating, "Prepare for Talebi deposition as per T. Kapshandy."  Not only are the entries repetitive, but they lack any description, so the Plaintiffs are left to guess what actual work was being done.  Plaintiffs request that these costs be denied or substantially reduced as Defendant does not meet his burden in showing that these costs were reasonable, necessary and related.

### H. EXPENSES FOR PARSI DEPOSITION

Legal Assistant Jeffrey Tisak claims 51.5 hours of work related to the Parsi Deposition. All of Mr. Tisak's time consists of entries stating, "Review NIAC documents as per T. Kapshandy."  Not only are the entries repetitive, but they lack any description, so the Plaintiffs are left to guess what actual work was being done and if that work was related to the Parsi deposition preparation.  Plaintiffs request that these costs be denied or substantially reduced as Defendant does not meet his burden in showing that these costs were reasonable, necessary and related.

### I. EXPENSES FOR BLOUT DEPOSITION

Legal Assistant Jeffrey Tisak claims 24.2 hours of work related to the Blout Deposition. All of Mr. Tisak's time consists of entries stating, "Review NIAC documents as per T. Kapshandy."  Not only are the entries repetitive, but they lack any description, so the Plaintiffs are left to guess what actual work was being done and if that work was related to the Blout

deposition preparation.  Plaintiffs request that these costs be denied or substantially reduced as Defendant does not meet his burden in showing that these costs were reasonable, necessary and related.

### III.CONCLUSION

As the Defendant has failed to show that his Final Bill of Cost is reasonable, necessary and related, and because of Defendant's overreaching and unclean hands in seeking costs above and beyond those permitted by the Court, Defendant's Bill of Costs should be denied or substantially reduced.

Respectfully submitted,

_____/S/_____

A.P. Pishevar (D.C. Bar No. 451015)
**PISHEVAR & ASSOCIATES, P.C.**
226 N. Adams Street
Rockville, MD 20850
Phone: (301) 279 – 8773
Fax:    (301) 279 – 7347
Counsel for the Plaintiffs

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TRITA PARSI, et al.** | ) |
| | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) **Civil Action No. 08 CV 00705 (JDB)** |
| | ) |
| **DAIOLESLAM SEID HASSAN,** | ) |
| | ) |
| **Defendant.** | ) |

## CERTIFICATE OF SERVICE

I certify that on October 26, 2012, I served, via email, Plaintiffs' Exceptions to Defendant's Final Bill of Costs and Proposed Order to:

> Timothy E. Kapshandy, Esquire
> Peter G. Jensen, Esquire
> SIDLEY AUSTIN LLP
> 1501 K Street, N.W.
> Washington, D.C. 20005
> (202) 736-8000
> tkapshandy@sidley.com
>
> Attorneys for Defendant
> Seid Hassan Daioleslam

> _____/s/_____
> Afshin Pishevar
> 226 N. Adams Street
> Rockville, Maryland 2085
> (301) 279-8773
> ap@pishevarlegal.com
>
> Attorneys for Plaintiff
> Trita Parsi
> National Iranian American Council