UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TRITA PARSI <br><br> and <br><br> NATIONAL IRANIAN AMERICAN COUNCIL, <br>         Plaintiffs, <br><br> v. <br><br> DAIOLESLAM SEID HASSAN, <br>         Defendant. | CIVIL NO. 08 CV 00705 (JDB) |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF HIS FINAL
BILL OF RECOVERABLE COSTS PURSUANT TO THE
COURT'S ORDER OF SEPTEMBER 13, 2012**

      Plaintiffs' Objections to Defendant's Final Bill of Recoverable Costs ("Objections") [Docket No. 198] raise essentially four arguments:

      1.     The costs of the work by PricewaterhouseCoopers ("PwC") are not recoverable under the Court's Order of September 13, 2012 (the "September 13 Order") [Docket No. 191];

      2.     Senior counsel's time charged for the two motions to compel and Defendant's Omnibus Sanctions Motion (the "Sanctions Motion") [Docket No. 143] of 24 minutes per page (51 hours for 129 pages) was unreasonable and excessive and should be limited to six minutes per page;

      3.     Rule 54(d) costs traditionally permitted to the prevailing party were specifically precluded by the September 13 Order; and

> 4. The costs of the third-party subpoenas were excessive and not substantiated.

All of these arguments are meritless.

### A. Plaintiffs' Argument that the Court did not Permit Fee Shifting for the Costs of the Second and Third Forensic Analyses is Flawed

Plaintiffs argue that Defendant may only recover part of the costs of the imaging of the wrongfully withheld calendar files. (Objections, pp. 2-7.) This interpretation, of course, is absurd in that it ignores the fact that, per Plaintiffs' insistence, Defendant was not able to look at those forensic images of their hard drives. Rather, the Court's July 1, 2010 Order (the "July 1 Order") [Docket No. 68] specifically limited Defendant's access to calendar files, and then further specified certain analyses that had to be performed. The Court's later forensic imaging orders of March 29, 2011, and September 7, 2011, imposed the same requirements but expanded the files accessible to Defendant to include registry information. It was upon this latter forensic data, in fact, that the Court based its finding that Parsi gave false interrogatory answers about when he used the machine that was supposedly his desktop. (September 13 Order, p. 23.)

The steps taken by PwC to comply with the Court's imaging orders are set forth in detail Exhibit A to the Sanctions Motion, and the complexity of these steps is patent.[1] A mere forensic image of each of the machines that were eventually produced on three separate occasions would have been worthless to Defendant without the Court-mandated processing. It would have been akin to interpreting the April 5, 2011 order requiring NIAC to turn over all 5,500 Babak Talebi emails to say that NIAC had to produce the wrongfully withheld Talebi emails but that

---

[1] The affidavit of Mr. Hirschfeld (Objections, Ex. A) asserting that the imaging should have taken only five hours per drive completely ignores the restrictions imposed by the Court's orders. The Court will recall that while Defendant requested complete forensic imagings, Plaintiffs insisted on these restrictions, which greatly complicated the imaging process.

2

Defendant was not permitted to read them. The Court's various imaging orders clearly contemplated that PwC would have to process the images to make them reviewable to Defendant.

Plaintiffs miss the point of the taxing the costs of the hard drives. During the imaging process, Plaintiffs insisted that they maintain custody of the hard drives (which PwC had purchased) containing the forensic images. Defendant agreed to this while the case was pending, but as to the final disposition of the drives, Defendant gave Plaintiffs a choice—pay for the drives or return them after wiping the data. (See Exs. 1-A, 1-B) By choosing to keep the drives, Plaintiffs agreed to pay for them. They certainly are not entitled to the benefit of approximately twenty, free hard drives, especially given that they are only in this position of possessing these drives as a result of their own repeated discovery abuses.

Plaintiffs' objections to the costs of the second imaging also completely miss the point. That whole process was a wild goose chase caused by Plaintiffs' parsing of the Court's original order to produce their server/shared drive. After repeatedly telling the Court that they had no server, Plaintiffs—hoping to evade yet again the July 1 Order—produced a new, second server that was not even in use during the time period at issue or in existence when the imaging was ordered. (See Sanctions Motion, pp. 9-12.) Accordingly, this drive was not even subjected to forensic analysis once preliminary analysis showed that Plaintiffs had pulled a switcheroo.

Finally, as to the third imaging, the Court will recall that it was this forensic analysis that revealed: (i) that the server/shared drive contained hundreds of calendar entries, even though Plaintiffs had represented that it contained none; (ii) that Parsi had given false interrogatory answers about when he used his computer; (iii) that the machine Plaintiffs told the Court was merely one of a number of "interns' machines" was the original server that they had twice

avoided producing; and (iv) that Talebi's Outlook files were, in fact, located on one of the "interns' machines" and not a recently-discovered database, as they had told the Court.  (See Sanctions Motion, Ex. XX.)  In fact, Defendant only received PwC's report the day his Sanctions Motion was due (and only one week after the imaging), and he was not able to subject the drives imaged during the third imaging to the sort of forensic analysis the first imaging entailed.  (See Docket No. 143, Ex. A.)  Putting aside Plaintiffs' strained interpretation of the imaging process specified by the Court, this work is independently recoverable under the provisions of the September 13 Order allowing expenses relating to the motions to compel production of the server and the Talebi emails.  The same is true of any PwC charges for assistance in reviewing and responding to assertions in Plaintiffs' brief opposing the Sanctions Motion.  (Objections, p. 7.)

> **B.   Plaintiffs' Argument That Senior Counsel's 51 Hours for 129 Pages of Briefing is Excessive and Should be Reduced to Six Minutes Per Page is Absurd**

Plaintiffs rely on a distorted application of Judge Facciola's opinion in <u>Mitchell v. National RR Passenger Corp.</u>, 217 F.R.D. 53 (D.D.C. 2003), to argue that senior counsel's time should be limited to six minutes per page.  The key to the analysis under <u>Mitchell</u> is whether more junior attorneys could have done the work more cheaply, albeit not as quickly.  <u>Mitchell</u>, 218 F.R.D. at 58.  "Clients will not pay $350 for a lawyer to stand over a Xerox machine."  <u>Id.</u>

Here, the attorney hours claimed are <u>per se</u> reasonable given the (i) complexity of the work product itself and (ii) substantial additional effort necessitated by Plaintiffs' repeated discovery abuses, which included repeated misrepresentations to the Court and false statements under oath.  In total, 111 attorney hours were billed for 129 pages of briefing on the sanctions and server/member issues, as follows:

4

| Briefing | Pages[2] | Attorney Hours | Partner Hours | Associate Hours |
|---|---|---|---|---|
| Sanctions | 73 | 68 | 24 | 44 |
| Server/Member | 48 | 43 | 27 | 16 |
| *Totals* | *129* | *111* | *51* | *60* |

(Defendant, as required by the September 13 Order, claimed only 60% of the hours spent on the Sanctions Motion. Plaintiffs' response incorrectly assumed that Defendant assessed 100% of the time devoted to that motion.)[3] The ratio of less than 1:1 total attorney hours to pages here is eminently reasonable in light of Mitchell, in which Judge Facciola permitted nearly a 2:1 ratio. Under Mitchell, even another 140 hours (or approximately $40,000) would have been reasonable. This ratio is also consistent with what other courts have done. The Third Circuit has held that it was reasonable to claim 120 hours of work by multiple lawyers for a 41-page brief (which calculates to approximately three hours per page) on one uncomplicated issue that had been briefed by parties and discussed at length in a "well-written and thorough opinion" at the district court level. Maldonado v. Houstoun, 256 F.3d 181, 185-87 (3d Cir. 2001); see also Walton v. Massanari, 177 F. Supp. 2d 359, 365 (E.D. Pa. 2001) (two hours per page on a brief was reasonable); Dunn v. Shalala, 1995 WL 23116, at *6 (N.D. Ill. 1995) (1.5 hours per page on a motion was reasonable).

---

[2] Page counts were compiled from those listed on the District of Columbia PACER filings for the (i) Sanctions Motion, (ii) Sanctions Motion reply [Docket No. 159], (iii) objections to Sanctions Motion surreply [Docket No. 163], (iv) server motion [Docket No. 112], (v) server motion reply [Docket No. 137], (vii) membership motion [Docket No. 113], and (viii) membership motion reply [Docket No. 136]. (See Ex. 2.)

[3] Plaintiffs do not object to Defendant's claims for fees associated with the Talebi emails and, accordingly, those should be awarded as claimed in the bill of costs.

Moreover, Plaintiffs fail to account for the complexity of the factual issues in these motions, almost all of which were caused by their carelessness and obfuscation. In addition to having to write **129** pages of briefs, defense counsel had to review, analyze, and carefully compile over **2,000** pages of exhibits for these motions. Because of the complexity of the issues and the breadth of his knowledge, it was more efficient to have senior counsel do most of the drafting. Such a decision was prudent in this case. <u>See</u>, <u>e.g.</u>, <u>Blackman v. District of Columbia</u>, 677 F. Supp. 2d 169, 178 (D.D.C. 2010) (rejecting an argument that "too much of the work . . . was done by the most expensive attorneys" because much of the work required the maturity and judgment provided by a more senior attorney).

Another major, fatal flaw in Plaintiffs' analysis is that they completely wrote off 80% of senior counsel's time rather than (as Judge Facciola did in <u>Mitchell</u>) <u>transferring</u> the time to the associate rate. Even if one accepts the untenable position that senior counsel should have spent only six minutes reviewing each page drafted by associates, it is absurd to assume that these drafts spontaneously appeared out of thin air (as Defendant's counsel dearly wish would have been the case). Accordingly, Plaintiffs—instead of simply subtracting the forty hours of senior counsel's time—should have <u>at least</u> charged the time at the blended associate rate of $287/hour.

Plaintiffs also ignore the fact that Defendant already used drastically discounted hourly rates (over 30% below standard rates) in computing his costs. If one uses the standard rate for the associates' time, while keeping senior counsel's hourly rate at the discounted $475 per hour used, the differential is only $50 per hour. As such, even if all forty hours charged by senior counsel were charged at the standard average rate for the associates, the total reduction would only be $2,000.00.

Lastly, Plaintiffs fail to recognize a number of other facts that make the Defendant's assessed costs reasonable and conservative.  For instance, no time was charged at all for any counsel to attend and prepare for the July 6, 2012 hearing or for Defendant's objecting to Plaintiffs' surreply [Docket No. 163], which objection the Court granted in a minute order on November 30, 2011.  Plaintiffs also ignore that times have changed in the legal market since Judge Facciola practiced.  His statement that it is the "universal practice" in the bar for junior associates to draft briefs and do research, Mitchell, 218 F.R.D. at 59, is contrary to recent publications about the legal market.  See, e.g., David Segal, What They Don't Teach Law Students: Lawyering, N. Y. TIMES, Nov. 19, 2011, at A1; Jennifer Smith, Law Firms Face Fresh Backlash Over Fees, WALL ST. J., Oct. 22, 2012, at A1; Sherry Krabin, Law Firms Prepare Their New Associates, CHICAGO LAWYER MAGAZINE, Sept. 1, 2012; Joe Palazzolo, First-Year Associates: Are They Worth It?, WALL ST. J., Oct. 17, 2011.

Plaintiffs also fail to account for the complexity of the factual issues covered by these motions.  The Sanctions Motion and the three motions to compel included over 2,000 pages of exhibits.  Reviewing, analyzing, and compiling these exhibits took many painstaking hours─as the Court can no doubt attest from its own review.[4]  Plaintiffs have no one but themselves to blame for the inordinate amount of unnecessary work caused by their misconduct, which could have all been avoided had Plaintiffs simply honored their obligations under the Federal Rules of Civil Procedure.  Now is not the time to raise that issue.

---

[4] This also explains the nearly 250 hours of legal assistant time.  At over 2,000 pages, this amounts to only seven minutes per page.  And, as the legal assistant time was discounted 50% off standard rates, Plaintiffs received a $23,750 benefit from that conservative adjustment.  They do not seriously suggest that such a massive amount of evidence could have been accurately reviewed and compiled in less than that amount of time.

7

### C.  The Court Never Ruled that Traditional Rule 54(d) Costs Were Not Recoverable

Plaintiffs cite no cases, nor could they, for their proposition that Rule 54(d) costs such as transcripts and witness fees are not recoverable where the Court has ordered sanctions for motions to compel and other discovery abuses. (Objections, pp. 13-14.) Instead, they argue that since the Court denied Defendant's request for all of his fees and expenses as a <u>sanction</u> under Rules 11, 26, and 37, the Court must have held that he could not recover traditional costs awarded to the prevailing party under Rule 54(d). The Court, of course, never made such a ruling. Moreover, to do so would eviscerate the punitive and deterrent effect of Rule 37 sanctions. And, it must be noted, Defendant carefully avoided double counting costs ordinarily recoverable under Rule 54(d) that were already awarded as sanctions. Accordingly, Defendant should be allowed to recover Rule 54(b) costs traditionally taxed to the prevailing party. (<u>See</u> Ex. 3 for copies of the supporting documentation.) It should be noted that the supporting documentation reflects that Defendant understated Mr. Gardiner's fees as $150, rather than the $3,900 he actually charged the Defendant.[5]

### D. The Costs of the Third-Party Subpoenas Should Stand as Ordered

Plaintiffs argue that they cannot verify the validity of the costs relating to third-party subpoenas, as no underlying documents were provided. (<u>See</u> Objections, pp. 14-15.) This could have been resolved by simply asking Defendant for copies. Attached as Ex. 4 are copies of the supporting documentation. Plaintiffs' objections to some of the higher costs are easily explained. The $3,344.00 charge for serving Mohammad Mansouri resulted from Mansouri

---

[5] Defendant does agree that the 0.80 hours charged for work on the summary judgment briefing on September 8, 2011 and November 11, 2011 was incorrectly included in the bill of costs and, accordingly, the award should be reduced by $313. Correcting for the understatement of Gardiner's fees ($3,750) renders the final total as $284,223.34.

being evasive and, hence, expensive to serve (even at the drastically discounted pro bono rate charged by the investigator). Again, Plaintiffs have no one but themselves to blame for this fact. They claimed (as they did with Babak Talebi and Narimon Safavi) that they did not represent Mansouri and that Defendant would have to subpoena him, only to jump in and represent him at the last minute after Defendant finally located and served him. They could have totally avoided the service costs for all three of these witnesses by voluntarily producing them.

### E.  Conclusion

Plaintiffs do not object to any of counsels' time spent at the depositions or post-judgment interest, and only meekly respond to Defendant's request for prejudgment interest by including a denial of such in their proposed order. They posit no authority for this. Thus, all of those costs and interest should be taxed. Accordingly, Defendant respectfully requests that his costs of $284,223.34 be taxed along with pre- and post-judgment interest as permitted by D.C. CODE § 28-3302 and 28 U.S.C. § 1961, respectively.

Submitted this 9th day of November, 2012.

/s/ Thomas E. Ross
Thomas E. Ross (D.C. Bar No. 994275)
Timothy E. Kapshandy (Illinois Bar No. 6180926, admitted *pro hac vice*)
Peter Jensen (D.C. Bar No. 982599)
HL Rogers (D.C. Bar No. 974462)
SIDLEY AUSTIN LLP
1501 K St., N.W.
Washington, D.C. 20005
(202) 736-8000
tom.ross@sidley.com

Attorneys for Defendant
Seid Hassan Daioleslam

# CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2012, I caused true and correct copies of the foregoing **REPLY BRIEF IN SUPPORT OF HIS FINAL BILL OF RECOVERABLE COSTS PURSUANT TO COURT'S ORDER OF SEPTEMBER 13, 2012** to be served by e-mail on:

> Afshin Pishevar
> Farrohk Mohammadi
> 600 East Jefferson St., Ste 316
> Rockville, MD 20852
> (301) 279-8773
> ap@pishevarlegal.com
> fm@pishevarlegal.com

Dated:  November 9, 2012                    /s/  Thomas E. Ross                    .
Thomas E. Ross (D.C. Bar No. 994275)
Timothy E. Kapshandy (Illinois Bar No. 06180926, admitted *pro hac vice*)
Peter G. Jensen (D.C. Bar No. 982599)
HL Rogers (D.C. Bar No. 974462)

SIDLEY AUSTIN LLP
1501 K St., N.W.
Washington, D.C.  20005
(202) 736-8000
tom.ross@sidley.com

Attorneys for Defendant
Seid Hassan Daioleslam