```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA

  TRITA PARSI, et al.,            .
                                  .
           Plaintiff,             .
                                  .  CA No. 08-0705 (JDB)
      v.                          .
                                  .
  DAIOLESLAM SEID HASSAN,         .  Washington, D.C.
                                  .  Monday, November 2, 2009
           Defendant.            .  9:00 a.m.
                                  .
  . . . . . . . . . . . . . . .   .
```

                   TRANSCRIPT OF STATUS HEARING
                BEFORE THE HONORABLE JOHN D. BATES
                  UNITED STATES DISTRICT JUDGE


 APPEARANCES:

 For the Plaintiffs:              AFSHIN PISHEVAR, ESQ.
                                  PATRICK PARSA, ESQ.
                                  Pishevar & Associates, PC
                                  600 East Jefferson Street
                                  Suite 316
                                  Rockville, MD 20852
                                  (301) 279-8773

 For the Defendant:              TIMOTHY E. KAPSHANDY, ESQ.
                                  Sidley Austin, LLP
                                  One South Dearborn
                                  Chicago, IL 60603
                                  (312) 853-7643

                                  BRADFORD A. BERENSON, ESQ.
                                  Sidley Austin, LLP
                                  1501 K Street, NW
                                  Washington, DC 20005
                                  (202) 736-8000

 Court Reporter:                 BRYAN A. WAYNE, RPR, CRR
                                  Official Court Reporter
                                  U.S. Courthouse, Room 4704-A
                                  333 Constitution Avenue, NW
                                  Washington, DC 20001
                                  (202) 354-3186


Proceedings reported by machine shorthand.  Transcript produced
by computer-aided transcription.

P R O C E E D I N G S

THE DEPUTY CLERK:  Your Honor, we have civil action 08-705, Trita Parsi, et al., versus Daioleslam Seid Hassan. I'm going to ask counsel to approach the lectern and identify yourselves, starting at the plaintiff's table.

MR. PISHEVAR:  Good morning, Your Honor. Afshin Pishevar on behalf of NIAC and Trita Parsi.  With me is Mr. Patrick Parsa.  From NIAC, David Elliott is here.

THE COURT:  Good morning to all of you.

MR. KAPSHANDY:  Good morning, Your Honor. Timothy Kapshandy, Sidley Austin, on behalf of the defendant, and my co-counsel Brad Berenson.

THE COURT:  Good morning to you as well.

We were here on a scheduled status call.  We've had a few bumps occur, one of which has been, it seems, resolved with respect to the matter that a status report was filed a couple days ago, and then there's another matter that came to my attention over the weekend and this morning on a motion for an emergency order filed by the plaintiff.

Let me start, however, with the normal reasons for us getting together this morning, and that is where we are in the discovery process and whether this case is on schedule proceeding with the discovery as the scheduling order had indicated.  The plaintiff's perspective?

MR. PISHEVAR:  I think we are on schedule.

```
 1    We've produced discovery, and even in our supplemental discovery
 2    there are some items which were subpoenaed that we're in
 3    discussions as to producing them; those are the accounting
 4    records.
 5              THE COURT:  At the moment, though, the schedule that
 6    has discovery ending in mid-March, I think March 10, is
 7    something that you would say should stay in place?
 8              MR. PISHEVAR:  Yes, Your Honor.
 9              THE COURT:  All right.  The defendant's perspective?
10              MR. KAPSHANDY:  Sure.  That's pretty fair.  There is a
11    point on the accounting records, Your Honor.  These were
12    subpoenaed from the accountant -- Ms. Nikki is her name -- in
13    June.  Rather than filing a motion for protective order to
14    quash, the plaintiffs instructed her to send them the records.
15        We met with them on August 3.  They were asserting things
16    such as an accountant-client privilege, which D.C. doesn't
17    recognize, and they undertook to produce those.  These records
18    are all in QuickBooks and can be easily produced through an
19    electronic backup in five minutes.  Since August 3, we've
20    repeatedly asked for those, and they've not been turned over.
21        As far as the discovery, we were scheduled to depose a
22    legislative director this morning, but she canceled at the last
23    minute on Friday.  Other than that, we should be able to do all
24    of the depositions by mid-March.
25              THE COURT:  All right.  You still have a fair amount
```

1    of time left before mid-March.

2              MR. KAPSHANDY:  Right.  Well, we would like to get the

3    accounting records.  It's been six months, and frankly, I think

4    it's inappropriate for them not to file a motion to quash but

5    rather instruct her to send them the records and sit on them.

6              THE COURT:  All right.  It does sound to me like that

7    issue should be resolved, should be resolved promptly, and if

8    for some reason the plaintiff does not produce those materials,

9    I would expect to see a motion in the near future.  If the

10   nonproduction is without sufficient support, then you could

11   expect to see sanctions imposed for such a motion.  So work it

12   out.

13             MR. PISHEVAR:  Yes, Your Honor.

14             THE COURT:  Now, that brings us to this motion for

15   an emergency protective order to which the defendant has not had

16   a chance to respond.  I glanced at the materials this morning.

17   I did not see them over the weekend.  I guess my initial

18   question, just so I'm clear from the materials, which aren't all

19   that self-explanatory, did this e-mail actually go from you,

20   Mr. Kapshandy, to the plaintiff?

21             MR. KAPSHANDY:  May I address the Court, Your Honor?

22             THE COURT:  Yes.

23             MR. KAPSHANDY:  It was an inadvertently-sent e-mail.

24   The e-mail was intended for our client, but he had embedded in

25   it an e-mail from 2005 from Mr. Parsi regarding some meetings

1   with the State Department official.  When I responded, it went

2   unknowingly to him.  I got --

3          THE COURT:  I figured it was a mistake.

4          MR. KAPSHANDY:  Well, because of the serious nature of

5   the accusations, we'd obviously like an opportunity to respond.

6   If we're getting into it today on the merits, my co-counsel --

7          THE COURT:  I'm not going to get into it on the merits

8   except with one possible issue, but I just wanted to clarify

9   whether that was an e-mail that was actually sent.

10          MR. KAPSHANDY:  And frankly, we've requested three

11   times that it be deleted and returned pursuant to D.C. Bar

12   opinion and a number of other agreements we've had in the case,

13   but they instead insisted on filing the motion.  They gave us

14   two hours to respond on Friday night, to which we did respond

15   that we would like to meet and confer, and they filed the motion

16   notwithstanding and attaching the communication that was

17   inadvertently sent.

18          THE COURT:  All right.  So we have that situation.

19   The plaintiff has filed an emergency motion.  When would you

20   like to file a response?

21          MR. KAPSHANDY:  I think we can file something by this

22   Friday, Your Honor.

23          THE COURT:  By Friday, all right.  So we'll look for a

24   response by Friday, and when would you like to file a reply, if

25   you wish to file a reply, to that opposition?  I assume it will

1    be an opposition.

2              MR. PISHEVAR:  Yes, Your Honor.  If we could have till

3    the Wednesday after that.

4              THE COURT:  So that Friday is what date, Mr. Bradley?

5              THE DEPUTY CLERK:  That's the 6th, Your Honor.

6              THE COURT:  And the Wednesday is?

7              THE DEPUTY CLERK:  The 11th.

8              THE COURT:  So that'll be briefing on this motion.

9    In the meantime, it's captioned as an emergency protective order

10   motion.  One of the issues that may be posed by the motion and

11   certainly is referred to is whether there are any D.C. Rules of

12   Professional Conduct that apply here and perhaps have been

13   violated, and I don't mean the contact with the client; I mean

14   the other issue under Rule 3.6.

15       I'm just wondering whether, for everyone's sake, it might

16   be better if I put an order in place until this motion is

17   resolved, and then the question will be what the order would

18   cover.  It could cover any further -- if there has been some

19   already.  I don't want to assume anything from having read only

20   one side's view of the case, but it could cover any further

21   dissemination of discovery materials in this case.

22       So I throw that out to hear from both sides as to whether

23   you would like or are opposed to such an order, and it would be

24   a place-holding order, a status-quo type order, that just

25   avoided any further dissemination.

1    Now, the second part of it could be in the nature of a gag

2  order.  I don't issue gag orders, though.  It's rare that you

3  would see something like that coming from this court.  I don't

4  think I have material in front of me that would say that parties

5  or their counsel are prohibited from speaking with the press.

6  It's going to take more to get me to that point.

7    On the other hand, if the claim by the plaintiff were both

8  factually and legally valid, then it might be wise for defense

9  counsel to avoid further -- if there have been any already --

10  contacts with the press.  That's if the factual and legal claim

11  made by the plaintiff is valid.  But I'll have to leave that to

12  others -- namely you all -- to determine contacts with the press.

13    I ask whether it would be wise for me to enter an order

14  that simply is in the nature of a protective order that says

15  discovery materials shall not be further disseminated outside of

16  the lawyers and the parties for the case until further order of

17  the court.  Mr. Pishevar.

18    MR. PISHEVAR:  Absolutely, Your Honor.  It's our

19  position that they are using discovery not as a litigation tool

20  but as a fishing expedition to get more material to get out to

21  the public.  So I think that's not the purpose or intent or

22  spirit of --

23    THE COURT:  I'm not looking for an argument on it.

24    MR. PISHEVAR:  Yes, Your Honor.  The answer is yes.

25    THE COURT:  The answer is yes, okay.  And from the

1    defense perspective, Mr. Berenson.

2            MR. BERENSON:  Yes.  Thank you, Your Honor.  We would

3    be opposed even to an interim order of that sort.  I want to

4    just briefly touch on two things.

5        First, with respect to the suggestion that there's some

6    extrajudicial statement here, the statement in question of my

7    partner, Mr. Kapshandy, was a privileged and confidential

8    communication to his client, not a communication with any member

9    of the press, not a extrajudicial statement about this proceeding.

10        It was legal advice to his client with respect to whether a

11   particular document was or was not covered by existing

12   confidentiality orders in the case.  So I don't think we have

13   any genuine issue here with respect to violation of the D.C. Bar

14   rule with respect to extrajudicial statements.

15        On the notion on prohibiting dissemination of the discovery

16   materials while this motion is briefed and decided, obviously

17   that's just a brief period of time, but we feel compelled to

18   oppose that because, in essence, what this entire lawsuit has

19   been about from the day of filing until today is an effort by

20   NIAC to muzzle our client.

21        Both are participants in an active public debate in the

22   blogosphere and elsewhere about the current Iranian regime and

23   the relationship of NIAC to that regime.  So any order that

24   prohibits our client from continuing to comment on that issue,

25   from using the --

1          THE COURT:  I think I just clarified that I wouldn't

2     prohibit comments.

3          MR. BERENSON:  Right.

4          THE COURT:  I'm only considering whether discovery

5     materials in this case should for the moment not be disseminated

6     outside of the participants in the case.

7          MR. BERENSON:  There's nothing particularly

8     confidential about these discovery materials.  Most of them,

9     like the e-mail in question at the heart of the motion, are

10    communications between the plaintiff and members of Congress or

11    the executive branch.

12         When the plaintiffs raised the speech-and-debate privilege,

13    these things were presented to house counsel.  House counsel

14    said nothing confidential here, no speech-and-debate privilege

15    at issue, and so we think that these materials involving, as

16    they do, communications with public officials and with

17    departments and agencies of the government are matters of

18    legitimate public interest.

19         There's no reason I can think of why they could not be

20    disclosed by our client if that's what he wanted to do with

21    them.  So we would be opposed even to an interim order, but

22    obviously, if the Court enters one, we will abide by it.

23         THE COURT:  All right.  Thank you, Mr. Berenson.

24    I will think about that and maybe do a tad of research before

25    I enter such an order.  But if I'm going to do that, I'll try to

1    get an order in place today.  I'll think about it further.

2          With that, and the briefing schedule we have on this

3    emergency motion, and the assurance that discovery is moving

4    forward, although there are some issues that need to be resolved

5    including availability for depositions -- I hate to hear of

6    depositions being canceled at the last moment; it is often a bad

7    sign for the court.  So I hope that those depositions will be

8    rescheduled and will take place promptly.

9          But with that, anything further for this morning?

10          MR. PISHEVAR:  Just to clarify on that issue an

11   item of concern, Your Honor.  We didn't cancel any depositions.

12   I don't know where that came from.

13          THE COURT:  Well, have a further discussion among

14   yourselves.  Don't draw me into something that may not be an

15   issue.  Anything further, Mr. Kapshandy?

16          MR. KAPSHANDY:  No, Your Honor.

17          THE COURT:  All right.  Thank you all.  We will set

18   another status call.  I'm going to assume I don't need a hearing

19   for the motion.  If I do, you'll hear from me.  We have

20   discovery ending March 10, so we need to set another status

21   conference around that date, Mr. Bradley.

22          THE DEPUTY CLERK:  Your Honor, we could do it on

23   Tuesday, March 16, at nine o'clock.

24          THE COURT:  Tuesday, March 15, at 9 a.m.

25          THE DEPUTY CLERK:  16th.

1          THE COURT:  16th, I'm sorry.  March 16, 9 a.m.

2     Everybody available?

3          MR. KAPSHANDY:  Absolutely.

4          MR. PISHEVAR:  Yes, Your Honor.

5          THE COURT:  All right.  I'll include that in the

6     scheduling order, and with that, thank you all very much, and if

7     we don't see you before then, we'll see you on March 16.

8          I would encourage you on the discovery front to work

9     together constructively, avoid filing motions with me, as I'm

10    sure I have cautioned you before.

11         My approach to discovery is to ask a lot of the parties and

12    to assume that they're going to work out virtually everything.

13    If you can't, I will be available by telephone or otherwise

14    promptly to try to resolve such issues, but let's not turn this

15    into a lesson in motions practice on discovery issues.

16         All right?  Thanks, all.

17         (Proceedings adjourned at 9:20 a.m.)

18

19

20

21

22

23

24

25

\*   \*   \*   \*   \*   \*

CERTIFICATE

I, BRYAN A. WAYNE, Official Court Reporter, certify that the foregoing pages are a correct transcript from the record of proceedings in the above-entitled matter.

_____
BRYAN A. WAYNE