**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **TRITA PARSI and NATIONAL IRANIAN AMERICAN COUNCIL,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**SEID HASSAN DAIOLESLAM,**<br><br>**Defendant.** | **Civil Action No. 08-705 (JDB)** |

**MEMORANDUM OPINION & ORDER**

Before the Court is [194] defendant Seid Hassan Daioleslam's final bill of recoverable costs. Pursuant to [190] [191] the Court's September 13, 2012 Memorandum Opinion and Order granting in part and denying in part defendant's omnibus motion for sanctions, defendant seeks reimbursement for the following: (1) 60% of the expenses of bringing [143] defendant's omnibus sanctions motion; (2) the last two rounds of forensic imaging by PricewaterhouseCoopers ("PwC"); (3) the expenses of bringing [112] [113] defendant's motions to compel production of plaintiff National Iranian American Council's ["NIAC"] server, Salesforce data, and membership lists; (4) one half of the expenses of Babak Talebi's deposition; (5) the expenses of obtaining [93] the Court's March 29, 2011 Order relating to Talebi's emails; (6) the expenses of serving subpoenas to obtain third-party emails; (7) one half of the expenses of the last half day of plaintiff Trita Parsi's deposition; and (8) one half of the expenses of the second day of Emily Blout's deposition. Defendant also seeks additional costs as the prevailing party under Federal Rule of Civil Procedure 54(d). He claims $284,223.34 in total, plus prejudgment and

postjudgment interest. See Def.'s Reply in Supp. of Bill of Costs [ECF 199] ("Def.'s Reply") 9. Plaintiffs NIAC and Parsi argue that defendant's bill of costs should be denied or substantially reduced. For the reasons set forth below, the Court will award fees and expenses in the reduced amount of $183,480.09.[1]

A district court has broad discretion in determining the size of a sanctions award. See Beck v. Test Masters Educ. Servs., Inc., No. 04-1391, 2013 WL 772879, at *7 (D.D.C. Mar. 1, 2013); Tequila Centinela, S.A. de C.V. v. Bacardi & Co., 248 F.R.D. 64, 68 (D.D.C. 2008). The party requesting fees and expenses has the burden of proving that its request is reasonable. See Beck, 2013 WL 772879, at *7; see also Am. Petroleum Inst. v. EPA, 72 F.3d 907, 912 (D.C. Cir. 1996). If the party opposing the fee request raises specific objections, the Court has discretion to adjust the fee award in light of those objections. See Tequila Centinela, 248 F.R.D. at 68.

The Court will consider the reasonableness of each component of defendant's bill of costs.

A. Sanctions Motion

Defendant claims $33,279.91 in fees and expenses for bringing the sanctions motion. See Def.'s Final Bill of Recoverable Costs [ECF 194] ("Def.'s Bill of Costs") 1.[2] Plaintiffs argue that defendant's request has several defects, the first being that the time spent on the sanctions motion

[1] Also before the Court are [200] plaintiffs' motion for leave to file a surreply and [202] plaintiffs' motion to strike [201] defendant's verification of his final bill of recoverable costs. Plaintiffs' motion for leave to file a surreply will be granted, as defendant attached new materials to his reply, see Def.'s Reply, Exs. 1-4, and arguably raised new fact issues related to the forensic imagings, see Def.'s Reply 2-4. Plaintiffs' motion to strike will be denied as meritless; defendant's verification meets the requirements of 28 U.S.C. § 1924.

[2] The Court has subtracted the amount erroneously claimed for work on defendant's summary judgment motion. See Def.'s Reply 8 n.5.

by senior partner Timothy Kapshandy is unreasonable.  See Pls.' Objections to Def.'s Bill of Costs [ECF 198] ("Pls.' Objections") 9.  Kapshandy claimed 39.3 hours on the motion, compared to a combined 35 hours claimed by two more junior attorneys on the motion.  See Def.'s Bill of Costs, Ex. A.  Plaintiffs argue that, rather than draft substantial portions of the motion himself, Kapshandy should have delegated the drafting to junior attorneys and spent most if not all of his time reviewing and editing the drafts.  They ask the Court to reduce Kapshandy's hours using the formula set forth in Mitchell v. National Railroad Passenger Corp., 217 F.R.D. 53, 60 (D.D.C. 2003).

The Court declines to do so based on the specific circumstances of this case.  It is not unreasonable that just over one half of the attorney hours spent on the sanctions motion – an omnibus motion based on eight separate areas of discovery – were spent by a senior partner.  Kapshandy was the lead attorney on the case throughout the more-than-two-year discovery period preceding the sanctions motion, and it likely was more efficient (and cheaper) for Kapshandy to take a larger role in drafting that motion, which was based on facts of which he had firsthand knowledge, than he might otherwise have taken.  See Am. Petroleum Inst., 72 F.3d at 916 (making "no adjustment for the allocation of time between partners and associates"); Mitchell, 217 F.R.D. at 58 ("[I]nexperienced lawyers, although they bill at a lower rate, may burn up many hours doing tasks that their seniors could have accomplished more efficiently and cheaply.").

Nevertheless, it remains defendant's burden to show the reasonableness of each element of his fee request.  See New Jersey v. EPA, 703 F.3d 110, 115 (D.C. Cir. 2012) (per curiam).  Although the 74.3 hours claimed for attorney work on a motion and reply totaling 69 pages do not appear grossly excessive, 74 hours is still a significant amount of time.  Yet Kapshandy's

billing entries – which consist almost exclusively of descriptions like "Review and revise motion for sanctions," "Draft and revise sanctions motion," and "Reply to sanctions motion" – make it hard to tell whether the nearly 40 hours claimed for drafting, reviewing, and revising were reasonably expended.[3] See New Jersey, 703 F.3d at 115-16 (finding many similar entries, such as "[c]ontinue drafting/revising of mercury brief" and "[d]raft reply brief," inadequate to justify hours claimed); Role Models Am., Inc. v. Brownlee, 353 F.3d 962, 970 (D.C. Cir. 2004) ("Supporting documentation must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended." (internal quotation marks and alteration omitted)); Def.'s Bill of Costs, Ex. A. The Court therefore finds that a modest, 10% reduction to Kapshandy's hours is appropriate, but it will not make the drastic reduction (to 7.3 hours) requested by plaintiffs. See Beck, 2013 WL 772879, at *10 (reducing hours by 10% where descriptions "le[ft] some remaining question about the reasonableness of the hours spent"); DL v. District of Columbia, 256 F.R.D. 239, 246 (D.D.C. 2009) (applying 10% reduction for "vague time entries"); Pls.' Objections 10.

Plaintiffs next challenge the amount requested for non-attorney work on the sanctions motion. Defendant seeks compensation for 25.05 hours spent by legal assistant Meredith Dudley and 166.6 hours spent by legal assistant Jeffery Tisak. See Def.'s Bill of Costs, Ex. A. Tisak's time entries all say one of two things: "Review NIAC documents for sanctions motion as per T.

---

[3] This is especially evident when Kapshandy's entries are viewed alongside the more detailed entries of associate Thomas Ross, whose 31 hours comprised the majority of attorney hours other than Kapshandy's. See, e.g., Def.'s Bill of Costs, Ex. A (9/12/11 Ross entry stating "Review case law for sanctions motion (0.3); email conversation with T. Kapshandy re: same (0.1); telephone conversation with M. Dudley re: filing sanctions motion (0.1); review and revise latest draft of sanctions motion (0.7)").

Kapshandy," or, on and after October 3, 2011, "Review NIAC documents for upcoming sanctions motion response as per T. Kapshandy." See id. No explanation is given as to why Tisak needed to spend the equivalent of more than four 40-hour weeks reviewing documents related to the sanctions motion and reply. Tisak's repetitive, generic entries are entirely inadequate, as they provide no basis for the Court to determine the reasonableness of the hours expended. See New Jersey, 703 F.3d at 115 (stating that "such entries are 'inadequate to meet a fee applicant's heavy obligation to present well-documented claims'" (quoting Role Models, 353 F.3d at 971)); Conservation Force v. Salazar, No. 10-1057, 2013 WL 66210, at *11 (D.D.C. Jan. 7, 2013). Tisak's entries are inadequate not just in relation to the sanctions motion; they are inadequate for essentially all of his time shown on defendant's bill of costs. See Def.'s Bill of Costs, Exs. C, D, E, G, H (showing repetitive entries like "Review NIAC documents for Motion to Compel Server as per T. Kapshandy" and "Review NIAC documents as per T. Kapshandy"). Although the Court does not doubt that Tisak spent time reviewing documents and doing other work on this case, defendant has not provided sufficiently detailed documentation for the Court to determine that Tisak's many hours "were actually and reasonably expended." See Role Models, 353 F.3d at 970 (emphasis added) (internal quotation marks omitted). Accordingly, the Court will apply an across-the-board reduction of 50% to all hours claimed for Tisak's work. Compare New Jersey, 703 F.3d at 115-16 (applying 75% reduction to "patently excessive" fee request).

     Dudley's entries, which also lack specificity, are marginally better than Tisak's. Dudley's entries vary at least somewhat and show that she "[p]repare[d] exhibits," "[o]rganize[d] sets of documents," and "prepar[ed] reference materials," all in relation to defendant's sanctions motion. See Def.'s Bill of Costs, Ex. A. In addition, the 25 hours claimed by Dudley seem inherently

more reasonable than the 160-plus hours claimed by Tisak. Hence, the Court will reduce the hours claimed for Dudley's work by only 10%.

Plaintiffs' final challenge is to the expenses (e.g., copying, research, and travel charges) claimed by defendant in relation to the sanctions motion. Plaintiffs correctly observe that there are inconsistencies between defendant's billing records and some of the research charges listed. Namely, the following charges lack a corresponding billing entry and hence will be subtracted from the total expenses claimed: a $2,080.03 Lexis charge incurred by Tisak on September 8, 2011; a $86.82 Lexis charge incurred by Ross on September 26, 2011; a $16.17 Lexis charge incurred by Ross on September 27, 2011; and a $114.92 Westlaw charge incurred by Dudley on November 10, 2011. See Def.'s Bill of Costs, Ex. A. Plaintiffs also argue that defendant should not be reimbursed for the travel costs associated with the July 2012 motions hearing because defendant also argued several other motions, including the summary judgment motion, at that hearing. Because defendant would have incurred these travel costs even if there had been no sanctions motion, the Court agrees that they should deducted from the expenses claimed.

Making the above-described reductions, the Court will award $25,242.17 on the sanctions motion.

B. Forensic Imaging

By far the largest expense on defendant's bill of costs, and the expense most vigorously contested by plaintiffs, is that covering the last two rounds of PwC forensic imaging. Defendant claims $8,570 in attorney time spent on the imaging and seeks reimbursement of $136,224.32 charged by PwC for the imaging. See Def.'s Bill of Costs, Ex. B.

Plaintiffs do not challenge the attorney time spent on the imaging, but they raise

numerous complaints about the PwC charges.  First, plaintiffs argue that the documentation of the PwC imaging charges provided by defendant is "[w]oefully [d]eficient."  See Pls.' Objections 3.  Indeed, all that defendant has provided are the two invoices from PwC (one for each of the last two rounds), each containing a one-page summary of charges.  The charges are broken down into hourly fees and expenses, and the services and activities performed are listed.  See Def.'s Bill of Costs, Ex. B.  As plaintiffs point out, however, the summary gives no information on the type of work done by each employee.  See Pls.' Objections 3.  In addition, plaintiffs complain about the sizeable amounts of time billed by PwC managers and directors (relative to "staff") and by PwC employees based in Chicago, when the imaging was done in Washington, D.C.  See id.  The Court agrees that the PwC invoices are not well documented, but it is reluctant to place all fault on defendant for an outside consultant's shortcomings.  After all, had plaintiffs produced all relevant computers and the shared-drive server from the beginning, defendant would have been responsible for the imaging costs in full.  Nevertheless, it is defendant's burden to show the reasonableness of each element of his expense request, and defendant has provided absolutely nothing to show that two rounds of forensic imaging should cost upwards of $136,000.  See, e.g., Pls.' Objections 4 (suggesting that invoice for first round of imaging would allow helpful comparison of charges); Pls.' Surreply in Opp'n to Def.'s Bill of Costs [ECF 200-1] ("Pls.' Surreply") 3-5 (asserting insufficient showing of reasonableness as to second round of imaging).  Hence, an across-the-board percentage reduction is warranted.  Before applying this reduction, however, the Court will address plaintiffs' challenges to particular charges on the PwC invoices.

Plaintiffs argue that all charges for forensic analysis should be excluded because, they say, this Court "specifically differentiate[d] between the costs for forensic imaging which it

ordered recoverable in the Sanctions order; from the cost[s] for forensic analysis which the Court ordered are not recoverable." See Pls.' Objections 4.  Plaintiffs are incorrect.  In ordering a "lesser amount" of fee shifting, the Court did not intend to distinguish between forensic imaging and forensic analysis, but rather intended to hold plaintiffs accountable for the extra cost of the forensic process that became necessary because of plaintiffs' failure to produce, at the outset, all devices on which relevant data might have been stored.  See id. at 5 (quoting Mem. Op. (Sept. 13, 2012) [ECF 190] 4-5).  In other words, the Court shifted to plaintiffs the incremental costs caused by their conduct.

Plaintiffs also object to several specific items on the PwC invoices that they claim are unrelated to the forensic imaging ordered by the Court.  See Pls.' Objections 6-8.  These include: (1) charges for "troubleshooting" and "server hardware," ostensibly incurred because PwC did not properly reassemble the NIAC shared drive after the second round of imaging; (2) charges for "Review[ing] and respon[ding] to" plaintiffs' filings on the motions to compel and motion for sanctions; (3) a charge for "Reproduction of deliverables from initial report"; and (4) PwC employees' travel expenses for the third round of imaging.  Each item merits brief discussion.

First, it appears that PwC in fact reassembled the NIAC shared drive improperly and, as a result, had to purchase an additional device (the "server hardware") and spend time "troubleshooting" and fixing its mistake.  See Pls.' Objections 6-7 & nn.2-4; id., Ex. A, Decl. of Marc Hirschfield ("Hirschfield Decl.") ¶ 12; id., Ex. C, Decl. of David Elliott ("Elliott Decl.") (describing how PwC technician came to NIAC's office to fix device).  Plaintiffs are not responsible for the costs of PwC's mistakes.  As defendant has not contested plaintiffs' assertions that the server hardware and troubleshooting charges were caused by PwC's mistakes, the Court

will deduct $576.79 for server hardware and $1,320 for troubleshooting.[4] Second, reviewing and responding to plaintiff's filings are not forensic imaging or analysis activities. Defendant has not shown the reasonableness of paying PwC for assistance beyond the imaging and analysis ordered by the Court. See Def.'s Reply 4 (stating that PwC charges for assistance are recoverable but not explaining what assistance was given or why it was needed). Hence, the charges of $14,894 and $12,477.70 for "[R]eview[ing] and respon[ding]" will be deducted. Third, reproduction of deliverables from the initial report is exactly the sort of redundant activity that would not have been necessary if there had been only one round of imaging and all "deliverables" could have been produced together. Hence, the reproduction charge will not be deducted. Fourth, as to plaintiffs' objection to paying the expenses of Chicago-based PwC employees to travel to Washington, D.C., the Court concludes that a partial reduction is warranted. It is understandable that, given the location of defendant's lead counsel in Chicago, PwC may have thought it prudent to send one or more employees from its Chicago office to be present at the imaging site. But again, defendant has not given any justification for the actual amount spent, so the Court will deduct one half of the $2,119.13 in charges for transportation, accommodation, and meals during the third round of imaging.

Finally, plaintiffs stress that, in granting sanctions related to the imaging, this Court relied on defendant's unsupported "expla[nation] at the motions hearing that conducting three separate

[4] This latter amount represents four hours (the Court's guess, and it can only be a guess, as to how much time was spent troubleshooting and actually correcting the improper reassembly) at $330 per hour, the amount billed by PwC staff member Bradley Wilson. See Elliott Decl. ¶¶ 2, 4-9 (stating that "a gentleman from PwC by the name of Brad" came to fix the device and describing the actual correction process as something done in a short amount of time); Def.'s Bill of Costs, Ex. B (showing billing rate for Bradley Wilson).

imaging sessions cost far more than conducting one larger imaging session." See Pls.' Objections 5 (quoting 9/13/12 Mem. Op. 5). But it does not require an expert to conclude that doing three rounds of imaging was far less efficient, and hence more costly, than doing just one. See id. (complaining that defendant did not provide expert testimony to show that three rounds cost more than one).[5] Extra time had to be spent on the second and third rounds, and the analysis became more complex because data extracted during the later imagings had to be compared (three times instead of one) to data that had already been produced. The total hourly fees charged by PwC, then, were necessarily higher than they would have been if the imaging had been done at one time.

However, not all costs increased to the same degree because of the additional imaging sessions. For example, the cost of hard drives to store the forensic images would presumably have been roughly the same even if all of the imaging had been done at one time. See Hirschfield Decl. ¶ 9. And even some fraction of the additional hourly fees would likely have been incurred if the devices imaged later had instead been produced at the outset. Because defendant should be reimbursed only for the added forensic imaging costs caused by plaintiffs' conduct, a reduction for costs that would have been incurred in any case will be made. See Tequila Centinela, 248 F.R.D. at 69 (requiring a "near but for" relationship between Rule 37 violation and activity for which fees and expenses awarded). The Court will deduct the cost of the hard drives ($180.98 on the second round of imaging and $1,147.99 on the third round),[6] and

---

[5] Plaintiffs' arguments about PwC's broad access to the drives during the third round of imaging do not alter this conclusion. See Pls.' Surreply 2-3.

[6] The Court will not resolve the parties' internal dispute about their agreement (or lack thereof) concerning the hard drives. See Def.'s Reply 3 (explaining that defendant agreed to let

will deduct 33% of the remaining compensable PwC fees and expenses.[7]

Subtracting the troubleshooting and server hardware charges, the reviewing and responding charges, one half of the PwC travel expenses for the third round of imaging, and the cost of the hard drives, and reducing the remaining amount by 33%, leaves $70,060.09. Because this represents a substantial reduction and is based largely on the lack of justification for particular charges on the PwC invoices, the Court will apply a further reduction of only 10% for defendant's inadequate showing of reasonableness generally. See Beck, 2013 WL 772879, at *10; Tequila Centinela, 248 F.R.D. at 72 (applying 10% reduction to account for billing of redundant time after court had already reduced claimed number of hours from 199.08 to 67). Applying this 10% reduction and adding the reduced amount ($63,054.08) to the attorney fees claimed for the imaging results in an award of $71,624.08.

C.  Motions to Compel

Defendant requests $25,028.70 in fees and expenses related to his motions to compel

---

plaintiffs have custody of hard drives while case was pending but told plaintiffs that, once case was over, plaintiffs either had to reimburse PwC for cost of hard drives or return them after wiping data); see also id., Exs. 1-A, 1-B. The Court encourages the parties to abide by any agreements between themselves but declines to take action on an issue not covered by its sanctions order.

[7] Plaintiffs have provided a declaration stating that the additional fees for doing the imaging in three rounds instead of one could have been at most $1,500, or 5 hours at $300 per hour. See Hirschfield Decl. ¶ 10. Given that PwC employees spent a combined 344.7 hours on the second and third rounds of imaging, the Court simply does not find this estimate credible. See Def.'s Bill of Costs, Ex. B. It is extremely improbable that, had the imaging been done all at once, just five of those 344.7 hours would have been saved.

Because the charges listed in PwC's invoices cannot easily be separated into charges that would have been incurred if there had been just one imaging and those that were incurred because there were multiple imagings, the Court will make a fixed, 33% reduction to reflect its rough estimate of forensic imaging charges that would have been incurred in any event.

production of NIAC's server and the Salesforce membership lists.  As with defendant's fee request for the sanctions motion, plaintiffs' primary objection is to the amount of time spent on the motions to compel by senior partner Timothy Kapshandy.  See Pls.' Objections 12; Pls.' Reply in Supp. of Exceptions to Def.'s Initial Bill of Costs [ECF 149] 2-3.  The Court finds that Kapshandy's entries on the motions to compel suffer from the same lack of detail noted in Part A, making a 10% reduction appropriate.  See DL, 256 F.R.D. at 246; Def.'s Bill of Costs, Ex. C (Kapshandy entries like "Draft motion to compel server," "Draft motion to compel member lists," and "Review and revise reply to server motions").  But a greater reduction, such as the more-than-20-hour reduction urged by plaintiffs, is not warranted.  See Pls.' Objections 12.  Like defendant's omnibus sanctions motion, the two motions to compel involved discovery issues that were by nature fact-specific and time-consuming, and hence required considerable attention by a senior partner.  Plaintiffs cannot now complain that they must reimburse defendant for the troubles that his attorneys had to go through to gain cooperation in discovery.  As this Court said recently in another case involving a similarly contentious discovery dispute, "the time-consuming nature of [discovery-related] motions is a significant reason cost-shifting is appropriate when a party resists discovery without substantial justification."  See Beck, 2013 WL 772879, at *10 n.10.  Plaintiffs' present objections regarding the time spent by Kapshandy are particularly unpersuasive in light of the fact that, when plaintiffs first complained about the attorney hours spent on the motions to compel, they did not question the proportion of hours billed by Kapshandy but rather suggested that the number of hours billed by junior associate Thomas Ross was excessive.  See Pls.' Supp'l Exceptions to Def.'s Initial Bill of Costs [ECF 146] 8 (suggesting that Ross "was permitted to bill so many hours on the two motions at issue as a way of giving

him experience/training"). Plaintiffs appear to claim both "insufficient [and] excessive delegation," see Mitchell, 217 F.R.D. at 58, but the Court does not find either to have been the case here.

Plaintiffs also challenge the non-attorney time spent on the motions to compel. Both Meredith Dudley's and Jeffery Tisak's billing entries, which total 81.6 hours, are generic and repetitive. See, e.g., Def.'s Bill of Costs, Ex. C (6/15/11 Dudley entry stating "Motion to Compel Servers - Prepare exhibits for upcoming motion per T. Kapshandy"; 8/9/11 Tisak entry stating "Review NIAC documents for Motion to Compel Server as per T. Kapshandy"). Nevertheless, because the Court recognizes that preparing numerous exhibits takes time, and because Dudley's entries show somewhat more detail and variety than Tisak's, see, e.g., id. (6/10/11 Dudley entry stating "Organize discovery materials, gather documents pertinent to upcoming motions and upload to the shared server per T. Kapshandy"), the Court will allow compensation for 90% of Dudley's hours and one half of Tisak's hours, consistent with the treatment of Dudley's hours in Part A and Tisak's hours throughout the bill of costs.

Finally, plaintiffs identify three entries that appear to relate to work done on defendant's motion to compel damages discovery and not to the motions to compel production of the server and membership lists. Although two of the three entries contain, respectively, the words "server" and "membership" in addition to the word "damages," defendant has not argued that these entries in fact related to the motions to compel production and only included the word "damages" by mistake. See Def.'s Bill of Costs, Ex. C (8/8/11 Kapshandy entries). Hence, the Court will subtract 1.5 hours for these two entries, and 0.7 hours for the third entry, which reflects work done on the "damages motion to compel," see id. (8/11/11 Kapshandy entry). Making these

reductions to the hours of Kapshandy,[8] Tisak, and Dudley, the Court will award $20,838.25 on the motions to compel.

D. Talebi Deposition

Defendant requests $7,599.30 in fees and expenses associated with Babak Talebi's deposition. See Def.'s Bill of Costs, Ex. D. Plaintiffs' only objection to the amount requested relates to the 37 hours claimed for Tisak's work. As discussed in Part A above, the Court will reduce these hours by 50% and hence award $6,720.55 on this item.

E. Obtaining March 29, 2011 Order

Defendant requests $17,943.22 in fees and expenses associated with obtaining the Court's March 29, 2011 Order directing plaintiffs to produce 5500 Talebi emails to the Court for in camera review. See Def.'s Bill of Costs, Ex. E. Plaintiffs again object to the proportion of attorney time spent by Kapshandy and to Tisak's hours. As above, the Court will reduce Tisak's hours by 50%. The Court will not make a specific reduction to Kapshandy's hours, however. Kapshandy's time on this item totals only 16.4 hours, and it is not unreasonable that these hours constituted 40% of the attorney time on a disputed discovery issue. In addition, Kapshandy's entries on this item are more transparent than his entries on the sanctions motion and motions to compel production, allowing the Court to better assess the reasonableness of the hours claimed. See Def.'s Bill of Costs, Ex. E (Kapshandy entries such as "Review Talebi emails," "Outline discovery issues; review court order," "Office conference plaintiff counsel re discovery disputes," "Review plaintiffs status memo; prepare response," and "Prepare for status conference").

[8] The Court first subtracted the 2.2 hours for unrelated work and then applied the 10% reduction.

Because the time spent by Kapshandy on the listed tasks appears reasonable, the small reductions made for other work and described above are not necessary here.

In reviewing the entries on this item, however, the Court observes that many entries do not reference the Talebi emails (or any obviously related topics), but simply reference, for example, the status report, status conference, proposed discovery order, or other procedural matters leading up to the March 29 Order. All of these procedural matters, however, concerned not just the Talebi emails but other subjects as well. See Def.'s Report Regarding Status of Discovery [ECF 87]; Def.'s Proposed Order Regarding Discovery [ECF 89]; Order (Mar. 29, 2011) [ECF 93] (order on Talebi emails and seven other discovery issues). Also included on defendant's bill are travel expenses related to the March 4, 2011 discovery hearing, at which the Talebi emails were just one of many issues discussed. See Def.'s Bill of Costs, Ex. E; 3/4/11 Tr. of Discovery Hr'g [ECF 101]. Yet the Court granted sanctions for the expenses of obtaining the portion of the March 29 Order concerning the Talebi emails, not for all expenses associated with obtaining that order. See 9/13/12 Mem. Op. 15-16. Because the Court has no way of knowing what proportion of the listed expenses actually relate to the Talebi emails, it will further reduce the amount claimed (after the reduction to Tisak's hours) by 50% – a percentage reflecting, on the one hand, that some entries specifically pertain to the Talebi emails, but, on the other hand, that many entries refer to matters encompassing much more than the Talebi emails. See Tequila Centinela, 248 F.R.D. at 69 (requiring "near but for" relationship between discovery violation and sanction awarded). The resulting award is $8,605.86.

F.   Third-Party Subpoenas

Defendant requests $9,802.73 in third-party-subpoena expenses. See Def.'s Bill of Costs,

Ex. F. In their objections to defendant's bill of costs, plaintiffs object to the lack of documentation supporting the claimed costs to effectuate service. See Pls.' Objections 14-15. Defendant has provided such documentation in an attachment to his reply. See Def.'s Reply, Ex. 4. As plaintiffs raise no further objections to the expenses claimed, the Court will grant the requested amount in full. See Pls.' Surreply.

      G.      Parsi Deposition

Defendant requests $12,808.78 in fees and expenses associated with the last half day of Trita Parsi's deposition. See Def.'s Bill of Costs, Ex. G. Plaintiffs' only objection to the amount requested relates to the 51.5 hours claimed for Tisak's work. As discussed in Part A above, the Court will reduce Tisak's hours by 50%.

Even after this reduction, however, the Court is troubled by the number of hours claimed for this item: 34.5 hours for time spent by three different attorneys and 73.05 hours for time spent by three different legal assistants. See Cobell v. Norton, 407 F. Supp. 2d 140, 161 (D.D.C. 2005) ("[F]ee requests must be scrutinized for 'excessive, redundant or otherwise unnecessary' hours 'which firms would have excluded from bills to their own clients.'" (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983))). The deposition took less than a full day (5.5 hours, according to defendant's bill of costs), see Def.'s Bill of Costs, Ex. G (5/11/11 Kapshandy entry), and the deponent had already been deposed once before. In addition, the Court awarded these deposition expenses to compensate defendant for extra costs that may have been incurred because of plaintiffs' belated production of documents; it did not intend to compensate defendant for costs he would have incurred if plaintiffs had timely completed production. See 9/13/12 Mem. Op. 19. Given the brief amount of actual deposition time, the fact that this partial day of

deposition was a follow-on to a prior two-day deposition, and the uncertainty as to the reason extra deposition time was needed, see id., the Court views the 100-plus hours spent by six different people as excessive and will not award fees based on all of those hours. The Court will apply an additional 33% reduction to the attorney hours and the already-reduced legal assistant hours. This reduction brings the hours that will be credited on the Parsi deposition closer to the hours claimed on the other two depositions at issue here, serving to compensate for the likely redundancy in billing caused by the participation of so many individuals on this deposition. See Def.'s Bill of Costs, Ex. D (5.5 attorney hours of deposition preparation claimed for seven-hour Talebi deposition); id., Ex. H. (less than five attorney hours of deposition preparation claimed for Blout redeposition); see also Copeland v. Marshall, 641 F.2d 880, 891 (D.C. Cir. 1980) ("[W]here three attorneys are present at a hearing when one would suffice, compensation should be denied for the excess time."). The Court will thus award $8,439.31 on the Parsi deposition.

H. Blout Deposition

Defendant requests $3,755.35 in fees and expenses associated with the second day of Emily Blout's deposition. See Def.'s Bill of Costs, Ex. H. Plaintiffs' only objection to the amount requested relates to the 24.2 hours claimed for Tisak's work. As discussed in Part A above, the Court will reduce these hours by 50% and hence award $3,180.60 on this item.

I. Rule 54(d) Costs

In addition to the expenses set forth in the Court's September 13, 2012 Memorandum Opinion and Order, defendant seeks costs under Federal Rule of Civil Procedure 54(d). See Def.'s Bill of Costs 3. That Rule provides that, "[u]nless a federal statute, these rules, or a court order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing

party." Fed. R. Civ. P. 54(d). Plaintiffs contend that the September 13 opinion and order "provide[] otherwise," because the Court declined to "'impose as sanctions all fees and expenses associated with the defense of this case'" and said that "the numerous issue-specific sanctions awards that the Court has made are all that is appropriate here." See Pls.' Objections 13-14 (quoting 9/13/12 Mem. Op. 23-24).

The Court's September 13, 2012 decision does not in any way preclude defendant from recovering costs as the prevailing party under Rule 54(d). The Court determined that the issue-specific sanctions awarded were all that were appropriate as sanctions. The Court said nothing about costs under Rule 54, which entitles a prevailing party not to "all fees and expenses," but only to the costs listed in 28 U.S.C. § 1920 and in Local Civil Rule 54.1(d). Defendant is the prevailing party in this action, see Mem. Op. (Sept. 13, 2012) [ECF 189] (granting defendant's motion for summary judgment), and therefore is entitled to costs under Rule 54(d).

Aside from arguing that defendant is not entitled to any costs under Rule 54(d) because of the Court's sanctions order, plaintiffs do not raise any specific objections to the costs defendant seeks to recover under the Rule. Defendant requests $29,336.55 in fees for transcripts, witnesses, and translations. While transcript and witness fees are properly taxable, see 28 U.S.C. § 1920(2)-(3), fees for document translation are not, see id. § 1920(6); Taniguchi v. Kan Pacific Saipan, Ltd., 132 S. Ct. 1997, 2007 (2012) (holding that "the category 'compensation of interpreters' in § 1920(6) does not include costs for document translation"); see also Def.'s Reply, Ex. 3-C (invoice in amount of $310 for translation of files from Farsi to English). Accordingly, the Court will deduct the translation fees and award $29,026.55 under Rule 54(d).

J. Summary

Tallying the fees and expenses for the items above, the Court will award $183,480.09 to defendant. Defendant also requests prejudgment and postjudgment interest. In support of his request for prejudgment interest, defendant merely cites D.C. Code § 28-3302, which sets the rate of interest on District of Columbia judgments but does not give any indication as to why defendant should be granted prejudgment interest. Absent further justification for increasing the already-sizeable fee award here, the Court declines to award prejudgment interest. See Oldham v. Korean Air Lines Co., 127 F.3d 43, 54 (D.C. Cir. 1997) ("Whether pre-judgment interest is to be awarded is subject to the discretion of the court and equitable considerations." (internal quotation marks and alteration omitted)). The Court will award postjudgment interest under 28 U.S.C. § 1961.

Accordingly, for the foregoing reasons, it is hereby

**ORDERED** that [200] plaintiffs' motion for leave to file a surreply is **GRANTED**; it is further

**ORDERED** that [202] plaintiffs' motion to strike defendant's verification of his final bill of recoverable costs is **DENIED**; and it is further

**ORDERED** that plaintiffs shall pay defendant $183,480.09 plus interest from September 13, 2012.

**SO ORDERED**.

    /s/ John D. Bates
JOHN D. BATES
United States District Judge

Dated: April 8, 2013