# U.S. District Court
# District of Columbia (Washington, DC)
# CIVIL DOCKET FOR CASE #: 1:08−cv−00705−JDB

PARSI et al v. HASSAN
Assigned to: Judge John D. Bates
Case in other court: USCA, 12−07111
Cause: 28:1332 Diversity−Libel,Assault,Slander

Date Filed: 04/25/2008
Date Terminated: 09/21/2012
Jury Demand: Plaintiff
Nature of Suit: 320 Assault Libel &Slander
Jurisdiction: Diversity

**Non−Party Petitioner**

**KENNETH R. TIMMERMAN**　　　　represented by　**Scott F. Craig**
LAW OFFICE OF SCOTT F. CRAIG
9107 Wilshire Boulevard
SUIte 450
Beverly Hills, CA 90210
(310) 867−5980
Email: scraiglaw@gmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**TRITA PARSI**　　　　represented by　**Afshin Pishevar**
PISHEVAR &ASSOCIATES, PC
600 East Jefferson Street
Suite 316
Rockville, MD 20852
(301) 279−8773
Fax: (301) 279−7347
Email: ap@pishevarlegal.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Farrokh Mohammadi**
PISHEVAR &ASSOCIATES, P.C.
600 East Jefferson Street, Suite 316
Rockville, MD 20852
(301) 279−8773
Fax: (301) 279−7347
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeffrey Handelsman**
PISHEVAR &ASSOCIATES, P.C.
600 East Jefferson Street, Suite 316
Rockville, MD 20852
301−279−8773

Fax: 301−279−7347
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**NATIONAL IRANIAN AMERICAN COUNCIL**                    represented by    **Afshin Pishevar**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Farrokh Mohammadi**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeffrey Handelsman**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Adrian V. Nelson , II**
LAW OFFICES OF ADRIAN V.
NELSON, II
600 East Jefferson Street
Jefferson Plaza, Suite 316
Rockville, MD 20852
(301) 424−6770
Fax: (301) 279−7347
Email: avnelsonlaw@msn.com
*TERMINATED: 02/13/2012*
*PRO HAC VICE*

V.

**Defendant**

**DAIOLESLAM SEID HASSAN**
*also known as*
HASSAN DIAOLESLAM                    represented by    **Harold L. Rogers**
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
(202) 736−8301
Email: hrogers@sidley.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Peter G. Jensen**
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005

(202) 736−8000
Fax: (202) 736−8711
Email: pjensen@sidley.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott F. Craig**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas Edward Ross**
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
(202)736−8374
Email: tom.ross@sidley.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Bradford A. Berenson**
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
(202) 736−8000
Fax: (202) 736−8711
Email: bberenson@sidley.com
*TERMINATED: 04/02/2013*

**Jeffrey Brian O'Toole**
O'TOOLE, ROTHWELL, NASSAU
&STEINBACH
1350 Connecticut Avenue, NW
Suite 200
Washington, DC 20036
(202) 775−1550
Email: otoole@otrons.com
*TERMINATED: 10/29/2008*

**Mark Eric Galvez**
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
(202) 736−8533
Email: mgalve01@sidley.com
*TERMINATED: 01/16/2013*

**Timothy E. Kapshandy**
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
(312) 853−7643

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 04/25/2008 | 1 | | COMPLAINT against DAIOLESLAM SEID HASSAN ( Filing fee $ 350, receipt number 4616011857) filed by TRITA PARSI, NATIONAL IRANIAN AMERICAN COUNCIL. (Attachments: # 1 Civil Cover Sheet)(td, ) (Entered: 04/28/2008) |
| 04/25/2008 | | | Summons (1) Issued as to DAIOLESLAM SEID HASSAN. (td, ) (Entered: 04/28/2008) |
| 05/19/2008 | 2 | | Consent MOTION for Extension of Time to File Answer by DAIOLESLAM SEID HASSAN (Attachments: # 1 Text of Proposed Order)(O'Toole, Jeffrey) (Entered: 05/19/2008) |
| 05/20/2008 | | | MINUTE ORDER: Upon consideration of 2 defendant's motion for extension of time to answer, and the entire record herein, it is hereby ORDERED that the motion is GRANTED; and it is further ORDERED that defendant shall answer or otherwise respond to the complaint by not later than 6/10/2008. SO ORDERED. Signed by Judge John D. Bates on 5/20/08. (lcjdb1) (Entered: 05/20/2008) |
| 06/04/2008 | 3 | | Consent MOTION for Extension of Time to File Answer *to Complaint* by DAIOLESLAM SEID HASSAN (Attachments: # 1 Text of Proposed Order)(O'Toole, Jeffrey) (Entered: 06/04/2008) |
| 06/04/2008 | | | MINUTE ORDER: Upon consideration of 3 the consent motion for extension of time to answer, and the entire record herein, it is hereby ORDERED that the motion is GRANTED; and it is further ORDERED that defendant must answer or otherwise respond to the complaint by not later than 6/24/2008. SO ORDERED. Signed by Judge John D. Bates on 6/4/08. (lcjdb1) (Entered: 06/04/2008) |
| 06/23/2008 | 4 | | Consent MOTION for Extension of Time to File Response/Reply *to the Complaint* by DAIOLESLAM SEID HASSAN (Attachments: # 1 Text of Proposed Order)(O'Toole, Jeffrey) (Entered: 06/23/2008) |
| 06/26/2008 | | | MINUTE ORDER: Upon consideration of 4 defendant's motion for extension of time to answer, and the entire record herein, it is hereby ORDERED that the motion is GRANTED; and it is further ORDERED that defendant shall answer or otherwise respond to the complaint by not later than 7/8/08. SO ORDERED. Signed by Judge John D. Bates on 6/26/08. (lcjdb1) (Entered: 06/26/2008) |
| 07/08/2008 | 5 | | MOTION to Dismiss *or in the alternative*, MOTION for Summary Judgment by DAIOLESLAM SEID HASSAN (Attachments: # 1 Affidavit, # 2 Exhibit Exhibits 1−13, # 3 Exhibit Exhibits 14−20, # 4 Text of Proposed Order)(O'Toole, Jeffrey) (Entered: 07/08/2008) |
| 08/09/2008 | 6 | | Memorandum in opposition to re 5 MOTION to Dismiss *or in the alternative* MOTION for Summary Judgment filed by NATIONAL IRANIAN AMERICAN COUNCIL. (Pishevar, Afshin) (Entered: |

| | | | |
|---|---|---|---|
| | | | 08/09/2008) |
| 08/09/2008 | 7 | | Memorandum in opposition to re 4 Consent MOTION for Extension of Time to File Response/Reply *to the Complaint*, 5 MOTION to Dismiss *or in the alternative* MOTION for Summary Judgment filed by TRITA PARSI. (Attachments: # 1 Opposition to Motions, # 2 Proposed ORDER, # 3 Affidavit of Dr. Parsi, # 4 Exhibit A, # 5 Exhibit B, # 6 Exhibit C, # 7 Exhibit D, # 8 Exhibit E, # 9 Exhibit F, # 10 Affidavit of AP Re Discovery RULE 56F, # 11 Hearing Request)(Pishevar, Afshin) (Entered: 08/09/2008) |
| 08/09/2008 | 8 | | Memorandum in opposition to re 5 MOTION to Dismiss *or in the alternative* MOTION for Summary Judgment filed by NATIONAL IRANIAN AMERICAN COUNCIL. (Attachments: # 1 Memorandum, # 2 Affid, # 3 ORDER, # 4 Exh A, # 5 Exh B, # 6 Exh B, # 7 Exh C, # 8 Exh D, # 9 Exh E, # 10 Exh F, # 11 Affid, # 12 Hearing Req.)(Pishevar, Afshin) (Entered: 08/09/2008) |
| 08/18/2008 | 9 | | REPLY to opposition to motion re 5 MOTION to Dismiss *or in the alternative* MOTION for Summary Judgment filed by DAIOLESLAM SEID HASSAN. (O'Toole, Jeffrey) (Entered: 08/18/2008) |
| 10/29/2008 | 10 | | MOTION to Withdraw as Attorney *Jeffery O'Toole*, MOTION to Substitute *Bradford A. Berenson, Timothy E. Kapshandy, and HL Rogers* by DAIOLESLAM SEID HASSAN (Berenson, Bradford) (Entered: 10/29/2008) |
| 10/29/2008 | 11 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Timothy E. Kapshandy, :Firm− Sidley Austin LLP, :Address− One South Dearborn, Chicago, IL 60603. Phone No. − 312−853−7643. Fax No. − 312−853−7036 by DAIOLESLAM SEID HASSAN (Berenson, Bradford) (Entered: 10/29/2008) |
| 10/29/2008 | | | MINUTE ORDER: Upon consideration of defendant's 10 motion to withdraw Jeffrey Brian O'Toole as attorney and to substitute Bradford A. Berenson, 11 defendant's motion for leave to admit Timothy E. Kapshandy pro hac vice, and the entire record herein, it is hereby ORDERED that defendant's motions are GRANTED. SO ORDERED. Signed by Judge John D. Bates on 10/29/08. (lcjdb1) (Entered: 10/29/2008) |
| 02/04/2009 | 12 | | ORDER denying 5 defendant's motion for summary judgment and setting initial scheduling conference. See text of the Order for details. Signed by Judge John D. Bates on 2/4/09. (lcjdb1) (Entered: 02/04/2009) |
| 02/04/2009 | 13 | | MEMORANDUM OPINION. Signed by Judge John D. Bates on 2/4/09. (lcjdb1) (Entered: 02/04/2009) |
| 02/04/2009 | | | Set/Reset Hearings: Initial Conference set for 3/4/2009 09:00 AM in Courtroom 8 before Judge John D. Bates. (lcjdb1) (Entered: 02/04/2009) |
| 02/06/2009 | 14 | | REQUEST for Production of Documents by DAIOLESLAM SEID HASSAN.(Berenson, Bradford) (Entered: 02/06/2009) |
| 02/06/2009 | 15 | | NOTICE *Regarding Discovery Propounded* by NATIONAL IRANIAN AMERICAN COUNCIL (Pishevar, Afshin) (Entered: 02/06/2009) |
| 02/09/2009 | | | |

| | | | |
|---|---|---|---|
| | | | NOTICE OF ERROR re 14 Request for Production of Documents; emailed to bberenson@sidley.com, cc'd 2 associated attorneys — The PDF file you docketed contained errors: 1. Do not file Discovery (LcvR 5.2), 2. Counsel is advised not to refile documents (tr, ) (Entered: 02/09/2009) |
| 02/09/2009 | | | NOTICE OF ERROR re 15 Notice (Other); emailed to ap@pishevarlegal.com, cc'd 2 associated attorneys — The PDF file you docketed contained errors: 1. Do not file Discovery (LcvR 5.2), 2. Counsel is advised not to refile documents (tr, ) (Entered: 02/09/2009) |
| 02/19/2009 | 16 | | ANSWER to 1 Complaint with Jury Demand by DAIOLESLAM SEID HASSAN. Related document: 1 Complaint filed by TRITA PARSI, NATIONAL IRANIAN AMERICAN COUNCIL.(tr) (Entered: 02/19/2009) |
| 02/23/2009 | 17 | | MEET AND CONFER STATEMENT. (Rogers, Harold) (Entered: 02/23/2009) |
| 03/03/2009 | 18 | | NOTICE of Appearance by Harold L. Rogers on behalf of DAIOLESLAM SEID HASSAN (Rogers, Harold) (Entered: 03/03/2009) |
| 03/04/2009 | 19 | | SCHEDULING ORDER. See text of the Order for details. Signed by Judge John D. Bates on 3/4/09. (lcjdb1) (Entered: 03/04/2009) |
| 03/04/2009 | | | Set/Reset Deadlines/Hearings: Discovery due by 9/10/2009. Dispositive Motions due by 10/22/2009. Response to Dispositive Motions due by 11/23/2009. Reply to Dispositive Motions due by 12/7/2009. Joinder of Parties due by 6/10/2009. Plaintiff Rule 26a1 due by 3/18/2009. Defendant Rule 26a1 due by 3/18/2009. Status Conference set for 9/22/2009 09:00 AM in Courtroom 8 before Judge John D. Bates. (lcjdb1) (Entered: 03/04/2009) |
| 03/04/2009 | | | Minute Entry Scheduling Conference held on 3/4/2009 before Judge John D. Bates: Order previously entered today. (Court Reporter Catherine Jones) (tb, ) (Entered: 03/04/2009) |
| 05/13/2009 | | | Minute Entry Telephone Conference held on 5/13/2009 before Judge John D. Bates. (No reporter) (tb, ) (Entered: 05/13/2009) |
| 05/13/2009 | | | MINUTE ORDER: Pursuant to the telephonic status conference held on May 13, 2009, and the entire record herein, it is hereby ORDERED that plaintiffs' deadline to produce documents is extended until May 22, 2009, as requested by plaintiffs; it is further ORDERED that the parties shall confer to discuss the possibility of a tailored confidentiality agreement and the possibility of modifying their discovery requests or search parameters to arrive at a manageable universe of documents. SO ORDERED. Signed by Judge John D. Bates on 5/13/09. (lcjdb1) (Entered: 05/13/2009) |
| 06/05/2009 | 20 | | WITHDRAWN PURSUANT TO NOTICE FILED 7/8/2009.....First MOTION for Order *Protective Order* by TRITA PARSI (Pishevar, Afshin) Modified on 7/9/2009 (tr, ). (Entered: 06/05/2009) |
| 06/11/2009 | 21 | | Memorandum in opposition to re 20 First MOTION for Order *Protective Order* filed by DAIOLESLAM SEID HASSAN. (Attachments: # 1 Exhibit Attachments A and B)(Rogers, Harold) (Entered: 06/11/2009) |
| 06/18/2009 | 22 | | REPLY to opposition to motion re 20 First MOTION for Order *Protective Order* filed by TRITA PARSI. (Pishevar, Afshin) (Entered: 06/18/2009) |

| 06/22/2009 | 23 | | WITHDRAWN PURSUANT TO NOTICE FILED ON 6/23/2009.....MOTION for leave to file Surreply to re 22 Reply to opposition to Motion *for Protective Order* filed by DAIOLESLAM SEID HASSAN. (Attachments: # 1 Appendix Attachment to Motion for Surreply)(Rogers, Harold) Modified on 6/23/2009 (tr). Modified on 6/24/2009 (tr, ). (Entered: 06/22/2009) |
| --- | --- | --- | --- |
| 06/23/2009 | 24 | | NOTICE OF WITHDRAWAL OF MOTION by DAIOLESLAM SEID HASSAN re 23 MOTION for Leave to File Surreply (Rogers, Harold) (Entered: 06/23/2009) |
| 06/23/2009 | 25 | | WITHDRAWN PURSUANT TO NOTICE FILED 7/8/2009.....MOTION for leave to file Surreply to re 22 Reply to opposition to Motion *for Protective Order* filed by DAIOLESLAM SEID HASSAN. (Attachments: # 1 Appendix Attachments to Motion for Leave to File Surreply)(Rogers, Harold) Modified on 6/24/2009 to correct docket text to reflect document filed (tr). Modified on 7/9/2009 (tr). (Entered: 06/23/2009) |
| 07/08/2009 | 26 | | WITHDRAWAL of Motion by NATIONAL IRANIAN AMERICAN COUNCIL re 20 First MOTION for Order *Protective Order* filed by TRITA PARSI, 25 MOTION for Leave to File Surreply filed by DAIOLESLAM SEID HASSAN *Motions withdrawn w/o Prejudice*. (Pishevar, Afshin) (Entered: 07/08/2009) |
| 08/04/2009 | 27 | | MOTION to Compel *Babak Talebi to Comply with Subpoena* by DAIOLESLAM SEID HASSAN (Attachments: # 1 Appendix Attachments to Motion to Compel)(Rogers, Harold) (Entered: 08/04/2009) |
| 08/10/2009 | 28 | | Joint MOTION for Extension of Time to *Complete Discovery and File Dispositive Motions and Responses* by NATIONAL IRANIAN AMERICAN COUNCIL (Pishevar, Afshin) (Entered: 08/10/2009) |
| 08/11/2009 | 29 | | ORDER granting 28 the parties' joint motion to amend scheduling order. See text of the Order for details. Signed by Judge John D. Bates on 8/11/09. Discovery due by 3/10/2009. Dispositive Motions due by 4/22/2009. Response to Dispositive Motions due by 5/22/2009. Reply to Dispositive Motions due by 6/5/2009. Plaintiff Rule 26a2 due by 1/12/2009. Defendant Rule 26a2 due by 1/12/2009. Status Conference set for 11/2/2009 09:00 AM in Courtroom 8 before Judge John D. Bates. (lcjdb1) (Entered: 08/11/2009) |
| 08/11/2009 | 30 | | REVISED ORDER granting 28 the parties' joint motion to amend scheduling order. See text of the Order for details. Signed by Judge John D. Bates on 8/11/09. (lcjdb1) (Entered: 08/11/2009) |
| 08/11/2009 | | | Set/Reset Deadlines: Discovery due by 3/10/2010. Dispositive Motions due by 4/22/2010. Response to Dispositive Motions due by 5/24/2010. Reply to Dispositive Motions due by 6/7/2010. Plaintiff Rule 26a2 due by 1/12/2010. Defendant Rule 26a2 due by 1/12/2010. (lcjdb1) (Entered: 08/11/2009) |
| 08/20/2009 | | | MINUTE ORDER: Plaintiffs are hereby ORDERED to show cause, in writing and by not later than August 31, 2009, why the Court should not grant 27 defendant's motion to compel as conceded. SO ORDERED. Signed by Judge John D. Bates on 8/20/09. (lcjdb1) (Entered: 08/20/2009) |
| 08/20/2009 | | | Set/Reset Deadlines: Response to Show Cause due by 8/31/2009. (lcjdb1) |

| | | | |
|---|---|---|---|
| | | | (Entered: 08/20/2009) |
| 08/20/2009 | 31 | | ORDER directing Babak Talebi to show cause. See text of the Order for details. Signed by Judge John D. Bates on 8/20/09. (lcjdb1) (Entered: 08/20/2009) |
| 09/16/2009 | 32 | | ORDER granting 27 defendant's motion to compel. Signed by Judge John D. Bates on 9/16/09. (lcjdb1) (Entered: 09/16/2009) |
| 10/09/2009 | 33 | | Emergency MOTION for Protective Order *regarding Dr. B's e−mails* by TRITA PARSI (Pishevar, Afshin) (Entered: 10/09/2009) |
| 10/16/2009 | 34 | | WITHDRAWN PURSUANT TO ORDER FILED 10/21/2009.....Memorandum in opposition to re 33 Emergency MOTION for Protective Order *regarding Dr. B's e−mails* filed by DAIOLESLAM SEID HASSAN. (Attachments: # 1 Appendix Attachment A to Response)(Rogers, Harold) Modified on 10/22/2009 (tr, ). (Entered: 10/16/2009) |
| 10/19/2009 | 35 | | Unopposed MOTION to Withdraw 34 Memorandum in Opposition *to Plaintiffs' Motion for Protective Order regarding Dr. B's e−mails* by DAIOLESLAM SEID HASSAN (Rogers, Harold) (Entered: 10/19/2009) |
| 10/19/2009 | 36 | | Memorandum in opposition to re 33 Emergency MOTION for Protective Order *regarding Dr. B's e−mails* filed by DAIOLESLAM SEID HASSAN. (Attachments: # 1 Appendix Attachment B (Attachment A to be filed under seal))(Rogers, Harold) (Entered: 10/19/2009) |
| 10/19/2009 | 37 | | Unopposed MOTION File Under Seal Attachment A to Defendants Response in Opposition to Plaintiffs Motion for a Protective re 36 Memorandum in Opposition by DAIOLESLAM SEID HASSAN (Rogers, Harold) (Entered: 10/19/2009) |
| 10/19/2009 | 38 | | NOTICE by DAIOLESLAM SEID HASSAN re 37 Unopposed MOTION File Under Seal Attachment A to Defendants Response in Opposition to Plaintiffs Motion for a Protective re 36 Memorandum in Opposition (Rogers, Harold) (Entered: 10/19/2009) |
| 10/22/2009 | 39 | | ORDER denying 33 plaintiffs' motion for a protective order; granting 35 defendant's motion to withdraw 34 his memorandum in opposition; granting 37 defendant's motion to file an attachment under seal. A status report from the parties is due by October 28, 2009. See text of Order for details. Signed by Judge John D. Bates on 10/22/2009. (lcjdb1) (Entered: 10/22/2009) |
| 10/22/2009 | 40 | | SEALED EXHIBIT A filed by DAIOLESLAM SEID HASSAN. re 36 Memorandum in Opposition filed by DAIOLESLAM SEID HASSAN. (This document is SEALED and only available to authorized persons.)(ztr) (Entered: 10/28/2009) |
| 10/28/2009 | 41 | | STATUS REPORT *filed jointly as order by the court on Oct. 22, 2009* by TRITA PARSI, NATIONAL IRANIAN AMERICAN COUNCIL, DAIOLESLAM SEID HASSAN. (Rogers, Harold) (Entered: 10/28/2009) |
| 10/31/2009 | 42 | | Emergency MOTION for Protective Order *and for Appropriate Sanctions* by NATIONAL IRANIAN AMERICAN COUNCIL (Attachments: # 1 Order, # 2 Affidavit, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D)(Pishevar, Afshin) (Entered: 10/31/2009) |

| 10/31/2009 | 43 | | MOTION for Appropriate Sanctions by NATIONAL IRANIAN AMERICAN COUNCIL (tr)( See Docket Entry 42 to view document. Counsel is reminded to docket all parts of the motion in future filings.) (Entered: 11/02/2009) |
|---|---|---|---|
| 11/02/2009 | | | Minute Entry Status Conference held on 11/2/2009 before Judge John D. Bates: Order forthcoming. (Court Reporter Bryan Wayne) (tb, ) (Entered: 11/02/2009) |
| 11/02/2009 | 44 | | ORDER setting deadlines and prohibiting dissemination of discovery materials. See text of Order for details. Signed by Judge John D. Bates on 11/2/2009. (lcjdb1) (Entered: 11/02/2009) |
| 11/02/2009 | | | Set/Reset Deadlines/Hearings: Defendant's response due by 11/6/2009. Plaintiffs' reply due by 11/11/2009. A status conference is set for 3/16/2010 at 9:00 AM in Courtroom 8. (lcjdb1) (Entered: 11/02/2009) |
| 11/06/2009 | 45 | | MOTION File Attachments Under Seal *to Defendant's Response to Plaintiff's Emergency Motion for a Protective Order* by DAIOLESLAM SEID HASSAN (Jensen, Peter) (Entered: 11/06/2009) |
| 11/06/2009 | 46 | | Memorandum in opposition to re 42 Emergency MOTION for Protective Order *and for Appropriate Sanctions*, 43 MOTION for Sanctions filed by DAIOLESLAM SEID HASSAN. (Jensen, Peter) (Entered: 11/06/2009) |
| 11/11/2009 | 47 | | REPLY to opposition to motion re 45 MOTION File Attachments Under Seal *to Defendant's Response to Plaintiff's Emergency Motion for a Protective Order*, 42 Emergency MOTION for Protective Order *and for Appropriate Sanctions*, 43 MOTION for Sanctions filed by NATIONAL IRANIAN AMERICAN COUNCIL. (Attachments: # 1 Exhibit Exhibit E, # 2 Exhibit Exhibit F, # 3 Exhibit Reply Exhibit G, # 4 Exhibit Reply Exhibit H, # 5 Exhibit Exhibit I, # 6 Exhibit Exhibit J, # 7 Exhibit Exhibit K, # 8 Affidavit Mr. Mohammadi)(Pishevar, Afshin) (Entered: 11/11/2009) |
| 11/13/2009 | 48 | | SUPPLEMENTAL MEMORANDUM to re 45 MOTION File Attachments Under Seal *to Defendant's Response to Plaintiff's Emergency Motion for a Protective Order*, 42 Emergency MOTION for Protective Order *and for Appropriate Sanctions*, 43 MOTION for Sanctions *Supplemental* filed by NATIONAL IRANIAN AMERICAN COUNCIL. (Attachments: # 1 Affidavit Affidavit of Patrick Disney)(Pishevar, Afshin) (Entered: 11/13/2009) |
| 11/16/2009 | 49 | | ORDER denying 42 plaintiffs' motion for a protective order and 43 plaintiffs' motion for sanctions; and granting 45 defendant's motion to file attachments under seal. See text of Order for details. Signed by Judge John D. Bates on 11/16/2009. (lcjdb1) (Entered: 11/16/2009) |
| 11/16/2009 | 50 | | SEALED DOCUMENT filed by DAIOLESLAM SEID HASSAN. re 45 MOTION File Attachments Under Seal *to Defendant's Response to Plaintiff's Emergency Motion for a Protective Order* filed by DAIOLESLAM SEID HASSAN. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit 2, # 2 Exhibit 3, # 3 Exhibit 4, # 4 Exhibit 5, # 5 Exhibit 6, # 6 Exhibit 7, # 7 Exhibit 8, # 8 Exhibit 9, # 9 Exhibit 10, # 10 Exhibit 11, # 11 Exhibit 12, # 12 Exhibit 13, # 13 Exhibit 14, # 14 Exhibit 15, # 15 Exhibit 16, # 16 Exhibit 17, # 17 |

| | | | |
|---|---|---|---|
| | | | Exhibit 18, #_18_ Exhibit 19, #_19_ Exhibit 20, #_20_ Exhibit 21, #_21_ Exhibit 22, #_22_ Exhibit 23, #_23_ Exhibit 24, #_24_ Exhibit 25, #_25_ Exhibit 26, #_26_ Exhibit 27, #_27_ Exhibit 28, #_28_ Exhibit 29, #_29_ Exhibit 30, #_30_ Exhibit 31, #_31_ Exhibit 32, #_32_ Exhibit 33, #_33_ Exhibit 34)(zdr, ) (Entered: 12/04/2009) |
| 01/11/2010 | 51 | | Consent MOTION for Order *For a Second Amended Scheduling Order* by TRITA PARSI (Pishevar, Afshin) (Entered: 01/11/2010) |
| 01/12/2010 | | | MINUTE ORDER: Upon consideration of _51_ plaintiffs' unopposed motion for an amended scheduling order, and the entire record herein, it is hereby ORDERED that the motion is GRANTED. Expert reports and information, if any, shall be exchanged by not later than March 10, 2010. SO ORDERED. Signed by Judge John D. Bates on 1/12/2010. (lcjdb1) (Entered: 01/12/2010) |
| 02/24/2010 | | | MINUTE ORDER: Pursuant to the parties' joint call to chambers, and upon consideration of the entire record herein, it is hereby ORDERED that a telephone conference is scheduled for March 5, 2010, at 10:30 a.m. The parties shall place a joint call to chambers at that time. It is further ORDERED that the parties shall, by not later than 12:00 p.m. on March 4, 2010, file briefs, not exceeding five (5) pages, setting forth their respective positions on any outstanding discovery disputes. SO ORDERED. Signed by Judge John D. Bates on 2/24/2010. (lcjdb1) (Entered: 02/24/2010) |
| 03/04/2010 | 52 | | MEMORANDUM by DAIOLESLAM SEID HASSAN. (Attachments: #_1_ Exhibit Defendant's First Request for Production (2/6/09), #_2_ Exhibit Emails Re: Discovery (12/31/09, 1/13/10), #_3_ Exhibit Defendant's Letter to Plaintiffs Re: Discovery (1/19/10), #_4_ Exhibit Plaintiffs' Letter to Defendant Re: Discovery (2/4/10), #_5_ Exhibit Defendant's Letter to Plaintiffs Re: Discovery (2/12/10), #_6_ Exhibit Microsoft Outlook Calendar Entries (2009), #_7_ Exhibit Article Re: NED (6/18/08))(Jensen, Peter) (Entered: 03/04/2010) |
| 03/04/2010 | 53 | | MEMORANDUM by NATIONAL IRANIAN AMERICAN COUNCIL. (Pishevar, Afshin) (Entered: 03/04/2010) |
| 03/05/2010 | | | MINUTE ORDER: For the reasons stated during the telephone conference held today, and upon consideration of the entire record herein, it is hereby ORDERED as follows: Defendant may take an additional deposition of Emily Blount, although the Court reserves judgment as to which party shall bear any expenses. Also, plaintiffs shall, consistent with their discovery obligations, conduct a search on the email server of their internet service provider for all responsive emails concerning Babak Talebi and Mohammad Mansouri. Finally, the parties are instructed to discuss further the production of Outlook calendars, including those predating 2009. SO ORDERED. Signed by Judge John D. Bates on 3/5/2010. (lcjdb1) (Entered: 03/05/2010) |
| 03/09/2010 | 54 | | Joint MOTION for Discovery *Amending Scheduling Order* by DAIOLESLAM SEID HASSAN (Jensen, Peter) (Entered: 03/09/2010) |
| 03/09/2010 | | | MINUTE ORDER: Upon consideration of _54_ the parties' joint motion to amend the scheduling order, and the entire record herein, it is hereby ORDERED that the motion is GRANTED. The parties' expert disclosures shall be due by not later than April 16, 2010. Discovery shall be completed by not later than June 11, 2010. Dispositive motions shall be filed by not later than July 30, 2010; responses thereto shall be filed by not later than |

| | | | |
|---|---|---|---|
| | | | August 27, 2010; replies in support, if any, shall be filed by not later than September 10, 2010. The status conference currently set for March 16, 2010, is rescheduled for June 16, 2010, at 9:00 a.m. in Courtroom 8. SO ORDERED. Signed by Judge John D. Bates on 3/9/2010. (lcjdb1) (Entered: 03/09/2010) |
| 03/11/2010 | 55 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Adrian V. Nelson, II, :Firm− Law Offices of Adrian V. Nelson, II, :Address− 600 E. Jefferson Street, Suite 316, Rockville, MD 20852. Phone No. − 301−424−6601. Fax No. − 301−279−7347 by NATIONAL IRANIAN AMERICAN COUNCIL (Attachments: # 1 Declaration Declaration of Adrian V. Nelson, II, # 2 Exhibit Certificate of Good Standing)(Pishevar, Afshin) (Entered: 03/11/2010) |
| 03/11/2010 | | | MINUTE ORDER: Upon consideration of 55 plaintiffs' motion for leave for Adrian V. Nelson, II to appear pro hac vice, and the entire record herein, it is hereby ORDERED that the motion is GRANTED. SO ORDERED. Signed by Judge John D. Bates on 3/11/2010. (lcjdb1) (Entered: 03/11/2010) |
| 04/09/2010 | 56 | | Joint MOTION for Discovery *Scheduling Order* by DAIOLESLAM SEID HASSAN (Jensen, Peter) (Entered: 04/09/2010) |
| 04/12/2010 | | | MINUTE ORDER: Upon consideration of 56 the parties' joint motion for extension of time, and the entire record herein, it is hereby ORDERED that the motion is GRANTED. The parties shall exchange their expert witness reports by not later than May 10, 2010. Signed by Judge John D. Bates on 4/12/2010. (lcjdb1) (Entered: 04/12/2010) |
| 05/10/2010 | 57 | | NOTICE *of Filing Expert Witness Disclosure* by NATIONAL IRANIAN AMERICAN COUNCIL (Pishevar, Afshin) (Entered: 05/10/2010) |
| 05/10/2010 | 58 | | MOTION for Extension of Time to *Disclose Expert* by NATIONAL IRANIAN AMERICAN COUNCIL (Pishevar, Afshin) (Entered: 05/10/2010) |
| 05/17/2010 | 59 | | NOTICE *of Filing Supplemental Expert Witness Disclosure* by NATIONAL IRANIAN AMERICAN COUNCIL (Pishevar, Afshin) (Entered: 05/17/2010) |
| 05/20/2010 | | | MINUTE ORDER: Upon consideration of 58 plaintiffs' motion for extension of time, and the entire record herein, it is hereby ORDERED that the motion is GRANTED. Plaintiffs shall submit their expert's report by not later than June 1, 2010. Signed by Judge John D. Bates on 5/20/2010. (lcjdb1) (Entered: 05/20/2010) |
| 05/26/2010 | | | MINUTE ORDER: Pursuant to the parties' joint call to chambers, and upon consideration of the entire record herein, it is hereby ORDERED that a telephone conference is scheduled for June 3, 2010, at 11:00 a.m. The parties shall place a joint call to chambers at that time. It is further ORDERED that the parties shall, by not later than 12:00 p.m. on June 2, 2010, file briefs, not exceeding three (3) pages, setting forth their respective positions on any outstanding discovery disputes. SO ORDERED. Signed by Judge John D. Bates on 5/26/2010. (lcjdb1, ) (Entered: 05/26/2010) |
| 06/01/2010 | 60 | | NOTICE *of Exchange of Expert Report of Dr. Deb Aikat* by NATIONAL |

| | | | |
|---|---|---|---|
| | | | IRANIAN AMERICAN COUNCIL (Pishevar, Afshin) (Entered: 06/01/2010) |
| 06/02/2010 | 61 | | MEMORANDUM re Discovery Disputes by NATIONAL IRANIAN AMERICAN COUNCIL. (Pishevar, Afshin) Modified to add link on 6/3/2010 (znmw, ). (Additional attachment(s) added on 6/3/2010: # 1 Exhibit A) (znmw, ). (Entered: 06/02/2010) |
| 06/02/2010 | 62 | | ENTERED IN ERROR.....MEMORANDUM by NATIONAL IRANIAN AMERICAN COUNCIL. (Pishevar, Afshin) Modified on 6/3/2010 (znmw, ). (Entered: 06/02/2010) |
| 06/02/2010 | 63 | | MEMORANDUM re Order, Set Deadlines/Hearings,,,,,,, by DAIOLESLAM SEID HASSAN. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Exhibit, # 14 Exhibit, # 15 Exhibit, # 16 Exhibit)(Rogers, Harold) (Entered: 06/02/2010) |
| 06/03/2010 | | | MINUTE ORDER: On the Court's own motion, and upon consideration of the entire record herein, it is hereby ORDERED that defendant shall, by not later than June 8, 2010, submit a proposed order consistent with the Court's rulings during today's teleconference. Plaintiffs may, by not later than June 10, 2010, submit a memorandum detailing any objections to the form of defendant's proposed order. This memorandum may not exceed four (4) pages. SO ORDERED. Signed by Judge John D. Bates on 6/3/2010. (lcjdb1) (Entered: 06/03/2010) |
| 06/03/2010 | | | NOTICE OF ERROR re 62 Memorandum; emailed to ap@pishevarlegal.com, cc'd 4 associated attorneys — The PDF file you docketed contained errors: 1. Incorrect event used, 2. Entered in error as a separate entry; Exhibit A has been added to Docket Entry 61 . (znmw, ) (Entered: 06/03/2010) |
| 06/03/2010 | | | Minute Entry: Telephone Conference held on 6/3/2010 before Judge John D. Bates. (Court Reporter Bryan Wayne) (tb, ) (Entered: 06/03/2010) |
| 06/04/2010 | | | MINUTE ORDER: On the Court's own motion, and upon consideration of the entire record herein, it is hereby ORDERED that the status conference currently scheduled for June 16, 2010 is CANCELLED. It is further ORDERED that, by not later than June 9, 2010, the parties shall jointly submit a proposed schedule to govern further proceedings in this action. SO ORDERED. Signed by Judge John D. Bates on 6/4/2010. (lcjdb1) (Entered: 06/04/2010) |
| 06/08/2010 | 64 | | NOTICE of Proposed Order by DAIOLESLAM SEID HASSAN. (Attachments: # 1 Text of Proposed Order)(Rogers, Harold) Modified on 6/9/2010 to correct event used (dr). (Entered: 06/08/2010) |
| 06/09/2010 | 65 | | ENTERED IN ERROR.....MEMORANDUM re Order, Set Deadlines,, by DAIOLESLAM SEID HASSAN. (Attachments: # 1 Text of Proposed Order Amended Scheduling Order)(Rogers, Harold) Modified on 6/10/2010 (dr). (Entered: 06/09/2010) |
| 06/10/2010 | | | NOTICE OF CORRECTED DOCKET ENTRY: re 65 Memorandum was entered in error and counsel is instructed to refile said pleading using the |

| | | | |
|---|---|---|---|
| | | | correct event. The document title must correspond with the docket entry event. (dr) (Entered: 06/10/2010) |
| 06/10/2010 | 66 | | Joint MOTION for Discovery *Scheduling Order* by DAIOLESLAM SEID HASSAN (Attachments: #1 Text of Proposed Order)(Rogers, Harold) (Entered: 06/10/2010) |
| 06/10/2010 | 67 | | MEMORANDUM by NATIONAL IRANIAN AMERICAN COUNCIL. (Pishevar, Afshin) (Entered: 06/10/2010) |
| 07/01/2010 | 68 | | ORDER addressing discovery disputes and setting schedule. See text of Order for details. Signed by Judge John D. Bates on 7/1/2010. (lcjdb1) (Entered: 07/01/2010) |
| 07/15/2010 | 69 | | MOTION for Reconsideration *of July 1, 2010, Order Regarding Discovery* by NATIONAL IRANIAN AMERICAN COUNCIL (Attachments: #1 Memorandum in Support Plaintiffs' Motion for Reconsideration, #2 Exhibit A−F)(Pishevar, Afshin) (Entered: 07/15/2010) |
| 07/16/2010 | 70 | | Consent MOTION to Stay *in part the Order of July 1, 2010* by NATIONAL IRANIAN AMERICAN COUNCIL (Pishevar, Afshin) (Entered: 07/16/2010) |
| 07/16/2010 | 71 | | MOTION to Stay *Order of July 1, 2010* by NATIONAL IRANIAN AMERICAN COUNCIL (Pishevar, Afshin) (Entered: 07/16/2010) |
| 07/16/2010 | 72 | | ENTERED IN ERROR.....MEET AND CONFER STATEMENT. (Pishevar, Afshin) Modified on 7/19/2010 (dr). (Entered: 07/16/2010) |
| 07/16/2010 | 73 | | ENTERED IN ERROR.....MEET AND CONFER STATEMENT. (Pishevar, Afshin) Modified on 7/19/2010 (dr). (Entered: 07/16/2010) |
| 07/19/2010 | | | NOTICE OF CORRECTED DOCKET ENTRY: re 72 Meet and Confer Statement, 73 Meet and Confer Statement were entered in error and counsel will refile using correct event. Counsel should refile pleadings as a Notice. (dr) (Entered: 07/19/2010) |
| 07/20/2010 | | | MINUTE ORDER: Upon consideration of 71 plaintiffs' motion to stay 68 the Court's July 1, 2010 Order, and the entire record herein, it is hereby ORDERED that the motion is GRANTED. The Court's July 1 Order is stayed pending the resolution of 69 plaintiffs' motion for reconsideration. Signed by Judge John D. Bates on 7/20/2010. (lcjdb1) (Entered: 07/20/2010) |
| 07/21/2010 | 74 | | NOTICE *of Meet and Confer Re Motion for Recon.* by TRITA PARSI (Pishevar, Afshin) (Entered: 07/21/2010) |
| 07/21/2010 | 75 | | NOTICE *of Meet and Confer Re Motion to Stay* by NATIONAL IRANIAN AMERICAN COUNCIL (Pishevar, Afshin) (Entered: 07/21/2010) |
| 07/22/2010 | 76 | | Memorandum in opposition to re 69 MOTION for Reconsideration *of July 1, 2010, Order Regarding Discovery* filed by DAIOLESLAM SEID HASSAN. (Attachments: #1 Exhibit A, #2 Exhibit B, #3 Exhibit C, #4 Exhibit D, #5 Exhibit E)(Rogers, Harold) (Entered: 07/22/2010) |
| 07/30/2010 | 77 | | REPLY to opposition to motion re 69 MOTION for Reconsideration *of July 1, 2010, Order Regarding Discovery* filed by NATIONAL IRANIAN AMERICAN COUNCIL. (Pishevar, Afshin) (Entered: 07/30/2010) |

| | | | |
|---|---|---|---|
| 08/06/2010 | 78 | | ORDER denying 69 plaintiffs' motion for reconsideration. See text of Order for details. Signed by Judge John D. Bates on 8/6/2010. (lcjdb1) (Entered: 08/06/2010) |
| 08/11/2010 | 79 | | TRANSCRIPT OF PROCEEDINGS before Judge John D. Bates held on 6/3/10; Page Numbers: 1 − 20. Date of Issuance:08/09/10. Court Reporter/Transcriber Bryan A. Wayne, Telephone number 202−354−3186, Court Reporter Email Address : bryanawayne@yahoo.com.<P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at ww.dcd.uscourts.gov.<P></P> Redaction Request due 9/1/2010. Redacted Transcript Deadline set for 9/13/2010. Release of Transcript Restriction set for 11/9/2010.(Wayne, Bryan) (Entered: 08/11/2010) |
| 09/16/2010 | | | MINUTE ORDER: Pursuant to the status conference held today, and upon consideration of the entire record herein, it is hereby ORDERED that discovery in this case shall be completed by not later than December 16, 2010. It is further ORDERED that a status conference is scheduled for December 17, 2010, at 9:00 a.m. in Courtroom 8. SO ORDERED. Signed by Judge John D. Bates on 9/16/2010. (lcjdb1) (Entered: 09/16/2010) |
| 09/16/2010 | | | Minute Entry: Status Conference held on 9/16/2010 before Judge John D. Bates. See Order previously entered today. (Court Reporter Bryan Wayne) (tb, ) (Entered: 09/16/2010) |
| 10/13/2010 | 80 | | TRANSCRIPT OF PROCEEDINGS before Judge John D. Bates held on 6/3/10; Page Numbers: 1 − 20. Date of Issuance:10/13/10. Court Reporter/Transcriber Bryan A. Wayne, Telephone number 202−354−3186, Court Reporter Email Address : bryanawayne@verizon.net.<P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at ww.dcd.uscourts.gov.<P></P> Redaction Request due 11/3/2010. Redacted Transcript Deadline set for 11/15/2010. Release of Transcript Restriction set for 1/11/2011.(Wayne, Bryan) (Entered: 10/13/2010) |
| 10/27/2010 | 81 | | TRANSCRIPT OF PROCEEDINGS before Judge John D. Bates held on 9/16/10; Page Numbers: 1 − 15. Date of Issuance:10/27/10. Court |

| | | | |
|---|---|---|---|
| | | | Reporter/Transcriber Bryan A. Wayne, Telephone number 202−354−3186, Court Reporter Email Address : bryanawayne@verizon.net.<P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at ww.dcd.uscourts.gov.<P></P> Redaction Request due 11/17/2010. Redacted Transcript Deadline set for 11/29/2010. Release of Transcript Restriction set for 1/25/2011.(Wayne, Bryan) (Entered: 10/27/2010) |
| 11/29/2010 | 82 | | ORDER setting deposition dates and resolving discovery disputes between the parties. Signed by Judge John D. Bates on 11/29/10. (lcjdb1) (Entered: 11/29/2010) |
| 12/17/2010 | | | Minute Entry: Status Conference held on 12/17/2010 before Judge John D. Bates. (Court Reporter Bryan Wayne) (tb, ) (Entered: 12/20/2010) |
| 12/21/2010 | 83 | | ORDER extending discovery deadline to February 4, 2011, and setting schedule for further proceedings. See text of Order for details. Signed by Judge John D. Bates on 12/21/10. (lcjdb1) (Entered: 12/21/2010) |
| 12/21/2010 | | | Set/Reset Deadlines/Hearings: Discovery shall be completed by 2/4/2011. The parties' joint status report identifying any unresolved discovery disputes shall be filed by 2/11/2011. A hearing on remaining discovery disputes (other than requests for sanctions) is set for 3/4/2011 at 10:00 AM in Courtroom 8 before Judge John D. Bates. (lcjdb1) (Entered: 12/21/2010) |
| 12/21/2010 | 84 | | Joint MOTION for Order *regarding the preservation of documents* by DAIOLESLAM SEID HASSAN (Jensen, Peter) (Entered: 12/21/2010) |
| 12/22/2010 | 85 | | ORDER regarding electronically stored information ("ESI") possessed by the parties or under their control since the commencement of the litigation until final resolution. [SEE THE ORDER FOR COMPLETE DETAILS]. Signed by Judge John D. Bates on 12/21/2010. (jth) (Entered: 12/22/2010) |
| 01/28/2011 | 86 | | TRANSCRIPT OF PROCEEDINGS before Judge John D. Bates held on 12/17/10; Page Numbers: 1 − 41. Date of Issuance:1/28/11. Court Reporter/Transcriber Bryan A. Wayne, Telephone number 202−354−3186, Court Reporter Email Address : bryanawayne@verizon.net.<P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available |

| | | |
|---|---|---|
| | | to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at ww.dcd.uscourts.gov.<P></P> Redaction Request due 2/18/2011. Redacted Transcript Deadline set for 2/28/2011. Release of Transcript Restriction set for 4/28/2011.(Wayne, Bryan) (Entered: 01/28/2011) |
| 02/14/2011 | 87 | STATUS REPORT *DEFENDANTS REPORT REGARDING STATUS OF DISCOVERY* by DAIOLESLAM SEID HASSAN. (Attachments: #1 Exhibit A, #2 Exhibit B, #3 Exhibit C, #4 Exhibit D, #5 Exhibit E, #6 Exhibit F, #7 Exhibit G, #8 Exhibit H, #9 Exhibit I, #10 Exhibit J, #11 Exhibit K, #12 Exhibit L, #13 Exhibit M, #14 Exhibit N, #15 Exhibit O, #16 Exhibit P, #17 Exhibit Q, #18 Exhibit R, #19 Exhibit S, #20 Exhibit T, #21 Exhibit U, #22 Exhibit V)(Jensen, Peter) (Entered: 02/14/2011) |
| 02/15/2011 | 88 | NOTICE *Regarding Status of Discovery* by NATIONAL IRANIAN AMERICAN COUNCIL (Attachments: #1 Exhibit, #2 Exhibit, #3 Exhibit, #4 Exhibit, #5 Exhibit, #6 Exhibit, #7 Exhibit, #8 Exhibit, #9 Exhibit, #10 Exhibit, #11 Exhibit)(Pishevar, Afshin) (Entered: 02/15/2011) |
| 03/04/2011 | | Minute Entry: Discovery Hearing held on 3/4/2011 before Judge John D. Bates: Parties to file proposed orders by not later than 5:00 p.m. on 03/16/2011 and any modifications to the proposed orders by not later than 4:00 p.m. on 03/18/2011. (Court Reporter Bryan Wayne) (tb, ) (Entered: 03/04/2011) |
| 03/16/2011 | 89 | NOTICE of Proposed Order *Defendant's Proposed Order Regarding Discovery* by DAIOLESLAM SEID HASSAN (Jensen, Peter) (Entered: 03/16/2011) |
| 03/16/2011 | 90 | NOTICE of Proposed Order *Regarding Discovery* by NATIONAL IRANIAN AMERICAN COUNCIL (Pishevar, Afshin) (Entered: 03/16/2011) |
| 03/18/2011 | 91 | NOTICE of Proposed Order *Regarding Discovery as Amended* by NATIONAL IRANIAN AMERICAN COUNCIL re 90 Notice of Proposed Order (Pishevar, Afshin) (Entered: 03/18/2011) |
| 03/25/2011 | 92 | MOTION in Limine *to Exclude the Testimony of Joel Morse* by DAIOLESLAM SEID HASSAN (Attachments: #1 Exhibit A, #2 Exhibit B, #3 Exhibit C, #4 Exhibit D, #5 Exhibit E, #6 Exhibit F, #7 Exhibit G, #8 Exhibit H, #9 Exhibit I, #10 Exhibit J, #11 Exhibit K)(Jensen, Peter) (Entered: 03/25/2011) |
| 03/29/2011 | 93 | ORDER resolving discovery disputes between the parties and setting a status conference. See text of Order for details. Signed by Judge John D. Bates on 3/29/11. (lcjdb1) (Entered: 03/29/2011) |
| 03/29/2011 | | Set/Reset Hearings: Status Conference set for 6/3/2011 at 9:00 AM in Courtroom 8 before Judge John D. Bates. (lcjdb1) (Entered: 03/29/2011) |
| 03/30/2011 | 94 | NOTICE *Of Filing Regarding In Camera Production* by NATIONAL IRANIAN AMERICAN COUNCIL (Pishevar, Afshin) (Entered: 03/30/2011) |
| 04/05/2011 | 95 | ORDER requiring the production of documents by NIAC. See text of Order for details. Signed by Judge John D. Bates on 4/5/11. (lcjdb1) (Entered: |

| | | | |
|---|---|---|---|
| | | | 04/05/2011) |
| 04/08/2011 | 96 | | MOTION for Extension of Time to File Response/Reply *to Defendant's Motion in Limine to Exclude the Testimony of Joel Morse* by NATIONAL IRANIAN AMERICAN COUNCIL (Attachments: # 1 Text of Proposed Order Proposed Order)(Pishevar, Afshin) (Entered: 04/08/2011) |
| 04/08/2011 | | | MINUTE ORDER: Upon consideration of 96 plaintiffs' motion for an extension of time to respond to 92 defendant's motion in limine to exclude the testimony of Joel Morse, and the entire record herein, it is hereby ORDERED that the motion is GRANTED; and it is further ORDERED that plaintiffs shall respond to defendant's motion in limine by not later than May 13, 2011. Signed by Judge John D. Bates on 4/8/11. (lcjdb1) (Entered: 04/08/2011) |
| 04/11/2011 | | | Set/Reset Deadlines: Response due by 5/13/2011. (tb, ) (Entered: 04/11/2011) |
| 04/25/2011 | 97 | | MOTION in Limine *to Exclude Testimony of Debashis Aikat* by DAIOLESLAM SEID HASSAN (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O)(Jensen, Peter) (Entered: 04/25/2011) |
| 05/06/2011 | 98 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 97 MOTION in Limine *to Exclude Testimony of Debashis Aikat* by NATIONAL IRANIAN AMERICAN COUNCIL (Pishevar, Afshin) (Entered: 05/06/2011) |
| 05/09/2011 | | | MINUTE ORDER: Upon consideration of 98 plaintiffs' motion for an extension of time to respond to 97 defendant's motion in limine to exclude the testimony of Debashis Aikat, and the entire record herein, it is hereby ORDERED that the motion is GRANTED; and it is further ORDERED that plaintiffs shall respond to defendant's motion in limine by not later than June 3, 2011. Signed by Judge John D. Bates on 5/9/11. (lcjdb1) (Entered: 05/09/2011) |
| 05/13/2011 | 99 | | Memorandum in opposition to re 92 MOTION in Limine *to Exclude the Testimony of Joel Morse* filed by NATIONAL IRANIAN AMERICAN COUNCIL. (Attachments: # 1 Exhibit Exhibit A — Morse CV, # 2 Exhibit Exhibit B — Morse Opinion, # 3 Exhibit Exhibit C — Morse Transcript, # 4 Exhibit Exhibit D — Morse Report, # 5 Proposed Order)(Pishevar, Afshin) (Entered: 05/13/2011) |
| 05/20/2011 | 100 | | REPLY to opposition to motion re 92 MOTION in Limine *to Exclude the Testimony of Joel Morse* filed by DAIOLESLAM SEID HASSAN. (Attachments: # 1 Exhibit A)(Jensen, Peter) (Entered: 05/20/2011) |
| 06/01/2011 | 101 | | TRANSCRIPT OF PROCEEDINGS before Judge John D. Bates held on 3/4/11; Page Numbers: 1 — 67. Date of Issuance:6/1/11. Court Reporter/Transcriber Bryan A. Wayne, Telephone number 202—354—3186, Court Reporter Email Address : bryanawayne@yahoo.com.<P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter |

| | | | |
|---|---|---|---|
| | | | referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at ww.dcd.uscourts.gov.<P></P> Redaction Request due 6/22/2011. Redacted Transcript Deadline set for 7/2/2011. Release of Transcript Restriction set for 8/30/2011.(Wayne, Bryan) (Entered: 06/01/2011) |
| 06/02/2011 | 102 | | Memorandum in opposition to re 97 MOTION in Limine *to Exclude Testimony of Debashis Aikat and Exhibits A−D* filed by NATIONAL IRANIAN AMERICAN COUNCIL. (Attachments: # 1 Proposed Order, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D)(Pishevar, Afshin) (Entered: 06/02/2011) |
| 06/03/2011 | | | Minute Entry: Status Conference held on 6/3/2011 before Judge John D. Bates: Discovery Motions due by 7/8/2011. Responses due by 8/1/2011. Replies due by 8/16/2011. All other motions due by 9/6/2011. Motion Hearing set for 8/30/2011 09:30 AM in Courtroom 14 before Judge John D. Bates. (Court Reporter Catalina Kerr) (tb, ) (Entered: 06/03/2011) |
| 06/09/2011 | 103 | | REPLY to opposition to motion re 98 Unopposed MOTION for Extension of Time to File Response/Reply as to 97 MOTION in Limine *to Exclude Testimony of Debashis Aikat*, filed by DAIOLESLAM SEID HASSAN. (Attachments: # 1 Exhibit Ex. P (Iran's Oil Mafia article), # 2 Exhibit Ex. Q (Hassan Dep. Excerpt), # 3 Exhibit Ex. R (Farsi website comments), # 4 Exhibit Ex. S (English website comments), # 5 Exhibit Ex. T (Post Your Comment example), # 6 Exhibit Ex. U (PAIC article with comments), # 7 Exhibit Ex. V (Dec. 2010 Supplemental Disclosures))(Jensen, Peter) Modified on 6/10/2011 to edit text (dr). (Entered: 06/09/2011) |
| 06/09/2011 | 104 | | ORDER setting deadlines and referring the parties to Magistrate Judge Kay for the sole purpose of the facilitation of settlement discussions. See text of Order for details. Signed by Judge John D. Bates on 6/9/11. (lcjdb1) (Entered: 06/09/2011) |
| 06/09/2011 | | | Set/Reset Deadlines/Hearings: Discovery motions are due by 7/8/2011; oppositions thereto are due by 8/1/2011; replies are due by 8/16/2011. All other motions are due by 9/16/2011; oppositions thereto are due by 10/28/2011; replies are due by 11/11/2011. A discovery hearing is set for 8/30/2011 at 9:30 AM in Courtroom 14 before Judge John D. Bates. (lcjdb1) (Entered: 06/09/2011) |
| 06/09/2011 | 105 | | CASE REFERRED to Magistrate Judge Alan Kay for a period of not more than sixty (60) days, which shall expire on August 8, 2011. (ls, ) (Entered: 06/13/2011) |
| 06/13/2011 | 106 | | ENTERED IN ERROR.....NOTICE of Appearance by Peter G. Jensen on behalf of DAIOLESLAM SEID HASSAN (Jensen, Peter) Modified on 6/14/2011 (dr). (Entered: 06/13/2011) |
| 06/13/2011 | 107 | | |

| | | | |
|---|---|---|---|
| | | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Scott F. Craig, :Firm− Law Offices of Scott F. Craig, :Address− 9107 Wilshire Boulevard, Ste 450, Beverly Hills, California 90210. Phone No. − (310) 867−5980. Fax No. − N/A by DAIOLESLAM SEID HASSAN (Attachments: #1 Declaration of Scott F. Craig, #2 Exhibit A (Certificate of Good Standing))(Jensen, Peter) (Entered: 06/13/2011) |
| 06/14/2011 | | | NOTICE OF CORRECTED DOCKET ENTRY: re 106 Notice of Appearance was entered in error. The Attorney who wants to appear in this case must file their Notice of Appearance using their own ECF login and Password, and signature.(dr) (Entered: 06/14/2011) |
| 06/15/2011 | | | MINUTE ORDER: Upon consideration of 107 the motion for admission pro hac vice of Scott F. Craig and pursuant to Local Civil Rule 83.2(d), it is hereby ORDERED that the motion is GRANTED. Signed by Judge John D. Bates on 6/15/11. (lcjdb1) (Entered: 06/15/2011) |
| 06/17/2011 | 108 | | NOTICE of Appearance by Thomas Edward Ross on behalf of DAIOLESLAM SEID HASSAN (Ross, Thomas) (Entered: 06/17/2011) |
| 06/22/2011 | 109 | | ORDER setting a Settlement Conference for 7/18/2011, at 10:30 AM in Chambers before Magistrate Judge Alan Kay. Signed by Magistrate Judge Alan Kay on 06/22/11. (DM) (Entered: 06/22/2011) |
| 06/22/2011 | 110 | | NOTICE of Appearance by Peter G. Jensen on behalf of DAIOLESLAM SEID HASSAN (Jensen, Peter) (Entered: 06/22/2011) |
| 06/29/2011 | 111 | | MOTION for Leave to File *Exhibits Under Seal* by DAIOLESLAM SEID HASSAN (Ross, Thomas) (Entered: 06/29/2011) |
| 07/01/2011 | | | MINUTE ORDER: Upon consideration of 111 defendant's unopposed motion to file under seal Exhibits J, K, and M to defendant's motion to compel, and the entire record herein, it is hereby ORDERED that the motion is GRANTED. Signed by Judge John D. Bates on 7/1/11. (lcjdb1) (Entered: 07/01/2011) |
| 07/01/2011 | 112 | | MOTION to Compel *Production of Server* by DAIOLESLAM SEID HASSAN (Attachments: #1 Exhibit A, #2 Exhibit B, #3 Exhibit C, #4 Exhibit D, #5 Exhibit E, #6 Exhibit F, #7 Exhibit G, #8 Exhibit H)(Ross, Thomas) (Entered: 07/01/2011) |
| 07/01/2011 | 113 | | MOTION to Compel *Production of Membership Lists* by DAIOLESLAM SEID HASSAN (Attachments: #1 Exhibit A, #2 Exhibit B, #3 Exhibit C, #4 Exhibit D, #5 Exhibit E, #6 Exhibit F, #7 Exhibit G, #8 Exhibit H, #9 Exhibit I, #10 Exhibit J, #11 Exhibit K, #12 Exhibit L, #13 Exhibit M, #14 Exhibit N, #15 Exhibit O, #16 Exhibit P, #17 Exhibit Q, #18 Exhibit R)(Ross, Thomas) (Entered: 07/01/2011) |
| 07/01/2011 | 114 | | SEALED *EXHIBIT J*, filed by DAIOLESLAM SEID HASSAN. re Order on Motion for Leave to File,. (This document is SEALED and only available to authorized persons.) (Attachments: (Main Document) Exhibit J−1, #1 Exhibit J−2, #2 Exhibit J−3)(zdr) (Entered: 07/06/2011) |
| 07/01/2011 | 115 | | SEALED *EXHIBIT K − PART 1*, filed by DAIOLESLAM SEID HASSAN. re Order on Motion for Leave to File,. (This document is SEALED and only available to authorized persons.) (Attachments: (Main Document) Exhibit |

| | | | |
|---|---|---|---|
| | | | K−1 #_1 Exhibit K−2, #_2 Exhibit K−3, #_3 Exhibit K−4, #_4 Exhibit K−5, #_5 Exhibit K−6)(zdr) (Entered: 07/06/2011) |
| 07/01/2011 | 116 | | SEALED *EXHIBIT K − PART 2*, filed by DAIOLESLAM SEID HASSAN. re Order on Motion for Leave to File,. (This document is SEALED and only available to authorized persons.) (Attachments: (Main Document) Exhibit K−7, #_1 Exhibit K−8, #_2 Exhibit K−9, #_3 Exhibit K−10, #_4 Exhibit K−11)(zdr) (Entered: 07/06/2011) |
| 07/01/2011 | 117 | | SEALED *EXHBIT M*, filed by DAIOLESLAM SEID HASSAN. re Order on Motion for Leave to File. (This document is SEALED and only available to authorized persons.)(zdr) (Entered: 07/06/2011) |
| 07/06/2011 | 118 | | MOTION to Quash Subpoena, *or in the alternative*, MOTION for Protective Order by non−party KENNETH R. TIMMERMAN (Attachments: #_1 Exhibit A−K, #_2 Text of Proposed Order)(dr) Modified on 7/8/2011 to reflect the correct filer of this document (jeb, ). (Entered: 07/07/2011) |
| 07/08/2011 | 119 | | MOTION to Compel *Production of Documents Concerning the Legality of Plaintiffs' Lobbying Activities* by DAIOLESLAM SEID HASSAN (Attachments: #_1 Exhibit A, #_2 Exhibit B, #_3 Exhibit C, #_4 Exhibit D, #_5 Exhibit E, #_6 Exhibit F, #_7 Exhibit G)(Ross, Thomas) (Entered: 07/08/2011) |
| 07/08/2011 | 120 | | MOTION to Compel *Damages Discovery and/or to Strike in Part Prayer for Relief* by DAIOLESLAM SEID HASSAN (Attachments: #_1 Exhibit A, #_2 Exhibit B, #_3 Exhibit C, #_4 Exhibit D, #_5 Exhibit E, #_6 Exhibit F, #_7 Exhibit G, #_8 Exhibit H, #_9 Exhibit I)(Ross, Thomas). Added MOTION to Strike on 7/11/2011 (dr). (Entered: 07/08/2011) |
| 07/08/2011 | 121 | | MOTION in Limine *to Exclude Testimony and Evidence Related to Plaintiffs' Purported Lobbying Activity* by NATIONAL IRANIAN AMERICAN COUNCIL (Attachments: #_1 Text of Proposed Order, #_2 Exhibit A −− Parsi Deposition, #_3 Exhibit B −−Disney Deposition, #_4 Exhibit C −− Blout Deposition, #_5 Exhibit D −− Jilson Email)(Pishevar, Afshin) (Entered: 07/08/2011) |
| 07/08/2011 | 122 | | MOTION to Compel *Depostion of Kenneth Timmerman* by NATIONAL IRANIAN AMERICAN COUNCIL (Attachments: #_1 Memorandum in Support, #_2 Text of Proposed Order, #_3 Exhibit A −− Dialoeslam Dep, #_4 Exhibit B −− Letter from Adrian V. Nelson, II, #_5 Exhibit C −− Letter from Siavash Abghari, #_6 Exhibit D −− Affidavit of Service_Hill, #_7 Exhibit E −− Letter from Scott F. Craig, #_8 Exhibit F −− Affidavit of Service_Mills)(Pishevar, Afshin) (Entered: 07/08/2011) |
| 07/08/2011 | 123 | | Memorandum in opposition to re 122 MOTION to Compel *Depostion of Kenneth Timmerman* filed by KENNETH R. TIMMERMAN. (Craig, Scott) (Entered: 07/08/2011) |
| 07/15/2011 | 124 | | Memorandum in opposition to re 118 MOTION to Quash MOTION for Protective Order *and Reply to Timmerman's Opposition to Plaintiffs' Motion to Compel Deposition of Kenneth Timmerman* filed by NATIONAL IRANIAN AMERICAN COUNCIL. (Attachments: #_1 Exhibit A −− Mckoy Affidavit, #_2 Exhibit B −− Email, #_3 Exhibit C −− Mckoy Affidavit, #_4 Exhibit D −− Discovery Order, #_5 Exhibit E −− Hill Affidavit, #_6 Exhibit |

| | | | F — Craig Letter, #7 Exhibit G — Mills Affidavit)(Pishevar, Afshin) (Entered: 07/15/2011) |
|---|---|---|---|
| 07/15/2011 | 125 | | REPLY to opposition to motion re 122 MOTION to Compel *Depostion of Kenneth Timmerman* filed by NATIONAL IRANIAN AMERICAN COUNCIL. (See Docket Entry 124 to view document). (dr) (Entered: 07/18/2011) |
| 07/18/2011 | | | Minute Entry for proceedings held before Magistrate Judge Alan Kay: Settlement Conference held on 7/18/2011. (DM) (Entered: 08/03/2011) |
| 07/22/2011 | | | Minute Entry for proceedings held before Magistrate Judge Alan Kay: Telephone Conference held on 7/22/2011. (DM) (Entered: 08/03/2011) |
| 07/25/2011 | 126 | | REPLY to opposition to motion re 118 MOTION to Quash MOTION for Protective Order filed by KENNETH R. TIMMERMAN. (Craig, Scott) (Entered: 07/25/2011) |
| 07/26/2011 | | | Minute Entry for proceedings held before Magistrate Judge Alan Kay: Telephone Conference held on 7/26/2011. (DM) (Entered: 08/03/2011) |
| 08/01/2011 | 127 | | Memorandum in opposition to re 120 MOTION to Compel *Damages Discovery and/or to Strike in Part Prayer for Relief* MOTION to Strike filed by NATIONAL IRANIAN AMERICAN COUNCIL. (Attachments: #1 Text of Proposed Order)(Pishevar, Afshin) (Entered: 08/01/2011) |
| 08/01/2011 | 128 | | Memorandum in opposition to re 119 MOTION to Compel *Production of Documents Concerning the Legality of Plaintiffs' Lobbying Activities* filed by NATIONAL IRANIAN AMERICAN COUNCIL. (Attachments: #1 Text of Proposed Order, #2 Exhibit A — Parsi Deposition, #3 Exhibit B —Disney Deposition, #4 Exhibit C — Blout Deposition, #5 Exhibit D— Mohammadi Email)(Pishevar, Afshin) (Entered: 08/01/2011) |
| 08/01/2011 | 129 | | Memorandum in opposition to re 113 MOTION to Compel *Production of Membership Lists* filed by NATIONAL IRANIAN AMERICAN COUNCIL. (Attachments: #1 Text of Proposed Order, #2 Exhibit A — Morse Expert Report, #3 Exhibit B — Nelson Letter)(Pishevar, Afshin) (Entered: 08/01/2011) |
| 08/01/2011 | 130 | | Memorandum in opposition to re 121 MOTION in Limine *to Exclude Testimony and Evidence Related to Plaintiffs' Purported Lobbying Activity* filed by DAIOLESLAM SEID HASSAN. (Attachments: #1 Appendix Exhibit Index, #2 Exhibit A, #3 Exhibit B, #4 Exhibit C, #5 Exhibit D, #6 Exhibit E, #7 Exhibit F, #8 Exhibit G, #9 Exhibit H, #10 Exhibit I, #11 Exhibit J, #12 Exhibit K, #13 Exhibit L, #14 Exhibit N, #15 Exhibit N, #16 Exhibit O, #17 Exhibit P, #18 Exhibit Q, #19 Exhibit R, #20 Exhibit S, #21 Exhibit T, #22 Exhibit U, #23 Exhibit V, #24 Exhibit W, #25 Exhibit X, #26 Exhibit Y, #27 Exhibit Z, #28 Exhibit AA, #29 Exhibit BB, #30 Exhibit CC, #31 Exhibit DD, #32 Exhibit EE, #33 Exhibit FF, #34 Exhibit GG, #35 Exhibit HH)(Ross, Thomas) (Entered: 08/01/2011) |
| 08/01/2011 | 131 | | Memorandum in opposition to re 112 MOTION to Compel *Production of Server* filed by NATIONAL IRANIAN AMERICAN COUNCIL. (Attachments: #1 Text of Proposed Order, #2 Exhibit A — Nelson Letter, #3 Exhibit B — Real Analysis Report, #4 Exhibit C − Precision Legal |

| | | | |
|---|---|---|---|
| | | | Services Report)(Pishevar, Afshin) (Entered: 08/01/2011) |
| 08/03/2011 | 132 | | ERRATA *Regarding Opposition to Motion to Compel Production of Server* by NATIONAL IRANIAN AMERICAN COUNCIL_131 Memorandum in Opposition, filed by NATIONAL IRANIAN AMERICAN COUNCIL. (Attachments: #_1 Exhibit Corrected Exhibit C)(Pishevar, Afshin) (Entered: 08/03/2011) |
| 08/05/2011 | 133 | | REPLY to opposition to motion re_121 MOTION in Limine *to Exclude Testimony and Evidence Related to Plaintiffs' Purported Lobbying Activity* filed by NATIONAL IRANIAN AMERICAN COUNCIL. (Attachments: #_1 Exhibit Exhibit A, #_2 Exhibit Exhibit B, #_3 Exhibit Exhibit C)(Pishevar, Afshin) (Entered: 08/05/2011) |
| 08/16/2011 | 134 | | REPLY to opposition to motion re_120 MOTION to Compel *Damages Discovery and/or to Strike in Part Prayer for Relief* MOTION to Strike filed by DAIOLESLAM SEID HASSAN. (Attachments: #_1 Exhibit A, #_2 Exhibit B, #_3 Exhibit C, #_4 Exhibit D)(Ross, Thomas) (Entered: 08/16/2011) |
| 08/16/2011 | 135 | | REPLY to opposition to motion re_119 MOTION to Compel *Production of Documents Concerning the Legality of Plaintiffs' Lobbying Activities* filed by DAIOLESLAM SEID HASSAN. (Attachments: #_1 Exhibit A, #_2 Exhibit B, #_3 Exhibit C)(Ross, Thomas) (Entered: 08/16/2011) |
| 08/16/2011 | 136 | | REPLY to opposition to motion re_113 MOTION to Compel *Production of Membership Lists* filed by DAIOLESLAM SEID HASSAN. (Attachments: #_1 Exhibit A, #_2 Exhibit B)(Ross, Thomas) (Entered: 08/16/2011) |
| 08/16/2011 | 137 | | REPLY to opposition to motion re_112 MOTION to Compel *Production of Server* filed by DAIOLESLAM SEID HASSAN. (Attachments: #_1 Exhibit A, #_2 Exhibit B, #_3 Exhibit C, #_4 Exhibit D, #_5 Exhibit E)(Ross, Thomas) (Entered: 08/16/2011) |
| 08/30/2011 | 138 | | ORDER resolving discovery disputes between the parties. See text of Order for details. Signed by Judge John D. Bates on 8/30/11. (lcjdb1) (Entered: 08/30/2011) |
| 08/30/2011 | | | Minute Entry: Motions Hearing on discovery disputes held on 8/30/2011 before Judge John D. Bates: SEE ORDER PREVIOUSLY ENTERED TODAY. (Court Reporter Bryan Wayne) (tb, ) (Entered: 08/30/2011) |
| 09/06/2011 | 139 | | BILL OF COSTS *Per Court's August 30, 2011 Order* by DAIOLESLAM SEID HASSAN. (Attachments: #_1 Exhibit A (Itemized List of Fees and Expenses))(Ross, Thomas) (Entered: 09/06/2011) |
| 09/07/2011 | | | MINUTE ORDER: Upon consideration of the representations of counsel at the telephone conference held with the Court on this date, and the entire record herein, it is hereby ORDERED that_138 this Court's August 30, 2011 Order is amended as follows: PricewaterhouseCoopers ("PwC") may conduct forensic imaging of NIAC's servers/shared−drives and Talebi's computer. Production to defendant of data/files on the imaged drives shall be limited to (1) the Outlook calendar entries contained on the servers/shared−drives and Talebi's computer, as originally specified in this Court's July 2010 Order; and (2) user/habit/login information in order to |

| | | | |
|---|---|---|---|
| | | | determine the identities of the persons who used the computers' Outlook calendar function. PwC therefore may not produce to defendant all of the files contained on NIAC's server. All other aspects of the Court's August 30, 2011 Order remain in effect. SO ORDERED. Signed by Judge John D. Bates on 9/7/11. (lcjdb1) (Entered: 09/07/2011) |
| 09/13/2011 | 140 | | MOTION to Stay *and Exceptions to Bill of Costs* by NATIONAL IRANIAN AMERICAN COUNCIL (Attachments: # 1 Text of Proposed Order, # 2 Exhibit A –– Kapshandy Bio, # 3 Exhibit B –– Rogers Bio, # 4 Exhibit C –– Ross Bio)(Pishevar, Afshin) (Entered: 09/13/2011) |
| 09/13/2011 | 141 | | ENTERED IN ERROR.....BILL OF COSTS *(Corrected Exhibit A)* by DAIOLESLAM SEID HASSAN. (Ross, Thomas) Modified on 9/14/2011 (dr). (Entered: 09/13/2011) |
| 09/14/2011 | | | NOTICE OF CORRECTED DOCKET ENTRY: re 141 Bill of Costs was entered in error and counsel has been instructed to refile said pleading as an Errata to Docket Entry 139 . (dr) (Entered: 09/14/2011) |
| 09/14/2011 | 142 | | ERRATA by DAIOLESLAM SEID HASSAN 139 Bill of Costs filed by DAIOLESLAM SEID HASSAN. (Attachments: # 1 Exhibit A (Corrected List of Fees and Expenses))(Ross, Thomas) (Entered: 09/14/2011) |
| 09/16/2011 | 143 | | MOTION for Sanctions *(Omnibus)* by DAIOLESLAM SEID HASSAN (Attachments: # 1 Appendix Exhibit List (Omnibus Sanctions), # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 Exhibit L, # 14 Exhibit M, # 15 Exhibit N, # 16 Exhibit O, # 17 Exhibit P, # 18 Exhibit Q, # 19 Exhibit R, # 20 Exhibit S, # 21 Exhibit T, # 22 Exhibit U, # 23 Exhibit V, # 24 Exhibit W, # 25 Exhibit X, # 26 Exhibit Y, # 27 Exhibit Z, # 28 Exhibit AA, # 29 Exhibit BB, # 30 Exhibit CC, # 31 Exhibit DD, # 32 Exhibit EE, # 33 Exhibit FF, # 34 Exhibit GG, # 35 Exhibit HH, # 36 Exhibit II, # 37 Exhibit JJ, # 38 Exhibit KK, # 39 Exhibit LL, # 40 Exhibit MM, # 41 Exhibit NN, # 42 Exhibit OO, # 43 Exhibit PP, # 44 Exhibit QQ, # 45 Exhibit RR, # 46 Exhibit SS, # 47 Exhibit TT, # 48 Exhibit UU, # 49 Exhibit VV, # 50 Exhibit WW, # 51 Exhibit XX)(Ross, Thomas) (Entered: 09/16/2011) |
| 09/16/2011 | 144 | | MOTION for Summary Judgment by DAIOLESLAM SEID HASSAN (Attachments: # 1 Appendix Proposed Order, # 2 Appendix Exhibit List (Summary Judgment), # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, # 7 Exhibit E, # 8 Exhibit F, # 9 Exhibit G, # 10 Exhibit H, # 11 Exhibit I, # 12 Exhibit J, # 13 Exhibit K, # 14 Exhibit L, # 15 Exhibit M, # 16 Exhibit N, # 17 Exhibit O, # 18 Exhibit P, # 19 Exhibit Q, # 20 Exhibit R, # 21 Exhibit S, # 22 Exhibit T, # 23 Exhibit U, # 24 Exhibit V, # 25 Exhibit W, # 26 Exhibit X, # 27 Exhibit Y, # 28 Exhibit Z, # 29 Exhibit AA, # 30 Exhibit BB, # 31 Exhibit CC, # 32 Exhibit DD, # 33 Exhibit EE, # 34 Exhibit FF, # 35 Exhibit GG, # 36 Exhibit HH, # 37 Exhibit II, # 38 Exhibit JJ, # 39 Exhibit KK, # 40 Exhibit LL, # 41 Exhibit MM, # 42 Exhibit NN, # 43 Exhibit OO, # 44 Exhibit PP, # 45 Exhibit QQ, # 46 Exhibit RR, # 47 Exhibit SS, # 48 Exhibit TT, # 49 Exhibit UU, # 50 Exhibit VV, # 51 Exhibit WW, # 52 Exhibit XX, # 53 Exhibit YY, # 54 Exhibit ZZ, # 55 Exhibit AAA, # 56 Exhibit BBB, # 57 Exhibit CCC, # 58 Exhibit DDD, # 59 Exhibit EEE−1, # 60 Exhibit EEE−2, # 61 Exhibit EEE−3, # 62 Exhibit |

| | | |
|---|---|---|
| | | EEE−4, #63 Exhibit EEE−5, #64 Exhibit FFF, #65 Exhibit GGG, #66 Exhibit HHH, #67 Exhibit III, #68 Exhibit JJJ, #69 Exhibit KKK, #70 Exhibit LLL, #71 Exhibit MMM, #72 Exhibit NNN, #73 Exhibit OOO, #74 Exhibit PPP, #75 Exhibit QQQ, #76 Exhibit RRR, #77 Exhibit SSS, #78 Exhibit TTT)(Ross, Thomas) (Entered: 09/16/2011) |
| 09/16/2011 | 145 | ERRATA *to Defendant's Omnibus Motion for Sanctions* by DAIOLESLAM SEID HASSAN 143 MOTION for Sanctions *(Omnibus)* MOTION for Sanctions *(Omnibus)* MOTION for Sanctions *(Omnibus)* MOTION for Sanctions *(Omnibus)* MOTION for Sanctions *(Omnibus)* filed by DAIOLESLAM SEID HASSAN. (Attachments: #1 Exhibit A (Corrected Omnibus Motion for Sanctions))(Ross, Thomas) (Entered: 09/16/2011) |
| 09/20/2011 | | MINUTE ORDER: Upon consideration of 140 plaintiffs' motion to stay and exceptions to the bill of costs, and the entire record herein, it is hereby ORDERED that plaintiffs shall not be required to pay defendant's costs until the Court rules on 140 plaintiffs' exceptions to the bill of costs. Signed by Judge John D. Bates on 9/20/2011. (lcjdb1) (Entered: 09/20/2011) |
| 09/23/2011 | 146 | RESPONSE re 141 Bill of Costs, 142 Errata filed by NATIONAL IRANIAN AMERICAN COUNCIL. (Attachments: #1 Exhibit Exhibit A, #2 Exhibit Exhibit B, #3 Exhibit Exhibit C, #4 Exhibit Exhibit D)(Pishevar, Afshin) (Entered: 09/23/2011) |
| 09/26/2011 | 147 | Memorandum in opposition to re 140 MOTION to Stay *and Exceptions to Bill of Costs* filed by DAIOLESLAM SEID HASSAN. (Attachments: #1 Exhibit A (Ross e−mail))(Ross, Thomas) (Entered: 09/26/2011) |
| 09/28/2011 | 148 | RESPONSE re 146 Response to Document *Defendant's Revised Bill of Costs* filed by DAIOLESLAM SEID HASSAN. (Ross, Thomas) (Entered: 09/28/2011) |
| 10/03/2011 | 149 | REPLY re 148 Response to Document, 147 Memorandum in Opposition filed by NATIONAL IRANIAN AMERICAN COUNCIL. (Attachments: #1 Exhibit Exhibit A)(Pishevar, Afshin) (Entered: 10/03/2011) |
| 10/24/2011 | | MINUTE ORDER: Pursuant to the telephonic conference with counsel on October 24, 2011, it is hereby ORDERED that a briefing schedule is established as follows: Defendant's Motion to Compel shall be filed by not later than November 4, 2011. Plaintiffs' Opposition thereto shall be filed by not later than November 16, 2011. Defendant's Reply shall be filed by not later than November 29, 2011. SO ORDERED. Signed by Judge John D. Bates on 10/24/2011. (lcjdb1) (Entered: 10/24/2011) |
| 10/24/2011 | | Set/Reset Deadlines: Defendant's Motion to Compel due 11/4/2011. Plaintiffs' Opposition thereto due 11/16/2011. Defendant's Reply due 11/29/2011. (lcjdb1) (Entered: 10/24/2011) |
| 10/24/2011 | | Minute Entry: Telephone Conference held on 10/24/201 before Judge John D. Bates. (No Court Reporter) (tb, ) (Entered: 10/25/2011) |
| 10/24/2011 | | Set/Reset Deadlines: Motion due by 11/4/2011. Response due by 11/16/2011. Reply due by 11/29/2011. (tb, ) (Entered: 10/25/2011) |
| 10/27/2011 | 150 | Unopposed MOTION for Leave to File Excess Pages *in Opposition to Defendant's Motion for Summary Judgment and Omnibus Motion for* |

| | | | |
|---|---|---|---|
| | | | *Sanctions* by NATIONAL IRANIAN AMERICAN COUNCIL (Attachments: #1 Text of Proposed Order Proposed Order)(Pishevar, Afshin) (Entered: 10/27/2011) |
| 10/27/2011 | 151 | | ERRATA *To Plaintiffs' Motion To Exceed Page Limitations* by NATIONAL IRANIAN AMERICAN COUNCIL 150 Unopposed MOTION for Leave to File Excess Pages *in Opposition to Defendant's Motion for Summary Judgment and Omnibus Motion for Sanctions* filed by NATIONAL IRANIAN AMERICAN COUNCIL. (Attachments: #1 Exhibit Exhibit A)(Pishevar, Afshin) (Entered: 10/27/2011) |
| 10/28/2011 | | | MINUTE ORDER: Upon consideration of 150 Plaintiffs' Unopposed Motion to Exceed Page Limitations in Opposition to Defendant's Motion for Summary Judgment and Omnibus Sanctions Motion, and the entire record herein, it is hereby ORDERED that the motion is GRANTED IN PART; and it is further ORDERED that Plaintiffs' Opposition to Defendant's Motion for Summary Judgment shall not exceed 50 pages; and it is further ORDERED that Plaintiffs' Opposition to Defendant's Omnibus Sanctions Motion shall not exceed 50 pages. SO ORDERED. Signed by Judge John D. Bates on 10/28/2011. (lcjdb1) (Entered: 10/28/2011) |
| 10/28/2011 | 152 | | Memorandum in opposition to re 143 MOTION for Sanctions *(Omnibus)*, filed by NATIONAL IRANIAN AMERICAN COUNCIL. (Attachments: #1 Exhibit A, #2 Exhibit B, #3 Exhibit C, #4 Exhibit D, #5 Exhibit E, #6 Exhibit F, #7 Exhibit G, #8 Exhibit H, #9 Exhibit I, #10 Exhibit J, #11 Exhibit K, #12 Exhibit L, #13 Exhibit M, #14 Exhibit N, #15 Exhibit O, #16 Exhibit P, #17 Exhibit Q, #18 Exhibit R, #19 Exhibit S, #20 Exhibit T, #21 Exhibit U, #22 Text of Proposed Order Proposed Order)(Pishevar, Afshin) (Entered: 10/28/2011) |
| 10/28/2011 | 153 | | Memorandum in opposition to re 144 MOTION for Summary Judgment filed by NATIONAL IRANIAN AMERICAN COUNCIL. (Attachments: #1 Exhibit A, #2 Exhibit B, #3 Exhibit C, #4 Exhibit D, #5 Exhibit E, #6 Exhibit F, #7 Exhibit G, #8 Exhibit H, #9 Exhibit I, #10 Exhibit J, #11 Exhibit K, #12 Exhibit L, #13 Exhibit M, #14 Exhibit N, #15 Exhibit O, #16 Exhibit P, #17 Text of Proposed Order Proposed Order)(Pishevar, Afshin) (Entered: 10/28/2011) |
| 10/31/2011 | 154 | | ERRATA by NATIONAL IRANIAN AMERICAN COUNCIL re 152 Memorandum in Opposition to re 143 MOTION for Sanctions *(Omnibus)*, filed by DAIOLESLAM SEID HASSAN. (Attachments: #1 Exhibit A, #2 Exhibit B, #3 Exhibit C, #4 Exhibit D, #5 Exhibit E, #6 Exhibit F, #7 Exhibit G, #8 Exhibit H, #9 Exhibit I, #10 Exhibit J, #11 Exhibit K, #12 Exhibit L, #13 Exhibit M, #14 Exhibit N, #15 Exhibit O, #16 Exhibit P, #17 Exhibit Q, #18 Exhibit R, #19 Exhibit S, #20 Exhibit T, #21 Exhibit U)(Pishevar, Afshin) Modified on 11/1/2011 to edit text and relationship (dr). (Entered: 10/31/2011) |
| 11/04/2011 | 155 | | Consent MOTION for Extension of Time to File Response/Reply *to Plaintiffs' Opposition to Defendant's Omnibus Motion for Sanctions* by DAIOLESLAM SEID HASSAN (Ross, Thomas) (Entered: 11/04/2011) |
| 11/04/2011 | 156 | | MOTION to Compel *Production of Documents Concerning Meetings with Iranian Governmental Officials* by DAIOLESLAM SEID HASSAN |

| | | | |
|---|---|---|---|
| | | | (Attachments: #1 Appendix Index, #2 Exhibit A, #3 Exhibit B, #4 Exhibit C, #5 Exhibit D, #6 Exhibit E, #7 Exhibit F, #8 Exhibit G, #9 Exhibit H, #10 Exhibit I)(Ross, Thomas) (Entered: 11/04/2011) |
| 11/07/2011 | | | MINUTE ORDER: Upon consideration of 155 Defendant's unopposed Motion for Extension of Time to File Reply in Support of its Omnibus Motion for Sanctions, and the entire record herein, it is hereby ORDERED that the motion is GRANTED; and it is further ORDERED that Defendant's Reply shall be filed by not later than November 14, 2011. SO ORDERED. Signed by Judge John D. Bates on 11/7/2011. (lcjdb1) (Entered: 11/07/2011) |
| 11/08/2011 | 157 | | TRANSCRIPT OF PROCEEDINGS before Judge John D. Bates held on 8/30/11; Page Numbers: 1 − 40. Date of Issuance:11/7/11. Court Reporter/Transcriber Bryan A. Wayne, Telephone number 202−354−3186, Court Reporter Email Address : bryanawayne@verizon.net.<P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at ww.dcd.uscourts.gov.<P></P> Redaction Request due 11/29/2011. Redacted Transcript Deadline set for 12/9/2011. Release of Transcript Restriction set for 2/6/2012.(Wayne, Bryan) (Entered: 11/08/2011) |
| 11/11/2011 | 158 | | REPLY to opposition to motion re 144 MOTION for Summary Judgment filed by DAIOLESLAM SEID HASSAN. (Attachments: #1 Appendix Index, #2 Exhibit A, #3 Exhibit B, #4 Exhibit C, #5 Exhibit D, #6 Exhibit E, #7 Exhibit F, #8 Exhibit G, #9 Exhibit H, #10 Exhibit I, #11 Exhibit J, #12 Exhibit K, #13 Exhibit L, #14 Exhibit M, #15 Exhibit N, #16 Exhibit O, #17 Exhibit P, #18 Exhibit Q, #19 Exhibit R, #20 Exhibit S)(Ross, Thomas) (Entered: 11/11/2011) |
| 11/14/2011 | 159 | | REPLY to opposition to motion re 143 MOTION for Sanctions *(Omnibus)* , filed by DAIOLESLAM SEID HASSAN. (Attachments: #1 Appendix Index, #2 Exhibit A, #3 Exhibit B, #4 Exhibit C, #5 Exhibit D, #6 Exhibit E, #7 Exhibit F, #8 Exhibit G, #9 Exhibit H, #10 Exhibit I, #11 Exhibit J, #12 Exhibit K, #13 Exhibit L, #14 Exhibit M)(Ross, Thomas) Modified on 11/15/2011 (dr). (Entered: 11/14/2011) |
| 11/16/2011 | 160 | | Memorandum in opposition to re 156 MOTION to Compel *Production of Documents Concerning Meetings with Iranian Governmental Officials* filed by NATIONAL IRANIAN AMERICAN COUNCIL. (Attachments: #1 Exhibit A, #2 Exhibit B, #3 Exhibit C, #4 Exhibit D, #5 Exhibit E, #6 Exhibit F, #7 Exhibit G, #8 Text of Proposed Order Proposed Order)(Pishevar, Afshin) (Entered: 11/16/2011) |
| 11/22/2011 | 161 | | MOTION for Leave to File *Surreply to Defendant's Omnibus Motion for Sanctions* by NATIONAL IRANIAN AMERICAN COUNCIL |

| | | | |
|---|---|---|---|
| | | | (Attachments: #1 Exhibit A, #2 Text of Proposed Order)(Pishevar, Afshin) (Additional attachment(s) added on 11/23/2011: #3 Surreply, #4 Surreply Exhibit A) (dr) (Entered: 11/22/2011) |
| 11/22/2011 | 162 | | ENTERED IN ERROR.....SURREPLY to re 143 MOTION for Sanctions *(Omnibus)* MOTION for Sanctions *(Omnibus)* MOTION for Sanctions *(Omnibus)* MOTION for Sanctions *(Omnibus)* MOTION for Sanctions *(Omnibus)*, 161 MOTION for Leave to File *Surreply to Defendant's Omnibus Motion for Sanctions* filed by NATIONAL IRANIAN AMERICAN COUNCIL. (Attachments: #1 Exhibit A)(Pishevar, Afshin) Modified on 11/23/2011 (dr). (Entered: 11/22/2011) |
| 11/23/2011 | 163 | | Memorandum in opposition to re 161 MOTION for Leave to File *Surreply to Defendant's Omnibus Motion for Sanctions* filed by DAIOLESLAM SEID HASSAN. (Attachments: #1 Exhibit A (Email Exchange))(Ross, Thomas) (Entered: 11/23/2011) |
| 11/23/2011 | | | NOTICE OF CORRECTED DOCKET ENTRY: re 162 Surreply, was entered in error because it is a premature filing. (dr) (Entered: 11/23/2011) |
| 11/23/2011 | 164 | | MOTION for Leave to File *Surreply to Defendant's Motion for Summary Judgment* by NATIONAL IRANIAN AMERICAN COUNCIL (Attachments: #1 Exhibit A − Surreply in Opposition to Defendant's Motion for Summary Judgment, #2 Exhibit A−1, #3 Exhibit A−2, #4 Exhibit A−3, #5 Exhibit B, #6 Text of Proposed Order)(Pishevar, Afshin) (Entered: 11/23/2011) |
| 11/28/2011 | 165 | | Memorandum in opposition to re 164 MOTION for Leave to File *Surreply to Defendant's Motion for Summary Judgment* filed by DAIOLESLAM SEID HASSAN. (Attachments: #1 Exhibit A (Email Exchange), #2 Exhibit B (Aikat Deposition Excerpt))(Ross, Thomas) (Entered: 11/28/2011) |
| 11/29/2011 | 166 | | REPLY to opposition to motion re 156 MOTION to Compel *Production of Documents Concerning Meetings with Iranian Governmental Officials* filed by DAIOLESLAM SEID HASSAN. (Attachments: #1 Exhibit A, #2 Exhibit B)(Jensen, Peter) (Entered: 11/29/2011) |
| 11/30/2011 | | | Upon consideration of 161 Plaintiffs' Motion for Leave to File a Surreply to Defendant's Omnibus Motion for Sanctions and 164 Plaintiffs' Motion for Leave to File a Surreply to Defendant's Motion for Summary Judgment, and the entire record herein, it is hereby ORDERED that both Motions are DENIED. Documents 161 and 164 shall not be filed. SO ORDERED. Signed by Judge John D. Bates on 11/30/2011. (lcjdb1) (Entered: 11/30/2011) |
| 12/07/2011 | 167 | | MOTION to Strike 166 Reply to opposition to Motion *or in the Alternative Motion for Leave to File Surrpely to Defendant's Motion to Compel Documents Concerning Meetings with Iranian Officials* by NATIONAL IRANIAN AMERICAN COUNCIL (Attachments: #1 Exhibit 1, #2 Exhibit 2, #3 Exhibit 3, #4 Text of Proposed Order)(Pishevar, Afshin). Added MOTION for Leave to File a Surreply on 12/8/2011 (dr). (Entered: 12/07/2011) |
| 12/12/2011 | 168 | | Memorandum in opposition to re 167 MOTION to Strike 166 Reply to opposition to Motion *or in the Alternative Motion for Leave to File Surrpely* |

| | | | |
|---|---|---|---|
| | | | *to Defendant's Motion to Compel Documents Concerning Meetings with Iranian Officials* filed by DAIOLESLAM SEID HASSAN. (Ross, Thomas) Modified on 12/13/2011 to edit text (dr). (Entered: 12/12/2011) |
| 12/16/2011 | 169 | | REPLY to opposition to motion re 167 MOTION to Strike 166 Reply to opposition to Motion *or in the Alternative Motion for Leave to File Surrpely to Defendant's Motion to Compel Documents Concerning Meetings with Iranian Officials* MOTION to File MOTION to Strike for Leave to File MOTION to Strike *or in the Alternative Motion for Leave to File Surrpely to Defendant's Motion to Compel Documents Concerning Meetings with Iranian Officials* filed by NATIONAL IRANIAN AMERICAN COUNCIL. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Pishevar, Afshin) (Entered: 12/16/2011) |
| 12/30/2011 | 170 | | ERRATA by NATIONAL IRANIAN AMERICAN COUNCIL 169 Reply to opposition to Motion,, filed by NATIONAL IRANIAN AMERICAN COUNCIL. (Attachments: # 1 Exhibit 1)(Pishevar, Afshin) (Entered: 12/30/2011) |
| 01/09/2012 | 171 | | TRANSCRIPT OF PROCEEDINGS before Judge John D. Bates held on 6/3/11; Page Numbers: 1−31. Date of Issuance:1/9/12. Court Reporter/Transcriber Catalina Kerr, Telephone number 202.354.3258, Court Reporter Email Address : catykerr@msn.com.<P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at ww.dcd.uscourts.gov.<P></P> Redaction Request due 1/30/2012. Redacted Transcript Deadline set for 2/9/2012. Release of Transcript Restriction set for 4/8/2012.(Kerr, Catalina) (Entered: 01/09/2012) |
| 02/03/2012 | 172 | | MOTION for Bond by DAIOLESLAM SEID HASSAN (Attachments: # 1 Appendix Order, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14, # 16 Exhibit 15, # 17 Exhibit 16)(Ross, Thomas) (Entered: 02/03/2012) |
| 02/09/2012 | 173 | | Consent MOTION for Extension of Time to File Response/Reply as to 172 MOTION for Bond by NATIONAL IRANIAN AMERICAN COUNCIL (Attachments: # 1 Text of Proposed Order)(Pishevar, Afshin) (Entered: 02/09/2012) |
| 02/09/2012 | | | MINUTE ORDER: Upon consideration of 173 plaintiffs' Motion for Extension of Time to Respond to Defendant's Motion for Bond, and the entire record herein, it is hereby ORDERED that the motion is GRANTED; and it is further ORDERED that plaintiffs shall file their response by March 5, 2012. SO ORDERED. Signed by Judge John D. Bates on 2/9/2012. (lcjdb1) (Entered: 02/09/2012) |

| 02/13/2012 | 174 | NOTICE OF WITHDRAWAL OF APPEARANCE as to NATIONAL IRANIAN AMERICAN COUNCIL. Attorney Adrian V. Nelson, II terminated. (Pishevar, Afshin) (Entered: 02/13/2012) |
|---|---|---|
| 02/24/2012 | | Set/Reset Deadlines: Response due by 3/5/2012. (tb, ) (Entered: 02/27/2012) |
| 03/05/2012 | 175 | RESPONSE re 172 MOTION for Bond filed by NATIONAL IRANIAN AMERICAN COUNCIL. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Text of Proposed Order)(Pishevar, Afshin) (Entered: 03/05/2012) |
| 03/12/2012 | 176 | REPLY to opposition to motion re 172 MOTION for Bond filed by DAIOLESLAM SEID HASSAN. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit)(Jensen, Peter) (Entered: 03/12/2012) |
| 03/30/2012 | 177 | MEMORANDUM OPINION. Signed by Judge John D. Bates on 3/30/2012. (lcjdb1) (Entered: 03/30/2012) |
| 03/30/2012 | 178 | ORDER granting 92 defendant's motion to exclude the testimony of Joel Morse and granting 97 defendant's motion to exclude the testimony of Debashis Aikat. See text of Order and accompanying Memorandum Opinion for details. Signed by Judge John D. Bates on 3/30/2012. (lcjdb1) (Entered: 03/30/2012) |
| 06/04/2012 | | MINUTE ORDER: On the Court's own motion, it is hereby ORDERED that a motions hearing is scheduled for July 6, 2012 at 10:00 a.m. in Courtroom 14. SO ORDERED. Signed by Judge John D. Bates on 6/4/2012. (lcjdb1) (Entered: 06/04/2012) |
| 06/04/2012 | | Set/Reset Hearings: Motion Hearing set for 7/6/2012 10:00 AM in Courtroom 14 before Judge John D. Bates. (lcjdb1) (Entered: 06/04/2012) |
| 06/05/2012 | | MINUTE ORDER: On its own motion, the Court hereby clarifies that counsel shall be prepared to answer questions related to any pending motion during the motions hearing scheduled for July 6, 2012. Signed by Judge John D. Bates on 6/5/2012. (lcjdb1) (Entered: 06/05/2012) |
| 06/13/2012 | 179 | MOTION to Continue *July 6, 2012 Hearing* by NATIONAL IRANIAN AMERICAN COUNCIL (Attachments: # 1 Text of Proposed Order, # 2 Exhibit A, # 3 Exhibit B)(Pishevar, Afshin) (Entered: 06/13/2012) |
| 06/13/2012 | 180 | Consent MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Farrokh Mohammadi, :Firm− Pishevar &Associates, P.C., :Address− 600 East Jefferson Street, Suite 316, Rockville, MD 20852. Phone No. − (301) 279−8773. Fax No. − (301) 279−7347 by NATIONAL IRANIAN AMERICAN COUNCIL (Attachments: # 1 Text of Proposed Order, # 2 Declaration of Farrokh Mohammadi, # 3 Exhibit A)(Pishevar, Afshin) (Entered: 06/13/2012) |
| 06/14/2012 | 181 | RESPONSE re 179 MOTION to Continue *July 6, 2012 Hearing* filed by DAIOLESLAM SEID HASSAN. (Attachments: # 1 Exhibit A)(Jensen, Peter) (Entered: 06/14/2012) |
| 06/18/2012 | 182 | REPLY to opposition to motion re 179 MOTION to Continue *July 6, 2012 Hearing* filed by NATIONAL IRANIAN AMERICAN COUNCIL. |

| | | | |
|---|---|---|---|
| | | | (Attachments: # 1 Exhibit A)(Pishevar, Afshin) (Entered: 06/18/2012) |
| 06/21/2012 | | | MINUTE ORDER: Upon consideration of 179 plaintiffs' motion to continue the July 6, 2012 hearing, 181 defendant's opposition thereto, and the entire record herein, it is hereby ORDERED that the motion is DENIED; and it is further ORDERED that the hearing remains scheduled for July 6, 2012 at 10:00 a.m. SO ORDERED. Signed by Judge John D. Bates on 6/21/2012. (lcjdb1) (Entered: 06/21/2012) |
| 06/21/2012 | | | MINUTE ORDER: Upon consideration of 180 the motion for admission pro hac vice of Farrokh Mohammadi and pursuant to Local Civil Rule 83.2(d), it is hereby ORDERED that the motion is GRANTED; and it is further ORDERED that the Clerk of Court shall enter the appearance of Farrokh Mohammadi on behalf of plaintiffs. SO ORDERED. Signed by Judge John D. Bates on 6/21/2012. (lcjdb1) (Entered: 06/21/2012) |
| 06/25/2012 | 183 | | Consent MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Jeffrey Handelsman, :Firm− Pishevar &Associates, P.C., :Address− 600 E. Jefferson Street, Suite 316, Rockville, MD 20852. Phone No. − 301−279−8773. Fax No. − 301−279−7347 by NATIONAL IRANIAN AMERICAN COUNCIL (Attachments: # 1 Declaration of Jeff Handelsman, # 2 Exhibit A, # 3 Text of Proposed Order)(Pishevar, Afshin) (Entered: 06/25/2012) |
| 06/29/2012 | | | MINUTE ORDER: Upon consideration of 183 the motion for admission pro hac vice of Jeffrey Handelsman, and pursuant to Local Civil Rule 83.2(d), it is hereby ORDERED that the motion is GRANTED; and it is further ORDERED that the Clerk of Court shall enter the appearance of Jeffrey Handelsman on behalf of plaintiffs. SO ORDERED. Signed by Judge John D. Bates on 6/29/2012. (lcjdb1) (Entered: 06/29/2012) |
| 07/06/2012 | | | Minute Entry: Motion Hearing held on 7/6/2012 before Judge John D. Bates: re 167 MOTION to Strike 166 Reply to opposition to Motion *or in the Alternative Motion for Leave to File Surrpely to Defendant's Motion to Compel Documents Concerning Meetings with Iranian Officials* MOTION for Leave to File filed by NATIONAL IRANIAN AMERICAN COUNCIL, 144 MOTION for Summary Judgment filed by DAIOLESLAM SEID HASSAN, 156 MOTION to Compel *Production of Documents Concerning Meetings with Iranian Governmental Officials* filed by DAIOLESLAM SEID HASSAN, 143 MOTION for Sanctions *(Omnibus)* filed by DAIOLESLAM SEID HASSAN ; Motions heard and taken under advisement. (Court Reporter Pat Kaneshiro−Miller) (tb, ) (Entered: 07/06/2012) |
| 07/13/2012 | 184 | | MEMORANDUM by DAIOLESLAM SEID HASSAN. (Attachments: # 1 Exhibit Email, # 2 Exhibit Email, # 3 Exhibit Email, # 4 Exhibit Email, # 5 Exhibit Email, # 6 Exhibit Email, # 7 Exhibit Email, # 8 Exhibit Email, # 9 Exhibit Email, # 10 Exhibit Email, # 11 Exhibit Email, # 12 Exhibit Email, # 13 Exhibit Email, # 14 Exhibit Email, # 15 Exhibit Email, # 16 Exhibit Email, # 17 Exhibit Email, # 18 Exhibit Email, # 19 Exhibit Email, # 20 Exhibit Email)(Jensen, Peter) (Entered: 07/13/2012) |
| 07/19/2012 | 185 | | REPLY re 184 Memorandum,, filed by DAIOLESLAM SEID HASSAN by NATIONAL IRANIAN AMERICAN COUNCIL. (Attachments: # 1 |

| | | | |
|---|---|---|---|
| | | | Declaration of Trita Parsi, Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J)(Pishevar, Afshin) Modified on 7/20/2012 to edit event (dr). (Entered: 07/19/2012) |
| 07/23/2012 | 186 | | TRANSCRIPT OF PROCEEDINGS before Judge John D. Bates held on 7/6/12; Page Numbers: 1−105. Date of Issuance:7/23/12. Court Reporter/Transcriber Patricia A. Kaneshiro−Miller, Telephone number 202−354−3243, Court Reporter Email Address : patfromhawaii@aol.com.<P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at ww.dcd.uscourts.gov.<P></P> Redaction Request due 8/13/2012. Redacted Transcript Deadline set for 8/23/2012. Release of Transcript Restriction set for 10/21/2012.(Kaneshiro−Miller, Patricia) (Entered: 07/23/2012) |
| 07/23/2012 | 187 | | NOTICE *of filing of Exhibit to Plaintiffs' Reply Memorandum on Status of Production, Deposition Transcript of Defendant* by NATIONAL IRANIAN AMERICAN COUNCIL re 185 Memorandum, (Pishevar, Afshin) (Entered: 07/23/2012) |
| 07/23/2012 | 188 | | REPLY re 185 Memorandum, *re Swedish Bank Records* filed by DAIOLESLAM SEID HASSAN. (Ross, Thomas) (Entered: 07/23/2012) |
| 09/13/2012 | 189 | 85 | MEMORANDUM OPINION granting 144 defendant's motion for summary judgment. Signed by Judge John D. Bates on 09/13/12. (lcjdb1) (Entered: 09/13/2012) |
| 09/13/2012 | 190 | 59 | MEMORANDUM OPINION granting in part and denying in part 143 defendant's omnibus motion for sanctions. Signed by Judge John D. Bates on 09/13/12. (lcjdb1) (Entered: 09/13/2012) |
| 09/13/2012 | 191 | 57 | ORDER granting in part and holding in abeyance in part 140 plaintiffs' motion to stay, granting in part and denying in part 143 defendant's omnibus motion for sanctions, granting 144 defendant's motion for summary judgment, denying as moot 156 defendant's motion to compel production of documents concerning meetings with Iranian governmental officials, denying 167 plaintiffs' motion to strike, and denying 172 defendant's motion for bond. See text of Order for details. Signed by Judge John D. Bates on 09/13/12. (lcjdb1) (Entered: 09/13/2012) |
| 10/03/2012 | 192 | | MOTION to Withdraw as Attorney *Bradford A. Berenson filed* by DAIOLESLAM SEID HASSAN (Ross, Thomas) (Entered: 10/03/2012) |
| 10/12/2012 | 193 | | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 138 Order, 177 Memorandum &Opinion, 189 Memorandum &Opinion, 85 Order, 82 Order, Order,,,, 68 Order on Motion for Discovery, Set/Reset Deadlines/Hearings, |

| | | | |
|---|---|---|---|
| | | | 191 Order,, Order,, 32 Order on Motion to Compel, 95 Order, 178 Order, 190 Memorandum &Opinion, 93 Order by NATIONAL IRANIAN AMERICAN COUNCIL. Filing fee $ 455, receipt number 0090−3098929. Fee Status: Fee Paid. Parties have been notified. (Pishevar, Afshin) (Entered: 10/12/2012) |
| 10/12/2012 | 194 | | BILL OF COSTS *Pursuant to the Court's September 13, 2012 Order filed* by DAIOLESLAM SEID HASSAN. (Attachments: # 1 Exhibit A−J)(Ross, Thomas) (Entered: 10/12/2012) |
| 10/15/2012 | 195 | | Transmission of the Notice of Appeal, Order Appealed, and Docket Sheet to US Court of Appeals. The Court of Appeals fee was paid this date re 193 Notice of Appeal to DC Circuit Court,,. (jf, ) (Entered: 10/15/2012) |
| 10/15/2012 | | | NOTICE OF ERROR re 194 Bill of Costs; emailed to tom.ross@sidley.com, cc'd 5 associated attorneys −− The PDF file you docketed contained errors: 1. Invalid attorney signature, 2. DO NOT REFILE − FYI signing attorney login/password should be used to e−file (jf, ) (Entered: 10/15/2012) |
| 10/15/2012 | 196 | | NOTICE of Appearance by Mark Eric Galvez on behalf of DAIOLESLAM SEID HASSAN (Galvez, Mark) (Entered: 10/15/2012) |
| 10/19/2012 | | | USCA Case Number 12−7111 for 193 Notice of Appeal to DC Circuit Court,, filed by NATIONAL IRANIAN AMERICAN COUNCIL. (dr) (Entered: 10/22/2012) |
| 10/26/2012 | 197 | | NOTICE *of Transcript Request* by NATIONAL IRANIAN AMERICAN COUNCIL (Pishevar, Afshin) (Entered: 10/26/2012) |
| 10/26/2012 | 198 | | RESPONSE re 194 Bill of Costs *and Objections to Bill of Costs* filed by NATIONAL IRANIAN AMERICAN COUNCIL. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Text of Proposed Order)(Pishevar, Afshin) (Entered: 10/26/2012) |
| 11/09/2012 | 199 | | REPLY re 198 Response to Document, *Defendant's Final Bill of Recoverable Costs,* filed by DAIOLESLAM SEID HASSAN. (Attachments: # 1 Appendix, # 2 Exhibit (All))(Ross, Thomas) (Entered: 11/09/2012) |
| 11/20/2012 | 200 | | MOTION for Leave to File *Surreply to Defendant's Bill of Recoverable Costs Pursuant to the Court's Order of September 13, 2012* by NATIONAL IRANIAN AMERICAN COUNCIL (Attachments: # 1 Exhibit A, # 2 Exhibit A−1, # 3 Exhibit A−2, # 4 Exhibit B, # 5 Text of Proposed Order)(Pishevar, Afshin) (Entered: 11/20/2012) |
| 11/29/2012 | 201 | | NOTICE *OF FILING OF VERIFICATION OF FINAL BILL OF COSTS* by DAIOLESLAM SEID HASSAN re 199 Reply to Document, 194 Bill of Costs (Ross, Thomas) (Entered: 11/29/2012) |
| 11/30/2012 | 202 | | MOTION to Strike 201 Notice (Other) by NATIONAL IRANIAN AMERICAN COUNCIL (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order)(Pishevar, Afshin) (Entered: 11/30/2012) |
| 11/30/2012 | 203 | | RESPONSE re 202 MOTION to Strike 201 Notice (Other) *Verification of Final Bill of Recoverable Costs* filed by DAIOLESLAM SEID HASSAN. (Ross, Thomas) (Entered: 11/30/2012) |

| | | | |
|---|---|---|---|
| 11/30/2012 | 204 | | ORDER of USCA as to 193 Notice of Appeal to DC Circuit Court,, filed by NATIONAL IRANIAN AMERICAN COUNCIL ; ORDERED that the motion be granted, and this case is hereby held in abeyance pending further order of the court. USCA Case Number 12−7111. (md, ) (Entered: 12/01/2012) |
| 12/07/2012 | 205 | | REPLY to opposition to motion re 202 MOTION to Strike 201 Notice (Other) filed by NATIONAL IRANIAN AMERICAN COUNCIL. (Pishevar, Afshin) (Entered: 12/07/2012) |
| 01/04/2013 | 206 | | TRANSCRIPT of 11/2/09 STATUS HEARING before Judge John D. Bates. Page Numbers: 1−12. Date of Issuance: 11/23/12. Court Reporter: Bryan A. Wayne, telephone number: 202−354−3186. Court Reporter e−mail address: bryanawayne@yahoo.com.<P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at ww.dcd.uscourts.gov.<P></P> Redaction Request due 1/25/2013. Redacted Transcript Deadline set for 2/4/2013. Release of Transcript Restriction set for 4/4/2013.(Wayne, Bryan) (Entered: 01/04/2013) |
| 01/16/2013 | 207 | | NOTICE of Withdraw as Attorney *by Mark Eric Galvez filed* by DAIOLESLAM SEID HASSAN (Ross, Thomas) Modified on 1/17/2013 (dr). (Entered: 01/16/2013) |
| 02/04/2013 | 208 | | NOTICE to the Court by NATIONAL IRANIAN AMERICAN COUNCIL, TRITA PARSI (rdj) (Entered: 02/06/2013) |
| 03/05/2013 | 209 | | NOTICE to the Court by NATIONAL IRANIAN AMERICAN COUNCIL, TRITA PARSI (rdj) (Entered: 03/07/2013) |
| 04/02/2013 | | | MINUTE ORDER: Upon consideration of 192 defendant's motion to withdraw Bradford A. Berenson as attorney, and the entire record herein, it is hereby ORDERED that the motion is GRANTED. SO ORDERED. Signed by Judge John D. Bates on 04/02/2013. (lcjdb1) (Entered: 04/02/2013) |
| 04/04/2013 | 210 | | STATUS REPORT by NATIONAL IRANIAN AMERICAN COUNCIL, TRITA PARSI. (td, ) (Entered: 04/08/2013) |
| 04/08/2013 | 211 | 38 | MEMORANDUM OPINION &ORDER granting 200 plaintiffs' motion for leave to file a surreply, denying 202 plaintiffs' motion to strike, and awarding fees and expenses to defendant. See text for details. Signed by Judge John D. Bates on 04/08/2013. (lcjdb1) (Entered: 04/08/2013) |
| 04/08/2013 | 212 | | SURREPLY to re 194 Bill of Costs filed by NATIONAL IRANIAN AMERICAN COUNCIL, TRITA PARSI. (td, ) (Entered: 04/09/2013) |

| | | | |
|---|---|---|---|
| 04/09/2013 | 213 | 37 | ORDER entering judgment. See text for details. Signed by Judge John D. Bates on 04/09/2013. (lcjdb1) (Entered: 04/09/2013) |
| 04/23/2013 | 214 | | Consent MOTION for Bond *and Stay Execution of Judgment* by NATIONAL IRANIAN AMERICAN COUNCIL (Attachments: # 1 Exhibit 1, # 2 Text of Proposed Order)(Pishevar, Afshin) (Entered: 04/23/2013) |
| 04/26/2013 | 215 | | ORDER granting 214 plaintiffs' Consent Motion to Fix the Amount of Supersedeas Bond and Stay the Execution of Judgment Pending Appeal. See text for details. Signed by Judge John D. Bates on 04/26/2013. (lcjdb1) (Entered: 04/26/2013) |
| 04/30/2013 | | | DEPOSIT of Funds in the amount of $ $184,000.00, Receipt Number 4616055954. (td, ) (Entered: 05/01/2013) |
| 05/08/2013 | 216 | 35 | Amended NOTICE OF APPEAL re appeal 193 by NATIONAL IRANIAN AMERICAN COUNCIL, TRITA PARSI. (Pishevar, Afshin) (Entered: 05/08/2013) |

|  |  |  |
|---|---|---|
| **TRITA PARSI** | ) | |
| **and** | ) | |
| **NATIONAL IRANIAN AMERICAN COUNCIL,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **DAIOLESLAM SEID HASSAN,** | ) | **Civil No. 08 CV 00705** |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## AMENDED NOTICE OF APPEAL

PLEASE TAKE NOTICE that Plaintiffs Trita Parsi and National Iranian

American Council appeal to the United States Court of Appeals for the District of Columbia

Circuit from this Court Judgment entered on April 9, 2013, in Defendant's favor; its Opinion and

Order entered on April 8, 2013, regarding Defendant's request for sanctions against Plaintiffs; its

Opinion and Order granting in part Defendant's Omnibus Motion for Sanctions (Dkt Nos. 190

and 191), entered on September 13, 2012; and its Opinion and Order granting Defendant's

Motion for Summary Judgment (Dkt. Nos. 189 and 191), also entered on September 13, 2012. In

appealing the order concerning the Omnibus Sanctions Motion, Plaintiffs presently intend to

appeal this Court's orders regarding several underlying discovery motions that were predicates to

this Court's imposing

sanctions. See, e.g., Dkt Nos. 32, 53, 68, 82, 85, 93, 95, 138, 138, 177, and 178.

Dated:  May 7, 2013

Respectfully submitted,

_____/S/_____

A.P. Pishevar (D.C. Bar No. 451015)
**PISHEVAR & ASSOCIATES, P.C.**
226 N. Adams Street
Rockville, MD 20850
Phone:  (301) 279-8773
Fax: (301) 279-7347
Counsel for the Plaintiffs

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

TRITA PARSI and NATIONAL
IRANIAN AMERICAN COUNCIL,

     **Plaintiffs,**

        **v.**                    Civil Action No. 08-705 (JDB)

SEID HASSAN DAIOLESLAM,

     **Defendant.**

## ORDER

Pursuant to [189] [190] [191] the Court's September 13, 2012 opinions and order granting summary judgment in favor of defendant and granting in part and denying in part defendant's omnibus motion for sanctions, and [211] the Court's April 8, 2013 order awarding fees and expenses to defendant, it is hereby **ORDERED** that judgment is entered in favor of defendant and against plaintiffs on the merits and that judgment in the amount of $183,480.09, plus interest from September 13, 2012, is entered in favor of defendant and against plaintiffs on defendant's motion for sanctions.

     **SO ORDERED**.

                                _____/s/ John D. Bates_____
                                    JOHN D. BATES
                         United States District Judge

Dated: April 9, 2013

1

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **TRITA PARSI and NATIONAL IRANIAN AMERICAN COUNCIL,** | |
| **Plaintiffs,** | |
| **v.** | **Civil Action No. 08-705 (JDB)** |
| **SEID HASSAN DAIOLESLAM,** | |
| **Defendant.** | |

## MEMORANDUM OPINION & ORDER

Before the Court is [194] defendant Seid Hassan Daioleslam's final bill of recoverable costs. Pursuant to [190] [191] the Court's September 13, 2012 Memorandum Opinion and Order granting in part and denying in part defendant's omnibus motion for sanctions, defendant seeks reimbursement for the following: (1) 60% of the expenses of bringing [143] defendant's omnibus sanctions motion; (2) the last two rounds of forensic imaging by PricewaterhouseCoopers ("PwC"); (3) the expenses of bringing [112] [113] defendant's motions to compel production of plaintiff National Iranian American Council's ["NIAC"] server, Salesforce data, and membership lists; (4) one half of the expenses of Babak Talebi's deposition; (5) the expenses of obtaining [93] the Court's March 29, 2011 Order relating to Talebi's emails; (6) the expenses of serving subpoenas to obtain third-party emails; (7) one half of the expenses of the last half day of plaintiff Trita Parsi's deposition; and (8) one half of the expenses of the second day of Emily Blout's deposition. Defendant also seeks additional costs as the prevailing party under Federal Rule of Civil Procedure 54(d). He claims $284,223.34 in total, plus prejudgment and

1

postjudgment interest.  See Def.'s Reply in Supp. of Bill of Costs [ECF 199] ("Def.'s Reply") 9.

Plaintiffs NIAC and Parsi argue that defendant's bill of costs should be denied or substantially

reduced.  For the reasons set forth below, the Court will award fees and expenses in the reduced

amount of $183,480.09.[1]

A district court has broad discretion in determining the size of a sanctions award.  See

Beck v. Test Masters Educ. Servs., Inc., No. 04-1391, 2013 WL 772879, at *7 (D.D.C. Mar. 1,

2013); Tequila Centinela, S.A. de C.V. v. Bacardi & Co., 248 F.R.D. 64, 68 (D.D.C. 2008).  The

party requesting fees and expenses has the burden of proving that its request is reasonable.  See

Beck, 2013 WL 772879, at *7; see also Am. Petroleum Inst. v. EPA, 72 F.3d 907, 912 (D.C. Cir.

1996).  If the party opposing the fee request raises specific objections, the Court has discretion to

adjust the fee award in light of those objections.  See Tequila Centinela, 248 F.R.D. at 68.

The Court will consider the reasonableness of each component of defendant's bill of

costs.

A.    Sanctions Motion

Defendant claims $33,279.91 in fees and expenses for bringing the sanctions motion.  See

Def.'s Final Bill of Recoverable Costs [ECF 194] ("Def.'s Bill of Costs") 1.[2]  Plaintiffs argue that

defendant's request has several defects, the first being that the time spent on the sanctions motion

---

[1] Also before the Court are [200] plaintiffs' motion for leave to file a surreply and [202] plaintiffs' motion to strike [201] defendant's verification of his final bill of recoverable costs. Plaintiffs' motion for leave to file a surreply will be granted, as defendant attached new materials to his reply, see Def.'s Reply, Exs. 1-4, and arguably raised new fact issues related to the forensic imagings, see Def.'s Reply 2-4.  Plaintiffs' motion to strike will be denied as meritless; defendant's verification meets the requirements of 28 U.S.C. § 1924.

[2] The Court has subtracted the amount erroneously claimed for work on defendant's summary judgment motion.  See Def.'s Reply 8 n.5.

by senior partner Timothy Kapshandy is unreasonable.  See Pls.' Objections to Def.'s Bill of Costs [ECF 198] ("Pls.' Objections") 9.  Kapshandy claimed 39.3 hours on the motion, compared to a combined 35 hours claimed by two more junior attorneys on the motion.  See Def.'s Bill of Costs, Ex. A.  Plaintiffs argue that, rather than draft substantial portions of the motion himself, Kapshandy should have delegated the drafting to junior attorneys and spent most if not all of his time reviewing and editing the drafts.  They ask the Court to reduce Kapshandy's hours using the formula set forth in Mitchell v. National Railroad Passenger Corp., 217 F.R.D. 53, 60 (D.D.C. 2003).

The Court declines to do so based on the specific circumstances of this case.  It is not unreasonable that just over one half of the attorney hours spent on the sanctions motion – an omnibus motion based on eight separate areas of discovery – were spent by a senior partner. Kapshandy was the lead attorney on the case throughout the more-than-two-year discovery period preceding the sanctions motion, and it likely was more efficient (and cheaper) for Kapshandy to take a larger role in drafting that motion, which was based on facts of which he had firsthand knowledge, than he might otherwise have taken.  See Am. Petroleum Inst., 72 F.3d at 916 (making "no adjustment for the allocation of time between partners and associates"); Mitchell, 217 F.R.D. at 58 ("[I]nexperienced lawyers, although they bill at a lower rate, may burn up many hours doing tasks that their seniors could have accomplished more efficiently and cheaply.").

Nevertheless, it remains defendant's burden to show the reasonableness of each element of his fee request.  See New Jersey v. EPA, 703 F.3d 110, 115 (D.C. Cir. 2012) (per curiam). Although the 74.3 hours claimed for attorney work on a motion and reply totaling 69 pages do not appear grossly excessive, 74 hours is still a significant amount of time.  Yet Kapshandy's

3

billing entries – which consist almost exclusively of descriptions like "Review and revise motion for sanctions," "Draft and revise sanctions motion," and "Reply to sanctions motion" – make it hard to tell whether the nearly 40 hours claimed for drafting, reviewing, and revising were reasonably expended.[3]  See New Jersey, 703 F.3d at 115-16 (finding many similar entries, such as "[c]ontinue drafting/revising of mercury brief" and "[d]raft reply brief," inadequate to justify hours claimed); Role Models Am., Inc. v. Brownlee, 353 F.3d 962, 970 (D.C. Cir. 2004) ("Supporting documentation must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended." (internal quotation marks and alteration omitted)); Def.'s Bill of Costs, Ex. A.  The Court therefore finds that a modest, 10% reduction to Kapshandy's hours is appropriate, but it will not make the drastic reduction (to 7.3 hours) requested by plaintiffs.  See Beck, 2013 WL 772879, at *10 (reducing hours by 10% where descriptions "le[ft] some remaining question about the reasonableness of the hours spent"); DL v. District of Columbia, 256 F.R.D. 239, 246 (D.D.C. 2009) (applying 10% reduction for "vague time entries"); Pls.' Objections 10.

Plaintiffs next challenge the amount requested for non-attorney work on the sanctions motion.  Defendant seeks compensation for 25.05 hours spent by legal assistant Meredith Dudley and 166.6 hours spent by legal assistant Jeffery Tisak.  See Def.'s Bill of Costs, Ex. A.  Tisak's time entries all say one of two things: "Review NIAC documents for sanctions motion as per T.

---

[3] This is especially evident when Kapshandy's entries are viewed alongside the more detailed entries of associate Thomas Ross, whose 31 hours comprised the majority of attorney hours other than Kapshandy's.  See, e.g., Def.'s Bill of Costs, Ex. A (9/12/11 Ross entry stating "Review case law for sanctions motion (0.3); email conversation with T. Kapshandy re: same (0.1); telephone conversation with M. Dudley re: filing sanctions motion (0.1); review and revise latest draft of sanctions motion (0.7)").

4

Kapshandy," or, on and after October 3, 2011, "Review NIAC documents for upcoming sanctions motion response as per T. Kapshandy." See id. No explanation is given as to why Tisak needed to spend the equivalent of more than four 40-hour weeks reviewing documents related to the sanctions motion and reply. Tisak's repetitive, generic entries are entirely inadequate, as they provide no basis for the Court to determine the reasonableness of the hours expended. See New Jersey, 703 F.3d at 115 (stating that "such entries are 'inadequate to meet a fee applicant's heavy obligation to present well-documented claims'" (quoting Role Models, 353 F.3d at 971)); Conservation Force v. Salazar, No. 10-1057, 2013 WL 66210, at *11 (D.D.C. Jan. 7, 2013). Tisak's entries are inadequate not just in relation to the sanctions motion; they are inadequate for essentially all of his time shown on defendant's bill of costs. See Def.'s Bill of Costs, Exs. C, D, E, G, H (showing repetitive entries like "Review NIAC documents for Motion to Compel Server as per T. Kapshandy" and "Review NIAC documents as per T. Kapshandy"). Although the Court does not doubt that Tisak spent time reviewing documents and doing other work on this case, defendant has not provided sufficiently detailed documentation for the Court to determine that Tisak's many hours "were actually and reasonably expended." See Role Models, 353 F.3d at 970 (emphasis added) (internal quotation marks omitted). Accordingly, the Court will apply an across-the-board reduction of 50% to all hours claimed for Tisak's work. Compare New Jersey, 703 F.3d at 115-16 (applying 75% reduction to "patently excessive" fee request).

Dudley's entries, which also lack specificity, are marginally better than Tisak's. Dudley's entries vary at least somewhat and show that she "[p]repare[d] exhibits," "[o]rganize[d] sets of documents," and "prepar[ed] reference materials," all in relation to defendant's sanctions motion. See Def.'s Bill of Costs, Ex. A. In addition, the 25 hours claimed by Dudley seem inherently

5

more reasonable than the 160-plus hours claimed by Tisak. Hence, the Court will reduce the hours claimed for Dudley's work by only 10%.

Plaintiffs' final challenge is to the expenses (e.g., copying, research, and travel charges) claimed by defendant in relation to the sanctions motion. Plaintiffs correctly observe that there are inconsistencies between defendant's billing records and some of the research charges listed. Namely, the following charges lack a corresponding billing entry and hence will be subtracted from the total expenses claimed: a $2,080.03 Lexis charge incurred by Tisak on September 8, 2011; a $86.82 Lexis charge incurred by Ross on September 26, 2011; a $16.17 Lexis charge incurred by Ross on September 27, 2011; and a $114.92 Westlaw charge incurred by Dudley on November 10, 2011. See Def.'s Bill of Costs, Ex. A. Plaintiffs also argue that defendant should not be reimbursed for the travel costs associated with the July 2012 motions hearing because defendant also argued several other motions, including the summary judgment motion, at that hearing. Because defendant would have incurred these travel costs even if there had been no sanctions motion, the Court agrees that they should deducted from the expenses claimed.

Making the above-described reductions, the Court will award $25,242.17 on the sanctions motion.

B.     Forensic Imaging

By far the largest expense on defendant's bill of costs, and the expense most vigorously contested by plaintiffs, is that covering the last two rounds of PwC forensic imaging. Defendant claims $8,570 in attorney time spent on the imaging and seeks reimbursement of $136,224.32 charged by PwC for the imaging. See Def.'s Bill of Costs, Ex. B.

Plaintiffs do not challenge the attorney time spent on the imaging, but they raise

numerous complaints about the PwC charges. First, plaintiffs argue that the documentation of the PwC imaging charges provided by defendant is "[w]oefully [d]eficient." See Pls.' Objections 3. Indeed, all that defendant has provided are the two invoices from PwC (one for each of the last two rounds), each containing a one-page summary of charges. The charges are broken down into hourly fees and expenses, and the services and activities performed are listed. See Def.'s Bill of Costs, Ex. B. As plaintiffs point out, however, the summary gives no information on the type of work done by each employee. See Pls.' Objections 3. In addition, plaintiffs complain about the sizeable amounts of time billed by PwC managers and directors (relative to "staff") and by PwC employees based in Chicago, when the imaging was done in Washington, D.C. See id. The Court agrees that the PwC invoices are not well documented, but it is reluctant to place all fault on defendant for an outside consultant's shortcomings. After all, had plaintiffs produced all relevant computers and the shared-drive server from the beginning, defendant would have been responsible for the imaging costs in full. Nevertheless, it is defendant's burden to show the reasonableness of each element of his expense request, and defendant has provided absolutely nothing to show that two rounds of forensic imaging should cost upwards of $136,000. See, e.g., Pls.' Objections 4 (suggesting that invoice for first round of imaging would allow helpful comparison of charges); Pls.' Surreply in Opp'n to Def.'s Bill of Costs [ECF 200-1] ("Pls.' Surreply") 3-5 (asserting insufficient showing of reasonableness as to second round of imaging). Hence, an across-the-board percentage reduction is warranted. Before applying this reduction, however, the Court will address plaintiffs' challenges to particular charges on the PwC invoices.

Plaintiffs argue that all charges for forensic analysis should be excluded because, they say, this Court "specifically differentiate[d] between the costs for forensic imaging which it

ordered recoverable in the Sanctions order; from the cost[s] for forensic <u>analysis</u> which the Court ordered are not recoverable." <u>See</u> Pls.' Objections 4. Plaintiffs are incorrect. In ordering a "lesser amount" of fee shifting, the Court did not intend to distinguish between forensic imaging and forensic analysis, but rather intended to hold plaintiffs accountable for the extra cost of the forensic process that became necessary because of plaintiffs' failure to produce, at the outset, all devices on which relevant data might have been stored. <u>See</u> <u>id.</u> at 5 (quoting Mem. Op. (Sept. 13, 2012) [ECF 190] 4-5). In other words, the Court shifted to plaintiffs the incremental costs caused by their conduct.

Plaintiffs also object to several specific items on the PwC invoices that they claim are unrelated to the forensic imaging ordered by the Court. <u>See</u> Pls.' Objections 6-8. These include: (1) charges for "troubleshooting" and "server hardware," ostensibly incurred because PwC did not properly reassemble the NIAC shared drive after the second round of imaging; (2) charges for "Review[ing] and respon[ding] to" plaintiffs' filings on the motions to compel and motion for sanctions; (3) a charge for "Reproduction of deliverables from initial report"; and (4) PwC employees' travel expenses for the third round of imaging. Each item merits brief discussion.

First, it appears that PwC in fact reassembled the NIAC shared drive improperly and, as a result, had to purchase an additional device (the "server hardware") and spend time "troubleshooting" and fixing its mistake. <u>See</u> Pls.' Objections 6-7 & nn.2-4; <u>id.</u>, Ex. A, Decl. of Marc Hirschfield ("Hirschfield Decl.") ¶ 12; <u>id.</u>, Ex. C, Decl. of David Elliott ("Elliott Decl.") (describing how PwC technician came to NIAC's office to fix device). Plaintiffs are not responsible for the costs of PwC's mistakes. As defendant has not contested plaintiffs' assertions that the server hardware and troubleshooting charges were caused by PwC's mistakes, the Court

8

will deduct $576.79 for server hardware and $1,320 for troubleshooting.[4]  Second, reviewing and responding to plaintiff's filings are not forensic imaging or analysis activities.  Defendant has not shown the reasonableness of paying PwC for assistance beyond the imaging and analysis ordered by the Court.  See Def.'s Reply 4 (stating that PwC charges for assistance are recoverable but not explaining what assistance was given or why it was needed).  Hence, the charges of $14,894 and $12,477.70 for "[R]eview[ing] and respon[ding]" will be deducted.  Third, reproduction of deliverables from the initial report is exactly the sort of redundant activity that would not have been necessary if there had been only one round of imaging and all "deliverables" could have been produced together.  Hence, the reproduction charge will not be deducted.  Fourth, as to plaintiffs' objection to paying the expenses of Chicago-based PwC employees to travel to Washington, D.C., the Court concludes that a partial reduction is warranted.  It is understandable that, given the location of defendant's lead counsel in Chicago, PwC may have thought it prudent to send one or more employees from its Chicago office to be present at the imaging site.  But again, defendant has not given any justification for the actual amount spent, so the Court will deduct one half of the $2,119.13 in charges for transportation, accommodation, and meals during the third round of imaging.

Finally, plaintiffs stress that, in granting sanctions related to the imaging, this Court relied on defendant's unsupported "expla[nation] at the motions hearing that conducting three separate

---

[4] This latter amount represents four hours (the Court's guess, and it can only be a guess, as to how much time was spent troubleshooting and actually correcting the improper reassembly) at $330 per hour, the amount billed by PwC staff member Bradley Wilson.  See Elliott Decl. ¶¶ 2, 4-9 (stating that "a gentleman from PwC by the name of Brad" came to fix the device and describing the actual correction process as something done in a short amount of time); Def.'s Bill of Costs, Ex. B (showing billing rate for Bradley Wilson).

imaging sessions cost far more than conducting one larger imaging session." See Pls.' Objections 5 (quoting 9/13/12 Mem. Op. 5). But it does not require an expert to conclude that doing three rounds of imaging was far less efficient, and hence more costly, than doing just one. See id. (complaining that defendant did not provide expert testimony to show that three rounds cost more than one).[5] Extra time had to be spent on the second and third rounds, and the analysis became more complex because data extracted during the later imagings had to be compared (three times instead of one) to data that had already been produced. The total hourly fees charged by PwC, then, were necessarily higher than they would have been if the imaging had been done at one time.

However, not all costs increased to the same degree because of the additional imaging sessions. For example, the cost of hard drives to store the forensic images would presumably have been roughly the same even if all of the imaging had been done at one time. See Hirschfield Decl. ¶ 9. And even some fraction of the additional hourly fees would likely have been incurred if the devices imaged later had instead been produced at the outset. Because defendant should be reimbursed only for the added forensic imaging costs caused by plaintiffs' conduct, a reduction for costs that would have been incurred in any case will be made. See Tequila Centinela, 248 F.R.D. at 69 (requiring a "near but for" relationship between Rule 37 violation and activity for which fees and expenses awarded). The Court will deduct the cost of the hard drives ($180.98 on the second round of imaging and $1,147.99 on the third round),[6] and

---

[5] Plaintiffs' arguments about PwC's broad access to the drives during the third round of imaging do not alter this conclusion. See Pls.' Surreply 2-3.

[6] The Court will not resolve the parties' internal dispute about their agreement (or lack thereof) concerning the hard drives. See Def.'s Reply 3 (explaining that defendant agreed to let

will deduct 33% of the remaining compensable PwC fees and expenses.[7]

Subtracting the troubleshooting and server hardware charges, the reviewing and responding charges, one half of the PwC travel expenses for the third round of imaging, and the cost of the hard drives, and reducing the remaining amount by 33%, leaves $70,060.09. Because this represents a substantial reduction and is based largely on the lack of justification for particular charges on the PwC invoices, the Court will apply a further reduction of only 10% for defendant's inadequate showing of reasonableness generally. See Beck, 2013 WL 772879, at *10; Tequila Centinela, 248 F.R.D. at 72 (applying 10% reduction to account for billing of redundant time after court had already reduced claimed number of hours from 199.08 to 67). Applying this 10% reduction and adding the reduced amount ($63,054.08) to the attorney fees claimed for the imaging results in an award of $71,624.08.

C.    Motions to Compel

Defendant requests $25,028.70 in fees and expenses related to his motions to compel

_____

plaintiffs have custody of hard drives while case was pending but told plaintiffs that, once case was over, plaintiffs either had to reimburse PwC for cost of hard drives or return them after wiping data); see also id., Exs. 1-A, 1-B. The Court encourages the parties to abide by any agreements between themselves but declines to take action on an issue not covered by its sanctions order.

[7] Plaintiffs have provided a declaration stating that the additional fees for doing the imaging in three rounds instead of one could have been at most $1,500, or 5 hours at $300 per hour. See Hirschfield Decl. ¶ 10. Given that PwC employees spent a combined 344.7 hours on the second and third rounds of imaging, the Court simply does not find this estimate credible. See Def.'s Bill of Costs, Ex. B. It is extremely improbable that, had the imaging been done all at once, just five of those 344.7 hours would have been saved.

Because the charges listed in PwC's invoices cannot easily be separated into charges that would have been incurred if there had been just one imaging and those that were incurred because there were multiple imagings, the Court will make a fixed, 33% reduction to reflect its rough estimate of forensic imaging charges that would have been incurred in any event.

production of NIAC's server and the Salesforce membership lists.  As with defendant's fee

request for the sanctions motion, plaintiffs' primary objection is to the amount of time spent on

the motions to compel by senior partner Timothy Kapshandy.  See Pls.' Objections 12; Pls.' Reply

in Supp. of Exceptions to Def.'s Initial Bill of Costs [ECF 149] 2-3.  The Court finds that

Kapshandy's entries on the motions to compel suffer from the same lack of detail noted in Part A,

making a 10% reduction appropriate.  See DL, 256 F.R.D. at 246; Def.'s Bill of Costs, Ex. C

(Kapshandy entries like "Draft motion to compel server," "Draft motion to compel member lists,"

and "Review and revise reply to server motions").  But a greater reduction, such as the more-

than-20-hour reduction urged by plaintiffs, is not warranted.  See Pls.' Objections 12.  Like

defendant's omnibus sanctions motion, the two motions to compel involved discovery issues that

were by nature fact-specific and time-consuming, and hence required considerable attention by a

senior partner.  Plaintiffs cannot now complain that they must reimburse defendant for the

troubles that his attorneys had to go through to gain cooperation in discovery.  As this Court said

recently in another case involving a similarly contentious discovery dispute, "the time-consuming

nature of [discovery-related] motions is a significant reason cost-shifting is appropriate when a

party resists discovery without substantial justification."  See Beck, 2013 WL 772879, at *10

n.10.  Plaintiffs' present objections regarding the time spent by Kapshandy are particularly

unpersuasive in light of the fact that, when plaintiffs first complained about the attorney hours

spent on the motions to compel, they did not question the proportion of hours billed by

Kapshandy but rather suggested that the number of hours billed by junior associate Thomas Ross

was excessive.  See Pls.' Supp'l Exceptions to Def.'s Initial Bill of Costs [ECF 146] 8 (suggesting

that Ross "was permitted to bill so many hours on the two motions at issue as a way of giving

12

him experience/training"). Plaintiffs appear to claim both "insufficient [and] excessive delegation," see Mitchell, 217 F.R.D. at 58, but the Court does not find either to have been the case here.

Plaintiffs also challenge the non-attorney time spent on the motions to compel. Both Meredith Dudley's and Jeffery Tisak's billing entries, which total 81.6 hours, are generic and repetitive. See, e.g., Def.'s Bill of Costs, Ex. C (6/15/11 Dudley entry stating "Motion to Compel Servers - Prepare exhibits for upcoming motion per T. Kapshandy"; 8/9/11 Tisak entry stating "Review NIAC documents for Motion to Compel Server as per T. Kapshandy"). Nevertheless, because the Court recognizes that preparing numerous exhibits takes time, and because Dudley's entries show somewhat more detail and variety than Tisak's, see, e.g., id. (6/10/11 Dudley entry stating "Organize discovery materials, gather documents pertinent to upcoming motions and upload to the shared server per T. Kapshandy"), the Court will allow compensation for 90% of Dudley's hours and one half of Tisak's hours, consistent with the treatment of Dudley's hours in Part A and Tisak's hours throughout the bill of costs.

Finally, plaintiffs identify three entries that appear to relate to work done on defendant's motion to compel damages discovery and not to the motions to compel production of the server and membership lists. Although two of the three entries contain, respectively, the words "server" and "membership" in addition to the word "damages," defendant has not argued that these entries in fact related to the motions to compel production and only included the word "damages" by mistake. See Def.'s Bill of Costs, Ex. C (8/8/11 Kapshandy entries). Hence, the Court will subtract 1.5 hours for these two entries, and 0.7 hours for the third entry, which reflects work done on the "damages motion to compel," see id. (8/11/11 Kapshandy entry). Making these

13

reductions to the hours of Kapshandy,[8] Tisak, and Dudley, the Court will award $20,838.25 on the motions to compel.

      D.     <u>Talebi Deposition</u>

Defendant requests $7,599.30 in fees and expenses associated with Babak Talebi's deposition. <u>See</u> Def.'s Bill of Costs, Ex. D. Plaintiffs' only objection to the amount requested relates to the 37 hours claimed for Tisak's work. As discussed in Part A above, the Court will reduce these hours by 50% and hence award $6,720.55 on this item.

      E.     <u>Obtaining March 29, 2011 Order</u>

Defendant requests $17,943.22 in fees and expenses associated with obtaining the Court's March 29, 2011 Order directing plaintiffs to produce 5500 Talebi emails to the Court for <u>in camera</u> review. <u>See</u> Def.'s Bill of Costs, Ex. E. Plaintiffs again object to the proportion of attorney time spent by Kapshandy and to Tisak's hours. As above, the Court will reduce Tisak's hours by 50%. The Court will not make a specific reduction to Kapshandy's hours, however. Kapshandy's time on this item totals only 16.4 hours, and it is not unreasonable that these hours constituted 40% of the attorney time on a disputed discovery issue. In addition, Kapshandy's entries on this item are more transparent than his entries on the sanctions motion and motions to compel production, allowing the Court to better assess the reasonableness of the hours claimed. <u>See</u> Def.'s Bill of Costs, Ex. E (Kapshandy entries such as "Review Talebi emails," "Outline discovery issues; review court order," "Office conference plaintiff counsel re discovery disputes," "Review plaintiffs status memo; prepare response," and "Prepare for status conference").

---

     [8] The Court first subtracted the 2.2 hours for unrelated work and then applied the 10% reduction.

Because the time spent by Kapshandy on the listed tasks appears reasonable, the small reductions made for other work and described above are not necessary here.

In reviewing the entries on this item, however, the Court observes that many entries do not reference the Talebi emails (or any obviously related topics), but simply reference, for example, the status report, status conference, proposed discovery order, or other procedural matters leading up to the March 29 Order. All of these procedural matters, however, concerned not just the Talebi emails but other subjects as well. See Def.'s Report Regarding Status of Discovery [ECF 87]; Def.'s Proposed Order Regarding Discovery [ECF 89]; Order (Mar. 29, 2011) [ECF 93] (order on Talebi emails and seven other discovery issues). Also included on defendant's bill are travel expenses related to the March 4, 2011 discovery hearing, at which the Talebi emails were just one of many issues discussed. See Def.'s Bill of Costs, Ex. E; 3/4/11 Tr. of Discovery Hr'g [ECF 101]. Yet the Court granted sanctions for the expenses of obtaining the portion of the March 29 Order concerning the Talebi emails, not for all expenses associated with obtaining that order. See 9/13/12 Mem. Op. 15-16. Because the Court has no way of knowing what proportion of the listed expenses actually relate to the Talebi emails, it will further reduce the amount claimed (after the reduction to Tisak's hours) by 50% – a percentage reflecting, on the one hand, that some entries specifically pertain to the Talebi emails, but, on the other hand, that many entries refer to matters encompassing much more than the Talebi emails. See Tequila Centinela, 248 F.R.D. at 69 (requiring "near but for" relationship between discovery violation and sanction awarded). The resulting award is $8,605.86.

F.    Third-Party Subpoenas

Defendant requests $9,802.73 in third-party-subpoena expenses. See Def.'s Bill of Costs,

Ex. F.  In their objections to defendant's bill of costs, plaintiffs object to the lack of documentation supporting the claimed costs to effectuate service.  See Pls.' Objections 14-15. Defendant has provided such documentation in an attachment to his reply.  See Def.'s Reply, Ex. 4.  As plaintiffs raise no further objections to the expenses claimed, the Court will grant the requested amount in full.  See Pls.' Surreply.

G.     Parsi Deposition

Defendant requests $12,808.78 in fees and expenses associated with the last half day of Trita Parsi's deposition.  See Def.'s Bill of Costs, Ex. G.  Plaintiffs' only objection to the amount requested relates to the 51.5 hours claimed for Tisak's work.  As discussed in Part A above, the Court will reduce Tisak's hours by 50%.

Even after this reduction, however, the Court is troubled by the number of hours claimed for this item: 34.5 hours for time spent by three different attorneys and 73.05 hours for time spent by three different legal assistants.  See Cobell v. Norton, 407 F. Supp. 2d 140, 161 (D.D.C. 2005) ("[F]ee requests must be scrutinized for 'excessive, redundant or otherwise unnecessary' hours 'which firms would have excluded from bills to their own clients.'" (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983))).  The deposition took less than a full day (5.5 hours, according to defendant's bill of costs), see Def.'s Bill of Costs, Ex. G (5/11/11 Kapshandy entry), and the deponent had already been deposed once before.  In addition, the Court awarded these deposition expenses to compensate defendant for extra costs that may have been incurred because of plaintiffs' belated production of documents; it did not intend to compensate defendant for costs he would have incurred if plaintiffs had timely completed production.  See 9/13/12 Mem. Op. 19.  Given the brief amount of actual deposition time, the fact that this partial day of

16

deposition was a follow-on to a prior two-day deposition, and the uncertainty as to the reason

extra deposition time was needed, see id., the Court views the 100-plus hours spent by six

different people as excessive and will not award fees based on all of those hours. The Court will

apply an additional 33% reduction to the attorney hours and the already-reduced legal assistant

hours. This reduction brings the hours that will be credited on the Parsi deposition closer to the

hours claimed on the other two depositions at issue here, serving to compensate for the likely

redundancy in billing caused by the participation of so many individuals on this deposition. See

Def.'s Bill of Costs, Ex. D (5.5 attorney hours of deposition preparation claimed for seven-hour

Talebi deposition); id., Ex. H. (less than five attorney hours of deposition preparation claimed for

Blout redeposition); see also Copeland v. Marshall, 641 F.2d 880, 891 (D.C. Cir. 1980)

("[W]here three attorneys are present at a hearing when one would suffice, compensation should

be denied for the excess time."). The Court will thus award $8,439.31 on the Parsi deposition.

      H.      Blout Deposition

Defendant requests $3,755.35 in fees and expenses associated with the second day of

Emily Blout's deposition. See Def.'s Bill of Costs, Ex. H. Plaintiffs' only objection to the

amount requested relates to the 24.2 hours claimed for Tisak's work. As discussed in Part A

above, the Court will reduce these hours by 50% and hence award $3,180.60 on this item.

      I.      Rule 54(d) Costs

In addition to the expenses set forth in the Court's September 13, 2012 Memorandum

Opinion and Order, defendant seeks costs under Federal Rule of Civil Procedure 54(d). See

Def.'s Bill of Costs 3. That Rule provides that, "[u]nless a federal statute, these rules, or a court

order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing

party." Fed. R. Civ. P. 54(d). Plaintiffs contend that the September 13 opinion and order "provide[] otherwise," because the Court declined to "'impose as sanctions all fees and expenses associated with the defense of this case'" and said that "the numerous issue-specific sanctions awards that the Court has made are all that is appropriate here." See Pls.' Objections 13-14 (quoting 9/13/12 Mem. Op. 23-24).

The Court's September 13, 2012 decision does not in any way preclude defendant from recovering costs as the prevailing party under Rule 54(d). The Court determined that the issue-specific sanctions awarded were all that were appropriate as sanctions. The Court said nothing about costs under Rule 54, which entitles a prevailing party not to "all fees and expenses," but only to the costs listed in 28 U.S.C. § 1920 and in Local Civil Rule 54.1(d). Defendant is the prevailing party in this action, see Mem. Op. (Sept. 13, 2012) [ECF 189] (granting defendant's motion for summary judgment), and therefore is entitled to costs under Rule 54(d).

Aside from arguing that defendant is not entitled to any costs under Rule 54(d) because of the Court's sanctions order, plaintiffs do not raise any specific objections to the costs defendant seeks to recover under the Rule. Defendant requests $29,336.55 in fees for transcripts, witnesses, and translations. While transcript and witness fees are properly taxable, see 28 U.S.C. § 1920(2)-(3), fees for document translation are not, see id. § 1920(6); Taniguchi v. Kan Pacific Saipan, Ltd., 132 S. Ct. 1997, 2007 (2012) (holding that "the category 'compensation of interpreters' in § 1920(6) does not include costs for document translation"); see also Def.'s Reply, Ex. 3-C (invoice in amount of $310 for translation of files from Farsi to English). Accordingly, the Court will deduct the translation fees and award $29,026.55 under Rule 54(d).

    J.    Summary

Tallying the fees and expenses for the items above, the Court will award $183,480.09 to defendant. Defendant also requests prejudgment and postjudgment interest. In support of his request for prejudgment interest, defendant merely cites D.C. Code § 28-3302, which sets the rate of interest on District of Columbia judgments but does not give any indication as to why defendant should be granted prejudgment interest. Absent further justification for increasing the already-sizeable fee award here, the Court declines to award prejudgment interest. See Oldham v. Korean Air Lines Co., 127 F.3d 43, 54 (D.C. Cir. 1997) ("Whether pre-judgment interest is to be awarded is subject to the discretion of the court and equitable considerations." (internal quotation marks and alteration omitted)). The Court will award postjudgment interest under 28 U.S.C. § 1961.

Accordingly, for the foregoing reasons, it is hereby

**ORDERED** that [200] plaintiffs' motion for leave to file a surreply is **GRANTED**; it is further

**ORDERED** that [202] plaintiffs' motion to strike defendant's verification of his final bill of recoverable costs is **DENIED**; and it is further

**ORDERED** that plaintiffs shall pay defendant $183,480.09 plus interest from September 13, 2012.

**SO ORDERED**.

                 _____/s/ John D. Bates_____
                      JOHN D. BATES
              United States District Judge

Dated: April 8, 2013

19

TRITA PARSI and NATIONAL
IRANIAN AMERICAN COUNCIL,

   **Plaintiffs,**

     **v.**         Civil Action No. 08-705 (JDB)

SEID HASSAN DAIOLESLAM,

   **Defendant.**

## ORDER

Upon consideration of [140] plaintiffs' Motion to Stay and Exceptions to Bill of Costs, [143] defendant's Motion for Sanctions (Omnibus), [144] defendant's Motion for Summary Judgment, [156] defendant's Motion to Compel Production of Documents Concerning Meetings with Iranian Governmental Officials, [167] plaintiffs' Motion to Strike, [172] defendant's Motion for Bond, the various memoranda, and the entire record herein, and for the reasons stated in the Memorandum Opinions issued on this date, it is hereby **ORDERED** that

1. [140] plaintiffs' Motion to Stay and Exceptions to Bill of Costs is **GRANTED** as to the Motion to Stay and **HELD IN ABEYANCE** as to the Exceptions to the Bill of Costs;

2. [143] defendant's Motion for Sanctions (Omnibus) is **GRANTED IN PART and DENIED IN PART**;

3. [144] defendant's Motion for Summary Judgment is **GRANTED**;

4. [156] defendant's Motion to Compel is **DENIED AS MOOT**;

5. [167] plaintiffs' Motion to Strike is **DENIED**; and

6. [172] defendant's Motion for Bond is **DENIED.**

It is further **ORDERED** that

1. Defendant shall file his Bill of Costs by October 12, 2012;

2. Plaintiffs shall file any objections thereto by October 26, 2012;

3. Defendant shall file any reply by November 9, 2012.

   **SO ORDERED.**

        /s/ John D. Bates
        JOHN D. BATES
        United States District Judge

Dated: September 13, 2012

TRITA PARSI and NATIONAL
IRANIAN AMERICAN COUNCIL,

     **Plaintiffs,**

        **v.**                         **Civil Action No.  08-705 (JDB)**

**SEID HASSAN DAIOLESLAM,**

     **Defendant.**

## MEMORANDUM OPINION

     This is a defamation case filed by Trita Parsi and the National Iranian American Council (collectively, "plaintiffs").  Plaintiffs allege that Seid Hassan Daioleslam ("defendant") published numerous false and defamatory statements that characterize plaintiffs as agents of the Iranian government.  The parties engaged in lengthy, contentious discovery, which has resulted in [143] defendant's instant omnibus sanctions motion.  For the reasons given below, the motion will be granted in part and denied in part.

### I.  Legal standards

     The Court may assess sanctions, if warranted, under either Federal Rule of Civil Procedure 37 or the Court's inherent authority.  Rule 37 authorizes the issuance of sanctions when a party disobeys a discovery order.  Sanctions available under Rule 37 include "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action," prohibiting the disobedient party from introducing evidence on an issue, striking pleadings, dismissing the action, and rendering a default judgment.  Fed. R. Civ. P.

1

37(b)(2)(A). Rule 37 imposes no bad faith or willfulness requirement; it simply allows a court to issue any "just orders" necessary to punish past discovery abuses or deter future abuses.

Under Rule 37(a)(5)(A), a party who prevails on a motion to compel must be awarded "reasonable expenses incurred in making the motion, including attorney's fees," unless the non-movant's opposition to the motion was "substantially justified." Rule 37(a)(5)(A)(ii). A party is "substantially justified" in opposing a motion if reasonable people could differ in their views on the motion. Pierce v. Underwood, 487 U.S. 552, 565 (1988). When a motion is granted in part and denied in part, the Court should apportion expenses, including attorney's fees, accordingly. Fed. R. Civ. P. 37(a)(5)(C).

In situations where a party has committed discovery abuses but Rule 37 does not apply, a court may instead issue appropriate sanctions under its inherent power. Shepherd v. Am. Broadcasting Cos., Inc., 62 F.3d 1469, 1474 (D.C. Cir. 1995). Inherent power sanctions include "fines, awards of attorneys' fees and expenses, contempt citations, disqualifications or suspensions of counsel, and drawing adverse evidentiary inferences or precluding the admission of evidence." Id. A court may impose "issue-related" sanctions "whenever a preponderance of the evidence establishes that a party's misconduct has tainted the evidentiary resolution of the issue," but a court must find misconduct by clear and convincing evidence in order to impose the sanction of dismissal. Id. at 1478. Whatever sanction the Court selects, it must "properly calibrate the scales to ensure that the gravity of an inherent power sanction corresponds to the misconduct." Id. at 1479 (citations omitted).

## II. Analysis

As explained in this Court's prior opinions, Dr. Parsi is the president of the National

Iranian American Council ("NIAC"), a Washington, D.C.-based non-profit group that is "dedicated to promoting Iranian American involvement in American civic life and relying on the public for financial and human resource support." Compl. ¶¶ 9, 10. Defendant is an Arizona resident who has published articles about Parsi and NIAC on various websites. Id. ¶¶ 5, 11. Plaintiffs' complaint sought damages and injunctive relief against defendant for common law defamation and portrayal in a false light. Id. ¶ 11.

After the Court denied defendant's first motion for summary judgment, see Feb. 4, 2009 Mem. Op. [ECF 13], the parties conducted more than two years of discovery. During that time, the Court granted several of defendant's motions to compel. See Sept. 16, 2009 Order [ECF 32]; July 1, 2010 Order [ECF 68]; March 29, 2011 Order [ECF 93]; Aug. 30, 2011 Order [ECF 138]. In September 2011, defendant simultaneously filed a second motion for summary judgment and an omnibus motion for sanctions, including the sanction of dismissal. See Def.'s Mot. for Summ. J. [ECF 144]; Def.'s Mot. for Sanctions (Omnibus) [ECF 143] ("Def.'s Sanctions Mot."). In a separate opinion, the Court will grant defendant's motion for summary judgment on all claims. Nonetheless, because defendant's sanctions motion requests various monetary awards, it is still necessary to resolve the motion.

Defendant's motion focuses on the following areas: (1) plaintiffs' delayed production of NIAC's computers and servers for forensic imaging, (2) plaintiffs' allegedly intentional alteration of NIAC employees' calendar entries, (3) plaintiffs' tardy production of Babak Talebi's emails, (4) plaintiffs' failure to produce certain emails sent to third parties, (5) plaintiffs' belated production of NIAC's Salesforce data, (6) the necessity of redeposing Parsi and NIAC employee Emily Blout, (7) various issues relating to Parsi's computers, and (8) plaintiffs' alleged

3

intentional alteration of a document relating to Iranians for International Cooperation, a group cofounded by Trita Parsi. The Court will discuss each issue in turn.

1. Server production

As discussed at more length below, defendant expended significant time and energy attempting to obtain NIAC employees' Outlook calendar entries. Once it became clear that plaintiffs could or would not produce all of the calendar entries voluntarily, the Court ordered plaintiffs to produce NIAC's server for forensic imaging by PricewaterhouseCoopers ("PwC"). July 1, 2010 Order [ECF 68] at 4-5. The term "server" was not defined by the Court or the parties, but the natural meaning, in context, was a Microsoft exchange server. Shortly before the imaging was to take place, however, plaintiffs' counsel revealed during a conference call with PwC that NIAC did not operate a Microsoft exchange server. See Def.'s Sanctions Mot., Ex. A ("PwC Report") at 4. Instead, NIAC outsourced the management of its emails and calendar entries to a third-party provider and stored them locally on the computers of NIAC employees. Id. Since there was no exchange server where all of the calendar entries were stored, plaintiffs instead offered to produce for forensic imaging several computers where calendar entries were stored locally. Defendant accepted that solution, and imaging was conducted. Id. It later became apparent, however, that plaintiffs had omitted relevant computers and a shared-drive server from the production. Ultimately, PwC conducted three rounds of imaging, and in the third round, PwC discovered several hundred unproduced calendar entries. Def.'s Sanctions Mot. at 8-9; id., Ex. XX at 4 (PwC's third imaging report).

Defendant initially paid for the imaging, but the Court's July 1, 2010 order specified that "[i]f defendant believes that forensic analysis shows that discoverable calendar entries were

4

omitted from previous productions, or that inappropriate edits were made to such entries, he may seek to recover the costs of the forensic analysis from NIAC." July 1, 2010 Order [ECF 68] at 5. Defendant now seeks to recover those costs, arguing both that discoverable entries were omitted and that inappropriate edits were made to entries. As discussed below, the Court is not persuaded that plaintiffs intentionally edited calendar entries, so fee-shifting is not appropriate on that basis. It is clear that some discoverable entries were not produced, but, as is also discussed below, it does not appear that there was any wholesale effort to wrongfully withhold entries from production. Hence, in the Court's view, shifting of all fees is not warranted on that basis either. Nonetheless, the Court concludes that some lesser amount of fee-shifting is justified. As noted, three rounds of imaging were conducted due to plaintiffs' belated production of the relevant computers and shared-drive servers. Defendant explained at the motions hearing that conducting three separate imaging sessions cost far more than conducting one larger imaging session. Tr. of Mot. Hrg. (July 6, 2012) at 44. Plaintiffs cannot be blamed for having no exchange server where all calendar entries could be found, but lacking such a server, plaintiffs had a responsibility to produce every device on which relevant data might be stored. They failed to fulfill that responsibility during PwC's first imaging session, and they should be responsible for the costs of that failure. Therefore, plaintiffs must reimburse defendant for the costs of the last two rounds of imaging.

The remaining issue is whether plaintiffs must reimburse defendant for (1) his expenditures in bringing his earlier motion to compel server production and (2) his expenditures in bringing the instant sanctions motion. The Court has already ordered plaintiff to pay all of the expenses associated with [112] the defendant's July 1, 2011 Motion to Compel Production of

5

Server, and sees no reason to revisit that ruling here.  That payment has not yet been made, however, because plaintiffs requested and were granted permission to withhold payment until the Court ruled on their objections to defendant's bill of costs.  See Pls.' Mot to Stay and Exceptions to Bill of Costs [ECF 140]; September 20, 2011 Minute Order.  Because the instant Order will result in several additional submissions of expenses by defendant, the Court will not at this time rule on [140] plaintiffs' objections.  Rather, a separate Order will lay out a schedule for filings on all expenses issues, and all of plaintiffs' objections will be resolved together.

As for the expenses associated with the instant motion, the Court holds that plaintiffs should be responsible for such expenses to the extent that defendant succeeds in obtaining the requested sanction.  Here, for instance, defendant has succeeded in obtaining partial fee-shifting for the PwC imaging.  This fee-shifting is based on plaintiffs' discovery abuses, and defendant should not have to bear the costs of bringing those abuses to the attention of the Court.  Hence, the Court will award defendant reasonable expenses associated with bringing this portion of the sanctions motion.  But when plaintiffs' request for a sanction is denied, as in the next section, defendant must bear his own costs.

2.  Calendar entries

The calendar entries are, by far, the most complicated dispute.  Defendant became aware in late 2009 that NIAC employees kept track of their appointments on Outlook calendars, although plaintiffs had previously denied this.  Def.'s Resp. to Pls.' Mot. for Reconsid. [ECF 76] ("Def.'s Reconsid. Opp.") at 5.  On December 9, 2009, defendant requested that plaintiffs produce all employees' Outlook calendar entries.  Pls.' Mot. for. Reconsid. [ECF 69], Ex. A.  On December 29, 2009, plaintiffs produced approximately 400 calendar entries in native .pst format.

6

The "date modified" field of these entries showed that 87 of the entries, including 42 of Parsi's 63 entries, had been altered between December 25 and December 27 of that year. Def.'s Reconsid. Opp. at 5. In early March 2010, defendant requested forensic imaging of NIAC's server to locate additional calendar entries and to determine the substance of the 87 alterations. Id. Plaintiffs told the Court on March 5, 2010 that they would produce "complete, unaltered" records of NIAC employees' calendar entries forthwith, so the Court declined to order forensic imaging. Id. On April 21, 2010, plaintiffs produced approximately 5000 calendar entries. Def.'s Sanctions Mot. at 2. There were two issues with this production. First, although defendant had requested the entries in native .pst format, they were instead produced in an Excel spreadsheet. Def.'s Reconsid. Opp. at 7. The spreadsheet inexplicably did not include the "last modified" field, so it was impossible to tell when the records had been modified. Id.

Defendant brought some of the issues with the April 21, 2010 production to the Court's attention, and on July 1, 2010, the Court ordered that "NIAC shall . . . submit the server on which its Outlook calendars are kept" for forensic imaging by PwC. July 1, 2010 Order at 4. The Court's Order specifically provided that PWC was to produce a report explaining whether calendar entries had been altered or deleted, who had done the altering or deleting, and the substance of the alterations and deletions. Id. at 5. Unfortunately, PwC was not able to completely respond to the Court's order. PwC Report at 10-12. It was unable to determine who was responsible for edits to calendar entries because multiple employees used the same computers, and it could not determine the substance of the Christmas weekend edits because it did not have copies of the calendar entries from before the edits were made. Id. Notwithstanding these limitations, PwC's analysis turned up many unproduced calendar entries

7

and several other issues.  Four categories of problems will be discussed here.

A.  Unproduced entries

PwC located 4,159 calendar entries that had not been previously produced, including 999 entries that had been deleted and 715 entries that had been double-deleted.  Def.'s Sanctions Mot. at 3.  PwC's analysis also confirmed that some entries had been edited near Christmas 2009, an issue that will be discussed further below.  Id. at 3, 6.  Defendant argues that PwC's analysis shows that plaintiffs failed to produce discoverable calendar entries and made inappropriate edits to entries, and that all imaging fees should therefore be shifted per the Court's July 1, 2010 Order.  Plaintiffs' basic position is that all of the alterations and unproduced documents are the sorts of meaningless electronic quirks that show up in massive e-discovery productions.  See generally Corrected Pls.' Mem. in Opp. to Def.'s Sanctions Mot. [ECF 154] ("Pls.' Opp.") at 10-33.  For instance, plaintiffs argue that the mere process of exporting calendar entries for production created substantively identical copies of many entries, and PwC identified these copies as unproduced entries.  Id. at 16.

The evidence here is quite confusing, and neither party has been able to fully or clearly explain the technical issues.  Nonetheless, the Court ultimately concludes that defendant has not shown by a preponderance of the evidence that plaintiffs inappropriately altered or deleted calendar entries.  The Court bases its conclusion on the fact that defendant, despite obviously putting a significant amount of effort into his motion, has not identified alterations or deletions that actually help plaintiffs' case.  In other words, there is simply no reason to believe that plaintiffs would have made the alterations or deletions at issue for tactical reasons.  Given that, and given plaintiffs' arguments about the technical issues surrounding e-discovery, the Court will

8

not make a finding of such serious misbehavior.

The Court need not discuss each disputed calendar entry, but it will outline the issues. PwC concluded that 4,159 of the 17,000 calendar entries that it located had not previously been produced.[1]  Approximately 1000 of these were created after plaintiffs' second production, so they were not intentionally withheld from production.  Pls.' Opp. at 20-21.  Plaintiffs argue that approximately 1000 more were simply duplicates of previously produced entries, 600 were calendar notifications, 100 were blank, and 110 were holiday notifications.  Id.  Approximately 1000 were deleted entries, which, as explained below, plaintiffs persuasively argue that they did not need to produce.  Id.  The additional three hundred entries are unaccounted for; plaintiffs make a reference to "inactive 'pst' files which were inaccessible to NIAC's custodians," but they were unable to clearly explain at the hearing what they meant by this.  Id.; Hrg. Tr. at 64-65. In sum, assuming plaintiffs' numbers are basically correct – and they are largely undisputed by defendant – the number of meaningful entries that were not produced is much smaller than it initially appears.

Moreover, as indicated above, defendant has been unsuccessful in attempting to find incriminating entries that were not produced.  The unproduced entries relate to meetings on the Campaign for New American Policy on Iran, meetings on the Standing with the Iranian People Act, a 2009 CLIPPI or CLPI  meeting (neither party defines the acronym), a "J Street" meeting, an October 2009 "call about Convio and Common ground," and a meeting on the Incidents at Sea bill.  See Def.'s Mot. at 5-6.  Plaintiffs offer specific suggestions about why each of these

---

[1]  There is an obvious problem with the math here: plaintiffs produced only 5000 entries before forensic imaging began, yet PwC concluded that only 4,159 of 17,000 entries had not been produced.  Neither party explains this issue, so the Court is left to assume that a huge number of these 17,000 entries were merely duplicates.

entries might not have been produced; the Court will not repeat each argument, but they are generally persuasive. Pls.' Opp. at 25-32. Generally speaking, in each of these cases, plaintiffs contend that either the user produced a substantively identical copy of the disputed entry (sometimes with the word "Copy:" inserted in the subject line, an apparent artifact of the exporting process), or that other NIAC employees produced calendar entries for the same meeting. See id. In other words, PwC's analysis did not uncover the existence of any meetings or other events that plaintiffs had completely hidden in their original production. Plaintiffs argue that this shows that they did not delete or alter entries intentionally, because it would have made no sense to delete employee A's entry for a meeting if employee B was going to produce a calendar entry for the same meeting. Because defendant has not suggested any reason that NIAC might have wanted to hide only a particular employee's participation in the meeting (rather than the meeting itself), the Court agrees with plaintiffs that there is little evidence of tactical manipulation of entries.

The only alteration that gives this Court pause is that Patrick Disney, a NIAC employee, changed at least 82 references to "lobbying" in his calendar entries to say "legislative direct" in February 2010. See Def.'s Sanction Mot. at 4-5. Plaintiffs explain that Disney had category tags for calendar entries, and that he was simply trying to change the "lobbying" tag to "legislative direct" for future entries. Pls.' Opp. at 25-26. According to plaintiffs, Disney retroactively changed past entries in the process of renaming the tag; according to defendant, Disney was trying to hide any evidence of lobbying activities. Id. The timing of these changes makes defendant's theory less plausible: Disney made these changes in February 2010, but plaintiffs did not agree to produce a revised set of calendar entries until March 2010, and they did not

10

ultimately do so until late April 2010. Def.'s Sanctions Mot. at 4; Def.'s Reconsid. Opp. at 3. In other words, if Disney was trying to change the entries to avoid producing anything suspicious, he was both prescient and expeditious in doing so. In addition to this circumstantial evidence against defendant's theory, the Court simply finds plaintiffs' explanation more believable. There are many reasons unrelated to this case that Disney might have wanted to rename his "lobbying" tag, and doing so might well change past as well as future entries. This simply does not seem suspicious enough to show intentional alteration by a preponderance of the evidence.

B. Deleted entries

As noted above, PwC recovered 999 entries that had been deleted and 715 entries that had been double-deleted. There is no disagreement that the vast majority of these entries, if not all of them, were deleted in the ordinary course of business. Plaintiffs argue that their failure to produce deleted calendar entries cannot be seen as spoliation or intentional disobedience of a discovery order, because they claim that no discovery order or discovery request covered entries deleted in the ordinary course of business. Pls.' Opp. at 21-23. Defendant, of course, assumes that deleted entries were within the scope of his discovery requests. The relevant discovery request, which was sent by email, reads:

> Outlook/Calendar records of meetings with government officials (and any foreign persons) - Ms. Blout revealed at her deposition that her Outlook calendar reflects such meetings. We had previously specifically asked you about such when not a single calendar/diary of NIAC employees was produced and was informed there were none. Someone is not leveling on this. We ask that you immediately review all diaries, calendars for such and produce them immediately.

Pls.' Mot. for. Reconsid. [ECF 69], Ex. A. No other Court order governing this issue was in effect. In the Court's view, defendant's request does not clearly cover deleted entries. Deleted entries typically reflect meetings that were canceled. They are therefore not "records of

11

meetings with government officials (and any foreign persons)," because the meetings never occurred. Perhaps plaintiffs should have produced such entries in an abundance of caution, or at least sought clarification on the issue, but the failure to do so is not sanctionable.

C.  Christmas weekend 2009 alterations

Eighty-seven of the approximately 400 entries that were produced on December 29, 2012 were altered between December 25, 2009 and December 27, 2009. Def.'s Sanctions Mot. at 3. As explained above, PwC could not respond to the part of the Court's Order that asked them to identify the substance of these alterations. Plaintiffs point out, however, that the timing of the edits makes it unlikely that they were substantive. Eighteen events in Parsi's calender were modified at exactly 1:16 a.m.; twelve were modified at the same time in David Elliot's calendar; 9 were modified at the same time in Blout's calendar. Pls.' Opp. at 16. Plaintiffs also note that some of the calendar entries modified on Christmas weekend contained the word "Copy:" in the subject line, which Outlook apparently added to some calendar entries during the exporting process. Id. That would change the date modified of an entry, but not the substance. PwC's analysis showed that 1,445 of the 17,000 entries it ultimately recovered were modified on Christmas weekend 2009, but again, it could not determine the substance of the modifications. Def.'s Sanctions Mot. at 6. Plaintiffs claim, and defendant has not disputed, that over 1000 of the documents were duplicates, and that "the remaining 300 unique documents . . . were the result of the export process itself creating a non-substantive change." Pls.' Opp. at 33.

This is a particularly thorny issue, because it is obviously difficult for defendant to look at an innocuous calendar entry and show that some previous version of the entry was altered in bad faith. Nonetheless, the fact that entries were edited in batches persuades the Court that it is

more likely than not that the changes were not substantive.  Altering the text of calendar entries to hide some piece of information would presumably require individualized, case-by-case editing, not the multiple simultaneous changes at issue here.  This evidence is hardly definitive, but particularly in light of the fact that the Court has found no other intentional deletion or manipulation of calendar entries, defendant has not carried his burden as to the Christmas weekend alterations.

The Court's view is supported by one specific set of edits the parties have identified.  Both parties agree that "[a]mong the strangest" of the Christmas weekend alterations were three entries sent from the gmail account of Babak Talebi, a one-time NIAC employee, and added to the calendars of NIAC employees Parsi, Elliott, and Kevin Cowl.  Def.'s Sanctions Mot. at 3; Pls.' Opp at 23-24. One appointment was with Erik Belfrage, a Swedish banker and diplomat, and the other two were with Puneet Talwar, an NSC official.  Id.  Talebi no longer worked at NIAC when these entries were added.  Def.'s Sanctions Mot. at 3-4.  Neither party has any explanation for the appearance of these three entries.  Whatever technological oddity lies behind this event, defendant has not suggested any reason that plaintiffs would have added calendar entries in bad faith – indeed, one would expect deletion of entries in bad faith.  Furthermore, defendant has pointed to nothing incriminating or even interesting about these particular entries.  While mysterious, these entries suggest technological problems rather than bad faith on the part of plaintiffs.

D.  Parsi's 2006 calendar entries

Defendant puts great emphasis on the fact that there are no calendar entries at all for Parsi for five months in mid-2006, despite the fact that defendant has independent evidence showing

13

that Parsi met with several United States and Iranian officials during that time. Def.'s Sanctions Mot. at 6-7. Plaintiffs have offered various explanations for this gap, including that "Dr. Parsi was a fulltime student in 2006" and that the litigation hold was not in effect in 2006. Pls.' Reply in Supp. of Mot. to Reconsid. [ECF 77] at 4. PwC recovered no calendar entries for Trita Parsi for that period in 2006, including among the deleted entries. PwC Report at 11. So the entries either never existed, were never stored on the machines PwC imaged, or were deleted in such a way that PwC was unable to recover them.

While it seems very likely that the calendar entries existed at some point – or, put differently, it seems unlikely that Parsi completely stopped using Outlook for five months and then resumed using it again, see Def.'s Sanctions Mot. at 6 – there is simply no evidence that entries were deleted intentionally or for tactical reasons relating to this litigation. As plaintiffs point out, they were under no obligation to preserve evidence in 2006. Pls.' Reply in Supp. of Mot. to Reconsid. [ECF 77] at 4. Parsi was apparently juggling several different electronic devices at that time, and somehow failed to preserve any calendar entries he may have created. Hrg. Tr. at 75-77. Defendant's frustration is understandable, but this loss of information – very possibly before the litigation even began – is not sanctionable, at least without hard evidence of bad faith.

E. Summary

Because the Court cannot find by a preponderance of the evidence that plaintiffs intentionally altered or deleted calendar entries, it will not shift the whole cost of the forensic imaging to plaintiffs. In addition, the Court will not order plaintiffs to reimburse defendant for the cost of bringing this portion of the sanctions motion.

14

3. Talebi's emails

In response to defendant's request for emails of several NIAC employees, plaintiffs produced a small number of emails to and from Babak Talebi, NIAC's cofounder and erstwhile director of community outreach. Def.'s Reconsid. Opp. at 3-4. In August 2010, plaintiffs discovered and reviewed 8000 more of Talebi's emails and decided that an additional 2500 would be produced. April 5, 2011 Order [ECF 95] at 2. Plaintiffs claimed that the remaining 5500 emails did not include any of the parties' agreed-upon search terms or were nonresponsive. Id. The Court decided to conduct an in camera review of the remaining 5500 emails and found that many were clearly responsive, so plaintiffs were ordered to turn over all 5500 remaining emails. Id. at 2-3.

Plaintiffs have only essayed a half-hearted defense of their actions. They acknowledge that they did not use the agreed-upon search term "Talebi," but point out that using the email custodian's name renders the idea of a "search term" meaningless, since it would result in the production of every email from that custodian. Pls.' Opp. at 36 n.3. For similar reasons, they did not use the "NIAC" search term. Id. But even if plaintiffs' argument is reasonable, plaintiffs were not necessarily entitled to make a unilateral decision about which search terms to use, and they certainly were not entitled to represent that they had used all of the agreed-upon search terms when that was not true. In addition, defendant points out that plaintiffs obviously failed to use the "Parsi" or "Blout" search terms, which is less defensible than the decision not to use "Talebi" or "NIAC." Pls.' Reply in Supp. of Sanctions Mot. [ECF 159] ("Pls.' Reply") at 14.

Setting aside specific search terms, it is clear that plaintiffs missed a large number of responsive Talebi emails. Their only excuse is that they did not realize that Outlook's search

15

function did not search attachments, and most (but apparently not all) of the key documents defendant cites in his brief are attachments to emails. Pls.' Opp. at 38-39. But even if this is true, this was not a massive production, and plaintiffs should have at least spot-checked the 5500 unproduced documents to ensure that they were not missing responsive documents. Certainly, it would have made sense for plaintiffs to do this type of review before the Court was compelled to undertake it. Given that the Court was able to locate responsive documents easily within the 5500 unproduced documents, plaintiffs' failure to do so is inexcusable. See April 5, 2011 Order [ECF 95] at 3 ("[T]he Court identified these e-mails by searching for obvious terms such as 'lobbying,' 'Hassan,' and 'Iranian government.' Although the Court did not conduct a comprehensive review of every e-mail submitted by NIAC, it is not this Court's responsibility to parse through thousands of e-mails to determine those that are responsive and those that are not. That was NIAC's job, which it has totally failed to complete in a satisfactory manner.").

Defendant has requested reimbursement for the expenses associated with obtaining [93] the March 29, 2011 order directing plaintiffs to produce 5500 emails to the Court for in camera review. Because defendant succeeded on that motion and plaintiffs' opposition to the motion was not "substantially justified" for the reasons explained above, this request will be granted. See Fed. R. Civ. P. 37(a)(5)(A)(ii).

Defendant also requests reimbursement for the expenses associated with Talebi's deposition, arguing that the deposition was taken before defendant received Talebi's emails and hence was much less useful. The Court finds that granting the expenses of the full day of deposition would be excessive. There were many areas unrelated to the emails on which Talebi could be questioned; indeed, defendant evidently believed it was worthwhile to schedule Talebi's

16

deposition even though he did not have the emails that were later produced. On the other hand, the literally thousands of emails produced in an unjustifiably tardy fashion would likely have been an important addition to the deposition, allowing defendant to delve more deeply into his questioning or to explore entirely new lines of examination. Accordingly, the Court will award defendant half of the expenses associated with Talebi's deposition. In addition, the Court will award defendant the expenses associated with bringing this portion of the sanctions motion.

4. Third-party emails

Defendant has subpoenaed emails to or from NIAC employees from a number of third parties. Most of these emails are to or from NIAC employees in 2008 or 2009, and none were produced by NIAC. Def.'s Sanctions Mot. at 19-23. Defendant argues that plaintiffs should pay for the cost of issuing these subpoenas, since defendant would not have had to issue them if plaintiffs' production had been more complete. Id. at 39. Defendant also asks for a jury instruction that there are more unproduced emails that would support defendant's contentions, but given the resolution of the summary judgment motion, the Court need not decide whether such an instruction is appropriate. Id.

The emails defendant has recovered include (1) 2008 and 2009 emails to and from Parsi and Disney to CNAPI employees, (2) 2001 and 2003 emails from Parsi to a "Children of Persia" group, including some from Parsi's email account at a predecessor organization to NIAC, (3) emails between Parsi and Puneet Talwar, an official at the National Security Council, from April 2009, (4) emails between Parsi and Hillary and Flynt Leverett from 2008 and 2009, (5) emails subpoenaed from plaintiffs' damages expert, Joel Morse, mostly from members of the public commenting on defendant's publications, and (6) emails subpoenaed from Col. (Ret.) Samuel

Gardiner, another NIAC expert, mostly to or from Parsi in 2008 and 2009.  See Def.'s Sanctions Mot. at 19-23.

It is understandable that Parsi might no longer have copies of the Children of Persia emails, which were sent long before this litigation began.  But plaintiffs' failure to produce the other five categories of emails is indefensible, and plaintiffs made no coherent attempt to explain either in their briefing or at the motions hearing why all of these emails would not have been produced.  Hrg. Tr. at 59.  Most disturbingly, plaintiffs apparently gathered emails for their experts that they failed to produce to defendant, which clearly shows that plaintiffs' statement at the motions hearing that "[t]here may be technical explanations" for the failure to produce these documents is untrue.  Hrg. Tr. at 59.  Given plaintiffs' inexplicable and unexplained behavior, it is appropriate to require them to pay the cost of serving the subpoenas (other than the subpoena to the Children of Persia employees) and the costs of bringing this portion of the instant motion.

5.  Salesforce data

The Court has already awarded sanctions for [113] defendant's motion to compel on this issue, so it will be summarized only briefly here.  Defendant went to great lengths to obtain membership lists and meeting notes stored in plaintiffs' Salesforce software, but plaintiffs gave a variety of excuses for why they could not produce these records.  Def.'s Sanctions Mot. at 23-25. Ultimately, defendant had to file a motion to compel, and the Court granted the motion and awarded defendant the costs of bringing it.  See August 30, 2011 Order [ECF 138] at 2-3. Defendant now also seeks reimbursement of its expenses for the two and a half days it spent deposing Parsi, arguing that the deposition was less useful than it should have been because defendant did not have access to this data.  Def.'s Sanctions Mot. at 40.

18

Plaintiffs' failure to produce the Salesforce data was undoubtedly serious, but the Court concludes that awarding expenses for all two and a half days of Parsi's deposition – in addition to the expenses already awarded – is excessive.  Parsi's original deposition was scheduled for two days, and another half day was later added to account for various documents that plaintiffs produced belatedly.  Def.'s Sanctions Mot. at 28.  There are two ways of thinking about this scheduling.  First, there may have been so much material to cover that defendant would have had to depose Parsi for two and a half days no matter when plaintiffs finished their production.  If that is true, defendant incurred no extra costs (or incurred only minimal extra costs) due to plaintiffs' belated production.  Alternatively, however, defendant might have been able to carefully structure his questioning such that he could have fit everything into the original two days if all materials had been timely produced.  In that scenario, the extra half day was an unnecessary expense caused by plaintiffs' belated production.  Not knowing which of these scenarios is true, the Court will split the difference.  The Court will not award expenses for the two originally scheduled deposition days, which would have been necessary regardless of any belated production issues.  For the extra partial day of deposition, the Court will award defendant only half of his expenses.  The Court will also award the expenses of bringing this portion of the sanctions motion.

6.  Blout redeposition

Emily Blout, NIAC's former Legislative Director, also had to be redeposed because defendant did not have her calendar entries at the time she was initially deposed.  Def.'s Sanctions Mot. at 27, 42.  As discussed above, the Court has not found that plaintiffs deleted calendar entries in bad faith, or substantively altered those that it produced.  Still, there is no

19

question that plaintiffs were very slow in producing any calendar entries at all. Because plaintiffs' tardiness in producing any of the calendar entries made the second deposition necessary, it is appropriate for plaintiffs to pay some of the reasonable expenses of that deposition. For the reasons explained in the previous section, however, the Court will order plaintiffs to reimburse defendant for only half of the expenses of the redeposition. The Court will also order plaintiffs to reimburse defendant for the expenses associated with this portion of the sanctions motion.

7. Parsi's computers

Defendant raises two issues relating to Parsi's computer usage. The first concerns the loss of data stored on one of Parsi's laptops. Def.'s Sanctions Mot. at 41. Parsi apparently began using the laptop at issue in January 2009; he claims that it was stolen at a hotel in Norway in May 2010 without ever having been backed up. Defendant sees two problems with this. First, defendant argues that failure to back up a laptop for a year and a half is negligent and sanctionable. Second, defendant argues that the tale of theft is suspicious. According to hotel and police records, the hotel – "perhaps trying to win the world championship of hotel service," in defendant's phrasing – immediately bought Parsi a brand new, different kind of laptop. Id. The Court agrees that is somewhat startling; on the other hand, the police reports and the receipt for the laptop do appear to back up Parsi's story.

The second computer usage issue concerns the desktop Parsi used at NIAC in 2009 and 2010. According to Parsi's interrogatory responses, he had been using his current desktop computer at NIAC for "approximately 1.5 years" when he signed the interrogatories in November 2010. Def.'s Sanctions Mot., Ex R; see also Def.'s Sanctions Mot. at 26. When

20

plaintiffs' IT consultants surveyed the office in late 2009, however, they noted that the desktop Parsi was supposed to be using was not connected to the network, making it unlikely that he was actually using it. Def.'s Status Report Re. Disc. [ECF 87], Ex. E, ¶ 7; see also id. ¶¶ 6-7 ("Exhibits B and C were made in the course of a network audit and survey, as well as other computer work Progressive Office was retained to do for NIAC from November 4, 2009 to April 10, 2010. . . . At no time during this period did the audit and inventory of Progressive Office of NIAC's network reflect or detect that [Parsi's computer] was connected to the NIAC network."). Plaintiffs argue that this was a technical glitch that they raised with their IT consultants, but an affidavit from the consultants says otherwise. Id. ¶ 8 ("At no time during this project, was Progressive Office informed by NIAC that it was experiencing problems with Trita Parsi's desktop falling off the network or becoming disconnected."). Although plaintiffs claimed at the motions hearing that they told someone from Progressive Office that there were problems with Parsi's computer, they provided no evidence to back up this vague allegation. Hrg. Tr. at 71-72. Furthermore, PwC's registry imaging showed that Parsi stopped using Outlook's email and calendar functions on the desktop on June 5, 2010, and stopped using the desktop altogether on August 5, 2010, not the November 2010 date in his interrogatory responses. Def.'s Sanctions Mot., Ex. XX at 8. The sum of all this information, defendant argues, is that there is simply no way to tell what computer Parsi was using during much of 2009 and 2010. Defendant concludes that Parsi is trying to hide information that was stored on some unproduced computer.

For plaintiffs' failure to back up the information on the laptop, defendant requests a negative inference instruction, i.e., an instruction to the jury that they may presume that documents on the laptop would have supported defendant's case. Such an instruction is now

21

irrelevant, given the disposition of the summary judgment motion, but the Court must decide whether it would have given such an instruction for purposes of this sanctions motion. The Court concludes that it would not have done so. Although the Court agrees that Parsi's story about the laptop is somewhat implausible and that his failure to ever back the laptop up was extraordinarily careless, defendant has not shown that a negative inference instruction is appropriate here. To justify an adverse inference instruction, the movant must show that (1) the party from whom discovery is sought had a duty to preserve the information; (2) the party is culpable in the loss or destruction of the information; and (3) the Court can conclude that the lost or destroyed information would have helped the movant. Bolger v. District of Columbia, 608 F. Supp. 2d 10, 31 (D.D.C. 2009). The duty is clear here, but the other two factors are not. Setting aside the difficult question whether a failure to back up a computer is sufficiently "culpable" to warrant an adverse inference instruction, defendant has not established with sufficient clarity that any information lost on the laptop would have supported his case. Defendant has not been particularly precise about what he would likely have found on the laptop, only generally mentioning emails and calendar entries. Moreover, the Court is not convinced that the other emails and calendar entries defendant has gathered have been very helpful in proving his case. Accordingly, the Court would deny the request for an adverse inference instruction.

The desktop is a different matter. Defendant requests that he be awarded the costs of bringing the instant sanctions motion due to plaintiffs' misrepresentations about Parsi's use of the NIAC desktop from early 2009 to November 2010. Plaintiffs devoted little attention to this issue in their briefing or at the motions hearing, and the Court is troubled by the fact that it may be awarding sanctions based on conduct for which there is an innocent explanation that plaintiffs

22

have simply failed to give. But plaintiffs have had more than sufficient opportunity to oppose the very clear claims in defendant's sanctions motion, and the Court cannot perpetually excuse their failure to do so. Because it seems quite clear that Parsi's interrogatory responses misrepresented when he had used the desktop – and because Parsi has never managed to explain what computer he <u>was</u> using during that time – some sanction is warranted.

The oddity here is that defendant's only requested sanction is the cost of the sanctions motion itself, not some independent award. If the Court grants defendant's request, then, defendant will be in the same position he would have been in if he had never brought the sanctions motion at all. Nonetheless, the Court believes that awarding the cost of this portion of the sanctions motion is appropriate here. In awarding sanctions, the Court is mindful not just of the need to compensate defendant, but also of the need to deter plaintiffs from future discovery abuses. <u>See</u> <u>Shepherd</u>, 62 F.3d at 1472. Plaintiffs' interrogatory misrepresentations are the sort of behavior that warrants deterrence measures, and an award of expenses will act as a deterrent. Hence, the Court will award defendant his reasonable expenses for this portion of the discovery motion.

8. IIC documents

In response to defendant's discovery requests, Parsi produced two copies of an FAQ for Iranians for International Cooperation, an organization with which he was involved before NIAC. Def.'s Sanctions Mot. at 28-29. One copy described IIC as a "lobby" group; the file for that copy was last modified in 1999. <u>Id.</u> The other copy described IIC as an "advocacy" group; the file for that copy was last modified April 6, 2009, seven years after the IIC had become defunct and a month before the document was produced. <u>Id.</u> A search of the Internet Archive shows that a copy of the document located online in 2008 described IIC as a "lobby" group. <u>Id.</u>

23

Defendant's theory is that plaintiffs intentionally altered the document in bad faith in 2009, but accidentally let an unaltered copy of the document slip into their production. Plaintiffs say in their briefing that they have no idea how the 2009 modification happened, although they argue that they would not have intentionally altered the document and then produced the unaltered document. Pls.' Opp. at 43-44. At the motions hearing, plaintiffs also attacked defendant for not attaching to their sanctions motion the metadata for each file. Hrg. Tr. at 73. But plaintiffs presumably have access to each file's metadata, since they produced the file, and plaintiffs have not suggested that defendant is wrong about one file last being modified in 2009. Thus, it does appear that something very odd is going on with this file.

Defendant has not requested a specific sanction related to the IIC documents; he merely cites them as part of his argument that plaintiffs' cumulative discovery abuses warrant the sanction of dismissal. The Court would not be prepared to find by clear and convincing evidence that plaintiffs intentionally altered this file, as would be required to impose the sanction of dismissal. But given defendant's rather damning account of the metadata and plaintiffs' failure to rebut it, the Court is prepared to find by a preponderance of the evidence that plaintiffs intentionally altered the document. As discussed in the last section, an award of expenses is appropriate to deter such behavior. Hence, the Court will award the defendant the expenses of bringing this portion of its sanctions motion.

9. Fees for litigation of this case

At the close of his sanctions motion, defendant requests that the Court "impos[e] as sanctions all fees and expenses associated with the defense of this case." The Court declines to do so. There is no question that plaintiffs have repeatedly tried to evade their discovery obligations, but the Court is ultimately persuaded that plaintiffs' many discovery failures are

24

usually a product of lack of resources and carelessness more than bad faith. The Court is also

disinclined to grant defendant all the fees it expended in this case because defendant's

expenditures in litigating this case have not been proportionate with the likely value of the case.

Cf. Rimkus Consulting Group, Inc. v. Cammarata, 688 F. Supp. 2d 598, 613 n.8 (S.D. Tex.

2010) ("Electronic discovery burdens should be proportional to the amount in controversy and

the nature of the case. Otherwise, transaction costs due to electronic discovery will overwhelm

the ability to resolve disputes fairly in litigation.") (citations omitted). Indeed, little of the

material that was so fiercely contested was relevant to the actual disposition of the case. Hence,

the numerous issue-specific sanctions awards that the Court has made are all that is appropriate

here.

### 10. Summary

Defendant sought sanctions based on eight separate areas of discovery; it has prevailed in

seven of those areas. But it did not prevail on its requests for sanctions relating to the calendar

entries, which was the largest part of its motion. Hence, it does not make sense to award

defendant seven-eighths of the costs of bringing this motion. The Court will instead use the

following unscientific but roughly fair formula. Defendant's discussion of the calendar entries

consumed 8 of the 27 pages he spent outlining plaintiffs' discovery abuses; in other words,

discussion of the calendar entries was about 30% of defendant's motion. Hence, plaintiffs

succeeded on approximately 70% of their motion. Because the defendant only partially

succeeded on some of its requests, however, the Court will take an additional 10% off the

amount plaintiffs must reimburse defendant. In sum, then, plaintiffs must pay 60% of the

expenses associated with bringing the instant motion. In addition, plaintiffs must pay for the last

two rounds of PwC imaging; the expenses involved in bringing [112] defendant's motion to

compel production of NIAC's server; one-half of the expenses of Talebi's deposition; the expenses associated with obtaining [93] the March 29, 2011 order relating to the Talebi emails; the expenses of serving the third-party subpoenas; the expenses involved in bringing [113] defendant's motion to compel production of Salesforce data and membership lists; one-half of the expenses of the last half day of Parsi's deposition; and one-half of the expenses of the second day of Blout's deposition.

## CONCLUSION

For the foregoing reasons, defendant's omnibus sanctions motion will be granted in part and denied in part. A separate Order accompanies this opinion.

<div align="center">

_____/s/ John D. Bates_____
JOHN D. BATES
United States District Judge

</div>

Dated: September 13, 2012

TRITA PARSI and NATIONAL
IRANIAN AMERICAN COUNCIL,

    **Plaintiffs,**

       **v.**

SEID HASSAN DAIOLESLAM,

    **Defendant.**

Civil Action No. 08-705 (JDB)

## MEMORANDUM OPINION

This is a defamation case filed by Trita Parsi and the National Iranian American Council (collectively, "plaintiffs"). Plaintiffs allege that Seid Hassan Daioleslam ("defendant") published numerous false and defamatory statements that characterize plaintiffs as agents of the Iranian government. Now before the Court is [144] defendant's motion for summary judgment. For the reasons discussed below, the motion will be granted.

## BACKGROUND

As explained in this Court's prior opinions, Dr. Parsi is the president of the National Iranian American Council ("NIAC"), a Washington, D.C.-based non-profit group that is "dedicated to promoting Iranian American involvement in American civic life and relying on the public for financial and human resource support." Compl. ¶¶ 9, 10. Defendant is an Arizona resident who has published articles about Parsi and NIAC on various websites. Id. ¶¶ 5, 11. Plaintiffs' complaint seeks damages and injunctive relief against defendant for common law defamation and portrayal in a false light. Id. ¶ 11. The thrust of plaintiffs' complaint is that

1

defendant "has published false and defamatory statements indicating that [plaintiffs are] member[s] of a subversive and illegal Iranian lobby colluding with the Islamic Republic of Iran . . . ." Id. ¶ 13. Plaintiffs argue that these statements injured their reputations in the community, thereby hampering NIAC's effectiveness as an advocacy group and damaging its ability to raise funds. Id. ¶¶ 23, 42-43. Following contentious discovery, defendant filed [144] the instant motion for summary judgment, arguing that there is no evidence that his statements were published with actual malice.

## LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate if the record evidence "shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Summary procedures are of special importance in libel suits brought with respect to reports on the activities of public figures and public officials. . . . For the stake here, if harassment succeeds, is free debate." Secord v. Cockburn, 747 F. Supp. 779, 786 (D.D.C. 1990) (citations omitted).

This Court has previously held that NIAC and Parsi are limited public figures. See Parsi v. Daioleslam, 595 F. Supp. 2d 99, 104-06 (D.D.C. 2009). As such, they must show by clear and convincing evidence that defendant's statements were made with "actual malice" in order to prevail on their claims. Id.; New York Times Co. v. Sullivan, 376 U.S. 254, 280 (1964). "The standard of actual malice is a daunting one." McFarlane v. Esquire Magazine, 74 F.3d 1296, 1308 (D.C. Cir. 1996). To establish actual malice, plaintiffs must show that defendant either

2

knew that the challenged publication was false, or that he "in fact entertained serious doubts as to the truth of his publication." St. Amant v. Thompson, 390 U.S. 727, 731 (1968). Subjective ill-will does not establish actual malice, nor does a malevolent motive for publication. Harte-Hanks Commc'ns, Inc. v. Connaughton, 491 U.S. 657, 665 (1989). Even "highly unreasonable conduct constituting an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers" does not establish actual malice. Id. at 666. But a plaintiff can show actual malice if he can demonstrate by clear and convincing evidence that defendant was "subjectively aware that it was highly probable that the story was (1) fabricated; (2) so inherently improbable that only a reckless person would have put it in circulation; or (3) based wholly on an unverified anonymous telephone call or some other source that appellees had obvious reasons to doubt." Lohrenz v. Donnelly, 350 F.3d 1272, 1283 (D.C. Cir. 2003) (citations omitted).

In the summary judgment context, the movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party opposing the motion for summary judgment, however, "may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in [Rule 56] – set out specific facts showing a genuine issue for trial." Tate v. Dist. of Colum., 627 F.3d 904, 908-09 (D.C. Cir. 2010) (citations omitted); Fed. R. Civ. P. 56(e). In the public figure defamation context, this means that the defendant's "burden in a motion for summary judgment is simply showing – pointing out to this Court – that there is an absence of evidence to support the element of actual malice in the plaintiff's [defamation] case." Secord, 747 F. Supp. at 787. Hence, even though defendant has moved for summary judgment

3

here, the Court will focus on plaintiffs' evidence of actual malice.

## ANALYSIS

One preliminary problem is that plaintiffs have failed to define the universe of allegedly defamatory statements. Plaintiffs have attached several articles to their complaint and to other pleadings, but they have for the most part failed to identify which statements they perceive as defamatory and to put forth specific evidence of actual malice relating to those statements. Moreover, plaintiffs implied at the motions hearing that the summary judgment record did not contain all articles, videos, or other documents that might support their case. Tr. of Mot. Hrg. (July 6, 2012) at 20-21 ("However, it bears noting that the defendant is moving for summary judgment. We are not seeking summary judgment on this case. Therefore, we have not put everything that we have gathered through discovery on the record as of yet. There are a ton of other articles, YouTube [videos] . . . "). But defendant has filed a proper summary judgment motion, so plaintiffs' choice to withhold articles or evidence of actual malice was made at their own peril. Even a cursory review of defamation caselaw in the Supreme Court and this Circuit shows that such cases are often resolved on a defendant's motion for summary judgment, and that the resolution usually involves an extremely detailed analysis of specific defamatory statements and the support for those statements. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 245 (1986) (plaintiffs alleged that "some 28 statements and 2 illustrations in the 3 articles were false and derogatory"); Esquire Magazine, 74 F.3d at 1299 (focusing on support for three paragraphs).

Only in one instance have plaintiffs offered the kind of granular analysis that is normally necessary to prevail in this type of action. In a surreply in opposition to plaintiffs' motion for

4

summary judgment, plaintiffs argue that "a careful review of just one of defendant's publications . . . provides clear indicia of his actual malice towards Plaintiffs, which is evident given the number of misrepresentations, unsupported statements, and even falsifications the defendant makes." Plaintiffs scrutinize a 2008 article entitled "Iran's 2003 Grand Bargain Offer: Secrets, Lies, and Manipulation" to support their statement.[1] Mot. for Leave to File Surreply to Def.'s MSJ [ECF 164-1] ("Pls.' Surreply") at 3.[2] The gist of the article is that the Iranian government, through Trita Parsi, presented a top-secret offer to open negotiations to high-ranking U.S. officials in 2003. According to the article, the Iranian government never actually intended to conduct fruitful negotiations with the United States; in actuality, they only wanted to be able to loudly criticize the United States for its anticipated refusal to agree to negotiate. The article is several pages long and contains 25 endnotes.

Plaintiffs make several objections to the article that can be dismissed easily. First, plaintiffs note that endnotes 13 and 16 (mistakenly referred to as 17) contain no link to the cited source. Pls.' Surreply at 4-5. It appears, however, that endnotes 13 and 16 are not online sources, so defendant could not be expected to provide a link to them. Second, plaintiffs point out that endnotes 14, 15, 16, and 17 are in Farsi and no English translation is provided. Id. But if the original source material is in Farsi and there is no English translation available, defendant

---

[1] The article is available at http://english.iranianlobby.com/page1.php?id=10&bakhsh=ARTICLES.

[2] Although the Court initially denied leave to file a surreply, see 11/30/2011 Minute Order, the Court concludes that the information contained in the proposed surreply is sufficiently important that the Court must consider it in order to arrive at a fair decision. This conclusion, however, is not meant to imply that plaintiffs had any justification for filing a surreply; they could and should have included all of the information in the surreply in their original opposition to defendant's summary judgment motion.

can hardly be faulted for citing the original sources. Indeed, he would be expected to do so. Despite the fact that Parsi presumably speaks Farsi, plaintiffs have pointed to no substantive problems with the underlying Farsi sources. Third, plaintiffs argue that defendant cites his own articles as sources in endnotes 19 and 22. Id. at 5. But there is nothing untoward about this. In both cases, defendant is simply summarizing a few facts from his earlier work and then referring readers to that earlier work for more detailed analysis. Additionally, both of the underlying articles are extensively cited. Fourth, plaintiffs state that endnote 23 "is simply an event website." Id. That is not true: endnote 23 cites both an event website and the text of the speech given at the event, which is the source material for defendant's article. Finally, plaintiffs point out that "the source that supports endnote 20 is missing." Id. The URL given in the endnote does now redirect to an unrelated website, but a search of the Internet Archive shows that the cited website did exist at the time defendant originally published his article and did support his statement.[3] See http://web.archive.org/web/20080511180832/http://www.downsizedc.org/blog/2007/mar/08/no_war_with_iran_coalition.

Plaintiffs also point to several issues with endnotes that can be dismissed as simple errors. Plaintiffs write that "the block quote relating to endnote 5" consists of several sentences that are strung together from different portions of the underlying source in an allegedly misleading way. Pls.' Surreply at 4. The three paragraphs in the block quotation do indeed come from different portions of the underlying source. This is indicated with an ellipses between the

---

[3] Defendant did misquote the underlying source. The original letter, signed by Parsi and others, has a paragraph that begins "Given 26 years of US refusal to start a dialogue with Iran [a different diplomatic strategy is needed]." Defendant's article says that "After denouncing US policy toward Iran, [Parsi and his friends] declared: 'The US has refused to start a dialogue with Iran for the past 26 years.'" As discussed below, this mistake is careless but does not show actual malice.

6

first and second paragraphs, but there is no ellipses between the second and third paragraphs. Nonetheless, having carefully reviewed the underlying article, the Court is confident that the pieced-together block quote does not in any way misconstrue or misrepresent the underlying source. Excerpting from a source can be a way to mislead the reader, but it can also simply be a way to condense relevant information, and there is no problem with doing the latter. See Esquire Magazine, 74 F.3d at 1306 ("Nonetheless, we think the explanation by Esquire – that they deleted the clause because of space considerations and because of its ambiguity – altogether plausible."). And while there should be an ellipses between the second and third paragraphs of the block quote, the lack of one hardly indicates that defendant "in fact entertained serious doubts as to the truth of his publication." St. Amant v. Thompson, 390 U.S. 727, 731 (1968).

As will become clear in the discussion below, defendant was often sloppy in his reporting, either omitting ellipses, slightly misquoting the underlying source, or failing to put a citation in the appropriate place. But none of the errors misrepresent the substance of the source material or mislead the reader. As many courts considering public figure defamation cases have concluded, sloppiness is not evidence of actual malice. Esquire Magazine, 74 F.3d at 1306 ("this . . . seems as consistent with linguistic muddle as with reckless disregard, and in context not enough, even in conjunction with other evidence, to show actual malice by Esquire editors"); McFarlane v. Sheridan Square Press, 91 F.3d 1501, 1515 (D.C. Cir. 1996) ("the conflict is so narrow that it appears to reflect only sloppiness and a slight over-generalization, not deceit, on the part of Schaap"); Lohrenz v. Donnelly, 223 F. Supp. 2d 25, 55 (D.D.C. 2002), aff'd 350 F.3d 1272 (D.C. Cir. 2003) ("The Court will not impose liability for mere factual error – an everyday occurrence in journalism – unless those errors rise to the level of circumstantial evidence of

7

'actual malice.'"). Here, for the reasons explained below, none of defendant's errors "rise to the level of circumstantial evidence of 'actual malice.'"

Plaintiffs also contend that the block quote that begins "Kharazi told me . . . " is unsupported by any citation. Pls.' Surreply at 4. The preceding paragraph, however, also contains a block quote and a citation to a document published in the Washington Post. The "Kharazi told me . . . " block quote comes from that same document.[4] Hence, defendant merely failed to insert an "Id." citation after the second block quote. But he did not invent the quotation out of thin air, rely on an unverifiable anonymous source, or misleadingly doctor an underlying source. Hence, the lack of an "id." does not indicate actual malice. Similarly, plaintiffs argue that the sentence "Then, [in 2006], the Iranian regime gave a fresh copy of the offer to Trita Parsi" is not cited. Pls.' Surreply at 5. But that statement merely repeats an earlier sentence in the article, and the earlier sentence is properly cited. Indeed, defendant actually quotes the source article in support of the earlier sentence. Not repeating the citation a second time may be careless, but it is not evidence of actual malice.

Plaintiffs' remaining issues are more substantive, but no more persuasive. Their first substantive objection runs as follows:

[T]he defendant states that in a 1999 joint paper, Dr. Parsi and Siamak Namazi set

---

[4] Defendant does misquote and leave out portions of the underlying the document, but not in a way that alters the meaning. The original document said: "On May 2, I met with [Kharazi] again for three hours. He told me that he had two long discussions with the Leader on the roadmap. In these meetings, which both lasted almost two hours, only President Khatami and FM Kharrazi [sic] were present; 'we both went through every word of the this [sic] paper'. (He additionally had a series of separat [sic] meetings with both). -- The question is dealt with in high secrecy, therefore no one else has been informed." Defendant's article says: "Kharazi told me that he had two long discussions with the leader on the roadmap. In those meetings which both lasted two hours, only president Khatami and foreign minister Kamal Kharazi were present. The question is dealt with in high secrecy. Therefore no one else has been informed."

8

forth their strategy to "beat up" the U.S. administration as a way to prevent harsh policy toward the Iranian regime. The defendant is saying that NIAC was created to bash U.S. policy, while the quote that immediately follows, which begins 'An Iranian-American lobby is indeed,' is saying a very different thing – that an Iranian-American lobby is needed to prevent bashing of Iran.

Pls.' Surreply at 5. Plaintiffs appear to miss the point of this passage from defendant's article (in addition to slightly mischaracterizing it). Defendant is arguing that Parsi is among those who believe that pressuring the United States on foreign policy issues is a way to ensure better treatment of Iran. In other words, to use plaintiffs' phrasing, defendant's article argues that "NIAC was created to bash U.S. policy" as a means of "prevent[ing] bashing of Iran." Plaintiffs draw a false distinction between (1) "bash[ing] U.S. policy" and (2) "prevent[ing] bashing of Iran," but defendant contends that these two concepts are, in fact, directly related. This is a reasonable reading of the underlying source document, not a willful effort to distort Parsi's words.

Plaintiffs next take issue with this sentence: "Why did Iran decide to ask Bob Ney and Trita Parsi to 'manage this issue' (as Parsi stated) and send the proposal to the White House?" Pls.' Surreply at 4. Plaintiffs argue that the thrust of this statement – that the Iranian regime directly put Ney and Parsi in charge of conveying the proposal to the appropriate U.S. officials – is unsupported by defendant's own source, which says that the Swiss ambassador to Iran, not "Iran," asked Ney and Parsi to send the proposal to the White House. Id. Plaintiffs also point out that defendant's source says that Parsi stated that he was "managing the issue" for Ney, but not that the Iranian government asked him to do so. Id.

While this discrepancy is troubling at first glance, it is much less so in context. Defendant's article first explains that Foreign Minister Kharazi gave a copy of the "Grand

9

Bargain" proposal to the Swiss ambassador to Iran and asked him to "present the enclosed roadmap very confidentially to someone high in the DoS in order to know the US reaction to it." This sentence is appropriately cited. The Swiss ambassador gave the proposal to then-Representative Ney and Parsi, then his staffer. These facts are also cited. The article then says:

> Obviously, the Swiss ambassador did not intend to put at risk such a historical event by turning to Bob Ney's group. He was surely instructed by his Iranian contacts to do so. . . .
> It is hard to explain why Iran did not use its usual channel of diplomacy, which was leading the negotiation with the US to send the grand bargain offer. . . . Why did Iran decide to ask Bob Ney and Trita Parsi to "manage this issue" (as Parsi stated) and send the proposal to the White House? What could this team achieve that the Iranian Foreign minister and other diplomats were unable to do? Put simply, couldn't the Swiss ambassador deliver the message directly to the White House without asking for Ney and Parsi's help?

There are no citations in this paragraph. As the Court reads the article, however, defendant is simply drawing an inference, based on his own long experience with Iranian and American politics, that the Swiss ambassador must have received instructions from Iran to present the proposal to Parsi. In other words, defendant is making a logical argument – namely, that it would have made no sense for the Swiss ambassador to make an independent decision to introduce Ney and Parsi as intermediaries – not a strict factual assertion. Given both the phrasing of the paragraph that begins "Obviously . . . " and the fact that it is not cited (in a heavily cited article), it would be clear to any reasonable reader that the first paragraph, from which the next paragraph flows, offers the author's conclusion rather than a fact that has been established independently.

If defendant had simply written that "the Swiss ambassador was instructed to give the proposal to Bob Ney and Trita Parsi and did so," plaintiffs would have an argument that he willfully misrepresented the facts. But as it stands, the "Obviously . . . " paragraph is effectively

10

a statement of opinion, and there is no reason to suspect that defendant did not sincerely believe it. Defamation law cannot be used to prevent an author from drawing any inferences or making any arguments, especially when the author makes clear to the reader that he is doing so.

Plaintiffs' final argument is that the last sentence in the article is unsubstantiated. Pls.' Surreply at 5. But that sentence merely sums up the rest of the article, and the Court has found no serious problems in the underlying factual support for the rest of the article. In the end, then, plaintiffs' close examination of one article – presumably the one that they felt best supported their case – indicates no problems that would allow a jury to find actual malice by clear and convincing evidence.

Setting aside the dissection of this article, plaintiffs advance several more general arguments on actual malice. First, they argue that defendant made various statements implying that plaintiffs were agents for the Iranian regime – calling Parsi and NIAC "the Mullahs' lobby," "the Ayatollahs' Lobby," "key players in the lobby enterprise of Tehran's ayatollahs in the United States," and "an active and disguised Washington-based lobbying enterprise for the Iranian theocratic regime" – but ignored Parsi's many statements that criticized the regime. Pls.' Opp. to Def.'s Mot. for Summ. J. [ECF 153] ("Pls.' Opp.") at 43. Examples of such statements are listed in an affidavit filed by Parsi. Id., Ex. N ("Parsi Aff.") ¶ 15. There are several problems with this argument. Most importantly, with one exception, there is no evidence that defendant was aware of any of the statements cited in Parsi's affidavit. Although defendant is obviously familiar with much of Parsi's work, there is no requirement that he track down every interview given, op-ed written, or conference attended before writing about Parsi. Hence, the existence of these scattered statements cannot prove actual malice.

11

Moreover, many of the statements listed in Parsi's affidavit are not strongly anti-regime. The one statement plaintiffs do allege that defendant was aware of, for instance, reads: "Diplomacy is falling victim to an endless cycle of provocations right now and those provocations obviously come from both sides. I think from the Iranian side it's been extremely provocative to [hold] this conference regarding the Holocaust in Tehran." Parsi Aff. ¶ 15(a) (alteration in original). That Parsi occasionally made statements reflecting a balanced, shared-blame approach is not inconsistent with the idea that he was first and foremost an advocate for the regime. Given the other evidence defendant amassed to support his views, the Court sees no "actual malice" in defendant's decision to disregard occasional contrary statements and assume that they were made largely to burnish Parsi and NIAC's image in the United States. After all, any moderately intelligent agent for the Iranian regime would not want to be seen as unremittingly pro-regime, given the regime's reputation in the United States.

Similarly, plaintiffs protest that defendant accused NIAC and Parsi of refusing to speak up on human rights abuses in Iran despite evidence that plaintiffs had in fact done so. Pls.' Opp. at 45. For the most part, again, plaintiffs have put forth no evidence that defendant ever saw the statements related to human rights that are cited in Parsi's affidavit. Plaintiffs' best argument relies on defendant's article "Ayatollahs' Lobby in Iran Offering Human Rights as a Negotiating Item."[5] There, defendant severely criticized one of Parsi's publications for "paint[ing] a rosy picture of the human rights situation in Iran" and for condemning UCLA students who had protested Foreign Minister Kharazi's talk at UCLA. Id. ("For Mr. Parsi, 'noisy opposition' at the speech of the envoy of an oppressive regime is a 'quite disturbing' violation of 'fundamental

---

[5] The article is available at
http://english.iranianlobby.com/page1.php?id=2&bakhsh=ARTICLES.

12

human rights' which 'undermines the very idea' of human rights. He refrains from offering similar condemnation of the torture, mass executions, rapes of women in prison, and stoning that is consistently carried out by Tehran's mullahs.") Plaintiffs argue that Parsi condemns Iran's human rights violations in the very article on which defendant relies, and that defendant's refusal to acknowledge this suggests willful blindness. Pls.' Opp. at 45.

The Court disagrees. While Parsi does criticize Iran's human rights record in the underlying article, his criticisms are tepid. A representative example is the following statement: "Even in long isolated Iran, a country known for its less than flattering Human Rights record, there is a trend toward the improvement of the human rights situation, although it remains far from being satisfactory."[6] In this article Parsi does not come close to specifically condemning – or even mentioning – the "torture, mass executions, rapes of women in prison, and stoning" that defendant accuses him of ignoring. Moreover, the vast majority of the article is devoted to Parsi expressing his disappointment with the UCLA students who protested Kharazi's speech, not to discussing the regime's abuses. Hence, while defendant's article is certainly a strongly-worded and one-sided take on Parsi's underlying publication, it is not a distortion of the underlying publication that amounts to willful blindness or actual malice.

Plaintiffs' next argument is that defendant ignored several editors and others who questioned the factual bases for his articles. Pls.' Opp. at 40-42. Here again, the Court is required to examine the record closely to determine whether plaintiffs' allegation is supported. This effort is hampered by the fact that the parties have provided only incomplete excerpts of defendant's deposition. See Pls.' Opp. Exs. E, J; Def's. Reply in Supp. of Mot. for Summ. J.

---

[6] Parsi's article is available at
http://www.iranian.com/News/2000/September/rights.html.

[ECF 158] ("Def.'s Reply") Exs. A, L, M. It is often difficult to tell which article is being discussed, and the Court rarely has access to defendant's complete testimony about any given article. Nonetheless, virtually nothing in the truncated record relied on by the parties supports the proposition that defendant avoided his editors' questions and willfully avoided learning the truth. To the contrary, the record suggests that defendant and his editors were careful to substantiate his articles and that defendant engaged with those who questioned him.

Plaintiffs' first charge is that defendant published an article claiming that Bob Ney, Roy Coffee, and David DiStefano were the founders of NIAC even though defendant "wasn't sure at the time" whether this was true. Pls.' Opp. at 41. Plaintiffs point to an email by Ken Timmerman (whom plaintiffs mistakenly refer to as Tim Timmerman), who eventually published defendant's article, asking for proof of defendant's allegations against Ney, Coffee, and DiStefano. Id. While the Court does not have the complete correspondence between Timmerman and defendant, the available excerpts refute any notion that Timmerman disbelieved defendant's argument or that defendant willfully ignored Timmerman's questions. Timmerman asked a number of probing questions to ensure that there was sufficient factual support for specific assertions in the article, but he also noted that the article was a "[t]errific, terrific piece of work." Def.'s Reply, Ex. S-1. When defendant indicated that he could simply take out allegations against Bob Ney to make the article immediately publishable, Timmerman pushed him to instead muster more factual support for his allegations and suggested several avenues of research that might turn up such factual support. Id. The Court does not have either defendant's final emails to Timmerman about the article or a copy of the final article, but the natural conclusion from the earlier correspondence is that defendant was able to come up with sufficient

14

factual support to convince both himself and Timmerman the article should be published. In other words, Timmerman asked precisely the sorts of questions that an editor should, and defendant apparently responded to them appropriately.

Moreover, contrary to plaintiffs' suggestion, defendant unequivocally rejected the idea that he had any subjective doubt about his story at the time he published it. During his deposition, defendant explained that he received and reviewed some of the discovery documents in this case after the article was published, and those documents caused him to question the article's conclusions. Def.'s Reply, Ex. L at 69-71, 185. But defendant reaffirmed several times that he would have stood by his 2007 conclusions based on the material available to him in 2007. Id. at 186 ("Oh I can tell you that having in my possession what I had in 2006 and 7 I would have – I will write it again in the same manner[.]"); id. at 70 (same). See Bose Corp. v. Consumers Union of U.S., Inc., 466 U.S. 485, 512 (1984) (a plaintiff must show defendant "realized the inaccuracy at the time of publication") (emphasis added). Moreover, after receiving the discovery documents, defendant posted NIAC's response to his original article on his website and  "shared his doubts" about his original conclusions with his readers. Def.'s Reply, Ex. L at 185-86. This openness is inconsistent with actual malice. See Esquire Magazine, 74 F.3d at 1304 ("[F]ull (or pretty full) publication of the grounds for doubting a source tends to rebut a claim of malice, not to establish one.").

Plaintiffs' next argument is similar. They point to an email from Timmerman to defendant suggesting that "one thing I'd tone down in the article below . . . is the anti-Semitism label. [The subject] could actually sue you on that and you don't establish anti-Semitism in that section.  You establish a pattern of anti-Israel acts[.]" Pls.' Opp, Ex. J at 126-27.  The problem is

15

that plaintiffs offer no evidence about whether defendant heeded Timmerman's warning or ignored it.  This is a relatively easy matter to establish; it requires only comparing the article draft to the article ultimately published, but plaintiffs never do so.  Defendant was not certain at his deposition whether he had made any edits in response to Timmerman's suggestion, but thought that he might have done so as part of larger edits to the article.  Id. at 127.  That an editor made a suggestion to defendant, without any proof of what the response to that suggestion was, certainly cannot establish actual malice.

The next issue plaintiffs raise concerns the reaction of another editor, Jed Babbin, to defendant's article.  This is a somewhat closer case than the Timmerman edits.  Defendant submitted an article to Babbin and received a reply noting that it was far too long for Babbin's magazine and that the allegations needed to be "supported by credible references."  Babbin added that he would "be glad to take another look at if you can cut and bolster."  Pls.' Opp., Ex. J at 102.  Because the article was "urgent" and defendant "did not want to go through the whole discussion about a broad and vast subject of the Iranian regime's lobby in the U.S.," he submitted the article to another publication that accepted it.  Id. at 103.  Defendant could not remember whether he had made any specific changes to the article in response to Babbin's concerns, but he did testify that he always took steps to ensure that his publications were supported and not libelous.  Id. at 105.

Later in the deposition, defendant testified further about Babbin's critiques of his work. Id. at 130-32.  Although it is a little difficult to tell whether the later testimony relates to the same article as the earlier testimony, it appears that it does.[7]  Specifically, the defendant testified

---

[7]  In the earlier discussion, defendant testified that he believed the article he sent to Babbin was "about the Congressman Kucinich relationship with NIAC and Mr. Trita Parsi."

16

that he sent Babbin a copy of Ney's plea deal as support for some of his allegations. Babin rejected defendant's understanding of the plea deal, writing that: "You say he was convicted of conspiracy related to the sales of commercial aircraft parts in Iran. That's not what the charges were. I am a lawyer and I can read what it says. Ney's convictions had to do with Abramoff, not with the Iran matter." Id. at 131. But in a part of the deposition that is unfortunately cut off, defendant appears to point out that the plea deal, in fact, also contains a paragraph stating that Ney "took thousands of dollars in free gambling chips from a foreign businessman [who] was seeking an exemption to the U.S. export laws prohibiting the sale of his goods to a foreign country, and a visa to the United States."[8] Other publications have identified the foreign businessman as one who was seeking to "sell U.S.-made airliners parts to the Iranian government."[9] In other words, assuming the same article is under discussion, defendant did in fact have support for allegations that Babbin thought were unsubstantiated. Even if the second discussion relates to a different article, the mere fact that Babbin and defendant disagreed to some extent about the factual support for the article does not indicate actual malice.

---

Pls.' Opp., Ex. J at 102. The only article that fits this description is "Congressman Kucinich Must Find a Better Role Model than Bob Ney," which is available at http://english.iranianlobby.com/page1.php?id=5& bakhsh=ARTICLES. The later discussion focuses on Ney's plea agreement, which is the subject of the first paragraph of the article about Congressman Kucinich. Hence, it appears that although defendant ultimately did not publish the article with Jed Babbin, he did send Babbin some factual information to show that the article was not unsubstantiated.

[8] See Statement of Assistant Attorney General Alice S. Fisher of the Criminal Division Regarding Congressman Robert W. Ney, Sept. 15, 2006, available at http://www.justice.gov/opa/pr/2006/September/06_crm_626.html.

[9] See Mark Hosenball, Holly Bailey, & Michael Isikoff, Ney's Gambles, NEWSWEEK, Sept. 20, 2006, available at http://www.thedailybeast.com/newsweek/2006/09/20/ney-s-gambles.html

Plaintiffs' next two critiques can be lumped together.  First, they write that "Vahin Alaghband told the defendant that his writing should be based on facts not conjecture."  Pls.' Opp. at 42.  Alaghband was the subject of the article he criticized.  <u>See</u> Pls.' Opp., Ex. J at 169-70.  That Alaghband would criticize an article criticizing him is hardly surprising, and does not prove actual malice.  <u>See</u> <u>Lohrenz</u>, 350 F.3d at 1285 ("[P]ublishers need not accept 'denials, however vehement; such denials are so commonplace in the world of polemical charge and countercharge that, in themselves, they hardly alert the conscientious reporter to the likelihood of error.'") (quoting <u>Harte-Hanks Commn'cs, Inc. v. Connaughton</u>, 491 U.S. 657, 691 n.37 (1989)).  Defendant testified at his deposition about the factual basis for that article, which plaintiffs do not question here.  Pls.' Opp., Ex. J at 169-70, 173.  Plaintiffs also write that "Jamie Glazor raised a concern about the defendant's journalistic integrity since he was writing negative things about a Mr. Namazi without contacting him or anyone in his family for comment." Pls.' Opp. at 42.  First, failure to contact one of the subjects of an article does not establish actual malice.  <u>Secord</u>, 747 F. Supp. at 788.  More importantly, Glazor, the editor of Front Page magazine, <u>see</u> Pls.' Opp., Ex. J at 193, did not remotely question defendant's "journalistic integrity."  Rather, Glazor merely forwarded two emails from Ali Mostashari – the subject of one of defendant's articles – and wrote "Ok Hassan, this time I am not touching or taking down or removing anything until I hear from you :-)."  Def.'s Reply, Ex. N-2.  Mostashari did vigorously question defendant's journalistic integrity, <u>id.</u>, but again, protests from the subject of an article do not prove actual malice.  Moreover, defendant actually sent Mostashari a lengthy, point-by-point response to one of his emails, and he published both Mostashari's email and his own response on his website.  Def.'s Reply, Exs. O, P.  This is the opposite of evidence of actual malice.  <u>See</u>

18

Esquire Magazine, 74 F.3d at 1304.

Plaintiffs' weakest complaint is that defendant criticized another journalist, Sohrab Sobhani, for claiming that defendant was a member of MEK/MKO (a militant organization) without contacting him for comment. Pls.' Opp. at 42. Plaintiffs infer that defendant knows that it is imperative to contact the subject of the story, and that his failure to contact NIAC and Parsi for comment on every story concerning them indicates actual malice. But the deposition excerpts plaintiffs provide contain no support for the proposition that defendant believes it is customary or required to contact subjects of stories. Pls.' Opp., Ex. E at 31. ("Q: Do you think it was wrong for [Sobhani] not to contact you before publishing that information? A. I didn't expect him – I don't know if it's wrong or right. I didn't expect him to contact me[.]") Moreover, whatever defendant believed about the appropriateness of contacting the subject of a story for comment, "if caselaw is clear on any point it is that an author is under no duty to . . . provide the subject an opportunity to reply." Secord, 747 F. Supp. at 788.

In sum, none of the communications from editors or other journalists provide any evidence that defendant had subjective doubts about his articles or willfully avoided the truth. Defendant's next argument is that actual malice exists because defendant is biased against Parsi due to his own ideological sympathies. Plaintiffs contend that defendant is a member of the MEK/MKO, "a militant organization that advocates the overthrow of the Islamic Republic of Iran through violence," Pls.' Opp. at 39. Hence, plaintiffs argue, defendant's anti-regime views motivate him to falsely attack Parsi. Id. Defendant vigorously denies that he is a member of MEK/MKO. See Def.'s Reply at 7-8. But even if he were, caselaw resoundingly rejects the proposition that a motive to disparage someone is evidence of actual malice. Harte-Hanks, 491

19

U.S. at 665 ("Petitioner is plainly correct in recognizing that . . . a newspaper's motive in publishing a story – whether to promote an opponent's candidacy or to increase its circulation – canot provide a sufficient basis for finding actual malice"); Lohrenz, 350 F.3d at 1284 ("Evidence that the publishers of the allegedly defamatory statements were on a mission to reinstate the ban against women being assigned to combat positions in the military does not suffice to show actual malice" in their publication of articles claiming that a female pilot was unqualified). This rule makes sense: authors will often want to write about those who they strongly ideologically oppose, but such ideological opposition does not ipso facto make their writings untrustworthy. If ideological opposition alone showed actual malice, valuable investigative journalism would be threatened by defamation laws, a result completely contrary to New York Times and its progeny.

Plaintiffs bolster their motive argument by pointing to one of defendant's emails, which reads: "I strongly believe that Trita Parsi is the weakest part of the Iranian web because he is related to Siamak Namazi and Bob Ney. I believe that destroying him will be the start of attacking the whole web." Pls.' Opp., Ex. K. Plaintiffs argue that this email shows that defendant just wants to "destroy[]" Parsi, regardless of whether he really is advocating for or on behalf of the Iranian regime. Pls.' Opp. at 40. What plaintiffs have overlooked is the possibility that defendant wants to discredit Parsi and "attack[] the whole web" because he genuinely believes that Parsi and his associates are advocating for or on behalf of a regime that he strongly opposes. That possibility is, in the Court's view, much more plausible than the idea that defendant's personal dislike of Parsi has motivated him to concoct dozens of elaborate articles discussing Parsi and the Iranian regime. This email, then, is not enough to bring the case before

a jury that must find actual malice by clear and convincing evidence.

Plaintiffs' next argument is that defendant conceded in his deposition that he did not subjectively believe that Parsi was an agent for the Iranian regime. See, e.g., Pls.' Opp. at 10. The deposition testimony on which plaintiffs focus is the italicized part of the following exchange:

> Q: Do you consider Dr. Parsi to be a political activist?
> A. I think so.
> *Q: Do you consider him to be part of the Iranian regime?*
> *A: I believe that he has worked, he has lobbied in favor of the Iranian regime.*
> Q: So based upon your prior testimony it would be fair to say that you believe because he is a part of the Iranian regime that you have no obligation to verify the truth of the statement that you make about him?
> A: My belief is that of course I would prefer to go to Mr. Parsi and NIAC and ask for help and clarification about what I thought in 2006 when I was working to investigate about them for many questions I had. The thing is that honestly I did not expect the truth from them. Mostly because I thought the first aspect of their work was deception and lie. . . . I mean that mistrust was so that I believed and I still believe for the relation and trust that existed between Mr. Parsi and the inner circle of the Iranian regime.

Pls.' Opp., Ex. E at 35-36.

Plaintiffs conclude that by testifying that he believed that Parsi "had lobbied in favor of the Iranian regime," defendant was conceding that he did not believe Parsi was actually an agent of the regime. That is a serious overreading of a cautious answer at a deposition. Indeed, Parsi's attorney's next question assumes that defendant believed Parsi was "a part of the Iranian regime," and defendant's answer fully supports that assumption. Plaintiffs cannot hang their case on one sentence that is, at best, ambiguous.

Plaintiffs' final argument is that defendant ignored a cease and desist letter that put him on notice his stories were false. Again, an author's knowledge of "denials, however vehement" does not show actual malice. Harte-Hanks, 491 U.S. at 691 n.37. Moreover, the letter in

question is not one that could prove actual malice.  <u>See</u> Pls.' Opp., Ex. D.  This letter is addressed to employees of the Voice of America radio program and concerns a broadcast on which defendant and several others were guests.  <u>Id.</u>  Defendant, along with others, is listed in the "cc" field.  <u>Id.</u>  The letter focuses on Voice of America's alleged violations of its own Journalistic Code, but it offers virtually no facts that would suggest anything said during the program was inaccurate.  <u>Id.</u>  In other words, it is a textbook substance-free vehement denial.  Assuming defendant actually received a copy of the letter, nothing in it could have alerted him to any factual inaccuracies in his writings about NIAC and Parsi.

Because plaintiffs have mustered no evidence that defendant actually harbored any doubts about the correctness of his writings, or willfully blinded himself to the truth, their defamation claim must fail.  Their false light claim must also fail.  "[A] plaintiff may not avoid the strictures of the burdens of proof associated with defamation by resorting to a claim of false light invasion."  <u>Moldea v. New York Times Co.</u>, 22 F.3d 310, 319 (D.C. Cir. 1994).  A false light claim involving a public figure, like a defamation claim, requires proof of actual malice.  <u>See</u> <u>Time, Inc. v. Hill</u>, 385 U.S. 374, 387-88 (1967); <u>Lohrenz</u>, 223 F. Supp. 2d at 40.[10]  Hence, plaintiffs' failure to prove actual malice disposes of all counts in their complaint.[11]

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment will be granted, and

---

[10]  In the District of Columbia, "whether the defendant is properly characterized as a member of the media" is irrelevant to the analysis.  <u>Ayala v. Washington</u>, 679 A.2d 1057, 1063 n.2 (D.C. 1996)

[11]  Nothing in this opinion should be construed as a finding that defendant's articles were <u>true</u>.  Defendant did not move for summary judgment on that ground, and it has not been addressed here.

22

all counts of plaintiffs' complaint will be dismissed. Given this disposition of the case, several other pending motions will be denied as moot. A separate order accompanies this opinion.

<div align="center">

     /s/ John D. Bates     
JOHN D. BATES
United States District Judge

</div>

Dated: September 13, 2012