UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TRITA PARSI<br><br>and<br><br>NATIONAL IRANIAN AMERICAN COUNCIL,<br>            Plaintiffs,<br><br>v.<br><br>DAIOLESLAM SEID HASSAN,<br>            Defendant. | CIVIL NO. 08 CV 00705 (JDB) |

### DEFENDANT'S BRIEF IN SUPPORT OF FINDING OF BAD FAITH IN GIVING FALSE INTERROGATORY ANSWERS

Defendant Hassan Seid Daioleslam ("Defendant") submits this Statement regarding the lone substantive issue remaining on remand, *i.e.*, whether there is clear and convincing evidence that Plaintiff Trita Parsi acted in bad faith when he gave a false interrogatory response in November 2010 attesting that he had been using a desktop produced to Defendant for imaging for "approximately 1.5 years." For the following reasons, Defendant contends that the record supports such a finding.

### BACKGROUND

Parsi's false interrogatory response is discussed at length in Defendant's Omnibus Sanctions Motion. *See* Dkt. 143, at 24-26. To summarize, in August 2010, Plaintiffs were under order from this Court to produce Parsi's laptop for forensic imaging. However, Plaintiffs produced no such laptop, and instead claimed that Parsi's laptop, which had not been backed up, was stolen at a hotel in Oslo on May 6, 2010. *See id.*, Ex. OO. Instead, Plaintiffs produced a

desktop that they claimed was used by Parsi and contained "Dr. Parsi's Outlook calendars ordered by the Court to produce." *Id.*, Ex. PP.

During the course of discovery, Defendant noticed calendar entries reflecting work on NIAC's computer network in late 2009, including replacement of NIAC's server, so Defendant subpoenaed the records of NIAC's computer consultant, Progressive Office. Also, on August 20, 2010, Defendant sent to Parsi seven focused interrogatories concerning his laptop and desktop computers used for Outlook email and calendaring. *See* Exhibit 1. On September 20, 2010, Parsi's counsel served responses, but the responses were not signed or verified by Parsi. *See* Exhibit 2. Parsi's counsel promised that Parsi would sign and verify the responses within four days. *See* Exhibit 3. Although Defendant asked for Parsi's signature and verification several times, including on October 8, 26 and 28, 2010, s*ee* Exhibit 4, Parsi did not sign and verify his responses until November 11, 2010, s*ee* Exhibit 5.

In the November 2010 interrogatory response, Parsi attested that he had been using the desktop produced for imaging for "approximately 1.5 years," *i.e.*, since early 2009. *See* Exhibit 5, pp. 2-3. However, a December 2009 audit by NIAC's own computer consultants showed that the desktop Parsi swore he was using was not even connected to the network at any time "from November 4, 2009 to April 10, 2010." Dkt. 87, Ex. E, ¶¶ 6-7 ("At no time during this period did the audit and inventory of Progressive Office of NIAC's network reflect or detect that [Parsi's computer] was connected to the NIAC network."). Suspecting something amiss, the Court's third imaging order (Dkt. 138) permitted PricewaterhouseCoopers ("PwC") to access the registry of the desktop computer to determine if and when Parsi actually used the desktop produced for the first imaging. PwC's imaging analysis showed that Parsi had stopped using Outlook's email and calendar functions on the desktop on June 5, 2010, and had stopped using the desktop

altogether on August 5, 2010.  *See* Dkt. 143, Ex. XX at 8.  In this Court's words, it was thus "unlikely that [Parsi] was actually using" the desktop during this time period.  Dkt. 190, at 21.  Thus, Parsi's interrogatory response that he had been using the desktop from early 2009 until November 2010 was clearly false.

This Court's $25,242.17 award to Defendant Hassan Seid Daioleslam ("<u>Defendant</u>") for his expenses in preparing his Omnibus Sanctions Motion (Dkt. 143) included sanctions for these "misrepresentations" by Plaintiffs.  Dkt. 190 at 22.  Because "Plaintiffs devoted little attention to this issue in their briefing or at the motions hearing," this Court was "troubled by the fact that it may be awarding sanctions based on conduct for which there is an innocent explanation that plaintiffs have simply failed to give."  *Id.* at 22-23.  This Court noted, however, that "plaintiffs have had more than sufficient opportunity to oppose the very clear claims in defendant's sanctions motion."  *Id.* at 23.  "Because it seems quite clear that Parsi's interrogatory responses misrepresented when he had used the desktop—and because Parsi has never managed to explain what computer he *was* using during that time"—this Court concluded that "some sanction is warranted . . . to deter plaintiffs from future discovery abuses."  *Id.*  This Court ultimately awarded Defendant his "reasonable expenses for this portion of the discovery motion."  *Id.*

Seizing on this Court's statement that there may be an unexplained "innocent explanation" for Plaintiffs' misbehavior, the U.S. Court of Appeals for the D.C. Circuit reversed and remanded this portion of the sanctions award, concluding that this Court had not made the requisite determination "by clear and convincing evidence" that Parsi gave a "false interrogatory response that he had used a desktop computer that . . . was not connected to [NIAC's] network."  *See Parsi v. Daioleslam*, 778 F.3d 116, 132-33 (D.C. Cir. 2015).  The D.C. Circuit explained

that, on remand, this Court would need to "re-determin[e] the sanctions award" under the proper standards we have articulated . *See id*. at 133.

## ARGUMENT

The "exercise of a court's power to impose 'inherent power sanctions that are fundamentally penal' requires that it find bad faith by clear and convincing evidence." *Parsi*, 778 F.3d at 131 (quoting *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1478 (D.C. Cir. 1995)). Bad faith conduct is conduct that is "unreasonable and vexatious," *LaPrade v. Kidder Peabody & Co.*, 146 F.3d 899, 906 (D.C. Cir. 1998), and "[t]he clear and convincing standard 'generally requires the trier of fact, in viewing each party's pile of evidence, to reach a firm conviction of the truth on the evidence about which he or she is certain,'" *Parsi*, 778 F.3d at 131 (quoting *United States v. Montague*, 40 F.3d 1251, 1255 (D.C. Cir. 1994)).

There is ample evidence that Parsi's interrogatory response was made in bad faith. *See* Dkt. 143, at 24-26. Indeed, this Court has already held that it is "*quite clear* that Parsi's interrogatory responses misrepresented when he had used the desktop." Dkt. 190, at 23 (emphasis added). Parsi's pile of evidence, on the other hand, is nonexistent. This Court noted that "Parsi has never managed to explain what computer he *was* using during that time." *Id*. In other words, having claimed that his laptop was stolen on May 5, 2010, and facing the incontrovertible truth that he stopped using his purported desktop for emails on June 5, 2010, Parsi had no explanation, save one, which he could not give lest he admit to another false interrogatory answer—*i.e.*, he was using the new MacBook bought in Norway for his emails. Recall, however, Parsi refused to produce the MacBook for imaging claiming under oath that it did not contain any PST (Outlook email and calendar) files. *See* Exhibit 5, Resp. to Int. No. 1.

Thus, the dissembling involved here is not just limited to one, minor factual error.  Rather, Parsi engaged in a pattern of misconduct on this issue, as he did with many other discovery obligations (*see* Dkt. No. 190), frequently concocting a new story when confronted with contradictory information (if not blaming Defendant or the Court for their imprecision).  For example, here Parsi initially testified that he had used another desktop prior to 2009 but later claimed he had never used another desktop.  Dkt. No. 143 at 25.  And, the false answer at issue here was necessitated by Parsi's evasion of the first imaging order which Parsi intentionally tried to evade by producing the desktop he did not use. The extent of the charade cannot be understated; when one puts the PwC analysis together with the Progressive Office network survey, it becomes clear that the desktop Parsi produced and told the Court he was using for emails was, in fact, only used for such from April 10 to June 5, 2010.  Throughout the litigation, Plaintiff treated his discovery obligations as a "catch-me-if-you-can" game, leaving it to the Court and Defendant to spend countless hours trying to discern his latest trick.  As Judge Wilkins said to Plaintiff at oral argument, Plaintiffs repeatedly "slice[d] the bologna very thin as far as trying to parse what their obligations were," and praised this Court for exercising "extreme patience" in dealing with these issues.  Audio tape:  Oral Argument, Case No. 12-7111 (Oct. 15, 2014), *available at* http://www.cadc.uscourts.gov/recordings/recordings.nsf/.  Parsi's initial attempt to get away with an unverified interrogatory answer and refusal for 2-1/2 months to provide a sworn answer is also a strong indication that he consciously filed the false answer.  Only after numerous requests did he file the verification, and he might have gotten away with it had the Court not permitted the  PwC registry analysis that conclusively proved his answer false.

Such contumacious disregard for discovery obligations cannot be countenanced.  Having been presented with substantial evidence that there was no legitimate reason for intentionally

5

providing false statements under oath, Parsi has had numerous opportunities to provide an innocent explanation but has chosen not to give one. Such conduct is clearly vexatious and unreasonable. Thus, a finding of bad faith by clear and convincing evidence is strongly supported by the record and necessary to ensure that Parsi is held to task for his misconduct.

## CONCLUSION

For the foregoing reasons, this Court should enter an Order, substantially conforming to the Proposed Order attached hereto as Exhibit 6, finding by clear and convincing evidence that Parsi acted in bad faith in providing his false November 2010 interrogatory response.


Dated:  May 19, 2015               Respectfully submitted,

       /s/  Timothy E. Kapshandy                .
Timothy E. Kapshandy (Illinois Bar No. 6180926, admitted *pro hac vice*)
HL Rogers (D.C. Bar No. 974462)
Thomas E. Ross (D.C. Bar No. 994275)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C.  20005
tel. (202) 736-8000
tom.ross@sidley.com

*Attorneys for Defendant*
*Seid Hassan Daioleslam*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 19, 2015, I caused true and correct copies of the foregoing *Defendant's Statement In Support of Finding of Bad Faith in Giving False Interrogatory Answers* to be served via e-mail on:

>Afshin Pishevar
>Farrokh Mohammadi
>600 East Jefferson Street, Ste 316
>Rockville, MD 20852
>tel. (301) 279-8773
>ap@pishevarlegal.com
>fm@pishevarlegal.com

Dated: May 19, 2015                           /s/ HL Rogers                    .
>Thomas E. Ross (D.C. Bar No. 994275)
>Timothy E. Kapshandy (Illinois Bar No. 06180926, admitted *pro hac vice*)
>HL Rogers (D.C. Bar No. 974462)
>SIDLEY AUSTIN LLP
>1501 K Street, N.W.
>Washington, D.C.  20005
>tel. (202) 736-8000
>tom.ross@sidley.com
>
>*Attorneys for Defendant*
>*Seid Hassan Daioleslam*